1  Donald H. Nichols, MN State Bar No. 78918
   (admitted **pro hac vice**)
2  Paul J. Lukas, MN State Bar No. 22084X
   (admitted **pro hac vice**)
3  Tim C. Selander, MN Bar No. 0387016
   (admitted **pro hac vice**)
4  NICHOLS KASTER & ANDERSON, PLLP
   4600 IDS Center
5  80 S. 8th Street
   Minneapolis, MN 55402
6
   Bryan J. Schwartz, CA State Bar No. 209903
7  Matthew C. Helland, CA State Bar No. 250451
   NICHOLS KASTER & ANDERSON, LLP
8  One Embarcadero Center, Ste. 720
   San Francisco, CA 94111
9
   Attorneys for Individual and Representative Plaintiffs
10
                IN THE UNITED STATES DISTRICT COURT
11              NORTHERN DISTRICT OF CALIFORNIA

12 Philip Wong, Frederic Chaussy, and Leslie     Case No.: 3:07-cv-2446 MMC
   Marie Shearn, individually, on behalf of all
13 others similarly situated, and on behalf of   **PLAINTIFFS' AMENDED MOTION**
   the general public,                           **AND MEMORANDUM IN SUPPORT OF**
14                                                **MOTION FOR CONDITIONAL**
                              Plaintiffs,         **CERTIFICATION AND JUDICIAL**
15                                                **NOTICE PURSUANT TO §216(B) OF**
        vs.                                       **THE FLSA, FOR PRODUCTION OF**
16                                                **UPDATED CLASS LIST IN EXCEL**
   HSBC Mortgage Corporation (USA);              **FORMAT WITHIN 10 DAYS OF THE**
17 HSBC Bank USA, N.A.; and DOES 1               **DATE THIS MOTION IS GRANTED,**
   through 50, inclusive,                        **FOR A PARTIAL SUMMARY**
18                                                **JUDGMENT UNDER FED.R.CIV.P. 56**
                              Defendants.         **THAT NAMED DEFENDANTS ARE**
19                                                **PROPERLY-NAMED EMPLOYERS**
                                                  **UNDER THE FLSA, AND FOR PARTIAL**
20                                                **SUMMARY JUDGMENT UNDER**
                                                  **FED.R.CIV.P. 56 ON FLSA**
21                                                **EXEMPTIONS APPLIED TO LOAN**
                                                  **OFFICERS**
22
                                                   Date:  February 1, 2007
23                                                 Time:  9:00 a.m.
                                                   Date originally filed:    May 7, 2007
24

25

26

27

28

# TABLE OF CONTENTS

**Motion**

I.  Introduction………………………………………………………….....1

II. Statement of Relevant Facts………………………………………….2
    A.  Plaintiffs are Loan Officers Employed by Defendants………………………..2
    B.  All Loan Officers Performed the Same Job With the Same "Primary Duty"………………………………………………………………………5
    C.  Defendants Trained All Loan Officers to Perform Their Job in the Same Manner, Subject to the Same Policies, Procedures, and Production Requirements………………………………………………………………5
    D.  Defendants Compared and Contrasted All Loan Officers, Subjecting Them to the Same Production Requirements and Disciplinary Procedures…………………………………………………………………6
    E.  Plaintiffs Testify and Defendants Admit They Cannot Rebut, That They Worked Overtime Hours and Worked Primarily in Defendants' Branch Offices and Their Home Offices…………………………………………6
    F.  Defendants Compensated All Loan Officers in the Same Manner……………8
    G.  Defendants Misclassified All Loan Officers as "Exempt," Paying None of Them Overtime Compensation……………………………………………8

III. Plaintiffs' Motion for Conditional Certification and Judicial Notice, And For Production of an Updated Class List Should Be Granted………………………….8
    A.  Because Discovery is Incomplete, this Case is at the First Stage of the FLSA's Two-Step Certification Process………………………………………10
    B.  Plaintiffs Easily Meet the Standard to Show "Some Factual Basis" for Their Contention That Employees are Similarly-Situated and Therefore Merit First Stage Conditional Class Certification and Court-Facilitated Notice………..12
    C.  Applying Relevant Precedents, This Court Should Not Consider the Merits of the Underlying Claims, Rule 23 Certification Factors, or Information Notice Provided to Class Members When Conducting the First-Stage "Similarly Situated" Analysis………………………………………………………13
        1.  The "merits" of the claim are not considered……………………………13
        2.  The standards for Rule 23 class certification are not applied……………14
        3.  Plaintiffs' information efforts in providing notice are not considered…..14
    D.  Plaintiffs Have Easily Met the "Similarly Situated" Standard Necessary at This Stage of the Litigation………………………………………………..15
    E.  Plaintiffs' Notice is Accurate and Informative…………………………16
    F.  Production of the Updated List of Loan Officers is Necessary to Facilitate Notice…………………………………………………………………16

IV. Plaintiffs' Motion for Partial Summary Judgment Should Be Granted……………17
    A.  Fed.R.Civ.P. 56 Permits Partial Summary Judgment………………………...17
    B.  Defendants are Properly-Named Employers Under the FLSA's Broad Definition………………………………………………………………17
    C.  Defendants Cannot Meet Their Burden of Pleading and Proving FLSA Exemption Defenses……………………………………………………20
        1.  Defendants relied upon the "outside sales" exemption in misclassifying Plaintiffs………………………………………………………………..21
        2.  Undisputed material facts establish that Defendants cannot qualify for any of the FLSA's "white collar" defenses……………………………..22

          **a.** **Plaintiffs are entitled to summary judgment on the administrative exemption defense**………………………………………………………**22**

          **b.** **Plaintiffs are entitled to summary judgment on the executive administrative defense**………………………………………………**22**

          **c.** **Plaintiffs are entitled to summary judgment on the professional exemption defense**…………………………………………………**23**

     **3.** **Because Defendants are in the banking and mortgage lending business Defendants inherently lack the "retail concept" necessary to qualify for the retail sales exemption**……………………………………………...**23**

**V. Conclusion**……………………………………………………………**24**

1

## **TABLE OF AUTHORITIES**

2

3   **CASES**

4   **Adams v. Inter-Con Security Sys., Inc.**, 242 F.R.D. 530, 542 (N.D. Cal. 2007) ........... 10, 11, 12

5   **Agdipa v. Grant Joint Union High School Dist.**, 2007 WL 1106099 (E.D. Cal. 2007) ............ 13

6   **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 249-50 (1986) ................................. 17

7   **Arnold v. Ben Kanowsky, Inc.**, 361 U.S. 388, 392 (1960) ........................................ 21

8   **Bailey v. Ameriquest Mortgage Co.**, 2002 WL 100388, at *2 (D. Minn.) ................................ 10

9   **Barnett v. Washington Mutual Bank, FA, et al.**, 2004 WL 1753400 at *3, (N.D.Cal.) (2004) 24

10  **Beauperthuy v. 24 Hour Fitness USA, Inc.**, 2007 WL 2729187, at *7 (N.D. Cal. 2007).......... 15

11  **Bonnette v. Cal. Health & Welfare Agency**, 704 F.2d 1465, 1469 (9th Cir. 1983) .................. 20

12  **Bowoto v. Chevron Texaco Corp.**, 312 F.Supp.2d 1229 (N.D.Cal. 2004) ..................... 18, 19, 20

13  **Brennan v. Valley Towing Co., Inc.**, 515 F.2d 100, 104 (9th Cir. 1975) ................................. 21

14  **Brown v. Money Tree Mortg., Inc.**, 222 F.R.D. 676, 680 (D.Kan. 2004) ................................. 11

15  **Bureerong v. Uvawas,** 922 F.Supp. 1450, 1469-1470 (C.D. Cal. 1996)...................................... 18

16  **Camper v. Home Quality Mgmt., Inc.**, 200 F.R.D. 516, 529 (D. Md. 2000)............................ 12

17  **Casas v. Conseco Finance Corp.**, 2002 WL 507059 ........................................................ 24

18  **Celotex Corp. v. Catrett**, 477 U.S. 317, 323-27, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ......... 17

19  **Church v. Consolidated Freightways, Inc.**, 137 F.R.D. 294, 306 (N.D.Cal.1991)................... 14

20  **Daggett v. Blind Enterprises of Oregon, et al.**, 1996 U.S. Dist. LEXIS 22465........................ 14

21  **DeAsencio v. Tyson Foods, Inc.**, 130 F.Supp.2d 660, 663 (E.D. Pa. 2001) ................................ 12

22  **Douglas v. Argo-Tech Corp.**, 113 F.3d 67, 70 (6th Cir.1997) .................................................. 21

23  **Falk v. Brennan**, 414 U.S. 190, 195, 94 S.Ct. 427 (1973) ......................................................... 18

