# Exhibit 11

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RYAN C. HENRY, individually and on
behalf of other similarly situated
employees,

                                                    CIVIL CASE NO. 04-40346

                              Plaintiff,

v.

QUICKEN LOANS INC., a/k/a ROCK            HONORABLE PAUL V.
FINANCIAL, a Michigan corporation,        GADOLA
and DANIEL B. GILBERT, personally         U.S. DISTRICT COURT
and individually,

                              Defendants.
                                        /
_____

## ORDER ACCEPTING AND ADOPTING THE REPORT AND RECOMMENDATION

This is a potential collective action for paid overtime, under the Fair Labor

Standards Act (FLSA), 29 U.S.C. § 201 *et seq.* Before the Court is Plaintiff's Motion

for Conditional Class Certification and Judicial Notice and Motion to Compel, and the

Report and Recommendation of United States Magistrate Judge Wallace Capel, Jr.

The Magistrate Judge issued his Report and Recommendation on August 18, 2006,

recommending that Plaintiff's motion be granted in part and denied in part.

Defendants filed objections to the Report and Recommendation on September 5, 2006,

and Plaintiff responded to the objections on September 19, 2006.

In their objections, Defendants first object to the recommendation to grant Plaintiff's motion to compel the production of names and addresses of current and past loan consultants. Defendants argue that this information should be provided to a third-party in order to facilitate notice, and not to Plaintiff. Plaintiff argues that this information should be produced to them, because it is proper discovery material. The Court finds Plaintiff's argument compelling, and accordingly, overrules Defendants' objections on this issue.

Also in their objections, Defendants request that Magistrate Judge Capel issue a revised or supplemental Report and Recommendation, addressing various questions concerning the specific language of the notice and the number of mailed notices permitted that Defendants believe need further clarity and explanation. Pursuant to this request, the Court consulted with Magistrate Judge Capel on the appropriate manner to proceed in these matters. Because the Court finds that the reasoning and conclusions of Magistrate Judge Capel to be sound, the Court will therefore accept and adopt the Report and Recommendation in its entirety, and then remand the issues raised by Defendants concerning the specific language of the notice and the number of mailed notices permitted to Magistrate Judge Capel for a determination.

Accordingly, after having reviewed the Report and Recommendation, Plaintiff's motion, and the applicable portions of the record, **IT IS HEREBY ORDERED** that

2

the Report and Recommendation [docket entry 278] is **ACCEPTED** and **ADOPTED** in its entirety as the opinion of this Court, and Plaintiff's motion [docket entry 213] is **GRANTED IN PART** and **DENIED IN PART**. In particular:

(1) Plaintiff's motion for conditional class certification is **GRANTED**.

(2) Plaintiff's request for equitable tolling is **DENIED**.

(3) Plaintiff's request that the Court compel the production of names and addresses of current and past loan consultants is **GRANTED**.

(4) The Court will facilitate judicial notice to potential class members to inform them of the action and to give them an opportunity to participate by opting in. In addition, corrective notices and notice of withdrawal forms should be sent out to all plaintiffs who have opted in the litigation. The issues raised by Defendants in their objections concerning the specific language of the notice and the number of mailed notices permitted are remanded to the Magistrate Judge for a determination.

**SO ORDERED.**

Dated:    September 28, 2006      s/Paul V. Gadola
                                  HONORABLE PAUL V. GADOLA
                                  UNITED STATES DISTRICT JUDGE

Certificate of Service

I hereby certify that on  September 28, 2006  , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

  Kathleen L. Bogas; Lawrence G. Campbell; Charlotte Croson; Robert P. Davis; Sheryl A. Laughren; Paul J. Lukas; Donald H. Nichols; James B. Perry; Kimberly J. Ruppel; Rachhana T. Srey                                                        , and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:            Michele R. Fisher                    .

s/Ruth A. Brissaud
Ruth A. Brissaud, Case Manager
(810) 341-7845

4

A TRUE COPY
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
BY _____
                        DEPUTY CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AUG 2 1 2006

RYAN C. HENRY, Individually and on
behalf of other similarly situated employees,

               Plaintiff,               Case No.: 04-CV-40346

                                  HON. PAUL V. GADOLA
vs.                             MAG. JUDGE WALLACE CAPEL, JR.

QUICKEN LOANS INC., a/k/a ROCK
FINANCIAL, a Michigan corporation, and
DANIEL B. GILBERT, personally and individually,     AUG 2 1 2006

               Defendants.
_____/

## REPORT AND RECOMMENDATION

### I.    INTRODUCTION

This is a potential collective action for paid overtime, under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq. Before the Court is Plaintiffs' Motion for Conditional Class Certification and Judicial Notice and Motion to Compel.[1]

Plaintiff was a "loan consultant" for Defendant Quicken Loans, Inc., an online mortgage broker, of which Defendant Gilbert is the Chief Executive Officer. A loan consultant's duties include "originating" loans, i.e., receiving phone calls from prospective clients, and then advising those clients as to Quicken Loans' products and assisting them with their loan applications.[2] Plaintiff

---

[1]Plaintiff's Motion for Conditional Class Certification and Judicial Notice and Motion to Compel, filed on February 2, 2006 (hereinafter Pl.'s Mot. Cond'l Class Cert.).

[2]Pl.'s Mot. Cond'l Class Cert. Exh. K, pages 10-11 (deposition pages 40-41).

alleges that he and other loan consultants were wrongfully denied overtime compensation during their employment there. FLSA provides that a civil action for overtime pay compensation may be brought "by any one or more employees for and in [sic] behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). However, FLSA requires that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." Id. Unlike a Fed. R. Civ. P. 23 class action, a collective action under FLSA requires that potential class members actively opt into the class.

Plaintiff Henry filed his complaint against Defendants Quicken Loan and Daniel Gilbert on May 17, 2004,[3] alleging violation of the Fair Labor Standards Act. Plaintiffs filed their first Motion for Conditional Class Certification on and Judicial Notice on June 16, 2005,[4] and they later withdrew that motion on November 15, 2006.[5] Plaintiffs filed this Motion for Conditional Class Certification and Judicial Notice and Motion to Compel on February 2, 2006. Defendants filed a Response in Opposition to Plaintiff's Motion for Conditional Class Certification and Judicial Notice and Motion to Compel on March 6, 2006. The undersigned presided over a hearing on the motion on March 13, 2006. At the time of the hearing, 151 plaintiffs had opted into the suit.[6]

---

[3]Docket No. 1.

[4]Docket No. 136.

[5]Docket No. 188.

[6]Defendants' Brief in Opposition to Plaintiff's Motion for Conditional Class Certification and Judicial Notice and Motion to Compel, filed on March 6, 2006 (hereinafter Def's Brief Opp. Pl.'s Motion), at page 26.

2

## II.    STANDARD FOR CONDITIONAL CLASS CERTIFICATION

On August 8, 2006, Defendants submitted a notice of supplemental authority to this Court. In their notice, Defendants brought this Court's attention to Comer v. Wal-Mart Store, Inc., 454 F.3d 544 (6th Cir. 2006), and characterized the opinion as clearly supportive of their arguments against conditional class certification for Plaintiffs. However, the Court held in Comer that a "conditional order approving notice to prospective co-plaintiffs in a suit under § 216(b) is not appealable." Id. at 549. Therefore, the Court's only holding was that it lacked jurisdiction to hear the appeal, and it dismissed the appeal accordingly. Id. Nevertheless, in its dicta, the Court noted that the following approach is "typically used by courts in suits filed under 29 U.S.C. § 216(b)":

> The first question such courts have generally asked is whether proposed co-plaintiffs are, in fact, "similarly situated" for the purposes of the statute's requirements. They have used a two-phase inquiry to address this question. The first takes place at the beginning of discovery. The second occurs after all of the opt-in forms have been received and the discovery has concluded. Goldman v. RadioShack Corp., 2003 WL 21250571, at *6 (E.D. Pa. Apr. 17, 2003); see also Morisky v. Public Serv. Elec. & Gas Co., 111 F. Supp. 2d 493, 497 (D.N.J. 2000) (and cases cited therein)." Goldman v. RadioShack Corp., 2003 WL 21250571, at *6 (E.D. Pa. Apr. 17, 2003); see also Morisky v. Public Serv. Elec. & Gas Co., 111 F. Supp. 2d 493, 497 (D.N.J. 2000) (and cases cited therein). As Judge Enslen wrote in our case, "[a]t the notice stage, the certification is conditional and by no means final." The plaintiff must show only that "his position is similar, not identical, to the positions held by the putative class members." Pritchard v. Dent Wizard Int'l, 210 F.R.D. at 595 (quoting Viciedo v. New Horizons Computer, No. 2:01-CV-250, slip. op. (S.D. Ohio Dec. 4, 2001) and Allen v. Marshall Field & Co., 93 F.R.D. 438, 443 (N.D. Ill. 1982)). Judge Enslen quoted the Pritchard court's conclusion that authorization of notice "need only be based on a modest factual showing," Pritchard, 210 F.R.D. at 596 (JA 346), as well as the Morisky court's view that "this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class," Morisky, 111 F. Supp.2d at 497 (quoting Thiessen v. General Elec. Capital Corp., 996 F. Supp. 1071, 1080 (D. Kan. 1998)). See also Roebuck v. Hudson Valley Farms, Inc., 239 F. Supp.2d 234, 238 (N.D. N.Y. 2002) (to gain court approval for notice to similarly situated persons, plaintiffs must "make a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law").

3

> At the second stage, following discovery, trial courts examine more closely the question of whether particular members of the class are, in fact, similarly situated. As the Morisky court wrote, at this second stage, "the court has much more information on which to base its decision and, as a result, [it] employs a stricter standard." 111 F. Supp. 2d at 497.

Id. at 546-47. This dicta is the only case law that either party could cite from the Sixth Circuit Court

of Appeals that has discussed the standard for FLSA conditional class certification. The language

cited above refers specifically to courts that have bifurcated discovery, initially limiting discovery

to the issue of whether the plaintiffs are "similarly situated," and thereafter permitting discovery on

the issues of merits and damages. Id.

    Recently a district court in the Southern District Court of Ohio described the two tiered

approach as follows:

> First, the court must determine whether notice of the pending action and the opportunity to 'opt- in' should be given to potential class members. Such notice will usually be authorized if the plaintiff demonstrates that she is 'similarly situated' to the other employees she seeks to notify of the pendency of the action. This is known as 'conditional certification' of the collective action. After notice has been sent and discovery has been completed, the defendant can file a motion for decertification, challenging the court's preliminary determination that other employees are similarly situated.

Harrison v. McDonalds Corp., 411 F. Supp. 2d 862, 864-65 (S.D. Ohio 2005) (emphasis added).

Similarly, the district court in Smith v. Lowe's Companies, Inc., 2005 U.S. Dist. Lexis 9763, at *8

(S.D. Ohio May 11, 2005) (citations omitted), also noted that the second phase of the inquiry occurs

after the completion of discovery.

> The first step, which is generally conducted early in litigation process is a preliminary inquiry into whether the plaintiff's proposed class is constituted of similarly-situated employees. The second step, which is usually conducted after the completion of class-related discovery, is a specific factual analysis of each employee's claim to ensure that each actual claimant is appropriately made party to the suit (emphasis added).

4

Id.

It is true in this case that discovery has still not yet concluded, and the modified scheduling order reflects that discovery is ongoing.

> Once the Court rules on plaintiffs' Class Certification Motion, (1) if the Court decides to authorize notice to members of the potential class, the Court will modify the Scheduling Order to take into account the notice period and the discovery that will follow it, (2) If the Court decides not to authorize notice to members of the potential class, the Court will issue dates for completion of the pretrial matters extended pursuant to Paragraph 2.a. of this Order (emphasis added)."[7]

The present case is not at the beginning of discovery, which began more than one year ago. In fact, Plaintiff Henry's Complaint was submitted on May 17th, 2004,[8] and Plaintiffs submitted their first discovery requests in August 2004.[9] Plaintiffs submitted their first Motion for Conditional Class Certification and Judicial Notice and Motion to Compel as early as June 2005 (Docket # 136). They later withdrew that motion in November 2005, with the intention of re-filing with newly obtained information. Plaintiffs filed their second Motion for Conditional Class Certification and Judicial Notice and Motion to Compel on February 2, 2006, at which point they had completed eighteen months of discovery. It is probable that Plaintiffs earlier request for conditional class certification and judicial notice would have been judged using the lenient "modest factual showing" standard. Since that time, however, significant discovery has been conducted, as evidenced by the depositions of Defendants, the submission of interrogatories, etc.

Defendant has not argued that discovery in this case is complete, and the modified scheduling

---

[7]Order Modifying Scheduling Order, filed February 16, 2006 (hereinafter Order Mod. Sched. Order) (emphasis added), at page 2.

[8]Plaintiff's Complaint, filed on May 17, 2004.

[9]Plaintiffs' Motion to Compel Discovery, filed on November 22, 2004, at page 4.

order above demonstrates that discovery is ongoing. Both cases above indicate that completion of discovery is necessary before proceeding to the more stringent second phase of inquiry, in which each individual plaintiff's claim is assessed. However, because significant discovery has been conducted, the undersigned respectfully recommends that the Court consider factors from both the first and second phases of the inquiry to determine whether Plaintiffs are similarly situated. See, e.g., Basco v. Walmart, No. Civ A. 00-3184, 2004 WL 1497709, at *5 (E.D. La. Jul. 2, 2004).

