1  GEORGE J. TICHY, II, Bar No. 041146
   MICHELLE R. BARRETT, Bar No. 197280
2  KIMBERLY L. OWENS, Bar No. 233185
   JUSTIN T. CURLEY, Bar No. 233287
3  LITTLER MENDELSON
   A Professional Corporation
4  650 California Street, 20th Floor
   San Francisco, California  94108
5  Telephone:    (415) 433-1940
   Facsimile:    (415) 399-8490
6  E-mail: gtichy@littler.com, mbarrett@littler.com,
   kowens@littler.com, jcurley@littler.com
7

8  Attorneys for Defendants
   HSBC MORTGAGE CORPORATION (USA) and
9  HSBC BANK USA, N.A.

10

11                  UNITED STATES DISTRICT COURT

12              NORTHERN DISTRICT OF CALIFORNIA

13

| | |
|---|---|
| 14  Philip Wong, Frederic Chaussy, and Leslie Marie Shearn, individually, on behalf of all others similarly situated, and on behalf of the general public, | Case No.  C 07 2446 MMC [ECF] |
| 15 | **DEFENDANTS HSBC MORTGAGE CORPORATION (USA)'S AND HSBC BANK USA, N.A.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION, PRODUCTION OF UPDATED CLASS LIST, AND PARTIAL SUMMARY JUDGMENT** |
| 16                 Plaintiffs, | |
| 17        v. | |
| 18  HSBC Mortgage Corporation (USA); HSBC Bank USA, N.A.; and DOES 1 through 50, inclusive, | |
| 19 | |
| 20                 Defendants. | Date:          February 8, 2008 |
| 21 | Time:          9:00 a.m. |
| | Courtroom:     7 (19th Floor) |
| | Judge:         Hon. Maxine M. Chesney |
| 22 | Complaint Filed:  June 29, 2007 (Amended) |
| | Trial Date:       Not Yet Set |

23

24

25

26

27

28

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA  94108 2693
415.433.1940

DEFENDANTS' OPP. TO PLAINTIFFS'
CONDITIONAL CERT./PARTIAL MSJ                    Case No.  C 07 2446 MMC [ECF]

# TABLE OF CONTENTS

PAGE

I.   INTRODUCTION ................................................................................................ 1

II.  FACTS .............................................................................................................. 1

   A.   Purported Class Metrics ........................................................................... 1

   B.   Loan Consultants Work As Independent Entrepreneurs Who Exercise a High
        Level of Independent Judgment and Discretion ........................................ 2

   C.   "Loan Officers" Are Not Similarly Situated .............................................. 3

        1.   Company Policies and Practices Are Applied Differently Depending
             on Manager, Region and Other Factors ......................................... 4

        2.   California "Loan Officers" Experiences Are Unique to California ........ 7

   D.   HMCU, Not HBUS, Is The "Employer" of The Putative Class Members ......... 8

III. LEGAL ARGUMENT ......................................................................................... 9

   A.   The Court Should Deny Plaintiff's Motion For Conditional Certification ......... 9

        1.   The Legal Framework For An FLSA Collective Action ..................... 9

        2.   Plaintiffs' Misclassification Claims Are Inappropriate for Collective
             Action Treatment Because the Proposed Class Members Are Not
             Similarly Situated ...................................................................... 11

        3.   Plaintiffs' Motion Should Be Denied Because They Have Not
             Sufficiently Demonstrated They Were Subject To The Same Policy or
             Plan ......................................................................................... 14

        4.   Plaintiffs' Motion Fails Because They Have Not Presented Sufficient
             Evidence To Establish HMCU's Pay System Contravenes The FLSA ......... 16

        5.   Conditional Class Certification Should Be Denied, and All Opt-in
             Plaintiffs Who Were Not Employed in Northern California Dismissed,
             to Discourage Unwarranted and Unsupported Nationwide Litigation ......... 16

   B.   Plaintiff's Notice Is Inaccurate And Misleading ..................................... 19

   C.   Defendants Do Not Oppose Providing Plaintiffs An Updated List Of Proposed
        Class Members. ...................................................................................... 20

   D.   The Court Should Deny Plaintiffs' Motion For Partial Summary Judgment ......... 20

        1.   HBUS Is Not A Properly Named Employer Because HMCU And
             HBUS Do Not Constitute An Integrated Enterprise or Single Employer ...... 20

        2.   Questions Of Fact Exist As To Whether The Administrative, Highly
             Compensated And Commissioned Sales Exemptions Are Applicable .......... 24

IV.  CONCLUSION ................................................................................................. 26

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

# TABLE OF AUTHORITIES

**PAGE**

## CASES

*Adams v. Inter-Con Sec. Sys. Inc.,* 242 F.R.D. 530 (N.D. Cal. 2007) .................................................. 10

*Aguirre v. SBC Comm., Inc.,* 2006 WL 964554 (S.D. Tex. 2006) ..................................................... 10

*Baker v. Stuart Broad. Co.,* 560 F.2d 389 (8th Cir. 1977)............................................................... 21, 22

*Bowoto v. Chevron Texaco Corp.,* 312 F. Supp. 2d 1229 (N.D. Cal. 2004).......................................... 23

*Briggs v. United States,* 54 Fed. Cl. 205 (Fed. Cl. Ct. 2002).......................................................... 9, 10, 12

*Brooks v. BellSouth Telecomm., Inc.,* 164 F.R.D. 561 (N.D. Ala. 1995) ............................................ 11

*Celotex Corp. v. Catrett ,* 477 U.S. 317 (1986) ............................................................................ 23

*Clausman v. Nortel Networks,* 2003 U.S. Dist. Lexis 11501 (S.D. Ind. 2003) ............................... 11

*D'Anna v. M/A Com, Inc.,* 903 F. Supp. 889 (D. Md. 1995) ........................................................... 16

*Diaz v. Electronics Boutique of Am.,* 2005 WL 2654270 (W.D.N.Y. 2005) ..................................... 11

*EEOC v. Financial Assurance, Inc.,* 624 F. Supp. 686 (W.D. Mo. 1985) .......................................... 20

*England v. New Century Fin. Corp.,* 370 F. Supp. 2d 504 (M.D. La. 2005)................................. 10, 17

*Falk v. Brennan,* 414 U.S. 190 (1973)........................................................................................ 23

*Flores v. Lifeway Foods, Inc.,* 289 F. Supp. 2d 1042 (N.D. Ill. 2003) ......................................... 11, 16

*Frank v. U.S. West, Inc.,* 3 F.3d 1357 (10th Cir. 1993) ............................................................... 20, 22

*Freeman v. Wal-Mart Stores, Inc.,* 256 F. Supp. 2d 941 (W.D. Ark. 2003) .................................... 14

*Gatto v. Mortgage Specialists of Ill., Inc.,* 442 F. Supp. 2d 529 (N.D. Ill. 2006)............................. 25

*Gerlach v. Wells Fargo &Co.,* 2006 WL 824652 (N.D. Cal. 2006) ................................................... 10

*Grayson v. K Mart Corp.,* 79 F.3d 1086 (11th Cir. 1996) ............................................................. 12

*Harper v. Lovett's Buffet, Inc.,* 185 F.R.D. 358 (M.D. Ala. 1999) ................................................... 17

*Hipp v. Liberty Nat'l Life Ins. Co.,* 252 F. 3d 1208 (11th Cir. 2001) ............................................. 12

*Hoffman La-Roche Inc. v. Sperling,* 493 U.S. 165 (1989) ........................................................... 17, 19

*Hoffmann v. Sbarro, Inc.,* 982 F. Supp. 249 (S.D.N.Y. 1997).......................................................... 10

*Holt v. Rite Aid,* 333 F. Supp. 2d 1265 (M.D. Ala. 2004) ......................................................... 9, 10, 11

*Horne v. United Servs. Auto. Ass'n,* 279 F. Supp.2d 1231 (M.D. Ala. 2003) ................................... 17

*International Brotherhood of Teamsters v. American Delivery Svc. Co., Inc.,* 50 F.3d 770 (9th Cir. 1995).......................................................................................................... 20

*King v. West Corp.,* 2006 U.S. Dist. LEXIS 3926 (D. Neb. 2006)....................................................... 10

*Leuthold v. Destination Am. Inc.,* 224 F.R.D. 462 (N.D. Cal. 2004).............................................. 10

*Marsh v. Butler County Sch. Sys.,* 242 F. Supp.2d 1086 (M.D. Ala. 2003) .................................... 17

*McKenzie v. Davenport-Harris Funeral Home,* 834 F.2d 930 (11th Cir. 1987) ......................... 20, 21

*Mike v. Safeco Ins. Co.,* 274 F. Supp. 2d 216 (D. Conn. 2003)..................................................... 10, 11

*Mitchell v. Kentucky Fin. Co.,* 359 U.S. 290 (1959)........................................................................ 25

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108 2693
415.433.1940

DEFENDANTS' OPP. TO PLAINTIFFS'
CONDITIONAL CERT./PARTIAL MSJ

ii.

Case No.  C 07 2446 MMC [ECF]

# TABLE OF AUTHORITIES
### (CONTINUED)

PAGE

*Morisky v. Public Serv. Elec. and Gas Co.*, 111 F. Supp. 2d 493 (D. N.J. 2000) ...................... 11, 13

*Nissan Fire & Marine Ins. Co. v. Fritz Cos. Inc.* , 210 F.3d 1099 (9th Cir. 2000) ........................... 23

*Pearson v. Component Tech Corp.*, 247 F.3d 471 (3d Cir. 2001) ..................................................... 23

*Penntech Papers v. National Labor Relations Board*, 706 F.2d 18 (1st Cir. 1983) ........................ 22

*Pfohl v. Farmers Inc. Group*, 2004 WL 554834 (C.D. Cal. 2004)................................................... 15

*Randolph v. Budget Rent-A-Car*, 97 F.3d 319 (9th Cir. 1996) ......................................................... 23

*Severtson v. Phillips Bev. Co.*, 137 F.R.D. 264 (D. Minn. 1991) ................................................ 16, 18

*Sheffield v. Orius Corp.*, 211 F.R.D. 411 (D. Or. 2002).................................................... 10, 11, 14

*Smith v. Jones Warehouse, Inc.*, 590 F. Supp. 1206 (N.D. Ill. 1984) .............................................. 22

*Sperling v. Hoffman La-Roche, Inc.*, 862 F.2d 439 (3d Cir. 1988).................................................. 19

*Stone v. First Union Corp.*, 203 F.R.D. 532  (S.D. Fla. 2001) ........................................................ 12

*Thiessen v. General Elec. Cap. Corp.*, 267 F. 3d 1095 (10th Cir. 2001)......................................... 10

*Trevino v. Celanese Corp.*, 701 F.2d 397 (5th Cir. 1983) ............................................................... 21

*Wynn v. Nat'l Broad. Co., Inc.*, 234 F. Supp. 2d 1067 (C.D. Cal. 2002) ........................................ 12

**STATUTES**

29 C.F.R. § 541, *et seq.*............................................................................................................ 25

29 C.F.R. § 541.200(a)............................................................................................................. 24

29 C.F.R. § 541.203 ................................................................................................................. 24

29 C.F.R. § 779.318(a).............................................................................................................. 25

29 U.S.C. § 206(a) ................................................................................................................... 25

29 U.S.C. § 207(i) .................................................................................................................... 25

**OTHER AUTHORITIES**

Department of Labor Opinion Letter "FLSA2006-11," dated Mar. 31, 2006 ................................... 16

Department of Labor Opinion Letter "FLSA2006-31," dated Sept. 8, 2006..................................... 16

**RULES**

California Rule of Professional Conduct 1-400 (D)(2-3) ................................................................ 18

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108 2693
415.433.1940

DEFENDANTS' OPP. TO PLAINTIFFS'
CONDITIONAL CERT./PARTIAL MSJ

iii.

