GEORGE J. TICHY, II, Bar No. 041146
MICHELLE R. BARRETT, Bar No. 197280
KIMBERLY L. OWENS, Bar No. 233185
JUSTIN T. CURLEY, Bar No. 233287
LITTLER MENDELSON
A Professional Corporation
650 California Street, 20th Floor
San Francisco, California 94108
Telephone: 415.433.1940
Facsimile: 415.399.8490
E-mail: gtichy@littler.com, mbarrett@littler.com,
kowens@littler.com, jcurley@littler.com

Attorneys for Defendants
HSBC MORTGAGE CORPORATION (USA) AND
HSBC BANK USA, N.A.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| Philip Wong, Frederic Chaussy, and Leslie Marie Shearn, individually, on behalf of all others similarly situated, and on behalf of the general public,<br><br>Plaintiffs,<br><br>v.<br><br>HSBC Mortgage Corporation (USA); HSBC Bank USA, N.A.; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. C 07 2446 MMC [ECF]<br><br>**DECLARATION OF MICHAEL O'ROURKE IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION, PRODUCTION OF UPDATED CLASS LIST, AND PARTIAL SUMMARY JUDGMENT**<br><br>Date:          February 8, 2008<br>Time:         9:00 a.m.<br>Courtroom:  7 (19th Floor)<br>Judge:        Hon. Maxine M. Chesney<br><br>Complaint Filed: June 29, 2007 (Amended)<br>Trial Date:          Not Yet Set |

DECLARATION OF MICHAEL O'ROURKE

Case No. C 07 2446 MMC [ECF]

I, Michael O'Rourke, hereby declare and state:

1. I have personal knowledge of the facts set forth below. If called as a witness, I could and would testify competently to the matters set forth in this declaration.

2. I have been employed by HSBC Mortgage Corporation (USA) ("HSBC Mortgage") for almost nineteen (19) years. My job title is Regional Sales Manager for the Bronx, Brooklyn and Staten Island. I have held this title for two (2) years.

3. Currently, I manage twenty-nine (29) loan officers and two (2) sales managers. The number of loan officers I have managed has varied from nineteen (19) to thirty (30).

4. My employer is HSBC Mortgage, which is a separate entity from HSBC Bank U.S.A., N.A. ("HSBC Bank"). The manager to whom I report, Debbie Dezego, is also an employee of HSBC Mortgage. I do not report to any manager of HSBC Bank, nor do any of the loan officers whom I manage. They only report to me, and not an HSBC Bank branch manager.

5. All the loan officers whom I manage are employees of HSBC Mortgage. I specifically tell my loan officers that that they do not work for HSBC Bank, and that their responsibility is to work with the Bank branches, not for them, to provide loans to customers. HSBC Mortgage Corporation (USA) is listed as the employer name on the business cards of all loan officers whom I supervise, and HSBC Mortgage is also indicated on their paychecks and W-2 forms.

6. I tell loan officers whom I supervise that it is totally up to them how and where they spend their time during the week. I tell them that they control their own schedule. I tell my loan officers that the HSBC Bank branches are merely referral sources and how much time the loan officers spend at the branches is up to them. Some of my loan officers make appointments with the Bank branches, and some may just drop by during the week. They are not required to spend any time at particular branches during the week. I do not require my loan officers to call in to the Bank branches during the week, but as a referral source I recommend that they check in with the Bank branch twice a week. I tell my loan officers that they should treat the Bank branch like a realtor or real estate attorney, in that it is a referral source for them.

7. I do not require my loan officers to keep a schedule or a calendar, nor do I require them to document what they have done for the day. I do not track the hours that my loan

DECLARATION OF MICHAEL O'ROURKE   1.   Case No. C 07 2446 MMC [ECF]

1  officers work. However, for loan officers who are lacking in loan production, I will require them to
2  provide a call report to their sales manager for coaching purposes to improve their loan production.

3       8.    I tell my loan officers that they set their own hours. I do not require my loan
4  officers to tell me where they are each day. How they spend their work day is completely up to
5  them. They may work as little as they like or as much as they like. When I am recruiting for loan
6  officers, I tell women that this is a great career for working mothers because of the flexibility to set
7  your own hours and the ability to work when you want to.

8       9.    I tell my loan officers that they are "free lancers," and how they develop a
9  loan business is up to them. They may choose to network with Bank branch managers, financial
10 advisors, bank tellers, accountants, whatever they think works for them.

11      10.   In my region, we have what are called "up days," also known as "phone
12 days," which are days in which a loan officer will answer telephone calls at an HSBC Mortgage
13 office from potential mortgage customers who call HSBC Mortgage's 1-800 number. Participation
14 in up days is purely on a voluntary basis. Whether or not a loan officer participates in up days is
15 based on his or her personal preference. Some loan officers may consider up days a good way to
16 obtain leads, while some loan officers may choose to spend their time differently. If a loan officer
17 wishes to participate in up days, I will schedule him or her to do this for about one up day per month.

18      11.   I have staff meetings occasionally, but generally no more than once per
19 month. Usually my two sales managers run these meetings.

20      12.   I always notify my loan officers about networking events that I learn about. I
21 do not require my loan officers to attend any such events. How my loan officers obtain leads and
22 referrals is within their discretion.

23      13.   All of my loan officers have laptops and mobile phones. My loan officers are
24 not required to have a home office.

25      14.   Within the New York region, how loan officers utilize sales assistants varies
26 from other regions because we have very few sales assistants for all of our loan officers.
27 Accordingly, we have set our own procedures and parameters for how sales assistants are utilized by
28 the loan officers and for what is expected of the sales assistants.

15. I provide training to the loan officers whom I manage on an almost daily basis, and the training I provide depends on the individual loan officer. Additionally, how I apply the progressive discipline policy varies by each loan officer, and I will diverge from the progressive discipline policy as circumstances warrant. I view the progressive discipline policy as guidance, and I will often consult with my boss and/or Human Resources when I am making disciplinary decisions with respect to loan officers.

16. Performance goals also vary by region and by manager. I will adjust performance goals based upon the market and the experience and individual compensation goals of my loan officers.

17. There are also variances with respect to compensation of loan officers. For example, I have the discretion to grant loan officers a guarantee of money or a "forgivable draw" when they start. I have granted a forgivable draw as high as $35,000. Additionally, sometimes I will provide a loan officer a higher draw. I have provided loan officers a draw of up to $50,000.

18. How much time my loan officers spend analyzing their clients' respective financial situations to determine what mortgage is appropriate varies widely between clients. For example, if a client is self-employed, the loan officer will spend a significant amount of time analyzing that client's financial picture to determine the best mortgage for that client.

19. In 2007, my top two loan officers earned between $350,000 and $360,000, over half of which came from commissions.

I declare under penalty of perjury under the laws of the States of California and New York and the United States of America that the foregoing declaration is true and correct to the best of my personal knowledge. Executed this 18th day of January, 2008, in Cross River, New York.

MICHAEL O'ROURKE