1  GEORGE J. TICHY, II, Bar No. 041146
   MICHELLE R. BARRETT, Bar No. 197280
2  KIMBERLY L. OWENS, Bar No. 233185
   JUSTIN T. CURLEY, Bar No. 233287
3  LITTLER MENDELSON
   A Professional Corporation
4  650 California Street, 20th Floor
   San Francisco, CA  94108.2693
5  Telephone:   415.433.1940
   Facsimile:    415.399.8490
6  E-mail: gtichy@littler.com, mbarrett@littler.com,
   kowens@littler.com, jcurley@littler.com
7
   Attorneys for Defendants
8  HSBC MORTGAGE CORPORATION (USA) AND
   HSBC BANK USA, N.A.
9

10                 UNITED STATES DISTRICT COURT

11                NORTHERN DISTRICT OF CALIFORNIA

12                    SAN FRANCISCO DIVISION

13 | Philip Wong, Frederic Chaussy, and Leslie Marie Shearn, individually, on behalf of all others similarly situated, and on behalf of the general public, | Case No.  C 07 2446 MMC [ECF]
14 | | **DECLARATION OF AMY S. KU IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION, PRODUCTION OF UPDATED CLASS LIST, AND PARTIAL SUMMARY JUDGMENT**
15 | Plaintiffs, |
16 | v. |
17 | HSBC Mortgage Corporation (USA); HSBC Bank USA, N.A.; and DOES 1 through 50, inclusive, |
18 | | Date: February 8, 2008
19 | Defendants. | Time: 9:00 a.m.
   | | Complaint Filed: June 29, 2007 (Amended)

DECLARATION OF AMY S. KU                         Case No. C 07 2446 MMC [ECF]

I, Amy S. Ku, hereby declare and state:

1. I have personal knowledge of the facts set forth below. If called as a witness, I could and would testify to the following:

2. I have been employed by HSBC Mortgage Corporation (USA) ("HSBC Mortgage") since January 3, 2006. My job title is Senior Regional Mortgage Lending Manager.

3. I manage all of the loan officers employed by HSBC Mortgage in Northern California. In addition to managing, I also do some work selling loans.

4. Philip Wong, a named plaintiff in this lawsuit, is one of the loan officers that is currently under my management.

5. In addition, Frederic Chaussy, Jason Henry, Dennis Yee and Ryan Kanazawa were formerly loan officers that I supervised. Frederic Chaussy, a named plaintiff in this lawsuit, was terminated for low production. Jason Henry worked for HSBC Mortgage for less than one year. I terminated his employment because he did not produce any loans during his employment and because of other performance issues. Dennis Yee was also terminated for low production. Ryan Kanazawa worked for HSBC Mortgage for less than one year and resigned in September 2006.

6. In contrast with regions such as those in New York, the Northern California region is still only a small market for HSBC Mortgage. Currently, in addition to myself, HSBC Mortgage employs only four (4) loan officers in Northern California. Since I've worked for HSBC Mortgage, I have never supervised more than six (6) loan officers at one time. At the point I supervised those six (6), it was only for a few months in 2006. When I was hired, there were only three (3) other loan officers in my region.

7. My employer is HSBC Mortgage, which is a separate company from HSBC Bank U.S.A., N.A. ("HSBC Bank"). The manager who I report to, Jeff Needham, is also an employee of HSBC Mortgage. I do not report to any manager of HSBC Bank, nor do any of the loan officers that I manage.

8. All the loan officers that I manage are employees of HSBC Mortgage. I specifically tell applicants who I interview for job positions that, if hired, they will be employed by HSBC Mortgage and not by HSBC Bank.

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DECLARATION OF AMY S. KU                 1.                  Case No. C 07 2446 MMC [ECF]

9. HSBC Mortgage Corporation (USA) is listed as the employer name on the business cards of all loan officers that I supervise, including Mr. Wong. I have attached copies of my and Mr. Wong's business cards to this declaration as Exhibit 1.

10. HSBC Mortgage Corporation (USA) is also listed in the signature lines of emails sent by Mr. Wong and the other loan officers in Northern California.

