Donald H. Nichols, MN State Bar No. 78918
(admitted **pro hac vice**)
Paul J. Lukas, MN State Bar No. 22084X
(admitted **pro hac vice**)
Tim C. Selander, MN Bar No. 0387016
(admitted **pro hac vice**)
NICHOLS KASTER & ANDERSON, PLLP
4600 IDS Center
80 S. 8th Street
Minneapolis, MN 55402

Bryan J. Schwartz, CA State Bar No. 209903
Matthew C. Helland, CA State Bar No. 250451
NICHOLS KASTER & ANDERSON, LLP
One Embarcadero Center, Ste. 720
San Francisco, CA 94111

Attorneys for Individual and Representative Plaintiffs

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Philip Wong, Frederic Chaussy, and Leslie Marie Shearn, individually, on behalf of all others similarly situated, and on behalf of the general public,<br><br>Plaintiffs,<br><br>vs.<br><br>HSBC Mortgage Corporation (USA); HSBC Bank USA, N.A.; and DOES 1 through 50, inclusive,<br><br>Defendants. | **Case No.: 3:07-cv-2446 MMC**<br><br>**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR CONDITIONAL CERTIFICATION AND JUDICIAL NOTICE AND PARTIAL SUMMARY JUDGMENT**<br><br>Date: February 8, 2008<br>Time: 9:00 a.m.<br>Date originally filed:   May 7, 2007 |

**TABLE OF CONTENTS**

**I. INTRODUCTION**………………………………………………………………....1

    A. Conditional Certification and Judicial Notice……………………………..1

    B. Summary Judgment on Exemption Defenses……………………………...1

    C. Summary Judgment on HSBC Bank's Status as "Employer"……………1

**II. THE COURT SHOULD GRANT PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION AND JUDICIAL NOTICE**………………...2

    A. Defendants Fail to Rebut the Overwhelming Evidence Demonstrating that Loan Officers are Sufficiently "Similarly Situated."………………...2

        1. Retail Mortgage Loan Consultants, Senior Retail Loan Consultants, and Premier Mortgage Sales Officer are "similarly situated" position.**3**

        2. The alleged "differences" in comparison structures have no bearing on the "similarly situated" analysis……………………………….......5

        3. Defendants cannot prove there is a difference in "decision makers" on the issues relevant to this motion…………………..........................**6**

        4. Defendants cannot prove differences in geographic location effects the similarly situated nature of the loan officer position………………….7

    B. The Cases Cited by Defendants in Support of Their Argument Are Distinguished or Inapplicable to this Case…………………………………7

    C. Plaintiffs' Informal Efforts to Contact Similarly Situated Employees are Not Relevant to this Motion……………………………………………………9

**III. SUMMARY JUDGMENT SHOULD BE GRANTED ON DEFENDANT'S ADMINISTRATIVE, HIGHLY COMPENSATED, AND RETAIL SALES AFFIRMATIVE DEFENSES**……………………………………………………..10

    A. Defendants' Admission That Loan Officers' Primary Duty is "Sales" is Fatal to Their "Administrative" Exemption Defense……………………10

    B. Defendants Have No Basis for the "Highly Compensated Employee" Exemption Defense……………………………………………………………11

    C. As Lenders, Defendants Do Not Qualify for the Section 7(i) "Retail Sales" Defense as Matter of Law……………………………………………………12

**IV. SUMMARY JUDGMENT SHOULD BE GRANTED ON DEFENDANT HSBC BANKS' STATUS AS A FLSA EMPLOYER**……………………………………13

    A. HSBC Bank is Initimately Involved in Mortgage Corp's Personnel Activities………………………………………………………………………14

    B. HSBC Bank and HSBC Mortgage Share Offices, Employee and Other Resources……………………………………………………………………15

**V. CONCLUSION**……………………………………………………………...15

**TABLE OF AUTHORITIES**

**CASES**

**Agdipa v. Grant Joint Union High School Dist.**,
2007 WL 1106099 (E.D. Cal. 2007) .................................................................. 7

**Aguirre v. SBC Comm., Inc.**, 2006 WL 964554 at * 6 (S.D. Tex. 2006) ........................ 8

**Barnett v. Washington Mutual Bank, FA, et al.**
2004 WL 1753400, *3, (N.D. Cal.) .................................................................. 12

**Beauperthuy v. 24 Hour Fitness USA, Inc.**,
2007 WL 707475 (N.D. Cal. 2007) .............................................................. 1, 7

**Bowoto v. Chevron Texaco Corp.**,
312 F.Supp.2d 1229, 1234-1236 (N.D. Cal. 2004) .......................................... 15

**Briggs v. U.S,**, 54 Fed. Cl. 205, 207 (Fed. Cl. Ct. 2002) ........................................ 8

**Brooks v. BellSouth Telecomm., Inc.**, 164 F.R.D. 561, 568 (N.D. Ala. 1995) ............... 8

**Calin Corp. v. Ace American Ins. Co.**,
2007 WL 3010570, *7 (N.D. Cal. October 12, 2007) ........................................ 3

**Casas v. Conseco Finance Corp.**, 2002 WL 507059 (D. Minn.) ............................... 12

**Clausman v. Nortel Networks, Inc.**, 2003 WL 21314065 at *5 (S.D. Ind. 2003) ........... 8

**Dalton v. Logan Mfg. Corp.**, 42 F.3d 1399, *2 (9th Cir. 1994) ............................... 13

**Diaz v. Electronics Boutique of Am., Inc.**,
2005 WL 2654270 at * 2 (W.D.N.Y. 2005) ...................................................... 8

