**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                 FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  PHILIP WONG, et al.,                        No. C-07-2446 MMC

12              Plaintiff,              **ORDER GRANTING IN PART AND
                                        DENYING IN PART PLAINTIFFS'**
13     v.                               **MOTION FOR CONDITIONAL
                                        CERTIFICATION, FOR PRODUCTION,**
14  HSBC MORTGAGE CORPORATION (USA),     **AND FOR PARTIAL SUMMARY**
    et al.,                             **JUDGMENT; DIRECTIONS TO PARTIES;**
15              Defendants              **VACATING HEARING**

16  _____/

17

18       Before the Court is plaintiffs' "Motion For Conditional Certification and Judicial

19  Notice Pursuant to § 216(B) of the FLSA, For Production Of Updated Class List in Excel

20  Format Within 10 Days of the Date this Motion Is Granted, For a Partial Summary

21  Judgment Under Fed. R. Civ. P. 56 that Named Defendants Are Properly-Named

22  Employers Under the FLSA, and For Partial Summary Judgment Under Fed. R. Civ. P. 56

23  on FLSA Exemptions Applied to Loan Officers."  The motion was filed December 21, 2007,

24  amended December 27, 2007, and noticed for hearing on March 14, 2008 before the

25  undersigned.  Defendants HSBC Mortgage Corporation (USA) ("HMCU") and HSBC Bank

26  USA, N.A. ("HBUS") have filed opposition, to which plaintiffs have replied.  Having read

27  and considered the papers filed in support of and in opposition to the motion, the Court

28  finds the matter suitable for decision thereon, VACATES the hearing scheduled for March

1  14, 2008, and rules as follows.

2                                **BACKGROUND**

3          In their amended complaint ("AC"), plaintiffs allege defendants have improperly

4  classified them as exempt from the Federal Labor Standards Act ("FLSA"), which requires

5  payment of overtime compensation.  According to plaintiffs, (1) plaintiff Philip Wong

6  ("Wong") currently works for defendants as a "loan officer," (see AC ¶ 8), (2) plaintiff

7  Frederic Chaussy ("Chaussy") was previously employed by defendants as a "Senior Retail

8  Mortgage Lending Consultant," (see AC ¶ 9), and (3) plaintiff Leslie Marie Shearn

9  ("Shearn") was previously employed by defendants as a "Senior Retail Mortgage Lending

10 Consultant," (see AC ¶ 10).  In addition to seeking relief for themselves under the FLSA,

11 plaintiffs seek to bring their FLSA claim on behalf of "similarly situated employees" who

12 were "misclassified as exempt," specifically, "loan officers."  (See AC ¶ 18.)  Additionally,

13 plaintiffs seek relief under state law, both individually and on behalf of a class.

14         In their respective answers, each defendant alleges, in its second affirmative

15 defense, that it was not plaintiffs' employer and, in its fourth affirmative defense, that

16 plaintiffs are exempt from the protections of the FLSA.

17                                **DISCUSSION**

18         In the instant motion, plaintiffs seek, for purposes of their FLSA claim, conditional

19 certification of a class of persons employed by defendants, within the United States

20 beginning May 7, 2004, as a "Senior Retail Mortgage Lending Consultant," "Retail

21 Mortgage Lending Consultant," and/or "Premier Mortgage Sales Officer," which job titles

22 plaintiffs describe collectively as "loan officers."[1]  Additionally, plaintiffs seek, in the event

23 conditional certification is granted, approval of their proposed notice to the putative class,

24 as well as an order directing defendants to produce an updated list of putative class

25 members.  Finally, plaintiffs seek summary judgment in their favor as each defendant's

26 _____

27         [1]In the AC, plaintiffs allege Shearn also worked as a "sales assistant," (see AC ¶¶ 1,
   10); plaintiffs bring the instant action on behalf of "sales assistants" as well as loan officers,
28 (see ¶ 18).  By the instant motion, plaintiffs do not seek conditional certification of a
   collective class of sales assistants.

                                        2

1  second affirmative defense, to the extent it is asserted against plaintiffs' FLSA claims, and

2  as to each defendant's fourth affirmative defense, to the extent it is premised on four

3  specific exemptions to the FLSA.