24  **Gerlach v. Wells Fargo & Co.**, 2006 WL 824652 at *1 (N.D. Cal. 2006)............ 9, 10, 11, 12, 13

25  **Gilbreath v. Cutter Biological, Inc.**, 931 F.2d 1320, 1329 (9th Cir. 1991) ................................. 18

26  **Grayson v. K-Mart Corp.**, 79 F.3d 1086, 1106 (11th Cir. 1996)................................................... 9

27  **Guzman v. Varco Intern., Inc.**, 2002 WL 32639237 at *3 (S.D. Tex.) ...................................... 12

28  **Helton v. K-Mart**, 519 U.S. 987, 117 S.Ct. 447, 136 L.Ed.2d 342 (1996) ................................... 9

**Hipp v. Liberty National Life Ins. Co.**, 252 F.3d 1208, 1219 (11th Cir. 2001) ........................ 11

**Hoffmann-La Roche Inc. v. Sperling**, 493 U.S. 165, 170, 110 S.Ct. 482, 107 L.Ed.2d 480
(1989) ....................................................................................................... 9, 10, 14, 16

**Idaho Sheet Metal Works, Inc. v. Wirtz**,
383 U.S. 190, 86 S.Ct. 737, 15 L.Ed.2d 694 (1969) ................................................. 21

**Int'l Broth. of Teamsters…**, 50 F.3d 770 (9th Cir. 1995)....................................... 18, 19

**Kalish, et al. v. High Tech Inst.**, 2005 WL 1073645, at *4 (D. Minn. 2005) ............................ 15

**Kang v. U. Lim America, Inc.**, 296 F.3d 810 (9th Cir. 2002) ...................................... 18

**Kinney Shoe Corp. v. Vorhes**, 564 F.2d 859, 862 (9th Cir. 1977)........................................ 14

**Leuthold v. Destination America, Inc.**, 224 F.R.D. 462, 466-467 (N.D. Cal 2004) ..... 10, 11, 15

**Mitchell v. Kentucky Fin. Co.**, 359 U.S. 290, 291, 79 S.Ct. 756, 3 L.Ed.2d 815
(1959) ............................................................................................................. 21, 23, 24

**Morrison v. Executive Aircraft Refinishing, Inc.**, 434 F. Supp. 2d 1314, 1318-19 (S.D. Fla.
2005) ................................................................................................................... 21

**Murray v. Miner**, 74 F.3d 402, 405 (2nd Cir. 1996) ................................................. 19

**NLRB v. Big Bear Supermarkets No. 3**, 640 F.2d 924, 928 (9th Cir. 1980) ............................ 20

**Patton v. Thomson Corp.**, 364 F. Supp. 2d 263, 266 (E.D.N.Y. 2005) ...................................... 16

**Pearson v. Component Technology Corp.**, 347 F.3d 471 (3rd Cir. 2001) .......................... 18, 19

**Philips v. Walling**, 324 U.S. 490, 493, 65 S.Ct. 807, 89 L.Ed. 1095 (1945)................................ 21

**Prentice v. Fund for Public Interest Research, Inc.**,
2007 WL 2729187, at *2 (N.D. Cal. 2007)..................................................... 10, 12, 15

**Randolph v. Budget Rent-A-Car**, 97 F.3d 319, 326 FN1 (9th Cir. 1996)…………………………18

**Rees v. Souza's Milk Transp., Co.**, 2006 WL 738997 at *3 (E.D. Cal. 2006) ......... 10, 11, 13, 15

**Renfro v. City of Emporia, Kan.**, 741 F. Supp. 887, 888 (D. Kan. 1990)................................ 21

**Roebuck v. Hudson Valley Farms, Inc.**, 239 F. Supp. 2d 234, 241 (N.D.N.Y. 2002) ............... 16

**Schewd v. Gen. Elec. Co.**, 159 F.R.D. 373, 375 (N.D.N.Y. 1995) ................................. 9

**Severtson v. Phillips Beverage Co.**, 141 F.R.D. 276, 278 (D. Minn. 1992) .............................. 12

**Shapero v. Kentucky Bar Ass'n**, 486 U.S. 466 (1988) ................................................... 16

**Stanfield, et al. v. First NLC Financial**, Case No. 4:06-cv-03892-SBA, Dkt. #110 (N.D. Cal.
2006) ..................................................................................................................... 10

**Thiessen v. GE Capital Corp.**, 267 F.3d 1095, 1103 (10th Cir.2001) ........................................ 12

**Tripodi v. Microculture, Inc.**, 397 F. Supp. 2d 1308 (D. Utah 2005)........................................ 21

**Vaszlavik v. Storage Tech. Corp.**, 175 F.R.D. 672, 678 (D.Colo. 1997) .................................. 11

**Wertheim v. State of Arizona**, 1993 WL 603552, *1 (D.Ariz.)................................................. 14

**West v. Border Foods, Inc.**, 2006 WL 1892527 (D. Minn. 2006)............................................... 12

**Wynn v. National Broadcasting Co., Inc.**,
    234 F.Supp.2d 1067, 1067 (C.D. Cal. 2002) ............................................................ 11, 18, 19

**Young v. Cooper Cameron Corp.**, 229 F.R.D. 50, 54 (S.D.N.Y. 2005)..................................... 14

**STATUTES**

29 C.F.R. § 207(a)(1)…………………………………………………………………..21

29 C.F.R. § 541.100(a)(3) ...................................................................................................... 23

29 C.F.R. § 541.203(b) (2004) .............................................................................................. 22

29 C.F.R. § 541.300(2)(i) ....................................................................................................... 23

29 C.F.R. § 541.301 ................................................................................................................ 23

29 U.S.C. §203(d); ................................................................................................................. 18

29 U.S.C. § 216(b)………………………………………………………………………1

1

MOTION

2    Please take notice that on February 1, 2007, at 9:00 a.m., in the courtroom of the

3    Honorable Maxine Chesney of the above-mentioned Court, Plaintiffs Philip Wong, et al., will and

4    hereby do move for an order that this case will proceed as a collective action pursuant to the Fair

5    Labor Standards Act, 29 U.S.C. § 216(b).

6

7    Plaintiffs at this time move for the conditional certification of the following collective

8    class:

9    All persons who are or have been employed by Defendant as a Senior Retail
     Mortgage Lending Consultant, Retail Mortgage Lending Consultant, and/or
10   Premier Mortgage Sales Officer (collectively, "loan officer") within the United
     States at any time three years prior to the filing of this Complaint, to the final
11   disposition of this case.

12

13   With conditional certification, Plaintiffs move for production of updated class list in excel

14   format within 10 days of the date this motion is granted, to distribute the Court's FLSA collective

15   action notice expeditiously and cost-effectively. Plaintiffs further move under Fed.R.Civ.P. 56 for

16   a partial summary judgment that the current named Defendants, HSBC Mortgage Corporation

17   (USA) and HSBC Bank, USA, NA, are properly-named employers of the conditionally-certified

18   class members under the FLSA. Finally, with conditional certification of the loan officers' class,

19   Plaintiffs move for partial summary judgment under Fed.R.Civ.P. 56 on all exemptions under the

20   FLSA other than the "outside sales" exemption.

21

22   This motion is based upon: the notice of motion and motion; accompanying memorandum

23   of points and authorities; and accompanying declarations and exhibits.

24

25   **I. <u>INTRODUCTION</u>**

26   At this early stage of the litigation, Plaintiffs bring four motions necessary to shape the

27   scope and direction of the litigation of this case. **<u>First</u>**, the Plaintiffs who are, or were, employed

28

PLAINTIFFS' FLSA CONDITIONAL CERTIFICATION
AND PARTIAL SUMMARY JUDGMENT MOTION,
07-2446 MMC

by Defendants as "loan officers,"[1] bring a motion for conditional certification and judicial notice under section 216(b) of the Fair Labor Standards Act ("FLSA").[2]  This motion is one that is granted as a matter of routine in loan officer "misclassification" overtime cases such as this one, and should be granted here. **Second**, to facilitate the notice to the "similarly situated" employees, Plaintiffs seek an Order requiring Defendants to produce an updated list, in Excel format, of the potential plaintiffs to whom judicial notice will be sent, within ten (10) days of the date the Motion is granted.  **Third**, Plaintiffs seek a determination now that HSBC Mortgage Corporation (USA) and HSBC Bank, NA, fall within the extremely broad definition of "employer," under the FLSA, as to the Plaintiffs.

Granting judicial notice to the loan officers, and ordering the production of the updated, detailed list, will provide all similarly-situated employees the opportunity to join this case, as contemplated by Congress and the United States Supreme Court, before their claims fall to the ticking statute of limitations. Once notice is sent, and the potential plaintiffs file their consent forms, and with the Defendants firmly ascertained, the parties to this action will be fully identified and discovery in this case can proceed accordingly.