Plaintiffs have argued that all loan consultants are similarly situated. There are currently 565 loan consultants working for Quicken Loans, most of whom work in either Troy or Livonia.[10] There is only one job description for all loan consultants, and only one incentive plan for all loan consultants. Defendants argue that loan consultants are divided into three distinct groups: junior loan consultants, senior loan consultants, and executive loan consultants.[11] However, one of Defendant's vice-presidents has stated in depositions that the only difference between the different levels is that, within one incentive plan that covers all loan consultants, the senior loan consultants get higher commissions than the junior loan consultants, and the executive loan consultants get higher commissions than the senior loan consultants.[12]

All loan consultants share common training using the "Sales Process," which is a guideline

---

[10]Pl's Mot. Cond'l Class Cert. Exh. J at page 2 (deposition page 7), page 3 (deposition pages 11-12). Although Vice-President of Web Center Jay Farner averred that up to 20% of Quicken Loans's loan consultants work outside of the Troy or Livonia locations, i.e., around 100 employees out of 500, Mr. Farner could only name three such employees, all of whom were currently working from their homes.

[11]Def's Brief Opp. Pl.'s Motion at page 18.

[12]Pl.'s Mot. Cond'l Class Cert. Exh. K at page 10 (deposition pages 39-40).

that includes a suggested script for loan consultants to use when "originating loans" over the phone.[13] The Sales Process contains guidelines regarding options that loan consultants are permitted to offer to customers, as well as provides detailed instructions on how to communicate effectively with customers, with the goal of "originating" a loan.[14] All loan consultants start their time at Quicken Loans at the junior loan consultant level; they cannot be hired as senior loan consultants or executive loan consultants.[15] All loan consultants are given the same materials at their training.

Vice-President Jay Farner, who is responsible for the day-to-day operations of the center in which the loan consultants work, was asked by Plaintiff's counsel at a deposition whether there was any difference in the job descriptions of the various levels of loan consultants.[16] Mr. Farner could offer only the following vague assertions: a senior or executive loan consultant may have more flexibility in work location; management may solicit a senior or executive loan consultants' opinion regarding a new product being offered; and management may mentor some senior or executive loan consultant.[17] Defendants have repeatedly emphasized that Plaintiffs have not produced any affidavits stating that Plaintiffs are similarly situated to each other. This is not to Plaintiff's detriment, however, because they rely instead on documentary evidence and depositions, sometimes produced by Defendants themselves. Plaintiffs have shown that they were subject to a common policy or plan with evidence far superior to affidavits. Quicken Loans' web loan consultants (most of whom

---

[13]Pl.'s Mot. Cond'l Class Cert. Exh. J at pages 5-6 (deposition pages 19-21, 23).

[14]Pl.'s Mot. Cond'l Class Cert. Exh. C.

[15]Pl.'s Motion Cond'l Class Cert. Exh. K at page 10 (deposition pages 38-39).

[16]Pl.'s Mot. Cond'l Class Cert. Exh. J at page 4 (deposition page 15).

[17]Pl.'s Mot. Cond'l Class Cert. Exh. J at pages 4-5 (deposition pages 15-17).

worked in Livonia or Troy, all of whom worked to originate loans, all of whom were instructed to use the Sales Process, all of whom were under the direction of VP Jay Farner, and all of whom underwent the same training process) should be conditionally certified as a class.

### III.    JUDICIAL NOTICE

The district court has the discretionary power to authorize judicial notice to potential class members to inform them of the action and give them an opportunity to participate by opting in. Hoffman-LaRoche, Inc. v. Sperling, 493 U.S. 165, 165-169, 110 S. Ct. 482, 485 (1989).

Using the same standard elucidated in Comer, 454 F.3d at 546-547, the Court should also facilitate judicial notice. Plaintiffs have shown that they were similarly situated for the purposes of a § 216(b) cause of action and that the Court should grant conditionally class certification. However, the undersigned agrees with Defendant that corrective notices and notice of withdrawal forms should be sent out to all plaintiffs who have opted in to this piece of litigation.[18] Plaintiff has sent out numerous consent forms, which erroneously exclude Daniel Gilbert as a Defendant in his individual capacity.[19] It is foreseeable that a potential plaintiff would be swayed in his or her decision to opt-in to this cause of action by the knowledge that Mr. Gilbert would be sued in his individual capacity.

### IV.    EQUITABLE TOLLING

Plaintiffs have requested that the Court toll the limitations period on potential collective action members' FLSA claims pending judicial notice.[20] The Sixth Circuit has stated in Andrews

---

[18]Def.'s Brief Opp. Pl.'s Mot. at pages 26-27.

[19]Def.'s Brief Opp. Pl.'s Mot. Exh. I at page 3.

[20]Pl's Mot. Cond'l Class Cert. at 22.

8

v. Orr, 851 F.2d 146, 151 (6th Cir. 1988) (citing Wright v. State of Tennessee, 628 F.2d 949, 953

(6th Cir. 1980)), that there are several factors for the Court to consider when deciding whether to

equitably toll a statute of limitations:

> (1) lack of actual notice of filing requirement; (2) lack of constructive knowledge of filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the notice requirement.

Plaintiffs claim that Defendants brought "frivolous and meritless" ethical allegations against

Plaintiffs' counsel, which were first brought before the Office of Lawyers Professional

Responsibility (and dismissed), then appealed to the Minnesota Lawyers Professional Responsibility

Board (and denied). Plaintiffs also claim that these same allegations were repeated in Defendants'

Motion to Strike and that such a motion was a frivolous litigation tactic aimed at delaying judicial

notice to potential class members.[21] Plaintiffs ask the Court to toll the running of the statute of

limitations for all loan officers in the putative class as of April 7, 2005, the date on which Defendants

filed their Objections to Magistrate Capel's Order denying their Motion to Strike & Supervise

Communications. However, Plaintiffs offer no evidence to support their contention that Defendants'

Motion to Strike and their Objection to Magistrate Judge Capel's Order were designed to delay

judicial notice. Furthermore, no judicial order characterizes Defendants' Motion to Strike or the

Objection as frivolous.

Furthermore, Plaintiffs delayed their own case by withdrawing their first motion for

conditional class certification, and refiling later. To do so was a strategic decision that carried with

it certain benefits (i.e., it allowed Plaintiffs to collect more information to support their motion) and

---

[21]Pl.'s Mot. Cond'l Class Cert. at page 24.

certain drawbacks (i.e., the running of the statute of limitations against them). Looking to the guidelines in Andrews, Plaintiffs had actual notice of the facts that created their cause of action at the time that they worked for Defendants. They also had constructive notice of the cause of action by virtue of FLSA's publication. Therefore, there are no facts on the record that would justify the exceptional remedy of equitable tolling.

## V.    MOTION TO COMPEL

Plaintiffs have also requested that the Court compel the production of the names and addresses of current and past loan consultants. Having granted conditional class certification to Plaintiffs, this Court has the discretion to compel the production of the list of loan consultants in order to facilitate notice. Hoffman-LaRoche, 493 U.S. at 169-170, 174. With the efficient disposition of this case in mind, the undersigned respectfully recommends that the Court grant Plaintiffs' Motion to Compel, because the names and addresses of the putative class are directly relevant to this litigation and within the scope of discoverable material.

## VI.    CONCLUSION

The undersigned therefore respectfully recommends that the Court GRANT in part and in DENY in part Plaintiff's Motion for Conditional Class Certification and Judicial Notice and Motion to Compel, consistent with this Report and Recommendation.

s/Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE

Dated:____August 18, 2006_____

10

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

## CERTIFICATE OF SERVICE

I hereby certify that on <u>August 18, 2006,</u> I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: <u>Kathleen L. Bogas, Lawrence G. Campbell, Charlotte Croson, Robert P. Davis, Sheryl Laughren, Paul J. Lukas, Donald H. Nichols, James B. Perry, Kimberly J. Ruppel, and Rachhana T. Srey,</u>

and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participant(s): <u>Michele R. Fisher, Nichols Kaster (Minneapolis), 4600 IDS Center, 80 S. 8th St., Minneapolis, MN 55402.</u>

<u>s/James P. Peltier</u>
United States District Court
Flint, Michigan 48502
810-341-7850
E-mail: pete_peltier@mied.uscourts.gov

11

1

2

3

4

5

6                 **IN THE UNITED STATES DISTRICT COURT**

7                   **FOR THE DISTRICT OF ARIZONA**

8

| | |
|---|---|
| 9   Kevin Czubara, individually and on behalf of other similarly situated | No. CV-05-3438 PHX-DGC |
| 10   employees, | |
| 11         Plaintiff, | **ORDER** |
| 12   vs. | |
| 13   Hamilton Mortgage Company, | |
| 14         Defendant. | |

15

16       On May 24, 2006, the Court held a hearing on Plaintiffs' motion for conditional class

17 certification and judicial notice. Doc. #49. For the reasons stated on the record, the Court

18 concluded that this case conditionally should be certified as a collective action and that the

19 mailing of notice to class members should be authorized.

20       The parties agreed that class certification issues in this case be addressed under the

21 two-tiered analysis discussed in case law. *See, e.g., Luthold v. Destination America, Inc.,*

22 224 F.R.D. 462, 466-68 (N.D.Cal. 2004). "Under the two-tiered approach, the court must

23 first decide, based primarily on the pleadings and any affidavits submitted by the parties,

24 whether the potential class should be given notice of the action." *Id.* at 467. "Because the

25 court generally has a limited amount of evidence before it, the initial determination is usually

26 made under a fairly lenient standard and typically results in conditional class certification."

27 *Id.* Once notice has been given, potential plaintiffs have been afforded an opportunity to opt

28 into the case, and discovery has been completed, "the party opposing class certification may

1  move to decertify the class." *Id.* At this second stage of the class proceeding the Court

2  undertakes a more rigorous and fact-intensive analysis of whether the members of the

3  purported class are "similarly situated" for purposes of § 216(b) of the Fair Labor Standards

4  Act ("FLSA").

5        The parties agree on the standard for determining whether potential class members are

6  "similarly situated" within the meaning of § 216(b). Both assert that the Court must consider

7  whether the putative class members were together victims of a single decision, policy, or

8  plan. *See* Doc. #49 at 11 (citing *Gerlach v. Wells Fargo & Co.*, 2006 WL 824652*3

9  (N.D.Cal. March 28, 2006)); Doc. #53 at 4 (citing *Tiessen v. Gen. Elec. Capital Corp.*, 267

10  F.3d 1095, 1102 (10th Cir. 2001)). The Court concluded at the May 24, 2006 hearing that

11  potential class members claiming that they were misclassification by Defendants are in fact

12  claiming to be victims of a single policy or decision. Defense counsel conceded as much

13  during oral argument. Although members asserting an "off-the-clock" claim present a closer

14  question, the Court also concluded that these individuals are asserting that Defendants

15  adopted a policy of denying overtime pay for any individual who worked more than 40 hours

16  in a week. This too is a claim that Plaintiffs were subject to a single policy or decision, and

17  the Court concluded that the nine affidavits submitted by Plaintiffs provided a sufficient

18  factual basis for the class to be conditionally certified. Thus, the Court agreed to certify,

19  conditionally, a class of "consumer direct" loan officers who worked for Defendants in the

20  23 specific "consumer direct" branch offices identified in Plaintiffs' motion. Doc. #49 at 4-5.

21

22       **IT IS HEREBY ORDERED:**

23       1.    Plaintiffs are authorized to provide notice to individuals who worked as

24  "consumer direct loan officers" in the 23 offices identified in Plaintiffs' motion (Doc. #49

25  at 4 (line 14)-5 (line 1)) between the dates of June 1, 2003 and the present. Notice shall be

26  given in the form attached to Plaintiffs' motion as modified on the record during the

27  May 24, 2006 hearing. Plaintiffs are authorized to make up to three mailings to these two

28  individuals. Individuals receiving notice will be required to opt-in to the class on or before

1   **September 5, 2006**. Plaintiffs' counsel will conduct the mailing of the notice and promptly

2   will file in court information concerning individuals who opt-in to the class. All expenses

3   of the notice shall be borne by Plaintiffs.

4       2.      Defendants shall produce to Plaintiffs the names, last known addresses, and last

5   four digits of social security numbers for each of the individuals who fall within the

6   conditionally certified class. Defendants shall provide this information to Plaintiffs on or

7   before **June 9, 2006**.

8       3.      Plaintiffs' Motion for Conditional Class Certification and Judicial Notice and

9   Motion to Compel (Doc. #49) is **granted in part and denied in part** as set forth above.

10      4.      By separate Order the Court will establish a case management schedule in this

11  litigation, including a date for Step 2 of the class certification process.

12      DATED this 5th day of June, 2006.

13

14

15  _____

16  David G. Campbell
    United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

-3-

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Keven Saunders, Tony Moy, Eric Orman,
Michael Barylski, and Grant Moellering,
individually and on behalf of others
similarly situated,

                Plaintiffs,

v.

Ace Mortgage Funding, Incorporated, and
Richard M. Hall,

                Defendants.

Civil No. 05-1437 (DWF/SRN)

**MEMORANDUM
OPINION AND ORDER**

---

Michele R. Fisher, Esq., Paul J. Lukas, Esq., Donald H. Nichols, Esq., and Rachhana T. Srey, Esq., Nichols Kaster & Anderson PLLP; and Marguerite M. Longoria, Esq., and Sam J. Smith, Esq., Burr & Smith, LLP, counsel for Plaintiffs.

R. Anthony Prather, Esq., and Shannon M. Shaw, Esq., Barnes & Thornburg, LLP; and Robert R. Reinhart, Esq., Dorsey & Whitney, LLP, counsel for Defendants.