Case No.  C 07 2446 MMC [ECF]

1    I.    **INTRODUCTION**

2      HSBC Mortgage Corporation (USA) and HSBC Bank USA, N.A. (referred to as "HMCU"

3    and "HBUS" and collectively as "Defendants") respectfully submit the following Opposition to

4    Plaintiffs' Motion for Conditional Certification and Partial Summary Judgment.   Plaintiffs Wong,

5    Chaussy and Shearn[1] ask this Court to conditionally certify a nationwide class of approximately 475

6    "loan officers,"[2] each of whom work autonomously as individual entrepreneurs and have virtually

7    unfettered discretion to perform their job where, how and when they see fit.   How and where a "loan

8    officer" spends his or her time to perform the job is influenced by his or her work-style preferences

9    and marketing strategy, compensation goals, experience in the business, geographic location, lead

10   and referral network, and market forces, to name but a few factors.   To claim that "loan officers" are

11   similarly situated on a nationwide basis, Plaintiffs rely primarily on a few select declarations

12   submitted by former California-based "loan officers," individuals whose employment with HMCU

13   was marked by low production and whose compensation varied from other "loan officers."   These

14   variances alone defeat any claim that "loan officers" are similarly situated.   Plaintiffs' Motion for

15   Conditional Certification must be denied.

16     Similarly, Plaintiffs' Motion seeking partial summary judgment naming HBUS as an

17   employer of HMCU's "loan officers" also conveniently glosses over important facts that clearly

18   establish HMCU as the employer of these "loan officers."   Likewise, Plaintiffs' attempt to prevent

19   Defendants from relying on any FLSA exemption except the "outside sales exemption" is misplaced.

20   Plaintiffs ignore the fact the duties performed by "loan officers" fall under different exemptions and

21   that their compensation levels also place them in alternative exemptions.   Thus, Plaintiffs' Motion

22   for Partial Summary Judgment must also be denied.

23   II.   **FACTS**

24     A.    **Purported Class Metrics.**

25     On May 7, 2007, Plaintiffs filed a Complaint for Damages with this Court alleging, among

26

27   [1] Notably, named Plaintiff Shearn, who was an HMCU Retail Mortgage Lending Consultant, has not submitted a declaration in support of Plaintiffs' Motion.

28   [2] As explained more fully below, Plaintiffs' generic use of "loan officers" to describe the purported class deceptively simplifies the facts to create the illusion that they are "similarly situated."

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108 2693
415.433.1940

**DEFENDANTS' OPP. TO PLAINTIFFS'**
**CONDITIONAL CERT./PARTIAL MSJ**
**Case No.  C 07 2446 MMC [ECF]**

1    other things, claims under the Fair Labor Standards Act ("FLSA").  Through their recent Motion,

2    Plaintiffs seek to conditionally certify a <u>nationwide</u> class of individuals who "are [employed] or have

3    been employed by Defendant[3] as Senior Retail Mortgage Lending Consultant[s], Retail Mortgage

4    Lending Consultant[s], and/or Premier Mortgage Sales Officer[s] (collectively, 'loan officer[s]')."

5    *See* Plaintiffs' Motion at 1:9-11.  The "loan officers" described in Plaintiffs' class definition are

6    employed by HMCU.  (Jennings Decl.[4] ¶7.[5])  Currently, HMCU employs approximately two

7    hundred sixty (260) "loan officers" in California, Connecticut, Delaware, Florida, New Jersey, New

8    York, Pennsylvania, and the District of Columbia.[6]  (Gates Decl. ¶5.)  Since May 7, 2004, HMCU

9    has employed a total of 475 "loan officers."  (Gates Decl. ¶4.)  HBUS employs none, yet Plaintiffs

10   refuse to dismiss it from this case. (Barrett Decl. ¶3.)

**B.    Loan Consultants Work As Independent Entrepreneurs Who Exercise a High
Level of Independent Judgment and Discretion.**

These "loan officer" positions are entrepreneurial in nature. (Jennings Depo.[7] 41:24-43:9;

Kim Decl. ¶6.)  The entrepreneurial nature of the position is described to "loan officers" repeatedly

during recruitment and throughout their employment.  (Jennings Depo. 126:11-127:19; O'Rourke

Decl. ¶9 [loan officers resemble "freelancers"; flexibility of job used in recruitment].)  Each "loan

officer" approaches the way he performs his job differently.  For example, when using HMCU's

LoanQuest software, some "loan officers" use the software in the client's presence to fill out

required paperwork.  Others write down information received from the client and then complete the

required paperwork later. (Gates Depo. 64:10-65:9.)  The result is that some "loan officers" spend

---

[3] In their Motion, Plaintiffs have not made clear whether the purported class members are employed or have been employed by HMCU or HBUS.  Defendants believe Plaintiffs' failure to specify which Defendant is a deliberate attempt to confuse potential class members, to confuse the Court, and to gloss over the fact that HMCU, not HBUS, is the true employer of the purported class members.  Further, evidence of Plaintiffs' deliberate effort to obfuscate this issue is readily found in the "opt-in" notices that were sent to Defendants' counsel by Plaintiffs. (Needham ¶13,14, Exhs. 1, 2; Ku ¶37, Exh. 4.)  The employer is simply incorrectly listed as "HSBC."
[4] All Declarations in this Opposition are referred to by declarant's last name and "Decl."
[5] *See, e.g.* Ku Decl. ¶8; Young Decl. ¶3; Liboy Decl. ¶1; O'Rourke Decl. ¶5; Kelter Decl. ¶2,3.
[6] Of the 260 currently employed "loan officers," only ten (10) are in California. (Gates Decl. ¶6.)  Historically, HMCU has employed very few loan officers in California.  During the applicable statute of limitations period for the claims at issue, the highest number of loan officers employed at any one time in California has been approximately twenty (20). (Needham Decl. ¶19.)  That "peak" in "loan officers" occurred in 2006 for, at best, three (3) to six (6) months. (Needham Decl. ¶19.)  Since 2004, HMCU has employed approximately only a total of thirty-three (33) "loan officers" in California. (Gates Decl. ¶6.)
[7] All references to deposition testimony are referred to by deponent's last name and "Depo."

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA  94108 2693
415.433.1940

1    more time doing more administrative duties than others. (Gates Decl. ¶8.) Similarly, one "loan

2    officer" may feel that realtors provide better referrals while another may feel that the best sources are

3    through builders, financial planners, accountants, past books of business, networking events, or bank

4    branches. (Gates Depo. 53:19-57:6; Young Decl. ¶11; Ketler Decl. ¶11; Kim Decl. ¶6.)[8]

5         "Loan officers" are not required to be in any particular place at any particular time, unless, of

6    course, they have made a commitment to a client to meet at a specific time. (Jennings Depo. 124:2-

7    18; Gates Depo. 65:12-66:8 [job performance may depend on things such as location, call volume,

8    where "loan officers" decide to spend their time and how]; Kilfoil Decl. ¶6 ["loan officers" spend

9    majority of time outside of an office]; Liboy Decl. ¶7, 11.)[9]  "Loan officers" are not required to

10   spend any specific amount of time in HBUS branches. (See, e.g., Liboy Decl. ¶8, 9, 10 ["loan

11   officers" instructed that time spent in branches should be minimal; actual time in any branch varies

12   by region]; Monteith Decl. ¶9.)[10]  Rather, because HBUS provides "loan officers" with referral

13   sources, "loan officers" need only ensure that they are available to take HBUS referrals. (Jennings

14   Depo. 124:2-126:9; Ku Decl. ¶21-25; O'Rourke Decl. ¶6; Kim Decl. ¶4.) Moreover, any office

15   space maintained or used by HMCU is considered to be only a "touchdown" space for "loan

16   officers" to briefly stop by if they need to meet a client, attend a meeting, make calls or do some

17   paperwork. (Gates Depo. 52:10-53:10; Gates Decl. ¶9.) HMCU expects that "loan officers" will not

18   sit at an HBUS branch or a HMCU facility all day. (Gates Depo. 74:10-75:11; Kelter Decl. ¶ 10.)

19        C.    "Loan Officers" Are Not Similarly Situated.

20        HMCU employs the retail "loan officers" described in Plaintiffs' Motion. (See, e.g.,

21   O'Rourke Decl. ¶4,5; Liboy Decl. ¶3.) HMCU breaks up its "loan officers" into four (4) divisions

22   across the country: Metro New York, Upstate New York, Southeast, and West Coast. Each division

23   is managed by a Divisional Manager, who oversees Regional Managers. In larger markets, Regional

24

25   [8] Plaintiff Wong admitted at deposition that he used his own business plan to create sales opportunities
     and that he used his personal book of clients and the "CIF system database" to develop business. (Wong
26   Depo. 100:11-13; 102:12-103:4.)
     [9] Plaintiff Wong admits he has no knowledge regarding other "loan officers'" work hours, nor does he
27   have knowledge of anyone else's daily schedules. (Wong Depo. 41:9-25; 193:10-20.)
     [10] See also Ku Decl. ¶21-25; Young Decl. ¶7. Additionally, Stella Chan, the HBUS Oakland Branch
28   Manager, has confirmed that Plaintiff Wong is not required to be at the branch for any set time and does
     not work there with any regularity. (Chan Decl. ¶4,6.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108 2693
415.433.1940

DEFENDANTS' OPP. TO PLAINTIFFS'          3.          Case No.  C 07 2446 MMC [ECF]
CONDITIONAL CERT./PARTIAL MSJ

1    Managers oversee Sales Managers. In large markets, "loan officers" report to Sales Managers; when

2    the market is smaller, such as the California markets, "loan officers" report directly to Regional

3    Managers (Gates Depo. 19:14-20:3; 20:11-21; Young Decl. ¶2,3; Ku Decl. ¶2; O'Rourke Decl. ¶2.)

4    **1.    Company Policies and Practices Are Applied Differently Depending on Manager, Region and Other Factors.**

5

6    Although HMCU has general core personnel policies, the specifics of those policies are

7    applied differently. For example, managers decide what type of candidates they want to hire.