11. With regard to the loan officers' compensation, one thing that differs from person to person is the length of time of the forgivable draw (guaranteed minimum amount of pay) that I offer when they are first hired. The standard length of time that I offer for a forgivable draw is three (3) months. However, if someone has a solid book of business, and I think they will be a high performer, I offer them a forgivable draw for up to six (6) months.

12. Additionally, the forgivable draw will sometimes be extended for longer periods of time to help in times when business might be slow. For example, Philip Wong had a forgivable draw for a little over one year. Frederic Chaussy had a forgivable draw for approximately eight or nine months.

13. The HSBC Mortgage loan officers in the Northern California region are very mobile. We do not have any physical HSBC Mortgage office. HSBC Mortgage used to have an office in Redwood City, California. We had that office for about one year, but we terminated the lease in January or February 2007 because we did not need the physical office. All loan officers in Northern California have both cell phones and blackberries, so they can meet with clients and work from anywhere. Loan officers cannot be contacted through any office phone since we no longer have a physical office. The loan officers in this region all list their cell phone numbers on their business cards.

14. I tell applicants who I interview for loan officer positions with HSBC Mortgage that working here is like having your own business. I have also said the same thing many times to the loan officers that I supervise. I say this because loan officers may work anytime and anyplace that they want. It is up to them how and when they do their jobs.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DECLARATION OF AMY S. KU    2.    Case No. C 07 2446 MMC [ECF]

15. The loan officers that I supervise do not have any required or scheduled work hours. They may work as little as they like or as much as they like. They are responsible for scheduling their own appointments with potential clients.

16. The loan officers in my region are not required to attend any particular community events or workshops. However, they may volunteer to attend events such as trade shows or affordable housing/first time homebuyer workshops if they want to use such events as an opportunity to meet potential clients or referral sources. Such events are never mandatory.

17. Loan officers also choose, at their own discretion, where they want to meet with clients to discuss potential loans and to complete loan application paperwork. I tell the loan officers in my region that they can do business in any location where there are potential clients, from a spa to a casino to a golf course to a PTA meeting, as long as it is legal and ethical. I tell the loan officers that I supervise that they should be out meeting with potential mortgage clients most of the time. If loan officers are just sitting in a branch of HSBC Bank or at their home, they are not doing their job as they are expected to.

18. Loan officers get business from many places, such as realtors, other mortgage brokers, escrow officers, attorneys, accountants, financial advisors, friends, neighbors, and referrals from friends and other clients. I suggest to the loan officers I manage to get out and make connections with all these types of people and to use their existing connections.

19. HSBC Bank is also a good source for referrals. HSBC Bank does not have a mortgage department, and HSBC Bank employees will usually refer business to us if a bank customer asks about mortgages. There are ten HSBC Bank branches in the Northern California region.

20. My personal preference as a manager is to provide as much fairness as possible to loan officers for getting referrals from HSBC Bank branches. My local practice is to create schedules that list which loan officers should get the referrals from which bank branch on a given day. I or my assistant ask the loan officers on a monthly basis which bank branches they would like to have referrals from on which days. My assistant creates the bank branch schedule from this information, and I approve it. I rotate the loan officers between the branches if a branch is

requested by more than one person. Loan officers do not have to be scheduled for a bank branch for any days at all if they do not want to. It is up to them. This is just an easy source for leads.

21. The bank branch schedule that I develop with input from loan officers and my assistant's help does not mean that loan officers do or should be working from the bank branch on the scheduled days. It just means that they are the person we suggest to the bank branch as a referral source for that day. Loan officers may spend one hour in the bank on the scheduled day or may simply call the bank branch to let them know how to contact them if they have a lead. Again, it is up to loan officers where and when they meet with potential customers.

22. Every time that I send a copy of the branch schedule to loan officers I tell them, "you are not required to be at your assigned branch for any set time during the day, or week, or month . . . ." I cut and paste this language each time I send out a copy of the branch schedule to the loan officers. Attached as Exhibit 2 is an example of one of many such communications I have sent to loan officers, along with the attached branch schedule for that month.