**EEOC v. Financial Assurance, Inc.**, 624 F.Supp. 686, 689-90 (W.D.Mo. 1985) ......... 14

**England v. New Century Fin. Corp.**, 370 F.Supp.2d 504, 508 (M.D. La. 2005) ........... 8

**Flores v. Lifeway Foods, Inc.**, 289 F. Supp. 2d 1042, 1046 (N.D. Ill. 2003) ................ 8

**Frank v. Gold'n Plump Poultry, Inc.**, 2007 WL 2780504, *4 (D. Minn. 2007) ............. 7

**Frank v. West**, 3 F.3d 1353, 1360 (10th Cir. 1993) ............................................ 14

**Gatto v. Mortgage Specialists of Ill., Inc.**,
442 F. Supp. 2d 529, 541-42 (N.D. Ill. 2006) .................................................. 12

**Gerlach v. Wells Fargo & Co.**, 2006 WL 824652, *2 (N.D. Cal. 2006) .................. 2, 8

**Hoffmann-La Rouche Inc. v. Sperling**, 493 U.S. 165, 174 (1989) ........................ 9, 10

**Holt v. Rite Aid Corp.**, 333 F. Supp. 2d 1265, 1274 (M.D. Ala. 2004) ....................... 8

**Kalish v. High Tech Institute, Inc.**, 2005 WL 1073645, *4 (D. Minn. 2005) ........... 9, 10

**Lapenna v. Upjohn Co.**, 110 F.R.D. 15, 21 (E.D. Pa. 1986) ............................................. 3

**Leuthold v. Destination America, Inc.**, 224 F.R.D. 462, 466-467 (N.D. Cal. 2004) ...... 8

**Mike v. Safeco Ins. Co.**, 274 F. Supp. 2d 216, 221 (D. Conn. 2003) ................................ 8

**Mitchell v. Kentucky Finance Co.**, 359 U.S. 290, 291 (1959) ....................................... 12

**Morisky v. Pub. Serv. Elec. & Gas Co.,**
   111 F. Supp. 2d 493, 497-98 (D. N.J. 2002) ................................................................ 8

**Morris v. Covan World Wide Moving, Inc.**, 144 F.3d 377, 380 (5th Cir.1998) ........... 13

**Nerland v. Caribou Coffee Co.,**
   No.05-1847 (PJL/JJG), *17-18 (April 6, 2007, D. Minn.) ............................................. 6

**Partida v. American Student Loan Corp.,**
   No. 07-0674 (PHX/DGC), slip op. at *5 (D. AZ, Jan. 18, 2008) ................................ 12

**Pontius v. Delta Financial Corp.,**
   2007 WL 1496692, *4-6 (March 20, 2007, W.D. Pa.) ................................................ 12

**Prentice v. Fund for Public Interest Research, Inc.**,
   2007 WL 2729187 (N.D. Cal. 2007) ............................................................................. 7

**Rees v. Souza's Milk Transp., Co.**, 2006 WL 738997, *3 (E.D. Cal. 2006) ................... 2

**Saunders v. Ace Mortgage Funding, Inc.,**
   2007 WL 1190985, *6 (April 16, 2007, D. Minn.) ..................................................... 12

**Shapero v. Kentucky Bar Ass'n**, 486 U.S. 466, 472 (1988) ............................................ 9

**Sheffield v. Orius Corp.**, 211 F.R.D. 411, 412 (D. Or. 2002) ......................................... 8

**Smith**, 590 F.Supp. at 1208; Opp. at p. 22 ..................................................................... 16

**Stanfield v. First NLC**,
   No. 06-3892 (SBA/JL), slip op. at *5 (Oct. 30, 2006, N.D. Cal.) ....................... 8, 9, 10

**U.S. v. Mass. Indus. Finance Agency**, 162 F.R.D. 410, 412 (D. Mass. 1995) ................. 3

**U.S. v. Taylor**, 166 F.R.D. 356, 361 (M.D. N.C. 1996) .................................................... 3

**STATUTES**

29 C.F.R. 541.203(b) ........................................................................................................ 11
29 C.F.R. 541.500……………………………………………………………………….. 11
29 C.F.R. 541.601(a) ........................................................................................................ 11

**OTHER AUTHORITIES**

**Federal Civil Procedure Before Trial**,
   11:1517 .1 (Rutter Group Practice Guide 2006) ........................................................... 3

**I.     INTRODUCTION**

**A.     Conditional Certification and Judicial Notice**.[1]  Defendants seek to apply a standard for conditional certification that does not exist, clinging to "differences" between loan officers so remote, no two employees could ever be considered "similarly situated."  Unfortunately for Defendant, Plaintiffs are required only to make a "minimal showing that the members of the proposed class are 'similarly situated.'"  **Beauperthuy v. 24 Hour Fitness USA, Inc.**, 2007 WL 707475 (N.D. Cal. 2007).  Defendants' admissions and the other evidence produced by Plaintiffs, showing that the loan officers are in the same job, performing the same duties, and uniformly denied overtime compensation as a result of Defendants' decision to misclassify the entire group as "exempt" employees, easily meet this "very light burden."  **Id.**

**B.     Summary Judgment on Exemption Defenses**.[2]  Defendants stubbornly refuse to discuss, or even acknowledge, their concessions that: 1) Plaintiffs' primary duty is sales, an admission eliminating the "administrative" and "highly compensated employee" exemption defenses; and 2) the fact that they are "lenders," a fact that is fatal to their claim to the Section 7(i) retail sales exemption.