4  **A. Conditional Certification**

5     As noted, plaintiffs seek an order conditionally certifying, for purposes of the FLSA, a

6  class of persons who currently are or formerly were employed by defendants as loan

7  officers within the United States as of May 7, 2004.

8     A plaintiff may bring an FLSA action on his behalf and on behalf of other employees

9  "similarly situated."  See 29 U.S.C. § 216(b).  Any employee "similarly situated" to the

10 plaintiff must give "consent in writing to become a party plaintiff to [the] action."  See id.  A

11 district court has the authority to allow the named plaintiff to send notice to all potential

12 plaintiffs and to set a deadline for such potential plaintiffs to join the action.  See Hoffman-

13 La Roche, Inc. v. Sperling, 493 U.S. 165, 169-71 (1989) (holding district court, under

14 § 216(b), has "managerial responsibility to oversee the joinder of additional parties to

15 assure that the task is accomplished in an efficient and proper way").

16    To certify a FLSA collective action, district courts have applied a "two-step approach

17 involving initial notice to prospective plaintiffs followed by a final evaluation whether such

18 plaintiffs are similarly situated."  See Leuthold v. Destination America, Inc., 224 F.R.D. 462,

19 466 (N.D. Cal. 2004).[2]  At the first step, the plaintiffs must "show that there is some factual

20 basis beyond the mere averments in their complaint for the class allegations."  See In re

21 Wells Fargo Home Mortgage Overtime Pay Litig., 527 F. Supp. 2d 1053, 1071 (N.D. Cal.

22 2007) (internal quotation and citation omitted).  "Because the court generally has a limited

23 amount of evidence before it, the initial determination is usually made under a fairly lenient

24 standard and typically results in conditional certification."  See Leuthold, 224 F.R.D. at 467.

25 At the second step, which occurs after discovery is complete, "the party opposing class

26

27       [2]Some district courts have applied an alternative approach, specifically, "evaluating
   the FLSA collective action in terms of Rule 23's class certification requirements."  See id.
28 Here, however, the parties agree the Court should apply the above-stated two-step
   approach.  (See Pls.' Mot. at 10:23-25; Defs.' Opp. at 10:26.)

1    certification may move to decertify the class," at which time the district court makes "a

2    factual determination regarding the propriety and scope of the class and must consider the

3    following factors:  (1) the disparate factual and employment settings of the individual

4    plaintiffs; (2) the various defenses available to the defendants with respect to the individual

5    plaintiffs; and (3) fairness and procedural considerations."  See id.  If, at the second step,

6    "the district court determine[s] on the basis of the complete factual record that the plaintiffs

7    are not similarly situated," the court "may decertify the class and dismiss the opt-in plaintiffs

8    without prejudice."  See id.

9         Here, named plaintiffs Wong and Chaussy, as well as thirteen other loan officers

10   who have submitted declarations in support of the instant motion, declare they routinely

11   worked more than 40 hours per week, (see Pls.' Ex. 2), and Edward Pincar ("Pincar"), a

12   former "sales manager" for HMCU, declares the eight loan officers he supervised "often

13   worked over 60 hours in a week," (see Pincar Decl. ¶ 4, attached to Pls.' Ex. 2).  Based on

14   such evidence, plaintiffs have shown there exists "some factual basis beyond the mere

15   averments in their complaint," see In re Wells Fargo Home Mortgage, 527 F. Supp. 2d at

16   1071, for their allegation that defendants "permitted [loan officers] to work more than forty

17   hours per work," (see AC ¶ 19).

18        Additionally, Wong, Chaussy, and each of the above-referenced thirteen other loan

19   officers, have, in their declarations, set forth their respective duties, which, in each case,

20   are substantially similar to, if not identical to, the duties of the other loan officers.  (See Pls.'

21   Ex. 2.)  Further, it is undisputed that HMCU classifies all of its loan officers as exempt

22   under the FLSA, (see Pls.' Ex. 1 at 3:12 - 4:2; Pls.' Ex. 3 at 18-19, 73; Barrett Decl. Ex. 2,

23   first unnumbered page), a practice suggesting there exists a uniformly-applicable basis for

24   defendants' classification decision.  See In re Wells Fargo Home Mortgage, 527 F. Supp.