**Fourth**, the Plaintiff loan officers move for summary judgment with respect to all of Defendants' potential FLSA exemption affirmative defenses[3] apart from the "outside sales exemption," which should become the total focus of discovery on the FLSA claims. Based upon Defendants' admissions and what little discovery the parties have already conducted, the Court

---

[1] Defendants have admitted that Senior Retail Mortgage Lending Consultants, Retail Mortgage Lending Consultants, and Premier Mortgage Consultants are also commonly known as "loan officers." **Exhibit 1, Defendant's Responses to Plaintiffs' Requests for Admissions**, Admission #20; **Exhibit 3, Excerpts of Fed.R.Civ.P. 30(b)(6) Deposition Testimony, David Gates** (hereafter, "**Exh. 3**"), at pp. 18-19.

[2] Plaintiffs do not at this time move for certification regarding the "sales assistants" aka "Field Assistants" aka "Loan Production Office Assistants," currently represented among the Plaintiffs by Leslie Marie Shearn and Stephanie Chu. All references to "Plaintiffs" in this brief hereafter are to the named and opt-in Plaintiffs who are or were loan officers, and the putative class of loan officers.

[3] Defendant's exemption affirmative defense is pled without any specificity, as the Fourth Affirmative Defense in Defendant's Answer to the Amended Complaint, Dkt. #52. Plaintiffs have thus assumed that Defendants allege all available exemption defenses, and herein establish that no dispute of material fact exists and summary judgment is

should now grant summary judgment denying the affirmative defenses embodied in the "white collar" (administrative, executive, and professional) and "retail sales" (also known as section 7(i)) exemptions.

II.    **STATEMENT OF RELEVANT FACTS**

    A.    **Plaintiffs are Loan Officers Employed by Defendants.**

Plaintiffs Philip Wong, Frederic Chaussy, and Leslie Marie Shearn were employed by Defendants as "Retail Mortgage Lending Consultants" and "Senior Retail Mortgage Lending Consultants" (also known as "loan officers").[4] They bring this collective action under the FLSA on behalf themselves and other loan officers, all of whom Defendants misclassified as "exempt" employees, resulting in Defendants' failure to pay Plaintiffs and the collective class overtime compensation during all weeks in which they worked more than forty (40) hours.

Twenty-two former and current employees of Defendants have filed written consent to join forms consistent with the requirements of 29 U.S.C. § 216(b).[5] Plaintiffs, along with these additional opt-in Plaintiffs, were (or are) employed by Defendants as loan officers working for Defendants in California, New York, New Jersey, and Pennsylvania (collectively referred to herein as "Plaintiffs"). Fifteen of these Plaintiffs, one of their sales assistants, and one of their managers have submitted declarations in support of this motion. **Exhibit 2, Plaintiffs', Opt-In Plaintiffs', Sales Assistant, and Manager Declarations.**

HSBC Mortgage Corporation (USA) ("the Mortgage Corporation") is a wholly-owned subsidiary of HSBC Bank USA, NA ("the Bank") (**Exh. 3** at p. 44), and serves as the mortgage

---

warranted at this time as to all but the outside sales exemption.

[4] Opt-in Plaintiffs Alysse Gora, Karen Flanagan, and Larry Lee, among others, were employed as "Premier Mortgage Sales Officers" (**Exhibit 2,** Gora, Flanagan, and Lee Declarations), a position which is just another title for a loan officer. **Exhibit 3,** pp. 18-19.

[5] Plaintiffs also filed consents on behalf of several individuals (Brunn, Harris, Medly, and Candell) who appear to be ineligible for this suit by virtue of having worked in a different area of HSBC from Plaintiffs. Plaintiffs will file

department for the Bank, providing products and services to the Bank's customers.[6] **Exhibit 4, Excerpts of Fed.R.Civ.P. 30(b)(6) Deposition Testimony, Susan Marczak** (hereafter, "**Exh. 4**"), pp. 15-16, 27, 28, 81 ("we have a seamless customer view"); **Exh. 3** at pp. 59-60.[7] The Mortgage Corporation's managers report directly to a chain of command at the Bank (**e.g., Exh. 3** at pp. 13-14),[8] and the Bank and other HSBC entities, in turn, provide all Human Resources and personnel-related support to the Mortgage Corporation and Bank jointly.[9] **Exh. 3** at pp. 18, 38-39, 124, 137; **Exh. 4** at p. 39, 43-46, 50, 70-74, 76-78, 83, 103. In addition to the unified Human Resources and personnel functions, the Mortgage Corporation has no independent advertising, public relations, information technology, payroll, compensation, legal services, record-keeping, or marketing functions, and no logo or website, other than those provided by the Bank and for the Bank by other entities within the HSBC North America Holdings umbrella. **Exh. 3** at pp. 20-24, 50, 64, 122; **Exh. 4** at pp. 21, 35, 43-44, 50, 61, 62, 63-64, 76, 79-82, 85-86, 96, 119. The loan officers work from Bank locations, and the Bank is their largest referral source. **See, e.g., Exh. 2,** Wong Dec. at ¶2, Wong Dec. at Attachment 1; **Exh. 3** at p. 101; **Exh. 4** at p. 34; **Exhibit 5, Excerpts of Deposition of Philip Wong,** pp. 115-116. The Bank's top officers have management control over the Mortgage Corporation's assets -- the Mortgage Corporation head, Steven Tich, has the Bank title, "Executive Vice President," and is accountable to Bank upper management regarding all financial matters relating to the Mortgage Corporation. **Exh. 3** at p. 47, 145.[10] The

---

[6] Other testimony and documents call the Mortgage Corporation the "mortgage division," "mortgage unit," and the mortgage "line of business" for the Bank. **See, e.g., Exhibit 6,** Bank Fact Sheet (Marczak Depo.# 4); **Exh. 3** at p. 59.

[7] All customers that come through HSBC Bank are offered residential mortgages that are available through HSBC Mortgage Corporation (USA). **Exh. 3** at p. 41.

[8] The Mortgage Corporation has no Chief Executive Officer, Chief Operating Officer, or Chief Information Officer of its own. **Exh. 4** at pp. 22, 35,

[9] The Human Resources Director for HSBC Mortgage Corporation (USA) is, in fact, an employee of HSBC Bank, USA, NA, and provided deposition testimony December 19, 2007, corroborating the facts asserted here. Excerpts from her deposition transcript, not yet available, may be supplied to supplement this Motion at a later date. For now, the attached **Declaration of Bryan Schwartz, Esq.** corroborates that all representations made about Ms. Jennings' testimony herein are true and correct.

[10] Ms. Jennings corroborated this statement further in her December 19, 2007 deposition.

PLAINTIFFS' FLSA CONDITIONAL CERTIFICATION
AND PARTIAL SUMMARY JUDGMENT MOTION,
07-2446 MMC

Bank provides credit risk assessments which affect the Mortgage Company's financial decisions and lending strategy. **Exh.** 4 at p. 38. All assets of the Bank and Mortgage Corporation are formally held by HSBC North America Holdings. **Exhibit 7**, HSBC North America Holdings Fact Sheet (Gates Depo. #6). Though the Mortgage Corporation's employees are "not technically considered Bank employees because they have their own legal entity," they are commonly understood to be Bank employees. **See, e.g., Exh. 4** at p. 56, 81.

> **B.    All Loan Officers Peformed the Same Job With the Same "Primary Duty."**

Defendants and Plaintiffs agree that as loan officers, Plaintiffs' primary duty was to sell Defendants' loans products following the company's guidelines and procedures. **Exh. 3** at pp. 20-29, 130-131; **Exh. 2.**[11] The parties also agree that Plaintiffs have no supervisory authority. **Exh. 3** at pp. 20-21; **Exh. 2,** Wong Dec. at ¶2. In addition, it is undisputed that the loan officers did not need any specialized educational background to perform the job. **Exh. 2,** Wong Dec. at ¶9**; Exhibit 8, Sample Resumes for Loan Officer Position:** Wong Depo. #1 (Asian American Studies major); Hor Application (No college degree, MORT 1007-1011); Yee Application (Psychology major, MORT 1072-1075; Gora Application (2 years college unspecified field, MORT 1145)**.**[12]

> **C.    Defendants Trained All Loan Officers to Peform Their Job in the Same Manner, Subject to the Same Policies, Procedures, and Production Requirements.**

All of Defendants' loan officers perform the same job, subject to the same policies and procedures nationwide. **See**, **e.g., Exh. 3** at p. 19, 137.[13] Upon hiring, all loan officers are required to travel to Defendants' corporate headquarters in Buffalo, New York, to participate in the same

---

[11] Wong Dec. at ¶2; Lim Dec. at ¶2; Malone Dec. at ¶3; DeSouza Dec. at ¶2; Pincar Dec. at ¶5; Lee Dec. at ¶2; Hor Dec. at ¶2; Chaussy Dec. at ¶2; Gora Dec. at ¶3; Kanazawa Dec. at ¶2; Yee Dec. at ¶2; Flanagan Dec. at ¶3; Lacy Dec. at ¶3; Henry Dec. at ¶2; Cox Dec. at ¶2; Schultes Dec. at ¶3.