---

### Introduction

The above-entitled matter came before the undersigned United States District Court Judge on October 17, 2005, pursuant to a Motion for Conditional Certification and Judicial Notice and Equitable Tolling brought by Plaintiffs Keven Saunders, Tony Moy, Eric Orman, Michael Barylski, and Grant Moellering, individually and on behalf of others similarly situated, (collectively, "Plaintiffs"), and a Motion to Transfer brought by Defendants Ace Mortgage Funding, Inc., and Richard M. Hall (collectively, "Defendants"). In their Complaint (the "Complaint"), Plaintiffs allege violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*

In an Order dated October 31, 2005, the Court denied Defendants' Motion to Transfer and granted in part and denied in part, Plaintiffs' Motion for Conditional Certification and Judicial Notice and Equitable Tolling. This memorandum opinion and order follows.

## Background

Defendant Ace Mortgage Funding, Inc. ("AMF"), is an Indiana corporation with its headquarters and principal place of business in Indianapolis, Indiana. (Affidavit of Erik Bigelow in Support of Defendants' Motion to Transfer ("Bigelow Aff.") at ¶ 5.) Defendant Richard M. Hall was an officer, owner, and operator of AMF during the applicable statute of limitations. (Complaint at ¶ 3.) Plaintiffs Keven Saunders and Tony Moy are residents of Minnesota and worked as loan officers in AMF's Eden Prairie, Minnesota office during the applicable statute of limitations. (*Id.* at ¶¶ 4-5.) Plaintiff Eric Orman is a resident of Indiana and worked as a loan officer in AMF's Evansville, Indiana branch office during the applicable statute of limitations. (*Id.* at ¶ 6.) Plaintiffs Michael Barylski and Grant Moellering are residents of Missouri and worked as loan officers in AMF's St. Louis, Missouri branch office during the applicable statute of limitations. (*Id.* at ¶¶ 7-8.)

Each named plaintiff entered into an "Employment Contract" with AMF. (Bigelow Aff. at ¶ 3.) The employment contracts contained a forum-selection clause that provides:

> This Contract shall be governed by the laws of the State of Indiana. Employee agrees to and hereby does submit to jurisdiction before any State or federal court of record in Marion County, Indiana or in the state and county in which such violation may occur, at AMF's election, for that purpose, and Employee hereby waives any right to raise the questions of jurisdiction and venue in any action that AMF may bring to any such court against Employee.

(Bigelow Aff. at Ex. A ¶ 8(b).)

2

On July 20, 2005, the day after service of the lawsuit, Defendant Hall and AMF's general

counsel, Erik D. Bigelow, sent a memorandum to all AMF employees regarding the lawsuit. (Affidavit

of Paul J. Lukas in Support of Plaintiffs' Motion for Conditional Certification and Judicial Notice and

Equitable Tolling ("Lukas Aff.") at Ex. B.) The memorandum stated that its purpose was to inform all

AMF employees of a lawsuit that was filed against AMF in which plaintiffs alleged that AMF violated

provisions of the FLSA. (*Id.*) AMF denied any violation of the FLSA in the memorandum. (*Id.*)

AMF also encouraged employees to contact AMF senior management if employees believed they had

received incorrect wages. (*Id.*) Further, the memorandum encouraged employees to discuss concerns

with independent outside counsel prior to consenting to participate in the lawsuit. (*Id.*) Finally, the

memorandum warned employees not to allow the lawsuit to "be a distraction" to work efforts and that

"[l]awsuits often take years to resolve." (*Id.*)

Defendant Hall also sent an email message on July 20, 2005, in which he stated that AMF

believed that the lawsuit was started to "cause disruption." (*Id.*) Hall warned employees that "people

will attempt to disrupt our success by trying to bring us into negative situations" and urged employees

not to "lose focus." (*Id.*) In addition to the email message and memorandum, AMF also held meetings

at its branch offices regarding the lawsuit. (Lukas Aff. at Ex. 15.) Managers from the Minneapolis

branch referred to the lawsuit as "bogus" at one such meeting and described the plaintiffs as employees

"trying to take us down." (*Id.* at Declarations of Dan Miller and Brian Potratz.)

In his affidavit, Hall contends that none of his communication with AMF employees regarding

the lawsuit was intended to intimidate or discourage employees from participating in the lawsuit.

(Affidavit of Richard Hall in Support of Defendants' Response to Plaintiffs' Motion for Conditional

3

Certification and Judicial Notice and Equitable Tolling ("Hall Aff.") at ¶ 4.) Rather, Hall contends that

the purpose of his communication was to "maintain company morale." (*Id.*)

**Discussion**

I.    **Motion to Transfer**

Plaintiffs contend that pursuant to 28 U.S.C. § 1404(a), this Court should transfer the case to

the United States District Court for the Southern District of Indiana. Section 1404(a) states: "For the

convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil

action to any other district or division where it might have been brought."

Generally, transfer under section 1404(a) "should not be freely granted." *In re Nine Mile Ltd.*, 692

F.2d 56, 61 (8th Cir. 1982), *overruled on other grounds, Missouri Housing Development Com'n v.*

*Brice*, 919 F.2d 1306, (8th Cir. 1990). The party seeking transfer bears the burden of proof to show

that the balance of factors "strongly" favors the movant. *United Mortg. Corp. v. Plaza Mortg. Corp.*,

853 F. Supp. 311, 315 (D. Minn. 1994). The court considers the convenience of the parties and

witnesses and the interests of justice in determining whether to transfer a lawsuit pursuant to section

1404(a). In considering these factors, the court must look to the particular circumstances of the case

before it. *Terra Intern., Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997).

A.    **Forum-selection clause**

The Court first turns to the presence or absence of a forum selection clause in the parties'

written agreement. While the presence of a forum selection clause is not dispositive, it is "a significant

factor that figures centrally in the District Court's calculus." *Stewart Org., Inc. v. Ricoh Corp.*,

487 U.S. 22, 29 (1988). Here, Plaintiffs' Motion to Transfer is predicated on the existence of the

4

forum selection clause contained in the employment agreement contracts between AMF and Plaintiffs.

Neither party challenges the validity of the forum selection clause. Instead, the parties dispute, as a threshold matter, whether it applies to this dispute. Plaintiffs assert that (1) the forum-selection clause does not apply to claims filed against AMF by its employees, and (2) alternatively, the clause does not apply to Plaintiffs' FLSA minimum wage and overtime compensation claims because the forum-selection clause is limited to breach of contract actions. Defendants, however, assert that the clause governs any action arising under the employment contract in which employees and AMF are in opposition.

The Court finds that the forum-selection clause does not apply to this action. The clause states that "this Contract" is governed by the laws of the State of Indiana, and indicates that "the employee hereby waives any right to raise the questions of jurisdiction and venue in any action that AMF may bring to any such court against Employee." This language limits the forum-selection clause to breach of contract actions brought by AMF against its loan officers. The clause does not cover actions that the loan officers commence against AMF. The Court finds no merit to Defendants' assertion that the plain meaning of "against Employee" embraces any lawsuit in which AMF and the employee are adversary parties. Furthermore, the Court notes that the forum-selection clause does not cover Plaintiffs' FLSA claims. The Plaintiffs' FLSA claims do not depend on the existence of the employment contract, nor does the resolution of Plaintiffs' FLSA claims relate to the interpretation of the employment contract. Thus, the Court finds that the forum-selection clause is inapplicable to this dispute.

**B.    Convenience of Parties**

A presumption in favor of plaintiff's choice of forum exists. *Christensen Hatch Farms, Inc. v.*

5

*Peavey Co.*, 505 F. Supp. 903, 911 (D. Minn. 1981). Section 1404(a) provides for transfer to a more convenient forum, "not to a forum likely to prove equally convenient or inconvenient, and a transfer should not be granted if the effect is simply to shift the inconvenience to the party resisting the transfer." *Graff v. Qwest Communications Corp.*, 33 F. Supp. 2d 1117, 1121 (D. Minn. 1999) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 646 (1964)).

Defendants assert that it would be more convenient for a majority of plaintiffs to litigate in Indiana because 19 of the 65 potential total plaintiffs are from Minnesota, whereas 28 are from Indiana. (*See* Bigelow Aff., Ex. 3.) Defendants further point out that 46 potential plaintiffs are from states other than Minnesota. (*See id.*) Defendants also assert that it would be more convenient for AMF to litigate the action in Indiana, where AMF has its principal place of business. Plaintiffs, on the other hand, assert that the fact that potential plaintiffs from various states can still opt-in to the lawsuit makes no forum more convenient than the other. Plaintiffs assert that at the time they submitted their Memorandum in Opposition to Defendants' Motion to Transfer, there were 80 potential plaintiffs, 47 of whom reside in states other than Indiana. (*See* Memorandum in Opposition to Defendants' Motion to Transfer, Affidavit of Michele Fisher ("Fisher Aff.") at ¶ 2.)

Given the presumption in favor of Plaintiffs' choice of forum, the Court finds that this factor does not weigh in favor of transfer. While there may be more plaintiffs that reside in Indiana than Minnesota, that number is not significant at this time. Further, until the time period to join this case has expired, the court cannot determine the percentage of loan officers that will reside in Indiana versus any other state. Additionally, even if Defendants had established that Indiana was a more convenient venue for AFM to litigate this case because its principal place of business is in Indiana, the Court finds that transferring

venue to Indiana would merely shift the convenience between the parties.

### C.    Convenience of Witnesses

The convenience of witnesses is an important factor for the Court and the parties because it determines the "relative ease of access to proof." *Nelson v. Master Lease Corp.*, 759 F. Supp. 1397, 1402 (D. Minn.1991) (quotation omitted). In considering the issue of convenience to witnesses, courts have focused on a number of factors including the number of non-party witnesses, the location of all witnesses, and the preference of courts for live testimony as opposed to depositions. *Graff*, 33 F. Supp. 2d at 1121 (citing *Van Dusen v. Barrack*, 376 U.S. 612, 646 (1964)).

Defendants claim that witnesses will include loan officers' supervisors, co-workers, and family members, as well as human resources and payroll staff and corporate leaders. Defendants contend that the locations of these witnesses will mirror the distribution of the Plaintiffs' locations. Plaintiffs essentially agree with Defendants' contentions, but further assert that because Minnesota is centrally-located and accessible to the witnesses, the Court should find that Defendants have not met their burden of showing that this factor weighs in favor of transfer. The Court agrees with Plaintiffs' assertion. Because neither party has demonstrated that the quantity, location, and accessibility of witnesses or documents makes one forum more convenient that the other, this factor does not weigh in favor of or against transfer.

### D.    Interests of Justice

The Court must also evaluate what venue will best promote the interests of justice. *Graff*, 33 F. Supp. 2d at 1122. A number of relevant considerations include relative familiarity with the law to be applied, the relative ability of the parties to bear the expenses of litigating in a distant forum, judicial economy, and the plaintiff's choice of forum. *Id.*

The Court finds that Defendants have failed to establish that the interests of justice favor transfer. Defendants primarily rely on the assertion that the forum-selection clause controls the outcome of the interests of justice factor. Defendants have not demonstrated that costs of litigating will be lowered or that judicial economy will result by transferring the case to Indiana. Thus, the interests of justice considerations do not weigh in favor of transfer.

## II.    Judicial Notice

The parties agree that the Court should conditionally certify this case as a collective action and that the Court should authorize Judicial Notice to be sent to similarly-situated loan officers employed by AMF within the three-year statute of limitations. At the hearing on this matter, Defendants agreed to produce a list of all loan officers and their addresses who were employed by AMF within the three-year statute of limitations. The parties disagree, however, over the content of the Judicial Notice with respect to two issues. (*See* Plaintiffs' Reply Memorandum in Support of its Motion for Conditional Certification and Judicial Notice and Equitable Tolling at 6.) The Court has discretion to facilitate notice to potential class members by authorizing judicial notice of a collective action. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

First, Plaintiffs maintain that the Judicial Notice should include corrective notice language cautioning potential plaintiffs to disregard previous communications from Defendants. Plaintiffs propose that the "Purpose of Notification" paragraph contain the following corrective language:

> Please disregard any previous communications you may have received from Ace describing this lawsuit or your rights with respect to it. The Court has determined that these communications were potentially misleading and has authorized the mailing of this Notice. You may rely upon this Notice as an accurate and fair description of the lawsuit and your rights.

8

(*See* Plaintiffs' Proposed Judicial Notice ("Plaintiffs' Proposed Judicial Notice") (submitted at oral argument) at 2.) Additionally, Plaintiffs propose that the Judicial Notice include another paragraph entitled "Previous Communications From Ace" that states:

> The Court is aware of recent communications sent by Ace to its current loan officers. All such communications should be disregarded in favor of this Notice. You are not required to discuss this lawsuit, or the facts and circumstances surrounding it, with Ace or its officers. Even if you already signed an agreement with Ace to waive your overtime claim or accept overtime pay allegedly due you, you are still entitled to join this action. Further, the law prohibits retaliation against employees for exercising their rights under the FLSA. Ace is prohibited from taking any adverse action against you because you cho[o]se to participate in this action.

(Plaintiffs' Proposed Judicial Notice at 4–5.)

Defendants oppose Plaintiffs' proposed corrective language in the "Purpose of Notification" paragraph. Additionally, Defendants oppose the inclusion of Plaintiffs' proposed "Previous Communications From Ace" paragraph. Instead, Defendants propose that the Judicial Notice contain a paragraph entitled, "No Retaliation Permitted," which states, "The Law prohibits retaliation against employees for exercising their rights under the Fair Labor Standards Act. You will not be discharged or retaliated against if you choose to participate, or not to participate, in this action." (Defendants' Response to Plaintiffs' Motion for Conditional Certification and Judicial Notice and Equitable Tolling, Ex. A at 4.)