8    (Jennings Depo. 41:5-23.) It is also up to managers as to whether they wish to direct "loan officers"

9    to focus on certain responsibilities or customers. (Jennings Depo. 137:11-15; MacPherson Decl. ¶5.)

10    In fact, although job descriptions establish core job duties, managers can provide "loan officers"

11    with additional responsibilities or goals. (Jennings Depo. 160:21-161:10.)

12    **a.    "Loan Officers" Have Different Compensation Plans and Production Standards.**

13    Plaintiffs incorrectly state that <u>all</u> "loan officers"[11] are compensated under the "same

14    compensation plan and commission schedule." Senior Retail Mortgage Lending Consultants and

15    Retail Mortgage Lending Consultants, who do not work in HMCU's "private banking" line of

16    business, are compensated under the "HSBC Mortgage Corporation (USA) Retail Loan Consultant

17    Incentive Plan." This plan compensates based upon a draw (guaranteed amount) and commissions.

18    (Jennings Decl. ¶11; Needham Decl. ¶16.) However, Premier Mortgage Sales Officers are

19    compensated through an annual base salary and minimum bonus payouts, as well as some

20    commissions—a very different compensation plan. (Jennings Decl. ¶9,10,11; Liboy Decl. ¶5.)[12]

21    Further, the Retail Mortgage Lending Consultants who work or worked in the "private banking" side

22    of HMCU's business are covered under the "HSBC Mortgage Corporation (USA) Mortgage Sales

23    Incentive Plan for Private Banking Sales." (Jennings Decl. ¶12, Exh. 3.)[13] Compensation for "loan

---

[11] Plaintiffs have defined the putative class as all Senior Retail Mortgage Lending Consultants, Retail Mortgage Lending Consultants, and Premier Mortgage Sales Officers. The clear differences, however, between individuals in these positions makes conditional certification inappropriate.

[12] Karen Flanagan, Larry Lee, and Alysse Gore, all of whom submitted declarations for Plaintiffs' Motion, were Premier Mortgage Sales Officers, receiving annual base salaries and guaranteed minimum bonus payouts. (Jennings Decl. ¶9,10; Liboy Decl. ¶5.)

[13] The Private Banking plan and the Retail Loan Consultant plan vary from one another in several respects. The Private Banking plan pays commissions on all loans types at all funded dollar volume levels at 22 basis points, while the Retail Loan Consultant plan pays commissions based on tiered funded

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108 2693
415.433.1940

**DEFENDANTS' OPP. TO PLAINTIFFS'
CONDITIONAL CERT./PARTIAL MSJ**          4.          **Case No.  C 07 2446 MMC [ECF]**

1   officers" also varies due to the fact that some "loan officers" are "highly compensated," earning over

2   $100,000 annually. (Needham Decl. ¶17; Young Decl.¶18; O'Rourke Decl. ¶19; Kelter Decl. ¶17.)

3        In addition to the fact that "loan officers" compensation plans are not all the same, those

4   "loan officers" who receive a draw as part of their compensation are not all similarly situated.

5   Although these "loan officers" often receive a "forgivable draw" for a period of time when first

6   employed, there is no uniform time period that the draw is considered "forgivable." (Gates Depo.

7   29:7-30:8; 30:13-19.) Some people receive only a three (3) month forgivable draw, others receive it

8   for six (6) months, still others have received forgivable draws that are shorter or longer than those

9   time periods. (See, e.g., Kelter Decl. ¶16 [his standard is 6 months but has given up to 10 months].)

10  In fact, Philip Wong, who was and still is having difficulty meeting his job requirements, was given

11  a forgivable draw for a little over twelve (12) months. Frederic Chaussy received a forgivable draw

12  for approximately eight (8) or nine (9) months. (Ku Decl. ¶11,12.)

13        Not only does the length of the forgivable draw vary among "loan officers," but the amount

14  varies, as well. (Needham Decl. ¶16; Young Decl. ¶16; O'Rourke Decl. ¶17.)[14] It is a case by case

15  determination to decide the amount of a draw. (Needham Decl. ¶16.) Further, there is no

16  requirement that a draw be set at a specific amount for any specific amount of time. (Jennings Depo.

17  107:17-108:7; 109:23-111:21; Gates Depo. 30:13-31:10; Needham Decl. ¶16; Young Decl. ¶16.)

18  For example, one "loan officer" in California currently receives a $60,000 draw. (Needham Decl.

19  ¶16.) In New York, Michael O'Rourke provides draws for the "loan officers" he supervises of

20  amounts, such as $35,000 and $50,000. (O'Rourke Decl. ¶17.) "Loan officers" also can participate,

21  if they wish, in setting their draw amount. (Needham Decl. ¶16.)

22        While HMCU maintains national production standards, not surprisingly it is up to each

23  manager to interpret and to apply them to their particular local market area. (Jennings Depo. 158:1-

24  25; Young Decl. ¶15; O'Rourke Decl. ¶16.) HMCU managers also have discretion to conduct

25  contests at a local to provide "loan officers" incentives to increase production. (Gates Depo. 110:10-

26  dollar volume levels at different basis points, between 40 and 65. The Private Banking plan also has
    only four (4) components to calculate commissions versus ten (10) components for the Retail Loan

27  Consultant plan. (Compare Jennings Decl. ¶12, Exh. 3 with Plaintiffs' Motion, Exh. 9.)

28  [14] Even Plaintiff Philip Wong admitted that "loan officers" have different "base salaries" which "varied
    from time to time." (Wong Depo. 32:2-4.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFENDANTS' OPP. TO PLAINTIFFS'          5.          Case No. C 07 2446 MMC [ECF]
CONDITIONAL CERT./PARTIAL MSJ

23.) They also can individually decide how to monitor production and what steps to require of "loan officers" to document production. (*See, e.g.,* Liboy Decl. ¶12 [requiring "call reports" to help counsel on production].) Very simply stated, local management focuses on local economic needs when applying national requirements.

b. **"Loan Officers" Focus Upon Different Mortgage Products, Loans and/or Markets.**

HMCU currently offers more than forty (40) types of mortgage products. (Ku Decl. ¶34.) "Loan officers" in different regions focus their business on just one type of mortgage, a few types, or the entire range of products. For example, HMCU offers premier loans, which are greater than $500,000 in value. In contrast with other regions, the housing market in the San Francisco Bay Area is very high, and the majority of the loans that "loan officers" in Northern California sell each month premier loans. (Ku Decl. ¶32. *See also* Kelter Decl. ¶13 [describing a focus upon confirming loans of a maximum of $417,000].) Premier Mortgage Sales Officers specialized in selling to "affluent customers," who received better pricing on loans and who were allowed to borrow more money and focused cross-selling efforts toward Premier Centers. (Liboy Decl. ¶4; Barrett Decl. ¶5, Exh. 2.)

c. **Methods for Determining HBUS Branch "Assignments" Differ.**

HBUS branches serve as a source of client referrals for HMCU "loan officers." (Kelter Decl. ¶9; O'Rourke Decl. ¶6; Monteith Decl. ¶5.) As a result, HMCU managers often "assign" bank branch referrals to "loan officers." (*See, e.g.,* Kelter Decl. ¶8; Coyne Decl. ¶12; Young Decl. ¶7.) However, the way in which HMCU managers "assign" these branches and the resulting referrals differs from manager to manager. (Kelter Decl. ¶8 [factors including seniority, productivity, geographic convenience, and good relationship with bank considered].) For example, Senior Regional Mortgage Lending Manager Amy Ku tries to rotate branch referrals among "loan officers" to give all "loan officers" a chance to receive referrals. Ms. Ku allows "loan officers" to request certain branch assignments and will split certain branches up if more than one "loan officer" requests referrals from a specific branch. (Ku Decl. ¶20.) In contrast, Regional Manager Daniel Kilfoil, who manages "loan officers" in Long Island and Queens, assigns bank branches only to "loan officers" who are high producers and very sales savvy. Not all of the "loan officers" Mr. Kilfoil supervises

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 34108 2693
415.433.1940

1  receive bank branch referrals. (Kilfoil Decl. ¶10.)[15]  This is but another example of local managers

2  making different decisions to achieve national production requirements.

**d.      Managers Implement Discipline in Different Ways.**

4       Similar to HMCU's national production standards, HMCU maintains a performance

5  management and corrective action policy.  However, how these are implemented vary on a case-by-

6  case basis.  (Jennings Depo. 161:11-163:4.)  Some managers quickly resort to the disciplinary

7  system and place employees on Interim Job Discussions ("IJDs"), while others are more lenient and

8  give employees more chances to improve their performance than what is outlined in HMCU's

9  policy.  (Young Decl. ¶11; Ku Decl. ¶28.)  Even the termination process, which is again guided by

10  HMCU's policy on terminations, is handled differently by managers—again, on a case-by-case

11  basis.  (Jennings Depo. 166:17-168:4.)

**e.      Managers Provide Different Types of Training.**

13      While "loan officers" attend training on procedures in Buffalo, as well as training on "High

14  Trust Selling," "loan officers" also receive varied and individualized training from their managers at

15  a local level.  (Ku Decl. ¶30-33; Kilfoil Decl. ¶11.)  For example, in New York, Retail Mortgage

16  Manager Michael Coyne conducts monthly meetings on various topics that include guest speakers to

17  help train "loan officers."  (Coyne Decl. ¶20.)  In contrast, Amy Young, the Regional Sales Manager

18  for Southern California, provides more informal training through daily conversations and counseling

19  of "loan officers."  (Young Decl. ¶17.)[16]

**2.      California "Loan Officers" Experiences Are Unique to California.**

21      Of the seventeen (17) employee declarations submitted in support of Plaintiffs' Motion, ten

22  (10) come from employees who work or worked in California.  (Jennings Decl. ¶6; Needham Decl.