23. In his declaration, Philip Wong discussed an email that I sent to him and other loan officers on January 2, 2007 in a misleading way. I have never told loan officers that they need to be physically present at bank branches at any particular time or for any amount of time. The bank branch schedule is just for referrals and does not list any times when loan officers must be physically present at the bank branch. The January 2, 2007 email, a copy of which is attached as Exhibit 3, was intended to communicate to loan officers that they should not be late or miss any appointments that they personally schedule with potential clients to take place at the bank branch. I spoke with loan officers about the same topic, and they should all know what I meant by the email. As previously stated, loan officers can schedule their meetings with clients to take place anywhere and at anytime. However, I do expect them not to be late for or miss meetings with clients that they have scheduled. That would be unprofessional.

24. In addition, in the January 2, 2007 email, I also told loan officers to tell someone at the bank if they were going to be late for or miss an appointment they scheduled with a client. The reason I expect this is so that information can be passed on to the client. Because the loan officers are not bank employees, no one at the bank knows where loan officers are at any given

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DECLARATION OF AMY S. KU   4.   Case No. C 07 2446 MMC [ECF]

1  time or when they will be visiting the bank. For this reason, if a loan officer is late for or misses an appointment they scheduled and does not communicate that to someone at the bank or directly to the client, the bank employees will not know what to tell the customer about why the loan officer is not there or where the loan officer is.

25.  I have never told loan officers they should stay at the bank branch from which they receive referrals for any amount of time. To the contrary, I tell loan officers they should not be sitting in bank branches waiting for customers to come to them. Loan officers should only be physically present at the bank branch if they receive a call that a customer wants to speak with them, or if they are using the bank branch as the location of a meeting they have scheduled with a client.

26.  The policies and procedures do differ amongst the regions where HSBC Mortgage is located. It really depends on the market and the experiences and preferences of each manager and loan officer. The January 2, 2007 email attached as Exhibit 3 describes one local policy I have created. I told my loan officers that they would have two "free passes" for being late for a meeting with a client (if a complaint is made) or for submitting a report to me late. I will only give them a written warning after the two "free passes" are used.

27.  As demonstrated by the "free pass" system referenced in my January 2, 2007 email, I do not strictly enforce HSBC Mortgage's progressive discipline policy. In addition, if I see that a loan officer is struggling to get business despite trying really hard, I will often have several oral counseling sessions with that employee before issuing a written warning. I decide when it is time for the first verbal warning.

28.  Different managers often have trouble agreeing when it is time to issue a written warning (referred to as an Interim Job Discussion or "IJD"). For instance, there are times that my boss, the Division Manager, sees low production figures and wants me to issue an IJD to a particular loan officer. If I know that loan officer is really trying and has been working hard, I argue against issuing an IJD. For example, Plaintiff Philip Wong was not issued an IJD on several occasions when his production was below the minimum expectation. I did not write him up because I believed he was really trying to get business. Because I am the one who interacts with the loan officers on a day-to-day basis, my boss usually defers to me and allows me to give the loan officer

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DECLARATION OF AMY S. KU           5.           Case No. C 07 2446 MMC [ECF]

another chance. Discipline decisions always depend on the situation, and I evaluate them on a case-by-case basis.

29. One other procedure that I have implemented specifically for the Northern California region is a tracking form that I created to help loan officers keep track of where they get their mortgage leads. I call this form the "Prospects and Pipeline Tracking Form." The tracking form has spaces for loan officers to list the names of potential customers, the purpose and amount of the loan sought, the source of the potential business and a description of the selling efforts they made with respect to this customer. I ask the loan officers to complete the form and provide a copy to me every Monday. Not only does this help loan officers identify where they get a lot of leads from and which leads are pending, but it also allows me to provide advice to them about possible sources for leads.

30. I also provide individualized training to the loan officers who I manage on an almost daily basis. The one week national training in Buffalo, New York only takes place when loan officers are hired; loan officers actually learn most, if not all, of the procedures for selling loans while they are on the job. I tell loan officers to call me if they have any questions. Most of the loan officers under my supervision ask me questions every day about how to perform their job.