**C.     Summary Judgment on HSBC Bank's Status as "Employer."**  The Court's finding should be consistent with what Defendants teach their loan officers, that "they're part of something much bigger than just the mortgage corporation," they are part of HSBC Bank.

---

[1]  Defendants do not contest Plaintiffs' motion for an updated list of loan officers should Plaintiffs prevail on their motion for conditional certification and judicial notice. (Dkt. #78, p. 20.)

[2] Defendants do not contest Plaintiffs' motion as to the "executive" and "professional" exemption defenses. (Dkt. #78, p. 24, n.27.)

1

**II.  THE COURT SHOULD GRANT PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION AND JUDICIAL NOTICE.**

To prevail on their motion for conditional certification, Plaintiffs need only show "some identifiable factual or legal nexus" that "binds together the various claims of the class members," such as being victims of a "single decision, policy, or plan." **Gerlach v. Wells Fargo & Co.**, 2006 WL 824652, *2 (N.D. Cal. 2006); **Rees v. Souza's Milk Transp., Co.**, 2006 WL 738997, *3 (E.D. Cal. 2006).  Here, Plaintiffs present Defendants' own admissions and documents, and seventeen declarations showing that the proposed class of loan officers: 1) worked the same sales job; 2) performed the same duties; 3) sold the same loan products, using the same tools, and following that same policies and procedures as dictated through the same nationwide training programs; 4) worked primarily at Defendants' branch offices or their home offices;[3] and, most importantly 5) were subjected to the same unlawful "exempt" classification decision and worked uncompensated overtime hours as a result.  Defendants present no facts, cite no cases, nor present any argument to overcome this overwhelming proof that all loan officers are "similarly situated" employees under the applicable standard.

**A.  Defendants Fail to Rebut the Overwhelming Evidence Demonstrating that Loan Officers are Sufficiently "Similarly Situated."**

In opposition to Plaintiffs' motion, Defendants argue that: "Plaintiffs' proposed class is comprised of a diverse group of HMCU employees with varying <u>job titles</u>, <u>duties</u>, <u>geographic locations</u>, <u>decision makers</u>, and <u>compensation structures</u>." (Dkt. 78, p. 12.) In making this argument, Defendants attempt to create a number of "differences" between the class members that are directly rebutted by their own documents and admissions, are irrelevant to the motion, or both.

---

[3] The declarations provided by Plaintiffs uniformly describe an inside sales job, while Defendants admit – despite claiming the "outside sales exemption" - that they do not have sufficient information to rebut these facts. (Dkt. #71, pp. 7-8.)

### 1. Retail Mortgage Loan Consultants, Senior Retail Loan Consultants, and Premier Mortgage Sales Officer are "similarly situated" positions.

Defendants' most blatant attempt to create differences where they do not exist is their argument that Retail Mortgage Loan Consultants ("LCs"), Senior Retail Mortgage Loan Consultants ("SLCs"), and Premier Mortgage Sales Officers ("PSOs") are not "similarly situated" positions. In making this argument, Defendants accuse Plaintiffs of "misleading" the Court by "capriciously group[ing] these employees under one broad umbrella of 'loan officers.'" (Dkt. #78, p. 12.) Far from "capricious," the "grouping" of LCs, SLCs, and PSOs into one job title of "loan officers" is directly supported by the testimony of Defendants' own Rule 30(b)(6) corporate designee[4] and their Director of Human Resources, both of whom testified that these jobs are primarily the same. In fact, these witnesses confirm that these jobs are so similar, they have eliminated the SLC and PSO job titles, and all such employees are now simply known as "loan consultants":

> Rule 30(b)(6) Deposition of David Gates, Defendant HSBC Mortgage Corp.'s Senior Vice President – National Sales and Marketing (Exh. #3, pp. 18-19.)
>
> Q. Okay. Now, while we're on the subject, loan officers, you said there are about 260 of them. They also have had a variety of titles over the years. Is it accurate to say that loan – the laymen's term or commonly used phrase loan officer is used by HSBC to describe people who are also known as retail mortgage lending consultants or at some point, who were also known as senior retail mortgage lending consultants?
> A. Yes.
> Q. Is there any other title that would have been encompassed by loan officer?

---

[4] "The answers given by the person designated by the corporation in a Rule 30(b)(6) deposition are binding on the corporation." **Calin Corp. v. Ace American Ins. Co.**, 2007 WL 3010570, *7 (N.D. Cal. October 12, 2007) (Illston, J), **citing** Judges Schwarzer, Tashima and Wagstaffe, **Federal Civil Procedure Before Trial**, 11:1517 .1 (Rutter Group Practice Guide 2006). Deposition testimony given pursuant to Fed.R.Civ.P. 30(b)(6) is not the personal opinion of the corporate designee, but is the "corporation's position on the topic." **See**, **e.g.**, **U.S. v. Taylor**, 166 F.R.D. 356, 361 (M.D. N.C. 1996) **citing U.S. v. Mass. Indus. Finance Agency**, 162 F.R.D. 410, 412 (D. Mass. 1995). **See also Lapenna v. Upjohn Co.**, 110 F.R.D. 15, 21 (E.D. Pa. 1986).