25   2d at 1071 (noting plaintiffs must make showing that "the putative class members were

26   subject to a single illegal policy, plan or decision") (internal quotation and citation omitted).

27   Defendants argue, however, that various differences exist as to how loan officers execute

28   their duties, and/or how sales managers oversee loan officers.  As one example, some loan

4

officers, according to defendants, enter information into a computer "in front of a customer," while some "will not." (See Barrett Decl. Ex. 5 at 64:10 - 65:9.) As another example, loan officers have, according to defendants, differing opinions on what sources provide the best sales referrals. As yet another example, defendants represent that regional managers have discretion to conduct "contests" to generate business. (See id. Ex. 5 at 110:10-23.) Defendants fail, however, to identify the relevance of the above-referenced differences or of any of the other differences they identify. Defendants fail to explain how, for example, different regions' having different types of incentive contests pertains to any possible exemption under the FLSA, or to any other issue that would tend to show loan officers are not "similarly situated" with respect to the claim made herein, which is based on the allegation that defendants' policy of uniformly exempting loan officers from the FLSA is unlawful.

Accordingly, the Court, applying the "fairly lenient standard" applicable at the first step, finds plaintiffs have made a sufficient showing that loan officers are "similarly situated" with respect to the FLSA violation alleged by the named plaintiffs. See, e.g., In re Wells Fargo Home Mortgage, 527 F. Supp. 2d at 1071 (conditionally certifying FLSA class where plaintiffs established defendant's classification policy was "uniform for all putative classmembers," and plaintiffs offered declarations from 17 putative class members "indicating a significant degree of commonality among the experiences of [class members]"; Leuthold, 224 F.R.D. at 468 (holding plaintiffs made sufficient showing at first step where plaintiffs alleged defendant travel company treated as exempt from FLSA protections all "tour directors and tour managers" and "proposed lead plaintiffs" offered affidavits asserting they often worked over 40 hours per week and that their "experiences [were] common to the whole proposed class"); cf. England v. New Century Financial Corp., 370 F. Supp. 2d 504, 511 (M.D. La. 2005) (holding plaintiffs not entitled to conditional certification of FLSA class where there was "no evidence of a national policy" and plaintiffs' claims were based on "local policies of various managers located at different sites").

Accordingly, plaintiffs' motion for conditional certification will be granted.

**B. Production of Employee List**

Plaintiffs request that, in the event the Court conditionally certifies a class, defendants be ordered to produce, in Excel form, a list of persons employed as loan officers in the last three years, to include names, addresses, telephone numbers, dates of employment as a loan officer, location of employment, employee number, and the last four digits of the employee's Social Security number.

Defendants state no opposition to such request,[3] but ask that they be given 14 days from the Court's issuance of an order approving the form of notice to be given to the class, rather than 10 days therefrom as plaintiffs propose. The Court finds defendants' proposed date of production to be reasonable.

Accordingly, plaintiffs' motion for production will be granted, and defendants will be ordered to produce the requested information within 14 days of the date the Court issues an order approving the form of notice.

**C. Form of Notice**

A district court must ensure notice sent to a putative collective class is "timely, accurate, and informative." See Hoffman-La Roche, 493 U.S. at 172. "Both the parties and the court benefit from settling disputes about the content of the notice before it is distributed." Id.

Here, plaintiffs have submitted a proposed Notice of Collective Action, (see Pls.' Ex. 12), and seek the Court's approval thereof. In opposition, defendants state they have objections to, and request an opportunity to submit supplemental briefing on, the form of notice.[4] In their reply, plaintiffs do not respond to defendants' request for supplemental briefing.

Accordingly, the Court will direct the parties to meet and confer as to the form of the notice, and to thereafter submit a jointly-proposed form of notice, or, if the parties are

---

[3] Defendants represent they have previously produced a list of loan officers' names, addresses, job titles, and dates of employment. (See Barrett Decl. ¶ 4.)

[4] Defendants do not specify the particular language to which they object.

1  unable to agree on the form of notice, to submit separate proposed notices.[5]

2  **D.  Summary Judgment**

3       Rule 56 of the Federal Rules of Civil Procedure provides that a court may grant

4  summary judgment "if the pleadings, the discovery and disclosure materials on file, and any

5  affidavits show that there is no genuine issue as to any material fact and that the movant is

6  entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(c).