[12] Ms. Jennings explicitly admitted on behalf of the Bank in her December 19, 2007 deposition that no advanced specialized intellectual instruction is necessary to become a loan officer.

[13] Ms. Jennings corroborated this statement extensively in her December 19, 2007 deposition.

week long training program where they learn "everything from how to sign on to the computer system to product to high trust selling." **Exh. 3** at pp.70-71. **See** **also** **Exh. 4** at pp. 109-110 (Bank employee supervises all trainers at Mortgage Corporation for nationwide sales training). They are all trained to understand the same products, process, technology, and systems. **Exh. 3** at p. 71.

> **D.    Defendants Compared and Contrasted All Loan Officers, Subjecting Them to the Same Production Requirements and Disciplinary Procedure.**

Defendants subjected the loan officers to the same performance goals nationwide, described by Defendants as "minimum break-even" requirements. **Exh. 3** at pp. 92–93.   For those loan officers who do not meet these performance standards, Defendants maintain a progressive disciplinary procedure that applies to loan officers nationwide, published in the national employees' handbook. **Id.**; **see** **also** **id.** at p. 137; **Exh. 4** at pp. 112-113.[14] The format consists of a verbal warnings, written warnings, and corrective action plans that are coordinated through Defendants' human resources department. **Exh. 3** at p. 124-125.  Defendants compare and contrast the performance of loan officers, and hold an annual sales contest where the top producing loan officers qualify for trips to desirable locations. **Exh. 3** at pp. 109-110.

> **E.    Plaintiffs Testify, and Defendants Admit They Cannot Rebut, That They Worked Overtime Hours and Worked Primarily in Defendants' Branch Offices and Their Home Offices.**

Plaintiffs testify that they routinely worked over forty (40) hours a week, sometimes in excess of sixty (60) hours. **Exh. 2**.[15] Plaintiffs also testify that they worked the vast majority of their time in Defendants' offices and from their home offices. **Exh. 2**.[16] Plaintiffs' testimony is

---

[14] Ms. Jennings provided extensive testimony about how she administers this disciplinary program for the Mortgage Corporation nationwide.

[15] Wong Dec. at ¶5; Malone Dec. at ¶¶5, 6; Desouza Dec. at ¶4; Pincar Dec. at ¶4; Lee Dec. at ¶4; Hor Dec. at ¶4; Chaussy Dec. at ¶¶ 4, 7; Gora Dec. at ¶7; Chu Dec. at ¶3; Kanazawa Dec. at ¶4; Yee Dec. at ¶¶4, 7; Flanagan Dec. at ¶ ¶5, 7; Lacy Dec. at ¶4; Henry Dec. at ¶4; Cox Dec. at ¶4; Schultes Dec. at ¶5.

[16] Schultes Dec. at ¶¶2, 4, 5, 7, 8; Henry Dec. at ¶¶2, 3, 5; Cox Dec. at ¶¶2, 3, 5; Lacy Dec. at ¶¶4, 5; Flanagan Dec. at ¶¶4, 5, 6, 7; Yee Dec. at ¶¶4, 7;  Kanazawa Dec. at ¶¶3, 4, 5; Chu Dec. at ¶3; Gora Dec. at ¶¶4, 6, 7, 8; Chaussy

1
2

substantiated by, **inter alia**, Defendants' "branch schedules" and other documents which show

that Plaintiffs were expected to work in the offices routinely. **Exh. 2,** Wong Dec. at Attachment 1.

3
4
5
6
7
8
9
10
11

     Meanwhile, Defendants admit that they cannot dispute that loan officers have worked

more than 40 hours per week and have made no effort to record the hours worked by loan

officers. **Exh. 3** at pp. 60, 77; **Exh. 1,** Admission #4. Nor do Defendants have any system for

tracking whether the loan officers are performing their jobs inside or outside of the office, or the

percentage of time for each. **Exh. 3** at pp. 60, 62-63, 72. Plaintiffs confirm the lack of any effort

to record their time. **Exh. 2.**[17] Defendant Mortgage Corporation's Fed.R.Civ.P. 30(b)(6) corporate

designee was asked and answered as follows in deposition, admitting that Defendants have no

way of comprehensively reconstructing when or where Plaintiffs worked:

12
13

Q:    How does Mortgage Corp. track what percent of time the loan officers
    work in those different places?

14

A:    We don't.

15
16

Q:    Are there – do the loan officers have any kind of time-keeping system that
    they utilize?

17

A:    No.

          * * * * *

18
19
20

Q:    Okay. But you have no way of going back and reconstructing where Philip
    Wong or Frederick Chaussy or any other loan officer was on a particular
    day?

21

A:    No

22
23

Q:    So if the – if the loan officers provide testimony that they spent more than
    50 percent of their time working either out of the HSBC Mortgage Crop.
    Offices or out of the HSBC Bank branches or out of the home office, then
    you have no evidence that could rebut that?

24

OBJECTION

25

A:    No, not that I'm aware of. I don't have anything that I could get my hands

26
27
28

Dec. at ¶¶2, 3, 4, 5; Hor Dec. at ¶¶3, 4, 5; Lee Dec. at ¶¶2, 3, 4, 5; Pincar Dec. at ¶6; Desouza Dec. at ¶¶3, 4, 5; Lim
Dec. at ¶¶3, 5; Malone Dec. at ¶¶4, 6; Wong Dec. at ¶¶2, 3, 4, 5, 6, 7.
[17] Schultes Dec. at ¶9; Henry Dec. at ¶8; Cox Dec. at ¶8; Lacy Dec. at ¶8; Flanagan Dec. at ¶10; Yee Dec. at ¶10;
Kanazawa Dec. at ¶8; Gora Dec. at ¶11; Chaussy Dec. at ¶8; Hor Dec. at ¶8; Lee Dec. at ¶7; Pincar Dec. at ¶10;
Desouza Dec. at ¶8; Lim Dec. at ¶7; Malone Dec. at ¶9; Wong Dec. at ¶11.

on.

**Exh. 3** at pp. 60-63; <u>see</u> <u>also</u> **Exh. 3** at p. 92 (phone records will not rebut Plaintiffs'

inside sales contention).


### F.    Defendants Compensated All Loan Officers in the Same Manner.

Defendants compensate their loan officers under the same compensation plan and commission schedule. **Exh. 3** at pp. 29–30, 93-94, 96, 111-112; **Exhibit 9, Incentive Plan** (Gates Depo. #11). The compensation plan is disseminated to all loan officers by Defendants' human resources department, and constitutes the only such plan for loan officers nationwide. **Exh. 3** pp. 96-97; **Exh. 4** at pp. 96, 98. Defendant Mortgage Corporation's Fed.R.Civ.P. 30(b)(6) designee admitted that, nationwide, Defendant does not ensure that loan officers are paid minimum wage, or more than \$455/week, which is corroborated by Plaintiffs.[18] **Exh. 3** at pp. 31-32, 128; **Exh. 2.**[19]

### G.    Defendants Misclassified All Loan Officers As "Exempt," Paying None of Them Overtime Compensation.

Finally, Defendants classify all loan officers as "exempt" employees, not eligible for overtime compensation. **Exh. 3** at p. 73; **Exh. 1**, Admission #1. Defendants executed the classification decisions made by all of HSBC North American Holdings' centralized compensation department. **Exh. 3** at pp. 73–74, 77. As a result, Defendants do not pay any of the loan officers overtime compensation. **Exh. 1,** Admissions #1, 4. **See also**, **e.g., Exh. 2,** Wong Dec. at ¶2.


### III.    PLAINTIFFS' MOTIONS FOR CONDITIONAL CERTIFICATION AND JUDICIAL NOTICE, AND FOR PRODUCTION OF AN UPDATED CLASS LIST,

---

[18] Ms. Jennings further admitted that Defendant does not comply with California's or New York's higher minimum wage.

[19]**See**, **e.g., Exh. 2.**: Wong Dec. at ¶10; Lacy Dec. at ¶7; Chaussy Dec. at ¶7; Desouza Dec. at ¶7.

1      **SHOULD BE GRANTED.**

2          Plaintiffs seek conditional certification and court-facilitated notice to all of Defendants'

3  loan officers in this collective action pursuant to the FLSA, 29 U.S.C. § 216(b).  The FLSA

4  specifically contemplates plaintiffs pursuing their claims collectively, stating that "[a]n action . . .