The Court does not find that AMF's communication with its employees regarding the lawsuit intimidated or discouraged employees from joining the lawsuit. The employees could have interpreted the purpose of AMF's memorandum as being informative, in accordance with the memorandum's stated purpose. Thus, the Court did not include Plaintiffs' proposed corrective notice language in the

"Purpose of Notification" paragraph. Likewise, the Court did not include Plaintiffs' proposed "Previous

Communications With Ace" paragraph. The Court is concerned, however, that the memorandum

encourages employees to discuss their concerns with AMF management and independent outside

counsel. Accordingly, the Court has adopted the following language in a paragraph entitled, "No

Retaliation Permitted":

> The law prohibits retaliation against employees for exercising their rights under the Fair
> labor Standards Act. You will not be discharged or retaliated against if you choose to
> participate, or not participate, in this action. You may disregard any communication
> sent by Ace that contradicts this Notice. In particular, you are not required to discuss
> the facts and circumstances surrounding this lawsuit with Ace or its officers. You may
> rely upon this Notice as an accurate description of the lawsuit and your rights in relation
> to the lawsuit.

(Nov. 1, 2005 Order, Proposed Judicial Notice.)

Second, Plaintiffs maintain that the Defendants propose inaccurate information in the "Statute of

Limitations" paragraph. Defendants propose the following:

> Plaintiffs' claims in this action are limited to a two- or three-year "statute of limitations."
> If you choose to join this action, you may be able to recover damages if the plaintiffs
> can establish that the loan officer position was improperly classified as "exempt" and if
> you were denied overtime compensation for overtime hours worked within the two or
> three years prior to the date you file your "Plaintiff Consent Form." Likewise, if you
> choose to join this action, you may be able to recover damages if the plaintiffs can
> establish that they were paid less than the federal minimum wage per hour for any work
> week within the two or three years prior to the date you file your "Plaintiff Consent
> Form." If you choose not to join in this action, some or all of your potential claims may
> later be barred by the applicable statute of limitations.

(Defendants' Response to Plaintiffs' Motion for Conditional Certification and Judicial Notice and

Equitable Tolling, Ex. A at 4.)

Plaintiffs assert that Defendants' proposed language is inaccurate because it states that Plaintiffs

retain the burden to establish that the loan officer position was improperly classified as exempt and that the loan officers were paid less than the federal minimum wage. Instead, Plaintiffs propose the following:

> Plaintiffs' claims in this action are limited to a two or potentially three-year "statute of limitations." If you choose to join this action, you may be able to recover damages if you were improperly denied overtime or minimum wage compensation only for hours worked within two or potentially three years of the date you filed your consent form. If you choose not to join in this action, som[e] or all of your potential claims may later be barred by the applicable statute of limitations.

(*See* Plaintiffs' Proposed Judicial Notice at 4.)

The Court concludes that Defendants' proposed language is inaccurate and misleading because Defendants, not Plaintiffs, sustain the burden of proving that the loan officer position was properly classified as exempt from overtime compensation. *See McAllister v. Transamerica Occidental Life Ins. Co.*, 325 F.3d 997, 999 (8th Cir. 2003). Accordingly, the Court adopts Plaintiffs proposed language regarding the "Statute of Limitations" paragraph in the Judicial Notice.

## III.     Equitable Tolling

Plaintiffs request that the Court toll the statute of limitations as of July 20, 2005, for all loan officers who are eligible to join this lawsuit. Plaintiffs assert that the statute of limitations should be tolled as of July 20, 2005, because Defendants first allegedly intimidated loan officers from joining the lawsuit on that day. Because the Court does not find that Defendants intimidated loan officers from joining the lawsuit, the Court accordingly finds that, at this time, tolling the statute of limitations as of July 20, 2005, is not appropriate.

In accordance with the Court's October 31, 2005 order, **IT IS HEREBY ORDERED**

**THAT:**

      1.    Defendants' Motion to Transfer (Doc. No. 29) is **DENIED**;

      2.    Plaintiffs' Motion for Conditional Certification, Judicial Notice, and Equitable Tolling

(Doc. No. 12) is **GRANTED** in part and **DENIED** in part.


Dated: November 14, 2005        s/Donovan W. Frank
                          DONOVAN W. FRANK
                          Judge of United States District Court

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DOUGLAS PONTIUS,     )
             )
    Plaintiff,    )
             )
   v.        )
             )
DELTA FINANCIAL CORP., d/b/a  )
FIDELITY MORTGAGE INC.,   )
             )
    Defendant.   )

JUN 2 4 2005

Civil Action No. 04-1737
Judge Gary L. Lancaster
Magistrate Judge Lisa Pupo Lenihan

## REPORT AND RECOMMENDATION

### I. RECOMMENDATION

   It is respectfully recommended that the Plaintiff's Motion for Conditional Class

Certification be granted; that Plaintiff's Motion to Authorize Judicial Notice be granted; and that

his Motion to Compel be granted in part and denied in part, all as more fully set forth herein.

### II. REPORT

   This prospective class action involves claims related to Defendant's alleged illegal failure

to pay overtime compensation to its loan officers, senior loan officers, and mortgage analysts

(hereafter collectively referred to as "Mortgage Analysts") in accordance with the relevant

provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (the "FLSA"). Pontius (the

"Named Plaintiff") attests that he and other Mortgage Analysts located in Defendant's eleven

nation-wide branch offices and call centers are improperly classified as "exempt" employees

under the FLSA and therefore not paid overtime. He further asserts that the position in which he

is employed does not require or permit the exercise of individual discretion or authority

necessary to excuse Defendant from responsibility for overtime payment, which payment is made

to Defendants' telemarketers. Defendant maintains that the Mortgage Analysts are properly

treated as exempt from overtime because they are responsible for "customizing" loan packages.[1]

First, because it is clear that the Named Plaintiff has met this Circuit's very lenient

standard for conditional class certification - *i.e.*, he has made a colorable argument regarding a

class of similarly-situated analysts, working within the same corporate department/division, and

alleging the same unlawful conduct and seeking the same relief - conditional certification should

be granted at this time.

Second, the notice should be distributed and opt-in permitted to all individuals employed

by Defendant in a Mortgage Analyst position within the potentially applicable three-year

statutory period;[2] notice and opportunity to opt-in are to be given without regard to whether any

individual employee had prior knowledge of this litigation, executed an arbitration provision, or

---

1. Defendant also asserts that the Mortgage Analysts are properly exempt because they have discretion to reduce loan origination fees. It is unclear whether this refers merely to an employee's freedom to accept a voluntary reduction of commission to complete a transaction. See Defendant's Consolidation Motion in Opposition at 20-21 (quoting employee Affidavits regarding employees' discretion to set the loan origination fees and to "[give] up some of the fees attached to the loan").

2. Although FLSA claimants may collect damages within a two-year statute of limitations, damages may be awarded within a third year if a defendant's violation of the overtime laws was willful. See 29 U.S.C. § 255(a).

is classified as "highly compensated." Notice should be distributed in the usual manner, *i.e.*, by Plaintiff's counsel, with prior final approval of its content by this Court.

Third, Plaintiff's Motion to Compel should be granted as to names and addresses, in electronic form, of all current and former loan officers/Mortgage Analysts employed by Defendant within the potentially applicable three-year statutory period. Plaintiff's Motion should be denied as to additional personal information requested.

A. **Statement of Facts and Procedural History**

As discussed above, this is a civil class action for relief in consequence of Defendant's alleged illegal failure to pay overtime compensation to a class of employees whose position largely entails telephoning Defendant's potential home mortgage customers (*i.e.*, using "leads"), taking information necessary to the loan application, running the Company's computer program ("Click and Close") to determine what loan package(s) may be offered to that potential customer based on the financial information provided, and compiling customer documents for forwarding to a "loan processor" and thence to an underwriter. Defendant's Mortgage Analysts are paid $24,000 per year plus earned commissions.[3]

Defendant maintains that the Named Plaintiff misrepresents the position, which involves "considerable" individual authority and discretion to structure and customize loan packages, and is therefore properly treated as exempt from the overtime requirements of the FLSA.[4] Defendant

---

3. The Named Plaintiff was employed as a loan officer in Defendant's Pittsburgh, Pennsylvania call center. He asserts that he and similarly-situated employees routinely worked in excess of forty (40) hours per week with no overtime compensation.

4. See 29 U.S.C. §§ 207, 213(a)(1) (requiring compensation at one-and-a-half times regular rate for hours worked in excess of forty (40) per week, with certain exceptions for, *e.g.*, those employed in a *bona fide* administrative capacity). Cf. U.S. DOL Wage & Hour Div., Op. Letter,

also asserts that employees who are employed outside the Pittsburgh office, who have executed arbitration provisions, who have seen prior advertisement regarding the potential litigation, or who are "highly compensated" are ineligible for inclusion in the prospective class and should not receive notice. For the reasons discussed below, this Court rejects each of those contentions. It does, however, concur with Defendant's objections to the scope of information requested in Plaintiff's Motion to Compel and will therefore significantly narrow the information required to be produced.

### B. Conditional Certification

In general, there are two requirements for an FLSA class action: plaintiffs must be "similarly situated" and members must file a consent to join the action ("opt-in"). Sperling v. Hoffman-LaRoche, Inc., 862 F.2d 439, 444 (3d Cir. 1989).

This Court grants certification pursuant to the two-step analysis established in Lusardi v. Lechner, 855 F.2d 1062 (3d Cir. 1988). Under Lusardi, to authorize notice to potential class members, the Court looks to pleadings and affidavits of record to determine if potential plaintiffs are "similarly situated" to representative plaintiff(s). This initial "determination is made using a fairly lenient standard and typically results in 'conditional certification' of a representative class." Moss v. Crawford & Co., 201 F.R.D. 398 (W.D. Pa. 2000); Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1214 (5th Cir. 1995).[5] When discovery is complete, defendant may move to decertify

---

Feb. 16, 2001 (concluding loan officers did not exercise necessary discretion and independent judgement required to meet administrative exemption) (attached as Ex. G to Defendant's Consolidated Memorandum in Opposition).

5.    See also Sperling v. Hoffman-La Roche, Inc., 118 F.R.D. 392, 406 (D.N.J. 1988) (stating that "notice to absent class members need not await a conclusive finding of 'similar situations'"); Severtson v. Phillips Beverage Co., 141 F.R.D. 276, 278 (D. Minn. 1992) (requiring plaintiffs to

the class, and the Court applies a higher standard to analyze the similarly situated issue.[6]

In Lockhart v. Westinghouse Credit Corp., the Third Circuit quoted with approval the following three-prong test for whether plaintiffs are similarly situated: "(1) employed in the same corporate department, division and location; (2) advanced similar claims . . . ; and (3) sought substantially the same form of relief." 879 F.2d 43, 51 (3d Cir. 1989) (quoting Plummer v. General Electric Co., 93 F.R.D. 311, 312 (E.D. Pa. 1981)).

As to the first factor, the Circuit Court went on, however, to explain that the holding in Plummer "did not rest upon the fact that [plaintiffs] "worked in the same department, the same division and in the same location." Id. at 52 & n. 10.[7] Moreover, the Court concluded that, under a "balancing of the factors outlined in Plummer", there was "sufficient homogeneity" among plaintiffs who were within the Financial Services Division "albeit in different branch locations" where plaintiffs claimed the same unlawful conduct and sought the same relief. Id. at

-------

establish only "a colorable basis" for their claim) (cited with approval in Asencio v. Tyson Foods, Inc., 130 F.Supp.2d 660, 663 (E.D. Pa. 2001)).

6. At this stage, the Court will have more information upon which to make its factual determination on the question of "similarly situated." If the Court determines the parties meet the requirement, the case proceeds to trial; if not, the opt-in plaintiffs are dismissed without prejudice and the named plaintiff(s) proceed to trial on their individual claims. This two-step process "was implemented specifically to allow discovery on the circumstances of and facts surrounding the class members and named plaintiffs." Lusardi, 118 F.R.D. at 361.

See generally Hoffman-LaRoche, Inc., 493 U.S. at 170 (noting that a collective action both allows "plaintiff the advantage of lower individual costs to vindicate rights" and benefits the judicial system by "efficient resolution . . . of common issues of law and fact arising from the same alleged . . . activity").

7. See also id. at 61 (J. Garth, dissenting) (noting that Plummer involved employees who worked "in various departments and divisions" raising question of adequacy of representation and implicating defenses based on particular employment decisions of different managers).

52.[8]

In so holding, the Lockhart Court emphasized that plaintiffs alleged wrongful conduct "as a result of a pattern, plan or practice" having effect "in the same corporate division". Id. See also Mershon, 1990 WL 484152 at *6 (noting that this was "central theme" of Lockhart).[9] Other courts have similarly held that plaintiffs meet their initial "similarly situated" burden in an FLSA overtime case simply "by alleging that defendants compensated [other potential plaintiffs], who

8.  See Mershon v. Elastic Stop Nut Division of Harvard Industries, Inc., 1990 WL 484152, *6 (D.N.J. Mar. 23, 1990) (noting that Lockhart expanded the Plummer rule by holding that "the fact that class members work in different locations does not invalidate a representative action" and granting conditional certification); Lawrence v. City of Philadelphia, 2004 WL 945139 (E.D. Pa. April 29, 2004) (conditionally certifying FLSA class of City paramedics seeking compensation for unpaid regularly-scheduled overtime where plaintiffs had same general job description, but differences in units, locations and supervisors).