23  ¶4.)  Historically, neither HBUS nor HMCU has had a very big or strong presence in California.  In

24  fact, HBUS and HMCU really only began to aggressively work on increasing their presence and

25  recognition in California in approximately 2005.  By comparison, HBUS and HMCU have had very

26  strong and visible presences in New York for at least ten (10) years.  Given the fact that HBUS and

---

27  [15] *See* Coyne Decl. ¶12 ("assigning" bank branches as a reward for top producers with new "loan officers" being required to "earn" opportunity to get branch referrals).

28  [16] *See* Liboy Decl. ¶13 (training through individualized guidance and counseling and biweekly meetings).

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA  94108 2693
415.433.1940

1    HMCU are more well known in the East, "loan officers" in New York have a very different

2    experience from those "loan officers" in California, where HBUS and HMCU are less recognized.

3    "Loan officers" in California must work harder  to develop their business and prospective client

4    base. The experiences of "loan officers" in California cannot be seen as typical or similar to that of

5    loan officers in other states. (Gates Decl. ¶7; Needham Decl. ¶18.)

6         Indeed, the unique experience of California "loan officers" is reflected by the fact that seven

7    (7) of the ten (10) individuals from California submitting declarations in support of Plaintiffs'

8    Motion are or were low producers, were subject to discipline for that low production, and/or were

9    terminated for low production.     (Needham Decl. ¶¶4,5,7-12 [Chaussy, Henry, Lim and Yee

10   terminated for low production; Wong, Cox and Lee on IJD for low production].)[17]

11        **D.     HMCU, Not HBUS, Is The "Employer" of The Putative Class Members.**

12        Contrary to the picture Plaintiffs attempt to paint, HMCU is not just a department within

13   HBUS that would therefore make HBUS the putative class members' "employer." Indeed, HBUS

14   and HMCU are separate corporations. (Kujawa Decl. ¶3.)  HMCU is an independent, legal entity

15   and not HBUS' mortgage department, as noted by HMCU's Senior Vice President of Sales and

16   Marketing in his deposition.  (Gates Depo. 40:23-41:1; Marczak Depo. 15:2-18.)  HMCU has its

17   own assets, which are controlled by HMCU's, not HBUS', management team.  It also has its own

18   liabilities. (Gates Depo. 44:7-13; 45:14-23.) HMCU maintains physical headquarters office space in

19   Depew, New York, while HBUS' maintains physical headquarters space in Buffalo, New York.

20   Only HMCU employees work in the Depew facility. (Marczak Depo. 64:2-21.) Further, HBUS and

21   HMCU do not have common directors. Each company has a separate board of directors.  No director

22   of HBUS is a director of HMCU and no HMCU director is a HBUS director. (Kujawa Decl. ¶4.)  In

23   addition to having separate boards of directors, HBUS and HMCU have separate and different

24   Articles of Incorporation and Bylaws. (Kujawa Decl. ¶5.)

25        The two companies do not interchange employees and HMCU employees represent

26   themselves as an HMCU employee through their business cards, signs, nametags and e-mail

27   ───────────────────────

[17] One of the ten (10) declarations was submitted by a former "sales assistant," Stephanie Chu. Ms. Chu's employment with HMCU was terminated for reasons relating to dishonesty and the fact that

28   HMCU believed that it could no longer trust Ms. Chu. (Needham Decl. ¶6.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108-2693
415.433.1940

**DEFENDANTS' OPP. TO PLAINTIFFS'            8.             Case No.  C 07 2446 MMC [ECF]
CONDITIONAL CERT./PARTIAL MSJ**

1    communications. (Jennings Decl. ¶4; Ku Decl. ¶9,10; O'Rourke Decl. ¶5; Kim Decl. ¶4.) Although

2    HMCU receives human resources advice and services from HBUS Human Resource professionals,

3    HMCU managers ultimately make all hiring and firing decisions. (Gates Depo. 38:12-18; Marczak

4    Depo. 111:18-113:1; Jennings Depo. 41:5-23.) Similarly, while HMCU may seek advice and input

5    from HBUS' Human Resources staff, as well as compensation specialists who work HSBC Finance

6    Corporation, HMCU also determines what jobs are necessary for the business to run and what the

7    responsibilities for those jobs will be. (Marczak Depo. 44:16-45:22.) "Loan officer" job

8    descriptions are always developed by HMCU, even if they seek additional input from the HBUS

9    Human Resources staff and HSBC Finance Corporation's compensation specialists. (Jennings

10   Depo. 144:15-145:8.) It is also HMCU, not HBUS, that provides the funding for "loan officer"

11   compensation. (Jennings Decl. ¶3.) Moreover, it is HMCU, not HBUS, that determines how it

12   wishes to compensate "loan officers." (Jennings Depo. 91:10-21; 93:18-94:13 [the business

13   determines the draw, basis points, and exclusions that make up incentive plans].)

14        Contrary to Plaintiffs' assertion, HMCU's marketing efforts are not coordinated with HBUS'

15   marketing efforts. (Gates Depo. 23:23-25:12.) Further, up until sometime in 2007, HMCU

16   maintained its own "learning and development" department, which conducted training completely

17   separate from HBUS. (Marczak Depo. 109:4-110:25.)

18   **III.   LEGAL ARGUMENT**

19        **A.    The Court Should Deny Plaintiff's Motion For Conditional Certification.**

20             **1.    The Legal Framework For An FLSA Collective Action.**

21        Section 16(b) of the FLSA is designed to foster judicial economy and to avoid duplicative

22   suits by providing a mechanism for "similarly situated" individuals to maintain a collective action.

23   *Briggs v. United States,* 54 Fed. Cl. 205, 207 (Fed. Cl. Ct. 2002); *Holt v. Rite Aid*, 333 F. Supp. 2d

24   1265, 1269 (M.D. Ala. 2004). Judicial economy can be realized, of course, only if the claims

25   present common factual issues that may be tried on a representative basis. Thus, there must be a

26   demonstrated similarity among the individual circumstances "which binds the named plaintiffs and

27   the potential class members together as victims of a particular alleged [policy or practice]" that

28   would "predominate a determination of the merits" in the case. *England v. New Century Fin. Corp.,*

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFENDANTS' OPP. TO PLAINTIFFS'
CONDITIONAL CERT./PARTIAL MSJ                9.                Case No. C 07 2446 MMC [ECF]

1    370 F. Supp. 2d 504, 508 (M.D. La. 2005). *See also Mike v. Safeco Ins. Co.*, 274 F. Supp. 2d 216,

2    220 (D. Conn. 2003); *King v. West Corp.*, 2006 U.S. Dist. LEXIS 3926, *16 (D. Neb. 2006) (a group

3    of opt-in plaintiffs "subject to different job actions with various decisions by different supervisors

4    made on a decentralized employee-by-employee or team-by-team basis" not appropriately certified

5    as a collective class).    By contrast, conditional certification will be denied if the parties'

6    presentations show that resolution of the claims would require consideration of specific,

7    individualized evidence for each plaintiff. *Mike*, 274 F. Supp. 2d at 220; *Holt*, 333 F. Supp. 2d at

8    1271; *Sheffield v. Orius Corp.*, 211 F.R.D. 411, 413 (D. Or. 2002); *Briggs*, 54 Fed. Cl. at 206.

9       The majority of courts apply the two-step approach to managing FLSA representative

10    actions. *See Adams v. Inter-Con Sec. Sys. Inc.*, 242 F.R.D. 530, 536 (N.D. Cal. 2007); *Leuthold v.*

11    *Destination Am. Inc.*, 224 F.R.D. 462, 467 (N.D. Cal. 2004); *Thiessen v. General Elec. Cap. Corp.*,

12    267 F. 3d 1095, 1102-03 (10th Cir. 2001). At the initial notice stage, presented here, the Court

13    determines whether there is strong enough evidence that the claims will be amenable to resolution on

14    a collective, representative basis, such that the court should issue notice to the proposed class and

15    proceed through discovery on a class-wide basis. *Id.* Plaintiffs bear the burden of demonstrating

16    that the court should issue notice at this stage. *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261

17    (S.D.N.Y. 1997). Although Plaintiffs' burden at this first stage is less onerous than at the second

18    stage, the Court must still determine whether the pleadings and evidence presented support the

19    conclusion that the case will be amenable to trial on a representative basis.[18] Thus, numerous courts

20    have denied conditional certification in FLSA misclassification cases, as should be done here. *See*

21    *Aguirre v. SBC Comm., Inc.*, 2006 WL 964554 (S.D. Tex. 2006) (conditional certification of

22    misclassification case denied); *Diaz v. Electronics Boutique of Am.*, 2005 WL 2654270 (W.D.N.Y.

23

24    [18] Plaintiffs mischaracterize and oversimplify the holding in *Gerlach v. Wells Fargo &Co.*, 2006 WL 824652 (N.D. Cal. 2006). Unlike the present case, the *Gerlach* defendants did not dispute that Plaintiffs had met their burden of "similarly situated" under the more lenient standard initial standard. *Id.* at *3.

25    The court, therefore, did not engage in a discussion of whether the [proposed class members] were similarly situated; rather, it focused on whether the case was at stage of discovery such that stricter,

26    second tier standard of similarity was appropriate. *Id.* Defendants in this case do not dispute that the first-tier notice standard is the appropriate standard to apply. Defendants do, however, challenge

27    Plaintiffs' assertion that the proposed class members share the same job description and were uniformly misclassified as exempt. Therefore, *Gerlach* is not instructive for the purposes of this motion and

28    Plaintiffs' reliance on *Gerlach* is misplaced.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108 2693
415.433.1940

DEFENDANTS' OPP. TO PLAINTIFFS'
CONDITIONAL CERT./PARTIAL MSJ

10.

Case No. C 07 2446 MMC [ECF]

1  2005) (same); *Holt,* 333 F. Supp. 2d 1265 (same); *Mike,* 274 F. Supp. 2d at 216 (same); *Flores v.*

2  *Lifeway Foods, Inc.,* 289 F. Supp. 2d 1042, 1046 (N.D. Ill. 2003) (same); *Clausman v. Nortel*

3  *Networks,* 2003 U.S. Dist. Lexis 11501 (S.D. Ind. 2003) (same); *Morisky v. Public Serv. Elec. and*

4  *Gas Co.,* 111 F. Supp. 2d 493 (D. N.J. 2000) (same).

5          **2.**     **Plaintiffs' Misclassification Claims Are Inappropriate for Collective**

6                      **Action Treatment Because the Proposed Class Members Are Not**
                    **Similarly Situated.**

7          Plaintiffs fail to meet the burden of showing that all proposed class members are similarly

8  situated because: (1) the fact-specific analysis inherent to Plaintiffs' misclassification claims require

9  individual judicial review; and (2) the diversity of the proposed class members is not suitable for

10  collective action. *See, e.g., Brooks v. BellSouth Telecomm., Inc.,* 164 F.R.D. 561, 567 (N.D. Ala.