31. In addition to answering loan officers' questions, I often provide advice to loan officers about procedures I recommend. For example, there is a certain way that I like to organize loan application folders that I suggest the loan officers use. However, they are never required to do so; each loan officer chooses his or her own procedures for performing the job.

32. I also hold staff meetings once a month that are attended by the loan officers in my region. I select topics to cover during the staff meetings based on the trends in the loan industry in the Northern California market. For example, HSBC Mortgage offers premier loans, which are greater than $500,000.00 in value. In contrast with other regions, the housing market in the San Francisco Bay Area is very high, and the majority of the loans that the loan officers in my region sell each month are high end loans known as "Premier" loans. For this reason, I often provide training and advice to the loan officers in my region about the features of HSBC Mortgage Premier Mortgages. When there is a promotion, I may provide suggestions to the loan officers under my

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DECLARATION OF AMY S. KU    6.    Case No. C 07 2446 MMC [ECF]

supervision about procedures to use the promotion to increase their business. I also discuss other matters of concern in the Northern California region, such as the appropriate dress code.

33. In addition to the focus on Premier loans, the Northern California region also differs from other HSBC Mortgage regions because the loan closing times in California are faster. In contrast to some other states, such as New York, California requires the use of title companies for escrow. The loan closing time is 30 to 45 days. Loan officers must act quickly to timely deliver the loan before escrow closes, as the closing time cannot be extended. I am constantly providing guidance and training to loan officers about how to speed up the loan application and processing time to meet closing dates.

34. As far as the work performed by loan officers, the principal duties are to sell loans. Included in that process is time that loan officers must spend with customers to determine the purpose of the loan, the amount of the loan, the individualized needs of the client and the clients' financial profile, such as their income, assets, investments, debts and credit rating. Loan officers must collect and analyze the information provided by clients and determine which mortgage offered by the company would best meet their individualized needs, and which mortgage, if any, the client would likely qualify for. HSBC Mortgage currently offers more than forty types of mortgages. Loan officers also work with clients to compare the advantages and disadvantages of the different mortgage types and select the mortgage type that would be best for the client. If a loan officer determines that a client will likely not qualify for any loan offered by the company, they are responsible for conveying that information to the client. A lot of independent judgment and discretion goes into this entire process.

35. Loan officers also must complete the loan application package for each client, which is submitted to the underwriter for approval. There is one assistant in my region who they can ask for help in completing paperwork. Loan officers generally provide a summary to the underwriter that they write in a persuasive manner, highlighting the positive aspects of the client and explaining negative features, such as periods of unemployment. Again, a lot of independent judgment and discretion must be used in deciding how to present the application to the underwriter to increase the probability that the loan application will be approved.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DECLARATION OF AMY S. KU        7.        Case No. C 07 2446 MMC [ECF]

36. After the loan application is complete, it is submitted to an HSBC Mortgage Corporation underwriter in Buffalo, New York, who approves or rejects the application. The loan officer communicates the good or bad news to the client. If a loan application is approved or rejected with contingencies, the loan officer assists the client to gather the information that is needed to obtain final approval. The loan officer then opens escrow and works with the realtor or escrow officer to close the loan. The loan officer also must meet with the client to get the closing documents signed.

37. Plaintiffs' counsel have already sent notices about this lawsuit to loan officers employed by HSBC Mortgage in Northern California. In fact, one of my loan officers told me she has received many solicitation letters from Plaintiffs' counsel. I saw her throw one of the notices in the trash because she had already received many. A loan officer who used to work for me also called me and told me he had received the notice. Attached as Exhibit 4 is a copy of one of the notices that was received by a loan officer that I supervise.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing declaration is true and correct to the best of my personal knowledge.

Executed this 18 day of January, 2008, in San Fran, California.

_____
AMY S. KU

DECLARATION OF AMY S. KU          8.          Case No. C 07 2446 MMC [ECF]