3

```
A. No.
Q. Is there -- I believe I heard of somebody called a premier mortgage
   lending consultant or a premier retail mortgage lending consultant or
   something like that. Are you aware of people in that capacity?
A. Yes. In a prior description, you are correct.
Q. Okay. And those people would also be within the broad -- the
   umbrella of loan officers, correct, of the 260?
A. Yes. We don't have that position today.
Q. Okay. And if I understand correctly from prior discovery, today all of
   your loan officers have been consolidated into the formal position of
   retail mortgage lending consultants; is that correct?
A. Yes.
```

* * * * *

Deposition of Jeanette Jennings, Defendant HSBC Bank's Senior Vice President –Human Resources Group Director (Exh. #17, pp. 31-32).

```
Q. How many total -- how many employees are there in the mortgage
   division?
A. Approximately 1600.
Q. How many of those are loan officers?
A. I would have to take an educated guess. About 275, give or take.
Q. And the term "loan officer" is used broadly to refer to anybody who is
   or used to be known as a retail mortgage lending consultant, a senior
   retail mortgage lending consultant, a premier mortgage loan
   consultant, any of those types of titles? They would all fall under that
   category of loan officer; is that right?
A. The premier no longer exists altogether, so they are just regular loan
   consultants. So I would say, yes, they're all considered loan
   consultants.
Q. Loan consultant, loan officer, these are all synonymous?
A. It's -- yes.
```

Even when the SLC and PSO positions existed, Defendants admit that the "job description is the same for those roles,"[5] and that "the overall crux of it, the overall core

---

[5] A comparison of the job descriptions produced by Defendants quickly confirm these admissions. For example, the "Summary of Position" describing each job is virtually identical:
  Retail Mortgage Consultant: Generates and increases market share of high quality salable retail residential mortgage loans, primarily through realtor relationships, builder and branch relationships, while ensuring high customer service levels. (Exh. #18.)
  Senior Retail Mortgage Consultant: Generates and increases market share of high quality salable retail residential mortgage loans, primarily through realtor relationships and external sources, ensuring high customer service levels. (Exh. #19.)
  Premier Mortgage Sales Officer: Generates and increases market share of high quality salable retail residential mortgage loans for affluent customers, primarily through realtor relationships and external sources, ensuring high customer service levels. (Exh. #20.)

responsibilities would be the same, and that's what they would be evaluated on." (Exh. 17, pp. 156, 158.) In light of these admissions, none of the marginal "differences" Defendants claim with respect to the duties performed in these jobs can preclude a "similarly situated" finding.[6]

### 2. The alleged "differences" in compensation structures have no bearing on the "similarly situated" analysis.

The only "compensation method" relevant here is the class-wide "exempt" classification, and the resulting failure to pay loan officers overtime compensation. Defendants do not claim that some loan officers were classified differently, or even that some were classified as "exempt" for different reasons. Rather, Defendants' witnesses admit that the loan officers are paid under the same "compensation structure." (Exh. #3, p. 112, lines 5-11; Exh. #17, p. 99, lines 3-10.) The only difference Defendants offer is the possibility that the non-commission portion of their income may be either a "salary" or a "draw," the differences in the amount of those salaries/draws, and whether the draws are "recoverable" or "forgiven."[7] (Dkt. #78, pp. 4-6.)

These differences are entirely inconsequential in light of the lenient definition of "similarly situated" at this stage of the litigation, and the fact that all loan officers - improperly classified as "exempt" for the same reason - are "similarly situated" with respect to the only "compensation methods" relevant to this case. Indeed, even in cases

---

[6] An example of such efforts is Defendants' claim that some loan officers enter the information required from the customer directly into the LoanQuest software program, while others write the information down on paper and enter it into the program later. (Dkt. #78, p. 2.) Without respect to the fact that this argument results in yet another admission that all loan officers are required to perform their sales jobs in the same manner (using the same tools and guidelines such as the LoanQuest loan sales software program), such meaningless differences highlight the utter lack of tangible evidence Defendants produce in their claim that all loan officers are not at least "similarly situated."

[7] Defendants' also claim that PSO's are paid under a different compensation plan then LCs and SLCs. (Dkt. #78, p.4.) Without respect to the fact that the only difference identified by Defendants between the plans is the "salary" v. "draw" distinction described above, this claim is directly contrary to the testimony of Defendants' 30(b)(6) corporate designee, who testified that all loan officers "operate based on a retail mortgage consultant sales commission plan." (Exh. #3, pp. 29.)

5

applying the stricter second stage analysis for FLSA "decertification" the courts have rejected similar attempts by defendants to "have their cake and eat it too:"

> The Court finds it disingenuous for [Defendant], on one hand to collectively and generally decide that all store managers are exempt from overtime compensation without any individualized inquiry, while on the other hand, claiming that plaintiffs cannot proceed collectively to challenge the exemption.

**Nerland v. Caribou Coffee Co.**, No.05-1847 (PJL/JJG), *17-18 (April 6, 2007, D. Minn.).[8]

### 3. Defendants cannot prove there is a difference in "decision makers" on the issues relevant to this motion.

Defendants do not claim that this classification decision was made on a branch-by-branch basis, or in any way other than as a corporate-wide decision affecting all loan officers regardless of who managed them. Instead, Defendants provide a number of hollow examples of situations in which different "decision makers" effect the loan officer job.[9] (See, Dkt. #78, pp. 4-7)

For these "differences" to have any import, the Court would again have to require proof beyond that which is necessary even under the more stringent second stage analysis. For example, in a recent decision in which the court denied second stage decertification in an FLSA "donning and doffing" case, the court stated:

> Gold'n Plump exaggerates the factual differences among employees on various shifts and in different departments. If one zooms in close enough on anything, differences will abound; even for a single employee doing a single job, the amount of time that she spends donning and doffing on Monday will differ, at least minutely, from the amount of time that she spends donning and doffing on Tuesday. But plaintiffs' claims need to be considered at a higher level of abstraction.

**Frank v. Gold'n Plump Poultry, Inc.**, 2007 WL 2780504, *4 (D. Minn. 2007).

---

[8] Attached as Exh. 25.