7       The Supreme Court's 1986 "trilogy" of Celotex Corp. v. Catrett, 477 U.S. 317 (1986),

8  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and Matsushita Electric Industrial Co.

9  v. Zenith Radio Corp., 475 U.S. 574 (1986), requires that a party seeking summary

10 judgment show the absence of a genuine issue of material fact.  Once the moving party

11 has done so, the nonmoving party must "go beyond the pleadings and by [its] own

12 affidavits, or by the depositions, answers to interrogatories, and admissions on file,

13 designate specific facts showing that there is a genuine issue for trial."  See Celotex, 477

14 U.S. at 324 (internal quotation and citation omitted).  "When the moving party has carried

15 its burden under Rule 56(c), its opponent must do more than simply show that there is

16 some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586.  "If the

17 [opposing party's] evidence is merely colorable, or is not significantly probative, summary

18 judgment may be granted."  Liberty Lobby, 477 U.S. at 249-50 (citations omitted).

19 "'[I]nferences to be drawn from the underlying facts," however, "must be viewed in the light

20 most favorable to the party opposing the motion.'"  See Matsushita, 475 U.S. at 587

21 (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).

22      **1.  Identity of Employer**

23      Plaintiffs allege they were employed by both HMCU and HBUS.  (See AC ¶ 1.)  As

24 noted, each defendant alleges, as an affirmative defense, that it is/was not plaintiffs'

25 employer for purposes of the FLSA.  Plaintiffs seek summary judgment as to such defense.

26

27       [5]Defendants' agreement to the form of notice or submission of a separately-
28 proposed notice will be not be considered a waiver of defendants' objections to conditional
   certification.

7

1    In their opposition, defendants concede that HMCU is the "'employer' of the putative

2    class members," (see Defs.' Opp. at 8:11), and, indeed, request the Court find that the

3    evidence submitted by the parties "demonstrates" that HMCU is the "employer of the

4    proposed class members," (see Defs.' Proposed Order at 2:2-4).  Accordingly, there being

5    no dispute as to HMCU's status as an employer of plaintiffs, the Court finds plaintiffs are

6    entitled to summary judgment in their favor on HMCU's second affirmative defense, to the

7    extent it is directed to plaintiffs' FLSA claims.[6]

8    The Court next turns to HBUS.  Plaintiffs argue it is undisputed that HMCU and

9    HBUS constitute a "single employer."  To determine whether two companies constitute a

10   "single employer," a district court considers four factors:  "(1) common ownership;

11   (2) common management; (3) centralized control of labor relations; and (4) interrelation of

12   operations."  See Int'l Brotherhood of Teamsters, Local 952 v. American Delivery Service

13   Co., 50 F. 3d 770, 775 (9th Cir. 1995).

14   In support of their motion, plaintiffs offer, inter alia, evidence that plaintiffs Chaussy

15   and Shearn received from HBUS their respective job offers to work for HMCU, (see Pls.'

16   Ex. 14), that fifteen loan officers have attested that they work or worked inside of HBUS

17   branches, (see Pls.' Ex. 2), and that an HMCU manager testified that HMCU's "biggest

18   referral source" is HBUS, (see Pls.' Ex. 3 at 101).  Even assuming such evidence, along

19   with the other evidence upon which plaintiffs rely, would be sufficient to support a finding

20   that HMCU and HBUS constitute a "single employer," the Court finds, for the reasons

21   stated by defendants, that plaintiffs are not entitled to summary judgment.  In particular, the

22   evidence offered by defendants is sufficient to create a triable issue of material fact as to

23   each factor relevant to the "single employer" test, with the exception of "common

24

25

26

_____

27   [6]Defendants' concession that HMCU is the "employer" for purposes of the FLSA
     would appear equally applicable to plaintiffs' state law claims.  Because plaintiffs' motion on
28   this point is limited to plaintiffs' FLSA claims, however, the Court makes no equivalent
     finding with respect to plaintiffs' state law claims.