5  may be maintained against any employer . . . in any Federal or State court of competent

6

7  jurisdiction by any one or more employees for and in behalf of himself or themselves and other

8  employees similarly-situated."  29 U.S.C.  §216(b).  The collective action procedure allows for

9  efficient adjudication of similar claims, because "similarly situated" employees, whose claims are

10  often small and not likely to be brought on an individual basis, may join together and pool their

11  resources to prosecute their claims.  **See Hoffmann-La Roche Inc. v. Sperling**, 493 U.S. 165,

12  170, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989).

13          An FLSA "collective action" under section 216(b) is defined by three important features.

14  First, in order to participate in a collective action, an employee must "opt in," meaning the

15  employee must consent in writing to join the suit and that consent must be filed with the court.

16

17  **Hoffmann-La Roche**, 493 U.S. at 168; **Gerlach v. Wells Fargo & Co.**, 2006 WL 824652 at *1

18  (N.D. Cal. 2006) (Wilken, J.).

19          Second, the statute of limitations runs on each employee's claim until his individual opt-in

20  form is filed with the court. **See Grayson v. K-Mart Corp.**, 79 F.3d 1086, 1106 (11th Cir. 1996),

21  **cert. denied, Helton v. K-Mart**, 519 U.S. 987, 117 S.Ct. 447, 136 L.Ed.2d 342 (1996) (holding

22  that the statute of limitations ceases to run only when each employee files a consent form).

23

24  Judicial notice promotes the remedial purpose of Section 216(b) by preventing the erosion of

25  claims due to the FLSA's statute of limitations.  **See Schewd v. Gen. Elec. Co.**, 159 F.R.D. 373,

26  375 (N.D.N.Y. 1995) ("even where later discovery proves the putative class members to be

27  dissimilarly situated, notice to those preliminary identified as potential plaintiffs prior to full

28

discovery is appropriate as it may further the remedial purpose of the [FLSA]"); **see also Bailey v. Ameriquest Mortgage Co.**, 2002 WL 100388, at *2 (D. Minn.) (recognizing that notice to potential class members promotes the remedial purpose of the FLSA). As a result, the longer Defendants are able to delay court-facilitated notice, the more claims fall victim to the statute of limitations.

Third, to serve the "broad remedial purpose" of the FLSA, courts can order notice to other potential, similarly-situated employees to inform them of this opportunity to "opt into" the case. **Hoffmann-La Roche**, 493 U.S. at 173; **Leuthold v. Destination America, Inc.**, 224 F.R.D. 462, 466-467 (N.D. Cal. 2004) (Walker, J.).

In light of these three important features, Court-supervised notice is a preferred method for managing this notification process for several reasons: it avoids "multiplicity of duplicative suits;" it allows the court to set deadlines to advance the disposition of an action; it furthers the "wisdom and necessity for early judicial intervention" in multi-party actions, and it protects plaintiffs' claims from expiring under the statute of limitations. **Hoffmann-La Roche**, 493 U.S. at 171-73; **Adams v. Inter-Con Security Sys., Inc.**, 242 F.R.D. 530, 542 (N.D. Cal. 2007) (Patel, J.); **Prentice v. Fund for Public Interest Research, Inc.**, 2007 WL 2729187, at *2 (N.D. Cal. 2007) (Conti, J.).

A.    **Because Discovery is Incomplete, this Case is at the First Stage of the FLSA's Two-Step Certification Process.**

Courts in the Ninth Circuit and nationwide analyze conditional class certification motions in FLSA cases with a two-tiered analysis to determine whether the plaintiffs and putative class are "similarly situated." **Rees v. Souza's Milk Transp., Co.**, 2006 WL 738997 at *3 (E.D. Cal. 2006). **See also**, **e.g.**, **Leuthold**, 224 F.R.D. at 466-467; **Gerlach**, 2006 WL 824652 at *2; **Stanfield, et al. v. First NLC Financial**, Case No. 4:06-cv-03892-SBA, Dkt. #110 (N.D. Cal.

2006) (Armstrong, J.);[20] **Wynn v. National Broadcasting Co., Inc.**, 234 F.Supp.2d 1067, 1067 (C.D. Cal. 2002); **Hipp v. Liberty National Life Ins. Co.**, 252 F.3d 1208, 1219 (11th Cir. 2001); **Brown v. Money Tree Mortg., Inc.**, 222 F.R.D. 676, 680 (D.Kan. 2004). "In utilizing this [two-tiered] approach, a court typically makes an initial 'notice stage' [first tier] determination of whether plaintiffs are 'similarly situated.'" **Rees**, 2006 WL 738997 at *3, citing **Vaszlavik v. Storage Tech. Corp.**, 175 F.R.D. 672, 678 (D.Colo. 1997). It is at this stage where the Court's very lenient standard for conditional class certification prevails. **Wynn**, 234 F.Supp.2d at 1067. "At the conclusion of discovery (often prompted by a motion to decertify), the court then makes a second determination, utilizing a stricter standard of 'similarly situated.'" **Rees**, 2006 WL 738997 at *3.

The California Federal District Courts particularly emphasize that first-stage analysis is applied until discovery is **complete**. **Adams**, 242 F.R.D. at 539, **Gerlach**, 2006 WL 824652 at *2; **Rees**, 2006 WL 738997 at *3; **Leuthold**, 224 F.R.D. at 467. Even where "extensive" discovery has occurred, including "dozens of depositions" and the exchange of "volumes of paper" discovery, this Court has steadfastly applied the first-tier analysis. **Gerlach**, 2006 WL 824652 at *2; **Rees**, 2006 WL 738997 at *3; **Leuthold**, 224 F.R.D. at 467. Such application is the "most equitable means of proceeding." **Leuthold**, 224 F.R.D. at 468.

Needless to say, the parties are not at or near the conclusion of discovery in this matter. Indeed, the parties have just begun, with Plaintiffs deposing three corporate desginees in response to a deposition notice under Rule 30(b)(6), Defendants deposing one of the named-Plaintiffs, and Defendants producing employee lists and a handful of other documents. **Declaration of Bryan J. Schwartz, Esq.** Although Plaintiffs have served and Defendants answered the first set of discovery, Defendants have yet to produce the vast majority of documents in response to the

---

[20] The **Stanfield** Order is attached as **Exhibit 10.**

discovery requests, and many depositions which Plaintiffs are and will be seeking have not even been scheduled. **Id.**  As such, the second-tier analysis is inapplicable here, and the lenient first-stage analysis favors granting conditional certification.

### B. Plaintiffs Easily Meet the Standard to Show "Some Factual Basis" for Their Contention That Employees are Similarly-Situated and Therefore Merit First Stage Conditional Class Certification and Court-Facilitated Notice.

At this stage, to gain conditional class certification, Plaintiffs need only establish a "that there is some factual basis beyond the mere averments in their complaint for the class allegations." **Adams**, 242 F.R.D. 530, 536; (citing **West v. Border Foods, Inc.**, 2006 WL 1892527 (D. Minn. 2006)). Applying the first-tier, notice-level analysis, "a court 'require[s] nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan.'" **Rees**, 2006 WL 738997 at *3, citing **Thiessen v. GE Capital Corp.**, 267 F.3d 1095, 1103 (10th Cir.2001), **cert. denied**, 536 U.S. 934, 122 S.Ct. 2614, 153 L.Ed.2d 799 (2002). **See also Severtson v. Phillips Beverage Co.**, 141 F.R.D. 276, 278 (D. Minn. 1992) (Plaintiffs need only establish a "colorable basis for their claim that the potential plaintiffs are similarly situated").

The burden on the Plaintiffs to allege some "colorable" or "reasonable" basis that they and the putative class are "similarly situated" is "not heavy," and may be met by detailed allegations supported by a very small number of sworn statements. **Prentice**, 2007 WL 2729187 at *2 (three declarations); **Rees**, 2006 WL 738997 at **3-4 (two declarations sufficient); **DeAsencio v. Tyson Foods, Inc.**, 130 F.Supp.2d 660, 663 (E.D. Pa. 2001) (four affidavits); **Camper v. Home Quality Mgmt., Inc.**, 200 F.R.D. 516, 529 (D. Md. 2000) (four declarations); **Guzman v. Varco Intern., Inc.**, 2002 WL 32639237 at *3 (S.D. Tex.) (three plaintiffs' statements).

As an example of the lenient threshold which suffices to obtain conditional class certification at this stage, Judge Claudia Wilken's decision in **Gerlach** is instructive, in that she

PLAINTIFFS' FLSA CONDITIONAL CERTIFICATION
AND  PARTIAL SUMMARY JUDGMENT MOTION,
07-2446 MMC

held that the plaintiffs were similarly situated with respect to their FLSA claims because they "share a job description, were uniformly classified as exempt from overtime pay by Defendants and perform similar job duties." **Gerlach**, 2006 WL 824652, at \*3. Here, it is undisputed that the loan officers share a job description, were uniformly classified as exempt from overtime pay, and perform similar job duties nationwide. As in **Gerlach**, conditional certification is appropriate.