    Cf. Asencio, 130 F.Supp.2d 660 (applying Lockhart and granting conditional certification to employees at same facility); Moss, 201 F.R.D. at 409 (certifying FLSA class of insurance adjusters/invoice reviewers assigned to oil spills and working at branch and temporary offices and other locations on varying assignments).

9.  See also Sperling, 188 F.R.D. at 407 (explaining that at conditional certification/notice stage "courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan"); Reab v. Electronic Arts, Inc., 214 F.R.D. 623, 627 (D. Colo. 2002) (concluding conditional certification was appropriate where plaintiffs were allegedly victims of defendant's plan to pay less compensation than due under the FLSA); Realite v. Ark. Restaurants Corp., 7 F.Supp.2d 303, 306 (S.D.N.Y. 1998) requiring only a "modest factual showing" that potential class members were victims of a common illegal policy or plan); Asencio, 130 F.Supp.2d at 663 (concluding that broad averments in pleadings and declarations of four employees were sufficient "under the first tier's lenient standard" and that the detailed information submitted by defendants might "play a more significant role after discovery").

    Cf. Moss, 201 F.R.D. at 409 (concluding that differences in duties, geographic location, etc. did "not differentiate the collective basis of the class to the extent" that it defeated their common claim of violation of the FLSA by failing to pay overtime wages where the parties produced "'substantial evidence' of a 'single decision, policy or plan'" and denying motion for decertification).

performed duties similar to the named plaintiffs, in the same manner . . ., on a commission basis

· without additional compensation for overtime."[10]  Finally, the Court also considered "whether

separate defenses advanced by [defendant] would render the action unmanageable." 879 F.2d at

51 (concluding they would not).[11]

      In the case at hand, Plaintiff alleges, in pleading and by Affidavit, that he and other

Mortgage Analysts are employed in the same department/division, perform similar duties, and

are similarly compensated for their work in a position not legally excluded from overtime

compensation under the FLSA.[12]

---

10.  See Montoya v. Rescue Industries, Inc., 1999 WL 240247, *11 (10th Cir. April 20, 1999)
(concluding district court abused discretion in decertifying nation-wide class of service
technicians for overtime under FLSA because burden shifted to defendant); id. (citing both
Brzychnalski v. Unesco, Inc., 35 F.Supp.2d 351, 353 (S.D.N.Y. 1999) (proposed class members
were similarly situated because all were asbestos workers subject to common scheme to deprive
them of overtime compensation) and Lockhart); Barnett, 2002 WL 1023161 at *1 ("To establish
that employees are similarly situated, a plaintiff must show that they are [such] with respect to
their job requirements and . . . pay provisions. [The] positions need not be identical, but
similar.") (quoting Tucker v. Labor Leasing, Inc., 872 F.Supp. 941, 947 (M.D. Fla. 1994)).

11.  See also Moss, 201 F.R.D. at 410 (concluding fact that employer would raise exempt-status
defense for each opt-in plaintiff did not warrant decertification where plaintiffs worked as
monitors, adjusters, invoice reviewers and supervisors and duties of one would not be
substantially distinct from those of another working in same position, so that court could
coordinate exemption issue).  More generally, the Court notes that - Defendant's protestations to
the contrary notwithstanding - it is certainly not clear at present that the potential plaintiffs are
either so numerous or so diverse as to render a class action unmanageable.

12. Defendant's own deposition testimony is of centralized decision-making and planning
regardless of geographic location.  More specifically, Defendant's representative testified that its
Mortgage Analysts utilize and are employed under Company-wide written orientation and
training materials, job descriptions, performance goals, compensation structure/payroll, and other
policies, and, as a matter of policy, are not paid overtime.  See Deposition of Sarojini Baltrus
(excerpts attached as Exhibit B to Plaintiff's Motion for Conditional Class Certification).

   Although Defendant also submits Affidavits of selected Mortgage Analysts contradicting
Plaintiff's factual assertions regarding the nature of the position, they should not alter this

### C. Judicial Notice of Collective Action

Unlike a standard class action under Fed. R. Civ. P. 23, an FLSA class action is "opt-in" rather than opt-out (individuals may only join by giving written consent to Court).[13] In addition, the statute of limitations is not tolled; that is, valid damages claims, if any, are being lost or reduced. Therefore, the Court "has discretion to allow a party asserting FLSA claims on behalf of others to notify potential plaintiffs". Barnett v. Countrywide Credit Industries, Inc., 2002 WL 1023161, *1 (N.D. Tex. May 21, 2002) (citing Hoffman-LaRoche, Inc. v. Sperling, 493 U.S. 165, 169 (1989)).[14]

---

Court's conclusion that Plaintiff has met the lenient test for conditional certification. See Asencio, 130 F.Supp.2d at 663-664 (noting that at this early stage plaintiffs could "not counter every assertion made by the defendant" who "already has access to all of the information it requires concerning the running of its own facilities"); Severtson, 141 F.R.D. at 278-79 (discussing "colorable claim" standard and noting that determination on authorization for judicial notice does not require that court make findings of fact or credibility determinations with respect to contradictory evidence). Relatedly, the Court notes Defendant's estimate that it currently employs approximately 341 Mortgage Analysts, and its projection of 960 potential plaintiffs. (The Court also observes that Defendant's figures suggest a highly transient workforce in this position.)

13. See 29 U.S.C. § 216(b) (providing that "one or more employees" may maintain an FLSA action in behalf of "themselves and other employees similarly situated", but that "[n]o employee shall be a party plaintiff . . . unless he gives his consent in writing . . . and such consent is filed in the court in which such action is brought").

14. The Barnett Court followed Lusardi and conditionally certified a nation-wide class of home loan consultants, loan officers and loan originators. Id.

(1) To whom: Defendant asserts that employees subject to voluntarily-entered arbitration agreements should be excluded from notice;[15] as should employees aware of prior advertisement related to the litigation,[16] employed outside the Pittsburgh branch, and/or "highly compensated." Defendant's suggestion of a regional limitation is rebutted by the case law discussed, *supra*; for reasons already reviewed, nationwide notice is appropriate in this action.    Similarly, Defendant's observation that employees with annual compensation in excess of $100,000 who "customarily and regularly perform any one or more of the exempt duties or responsibilities of an administrative employee" should also not bar notice or opt-in at this stage.[17] Nor should employees be excluded at this early stage because they may have been aware of this litigation through prior advertising[18] and/or have signed agreements containing arbitration clauses. Rather, notice and an opt-in opportunity should be broadly given, even though the Court may subsequently conclude, following discovery and additional legal analysis, that such individuals are ineligible for class participation. See Carter v. Countrywide Credit Indus., Inc., 189

---

15. The number of potential class members to have executed some form of arbitration provision appears to be 208. See Defendant's Consolidated Memorandum in Opposition at 6-7 (noting that a "current version" of the arbitration agreement "has been executed by approximately 138 mortgage analysts" and that "[a]pproximately 70 mortgage analysts who were employed . . . within the last three years are parties" to an earlier arbitration agreement).

16. Defendant asserts that in November, 2004, when this action was filed, Plaintiff's counsel sent an advertisement to 62 individuals employed as Mortgage Analysts within the last three years. See id. at 8.

17. Defendant's Consolidated Motion in Opposition at 34 (citing 29 C.F.R. § 541.601(a)).

18. See *infra* n. 24.

-9-

F.Supp.2d 606, 621 (N.D. Tex. 2002) (dismissing cases of named and opt-in plaintiffs who had signed arbitration agreements).[19]

    (2) By whom: Defendant's request that notice be given through an independent administrator as opposed to Plaintiff's counsel is unusual. Defendant has provided no information regarding the nature of the other "discovery dispute" related to its mortgage analysts, as to which it states notice is being given by an "independent class action claims administrator" ("Rust Consulting, Inc."), nor has it provided any authority for its request.[20] To this Court's knowledge, notice of conditional certification is most commonly given by Plaintiff's counsel and the Court sees no reason to depart from that practice in this case. Plaintiff should therefore be given leave to send judicial notice in accordance with the other provisions of this report and recommendation.

    (3) Content: At bottom, this Court has a responsibility to facilitate and monitor the content and efficient distribution of appropriate notice to potential opt-in class members. Notice should not encourage joinder or communicate any approval of suit on the merits. Hoffman-

---

19. Cf. Barnett, 2002 WL 1023161 at *2 (ordering Defendant to provide list of names and last-known addresses (in electronic form) of current and former loan consultants/originators employed within statutory period and classified as exempt from provisions of FLSA, with list to be divided into those who signed arbitration agreements and those who did not; latter could receive notice but were not permit to return consent form and opt-in to suit).

    Subsequent consideration of the arbitration provisions, if any, may raise issues regarding enforceability. Compare, e.g., Walker v. Countrywide Credit Indus., Inc., 2004 WL 246404 * (N.D. Tex. Jan. 15, 2004) (granting motion to compel arbitration in FLSA loan officer case, holding that dispute was within scope of arbitration agreement and enforcement of arbitration provision was not otherwise barred) with Ferguson v. Countrywide Credit Indus., Inc., 298 F.3d 778, 785 (9th Cir. 2002) (invalidating loan officer's arbitration agreements as unconscionable in light of unequal bargaining power of parties and expenses employees would be forced to incur).

20. Defendant's Consolidated Motion in Opposition at 38.

LaRoche, 493 U.S. at 170 (discussing same).

In accordance with the argument heard by this Court on June 15, 2005,[21] the reference date of such Notice should be three (3) years prior to the date of the mailing and the Notice will refer to Plaintiff in the singular. In addition, the Notice shall reflect that claims are limited to a two, or potentially three, year statute of limitations and the Notice shall further require that to join the lawsuit a prospective plaintiff must submit the Consent Form on or before a date seventy-five (75) days from the date of mailing of the Notice.[22]

That said, the remainder of the language of the proposed Notice objected to by Defendant, - more specifically, the caption and the judicial notice language - are entirely in keeping with the form of Notice sanctioned by the Third Circuit. The Notice specifically informs the recipient that the Court "has taken no position regarding the merits" of the case, and the Court therefore deems the remaining language of the proposed Notice proper in this case.[23] Plaintiff shall therefore simply modify the Notice in accordance with the agreements reached at argument, and as set forth above.

---

21. Andrew Voss, Esq. and Rachel O'Driscoll appeared on behalf of the Plaintiff; Paul Lukas and Donald Nichols appeared on behalf of the Defendant.

22. This time frame is in accordance with the Report of Parties' Rule 26(f) Conference on January 10, 2005.

23. These reasons also underlie the Court's rejection of Defendant's argument that Judicial Notice to individuals who may have prior advertisement-based knowledge of the litigation would constitute an inappropriate "invitation" or "solicitation" to join the suit. See Section II(c)(2), supra. Compare Defendant's Consolidated Motion in Opposition at 39-40 (citing Pennsylvania Rules of Professional Conduct cautioning practitioners against repeated unauthorized solicitations).

### D. Motion to Compel

The information requested by the Named Plaintiff is well beyond that necessary to give notice.   He is entitled to the full names and last-known addresses, in electronic form, of all individuals employed by Defendant as loan officers and/or Mortgage Analysts within the potentially applicable three-year limitations period.  See Asencio, 130 F.Supp.2d at 663 (holding that court may facilitate notice by allowing discovery of names and addresses of potential plaintiffs); Barnett, supra.  Further information need not be provided for this purpose and Defendant rightfully complains of certain confidentiality issues.

### III.  CONCLUSION

For the reasons set forth above, it is recommended that Plaintiff's Motion for Conditional Class Certification be granted; Plaintiff's Motion to Authorize Judicial Notice be granted, subject to revision and final approval by this Court; and his Motion to Compel be granted as to the names and addresses of all individuals meeting the above-parameters.  Defendant shall promptly (*i.e.*, within ten (10) days from the date of service hereof) disclose to Plaintiff's counsel the full names and last known mailing addresses of all past and present employees who worked as loan officers and/or Mortgage Analysts within the potentially applicable three-year statutory period. Plaintiff shall revise and resubmit the proposed Notice for Court approval within ten (10) days from the date of service hereof.

In accordance with the Magistrates Act, 28 U.S.C.  § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date of service to file objections to this report and recommendation.  Any party opposing the

objections shall have seven (7) days from the date of service of objections to respond thereto.

Failure to file timely objections may constitute a waiver of any appellate rights.

LISA PUPO LENIHAN
United States Magistrate Judge

Dated: June 21, 2005

cc: Hon. Gary L. Lancaster
    United States District Judge

Donald H. Nichols
Paul J. Lukas
Michele R. Fisher
Nichols, Kaster & Anderson, P.L.L.P.
4644 IDS Center
80 South Eight St.
Minneapolis, MN 55402
Counsel for Plaintiff

Andrew J. Voss
33 South 6th St., Suite 3110
Minneapolis, MN 55402

James M.L. Ferber
Fifth Third Center
21 East State St., Suite 1600
Columbus, OH 43215

Robert W. Pritchard
Littler Mendelson, P.C.
Dominion Tower
625 Liberty Ave., 26th Floor
Pittsburgh, PA 15222
Counsel for Defendant

-13-

MAR 0 7 2005

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

F I L E D
UNITED STATES DISTRICT COURT
DENVER, COLORADO

MAR - 3 2005

GREGORY C. LANGHAM
CLERK

Civil Action No.  03-MK-2485 (PAC)

CAMILLE MELONAKIS-KURZ, individually and on behalf of other ~~similarly situated~~
employees,

     Plaintiff(s),

v.

HEARTLAND HOME FINANCE, INC.,

     Defendant(s).