11  1995) (employees in 9 states, working in separate departments under separate supervisors, among

12  other differences, were not similarly situated due to "disparate factual and employment settings").

13          The proposed class, as defined by Plaintiffs, is not appropriate because the scope of the class

14  depends upon a highly fact-specific analysis of each employee's job duties and schedule of daily

15  activities, as well as the method used to compensate the individual and his or her actual

16  compensation for the time periods in question. Unlike the various Age Discrimination in

17  Employment Act ("ADEA") cases cited in support of Plaintiffs' motion, the focus in this action is

18  the distinction between exempt and non-exempt employees requiring a fact-intensive, individualized

19  analysis that is not suitable for a collective action. *See Mike,* 274 F. Supp. 2d at 220 ("Determining

20  whether an employee is exempt is extremely individual and fact-intensive, requiring a detailed

21  analysis of the time spent performing administrative duties and a careful factual analysis of the full

22  range of the employee's job duties and responsibilities."). Here, the proposed class members are

23  subject to as many as four different FLSA exemptions, each exemption requiring an in-depth factual

24  analysis and determination of each proposed member's duties and daily activities. Where, as here,

25  the action is dominated by issues particular to each individual, the interests of judicial economy are

26  not properly served because individual issues will inevitably predominate over collective concerns.

27  *See Sheffield,* 211 F.R.D. at 413 (denying motion for conditional class certification where "each

28  claim would require extensive consideration of individualized issues of liability and damages"); *see*

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108-2693
415.433.1940

DEFENDANTS' OPP. TO PLAINTIFFS'
CONDITIONAL CERT./PARTIAL MSJ

11.

Case No. C 07 2446 MMC [ECF]

1    *also Briggs*, 54 Fed. Cl. at 206 (denying motion to conditionally certify collective action where "the

2    determination of entitlement [to overtime] will be highly fact-specific as to each plaintiff").

3         Plaintiffs' proposed class is comprised of a diverse group of HMCU employees with varying

4    job titles, duties, geographic locations, decision makers, and compensation structures which fail to

5    collectively form a similarly situated class.   Courts look to the following factors to determine

6    whether a proposed class is similarly situated: (1) whether plaintiffs held the same job titles; (2)

7    whether plaintiffs are from the same level in the organization; (3) whether plaintiffs worked within

8    different divisions; (4) whether plaintiffs worked in different geographical locations; (5) the extent to

9    which the alleged violation occurred during different time periods; (6) the extent to which the

10   alleged violation was committed by different decision-makers; (7) the extent to which plaintiffs rely

11   on common evidence to prove the alleged violation; and (8) whether plaintiffs allege similar

12   violations. *See Wynn v. Nat'l Broad. Co., Inc.*, 234 F. Supp. 2d 1067, 1083 (C.D. Cal. 2002); *Stone*

13   *v. First Union Corp.*, 203 F.R.D. 532, 542-543 (S.D. Fla. 2001) (citing *Grayson v. K Mart Corp.*, 79

14   F.3d 1086 (11th Cir. 1996) and *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F. 3d 1208 (11th Cir. 2001)).

15        Here, the proposed class members carry different job titles, perform different duties and

16   serve at different levels in the organizational structure.   For example, some proposed class members

17   are Senior Retail Mortgage Lending Consultants, others are Retail Mortgage Lending Consultants

18   and still others are Premier Mortgage Sales Officers.   Plaintiffs' motion is misleading in that it

19   capriciously groups these employees under one broad umbrella of "loan officers."   In actuality these

20   positions differ in their duties and level in the organizational structure.[19]   Some Senior Retail

21   Mortgage Lending Consultants and Retail Mortgage Lending Consultants work in the "private

22   banking" side of the business.   (Liboy Decl. ¶3,4.)   Premier Mortgage Sales Officers work with

23   affluent customers and have the responsibility of focusing cross-selling efforts toward Premier

24   Centers.   (Liboy Decl. ¶4; Barrett Decl. ¶5, Exh. 2.)   Based upon their geographic location and the

25   local market, different "loan officers" focus on selling different types of mortgage products from

26

27   [19] Peter Malone, one of the individuals filing a consent form to join this lawsuit, should not be considered
      similarly situated to putative class members, nor should he be considered a putative class member, as he
28   was formerly employed as a "team leader", which is the previously used title for sales manager in the
      Rockland County, Orange County and Sullivan County areas of New York. (Coyne Decl. ¶4.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108-2693
415.433.1940

1   other "loan officers" who work in different areas.[20]  Moreover, the proposed class members are also

2   subject to different compensation structures.  The Private Banking Sales incentive plan differs from

3   the Retail Loan Consultant incentive plan in several respects related to basis points, funded dollar

4   volume levels, and the number of components or variables considered in calculating commissions.

5   (*Compare* Jennings Decl. ¶12, Exh. 3 *with* Plaintiffs' Motion, Exh. 9.)  Further, Premier Mortgage

6   Sales Officers are compensated on an annual salary basis and a guaranteed minimum bonus.

7   (Jennings Decl. ¶9,10 [Karen Flanagan, Larry Lee, and Alysse Gora compensated through annual

8   salary and guaranteed bonus].)

9        Even assuming the class representatives and proposed class members fall under the same

10  broad job title of "loan officer" or "loan consultant," "employees who hold the same job title do not

11  necessarily perform the same work." *Morisky*, 111 F. Supp. 2d at 498.  The entrepreneurial nature of

12  these positions complicates the factual inquiry further and diminishes the value of managing the case

13  collectively.  Despite the near cookie-cutter declarations submitted by Plaintiffs, the range of daily

14  activities performed by proposed class members depends on each employee's individual approach to

15  selling loans.  Among other things, each individual "loan officer" determines their own schedule

16  (Monteith Decl. ¶6); each individual "loan officer" determines whether to use the LoanQuest system

17  in the client's presence or not (Gates Depo. 64:10-65:9); they also determine what types of

18  approaches to use in developing their book of business (Kim Decl. ¶6.)  Further, the ability of a

19  "loan officer" to participate in the setting of his or her own draw amount and the length of time the

20  draw will be forgivable requires individualized inquiry. (Needham Decl. ¶16.)

21       Additionally, proposed class members represent a geographically diverse group subject to

22  several regional policies, the direction of multiple branch managers and the conditions at various

23  branch locations throughout the United States.  (Gates Decl. ¶5 [class members work in 8 states];

24  Gates Depo. 19:14-20:3; 20:11-21 [HMCU broken up into 4 regional divisions with "loan officers"

25  reporting to Sales Managers in some instances and Regional Managers in others]; Young Decl. ¶2,3;

26  Ku Decl. ¶2.  Demonstrating the weakness of Plaintiffs' Motion is the fact that Plaintiffs sent out

---

[20] *See* Monteith Decl. ¶4 (focusing on Community Reinvestment Act discounted mortgages for first-time homebuyers); Coyne Decl. ¶19 (niche products for low and moderate income loans).

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFENDANTS' OPP. TO PLAINTIFFS'
CONDITIONAL CERT./PARTIAL MSJ                13.                Case No.  C 07 2446 MMC [ECF]

1   letters to the 475 putative class members across the country. Yet, they were only able to submit

2   seventeen (17) employee declarations in support of their case—with a majority of those declarations

3   coming from California employees. (Jennings Decl. ¶6; Needham Decl. ¶4.) Those facts certainly

4   suggest that Plaintiffs' case is really focused at the state level—in California—rather than on a

5   nationwide basis. This is especially poignant given that alleged violations in one location do not

6   necessarily imply violations at other locations, thus requiring a case-by-case factual determination

7   based on conditions in different localities. *See England,* 370 F. Supp. 2d at 511.

8          In sum, the multitude of factual differences among the proposed class members, as listed in

9   Section II above and the declarations submitted by Defendants, do not lead to the efficiency of gains

10  and uniform fact determination that section 216(b) was designed to create. *See Sheffield,* 211 F.R.D.

11  at 413. The Court should therefore deny Plaintiffs' motion for conditional certification.

### 3.     Plaintiffs' Motion Should Be Denied Because They Have Not Sufficiently Demonstrated They Were Subject To The Same Policy or Plan.

14         Unsupported assertions of widespread violations are not sufficient to meet a

15  plaintiff's burden of showing putative class members are "similarly situated." *Freeman v. Wal-Mart*

16  *Stores, Inc.*, 256 F. Supp. 2d 941, 945 (W.D. Ark. 2003). Here, the only "common policy or plan"

17  alleged by Plaintiffs relates to holding one of three job titles, the purported misclassification of these

18  jobs, and the denial of "overtime pay" for exempt employees. *See* Plaintiffs' Motion 15:17-21.

19  However, the evidence produced by Plaintiffs in support of this "common policy or plan" is far from

20  common and does not demonstrate the requisite level of similarity to obtain conditional certification.

21  Plaintiffs Wong and Chaussy, as well as every opt-in Plaintiff submitting a declaration, have

22  provided evidence about their <u>own</u> specific working conditions. No two individuals' experience is

23  the same. For example, some claim they worked more from bank branches than others do. (*See,*

24  *e.g.,* Gora Decl. ¶4 [80% time in branches]; DeSouza ¶3 [majority at bank branch or home].)  Some

25  claim they were required to attend events on nights and weekends for a specific number of hours

26  while others did not. (*See, e.g.,* Cox Decl. ¶5 [9 hours/week]; Flanagan Decl. ¶6 [none specified].)

27  In fact, time spent at branches vs. home offices, as well as time spent at events on nights and

28  weekends, certainly does not establish misclassification of these individuals under all exemptions.

1   letters to the 475 putative class members across the country. Yet, they were only able to submit

2   seventeen (17) employee declarations in support of their case—with a majority of those declarations

3   coming from California employees. (Jennings Decl. ¶6; Needham Decl. ¶4.) Those facts certainly

4   suggest that Plaintiffs' case is really focused at the state level—in California—rather than on a

5   nationwide basis. This is especially poignant given that alleged violations in one location do not

6   necessarily imply violations at other locations, thus requiring a case-by-case factual determination

7   based on conditions in different localities. *See England,* 370 F. Supp. 2d at 511.

8       In sum, the multitude of factual differences among the proposed class members, as listed in

9   Section II above and the declarations submitted by Defendants, do not lead to the efficiency of gains

10  and uniform fact determination that section 216(b) was designed to create. *See Sheffield,* 211 F.R.D.

11  at 413. The Court should therefore deny Plaintiffs' motion for conditional certification.

### 3.   Plaintiffs' Motion Should Be Denied Because They Have Not Sufficiently Demonstrated They Were Subject To The Same Policy or Plan.