[9] These include Defendants' arguments that: 1) individual managers make decisions regarding "what type of candidates they want to hire;" 2) although all loan officers receive the exact same orientation and training, the loan officers may receive additional training from their individual managers; and 3) in addition to the national sales production contests Defendants held for all loan officers nationwide, each branch manager is allowed to hold local contests. (Dkt. #78, p. 4-7.)

At the correct "level of abstraction" (the lenient first stage "similarly situated" standard"), none of the "differences" Defendants claim result from various direct managers have any impact on the fact that all loan officers are denied overtime pay as a result of a "single decision, policy, or plan."

**4. Defendants cannot prove differences in geographic location effects the similarly situated nature of the loan officer position.**

Finally, Defendants' claim that differences in "geographic location" - particularly California - result in differences among the loan officers sufficient to defeat a "similarly situated" finding. Again, however, Defendants provide no specific, tangible examples of relevant differences driven by geography.[10] Instead, Defendants admit that loan officers perform the same "core responsibilities,"[11] are subject to the same "core personnel policies,"[12] and are paid under the same "compensation structure,"[13] regardless of geography.

**B. The Cases Cited by Defendants in Support of Their Arguments Are Distinguished, or Inapplicable to this Case.**

Tellingly, Defendants cite no cases from this district or circuit directly rebutting the overwhelming authority Plaintiffs cite from the California Federal District Courts.[14] Instead, Defendants cite four categories of cases, easily distinguishable from this case. First, despite admitting that the "first-tier notice standard is the appropriate standard to

---

[10] With respect to California, for example, Defendants point out that they maintain fewer loan officers in California then some other locations, and that because HSBC is "less recognized" in California, loan officers there "must work harder to develop their business and prospective client base." (Dkt. #78, pp. 2, n.6, 7-8.)
[11] Exh. #17, pp. 156-58.
[12] Dkt. #78, p. 4.
[13] Exh. #3, p. 112; Exh. 17, p. 99.
[14] **See, Agdipa v. Grant Joint Union High School Dist.**, 2007 WL 1106099 (E.D. Cal. 2007); **Beauperthuy**, 2007 WL 707475 (N.D. Cal. 2007); **Prentice v. Fund for Public Interest Research, Inc.**, 2007 WL 2729187 (N.D. Cal. 2007); **Stanfield, et al. v. First NLC Financial**, Case No. 4:06-cv-03892-SBA, Dkt. #110 (N.D. Cal. 2006); **Gerlach**, 2006 WL 824652 (N.D. Cal. 2006); **Rees**, 2006 WL 738987 (E.D. Cal. 2006); **Leuthold v. Destination America, Inc.**, 224 F.R.D. 462, 466-467 (N.D. Cal. 2004).

7

apply" to this motion,[15] Defendants cite a number of cases decided under the stricter second stage analysis.[16] Second, Defendants cite to "off-the-clock" cases in which the employees were properly classified as hourly, but some claimed they were denied some or all of their overtime pay.[17] Third, Defendant cite a number of cases where the class of employees for whom plaintiffs were seeking conditional certification was too broad or varied with respect to job title, job duties, divisions, and even companies.[18] All of these cases are distinguishable from this first-stage case in which the plaintiffs' class represents one job that was misclassified as part of a nationwide policy.

Finally, Defendants cite a number of cases for which conditional certification was denied because the plaintiffs did not provide sufficient information for the court to conclude the class was "similarly situated."[19] Unlike these cases, Plaintiffs have presented evidence from: 1) 17 declarants who worked in four states and at approximately 29 of Defendants' branch offices; 2) testimony from Defendants' Rule 30(b)(6) corporate designees and Senior Vice President of Human Resources; and 3) documents produced in discovery. The evidence in the cases cited by Defendants pale in comparison to these admissions, documents, and declaratory evidence.

### C. Plaintiffs' Informal Efforts to Contact Similarly Situated Employees Are Not Relevant to This Motion.

An advertisement letter sent to potential collective class members is

---

[15] (Dkt. 78, p. 10, n. 18.)
[16] **Morisky v. Pub. Serv. Elec. & Gas Co.,** 111 F. Supp. 2d 493, 497-98 (D. N.J. 2002); **Holt v. Rite Aid Corp.**, 333 F. Supp. 2d 1265, 1274 (M.D. Ala. 2004); **Brooks v. BellSouth Telecomm., Inc.**, 164 F.R.D. 561, 568 (N.D. Ala. 1995).
[17] **England v. New Century Fin. Corp.**, 370 F.Supp.2d 504, 508 (M.D. La. 2005); **Flores v. Lifeway Foods, Inc.**, 289 F. Supp. 2d 1042, 1046 (N.D. Ill. 2003); **Sheffield v. Orius Corp.**, 211 F.R.D. 411, 412 (D. Or. 2002); **Diaz v. Electronics Boutique of Am., Inc.**, 2005 WL 2654270 at * 2 (W.D.N.Y. 2005).
[18] **Aguirre v. SBC Comm., Inc.**, 2006 WL 964554 at * 6 (S.D. Tex. 2006); **Diaz**, 2005 WL 2654270 at *3; **Clausman v. Nortel Networks, Inc.**, 2003 WL 21314065 at *5 (S.D. Ind. 2003); **Sheffield**, 211 F.R.D. at 413; **Morisky**, 111 F. Supp. 2d at 498; **Brooks**, 164 F.R.D. at 569.
[19] **Aguirre**, 2006 WL 964554 at * 6 (no affidavits or other factual support); **Flores**, 289 F. Supp. 2d at 1046 (two affidavits); **Mike v. Safeco Ins. Co.**, 274 F. Supp. 2d 216, 221 (D. Conn. 2003) (one affidavit); **Briggs v. U.S.**, 54 Fed. Cl. 205, 207 (Fed. Cl. Ct. 2002) (one affidavit from plaintiffs' attorney).