ownership."[7]  (See, e.g., Kujawa Decl. ¶ 4 (declaring "[n]o director of [HBUS] is a director of [HMCU]"); Gates Decl. ¶ 10 (declaring "HBUS provides only general oversight of HMCU's financial management"); Jennings Decl. ¶ 3 (declaring "HMCU provides the funding that pays for its employees' compensation" and has a "payroll that is separate from [HBUS]"); id. ¶ 4 (declaring employees of HMCU are not "transferred to work" for HBUS, and vice versa); Barrett Decl. Ex. 5 at 24 (testifying HMCU does not coordinate its marketing efforts with HBUS); id. Ex. 5 at 38 (testifying HMCU makes its own "hiring and firing decisions").)

Accordingly, plaintiffs have failed to show they are entitled to summary judgment in their favor on HBUS's second affirmative defense.

## 2. FLSA Exemptions

The FLSA requires an employer to pay overtime compensation to employees who work more than forty hours per week, "[e]xcept as otherwise provided in [the FLSA]."  See 29 U.S.C. § 207(a)(1).  "An employer who claims an exemption from the FLSA has the burden of showing that the exemption applies."  Bothell v. Phase Metrics, Inc., 299 F. 3d 1120, 1124 (9th Cir. 2002) (internal quotation and citation omitted).  "Because the FLSA is to be liberally construed to apply to the furthest reaches consistent with Congressional direction[,] FLSA exemptions are to be narrowly construed against employers and are to be withheld except as to persons plainly and unmistakenly within their terms and spirit."  Id. (internal quotation, citation and alteration omitted).

Here, as noted, each defendant has alleged, in its fourth affirmative defense, that plaintiffs are not entitled to payment of overtime compensation because they are exempt from the FLSA; defendants do not allege the specific exemptions on which they intend to rely.  Plaintiffs seek summary judgment on said affirmative defenses, to the extent they are based on following exemptions:  (1) "executive"; (2) "professional"; (3) "administrative"; and

---

[7]Defendants acknowledge HBUS, as the parent corporation of HMCU, owns 100% of HMCU's stock.  (See Defs.' Opp. at 22:24-25.)  As the Ninth Circuit has recognized, however, "common ownership" is the "least important factor."  See Int'l Brotherhood, 50 F. 3d at 775.

1  (4) "retail sales."  (See Pls.' Amended Mot. at 3:1-3.)[8]

2       In opposition, defendants state they "do not oppose [p]laintiffs' motion for partial

3  summary judgment on the executive and professional exemptions."  (See Defs.' Opp. at

4  24:26-27.)   Consequently, the Court will grant plaintiffs' motion, as it pertains to those two

5  exemptions.

6       The Court next turns to the issue of whether a triable issue of fact exists with respect

7  to the "administrative" and "retail sales" exemptions.[9]

8              **a. Administrative Exemption**

9       An "employee employed in a bona fide . . . administrative . . . capacity" is exempt

10  from the FLSA.  See 29 U.S.C. § 213(a)(1).

11       The term "employee employed in a bona fide administrative capacity" is defined to

12  mean an employee who is:

13       "(1) Compensated on a salary or fee basis at a rate of not less than $455 per
         week . . . exclusive of board, lodging or other facilities;

14

15       (2) Whose primary duty is the performance of office or non-manual work
         directly related to the management or general business operations of the
         employer or the employer's customers; and

16

17       (3) Whose primary duty includes the exercise of discretion and independent
         judgment with respect to matters of significance."

18  See 29 C.F.R. § 512.200.  "The term 'primary duty' means the principal, main, major or

19  most important duty that the employee performs."  29 C.F.R. § 512.700(a).  "[A]n employee

20  whose primary duty is selling financial products does not qualify for the administrative

21

22       [8]Plaintiffs also state their understanding, based on testimony provided by one of
    HMCU's Rule 30(b)(6) designees, that defendants will assert the "outside sales" exemption.
23  See 29 U.S.C. § 213(a)(1) (providing "employee employed . . . in the capacity of outside
    salesman" is exempt from protections of FLSA).  Plaintiffs do not seek summary judgment
24  on defendants' defense to the extent it is based thereon.