In support of their motion, Plaintiffs have filed twenty-two (22) valid consent forms and seventeen (17) individualized, detailed declarations from Plaintiffs, opt-in Plaintiffs, one of their assistants, and one of their managers, describing circumstances relating to loan officers in more than a dozen locations across the country. **Exh. 2.** All of the declarations and consent forms describe similar practices of Defendants denying overtime to loan officers based upon their misclassification as exempt employees. The extent of Plaintffs' evidence submitted at this juncture is far more than enough to demonstrate a "colorable" or "reasonable" basis for conditional class certification.

C.     **Applying Relevant Precedents, This Court Should Not Consider the Merits of the Underlying Claims, Rule 23 Certification Factors, or Informal Notice Provided to Class Members When Conducting the First-Stage "Similarly Situated" Analysis.**

1.     **The "merits" of the claim are not considered.**

At this "conditional certification" stage, the Courts do not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be "similarly situated." **Adams**, 242 F.R.D. at 539 (rejecting arguments at first stage that "requires an evaluation of the merits of claims"); **Agdipa v. Grant Joint Union High School Dist.**, 2007 WL 1106099 (E.D. Cal. 2007) (requiring plaintiffs to go beyond their general allegations regarding Defendants' pay systems "would be to demand an inappropriate level of particularity for this stage of the litigation"); **Rees**, 2006 WL 738997 at \*6-7 (rejecting merits-based arguments on the grounds that "[a]t this early stage of the class proceeding, all that is required for class certification is

1    substantial allegations supported by declarations"); **see also**, **Young v. Cooper Cameron Corp.**,

2    229 F.R.D. 50, 54 (S.D.N.Y. 2005) ("the focus is not on whether there has been a violation of the

3    law, but on whether the proposed plaintiffs are 'similarly situated' with respect to their allegations

4    that the law has been violated").

5            2.    The standards for Rule 23 class certification are not applied.

6

7            "The clear weight of authority holds that Rule 23 procedures are inappropriate for the

8    prosecution of class actions under § 216(b)." **Kinney Shoe Corp. v. Vorhes**, 564 F.2d 859, 862

9    (9th Cir. 1977), **overruled on other grounds** in **Hoffman-LaRoche**, 493 U.S. at 165; **Ballaris**,

10   2001 WL 1335809 at *2 (D.Or. 2001). **See also** **Church v. Consolidated Freightways, Inc.**, 137

11   F.R.D. 294, 306 (N.D.Cal.1991) (Jensen, J.); **Wertheim v. State of Arizona**, 1993 WL 603552,

12   *1 (D.Ariz.) ("The requisite showing of similarity of claims under the FLSA is considerably less

13   stringent than the requisite showing under Rule 23 of the Federal Rules of Civil Procedure").

14   Many of the Fed.R.Civ.P. 23 protections are not necessary for a §216(b) collective action because

15   of the "opt in" requirement. **Daggett v. Blind Enterprises of Oregon, et al.**, 1996 U.S. Dist.

16   LEXIS 22465 at *15 (where a plaintiff is not bound to the judgment and the court can always

17   decide to decertify the class, the Fed.R.Civ.P. 23 protections not as crucial). The "opt in"

18   requirement presumes that a potential plaintiff has determined that joining the class outweighs

19

20   any benefit of pursuing an individual action. **Id.**

21

22           3.    **Plaintiffs' informal efforts in providing notice are not considered.**

23

24           Finally, informal efforts by plaintiffs and their counsel to provide notice to the potential

25   opt-ins through advertisement letters or other means are not factors to consider in determining

26   whether to approve court-authorized notice. **See**, **e.g.**, **Hoffmann-La Roche**, 493 U.S. at 172

27   (plaintiffs sent over 600 letters to potential class members prior to seeking judicial notice). "Court

28

PLAINTIFFS' FLSA CONDITIONAL CERTIFICATION
AND  PARTIAL SUMMARY JUDGMENT MOTION,
07-2446 MMC

intervention in the notice process for case management purposes is distinguishable in form and function from the solicitation of claims." **Id.** at 174.[21] **See** **also** **Kalish, et al. v. High Tech Inst.,** 2005 WL 1073645, at *4 (D. Minn. 2005) (finding the advertisement letters the plaintiffs' counsel sent to putative class members were not "notice").

Without the Court's intervention, it will remain unclear how many of the putative class members may want to participate in the suit. **Leuthold**, 224 F.R.D. at 468. Rejecting a defendant's contention that informal communications by plaintiffs with class members should bar judicial notice, Judge Vaughn Walker in **Leuthold** explained:

> The number and type of plaintiffs who choose to opt into the class may affect the court's second tier inquiry regarding the disparate factual and employment situations of the opt-in plaintiffs, as well as fairness and procedural issues. Bypassing the notice stage altogether would deprive the court of this information and might deprive some plaintiffs of a meaningful opportunity to participate. **Id.**

### D.    Plaintiffs Have Easily Met the "Similarly Situated" Standard Necessary at This Stage of the Litigation.

Defendants cannot seriously contest the fact that Plaintiffs and all other loan officers nationwide were "together the victims of a single decision, policy, or plan" that is alleged to violate the FLSA.  All loan officers: 1) performed the same job, in the same manner, with the same primary duty; 2) were all misclassified as exempt employees and denied overtime pay, and 3) routinely worked overtime hours but were all denied overtime compensation as a result of the misclassification.   These facts are confirmed by the admissions of Defendants' Fed.R.Civ.P. 30(b)(6) corporate designee and declarations from 16 Plaintiffs and a former manager.

This evidence easily meets the standard followed by this Court in routinely conditionally certifying such FLSA "misclassification" actions.  **See, e.g., Prentice**, 2007 WL 2729187, at *2; **Agdipa**, 2007 WL 1106099, at *2; **Beauperthuy v. 24 Hour Fitness USA, Inc.**, 2007 WL 2729187, at *7 (N.D. Cal. 2007) (Conti, J.); **Rees**, 2006 WL 738987, at 4; **Leuthold**, 224 F.R.D.

---

[21] Pre-certification communications such as the Plaintiffs' counsel's advertisement letters are constitutionally-

at 468-69.  Finally, other courts around the county have found notice to be proper in loan officer cases identical to this one.[22]

### E.    Plaintiffs' Notice Is Accurate and Informative.

Attached as **Exhibit 12** is Plaintiffs' proposed judicial notice.  As required, it is "timely, accurate, and informative."  **See Hoffmann-La Roche**, 493 U.S. at 172.  It is carefully drafted to mirror notice forms that courts have approved in previous misclassification loan officer cases.[23]  The proposed notice achieves the ultimate goal of providing employees accurate and timely notice concerning the pendency of the collective action, and should be adopted.

### F.    Production of the Updated List of Loan Officers Is Necessary to Facilitate Notice.

As discussed above, all loan officers employed by Defendants within the past three years are "similarly-situated" employees for purposes of the FLSA.  Thus, their identification to Plaintiffs is necessary in order to provide them with notice of the action as contemplated by the law.  **See Hoffmann-La Roche**, 493 U.S. at 170; **Patton v. Thomson Corp.**, 364 F. Supp. 2d 263, 266 (E.D.N.Y. 2005); **Roebuck v. Hudson Valley Farms, Inc.**, 239 F. Supp. 2d 234, 241 (N.D.N.Y. 2002).  Facing Plaintiffs' motion to compel on the issue, Defendants produced a list in discovery on November 5, 2007. **Schwartz Declaration.**  However, more than two months will have passed between that time and the hearing on this Motion, and Plaintiffs therefore request that, in addition to entering an Order granting conditional certification and approving Plaintiffs' notice, Defendants is ordered to produce to Plaintiffs the following within ten (10) days of its Order:

An updated list, in Excel format, of all persons employed by Defendant in the last

protected speech.  **Shapero v. Kentucky Bar Ass'n**, 486 U.S. 466 (1988).
[22] **See Exhibit 11, Loan Officer Cases Granting Conditional Certification.**
[23] **See Exhibit 13, Approved Notices in Loan Officer Misclassification Cases.**

PLAINTIFFS' FLSA CONDITIONAL CERTIFICATION
AND  PARTIAL SUMMARY JUDGMENT MOTION,
07-2446 MMC

three years as loan officers[24] at any of Defendants' locations, including for each his/her name, address, telephone number, dates of employment as a loan officer, location(s) of employment, employee number, and last four digits of his/her social security number.