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Patricia A. Coan, United States Magistrate Judge

     Plaintiff brings a putative collective action under section 216(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §2001, *et seq.*, to recover unpaid overtime compensation for herself and other loan officers who worked for defendant Heartland Home Finance, Inc. ("Heartland"). The matter before the court is Plaintiffs' Motion for Conditional Class Certification, filed December 10, 2004.[1] The motion is fully briefed and was referred to the undersigned for recommendation. I heard oral argument on February 22, 2005.

     Heartland, a finance company that sells consumer mortgages, employs approximately 300 loan officers in approximately forty-nine branch locations throughout the

---

[1] Plaintiffs originally filed their Motion for Conditional Class Certification on May 3, 2004, but withdrew it on June 8, 2004 after I granted their motion to compel discovery of the names of the loan officers employed by defendant during the last three years. Plaintiff sent informal notices (letters) of the putative collective action to the persons identified as loan officers during the relevant period. Plaintiff represented at oral argument that 830 loan officers working in defendant's branch offices in seventeen states have joined this action by filing consent forms with the court.

United States. Branch managers are responsible for the operation of each branch, including payroll computations, and report to one of seven regional managers. Heartland maintains its corporate offices in Ohio and Illinois.

Plaintiff Melonakis-Kurtz was employed as a loan officer at defendant's Aurora, Colorado, branch between March 24, 2003 and August 14, 2003.

Plaintiff seeks to conditionally certify this case as a collective action under 29 U.S.C. §216(b) to include all persons employed by defendant as loan officers from December 5, 2000 to the present, and who did not receive overtime compensation for working more than forty hours in a week.

Section 216(b) of the FLSA provides, in pertinent part:

> An action to recover [unpaid overtime compensation] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees *similarly situated*. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.[2]

29 U.S.C. §216(b) (Emphasis supplied).

Federal district courts have discretionary authority to authorize the sending of formal judicial notice to potential plaintiffs in an appropriate case to inform them of the action and give them an opportunity to participate by opting in. *See Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 169-70 (1989).

---

[2] A potential plaintiff does not become a party to a collective action under §216(b) unless he "opts-in" by filing a written consent, unlike a class action under Fed.R.Civ.P. 23, where a potential plaintiff must affirmatively "opt-out" of the suit in order not to be bound by its resolution. *See Whalen v. W.R. Grace & Co.*, 56 F.3d 504, 506 at n.3 (3rd Cir. 1995).

2

Plaintiff's counsel represented at oral argument that all potential plaintiffs have received informal notice of this putative collective action through letters sent by plaintiff's counsel. Plaintiff now requests conditional certification of this case as a collective action for purposes of conducting nationwide discovery to determine if final certification is appropriate.

Certification of a collective action under §216(b) is warranted only if the named plaintiff and the putative class members are "similarly situated." The statute does not define the term. In *Reab v. Electronic Arts, Inc.*, 214 F.R.D. 623, 627 (D.Colo. 2002), Chief District Court Judge Babcock adopted a two-step "ad hoc" approach for determining whether plaintiffs are similarly-situated under §216(b). First, the court decides whether a collective action should be conditionally certified for notice and discovery purposes. *Id.* If so, the court revisits the issue of certification after discovery is complete to determine if the action should proceed to trial as a collective action or be severed. *Id.* The *ad hoc* approach has been approved by the Tenth Circuit. *See Thiessen v. GE Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001) (concluding that district court did not err in utilizing the *ad hoc* approach to determine if plaintiffs were "similarly situated" for purposes of §216(b)).

I also consider whether certification would serve the purposes and putative benefits of a collective action under §216(b). *Reab*, 214 F.R.D. at 627. "A collective action allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity." *Hoffmann-La Roche, Inc.*, 493 U.S. at 170.

3

Plaintiff's burden at the conditional certification stage to show that she and other loan officers who worked for defendant during the statutory period are similarly-situated is satisfied by "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan [that violated the law]." *Thiessen*, 267 F.3d at 1102 (quoting *Vaszlavik v. Storage Technology Corp.*, 175 F.R.D. 672, 678-79 (D.Colo. 1997)(Babcock, J.))(concluding that plaintiffs' allegations that they were the victims of a "Strategic Plan" by the defendant employer to eliminate older employees from the workforce were sufficient to conditionally certify a class for notice and discovery purposes[3]); *see, also, Reab*, 214 F.R.D. at 629 (concluding that conditional certification of FLSA action was appropriate because factual allegations showed that the putative class members were the alleged victims of a single plan by the defendant to pay employees less than the compensation due them under the statute); *Realite v. Ark. Restaurants Corp.*, 7 F.Supp.2d 303, 306 (S.D.N.Y. 1998)(holding that plaintiffs meet their burden by "making a modest factual showing sufficient to demonstrate that they and potential class members together were victims of a common policy or plan that violated the law")(internal quotation and citation omitted); *Severtson v. Phillips Beverage Co.*, 141 F.R.D. 276, 280 (D.Minn. 1992) (concluding that plaintiff's evidence showing central control of employment decision making and that the decision to terminate workers during a restructuring was made on the basis of age established a colorable basis for plaintiff's claim that a class of similarly situated plaintiffs existed for purposes of age discrimination action). The decision whether to

---

[3]In *Vaszlavik*, the plaintiffs asserted claims under the Age Discrimination in Employment Act ("AEDA"), 29 U.S.C. §621, *et seq.* The ADEA's enforcement provisions expressly incorporate §216(b) of the FLSA. *See* 29 U.S.C. §626(b).

4

conditionally certify a collective action is based on the pleadings and any affidavits that have been submitted. See Mooney v. Aramco Services Co., 54 F.3d 1207, 1214 (5th Cir. 1995), over-ruled on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003).

Plaintiff contends that she and the putative class members are similarly situated because they worked for defendant as loan officers during the putative class period and they performed their duties subject to the same job description, training manual, employee policies and procedures handbook, and employment contract. (Deposition of Donald Flynn, executive vice president for defendant, attached as Ex. A to Plaintiff's Memorandum in Support of Motion for Conditional Class Certification, at 11, 36, 40-41, 62-63, 66) In addition, defendant's loan officers are paid under the same nationwide compensation plan which was created by defendant's executive vice president and president, and which cannot be altered by lower level management. (Id. at 85) Plaintiff alleges in her complaint that she and other loan officers routinely worked more than forty hours a week without receiving overtime compensation, in violation of 29 U.S.C. §207(a)(1).[4]

Plaintiff further maintains that Heartland's failure to pay overtime compensation to the loan officers was an unlawful nationwide practice. Plaintiff points to evidence that defendant's payroll system classifies loan officers as non-exempt employees, but no loan officer has ever been paid overtime compensation. (Flynn Deposition, at 78) Plaintiff also submits sworn declarations from over 200 of the putative class members who worked at thirty-three of defendant's branch locations in seventeen states and who aver that they were denied overtime compensation after their branch managers told them not to record

---

[4]Section 207(a)(1) requires employers to pay employees covered by the FLSA time at a rate of one and one-half times their regular rate of pay for each hour worked in excess of forty per week.

more than forty hours per week on their time sheets. (*See* Declarations attached to Affidavit of Paul J. Lukas, filed December 10, 2004, Ex. F) Three of those individuals, who worked for defendant as both loan officers and branch managers, state that when they were branch managers, they were directed by corporate management not to allow loan officers to report more than forty hours per week and to revise time sheets that were not in compliance with that directive. (*Id.*, Declarations of Bradly Reynolds, Ellamay Artis, and Daniel Kopronica).

Defendant argues that conditional certification of this case as a collective action is not appropriate because the evidence demonstrates that plaintiff is not similarly situated to the putative class members who state that they were told not to record more than forty hours of work per week on their time sheets. Defendant points to plaintiff's deposition testimony that her branch manager told her on one occasion near the end of her employment not to work more than forty hours per week, that her time sheets accurately reflected the time she worked in the office each week, and that she never attempted to report overtime hours. (*See, generally,* Plaintiff's Deposition, Defendant's Ex. B)

Factual dissimilarities between the named plaintiff's circumstances and those of some of the putative class members do not necessarily preclude conditional certification, although such dissimilarities are relevant to the final certification issue.[5] In *Hoffman v. Sbarro, Inc.*, 982 F.Supp. 249 (S.D.N.Y. 1997), the plaintiffs claimed that the defendant operator of a nationwide restaurant chain violated the FLSA by wrongfully classifying

---

[5]Courts consider several factors in determining whether the plaintiffs are similarly situated for purposes of final certification once discovery is completed: (1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; (3) fairness and procedural considerations; and (4) whether plaintiffs made any requisite statutory filings before instituting suit. *Thiessen,* 267 F.3d at 1102-03 (citing *Vaszlavik,* 175 F.R.D. at 678).

restaurant managers as exempt "executive" employees and denying them overtime compensation. Specifically, plaintiffs alleged that they were not paid on a "salary basis" as required for exempt, "executive" employees because defendant's policies required restaurant managers to reimburse the company for cash shortages, inventory shortages, or other losses occurring under their supervision by docking the manager's paycheck or by making out-of-pocket reimbursements to the company. *Id.* at 251. Plaintiffs asserted that all restaurant managers employed by defendant were subject to reductions in their compensation and that plaintiffs were therefore entitled to unpaid overtime. *Id.* Plaintiffs sought conditional certification of the case as a collective action under §216(b). The district court found that plaintiffs had adequately demonstrated that all of defendant's restaurant managers were subject to reductions in their compensation as a result of a company-wide policy which violated the FLSA. *Id.* at 261. The district court rejected the defendant's argument that the named plaintiffs could not properly represent the class because they were never subject to pay docking. The court stated: "[P]laintiffs need not have each suffered actual deductions to show that they and other managers were "subject to" improper reductions in compensation by virtue of a common policy. . . .The issue, . . . is whether defendant's policy resulted in an actual practice or significant likelihood of improper reductions. Plaintiffs are adequate class representatives on this issue." *Id.* at 262-263.

Here, plaintiff and any of the other 600 putative class members who were not directed by their branch managers to falsify their time sheets to reflect only forty hours of work in a week were nonetheless subject to defendant's alleged nationwide practice of not

paying loan officers overtime compensation, in violation of the FLSA. Plaintiff and the putative class members are similarly situated in that they held the same job title, were subject to the same job requirements, were paid under the same compensation plan, and were allegedly denied overtime compensation.[6] See Montoya v. Rescue Industries, Inc., 176 F.3d 489, 1999 WL 240247 at *1 (10th Cir. (Colo.) 1999) (unpublished)[7] (recognizing that plaintiffs in putative collective action under §216(b) met their burden at the conditional certification stage by alleging, with supporting evidence, that they and the putative class members were service technicians who performed similar job duties in a similar manner and who were paid on a commission basis without additional compensation for overtime). Accordingly, defendant's argument that plaintiff is an inadequate representative because her circumstances differ from those of approximately 200 of the opt-in plaintiffs does not defeat conditional certification.

Moreover, the strict requirements of Fed.R.Civ.P. 23 do not apply to collective actions under §216(b) at the conditional certification stage. See Thiessen, 267 F.3d at 1105 ("To . . . interpret the `similarly situated' standard by simply incorporating the requirements of Rule 23 [into §216(b)] would effectively ignore Congress' directive" not to have the Rule 23 standards apply to collective actions); Grayson v. K Mart Corp., 79 F.3d 1086, 1096 n.12 (11th Cir. 1996)("It is clear that the requirements for pursuing a §216(b) class action are independent of, and unrelated to, the requirements for class action under [Fed.R.Civ.P. 23]"; Hoffman, 982 F.Supp. at 263 (collecting cases).

---

[6]Plaintiff has submitted declarations from other former loan officers who state that they worked in excess of forty hours per week on average and were not compensated for the additional hours. (Plaintiff's Memorandum in Support of Motion for Conditional Class Certification, Ex. D)

[7]A copy of the Montoya decision is attached to the Recommendation.

Defendant also contends that the putative class members and plaintiff are not similarly situated because branch managers control the operations of individual branches and because some of the putative class members signed employment agreements containing choice-of-forum provisions which may preclude those individuals from participating in this action. Again, although these factual differences may be pertinent to the court's final determination on the certification issue after discovery is completed, they are not relevant to conditional certification of this case as a collective action. *See Reab*, 214 F.R.D. at 627; *Williams v. Sprint/United Management Co.*, 222 F.R.D. 483, 487 (D.Kan. 2004).

Defendant's argument that conditional certification is not appropriate because plaintiff cannot ultimately prevail on her FLSA claim[8] is directed at the merits of plaintiff's case and should be asserted in a motion for summary judgment; it does not affect the conditional certification analysis. *See Vaszlavik*, 175 F.R.D. at 680; *Williams*, 222 F.R.D. at 487.

Heartland's primary contention in opposition to conditional certification is that its national policy, as set forth in the employee handbook,[9] is to comply with the FLSA.

---

[8]Defendant argues that it cannot be held liable under the FLSA for unpaid overtime compensation because plaintiff testified in her deposition that she never notified her supervisor that she was working overtime, never sought pre-approval to work overtime, and never complained to her supervisor or anyone else that she was not being paid for overtime. (*See, generally,* Defendant's Ex. B)

[9]Defendant's written policy states:

> Non-exempt employees are full-time or part-time employees who are eligible for overtime provisions under the Federal Fair Labor Standards Act and applicable state laws. Non-exempt employees are entitled to overtime pay when they have worked in excess of forty (4) [sic] hours in one workweek.