14      Unsupported assertions of widespread violations are not sufficient to meet a

15  plaintiff's burden of showing putative class members are "similarly situated." *Freeman v. Wal-Mart
    Stores, Inc.,* 256 F. Supp. 2d 941, 945 (W.D. Ark. 2003). Here, the only "common policy or plan"

16  alleged by Plaintiffs relates to holding one of three job titles, the purported misclassification of these

17  jobs, and the denial of "overtime pay" for exempt employees. *See* Plaintiffs' Motion 15:17-21.

18  However, the evidence produced by Plaintiffs in support of this "common policy or plan" is far from

19  common and does not demonstrate the requisite level of similarity to obtain conditional certification.

20  Plaintiffs Wong and Chaussy, as well as every opt-in Plaintiff submitting a declaration, have

21  provided evidence about their own specific working conditions. No two individuals' experience is

22  the same. For example, some claim they worked more from bank branches than others do. (*See,*

23  *e.g.,* Gora Decl. ¶4 [80% time in branches]; DeSouza ¶3 [majority at bank branch or home].) Some

24  claim they were required to attend events on nights and weekends for a specific number of hours

25  while others did not. (*See, e.g.,* Cox Decl. ¶5 [9 hours/week]; Flanagan Decl. ¶6 [none specified].)

26  In fact, time spent at branches vs. home offices, as well as time spent at events on nights and

27  weekends, certainly does not establish misclassification of these individuals under all exemptions.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFENDANTS' OPP. TO PLAINTIFFS'
CONDITIONAL CERT./PARTIAL MSJ                14.                    Case No.  C 07 2446 MMC [ECF]

1    Each HMCU region or local area is supervised by different Regional Managers and Sales

2    Managers with discretion to implement policies and rules on the teams they supervise.  For example,

3    Senior Regional Mortgage Lending Manager Amy Ku has implemented a system that allows her

4    "loan officers" two "free passes" for being late for client meetings or submitting late reports before

5    she will discipline them for these performance issues.  Ms. Ku's "free pass" policy is permissible

6    under law, but goes outside of the HMCU's progressive discipline policy.  (Ku Decl. ¶¶26, 27.)  At

7    the local or regional level, Michael O'Rourke and Michael Coyne have implemented an "up day"

8    system that allows "loan officers" to spend a day or two per month answering 1-800 calls from

9    prospective customers.  (O'Rourke Decl. ¶10; Coyne Decl. ¶16.)  Again, the "up day" is wholly

10   permissible under law but not specifically contained in the general HMCU policies.  Further, Mr.

11   O'Rourke sets procedures and parameters for how and when "loan officers" may utilize sales

12   assistant help.  (O'Rourke Decl. ¶14.)

13            The scant evidence presented by Plaintiffs does not sufficiently prove that all

14   proposed class members were uniformly subject to a nationwide policy.  In fact, a letter from a

15   branch manager to Northern California "loan officers" confirms that not all HMCU employees were

16   subject to one specific policy but rather various policies, at least at the regional level.  (Ku Decl. ¶26,

17   Exh. 3.)  Moreover, the variations in managers' approaches as to whether "loan officers" must

18   document their activities to show efforts at producing loans demonstrates that the policies and rules

19   applicable to "loan officers" were not uniform.  (Ku Decl. ¶29; Young Decl. ¶8 [no documentation

20   required].)  Further, the differences in the incentive plans applicable to putative class members and

21   differences in their compensation structure (draw and commission vs. annual salary and guaranteed

22   bonus; the length of a forgivable draw), as well as the amount of their draws, amply support the fact

23   that these "loan officers" were not subject to a uniform, nationwide policy designed to deprive them

24   of appropriate compensation.[21]  (Needham Decl. ¶16.)  Accordingly, it would be inappropriate for

25   this Court to conditionally certify a class of employees who have different regional standards.

26

27   [21] In the unlikely event the Court determines the proposed class members were subject to a national
     policy, the existence of a common scheme or plan is not dispositive to finding putative class members
28   are similarly situated.  *Pfohl v. Farmers Inc. Group*, 2004 WL 554834 (C.D. Cal. 2004).

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFENDANTS' OPP. TO PLAINTIFFS'          15.          Case No.  C 07 2446 MMC [ECF]
CONDITIONAL CERT./PARTIAL MSJ

4.    **Plaintiffs' Motion Fails Because They Have Not Presented Sufficient Evidence To Establish HMCU's Pay System Contravenes The FLSA.**

Even assuming Plaintiffs can establish that all "loan officers" are similarly situated, Plaintiffs' ability to prevail on this Motion also depends on their ability to demonstrate a sufficient factual basis on which a reasonable inference could be made that HMCU implemented a single policy against its employees in violation of applicable law. In this case, Plaintiffs' submission does not even suggest, much less demonstrate, that HMCU's classification of its "loan officers" as exempt contravenes the FLSA. Accordingly, there is no basis upon which to justify nationwide litigation, and this Court should deny Plaintiffs' motion. *Flores,* 289 F. Supp. 2d at 1046 (denying motion for conditional class certification where plaintiffs did not make modest factual showing sufficient to demonstrate that employer had a common policy or plan to violate FLSA). Further, as discussed more fully below, HMCU's "loan officers" are employed in various *bona fide* exempt capacities and exempt them from the FLSA's overtime provisions. *See, e.g.,* Department of Labor Opinion Letter "FLSA2006-31," dated Sept. 8, 2006; Department of Labor Opinion Letter "FLSA2006-11," dated Mar. 31, 2006 (finding "mortgage loan officers," "mortgage loan representatives," "mortgage loan consultants," "mortgage loan originators," and similar titles properly classified as exempt under the FLSA).[22]

5.    **Conditional Class Certification Should Be Denied, and All Opt-in Plaintiffs Who Were Not Employed in Northern California Dismissed, to Discourage Unwarranted and Unsupported Nationwide Litigation.**

The Court should reject Plaintiffs' lawyers' attempt to "stir up" litigation through conditional class certification and unwarranted notice based on Plaintiffs' mere allegation of overtime entitlement. *D'Anna v. M/A Com, Inc.,* 903 F. Supp. 889 (D. Md. 1995) (denying conditional certification and notice for lack of factual showing, noting that "an employer should not be unduly burdened by a frivolous fishing expedition conducted by plaintiff at the employer's expense"); *Severtson v. Phillips Bev. Co.,* 137 F.R.D. 264, 266 (D. Minn. 1991) (cautioning that "courts, as well as practicing attorneys, have a responsibility to avoid the 'stirring up' of litigation through unwarranted solicitation.").

---

[22] True and correct copies of these Opinion Letters are attached as Exhibit 3 to the Barrett Decl.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108 2693
415.433.1940

DEFENDANTS' OPP. TO PLAINTIFFS'
CONDITIONAL CERT./PARTIAL MSJ

16.

Case No.  C 07 2446 MMC [ECF]

1    Courts recognize that the notice procedure under section 216(b) may be abused.

2    *Horne v. United Servs. Auto. Ass'n*, 279 F. Supp.2d 1231, 1237 (M.D. Ala. 2003); *Hoffman La-*

3    *Roche Inc. v. Sperling*, 493 U.S. 165, 495 (1989) (Scalia, J., dissenting).    Inviting hundreds of

4    employees to join a civil action serves no legitimate purpose if those claims cannot be conceivably

5    managed in a single courtroom.    In consideration of this fact, a federal court in Louisiana recently

6    rejected Plaintiffs' collective action theory and denied conditional certification of a proposed

7    nationwide class of mortgage loan officers.    *See England,* 370 F. Supp.2d at 511-12.    In *England*,

8    485 individual loan officers[23] filed consent forms alleging violations of the FLSA, and the plaintiffs

9    submitted 232 declarations alleging that the managers at the defendants' branch offices around the

10   country instructed them not to record their overtime hours.    *Id.* at 506.    Based upon this evidence, the

11   Court concluded that:

12        It is clear that this case involves a multitude of different managers at
         different geographical locations across the country.  It is also clear that
13        individual inquiries must predominate in this case because of the
         different locations, managers, and factual situations involved at each
14        location.  Otherwise, there is no explanation for the need to conduct
         between 200 and 400 discovery depositions as plaintiffs' counsel has
15        estimated.    The Court also finds that if liability is found at one
         location, this would not necessarily require this Court to find liability
16        at another location.  If liability is found, damages would necessarily
         require a case-by-case inquiry, thereby rendering it impossible to try
17        this case as a collective action.

18   *Id.* at 511.  *See also Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358, 363 (M.D. Ala. 1999) (finding

19   no evidence "to support [plaintiffs'] allegation that Defendant's corporate-wide incentive pay plan

20   for its managerial employees resulted in violations" of the FLSA).    Here, Plaintiffs' "proof"

21   establishes only that a handful of former HMCU "loan officers"—most of whom had poor

22   production records—are willing to say that they spent a lot of time in HBUS bank branches and/or

23   home offices.  This evidence does not meet Plaintiffs' burden.  *Marsh v. Butler County Sch. Sys.*,

24   242 F. Supp.2d 1086, 1094 (M.D. Ala. 2003) ("the mere fact that violations [of the FLSA] occurred

25   cannot be enough to establish similarity").    Indeed, not only have Plaintiffs failed to present a

26   sufficient factual basis to sufficiently show that they are non-exempt, but Plaintiffs have further

27   failed to submit the facts warranted to justify a complex and unwieldy nationwide collective action.

28   _____
     [23]  The *England* loan officers were represented by the same law firm representing Plaintiffs in this case.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFENDANTS' OPP. TO PLAINTIFFS'                    17.                    Case No.  C 07 2446 MMC [ECF]
CONDITIONAL CERT./PARTIAL MSJ

1   The record fully supports the conclusion that the loan officers are exempt under the outside

2   sales, administrative, commissioned sales and/or highly compensated exemptions.  In any case,

3   conditional certification is unnecessary because those loan officers who are interested in joining

4   Plaintiffs' lawsuit have already received adequate notice and have already submitted consent forms.

5   (Needham Decl. ¶15; Ku Decl. ¶37, Exh.4; Coyne Decl. ¶23.)  It appears Plaintiffs' counsel is using

6   section 216(b) as nothing more than a vehicle to "stir-up" litigation and legitimize unsubstantiated

7   claims of nationwide wage and hour violations. *Severtson,* 137 F.R.D. at 266 (cautioning that

8   "courts, as well as practicing attorneys, have a responsibility to avoid the 'stirring up' of litigation

9   through unwarranted solicitation.").