8

fundamentally different than an official judicial notice. **Hoffmann-La Rouche Inc. v. Sperling**, 493 U.S. 165, 174 (1989). ("Court intervention in the notice process for case management purposes is distinguishable in form and function from the solicitation of claims.") **See also Kalish v. High Tech Institute, Inc.**, 2005 WL 1073645, *4 (D. Minn. 2005) (advertisement letter sent to prospective class members did not qualify as a "notice"). The purpose of Court authorized notice, on the other hand, is to provide "timely, accurate, and informative" notice to the potential class so that "they can make informed decisions about whether to participate" and to further the goal of judicial efficiency by avoiding numerous duplicative suits and establishing a timetable for the disposition of the action.[20] **Hoffman-La Rouche**, 493 U.S. at 170, 172. On the other hand, plaintiffs' counsel has a responsibility[21] to contact potential class members prior to bringing a motion for conditional certification and notice to determine whether a "similarly situated" group of employees exists nationwide. **See, Stanfield v. First NLC**, No. 06-3892 (SBA/JL), slip op. at *5 (Oct. 30, 2006, N.D. Cal.) (plaintiffs' counsel must "spread the word" about the potential class action to fulfill their job and serve their clients).

Here, Defendants ignore this obvious distinction, arguing that the letter Plaintiffs sent to the potential class should suffice. (Dkt. #78, pp. 18-19.) Plaintiffs' counsel sent out one "advertisement" letter to each person on the list produced by Defendants,[22]

---

[20] Also, if judicial notice is distributed to putative class members at an early stage of the proceedings, there will be fewer disputes over the notice's content and the validity of notices from opt-in Plaintiffs received prior to judicial notice. **Id.** at 170 (the parties dispute over letters sent by Plaintiffs prior to receiving judicial notice "illustrate the propriety, if not the necessity, for court intervention in the notice process").

[21] Attorney advertisements are also constitutionally protected form of free speech. **Shapero v. Kentucky Bar Ass'n**, 486 U.S. 466, 472 (1988).

[22] Defendants produced the list of loan officers only after Plaintiffs brought a motion to compel. In the motion, Plaintiffs specifically informed the Court that they intended to use the list to obtain information from these persons to litigate the case, and that they would strictly follow the rules of professional conduct in doing so. (Dkt. #34, pp. 10-11.)

9

following the specific ethics rules for each state.[23] (Lukas Dec. at ¶2.) It is from this effort that Plaintiffs were able to obtain a number of the declarations submitted in support of the motion. (Id.)

Such an exercise is far different then notice approved by the Court, and there is no reason to preclude judicial notice due to Plaintiffs' prior solicitation. **See**, **Hoffman La-Roach,** 493 U.S. at 168 (allowing court to initiate judicial notice procedure after Plaintiffs had already sent 600 letters to potential class members); **Stanfield**,[24] 2006 WL 3190527 at *2 (permitting judicial notice to proceed after Plaintiffs had already contacted putative class members); **Kalish**, 2005 WL 1073645, at *4 (granting judicial notice after plaintiffs had sent potential class members an advertisement letter).

### III. SUMMARY JUDGMENT SHOULD BE GRANTED ON DEFENDANT'S ADMINISTRATIVE, HIGHLY COMPENSATED, AND RETAIL SALES AFFIRMATIVE DEFENSES.

Defendants properly concede summary judgment on the "executive" and "professional" exemption defenses. (Dkt. #87, p. 24, n.27.) Based on the record before this Court, Defendants should have extended this concession to include the administrative, highly compensated, and retail sales defenses.

#### A. Defendants' Admission That Loan Officers' Primary Duty Is "Sales" Is Fatal to Their "Administrative" Exemption Defense.

The Department of Labor regulations and opinion letters cited by Defendants in support of their administrative exemption defense definitively state that the administrative exemption defense does not apply if the "financial services" employee's primary duty is sales. 29 C.F.R. 203(b) ("an employee whose primary duty is selling financial products does not qualify for the administrative exemption); DOL 9-8-06 Letter

---

[23] Generally, this included a bold and capitalized notice on the envelope and/or in the letter declaring it an "ADVERTISEMENT" or "ADVERTISING MATERIAL." (Lukas Dec. at ¶2.)
[24] Attached as Exh. #23.

10

(Dkt. #79-4, p. 11, n. 2) ("Of course if, based on all the facts in a particular case, a mortgage loan officer's primarily duty is selling mortgage loans, the mortgage loan officer will not qualify for the administrative exemption.")

As pointed out in Plaintiffs' initial memorandum, Defendants have repeatedly admitted that the loan officers' primary duty is "sales."[25] (Dkt. #71, pp. 22-23.) Defendants do not rebut this fact in their memorandum. In fact, Defendants do not even <u>mention</u> this uncontested fact in making their half-hearted claim that the administrative exemption defense should survive summary judgment. As such, Plaintiffs' motion should be granted as to this affirmative defense.

**B.    Defendants Have No Basis for the "Highly Compensated Employee" Exemption Defense.**

The "highly compensated employee" exemption defense applies to employees earning at least $100,000.00, "if the employee customarily and regularly performs any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee." 29 C.F.R. 541.601(a). Defendants have conceded that the "executive" and "professional" exemptions do not apply, and as discussed above, the loan officer position cannot meet the "job duties" test under the "administrative" exemption either. <u>See</u>, 29 C.F.R. 541.203(b). As a result, even if some of the Plaintiffs earned at least $100,000.00,[26] this exemption does not apply as a matter of law.