25       [9]In their opposition, defendants state they intend to rely on the "highly compensated"
    exemption.  (See Defs.' Opp. at 25:1-8); see also 29 C.F.R. § 541.601.  In their reply,
26  plaintiffs argue they are entitled to summary judgment as to such exemption, on the ground
    defendants "have no basis" for the exemption.  (See Pls.' Reply at 11:11-21.)  Because
27  plaintiffs' moving papers did not seek summary judgment as to such exemption, however,
    defendants were not on notice of the need to establish a triable issue of fact with respect
28  thereto.  Consequently, the Court does not consider whether plaintiffs are entitled to
    summary judgment with respect to such exemption.

                                      10

1    exemption."  29 C.F.R. § 541.203(b) (providing examples of when an employee in "financial

2    services industry" does or does not "qualify" for "administrative exemption").

3         Plaintiffs argue it is undisputed that the "primary duty" of loan officers is selling

4    "financial products," and, as a consequence, defendants cannot rely on the administrative

5    exemption.  See id.  Plaintiffs rely on the deposition testimony of David Gates ("Gates"),

6    who was produced on behalf of HMCU pursuant to Rule 30(b)(6) of the Federal Rules of

7    Civil Procedure.  In describing the duties of "loan officers," Gates testified as follows:  "Our

8    loan officers take mortgage applications and sell mortgages.  They don't process.  They

9    don't underwrite.  They don't close loans.  There's a check and balance from a control

10   perspective.  So their primary job is to sell."  (See Pls.' Ex. 3 at 130.)  Gates also testified

11   that the department in which loan officers work is "purely a sales department," (see id. at

12   131), and that the loan officers are considered to be "outside sales," (see id. at 74).

13   Further, in response to the question, "And the primary duty of your loan officers is selling

14   loans, right?," Gates testified, "That is correct."  (See id. at 28-29.)

15        In addition, plaintiffs rely on declarations offered by named plaintiffs Wong and

16   Chaussy, and by the thirteen other loan officers, each of whom states his/her "job duties

17   remained consistent throughout [his/her] employment, and were entirely focused on [his/

18   her] selling as many loans as possible."  (See Pls.' Ex. 1.)[10]  Finally, plaintiffs rely on the

19   earlier-referenced declaration of Pincar, a former "sales manager" for HMCU, who states

20   the "loan officers under [his] supervision were primarily or exclusively engaged in selling

21   loans."  (See id.)

22        In opposition, defendants cite no evidence to the contrary; in particular, defendants

23   cite no evidence to support a finding that loan officers have a "principal, main, major or

24   most important duty," see 29 C.F.R. § 541.700(a), other than that of selling financial

25   products.  Rather, defendants rely on a September 8, 2006 opinion letter issued by the

26   Department of Labor ("DOL"), in which the DOL opined that "mortgage loan officers" could,

27   _____

28        [10]Wong's statement differs from the statement quoted above only in that, because
     he is currently employed by HMCU, he uses the present tense.

1     under some circumstances, be considered exempt administrative employees.  (See Barrett

2     Decl. Ex. 3, sixth page attached thereto.)  In offering such opinion, however, the DOL

3     stated, "Of course if, based on all the facts in a particular case, a mortgage loan officer's

4     primary duty is selling mortgage loans, the mortgage loan officer will not qualify for the

5     administrative exemption.  29 C.F.R. § 541.203(b)."  (See id. Ex. 3, tenth page attached

6     thereto.)  Because defendants have not identified any evidence to support a finding that

7     plaintiffs' primary duty is something other than sales, defendants' reliance on such opinion

8     letter is unavailing.

9         Accordingly, plaintiffs have shown they are entitled to summary judgment on

10     defendants' fourth affirmative defenses to the extent such defenses are based on the

11     administrative exemption.

12                       **b.  Retail or Service Establishment Exemption**

13         The FLSA excludes from coverage an employee of "a retail or service

14     establishment" whose regular rate of pay is more than one and one-half times the minimum

15     wage if "more than half his compensation for a representative period (not less than one

16     month) represents commissions on goods or services."  See 29 U.S.C. § 207(i).