## IV.    PLAINTIFFS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT SHOULD BE GRANTED.

### A.    Fed.R.Civ.P. 56 Permits Partial Summary Judgment.

Summary judgment is an integral part of the Federal Rules of Civil Procedure because it is designed to promote the just, speedy, and inexpensive resolution of actions.  **Celotex Corp. v. Catrett**, 477 U.S. 317, 323-27, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  An example of allowing for a just and speedy determination of an issue is found under Rule 56(c):  "A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."  Fed.R.Civ.P. 56(c).  The moving party may thus isolate and dispose of unsupported liability defenses although the parties have yet to agree on the amount of damages.  **See Celotex**, 477 U.S. at 323-24.

Summary judgment is appropriate when the evidence shows that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56.  Summary judgment should be granted unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 249-50 (1986).  Evidence that is "merely colorable, or is not significantly probative," is insufficient to avoid summary judgment.  **Id.** at 250.

### B.    Defendants Are Properly-Named Employers Under the FLSA's Broad Definition.

Defendant's Second Affirmative Defense claims that Defendants are not properly-named

---

[24] This includes the titles of Senior Retail Mortgage Lending Consultant, Retail Mortgage Lending Consultant, Premier Mortgage Sales Officers, and other related positions whose primary duty was "retail" mortgage sales at

1    "employers" under the FLSA. Dkt. #52. Yet, Section 203(d) of the FLSA defines the term

2    "employer" very broadly, as "any person acting directly or indirectly in the interest of an

3    employer in relation to an employee…." 29 U.S.C. §203(d); **Falk v. Brennan**, 414 U.S. 190, 195,

4    94 S.Ct. 427 (1973) (noting the "expansiveness" of the FLSA's definition of "employer"). **See**

5    **also Randolph v. Budget Rent-A-Car**, 97 F.3d 319, 326 FN1 (9th Cir. 1996) ("The definition of

6    the term 'employee' in the FLSA is extremely broad….('The Fair Labor Standards Act defines

7    'employee' simply as 'any individual employed by an employer,' and 'employ' as including 'to

8    suffer or permit to work.' 29 U.S.C. §§ 203(e)(1), 203(g). **Thus, the term 'employee' is used in**

9    **the broadest sense 'ever ⋯ included in any one act**.')" (Emph added.).

10

11        As to the Bank, a parent company can be liable under the FLSA (as under other federal

12   employee-protection statutes) for its subsidiaries that technically "employed" certain employees

13   (which the Bank seemingly contends is the case between Mortgage Corporation and the

14   Plaintiffs/opt-in Plaintiffs/putative class). **See**, **e.g., Bowoto v. Chevron Texaco Corp.**, 312

15   F.Supp.2d 1229 (N.D.Cal. 2004) (Illston, J); **Int'l Broth. of Teamsters…**, 50 F.3d 770 (9th Cir.

16   1995); **Kang v. U. Lim America, Inc.**, 296 F.3d 810 (9th Cir. 2002); **Wynn**, 234 F.Supp.2d at

17   1093-1094; **Pearson v. Component Technology Corp.**, 347 F.3d 471 (3rd Cir. 2001); **Murray v.**

18   **Miner**, 74 F.3d 402, 405 (2nd Cir. 1996). **See also Bureerong v. Uvawas**, 922 F.Supp. 1450,

19   1469-1470 (C.D. Cal. 1996) (considering "employer" definition, denying defendant's motion to

20   dismiss, applying same standard under FLSA and equivalent California statutes). "[T]here may be

21   more than one 'employer' of an 'employee' covered by the Act." **Gilbreath v. Cutter Biological,**

22   **Inc.**, 931 F.2d 1320, 1329 (9th Cir. 1991) (in concurrence), citing **Falk**, 414 U.S. at 195.

23        As Judge Susan Illston of this Court held, denying defendants' motion for summary

24

25

Defendants.

judgment in **Bowoto**, 312 F.Supp.2d at 1237, the appropriate test for defining an employer's liability under the FLSA (as under the other statutes designed to protect employees) is the "integrated enterprise" test:

> Under the integrated enterprise theory, courts have applied a far less stringent standard to the question of whether related employers can be held liable for one another's actions. This standard focuses on economic realities, rather than corporate formalities, and is applied in a variety of employment contexts, including disputes under the Labor Management Relations Act, Title VII, the Fair Labor Standards Act, the WARN Act and the Family and Medical Leave Act. **Id.**

Judge Illston proceeded to observe that "Courts applying the [integrated enterprise] test have noted rather carefully that Congress in passing these [employee protection] statutes had significant remedial purposes in mind, and that these standards are less stringent than those applied to traditional veil-piercing or agency questions." **Id.**, **citing Pearson**, 347 F.3d at 486. This Court cited **Pearson** (citing, in turn, **Murray**, 74 F.3d at 405) for the proposition that, "Ultimately 'the policy underlying the single employer doctrine [also referred to as the integrated enterprise theory] is the fairness of imposing liability for labor infractions where two nominally independent entities do not act under an arm's length relationship." **Bowoto**, 312 F.Supp.2d at 1238.[25] The integrated enterprise test contains four factors which will determine whether the Bank and Mortgage Corporation are appropriate Defendants, **i.e.,** if each was the employer of Plaintiffs, opt-in Plaintiffs and the putative class: 1) interrelation of operations; 2) common management; 3) centralized control of labor relations; and 4) common financial control. **Int'l Brotherhood**, 50 F.3d at 775; **Pearson**, 247 F.3d at 486; **Wynn**, 234 F.Supp.2d at 1093.

The parties have conducted little discovery in this matter, but suffice it to say that, by every test, Defendants are/were employers of Plaintiffs, opt-in Plaintiffs, and the putative class.

---

[25] **See also Int'l Broth. of Teamsters…**, 50 F.3d at 775 (embracing the "single employer" [or integrated enterprise] test in the labor context); **Wynn**, 234 F.Supp.2d at 1093-1094 (discussing the application of the integrated enterprise or single employer test under the ADEA and other employee-protection statutes).

**See** detailed discussion in Section **II.A, supra**.[26] The Mortgage Corporation is for all practical purposes a division of the Bank, with all operations and employee relations functions shared. The Mortgage Corporation's management is interconnected with and reports through the chain-of-command to the Bank's management, with the Bank's management ultimately exercising financial control over the Mortgage Corporation – and all assets of both being held commonly in HSBC North America Holdings. It is ultimately irrefutable evidence that Plaintiffs were offered their jobs by HSBC Bank USA, NA, to work at the Mortgage Corporation (aka, "our Mortgage Department."). **Exhibit 14, Examples of Plaintiffs' Job Offer Letters** (MORT 5-6, 80-81).

"Single employer [integrated enterprise] status ultimately depends on all the circumstances of the case and is characterized as an absence of an arm's length relationship found among unintegrated companies." **NLRB v. Big Bear Supermarkets No. 3**, 640 F.2d 924, 928 (9th Cir. 1980), **cert. denied**, 449 U.S. 919, 101 S.Ct. 318, 66 L.Ed2d 147 (1980); **see also Bonnette v. Cal. Health & Welfare Agency**, 704 F.2d 1465, 1469 (9th Cir. 1983) (economic realities considered). It would be disingenuous for the Bank to suggest that the Mortgage Corporation and the Bank are arm's-length transactors, based even on Plaintiffs' limited available information. Ultimately, "Courts do disregard the corporate form in some instances where such disregard is necessary to prevent injustice to a person or entity that would be harmed by refusing to impose liability on the basis of the corporate structure." **Bowoto**, 312 F.Supp.2d at 1235. The Court should find that HSBC Mortgage Corporation (USA), and HSBC Bank, USA, NA, are "employers" of the Plaintiffs, opt-in Plaintiffs, and the putative class under the FLSA, and deny Defendants' Second Affirmative Defense (Dkt. #52).

---

[26] Defendants' witnesses and documents note that Plaintiffs work/worked for Mortgage Corporation, so notwithstanding Defendant's Second Affirmative Defense suggesting that neither named Defendant employed Plaintiffs, it is undisputed that Mortgage Corporation did employ them, both under a corporate formalities test and under the much less stringent FLSA test.

C.    **Defendants Cannot Meet Their Heavy Burden of Pleading and Proving FLSA Exemption Defenses.**

The FLSA requires employers to pay its employees one and one half times their "regular rate" for each hour worked in excess of forty hours per week.  29 U.S.C. § 207(a)(1).  There are certain exemptions to this rule, and if an employer fails to compensate its employees for overtime hours worked, it bears the burden of demonstrating that the employee falls under one of these exemptions.[27] **Mitchell v. Kentucky Fin. Co.,** 359 U.S. 290, 291, 79 S.Ct. 756, 3 L.Ed.2d 815 (1959); **Idaho Sheet Metal Works, Inc. v. Wirtz**, 383 U.S. 190, 86 S.Ct. 737, 15 L.Ed.2d 694 (1969).