(Defendant's Ex. E)

9

(Defendant's Ex. E; Flynn Deposition, at 80-81)  Defendant maintains that its policy of statutory compliance is further demonstrated by language in the loan officer employment contract which requires overtime hours to be pre-approved. (Defendant's Ex. B, attachment 12, at 4).[10]

Defendant's arguments are not persuasive.  Although defendant may have a written policy requiring compliance with the FLSA, plaintiff has submitted evidence to show that during the putative class period, defendant's actual practice, in at least seventeen states, was to deny loan officers overtime compensation for hours worked in excess of forty. The record contains declarations from three former branch managers who state that the directive not to allow employee time sheets to reflect more than forty hours per week came from upper management.[11]  Plaintiff has satisfied her burden to make substantial allegations that she and the putative class members were the victims of a corporate practice to deny overtime compensation to loan officers in violation of the FLSA.  The cases relied on by defendant in support of their opposition to conditional certification are thus distinguishable.  See Harper v. Lovett's Buffet, Inc., 185 F.R.D. 358, 363 (M.D.Ala.

---

[10]Defendant further emphasizes that the United States Department of Labor ("DOL") investigated the Aurora branch office where the plaintiff worked in 2003 and did not find any overtime violations. (Flynn Deposition, at 91-96) However, Flynn's deposition testimony does not support defendant's argument that its national policy is to comply with the FLSA. First, it is unclear from the present record whether the DOL investigated the Aurora branch for overtime violations. The record merely reflects that the DOL found several minimum wage violations at the Aurora branch. (Id., and Defendant's Ex. F) Second, defendant concedes that a DOL investigation at its St. Louis, Missouri branch that same year revealed several overtime violations concerning loan officers and that defendant reached a settlement with the agency. (Id. at 91)

[11]Contrary to defendant's assertions at the February 22, 2005 hearing that the declarations submitted by plaintiff on December 10, 2004 constitute inadmissible hearsay, the statements made by three former branch managers that they were directed by "corporate management" not to allow loan officers to record more than forty hours of work per week on their time sheets are admissions by a party opponent and are admissible. See Fed.R.Evid. 801(d)(2).

1999)(denying conditional certification of FLSA action as collective action because plaintiffs failed to show a corporate policy or practice of denying overtime compensation to hourly wage employees in defendant's restaurants nationwide); *Sheffield v. Orius Corp.*, 211 F.R.D. 411, 413 (D.Or. 2002)(denying conditional certification of FLSA action as collective action because plaintiffs failed to show that putative class members who held different job titles and worked under different payment structures "were commonly affected by a uniform plan or scheme to deny workers overtime compensation"); *Tracy v. Dean Witter Reynolds, Inc.*, 185 F.R.D. 303, 311-13 (D.Colo. 1998)(Schlatter, M.J.)(denying plaintiffs' motion to conduct nationwide discovery in putative FLSA collective action because plaintiffs failed to show a nationwide policy or practice to deny employees overtime compensation).

Defendant also relies on *Ray v. Motel 6 Operating Ltd. Partnership*, 1996 WL 938231 (D.Minn. 1996). There, the district court denied conditional certification of a collective action in an FLSA case where the plaintiff claimed that assistant hotel managers employed by defendant nationwide had been denied overtime compensation pursuant to a corporate practice of not allowing assistant managers to record more than forty hours of work per week on their time cards, even though the job required additional hours. Plaintiffs submitted affidavits as proof of defendant's plan to deny overtime. The district court analyzed plaintiffs' motion for conditional certification under the standards applicable to a motion for decertification based on the court's determination that no further discovery was needed to make a final determination on the certification question. *Id.* at *4. The court found that there were factual differences and manageability concerns which precluded certification as a collective action for purposes of trial. *Id.* The court further determined

11

that the evidence did not prove that the alleged illegal overtime plan was carried out through central management because defendant's official written policy required compliance with the FLSA and any illegal practice was implemented on a decentralized level by area supervisors who were responsible for pre-approval of overtime. *Id.*

In this case, although discovery has been underway for some time, plaintiffs have not had an opportunity to conduct discovery on the alleged national practice to deny loan officers overtime compensation or on other factors relevant to the final certification analysis. Based on the evidence of record, the court would be unable to reach any final conclusions about whether the plaintiff and the putative class members are in fact similarly situated, including whether the alleged denial of overtime compensation results from a corporate management directive, or from the illegal decisions of individual branch managers. Even if this action is decertified later, I find that collective discovery is appropriate to facilitate the purposes of §216(b). Accordingly, it is

RECOMMENDED that Plaintiffs' Motion for Conditional Class Certification, filed December 10, 2004, be GRANTED. This action should be conditionally certified as a collective action under §216(b) of the FLSA for purposes of discovery only.

Within ten days after being served with a copy of the proposed findings and recommendation, any party may serve and file written objections to the proposed findings and recommendation with the Clerk of the United States District Court for the District of Colorado. The district judge shall make a de novo determination of those portions of the proposed findings or specified recommendation to which objection is made. The district judge may accept, reject, or modify, in whole or in part, the proposed findings or recommendations made by the magistrate judge. The

judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to make timely objections to the magistrate judge's recommendation may result in a waiver of de novo review of the recommendation by the district judge and may also waive the right to appeal from a judgment of the district court based on the findings and recommendations of the magistrate judge.

Dated this _3rd_ day of March, 2005.

BY THE COURT:

PATRICIA A. COAN
United States Magistrate Judge

13

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Raquib Abduallah and
Phill Graham,

Civil No. 04-2951 (JMR/FLN)

Plaintiffs,

v.

**ORDER**

Bank of America, N.A.

Defendant.

---

Donald H. Nichols, Paul J. Lukas, Rachhana T. Srey, for Plaintiffs.
Annette M. Gammon, Patrick R. Martin, for Defendant.

---

**THIS MATTER** came before the undersigned United States Magistrate Judge on January 3, 2005, on Plaintiff's Motion to Certify Class [#38], and on Defendant's Motion for an Order to Conduct Pre-Certification, Voluntary Survey of Purported Class [#34].

Based on all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff's Motion to Certify Class [#38] is **GRANTED**, provided that the Proposed Notice of Pendency of Overtime Lawsuit, attached as Exhibit A to the Affidavit of Paul J. Lukas, is amended to include only employees in the "SMOO9" position. Though the Court recognizes that Plaintiffs have received opt-in consents from employees in disparate positions, Plaintiffs, through the deposition testimony of Joseph De Marco, have met their burden in demonstrating that employees in the "SMOO9" position are similarly situated, as required by 29 U.S.C. § 216(b). Therefore, conditional class certification and judicial notice is warranted as to those "SMOO9" employees. Plaintiffs shall send the Proposed Notice, as amended, to the putative members on a date the parties agree upon. The agreed-upon date should allow Defendant to conduct their requested Pre-

-1-

Certification Survey before the Notice is sent.

Based on all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion for an Order to Conduct Pre-Certification, Voluntary Survey of Purported Class [#34] is **GRANTED,** provided that the statute of limitations that governs Plaintiff's cause of action is tolled during the execution of the Survey.

DATED: January 20, 2005

*s/ Franklin L. Noel*
United States Magistrate Judge

## UNITED STATES DISTRICT COURT
### DISTRICT OF MINNESOTA

Robert G. Wilbur,
individually and on behalf of other
similarly situated employees,

Court File No.: 04-3172 (DWF/FLN)

Plaintiffs,

v.

**ORDER**

Chase Manhattan Mortgage
Corporation,

Defendant.

The above-entitled matter came on for hearing upon Plaintiffs' Motion for Conditional

Class Certification and Judicial Notice and Motion to Compel.  Based upon the memoranda,

exhibits and all the files and proceedings herein, the Court makes the following:

### ORDER

1)    Plaintiffs' motion for conditional class certification and judicial notice is **GRANTED.**

2)    Plaintiffs' motion to compel production of the list requested in Plaintiff's Request for

Production of Documents, Set I, No. 1 is **GRANTED.**   Defendants shall produce these

documents with three (3) days from the date of this Order.

Dated: 12/22/04

BY THE COURT:

Franklin L. Noel
United States Magistrate Judge

SCANNED
DEC 3 2004
U.S. DISTRICT COURT MPLS

UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| Michael Klas, individually<br>and on behalf of other<br>similarly situated employees, | Case No. 03-3387 JMR/FLN |
| Plaintiffs, | |
| v. | ORDER |
| New Century Financial Corporation,<br>and New Century Mortgage Corporation,<br>California corporations, | |
| Defendants. | |

The above-entitled matter came on for hearing upon Plaintiffs' Motion to Compel and Motion for Approval of Joinder Method. Based upon the memoranda, exhibits and all the files and proceedings herein, the Court makes the following:

### ORDER

1)   Plaintiff's motion to compel a response to discovery is **GRANTED**. Defendants shall respond to Plaintiffs' first set of discovery within five (5) days of this order;

2)   Plaintiff's motion to compel the list of loan originators is **GRANTED**. Defendants shall provide a complete response to Plaintiffs' Request for Production No. 1 within five (5) of this Order;

3)   Plaintiff's motion requesting approval of their proposed method for joinder is **GRANTED**. Each person who files a consent form with the Court will be a Plaintiff in this action as of the date of the filing; and

4)   The Clerk of Court is not required to docket the name of each new Plaintiff who joins this action by filing a consent form.

Dated:  Oct. 7 2003

BY THE COURT:

Franklin L. Noel
UNITED STATES MAGISTRATE JUDGE

FILED OCT - 8 2003
RICHARD D. SLETTEN, CLERK

JUDGMENT ENTD.
DEPUTY CLERK _____

## UNITED STATES DISTRICT COURT

### DISTRICT OF MINNESOTA

| | |
|---|---|
| Halver Bailey, Levi R. Libra and Allen LeCuyer, on behalf of themselves and other past and present employees similarly situated, | Case No. 01-545 (JRT/FLN) |
| Plaintiffs, | |
| v. | ORDER |
| Ameriquest Mortgage Company, | |
| Defendants. | |

The above-entitled matter came on for hearing upon Plaintiffs' Motion for Approval of Method of Joinder. Based upon the memoranda, exhibits and all the files and proceedings herein, the Court makes the following:

### ORDER

1. Plaintiffs' Motion to Compel answers to Interrogatory No. 1 is GRANTED. Defendant shall provide a complete answer to this interrogatory within seven (7) days of this Order.

2. Plaintiffs' Motion for Requesting Approval of their Proposed Method for Joinder is GRANTED. Each person who files a consent form with the Court will be a Plaintiff in this action as of the date of the filing.

2. The Clerk of Court is not required to docket the name of each new Plaintiff who joins this action by filing a consent form.

Dated: 9|19|01

BY THE COURT:

Franklin L. Noel
UNITED STATES MAGISTRATE JUDGE

FILED    1 9 2001
RICHARD D SLETTEN CLERK

JUDGMENT ENT'D_____
DEPUTY CLERK_____

A 023

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

David C. Casas, Troy D. Clark,                    Civil No. 00-1512 (JRT/SRN)
Patrick Hogan, Linda L. Souder, and
William M. Soule on behalf of themselves
and other past and present employees
similarly situated,

        Plaintiffs,

v.                                                                ORDER

Conseco Finance, Inc., a
wholly owned subsidiary of
Conseco, Inc.,

        Defendant.

---

Paul J. Lukas, Esq. and Donald H. Nichols, Esq., on behalf of Plaintiffs.

Jason M. Hedican, Esq., on behalf of Defendant.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

    The above-entitled matter was heard by the undersigned United States Magistrate Judge

on October 31, 2000, on multiple motions, including Plaintiffs' Motion to Compel Defendant to

Provide a Complete Answer to Plaintiffs' Interrogatory Number Four, and Plaintiffs' Motion for

Approval of the Proposed Judicial Notice.  In the November 6, 2000, Order, the Court granted

Plaintiffs' motion for judicial notice, but deferred ruling on (1) the scope of the collective action,

and (2) Plaintiffs' Motion to Compel Defendant to Provide a Complete Answer to Plaintiffs'

1

FILED_____  DEC 0 4 2000
    FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD_____
DEPUTY CLERK_____

Interrogatory Number Four,[1] until the parties submitted supplemental briefing regarding the potential geographic restrictions of the class. This Order will address these issues. In addition, this Order will also resolve the two outstanding issues regarding the wording of the proposed judicial notice.

I.    LIMITATIONS ON THE SCOPE OF THE CLASS AND DISCOVERY

Plaintiffs brought this collective action under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, et. seq. Section 216(b) describes the right of action under the FLSA and states that

> an action . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought

29 U.S.C. § 216(b).[2]  In determining whether to allow judicial notice the Court must determine if the proposed plaintiffs are similarly situated. The Court has discretion to assist in the notice of potential class members through judicial notice of a collective action. Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165, 170, 110 S. Ct. 482, 486, 107 L.Ed.2d 480 (1989). However, section

---

[1] Interrogatory number four requests the following information: "Identify by name, last known address, telephone number, and dates of employment, all persons employed by you as loan specialists, loan originators, account mangers, or loan officers, from June 1, 1997, to present." (Pls.' Mem. in Supp. of Mot. for Approval of Notice, Doc. No. 16, p. 8.) The Court denied this motion to the extent that it seeks production of names of the retail originators and direct lending originators beyond the two year statute of limitations because Plaintiffs did not plead "willfulness." (Order dated Nov. 6, 2000, Doc. No. 33, p. 3.)

[2] A FLSA collective action is different from a Fed. R. Civ. P. 23 class action in that FLSA follows a "opt-in" procedure rather than the Rule 23 "opt-out" procedure. Schmidt v. Fuller Brush Co., 527 F.2d 532, 535-36 (8th Cir. 1975).