10   Currently, Plaintiffs have no less than three (3) readily accessible websites advertising the

11   existence of this lawsuit, the scope of the proposed class, the identities of the named Defendants and

12   the nature of the claims alleged in Plaintiffs' complaint.[24]  Plaintiffs' counsel have also sent

13   solicitation letters to employees informing them, albeit misleadingly,[25] of the existence of the

14   litigation and their eligibility to participate as a class member.  (Needham Decl. ¶13, Exh. 1; Ku

15   Decl. ¶37, Exh. 4.)  Furthermore, Defendants have fully cooperated with Plaintiffs' counsel by

16   providing them with the names, addresses, and telephone numbers of all 475 putative class members.

17   (Barrett Decl. ¶4, Exh. 1.)  Despite these various avenues to notify putative class members and the

18   475 names given by Defendants alone, Plaintiffs submit only seventeen (17) employees declarations

19   in support of their Motion—declarations which actually support HMCU's opposition to Plaintiffs'

20   Motion because all the declarations demonstrate differences between "loan officers".  As such, this

---

[24] *See* http://www.classactionconnect.com/overtime-pay-complaints/2007/12/17/hsbc-mortgage-corporation/; http://www.overtimecases.com/news.aspx; and http://www.nka.com/Cases%5Chsbc.aspx?CaseRef=58.

[25] Defendants take issue with Plaintiffs' representation that all "current or former employees of HSBC may be eligible to make a claim" as stated in Plaintiffs' advertisement letter.  (Ku Decl. ¶37, Exh. 4.) Plaintiffs' failure to properly name Defendants as HSBC Mortgage Corporation (USA) and HSBC Bank (USA) is false and misleading and erroneously suggests *all* employees of HSBC entities are eligible class members.  Indeed, the misleading nature of these advertisements and letters is apparent from the fact that eight (8) of the twenty-two (22) written consent forms that have been filed in this case come from individuals who are not HMCU or HBUS employees.  (Jennings Decl. ¶5.)  It appears that Plaintiffs' advertisements are designed not just to solicit members for this lawsuit, but to drum up new business by being vague in their notice.  In fact, HMCU is aware that counsel for Plaintiffs is currently trying to solicit its Account Executives to file yet another wage and hour lawsuit against HMCU.  (Needham Decl. ¶14, Exh. 2.)  Defendants leave it to this Court to ascertain whether those advertisements violate California Rule of Professional Conduct 1-400 (D)(2-3).

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA 94108 2693
415.433.1940

DEFENDANTS' OPP. TO PLAINTIFFS'
CONDITIONAL CERT./PARTIAL MSJ
18.
Case No. C 07 2446 MMC [ECF]

1   Motion is nothing more than a final effort to garner interest in Plaintiffs' misguided lawsuit.

2   Plaintiffs should not be permitted to use this court as a conduit to trawl for litigants in hopes of

3   legitimizing claims which most proposed class members have no interest in pursuing. *D'Anna*, 903

4   F. Supp. 889 (denying conditional certification and notice for lack of factual showing, noting that

5   "an employer should not be unduly burdened by a frivolous fishing expedition conducted by plaintiff

6   at the employer's expense"). Indeed, the declarations of Amy Ku, Michael Coyne, and Jeff

7   Needham submitted in support of Defendants' opposition to the Motion stating individuals' lack of

8   interest in the lawsuit make clear this action represents nothing more than baseless allegations.

9        The limited support Plaintiffs have found for their claims does not establish a sufficient

10  factual basis to justify a complex and unwieldy nationwide collective action. Of the seventeen (17)

11  declarations submitted in support of Plaintiffs' Motion representing a <u>nationwide</u> class, over half—

12  ten (10)—are submitted by individuals who worked or work only in California. Given the fact that

13  HMCU's California-based loan officers have always made up a small minority of its loan officer

14  population, these declarations hardly justify a "nationwide" action. (Gates Decl. ¶6; Needham Decl.

15  ¶18.) For these reasons alone, the Court should deny Plaintiffs' Motion. Further, in light of their

16  failure to meet their burden of proof, all consents filed in this action should be dismissed, with the

17  exception of those litigants who are or were employed by HMCU in Northern California.

18      **B.    Plaintiff's Notice Is Inaccurate And Misleading.**

19      For the reasons stated above, Defendants urge the Court to deny Plaintiffs' Motion for notice

20  to putative class members. If the Court grants Plaintiffs' motion, however, then it should at a

21  minimum ensure that the content and method of distribution of that notice conform to appropriate

22  standards. In the unlikely event that the Court should grant Plaintiffs' Motion for Conditional

23  Certification, Defendants respectfully request the opportunity to submit supplemental briefing to the

24  Court about the adequacy and content of Plaintiffs' proposed notice, particularly because Defendants

25  believe Plaintiffs' proposed notice contains information that is unacceptable and that should be

26  modified. *Sperling v. Hoffman La-Roche, Inc.*, 862 F.2d 439, 447 (3d Cir. 1988) (court-authorized

27  notice allows court to regulate content of notice that is sent out), *aff'd, Hoffman La-Roche Inc. v.*

28  *Sperling*, 493 U.S. 165 (1989).

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108 2693
415.433.1940

DEFENDANTS' OPP. TO PLAINTIFFS'                    19.                    Case No.  C 07 2446 MMC [ECF]
CONDITIONAL CERT./PARTIAL MSJ

C.    **Defendants Do Not Oppose Providing Plaintiffs An Updated List Of Proposed Class Members.**

Contrary to Plaintiffs' counsel's assertion (Schwartz Decl. ¶4), HMCU provided Plaintiffs with purported class member lists before November 5, 2007.    In fact, HMCU provided lists including putative class members' names, addresses and telephone numbers over a month earlier than Plaintiffs' counsel claims.  (Barrett Decl. ¶4, Exh. 1.)  Assuming, *arguendo*, the Court grants Plaintiffs' Motion for Conditional Certification, Defendants do not oppose providing an updated list of purported class members.  However, Defendants request at least fourteen (14) business days from the date of entry of any Court order granting the Motion in which to provide the list.

D.    **The Court Should Deny Plaintiffs' Motion For Partial Summary Judgment.**

1.    **HBUS Is Not A Properly Named Employer Because HMCU And HBUS Do Not Constitute An Integrated Enterprise or Single Employer.**

Plaintiffs incorrectly argue that HBUS should be held liable on an "integrated enterprise" or "single employer" theory.  Single employer status ultimately depends on all the circumstances of the case and is characterized as "an absence of an arm's length relationship found among unintegrated companies." *International Brotherhood of Teamsters v. American Delivery Svc. Co., Inc.*, 50 F.3d 770, 775 (9th Cir. 1995).  This determination is guided by a four-factor test:  (1) interrelation of operations; (2) common management; (3) centralized control of labor relations; and (4) common financial control. *See International Brotherhood*, 50 F.3d 770.

a.    **HBUS and HMCU Do Not Have Interrelated Operations.**

That a parent corporation eventually derives some benefit from the work of its subsidiary is not evidence of interrelated operations. *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1362 (10th Cir. 1993).  Rather, Plaintiffs must show that HBUS exercises control to a degree exceeding that which is normally exercised by a parent corporation.  *Id.*; *see also McKenzie v. Davenport-Harris Funeral Home*, 834 F.2d 930, 933-34 (11th Cir. 1987) (parent's operations interrelated with those of subsidiary when parent kept subsidiary's books, issued its paychecks, and paid its bills); *EEOC v. Financial Assurance, Inc.*, 624 F. Supp. 686, 689-90 (W.D. Mo. 1985) (operations interrelated when parent and subsidiary shared services, equipment, employees and office space, and parent controlled subsidiary's payroll and benefit programs).

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108-2693
415.433.1940

Here, while HBUS and HMCU use the same company to issue payroll (HSBC Pay Services) each company pays employees separately and each company maintains and runs separate payrolls. (Jennings Decl. ¶3.)  In fact, HBUS plays no role in the processing of HMCU's payroll and employee wage statements.  (Gates Depo. 36:15-19.)  In addition, HMCU has its own assets and liabilities which are controlled by its own management team.  (Gates Depo. 44:7-13, 45:14-23.) Further, employees are not interchanged between the two entities.  (Jennings Decl. ¶4.)  Marketing efforts of the two corporations are not coordinated.  (Gates Depo. 23:23-25:12.)  Accordingly, there exists no interrelation of operations between HBUS and HMCU.

**b.     HBUS and HMCU Do Not Share Common Management.**

Common management may be presumed where the parent and subsidiary corporations share officers and directors.  *See McKenzie*, 834 F.2d at 933-34 (common management found where there was common president who controlled personnel management of both companies); *Baker v. Stuart Broad. Co.*, 560 F.2d 389, 391 (8th Cir. 1977) (common management found where parent and subsidiary had same officers and directors, same president).  Here, there is no such evidence that the President or head of HBUS controls personnel management over both HBUS and HMCU.  Further, these is evidence to the contrary with regard to corporate governance for HBUS and HMCU.  HBUS and HMCU do not have common directors. Each company has a separate board of directors.  No director of HBUS is a director of HMCU and no HMCU director is a HBUS director.  (Kujawa Decl. ¶4.)  In addition to having separate boards of directors, HBUS and HMCU have separate and different Articles of Incorporation and Bylaws.  (Kujawa Decl. ¶5.)  Moreover, the officers and directors of HBUS do not play any significant managerial role in the day-to-day operations of HMCU, as it is HMCU management that decides which jobs are necessary at HMCU, what appropriate job duties are, and what individuals' compensation packages and amounts will be. Therefore, HBUS and HMCU do not share common management.

**c.     HBUS Does Not Have Centralized Control of HMCU Labor Relations.**

Centralized control of labor relations is an important factor in the four-part test.  *Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir. 1983).  The key inquiry is whether the parent controls

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFENDANTS' OPP. TO PLAINTIFFS'
CONDITIONAL CERT./PARTIAL MSJ                21.                Case No.  C 07 2446 MMC [ECF]

1  the *day-to-day employment decisions* of the subsidiary. *Frank*, 3 F.3d at 1363. In determining

2  whether centralized control exists, the court will consider whether the parent participated in "routine

3  personnel decisions such as hiring, transferring, promoting, discharging, and disciplining" the

4  subsidiary corporation's employees. *Frank*, 3 F.3d at 1360. Promulgation of general guidelines and

5  equal employment policies governing employees of the subsidiary do not constitute evidence of an

6  attempt by the parent to exercise day-to-day control over employment decisions of the subsidiary.