---

[25] Defendants repeat this admission by continuing to argue that the "outside sales" exemption – an affirmative defense that requires "sales" as the employees' primary duty – applies in this case. <u>See</u>, 29 C.F.R. § 541.500.

[26] Plaintiffs doubt "many loan officers earn in excess of $100,000 annually" as Defendants claim. (Dkt. #78, p. 25.) Indeed, of the four declarations Defendant cites in support of this contention, three state the contrary. Two are from regional managers who testify to only one such loan officer in each of their regions. (Needham Decl. ¶17; Young Decl. ¶18.) The third is from a regional manager who states that the average loan officer income in his region is between $35,000 and $65,000. (Kelter Decl. ¶17.) However, Defendants' failure to produce any payroll documents or other tangible evidence necessary to meet their affirmative burden of proving such high income is moot because the exemption does not apply.

11

### C. As Lenders, Defendants Do Not Qualify For the Section 7(i) "Retail Sales" Defense As a Matter of Law.

Defendants cite only **Gatto v. Mortgage Specialists of Ill., Inc.**, 442 F. Supp. 2d 529, 541-42 (N.D. Ill. 2006), in support of their claim to the "retail sales" exemption.[27] Unfortunately for Defendants, the **Gatto** court ruled contrary to the **Mitchell v. Kentucky Finance Co.**, 359 U.S. 290, 291 (1959) line of cases only because the defendant was <u>exclusively</u> a broker, and <u>not</u> a lender of loans. **Gatto**, 442 F. Supp. 2d at 539. Even in a case where the defendant is found to be <u>primarily</u> a broker, the court has distinguished and rejected Gatto because the defendant also engaged in "a small amount of direct lending." **Saunders v. Ace Mortgage Funding, Inc.**, 2007 WL 1190985, *6 (April 16, 2007, D. Minn.). Indeed, **Gatto** stands alone under a very limited set circumstances, while all courts who have addressed the issue have predictably followed the Supreme Court and Department of Labor in finding lenders to be ineligible for the retail sales defense. **See**, **Mitchell**, 359 U.S. at 291; 29 C.F.R. §779.317 (including "banks," "credit companies, including small loan and personal loan companies," and "finance companies" on list of establishments lacking the requisite "retail concept"); **Barnett v. Washington Mutual Bank, FA, et al.**, 2004 WL 1753400, *3, (N.D. Cal.); **Saunders**, 2007 WL 1190985, *6; **Pontius v. Delta Financial Corp.**, 2007 WL 1496692, *4-6 (March 20, 2007, W.D. Pa.).; **Casas v. Conseco Finance Corp.**, 2002 WL 507059 (D. Minn.). Here, it is uncontested that Defendants were lenders, not brokers. As such, Plaintiffs' motion for summary judgment on this defense should be granted as well.

### IV. SUMMARY JUDGMENT SHOULD BE GRANTED ON DEFENDANT

---

[27] In a very recent case, a Arizona Federal District Court Judge rejected **Gatto**, questioning whether it could withstand scrutiny under 9th Circuit case law. **Partida v. American Student Loan Corp.**, No. 07-0674 (PHX/DGC), slip op. at *5 (D. AZ, Jan. 18, 2008)(attached as Exh. 24).

12

**HSBC BANKS STATUS AS A FLSA EMPLOYER.**

Defendants' opposition argues that disputed facts exist as to Defendant HSBC Bank, USA, NA's ("HSBC Bank's") status as an FLSA "employer." (See, e.g., Dkt. #78 p. 23, n. 26.)  However, Defendants' Rule 30(b)(6) and human resource personnel witnesses establish unequivocally that HSBC Bank meets all of the criteria under the uniquely broad definition of "employer" under the FLSA.  These witnesses establishe beyond dispute that HSBC Bank is an FLSA "employer" of the Plaintiffs. (See, Dkt. # 71, pp. 3-5, 17-20).  In fact, the interrelation between the Bank and HSBC Mortgage Corp.'s ("HSBC Mortgage") operations is so well established, Defendants' Rule 30(b)(6) deponent agrees that HSBC Mortgage is the "mortgage department" for HSBC Bank, and the Human Resource Director described HSBC Mortgage as HSBC Bank's "mortgage division." (Exh. #22, pp. 15-16; Exh. #17, pp. 22-23).

Many of Defendants' assertions in opposition to the motion are utterly contrary to the evidence presented through this testimony from their own witnesses.[28]  Indeed, even in their attempt to downplay the role HSBC Bank plays in its subsidiary's operation, Defendants make additional helpful admissions, such as Mr. Gates admitting in his declaration that HSBC Bank provides "general oversight of [HSBC Mortgage]'s financial management."  (Dkt. #81, p. 3, ¶10.)

---

[28] **See**, **e.g.,** Defendant's assertion that each company pays employees separately and each company maintains and runs a separate payroll operation (Dkt. #78, p. 21), which is contradicted by, e.g., Exh. #22, p. 50. See also, e.g., Defendant's contention that the marketing efforts of the two corporations are not coordinated (Dkt. #78, p. 21), which is expressly contradicted by, e.g., Exh. #22, pp. 80-82, and Dkt. #78, p. 23: "here, HBUS exercises no such managerial control;" "HBUS possesses no substantial control over the mode and manner of Plaintiffs' work;" Dkt. #78, p. 24, citing "HBUS' marginal involvement in HMCU's activities."However, Defendants' conclusory representations do nothing to create a question of material fact. **See**, **e.g., Morris v. Covan World Wide Moving, Inc.**, 144 F.3d 377, 380 (5th Cir.1998) ("[T]he nonmoving party may not rest upon the mere allegations or denials of its pleading, and unsubstantiated or conclusory assertions that a fact issue exists will not suffice."); **Dalton v. Logan Mfg. Corp.,** 42 F.3d 1399, *2 (9th Cir. 1994) (unpublished) ("There is a distinction between viewing the evidence in the light most favorable to the nonmoving party and making assumptions on entirely unsubstantiated speculation.").