17     "Banks (both commercial and savings)," "[f]inance companies" and "[l]oan offices,"

18     however, are not "retail or service establishment[s]" within the meaning of § 207(i).  See 29

19     C.F.R. § 779.317; see also Mitchell v. Kentucky Finance Co., 359 U.S. 290, 292 (1959)

20     (holding "enterprises in the financial field," even if engaged in "retail financing," are not

21     within "retail or service establishment" exemption; noting with approval petitioner's

22     argument that "the concept of 'sale' is inherently inapposite to the lending of money at

23     interest").

24         In the instant action, it is undisputed that HBUS is a bank, (see Pls.' Ex. 6 (HBUS

25     "Fact Sheet" describing HBUS as a "bank")), and, consequently, HBUS cannot be

26     considered a "retail or service establishment" for purposes of § 207(i).

27         Plaintiffs argue it likewise is undisputed that HMCU is a "finance company" or "loan

28     office."  (See, e.g., Pls.' Ex. 16 (HMCU "Fact Sheet" identifying HMCU's products as twelve

types of mortgages and loans).)  Defendants characterize HMCU as being part of the

"home mortgage loan industry," (see Defs.' Opp. at 25:19-22), and argue that an employer

in such industry is a "retail or service establishment" notwithstanding § 779.318(a), which,

as noted, provides that "finance companies" and "loan offices" do not qualify as such.

Defendants, however, cite no authority to support such proposition, and district courts that

have considered the issue have ruled to the contrary.  See, e.g., Barnett v. Washington

Mutual Bank, 2004 WL 1753400, * 1, *6 (N.D. Cal. 2004) (holding employer "who sold

home mortgage loans" was not "retail or service establishment" for purpose of § 207(i));

Casas v. Conseco Finance Corp., 2002 WL 507059, *1, *5 (D. Minn. 2002) (holding

employer who sold "lending products, such as home improvement loans, home equity loans

and manufactured and mobile home mortgages" was not "retail or service establishment for

purpose of  § 207(i).)[11]

Accordingly, plaintiffs have shown they are entitled to summary judgment on

defendants' fourth affirmative defenses to the extent such defenses are based on the retail

or service establish exemption.

**CONCLUSION**

For the reasons stated above, the Court hereby GRANTS in part and DENIES in

part plaintiffs' motion, as follows:

1.  To the extent plaintiffs seek conditional certification, plaintiffs' motion is

GRANTED.

2.  To the extent plaintiffs seek production of employee information from

defendants, plaintiffs' motion is GRANTED, and defendants are DIRECTED to serve on

plaintiffs, no later than 14 days from the date the Court approves the form of notice, an

updated list, in Excel format, of all persons employed by defendants in the last three years

as loan officers at any of defendants' locations, including, for each, his/her name, address,

---

[11]Defendants' reliance on Gatto v. Mortgage Specialists, 442 F. Supp. 2d 529 (N.D. Ill. 2006), in misplaced, as that case involved an employer that provided "brokerage services," but did not "sell loans."  See id. at 532.

1   telephone number, dates of employment as a loan officer, location(s) of employment,

2   employee number, and last four digits of his/her social security number.

3          3.  The parties are DIRECTED to meet and confer, no later than April 4, 2008,

4   either in person or by telephone, to address defendants' concerns about the form of the

5   notice; no later than April 11, 2008, the parties shall submit to the Court either (a) a jointly-

6   proposed form of notice and a proposed order approving said notice, or (b) separately

7   proposed forms of notice attached to a joint memorandum, not to exceed five pages, that

8   sets forth the parties' respective reasons for the differing language.

9          4.  To the extent plaintiffs seek summary judgment on HMCU's second affirmative

10  defense as directed to the FLSA claims, plaintiffs' motion is GRANTED.

11         5.  To the extent plaintiffs seek summary judgment on HBUS's second affirmative

12  defense as directed to the FLSA claims, plaintiffs' motion is DENIED.

13         6.  To the extent plaintiffs seeks summary judgment on defendants' respective fourth

14  affirmative defenses as based on the executive, professional, administrative, and retail

15  sales exemptions, plaintiffs' motion is GRANTED.

16         **IT IS SO ORDERED.**

17

18  Dated:  March 19, 2008

19                                                         MAXINE M. CHESNEY
                                                           United States District Judge

20

21

22

23

24

25

26

27

28

                                                14