The scope of the exemptions is interpreted narrowly against the employer. **Douglas v. Argo-Tech Corp.**, 113 F.3d 67, 70 (6th Cir.1997), citing **Arnold v. Ben Kanowsky, Inc.**, 361 U.S. 388, 392 (1960). The exemptions are limited to those establishments **plainly and unmistakably** within their terms and spirit." **Id.** (emphasis added).  To do otherwise "is to abuse the interpretative process and to frustrate the announced will of the people."  **Philips v. Walling**, 324 U.S. 490, 493, 65 S.Ct. 807, 89 L.Ed. 1095 (1945).

1.    **Defendants relied upon the "outside sales" exemption in misclassifying Plaintiffs.**

Defendants limit themselves to one affirmative defense in this case – the FLSA outside sales exemption - both by their own stated intention and their admissions that exclude all other defenses.  When pressed as to the nature of the exemption that applies to the loan officer position,

---

[27] Indeed, courts have held that an FLSA exemption claim is an affirmative defense that must be specifically pled or risk being deemed waived under Fed. R. Civ. P. 8(c).  **Morrison v. Executive Aircraft Refinishing, Inc.**, 434 F. Supp. 2d 1314, 1318-19 (S.D. Fla. 2005); **Tripodi v. Microculture, Inc.**, 397 F. Supp. 2d 1308 (D. Utah 2005); **Renfro v. City of Emporia, Kan.**, 741 F. Supp. 887, 888 (D. Kan. 1990) ("Exemption from Fair Labor Standards Act's (FLSA) overtime requirements is affirmative defense that must be specifically pleaded or it is waived."); **see also Brennan v. Valley Towing Co., Inc.**, 515 F.2d 100, 104 (9th Cir. 1975) ("Since Valley Towing neither pleaded the § 213(a)(2) exemption, nor offered proof to support each element required for it to be applicable, we shall not depart from those decisions nor from the general rule that an affirmative defense is waived if not pleaded.").  Here, Defendants have failed to specifically plead the exemption defenses they claim in this case. Instead, they have generically claimed that, "Plaintiffs were not entitled to payment of overtime premiums because they were employees exempted from overtime requirements pursuant to, but not limited to, 29 U.S.C. 13 et seq."  (Dkt. #52, at 17 (Fourth Affirmative Defense)).

Defendants' Corporate Designee testified, "I would consider them outside sales." **Exh. 3** p. 74.[28]

In light of Defendants' admission that they make no effort to track loan officer work hours, or whether those hours are spent performing "inside" or "outside" sales (**Exh. 3** pp. 60-63, 72, 77, 92.),[29] Defendants' reliance on this defense is dubious at best.   As such, Plaintiffs anticipate bringing a motion for summary judgment on this affirmative defense after further discovery. In the meantime, without respect to the difficulty Defendants face in connection with this sole defense, this election of the outside sales defense eliminates the availability of the administrative exemption, a defense often attempted in loan officer misclassification cases.

> 2.  **Undisputed material facts establish that Defendants cannot qualify for any of the FLSA's "white collar" defenses.**
>
>> a.  **Plaintiffs are entitled to summary judgment on the administrative exemption defense.**

Defendants' admission that loan officers' primary duty is sales precludes them from the administrative exemption defense. Under the FLSA, "financial services employees" are "non-exempt" if their "primary duty is selling financial products." 29 C.F.R. § 541.203(b) (2004). Here, Defendants' Rule 30(b)(6) Corporate Designee readily, and repeatedly, admits that the loan officers primary duty was sales:

> Q: And the primary duty of your loan officers is **selling loans**, right?
> A: That is correct.[30]
>
> * * * * *
> "I would consider them outside **sales**."[31]
>
> * * * * *
> "So their primary job is to **sell**."[32]

---

[28] Ms. Jennings' deposition testimony on December 19, 2007 reiterated this understanding.

[29] **Exhibit 15, Department of Labor Fact Sheet #17F,** "Exemption for Outside Sales Employees Under the Fair Labor Standards Act (FLSA)," explains that under 29 C.F.R. §541, "Any fixed site, whether home or office, used by a salesperson as a headquarters or for telephonic solicitation of sales is considered one of the employer's places of business, even though the employer is not in any formal sense the owner or tenant of the property."

[30] **Exh. 3** at pp. 28– 29.

PLAINTIFFS' FLSA CONDITIONAL CERTIFICATION
AND  PARTIAL SUMMARY JUDGMENT MOTION,
07-2446 MMC

As such, Defendants cannot apply the administrative exemption as a matter of law.

                   **b.**    **Plaintiffs are entitled to summary judgment on the executive exemption defense.**

Likewise, Defendants disqualify themselves from the executive exemption. The executive exemption requires that the covered employee "customarily and regularly directs the work of two or more other employees." 29 C.F.R. § 541.100(a)(3) Because Defendants admit that loan officers do not supervise any employees (**see, e.g., Exh. 3** at p. 20), Defendants cannot meet its burden necessary to claim this exemption.

                   **c.**    **Plaintiffs are entitled to summary judgment on the professional exemption defense.**

The professional exemption requires "knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction," (29 C.F.R. § 541.300(2)(i)), such as "law, medicine, theology, accounting, actuarial computation, engineering, architecture, teaching, various types of physical, chemical and biological sciences, pharmacy and other similar occupations that have a recognized professional status as distinguished from the mechanical arts or skilled trades where in some instances the knowledge is of a fairly advanced type, but is not in a field of science or learning." 29 C.F.R. § 541.301. As noted **supra**, in Section II.B., and as one Fed.R.Civ.P. 30(b)(6) admitted,[33] Plaintiffs have no specialized intellectual instruction, with academic backgrounds ranging from a high school diploma, to two-years unspecified college studies, to Asian-American Studies and Psychology majors in college. **Exh. 8.**

        **3.**    **Because Defendants are in the banking and mortgage lending business, Defendants inherently lack the "retail concept" necessary to qualify for the retail sales exemption.**

---

[31] **Exh. 3** at p. 74.
[32] **Exh. 3** at p. 130.
[33] Ms. Jennings' December 19, 2007 deposition contains testimony directly on point.

Any claim by Defendants to the "retail sales" exemption defense fails for one simple and well-established reason:  banks, credit companies, finance companies, and loan offices lack the "retail concept" necessary to qualify for this exemption as a matter of law. **See**, **e.g.,** 29 C.F.R. §779.317; **Mitchell v. Kentucky Finance Co.**, 359 U.S. at 291; **Barnett v. Washington Mutual Bank, FA, et al.**, 2004 WL 1753400 at *3, (N.D.Cal.) (2004) (Breyer, J.); **Casas v. Conseco Finance Corp.**, 2002 WL 507059.  As a financial institution selling loans, Defendants do not satisfy the first requirement necessary for application of the retail or service exemption as a matter of law. **Exh. 6; Exhibit 16, Mortgage Corporation Fact Sheet**  (NKA 1212) ("ranked as one of the top mortgage companies" offering "Adjustable & Fixed Rate Mortgages," "Home Equity Lines & Loans," "Interest Only" and "New Construction" loans, **inter alia**).

## V.  CONCLUSION

For the foregoing reasons, the Motions should be GRANTED.


Date: December 27, 2007                    s/Bryan J. Schwartz

**NICHOLS KASTER & ANDERSON, LLP**
Bryan J. Schwartz, CA State Bar No. 209903
One Embarcadero Center
Ste. 720
San Francisco, CA 94111

Attorneys    for    Individual    and    Representative
Plaintiffs

**CERTIFICATE OF SERVICE**
Wong et al v. HSBC Mortgage Corporation et al
**Case No. 07-2446 MMC**

I hereby certify that on December 27, 2007, I caused the following document(s):

**Plaintiffs' Amended Motion And Memorandum In Support Of Motion For Conditional Certification And Judicial Notice Pursuant To §216(B) Of The FLSA, For Production Of Updated Class List In Excel Format Within 10 Days Of The Date This Motion Is Granted, For A Partial Summary Judgment Under Fed.R.Civ.P. 56 That Named Defendants Are Properly-Named Employers Under The Flsa, And For Partial Summary Judgment Under Fed.R.Civ.P. 56 On Flsa Exemptions Applied To Loan Officers**

to be served via ECF to the following:

George J. Tichy, II
Michelle Barrett
Littler Mendelson, P.C.
650 California Street
20th Floor
San Francisco, CA 94108-2693

---

Dated:  December 27, 2007          NICHOLS KASTER & ANDERSON, LLP

---

s/ Bryan J. Schwartz

---

Bryan J. Schwartz State Bar No. 209903
**NICHOLS KASTER & ANDERSON, LLP**
One Embarcadero Center, Suite 720
San Francisco, CA  94111

ATTORNEYS FOR PLAINTIFFS AND
THE PUTATIVE CLASS