2

216(b) does not define the term "similarly situated" and the issue has been largely unaddressed

by the circuit courts. See Bayles v. American Med. Response of Colo., Inc., 950 F.Supp. 1053,

1058-66 (D. Colo. 1996) (noting that district court opinions on the issue of "similarly situated"

generally fall into four categories: (1) similarly situated if members meet the commonality and

typicality requirements of modern Rule 23(a); (2) similarly situated if members meet all the

requirements of modern Rule 23 and do not conflict with the requirements of section 216(b); (3)

similarly situated if the members meet the requirements for a "spurious" class under pre-1966

Rule 23; and (4) similarly situated under the plain meaning of the term "similarly situated" and in

light of the purposes of the collective action, as typified by Lusardi v. Xerox Corp., 118 F.R.D.

351 (D.N.J. 1987)).

    In determining whether plaintiffs are sufficiently similarly situated to proceed

collectively, the District of Minnesota has largely followed the two-stage process developed in

Lusardi v. Xerox. Corp.[3]  See Ray v. Motel 6 Operating, Ltd., 1996 WL 938231 (D. Minn.

_____

[3]Lusardi v. Xerox Corp., 118 F.R.D. 351 (D.N.J. 1987), mandamus granted in part,
appeal dismissed, Lusardi v. Lechner, 855 F.2d 1062 (3rd Cir. 1988), modified in
part, and remanded, Lusardi v. Xerox Corp., 122 F.R.D. 463 (D.N.J. 1988), aff'd in part, appeal
dismissed; Lusardi v. Xerox Corp., 975 F.2d 964 (3rd Cir. 1992).
    Under the Lusardi test, the Court's first determination is made at the notice stage.
Mooney v. Aramco Services Co., 54 F.3d 1207, 1213 (5th Cir. 1995).  The Court generally
reviews the pleadings and the affidavits to determine whether to conditionally certify a
representative class at that time. Id. at 1214. If the Court conditionally certifies the class; the
action proceeds as a representative action throughout discovery. Id.  The second step is usually
precipitated by a defendant's motion for "decertification" after discovery is largely complete. Id.
At this stage, the Court has more information upon which to make its factual determination on
the question of "similarly situated." Id.  If the Court determines that the parties are similarly
situated, the case proceeds to trial. Id.  If the Court determines that the parties are not similarly
situated, the opt-in plaintiffs are dismissed without prejudice, and the named plaintiffs proceed to
trial on their individual claims. Id.  This two step process "was implemented specifically to
allow discovery on the circumstances of and facts surrounding the class members and named

3

1996); Severtson v. Phillips Beverage Co., 141 F.R.D. 276 (D. Minn. 1992); and Ulvin v. Northwestern Nat. Life Ins. Co., 141 F.R.D. 130 (D. Minn. 1991). The Court will approve the sending of judicial notice, and authorize applicable discovery when "plaintiffs have established a colorable basis for their claim that a class of similarly situated plaintiffs exists." Severtson, 141 F.R.D. at 278. A colorable basis means that Plaintiffs must come forward with something more than mere averments in the complaint. Id. at 278-79. At this preliminary stage of analysis the Court need not make findings of fact with respect to contradictory evidence, nor make credibility determinations with respect to the evidence presented. Id. at 279.

Determining class status at the notice stage is often liberally authorized and allows the plaintiffs to proceed as a class throughout discovery; however, this status is not the equivalent of class certification. Ray, 1996 WL 938231 *2. Final certification generally occurs after discovery when the Court makes the necessary findings of fact and credibility determinations, and ultimately decides if the proposed class is in fact similarly situated. See Ray, 1996 WL 938231 *2 ("The court can 'decertify' the class following discovery when the court has more information to achieve a factual determination on the similarly situated question."); and Severtson, 141 F.R.D. at 279 (noting that "[s]uch findings will be made by the district court at the certification hearing if plaintiff meets its initial burden of establishing a colorable basis for its claims.").

Plaintiffs provide the following evidence in support of their assertion that the proposed nationwide class is similarly situated for the purposes of class notice and discovery:

---

plaintiffs." Lusardi, 118 F.R.D. at 361.

4

1.  Andrew James, Defendant's Rule 30(b)(6) designee for the Retail Mortgage Services Division (RMS), testified that regardless of geographic location, the retail originators perform the same job duties under the same job description, are compensated using one compensation plan, are entitled to the same rates of commission, are compared regionally and nationally with other retail originators, and were not paid overtime for work prior to March 2000. (Pls. Mem. in Opp'n to Def.'s Request to Limit Class of Similarly Situated Employees, Doc. No. 41, p. 7; and Aff. of Paul Lukas, Doc. No. 42, Ex. A, Dep, of Andrew James.)

2.  Patrick McMullan, Defendant's Rule 30(b)(6) designee for the Home Improvement Division (HID), testified that, regardless of geographic location, the direct lending originators perform the same job duties under the same job description, are compensated using one compensation plan, are entitled to the same rates of commission, are compared nationally with other direct lending originators, and were not paid overtime prior to March 2000. (Pls. Mem. in Opp'n to Def.'s Request to Limit Class of Similarly Situated Employees, Doc. No. 41, p. 7; and Aff. of Paul Lukas, Doc. No. 42, Ex. B, Dep. of Patrick McMullan.)

3.  The retail loan originators and the direct loan originators perform the following similar tasks: using "leads" to sell products to customers, taking the necessary information for the loan/mortgage application, assisting in the processing of the loan/mortgage, and receiving approval from an underwriter. (Pls. Mem. in Opp'n to Def.'s Request to Limit Class of Similarly Situated Employees, Doc. No. 41, p. 7; and Aff. of Paul Lukas, Doc. No. 42, Exs. A and B.)

Despite these facts, Defendant claims that a proposed class that includes retail originators and direct loan originators outside the State of Minnesota is inappropriate. (Def.'s Supp. Brief on Geographical Limitations to Collective Action, Doc. No. 39, p. 7.) In response to Plaintiffs' evidence, Defendant offers its own evidence that the proposed nationwide class is not similarly situated. For example, Defendant asserts, inter alia, the following: (1) RMS and HID are two separate divisions; (2) RMS and HID sell different loan products using different methods; (3)

lack of commonality of damages; (4) individualized exemptions may preclude recovery; and (5) the proposed class is unmanageable because there are hundreds of offices and potentially thousands of plaintiffs. (Id., pp. 7-15.)  Defendant relies on Ray v. Motel 6 Operating, Ltd. Partnership, 1996 WL 938231 (D. Minn. 1996), in arguing that these factors should be considered in determining whether Plaintiffs have shown a colorable basis for the nationwide class at the notice stage.  The court in Ray used factors that are generally reserved for the decertification process –such as the existence of different jobs, different geographic locations, and different supervisors– at the initial notice stage when the facts before the court were extensive and there was no need for further discovery to reach a determination. Ray, 1996 WL 938231 * 3.  Unlike Ray, this case requires additional discovery before a final determination of class certification.  For example, the Court does not have definitive evidence to support a finding that there is a lack of commonality of damages or individualized exemptions that would preclude recovery.

Although the Court finds that continued discovery is necessary, the Court is aware that manageability issues are a factor even at the preliminary notice stage.  See Severtson v. Phillips Beverage Co., 137 F.R.D. 264, 266-67 (D. Minn. 1991)(before allowing plaintiffs to send judicial notice the court should make a preliminary inquiry as to whether a manageable case exists).  The absence of a single-company wide plan or decision is a factor in determining manageability.  See Ray, 1996 WL 938231 *4 (manageability was questionable because the court questioned whether the illegal action was actually carried out through central management –the official policy was in compliance with the FLSA and the evidence showed that any illegal scheme was carried out on a decentralized level); and Lusardi, 122 F.R.D. at 465 (manageability

6

concerns included the lack of a single decision, in this case there were sixty-five separate reductions in the workforce). Although different offices and different locations are involved in this case, the potential plaintiffs do not appear to be so diverse as to create an unmanageable class at this time. Unlike Ray and Lusardi, Plaintiffs have presented evidence of centralized decision making and planning. Defendant used the same job description, performance models, and compensation plans for its retail originators throughout the country regardless of geographic location. The same is true for the direct lending originators. In addition, there is evidence that the retail originators and direct lending originators performed very similar duties, and as a matter of policy, neither were paid for overtime work. These facts are sufficient to create a colorable basis for allowing nationwide judicial notice of this action.

The Court need not resolve factual disputes as to this evidence. At this stage it is enough that Plaintiffs have presented evidence tending to show central control. The fact that these allegations are disputed does not mean that Plaintiffs have failed to establish a colorable basis for notice. Factual disputes are more properly brought after discovery is complete, when the court revisits the issue of class certification. Ray, 1996 WL 938231 *3 ("the court can 'decertify' the class following discovery when the court has more information to achieve a factual determination"); and Severtson, 141 F.R.D. at 279 (fact issues should be resolved "at the motion for certification of collective action").

At this notice stage, the Court finds that Plaintiffs have established a colorable basis for nationwide judicial notice. The Court will allow Plaintiffs to send judicial notice to all retail originators and direct lending originators who are or have been employed at any of Defendant's nationwide offices within the two year statute of limitations period. In addition, when a court

7

finds "court-authorized notice appropriate, the discovery should be allowed." Severtson, 137

F.R.D. at 267. Therefore, the Court orders Defendant to answer Plaintiffs' interrogatory question

number four as it applies to the nationwide class.

## II.   FORM OF JUDICIAL NOTICE

In the November 6, 2000, Order, the Court ordered the parties to jointly prepare a

proposed judicial notice and submit the notice for the Court's approval.  The parties largely

agree on the substance of the proposed judicial notice, but disagree on two issues.

### A.  Disagreement One: The Description of Defendant's Alleged Defenses

The first disagreement involves the description of Defendant's alleged defenses.  The

parties agree that the defense paragraph should read as follows:

> Defendant has denied any wrongdoing or liability and contests all
> claims that have been asserted.  While generally the FLSA requires
> that employees receive overtime pay for all hours of work in excess
> of forty (40) hours per work week, the FLSA also provides that
> certain employees are "exempt" from its overtime requirements.
> Defendant maintains that Plaintiffs were "exempt" employees under
> the FLSA.

(Pls.' Final Version of Judicial Notice, p. 2 ; and Aff. Jason H. Hedican, Doc. No. 44, Ex. 12, p.

2.)  Defendant proposes to add the following sentence to the end of the above paragraph, "which

for example exempts employees in certain administrative, outside sales or commission sales

positions." (Aff. Jason H. Hedican, Doc. No. 44, Ex. 12, p. 2.)  Plaintiffs object to Defendant's

request arguing that this "detailed description" of the defenses "tips the neutral balance of the

notice toward Defendant." (Pls.' Mem. on Proposed Judicial Notice, p. 2.)  The Court disagrees.

The proposed additional sentence does not provide a detailed description of the defenses.  The

sentence does not contain confusing, or any statutory citations, nor does it suggest that all

8

administrative, outside sales, or commission sales employees are in fact exempt. Rather, the proposed sentence generally lists potential exemptions available under the FLSA. Defendant's proposed additional sentence does not tip the balance of neutrality and will be allowed.

    B.  Disagreement Two: Number of Consents Filed

    The parties also disagree on whether the judicial notice should contain a statement indicating the number of consents that have been filed. Plaintiffs argue that without this information, potential plaintiffs "will be mislead into believing that they would be the seventh plaintiff, joining a small group." (Pls.' Mem. on Proposed Judicial Notice, p. 1.) Plaintiffs assert that such an omission would be contrary to the concept of "strength in numbers," which Plaintiffs claim is a stated purpose of the FLSA. (Id., at p. 2, citing Hoffman-La Roche, 493 U.S at 170; and Glass v. IDS Fin. Servs., Inc. 778 F.Supp. 1029, 1081-82 (D. Minn. 1991).) It is true that the FLSA authorizes collective actions, and that collective actions assist plaintiffs in lowering individual costs by pooling their resources to vindicate their rights, Hoffman-La Roche, 493 U.S. at 170; however, such a policy does not mandate that potential plaintiffs be informed of the exact number of other plaintiffs participating in the suit.

    The proposed judicial notice explains that Plaintiffs seek to sue on behalf of all employees who are or have been:

        (a) employed by Defendant as direct lending originators in its Home Improvement Division from June 22, 1998 until April 1, 2000 or as retail originators in its Retail Mortgage Services Division from June 22, 1998 until March 1, 2000; and

        (b) did not receive overtime compensation for any hours worked beyond forty (40) hours in a work week.

(Pls.' Final Version of Judicial Notice, p. 2 ; and Aff. Jason H. Hedican, Doc. No. 44, Ex. 12, p.

3.) The Court finds that this statement is sufficient to alert potential plaintiffs of their rights in a collective action lawsuit. The Court does not find it necessary to include the exact tally of current opt-in participants in the judicial notice.

### THEREFORE, IT IS HEREBY ORDERED that:

(1)  Plaintiffs are given leave to send judicial notice to all retail originators and direct lending originators who are or have been employed at any of Defendant's nationwide offices within the two year statute of limitations period.

(2)  Plaintiffs' Motion to Compel Defendant to Provide a Complete Answer to Plaintiffs' Interrogatory Number Four (Doc. No. 15-2) for a nationwide class is GRANTED; and

(3)  The judicial notice will include the Defendant's proposed description of defenses, and will not include the specific number of opt-in participants.

Dated: December 4, 2000

SUSAN RICHARD NELSON
United States Magistrate Judge

10