7  *Id.* at 1363. Likewise, maintenance of pension plans and other benefits for the subsidiary's

8  employees does not constitute excessive interrelatedness, as it is "not beyond the normal parent-

9  subsidiary relationship." *Id.*

10  Rather, courts have found such centralized control where a common officer in the parent and

11  subsidiary approved all of the subsidiary's hiring decisions. *Baker*, 560 F.2d at 392. Centralized

12  control was also found where the parent paid the subsidiary's non-union employees, was listed as

13  employer on the W-2 forms of the subsidiary's non-union employees, and was granted the power to

14  terminate a subsidiary employee on at least one occasion. *Smith v. Jones Warehouse, Inc.*, 590 F.

15  Supp. 1206, 1208 (N.D. Ill. 1984). Here, HBUS has no substantial control over the day-to-day

16  employment decisions of HMCU. HMCU ultimately makes all hiring and firing decisions. Gates

17  Depo. at 38:12-18. At no time is HBUS responsible for the payment of wages to employees of

18  HMCU. Gates Depo. at 36:15-19; Jennings Decl. ¶3. Further, documents such as W-2 forms,

19  paychecks, and business cards list HMCU, not HBUS, as Plaintiffs' employer. (Young Decl. ¶5; Ku

20  Decl. ¶9,10; O'Rourke Decl. ¶5.) In short, there is no evidence that HBUS exercises any significant

21  control over HMCU's day-to-day employment decisions. Accordingly, there exists no centralized

22  control of labor relations.

23      **d.    Common Ownership of HBUS and HMCU Does Not Establish**
          **HBUS As An "Employer."**
24

25  Courts have found common ownership or financial control where the parent corporation

26  owns 100% of the subsidiary's stock, as is the case here. *Penntech Papers v. National Labor*

27  *Relations Board*, 706 F.2d 18, 26 (1st Cir. 1983). Common ownership, standing alone, can <u>never</u> be

28  sufficient to establish parent liability. *Frank*, 3 F.3d at 1364. Considering all four factors, Plaintiffs

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFENDANTS' OPP. TO PLAINTIFFS'          22.          Case No. C 07 2446 MMC [ECF]
CONDITIONAL CERT./PARTIAL MSJ

1    cannot successfully argue that HBUS and HMCU constitute an integrated enterprise or single

2    employer. HBUS can have no direct liability on any of Plaintiffs' employment-related claims.[26]

3               e.    **Plaintiffs' Motion Is Rife With Cases Favorable To Defendants.**

4          Plaintiffs note the expansiveness of the FLSA's "employer" definition, citing *Falk v.*

5    *Brennan*, 414 U.S. 190, 195 (1973). However, Plaintiffs neglect to mention that in determining

6    whether the defendant was a properly-named employer, the *Falk* court also considered the extent of

7    defendant's managerial responsibilities, "which gave it substantial control of the terms and

8    conditions of the [employees'] work." *Falk*, 414 U.S. at 195. Here, HBUS exercises no such

9    managerial control, lending credence to the fact that HBUS is not Plaintiffs' employer.

10         Plaintiffs also tout the FLSA's "extremely broad" definition of the term "employee," citing

11   *Randolph v. Budget Rent-A-Car*, 97 F.3d 319, 325 (9th Cir. 1996). However, *Randolph* further

12   states that the existence of an FLSA employer-employee relationship depends on the degree of

13   control the purported employer has over the mode and manner of the employee's work. In this case,

14   HBUS possesses no substantial control over the mode and manner of Plaintiffs' work. Therefore,

15   Plaintiffs cannot establish any employer-employee relationship between HBUS and Plaintiffs.

16         Next, Plaintiffs cite *Bowoto v. Chevron Texaco Corp.*, 312 F. Supp. 2d 1229 (N.D. Cal.

17   2004) for the proposition that as the parent corporation, HBUS should be held liable for the acts of

18   HMCU as its subsidiary. However, *Bowoto* states that the law will permit a parent corporation to be

19   held either directly or indirectly liable for the acts of its subsidiary *only in unusual circumstances*.

20   *Bowoto*, 312 F. Supp. 2d at 1234. Mere ownership of a subsidiary does not justify the imposition of

21   liability on a parent. *Id.* at 1235 (citing *Pearson v. Component Tech Corp.*, 247 F.3d 471, 484 (3d

22   Cir. 2001)). Indeed, corporate separateness is generally respected unless to do so would work an

23   injustice upon innocent third parties. *Bowoto*, 312 F. Supp. 2d at 1235-36.

24         Typical acts of parent corporation officers within the bounds of corporate formalities and

25   which do <u>not</u> warrant piercing the corporate veil include: supervising the acts of the subsidiaries,

26   [26] To defeat Plaintiffs' Motion for Summary Judgment on this issue, Defendants must merely show that
27   disputed facts exist. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett* , 477 U.S. 317, 323 (1986); *see
     also Nissan Fire & Marine Ins. Co. v. Fritz Cos. Inc.* , 210 F.3d 1099 (9th Cir. 2000). The evidence
28   provided by Defendants clearly demonstrates that there are disputed facts in this case.

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA 94108 2693
415.433.1940

DEFENDANTS' OPP. TO PLAINTIFFS'              23.          Case No. C 07 2446 MMC [ECF]
CONDITIONAL CERT./PARTIAL MSJ

1   receiving regular reports from subsidiaries, creating general policies and procedures which

2   subsidiaries must follow, and overseeing financial management of the subsidiaries. *Id.* at 1235.

3   Here, HBUS merely promulgates employment policies and procedures that employees of its

4   subsidiary must follow and provides general oversight of HMCU's financial management. (Gates

5   Decl. ¶10.) HBUS' marginal involvement in HMCU's activities is insufficient to warrant holding

6   the parent liable for the alleged acts of HMCU. Plaintiffs' argument on this point is without merit.

   **2.   Questions Of Fact Exist As To Whether The Administrative, Highly**
7        **Compensated And Commissioned Sales Exemptions Are Applicable.**[27]

8        **a.   The Administrative Exemption.**

9        There are three elements to the FLSA administrative exemption: (1) minimum salary of $455

10  per week; (2) the employee's primary duty is the performance of office or non-manual work directly

11  related to the management or general business operations of the employer or the employer's

12  customers; and (3) the employee's primary duty includes the exercise of discretion and independent

13  judgment with respect to matters of significance. *See* 29 C.F.R. § 541.200(a).

14       The DOL recently clarified in its Opinion Letter of September 8, 2006 that the administrative

15  exemption covers mortgage loan officers who service their employer's financial services business by

16  marketing, servicing and promoting the employer's financial products, advising customers regarding

17  products and recommending products to clients. (Barrett Decl. ¶6, Exh. 3.) Moreover, according to

18  the Opinion Letter, mortgage loan officers meet the exemption if their duties include work such as

19  collecting and analyzing information regarding the customer's income, assets, investments or debts;

20  determining which financial products best meet the customer's needs and financial circumstances;

21  advising the customer regarding the advantages and disadvantages of different financial products;

22  and marketing, servicing or promoting the employer's financial products.[28] (Barrett Decl. ¶6, Exh.

23  3.) *See* 29 C.F.R. § 541.203. Here, many loan officers will meet the administrative exemption

24  under federal law. To the extent Plaintiffs argue otherwise, triable issues of fact exist and summary

25  judgment denying Defendants' ability to rely on the administrative exemption is inappropriate.

26  _____

[27] Defendants do not oppose Plaintiffs' motion for partial summary judgment on the executive and
27  professional exemptions.
[28] Plaintiff Wong admitted during deposition that he is a decision-maker when it comes to closing deals
28  and selling mortgage products to clients. (Wong Depo. 94:1-13.)

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA 94108.2693
415 433.1940

DEFENDANTS' OPP. TO PLAINTIFFS'          24.          Case No.  C 07 2446 MMC [ECF]
CONDITIONAL CERT./PARTIAL MSJ

### b.    The Highly Compensated Exemption.

Under the FLSA, highly compensated employees are "deemed exempt" under an August 2004 amendment to regulations if employees: (1) receive total annual compensation of at least $100,000; (2) receive at least $455 per week paid on a "salary" or fee basis; and (3) customarily and regularly perform one or more of the exempt duties or responsibilities of an exempt executive, administrative or professional employee. *See* 29 C.F.R. § 541, *et seq.* Many loan officers earn in excess of $100,000 annually in total compensation, and thus qualify for this exemption. (Needham Decl. ¶17, Young Decl. ¶18; Kelter Decl. ¶17; Coyne Decl. ¶18 [most make over $100,000].)

### c.    The Commissioned Sales Exemption.

"Loan officers" may also qualify for the federal exemption for commissioned salespersons. The commissioned sales exemption applies to employees whose regular rate of pay is more than one and a half times minimum wage and where "more than half his or her compensation for a representative period (not less than one month) represents commissions on goods or services." 29 U.S.C. § 207(i). Examples of monthly compensation ranges for several of the individuals submitting declarations in support of Plaintiffs' Motion are included in Jeanette Jennings' Declaration, which is submitted in support of Defendants' opposition to Plaintiffs' Motion. These examples range from $1,592.30 to $6,736.15. (Jennings Decl. ¶8.) These monthly ranges easily meet the minimum compensation requirement of approximately $18,000 a year. 29 U.S.C. § 206(a).

Federal law requires that the employer be a "retail or service establishment." The Department of Labor identified the attributes of a "retail establishment" in a 1970 interpretive bulletin as "one which sells goods or services to the general public." 29 C.F.R. § 779.318(a). The home mortgage loan industry meets this standard. *See Gatto v. Mortgage Specialists of Ill., Inc.*, 442 F. Supp. 2d 529, 541-42 (N.D. Ill. 2006) (holding that a mortgage broker fit within the definition of a retail or service establishment). To the extent Plaintiffs contend it does not,[29] issues of fact will need to be resolved and summary judgment is not appropriate.

[29] Plaintiffs rely upon *Mitchell v. Kentucky Fin. Co.*, 359 U.S. 290 (1959) for their contention that HMCU does not meet the definition of a retail or service establishment. However, as recognized by the *Gatto* court, *Mitchell* interpreted a statute that defined a "retail or service establishment" that was later repealed.

1    IV.    **CONCLUSION**

2        For the reasons discussed, Defendants respectfully request that Plaintiffs' Motion be denied.

3    Dated: January 18, 2008

4                                        /s/ Michelle R. Barrett

5                                        GEORGE J. TICHY, II
                                        MICHELLE R. BARRETT
6                                        KIMBERLY L. OWENS
                                        JUSTIN T. CURLEY
7                                        LITTLER MENDELSON
                                        A Professional Corporation
8                                        Attorneys for Defendants
                                        HSBC MORTGAGE CORPORATION (USA)
                                        and HSBC BANK USA, N.A.
9    Firmwide:84043941.1 023404.1043

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940