### A.  HSBC Bank Is Intimately Involved in Mortgage Corp.'s Personnel Activities.

Of particular significance is the fact that HSBC Bank is involved in HSBC Mortgage's personnel actions. (See, Dkt. #78, p. 22, citing **Smith**, 590 F.Supp. at 1208; Opp. at p. 22, citing **Frank v. West**, 3 F.3d 1353, 1360 (10th Cir. 1993). The person in charge of HSBC Mortgage's human resource services is a Senior Vice President employed by HSBC Bank, Jennette Jennings. (Exh. #17, pp. 21-22, 24-25.) The depth of HSCB Bank's involvement in personnel decisions includes mandatory participation in every termination decision at HSBC Mortgage, as confirmed by Ms. Jennings:

> [I]f anything is going in writing, such as a written warning or a final written warning or even a termination, it must go through [the Bank] first. We must review that document. We confirm the facts and advise if they have enough and what the risks are if there are any.

(Exh. #17, p. 169).[29]

### B.  HSBC Bank and HSBC Mortgage Share Offices, Employees and Other Resources.

Defendants' opposition also emphasizes the importance to the "centralized control" analysis of "[s]hared services, equipment, employees and office space." (Dkt. #78, p. 20, citing **EEOC v. Financial Assurance, Inc.**, 624 F.Supp. 686, 689-90 (W.D.Mo. 1985)). Plaintiffs established the sharing of employees in marketing, human resources, payroll, legal, and upper management of HSBC Bank and HSBC Mortgage in the original memorandum.[30] (See supra. See also Dkt. #71, pp. 2-3; Exh. #17, pp. 28-31,

---

[29] See also, id. pp. 170, 175 ("[We at the Bank] would determine whether that individual was terminated or not.") and (the Bank's involvement in Chaussy's termination contained "the same discussions I would have with anyone else [at the Mortgage Corporation] who's coming to me [suggesting] that an employee may be terminated").

[30] For example, the head of the HSBC Mortgage has the title Executive Vice President and is accountable to HSBC Bank, managers, and the HSBC Mortgage's human resources staff are HSBC Bank employees. Id. HSBC Bank employees take mortgage applications for HSBC Mortgage. (Exh. #21, pp. 101-103.) HSBC Bank provides all training from its Buffalo offices for HSBC Mortgage's new, incoming loan officers. (Exh. 17, pp. 46-47.)

184-188; Exh #21, pp. 77-79.)  Likewise, uncontroverted evidence demonstrates that because HSBC Mortgage does not have branches apart from HSBC Bank branches, many HSBC Mortgage employees typically work from HSBC Bank branch offices, employing the Bank's equipment and the Bank's services.[31] (See, e.g., Exh. #22, pp. 27, 33-34; Dkt. #72-2, pp. 42-26.)

As Plaintiffs' Motion establishes, no reasonable fact-finder could find that Defendants HSBC Bank, and its mortgage department –HSBC Mortgage – are arm's length transactors,[32] when the former is, among other things, involved in every major personnel decision of the latter and administers all of the latter's human resource functions.  The true nature of the interrelations of these two companies is best stated by Ms. Jennings when describing why all HSBC Mortgage loan officers are flown to HSBC Bank's headquarters in Buffalo, New York, for a mandatory full-day orientation:

> The hires attend a one-day full new hire orientation.  And, for the loan officers, as an example, they all attend that at the bank, at our headquarters . . . so that they get a true culturation of not only the mortgage corporation but, also, the bank and something – they're part of something much bigger than just the mortgage corporation.

(Exh. #17, p. 45-46.)

## V.     **CONCLUSION**

For all of these reasons, and those stated in Plaintiffs' initial memorandum, the Motions should be GRANTED.

---

[31] Payments to the Mortgage Corporation are made employing the Bank's services, while the Mortgage Corporation provides products and services for HSBC Bank USA's customers. **Id.**.

[32] Contrary to Defendants' argument, the relevant holding of **Bowoto v. Chevron Texaco Corp.**, 312 F.Supp.2d 1229, 1234-1236 (N.D. Cal. 2004) is that Courts "disregard the corporate form where such disregard is necessary to prevent injustice to a person or entity that would be harmed by refusing to impose liability on the basis of the corporate structure." **Id.** at 1235. The integrated enterprise theory is applied in the context of employment litigation, and that under this test, "courts have applied a far less stringent standard to the question of whether related employers can be held liable for one another's actions" and the "policy underlying the single employer doctrine [also referred to as the integrated enterprise theory] is the fairness of imposing liability for labor infractions **where two nominally independent entities do not act under an arm's length relationship**." **Id.** at 1237-1238 (emphasis added).

| | |
|---|---|
| Date: January 28, 2008 | ____s/Paul J. Lukas_____ |

**NICHOLS KASTER &ANDERSON, PLLP**
Paul J. Lukas, Admitted Pro Hac Vice
4600 IDS Center
80 South 8th Street
Minneapolis, MN 55402

Attorneys for Individual and Representative Plaintiffs