GEORGE J. TICHY, II, Bar No. 041146
MICHELLE R. BARRETT, Bar No. 197280
KIMBERLY L. OWENS, Bar No. 233185
JUSTIN T. CURLEY, Bar No. 233287
LITTLER MENDELSON
A Professional Corporation
650 California Street, 20th Floor
San Francisco, California 94108
Telephone: (415) 433-1940
Facsimile: (415) 399-8490
E-mail: gtichy@littler.com, mbarrett@littler.com,
kowens@littler.com, jcurley@littler.com

Attorneys for Defendants
HSBC MORTGAGE CORPORATION (USA) AND
HSBC BANK USA, N.A.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| Philip Wong, Frederic Chaussy, and Leslie Marie Shearn, individually, on behalf of all others similarly situated, and on behalf of the general public,<br><br>        Plaintiffs,<br><br>    v.<br><br>HSBC Mortgage Corporation (USA); HSBC Bank USA, N.A.; and DOES 1 through 50, inclusive,<br><br>        Defendants. | Case No. C 07 2446 MMC [ECF]<br><br>**DEFENDANTS HSBC MORTGAGE CORPORATION (USA) AND HSBC BANK USA, N.A.'S MOTION FOR RULE 11(C) SANCTIONS**<br><br>Date:        June 6, 2008<br>Time:       9:00 a.m.<br>Courtroom:   7 (19th Floor)<br>Judge:      Hon. Maxine M. Chesney |

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108 2693
415 433 1940

DEFENDANTS' MOTION FOR RULE 11(C)
SANCTIONS

Case No. C 07 2446 MMC [ECF]

TABLE OF CONTENTS

PAGE

I.    INTRODUCTION ........................................................................................... 1

II.   FACTUAL BACKGROUND ......................................................................... 1

      A.    The Parties Agree To Preserve All Forms Of Potential Evidence, Including
            Electronic Evidence ............................................................................. 1

      B.    Plaintiffs' Counsel Assures Defendants That It Is Not Contacting Employees
            During Working Hours .......................................................................... 2

      C.    Plaintiffs Request E-mail Correspondence In Discovery ........................ 3

      D.    Defendants' Initial Search For Responsive Documents Reveals Numerous
            Communications Between Plaintiff Wong And His Attorney, Bryan Schwartz ........ 3

      E.    Schwartz Intentionally Directs Plaintiff Wong To Destroy Potentially
            Relevant Evidence ............................................................................... 3

      F.    Plaintiff Wong Knew His Communications With His Attorneys Were Not
            Confidential .......................................................................................... 4

      G.    NKA Has Condoned And Advanced Unethical And Inappropriate Conduct By
            Plaintiffs Wong And Chaussy ............................................................... 5

III.  ARGUMENT .................................................................................................. 6

      A.    Plaintiff Wong And His Counsel Should Be Ordered To Provide Discovery
            Regarding All Their E-mail Communications Sent Over Defendants'
            Computer Network ................................................................................. 6

            1.    Wong Waived The Attorney-Client Privilege Because He Had No
                  Expectation Of Confidentiality On The Work Computer Network ............... 6

            2.    Wong Has Also Waived The Attorney-Client Privilege Because He
                  Disclosed The E-mails To Third Parties ......................................... 9

            3.    Any Claim Of Attorney Work Product Privilege Over The E-mail
                  Communications Is Also Waived ........................................................ 9

            4.    The Scope Of The Waiver Is Broad .................................................. 10

      B.    Class Counsel's Unethical And Bad Faith Conduct Warrants Disqualification
            Of Schwartz And NKA As Class Counsel ............................................. 11

            1.    The Legal Standard ........................................................................ 11

            2.    Schwartz's And NKA's Conflict Of Interest With Putative Class
                  Members Warrants Their Disqualification As Class Counsel ............... 12

            3.    Schwartz's Directive To Wong To Destroy Evidence Was Unethical
                  And Warrants His And NKA's Disqualification As Class Counsel ........... 14

            4.    NKA's Failure To Comply With Defendants' Discovery Requests
                  Warrants Their Disqualification As Class Counsel ........................... 16

      C.    Plaintiffs Wong And Chaussy Should Be Disqualified As Class
            Representatives ................................................................................... 18

            1.    The Legal Standard ........................................................................ 18

            2.    Wong's Lack of Credibility And Conflict Of Interest With Class
                  Members Warrants His Disqualification As Class Representative ........... 19

            3.    The Court Should Also Dismiss Chaussy As Class Representative ........... 22

1

TABLE OF AUTHORITIES
(CONTINUED)

2
PAGE

3      D.    The Court Should Also Impose Monetary Sanctions And/Or Award Attorneys
            Fees For Bad Faith Conduct By Schwartz, NKA, Wong And Chaussy ........... 24

4   IV.   CONCLUSION ................................................................................................ 25

1

## TABLE OF AUTHORITIES

2

PAGE

3    **CASES**

4    *Aclara Biosciences v. Caliper Techs. Corp.,*
       2000 U.S. Dist. LEXIS 10585 at *12 (N.D. Cal. 2000)................ 11

5    *Amchem Products, Inc. v. Windsor,*
       521 U.S. 591 (1997)................................ 15, 18, 19, 22

6

7    *Broussard v. Meineke Discount Muffler Shop, Inc.,*
       155 F.3d 331 (4th Cir. 1998) ................................. 22

8    *Burkhalter Travel Agency v. MacFarms Int'l, Inc.,*
       141 F.R.D. 144 (N.D. Cal. 1991) .............................. 22

9    *Cargill Inc., v. Budine,*
       2007 U.S. Dist Lexis 48405, at * 22 (E.D. Cal. June 22, 2007) ......... 12

10
11   *Chambers v. NASCO, Inc.,*
       501 U.S. 32 (1991) ...................................... 12, 25

12   *Cohen v. Beneficial Indus. Loan Corp.,*
       337 U.S. 541 (1949) ...................................... 18, 21

13   *Erickson v. Newmar Corp.,*
       87 F.3d 298 (9th Cir. 1996) ................................. 12

14   *Evans v. IAC/Interactive Corp.,*
       244 F.R.D. 568 (C.D. Cal. 2007) .............................. 21

15
16   *Gas-A-Tron of Ariz. v. Union Oil Co.,*
       534 F.2d 1322 (9th Cir. 1976) ............................... 12

17   *Georgine v. Amchem Products, Inc.,*
       83 F.3d 610 (3d Cir. 1996)................................. 22

18   *Goetsch v. Shell Oil Co.,*
       197 F.R.D. 574 (W.D. N.C. 2000) ............................ 19, 22

19   *Hanlon v. Chrysler Corp.,*
       150 F.3d 1011 (9th Cir. 1998) ............................... 18

20
21   *Hoffmann Corp. v. Superior Court,*
       172 Cal. App. 3d 357 (1985) ................................ 24

22   *Hornreich v. Plant Industries, Inc.,*
       535 F.2d 550 (9th Cir. 1976) ................................ 22

23   *Huston v. Imperial Credit Commercial Mortgage Inv. Corp.,*
       179 F. Supp. 2d 1157 (C.D. Cal. 2001) ......................... 12

24   *In re Fine Paper Antitrust Litig.,*
       617 F.2d 22 (3d Cir. 1980)................................. 11

25
26   *In re General Motors Corp. Pick-Up Truck Fuel Tank Litig.,*
       55 F.3d 768 (3d Cir. 1995).................................. 23

27   *In Re NYSE Specialists Securities Litig.,*
       240 F.R.D. 128 (S.D.N.Y. 2007) ............................ 18, 21, 24

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
an Francisco, CA 94108.2693
415 433 1940

DEFENDANTS' MOTION FOR RULE      iii.      Case No. C 07 2446 MMC [ECF
11(C) SANCTIONS

# TABLE OF AUTHORITIES
### (CONTINUED)

PAGE

*In re Qwest Communications Intern. Inc.,*
450 F.3d 1179 (10th Cir. 2006) .................................................................. 7, 9

*In re Seagate Tech., LLC,*
497 F.3d 1360 (Fed. Cir. 2007) ................................................................. 10

*International Fed'n. of Prof. and Technical Engineers, Local 21, AFL-CIO v.*
*Superior Court,*
42 Cal. 4th 319 (2007) ............................................................................ 12, 19

*Kline v. Wolf,*
702 F.2d 400 (2d Cir. 1983) .................................................................. 18, 21, 22

*Larson v. Dumke,*
900 F.2d 1363 (9th Cir. 1990) ............................................................... 22

*Lau v. Standard Oil Co.,*
70 F.R.D. 526 (N.D. Cal. 1975) .............................................................. 22

*Leon v. IDX Systems Corp.,*
464 F.3d 951 (9th Cir. 2006) ............................................................... 15, 25

*London v. Wal-Mart Stores,*
340 F.3d 1246 (11th Cir. 2002) ............................................................ 16, 18

*Long v. Marubeni America Corp.,*
2006 WL 2998671, at *3 (S.D.N.Y. Oct. 19, 2006) .............................. 7

*Martens v. Thomann,*
273 F.3d 159 (2d Cir. 2001) .................................................................. 18

*Maywalt v. Parker & Parsley Petroleum Co.,*
67 F.3d 1072 (2d Cir. 1995) .................................................................. 16

*Molski v. Evergreen Dynasty Corp.,*
500 F.3d 1047 (9th Cir. 2007) ............................................................... 14

*Moses v. Avco Corp.,*
97 F.R.D. 20 (D. Conn. 1982) ................................................................ 23

*Noonan v. Indiana Gaming Co.,*
217 F.R.D. 392 (E.D. Ky. 2003) ............................................................ 23

*Norman v. Arcs Equities Corp.,*
72. F.R.D. 502 (S.D.N.Y. 1976) ............................................................. 18

*Palumbo v. Tele-Comm., Inc.,*
157 F.R.D. 129 (D.D.C. 1994) ............................................................... 12

*Primus Auto Fin. Servs., Inc. v. Batarse,*
115 F.3d 644 (9th Cir. 1997) ................................................................. 25

*Salomon Bros. Treasury Litig. v. Steinhardt Partners, L.P.,*
9 F.3d 230 (2d Cir. 1993) ....................................................................... 10

*Savino v. Computer Credit, Inc.,*
164 F.3d 81 (2d Cir. 1998) ..................................................................... 15

*Scott v. Beth Israel Med. Ctr. Inc.,*
2007 WL 3053351 (N.Y. Sup. Ct. Oct. 17, 2007) ................................. 7, 8, 9

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

1

## TABLE OF AUTHORITIES
(CONTINUED)

2

PAGE

3

*Sony Computer Ent. Am., Inc. v. Great American Insurance Co.,*
    229 F.R.D. 632 (N.D. Cal. 2005)...................................................................... 10, 11

4

*Strong v. Arkansas Blue Cross & Blue Shield, Inc.,*
    87 F.R.D. 496 (E.D. Ark. 1980).......................................................................... 23

5

*Thygeson v. U.S. Bancorp,*
    2004 WL 2066746, at *20 (D. Or. Sept. 15, 2004)............................................. 7

6

*Tien v. Superior Court,*
    139 Cal. App. 4th 528 (2006) ........................................................................ 12, 19

7

*United States v. Nobles,* 422 U.S. 225, 239 (1975) ................................................ 10

8

*Valley Bank of Nevada v. Superior Court,*
    15 Cal. 3d 652 (1975) .......................................................................................... 24

9

*Weil v. Investment/Indicators, Research & Mgmt., Inc.,*
    647 F.2d 18 (9th Cir. 1981) ................................................................................. 10

10

*White v. E-Loan, Inc.,*
    2006 U.S. Dist. LEXIS 62654, at *10 (N.D. Cal. Aug. 18, 2006)...................... 15

11

*Whittum v. Saginaw County,*
    2004 WL 768901 (E.D. Mich. 2004).................................................................. 22

12

13

**STATUTES**

14

Cal. Evid. Code § 917(b)........................................................................................... 8

15

Fed. R. Civ. P. 23(a) ........................................................................................... 11, 18

16

Fed. R. Civ. P. 23(a)(4) ........................................................................................... 18

17

Fed. R. Civ. Pro. 26(b)(5)(A) ................................................................................... 17

Northern Dist. Civ. Local Rule 11-6(a) .................................................................. 14

18

**OTHER AUTHORITIES**

19

8 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE:
    CIVIL 2d § 2024 (2d ed. 1994) ........................................................................... 10

20

Cal. Rule Prof. Conduct 5-220.......................................................................... 14, 18

21

FED. CIV. PRO. BEFORE TRIAL CH. 1-D(f)(5)
    (Rutter Group 2008)............................................................................................ 17

22

*Federal Rules of Civil Procedure Comments*
    *to Rule 23(g) Class Counsel* ............................................................................. 16

23

Model Rule of Prof. Conduct 3.4(a) ........................................................................ 14

24

Model Rule of Prof. Conduct 8.4(c)-(d) .................................................................. 14

25

Model Rules of Professional Conduct 3.4 ............................................................... 18

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108-2693
415.433.1940

**DEFENDANTS' MOTION FOR RULE
11(C) SANCTIONS**

v.

Case No. C 07 2446 MMC [ECF

## NOTICE OF MOTION AND MOTION

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

YOU ARE HEREBY NOTIFIED that on June 6, 2008, at 9:00 a.m., or as soon thereafter as the matter can be heard in Courtroom 7, 19th Floor of the United States District Court, located at 450 Golden Gate Avenue, San Francisco, California, pursuant to 28 U.S.C. § 1927 and Federal Rule of Civil Procedure 11(c), Defendants will move and hereby do move this Court for an order disqualifying Plaintiffs' counsel, disqualifying named Plaintiffs, ordering production of documents and additional discovery, awarding sanctions, and awarding attorneys' fees and costs.

## STATEMENT OF ISSUES TO BE DECIDED

The instant motion presents the Court with the following issues for decision:

1.      Whether class counsel Bryan Schwartz and Nichols Kaster & Anderson ("NKA") should be disqualified as class counsel due to their unethical and egregious conduct, including an intentional directive to Plaintiff Philip Wong to destroy evidence;

2.      Whether named Plaintiffs Philip Wong and Frederic Chaussy should be disqualified as class representatives due to their inappropriate and unethical conduct, including sacrificing the privacy interests of putative class members to advance their own financial interest;

3.      Whether Plaintiff Philip Wong waived the attorney-client privilege with respect to his repeated e-mail communications over Defendants' computer network and forwarding of e-mail communications to unrepresented individuals, and, accordingly, should be ordered to produce additional e-mail communications and further discovery concerning the subjects discussed in the e-mail communications; and

4.      Whether Defendants should be awarded monetary sanctions and/or attorneys' fees and costs due to the unethical and egregious conduct of class counsel and Plaintiffs Wong and Chaussy.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108-2693
415 433 1940

DEFENDANTS' MOTION FOR RULE
11(C) SANCTIONS                                    1.                          Case No. C 07 2446 MMC [ECF]

1     This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points

2   and Authorities, the declarations and evidence filed herewith, all the files and records in this matter,

3   and on such oral argument as may be presented at the hearing on these Motions.

4   Dated: April 29, 2008                          Respectfully submitted,

5                                                   /s/ Michelle R. Barrett
6                                                   MICHELLE R. BARRETT
                                                    GEORGE J. TICHY II
7                                                   KIMBERLY L. OWENS
                                                    JUSTIN T. CURLEY
8                                                   LITTLER MENDELSON
                                                    A Professional Corporation
9                                                   Attorneys for Defendants
                                                    HSBC MORTGAGE CORPORATION (USA)
10                                                  and HSBC BANK USA, N.A.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415 433 1940

DEFENDANTS' MOTION FOR RULE
11(C) SANCTIONS                              2.                    Case No. C 07 2446 MMC [ECF]

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Class counsel and class representatives Wong and Chaussy have engaged in egregious and unethical conduct that warrants their disqualification from the case and an award of sanctions and attorneys fees to Defendants.  Defendants move for disqualification of class counsel based on newly discovered evidence of unethical conduct by Plaintiffs' counsel, Nichols Kaster & Anderson ("NKA").  Class Counsel Schwartz directed Wong to destroy potentially discoverable evidence and has acted in a manner that conflicts with fiduciary responsibilities to putative class members.  Additionally, Defendants move for disqualification of Wong and Chaussy based on newly discovered evidence that they invaded the privacy rights of putative class members by misappropriating confidential information in order to advance their personal interests in this case.  Defendants further seek an order directing Plaintiffs to produce to Defendants all e-mail communications between Wong and NKA, including but not limited to communications with Schwartz, which were sent and/or received over the company computer network, and, additionally, an order directing Wong to provide discovery, including deposition testimony, regarding any follow-up discussions between him and his counsel regarding the subjects discussed in the e-mails.  Moreover, Defendants seek attorneys' fees and costs for all of this bad faith conduct.

## II.     FACTUAL BACKGROUND

### A.     The Parties Agree To Preserve All Forms Of Potential Evidence, Including Electronic Evidence.

On May 7, 2007, Plaintiffs Wong and Chaussy filed a Complaint for Damages with the Court alleging, among other things: (1) a collective action for claims under the Fair Labor Standards Act ("FLSA"); (2) Federal Rule of Civil Procedure 23 class action claims; and (3) an individual retaliation claim on behalf of Plaintiff Chaussy.  Shortly thereafter, on May 29, Plaintiffs' counsel, Bryan Schwartz, sent a letter to Defendants, advising them of their obligation to retain electronically stored information Plaintiffs believed to "be an important and irreplaceable source of evidence in this case." (Declaration of George J. Tichy, II ["Tichy Decl."], Exh. A.)  The next day, May 30, in response to this letter, George J. Tichy, II, Defendants' counsel, sent a similar letter stressing the

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415 433 1940

**DEFENDANTS' MOTION FOR RULE 11(C) SANCTIONS**          1.                    Case No. C 07 2446 MMC [ECF]

1  importance of preserving electronic evidence existing on, "among other things, home computers,

2  laptops, PDAs and other sources of electronic information." (*Id.*, Exh. B.) This letter also expressly

3  stated that "electronic information should not be deleted, modified or corrupted, and, of course, any

4  writings need to be preserved." (*Id.*) Neither Schwartz, nor anyone else from NKA, replied that that

5  they would not abide by that stated, yet obvious, legal requirement.

**B.     Plaintiffs' Counsel Assures Defendants That It Is Not Contacting Employees During Working Hours.**

6

7

8      On June 28, 2007, defense counsel sent a letter to Plaintiffs' counsel requesting that NKA

9  cease conducting solicitations of HMCU's employees during working hours. (*Id.*, Exh. C.) In

10  particular, Mr. Tichy cited an across-the-board "no solicitation" rule that prevents any person from

11  soliciting employees;[1] further, the letter cited the expectation that employees actually work during

12  their working time. (*Id.*) In response, Schwartz told Mr. Tichy that he did not believe that anyone

13  from NKA had contacted HMCU employees during working hours, but if they had, they would not

14  do so anymore. (*Id.*, ¶ 5.)

15      Despite admonitions to Plaintiffs' counsel regarding prohibited solicitation and that

16  employees should be working during work hours, HMCU subsequently learned that Wong was also

17  contacting employees during working time to solicit and involve them in his case. On July 16,

18  Mr. Tichy sent a second letter to NKA reminding them of the limitations placed upon employee

19  solicitation. (*Id.*, Exh. D.) Thereafter, HMCU also learned that NKA was attempting to contact

20  management employees during working time and/or on their mobile telephones, telephone numbers

21  which are published by HMCU for internal business purposes only. To impress the importance of

22  ceasing this activity upon Plaintiffs and NKA, Mr. Tichy sent a third letter on July 20, yet again

23  requesting that the solicitation activities immediately cease. (*Id.*, Exh. E.)

24      In an e-mail response on July 20, Schwartz denied any solicitation was occurring and also

25  stated: "I was quick to agree that neither we nor our clients should, as a general rule, be contacting

26

27  _____

[1] This policy states in pertinent part: "No employee may solicit employees…during work time" and "solicitation and distribution of literature of any type, for any purpose, by non-employees is not permitted at any time…." (Declaration of Jeannette Jennings ["Jennings Decl."], Exh. A.)

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108 2693
415 433 1940

DEFENDANTS' MOTION FOR RULE
11(C) SANCTIONS                    2.                    Case No. C 07 2446 MMC [ECF]

1  potential witnesses or clients about this case during working hours at HSBC facilities." (*Id.*, Exh. F.)

2  On July 25, defense counsel followed up to Schwartz's July 20 e-mail with a fourth letter, indicating

3  HMCU's belief that NKA had procured and was inappropriately using a copy of HMCU's internal

4  mobile telephone directory. (*Id.*, Exh. G.)

5      **C.    Plaintiffs Request E-mail Correspondence In Discovery.**

6      In the course of discovery, Plaintiffs propounded numerous document requests.  In particular,

7  the Plaintiffs' Request for Production No. 15, propounded separately to HMCU and to HBUS,

8  requested that Defendants produce:

9           All email or other electronic messages sent to or from Plaintiffs
10          through Defendant's email or computer systems regarding or in any
            way relating to the hours worked, overtime, and meals and rest periods
11          during the applicable statutory period.

12  (Declaration of Michelle R. Barrett ["Barrett Decl."], Exh. A.)[2]

13      **D.    Defendants' Initial Search For Responsive Documents Reveals Numerous
              Communications Between Plaintiff Wong And His Attorney, Bryan Schwartz.**
14

15      In response to Plaintiffs' discovery requests, Defendants undertook a search of the e-mail

16  system to locate potentially responsive documents.  (Declaration of Ron Lord ["Lord Decl."], ¶ 3.)

17  As part of their initial search, Defendants discovered a number of e-mail communications between

18  Plaintiff Wong and his attorney, Bryan Schwartz. (*Id.* at ¶ 4.) These documents were produced in

19  the course of discovery to Plaintiffs on April 7, 2008.  (Barrett Decl., ¶ 4.)

20      **E.    Schwartz Intentionally Directs Plaintiff Wong To Destroy Potentially Relevant
              Evidence.**
21

22      In the meantime, Defendants continued their search for information and documents

23  responsive to Plaintiffs' discovery requests.  During that continued search, Defendants discovered

24  further e-mail correspondence between Plaintiff Wong and Schwartz dated December 28, 2007.

25  _____

26  [2] Other Requests for Production propounded by Plaintiffs that are relevant to this matter include
    Request for Production No. 11 (documents describing hours worked by Plaintiffs), No. 17 (time-
    stamped documents providing an identifiable time for the beginning and ending of work-related
27  activity by Plaintiffs), and No. 33 (documents that may be offered into evidence at trial or
    depositions or that may be used to refresh witness recollection). (Barrett Decl., Exh. A.) Plaintiffs
28  later propounded the exact same Requests for Production upon HBUS. (*Id.*, ¶ 3.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFENDANTS' MOTION FOR RULE
11(C) SANCTIONS                    3.                    Case No. C 07 2446 MMC [ECF]

1   (Lord Decl., Exh. A, pg. 33-36.)  Contrary to Schwartz's reassurances to defense counsel in July

2   2007 that NKA would not contact their clients or putative class members about the case during

3   working hours, it is clear from the e-mail correspondence that Schwartz was in fact in contact with

4   Plaintiff Wong during Wong's work day.[3]  Moreover, in direct contradiction to his own statements

5   to Defendants regarding the importance of preserving electronic evidence in this case, Schwartz

6   intentionally directed Plaintiff Wong to: "Pls. go through and delete all emails in your In-box and

7   Sent box to/from me."  (*Id.*, Exh. A, pg. 33.)  Finally, Schwartz also requested Wong obtain

8   confidential financial and sales data related to individuals who were not represented by NKA.  (*Id.*)

9   **F.    Plaintiff Wong Knew His Communications With His Attorneys Were Not**
        **Confidential.**

10

11      Included with Defendants' April 7, 2008 production of documents was a letter notifying

12  Plaintiffs' counsel that Defendants considered Plaintiff Wong to have waived the attorney-client

13  privilege, due to Defendants' express policies which notify employees that e-mail communications

14  using work e-mail are not confidential.  (Barrett Decl., Exh. B.)  Indeed, Plaintiff Wong was well

15  aware of Defendants' policies related to e-mail and the fact that e-mail communications are not to be

16  considered confidential.   In fact, at the outset of his employment with HMCU, Plaintiff Wong

17  acknowledged his understanding and agreement to abide by several employment policies, including,

18  but not limited to, the "Electronic Monitoring Policy." (Jennings Decl., Exh. B, MORT000117.)

19      The Electronic Monitoring Policy explicitly states that the policy applies to all full-time and

20  part-time employees and that they have no right of privacy as to information or files "maintained on

21  Company property or transmitted or stored through the Company's telephone, computer, voicemail

22  or e-mail systems."  (*Id.*)   Moreover, the HSBC North American Holdings, Inc. E-mail Policy

23  (hereinafter "E-mail Policy"), which was published and available to Plaintiff Wong at all times on

24  the intranet site, also cautions employees that e-mail is monitored and that such messages are not

25  private.  (Declaration of Henry Yip ["Yip Decl."], Exh. A.)  Additionally, since January 1, 2006,

26

27  [3] Defendants' search for responsive information also yielded various other communications between
    NKA representatives and other employees, which occurred during working hours.  (Lord Decl.,
    Exh. A, pg. 42-51.)  It is clear that NKA, despite its representations to the contrary, did not take have

28  any intention of abiding by their agreement to not contact employees during working hours.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
an Francisco, CA 94108 2693
415 433 1940

DEFENDANTS' MOTION FOR RULE
11(C) SANCTIONS                    4.                    Case No. C 07 2446 MMC [ECF]

1  each day when Plaintiff Wong logged onto the work computer system, he (like other HBUS and

2  HMCU employees) was warned, through a "Notice to Users," that:

3          This is a computer system owned by HSBC BANK plc. All programs
           and data on this system are the property of, or licensed by HSBC
4          BANK plc. . . . Users (authorized or unauthorized) have no explicit or
           implicit expectation of privacy.

5

6          . . . By using this system, the user consents to such interception,
           monitoring, recording, copying, auditing, inspection, and disclosure at
           the discretion of HSBC BANK plc. authorised personnel.

7

8          . . . By continuing to use this system you indicate your awareness of
           and consent to these terms and conditions of use. LOG OFF
           IMMEDIATELY if you do not agree to the conditions stated in this
9          warning.

10  (Lord Decl., Exh. B.)

11      **G.      NKA Has Condoned And Advanced Unethical And Inappropriate Conduct By
                  Plaintiffs Wong And Chaussy.**

12

13          In addition to the Electronic Monitoring Policy and the E-mail Policy, Wong also

14  acknowledged his knowledge of and agreement to abide by Defendants' "Business Principles and

15  Code of Ethics Policy," the "Confidentiality Policy," the "HSBC North America Information

16  Protection Standard (IPS) Information Security Risk Policy," ("IPS Policy") and the "Employee

17  Privacy Policy." (Jennings Decl., Exhs. H, C, D, E, and F, respectively.) Similarly, Chaussy signed

18  off on his knowledge and agreement to these same policies. (*Id.*, Exh. J.) Each of these policies

19  includes affirmative obligations for employees to maintain the confidentiality of certain financial

20  information (including financial information about co-workers and customers), and to not use such

21  information for their own purposes.[4]

22          In the December 28 e-mail communication between Plaintiff Wong and Schwartz, Wong

23  admits to transmitting confidential financial and sales data relating to his and his co-workers' sales

24  production for the purpose of demonstrating that his production was allegedly the same as or

25  comparable to his co-workers. (Lord Decl., Exh. A, pg. 34.) However, Wong's use of this

26  _____

27  [4] Similarly, the "Personal Conduct Policy" obligated Plaintiffs Wong and Chaussy to refrain from
    using company resources and material for personal reasons or their own benefit. Moreover, the
    "Removal and Return of Company Property Policy" required them to return, at the end of their
28  employment, any company property in their possession. (Jennings Decl., Exh. G and I.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFENDANTS' MOTION FOR RULE
11(C) SANCTIONS                    5.                    Case No. C 07 2446 MMC [ECF]

1   confidential and private information is strictly prohibited by each of the aforementioned company

2   policies.   Although requested to produce all documents acquired or received by virtue of his

3   employment with HMCU, Wong failed, as obligated under Federal Rule of Civil Procedure 34, to

4   produce the documents and/or information referenced in the December 28 e-mail. Similarly, despite

5   their ethical and legal obligations, NKA failed to produce this information on behalf of Plaintiff

6   Wong.[5]  Interestingly, Schwartz had earlier received copies of employment policies applicable to

7   Wong and Chaussy, which he had clearly read.[6]  Although Schwartz knew of these policies, he

8   allowed his clients to keep the confidential documents to which they have no right, which is another

9   clear ethical problem.  Schwartz also did not disclose that he had those documents. (*Id.*, ¶ 10, Exh.

10   E.)

11       Similarly, Chaussy violated these policies by providing his attorney with confidential

12   financial data related to co-worker production, as well as confidential financial data related to the

13   identity of customers and the amounts of customer loans.   In fact, Chaussy produced these

14   documents to HMCU in discovery. (*Id.*, ¶¶ 10-12, Exhs. F and G.)

15   **III.    ARGUMENT**

16        **A.    Plaintiff Wong And His Counsel Should Be Ordered To Provide Discovery Regarding All Their E-mail Communications Sent Over Defendants' Computer**

17               **Network.**

18              **1.    Wong Waived The Attorney-Client Privilege Because He Had No Expectation Of Confidentiality On The Work Computer Network.**

19

20       Wong waived the attorney-client privilege with respect to all e-mail communications with

21   NKA (including, but not limited to, all e-mail communications with Schwartz) over Defendants'

22   computer network because Wong was on notice that he had no expectation of confidentiality on

23   HMCU's computer network.  The attorney-client privilege protects communications between a client

24   and his or her attorney for the purpose of obtaining or providing legal advice.   However,

25   _____

26   [5] The letter from NKA that accompanied Plaintiff Wong's document production makes plain that this information was not produced to Defendants. (Barrett Decl., Exh. E.)

27   [6] Plaintiffs' counsel received copies of Defendants' policies on September 10, 2007. (Barrett Decl., ¶ 6.) Additionally, it is clear one of named Plaintiffs gave Schwartz copies of policies prior to this

28   time, as Schwartz referred to these policies during David Gates' deposition in Chicago on September 11, 2007. (*Id.*, ¶ 7, Exh. C.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
an Francisco, CA 94108 2693
415 433 1940

DEFENDANTS' MOTION FOR RULE
11(C) SANCTIONS           6.                Case No. C 07 2446 MMC [ECF]

1  confidentiality of the underlying communication is critical to an assertion of the privilege. The

2  privilege applies only to communications that are made in confidence and under circumstances that

3  ensure that the communications will remain in confidence. *See, e.g., In re Qwest Communications*

4  *Intern. Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006) (holding that "the confidentiality of

5  communications covered by the privilege must be jealously guarded by the holder...lest it be

6  waived" because "[t]he Court will grant no greater protection to those who assert the privilege than

7  their own precautions warrant."). State and federal courts have routinely held that a plaintiff's

8  knowledge of the lack of confidentiality of his communications to counsel prevents the attorney-

9  client privilege from attaching to those communications. *See Scott v. Beth Israel Med. Ctr. Inc.*,

10  2007 WL 3053351 (N.Y. Sup. Ct. Oct. 17, 2007) (holding employee's e-mails to his counsel were

11  not privileged because they were sent over the employer's computer network with no expectation of

12  privacy); *Long v. Marubeni America Corp.*, 2006 WL 2998671, at *3 (S.D.N.Y. Oct. 19, 2006)

13  (same); *Kaufman v. SunGuard Inv. System*, 2006 WL 1307882, at *4 (D. N.J. May 10, 2006) (same).

14      In *Scott*, the court found the e-mails sent between plaintiff and his counsel were not protected

15  based upon the employer's clearly stated e-mail policy regarding its employees' lack of privacy in

16  their use of the employer's computer network. *Scott*, 2007 WL 3053351, at *4-*5; *see also*

17  *Thygeson v. U.S. Bancorp*, 2004 WL 2066746, at *20 (D. Or. Sept. 15, 2004) (holding employee had

18  no reasonable expectation of privacy in computer files and e-mail where employee handbook

19  explicitly warned of employer's right to monitor files and e-mail). In determining whether the

20  communications were made in confidence or not, the *Scott* court considered four requirements:

21  (1) does the corporation maintain a policy banning personal or other objectionable use; (2) does the

22  company monitor the use of the employee's computer or e-mail; (3) do third parties have a right of

23  access to the computer or e-mails; and (4) did the corporation notify the employee, or was the

24  employee aware, of the use and monitoring policies? *Scott*, 2007 WL 3053351, at *4.

25      Here, each of the four *Scott* requirements are easily satisfied by Defendants' policies. (Yip

26  Decl., Exh. A; Jennings Decl., Exh. B.) The first requirement is met because the E-mail Policy and

27  Electronic Monitoring Policy provide that personal use must be limited and may not interfere with

28  the employee's work, and that all inappropriate or objectionable use is "never permitted." (*Id.*) The

1  second requirement is also satisfied because these policies state that Defendants have the right to

2  monitor e-mail and that any use of the "e-mail systems will not remain private." As in *Scott*, the

3  third requirement is not relevant here because the California Evidence Code provides that access by

4  third parties, such as "persons involved in the delivery, facilitation or storage of electronic

5  communication" will not destroy the privilege. Cal. Evid. Code § 917(b). In any case, Defendants'

6  E-mail Policy and Electronic Monitoring Policy provide that Defendants reserve the right to disclose

7  e-mail messages to third parties without notice. (Yip Decl., Exh. A, pg. MORT002147; Jennings

8  Decl., Exh. B.) Lastly, the fourth requirement is satisfied because Wong had actual knowledge of

9  the E-mail Policy and Electronic Monitoring Policy, as he signed documents in November 2005

10  acknowledging that he read and understood Defendants' Electronic Monitoring Policy and

11  Defendants' additional employment policies. (Jennings Decl., Exhs. B (pg. MORT000117), C (pg.

12  MORT000120) and H.) Accordingly, Wong cannot credibly argue that he had any expectation of

13  confidentiality in his communications with his counsel over his employer's computer network, as the

14  practical effect of Defendants' policies is to have HMCU "looking over [Wong's] shoulder each

15  time he sen[t] an e-mail." *Scott*, 2007 WL 3053351 at *4-*5.

16      In addition to Defendants' E-mail Policy and Electronic Monitoring Policy, each time an

17  employee logs into the work computer system, a Notice appears on the computer screen, stating that

18  the user has "no explicit or implicit expectation of privacy" while using the computer system. (Lord

19  Decl., Exh. B.) The Notice further provides:

20          Any or all uses of this system and all files and data on this system may
            be intercepted, monitored, recorded, copied, audited, inspected and
21          disclosed to relevant authorities.

22          By using this system, the user consents to such interception,
            monitoring, recording, copying, auditing, inspection, and disclosure at
23          the discretion of HSBC BANK plc. authorised personnel.

24          . . . By continuing to use this system you indicate your awareness of
            and consent to these terms and conditions of use. LOG OFF
25          IMMEDIATELY if you do not agree to the conditions stated in this
            warning.
26

27  (*Id.*) Therefore, in addition to the E-mail Policy and Electronic Monitoring Policy he acknowledged,

28  Wong received notice *each time* he logged into the work e-mail system that improper use was

.ITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
an Francisco, CA  94108 2693
415 433 1940

DEFENDANTS' MOTION FOR RULE
11(C) SANCTIONS                          8.          Case No. C 07 2446 MMC [ECF]

1  prohibited, that his employer may monitor and read his e-mail messages. Each time he logged in

2  and continued computer use, Wong consented to that monitoring and reading. As such, the Notice

3  also satisfies the four requirements the *Scott* court considered.

4      Further buttressing Defendants' argument that Wong had no expectation of confidentiality

5  and waived the attorney-client privilege, Wong made no attempt to protect the e-mail

6  communications from disclosure through passwords or encryption, nor did he even label the e-mails

7  as an attorney-client privileged communication. Also, it is clear that Wong's counsel, Schwartz,

8  knew all along that Wong had no expectation of privacy or confidentiality and should not be using

9  the work e-mail system, as he eventually (and improperly) directed Wong to delete the e-mail

10  communications sent over the Company's computer network and to switch to Wong's personal

11  Gmail account. (*Id.*, Exh. A, pg. 33.)

12      Because these e-mail communications were made with full knowledge that they could be

13  read by Defendants, that they were Defendants' property, and that there could be no expectation of

14  confidentiality or privacy regarding the communications, the attorney-client privilege does not apply

15  to Wong's e-mail communications sent and received over Defendants' computer network.

16          **2.**    **Wong Has Also Waived The Attorney-Client Privilege Because He**
                **Disclosed The E-mails To Third Parties.**

17

18      Wong has also waived the attorney-client privilege with respect to his e-mail

19  communications with NKA because he divulged his communications to third parties. *See, e.g., In re*

20  *Qwest Communications Intern. Inc.*, 450 F.3d at 1185 (holding that "[t]he attorney-client privilege is

21  lost if the client discloses the substance of an otherwise privileged communication to a third party.").

22  Here, the evidence demonstrates that Wong disclosed his e-mail communications with Schwartz to at

23  least four other HMCU employees, none of whom were represented by NKA at the time. (*Id.*, Exh.

24  A, pg. 1.) Accordingly, Wong has waived the attorney-client privilege with respect to these e-mail

25  communications, and Defendants should be permitted to obtain discovery about them.

26          **3.**    **Any Claim Of Attorney Work Product Privilege Over The E-mail**
                **Communications Is Also Waived.**

27

28      To the extent Wong or NKA attempt to assert that the e-mail communications are protected

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFENDANTS' MOTION FOR RULE
11(C) SANCTIONS                    9.                    Case No. C 07 2446 MMC [ECF]

1   by the attorney work product privilege, such an assertion fails for similar reasons.  While the work

2   product privilege, unlike the attorney-client privilege, does not depend upon an expectation that the

3   communication will remain confidential, *see* 8 WRIGHT & MILLER, FEDERAL PRACTICE &

4   PROCEDURE: CIVIL 2d § 2024 (2d ed. 1994), a waiver will occur when the information is voluntarily

5   disclosed to an adversary or anyone who has no interest in maintaining confidentiality over the work

6   product.  *See United States v. Nobles*, 422 U.S. 225, 239 (1975); *Salomon Bros. Treasury Litig. v.*

7   *Steinhardt Partners, L.P.*, 9 F.3d 230, 235 (2d Cir. 1993); *see also Laguna Beach Co. Water Dist. v.*

8   *Superior Court*, 124 Cal. App. 4th 1453, 1459 (2004) (holding waiver will be found where attorney

9   work product is disclosed to someone who has no interest in maintaining  confidentiality).

10      Here, Wong and his counsel Schwartz voluntarily communicated via e-mail over the

11   Company's computer network, and, for the reasons described in III.A.1. above, neither of them had

12   any expectation of privacy or confidentiality in their communications over the network.  Indeed, the

13   evidence makes plain that Schwartz knew all along that they had no expectation of privacy and

14   should not be using the company e-mail system, as Schwartz later directed Wong to delete their e-

15   mail communications sent over the work computer network and to switch to Wong's personal Gmail

16   account.  (*Id.*, Exh. A, pg. 33.)

17              **4.      The Scope Of The Waiver Is Broad.**

18      The scope of Wong's and his counsel's waiver of the attorney-client and/or work product

19   privileges is broad, as it includes not just their e-mail communications over the work network but

20   any follow-up discussions regarding the subjects discussed in the e-mails.  *See Sony Computer Ent.*

21   *Am., Inc. v. Great American Insurance Co.*, 229 F.R.D. 632, 635 (N.D. Cal. 2005) (holding that the

22   scope of the privilege waiver includes the contents of the e-mail and any follow-up discussions

23   between counsel and the client regarding the subjects discussed in the e-mail); *see also In re Seagate*

24   *Tech., LLC*, 497 F.3d 1360, 1372 (Fed. Cir. 2007) (holding that "[t]he widely applied standard for

25   determining the scope of a waiver…is that the waiver applies to all other communications relating to

26   the same subject matter.") (internal citations omitted); *Weil v. Investment/Indicators, Research &*

27   *Mgmt., Inc.*, 647 F.2d 18, 23 (9th Cir. 1981) (holding that "it has been widely held that voluntary

28   disclosure of the content of a privileged attorney communication constitutes waiver of the privilege

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108 2693
415 433 1940

DEFENDANTS' MOTION FOR RULE
11(C) SANCTIONS                    10.                    Case No. C 07 2446 MMC [ECF]

1    as to all other such communications on the same subject."); *Aclara Biosciences v. Caliper Techs.*

2    *Corp.*, 2000 U.S. Dist. LEXIS 10585 at *12 (N.D. Cal. 2000) (same).

3         Here, Wong and his counsel voluntarily disclosed numerous e-mail communications over the

4    Defendants' computer network, and these communications were made with full knowledge that they

5    could be monitored and read by Defendants, that they were Defendants' property, and that there

6    could be no expectation of confidentiality or privacy regarding the communications. Indeed,

7    Wong's counsel Schwartz intentionally directed Wong to delete their e-mail communications and to

8    switch to Wong's personal Gmail account. (*Id.*, Exh. A, pg. 33.) Therefore, Wong should be

9    ordered to produce to Defendants all e-mail communications between him and his counsel at NKA,

10   including but not limited to Schwartz, which were sent and/or received over the company computer

11   network. Additionally, Wong should be required to provide discovery, including deposition

12   testimony, regarding any follow-up discussions between him and his counsel regarding the subjects

13   discussed in the e-mails. *See, e.g., Sony Computer Ent.*, 229 F.R.D. at 635. The subjects discussed

14   in the e-mail communications concern, among other things, Wong's hours worked and meal periods,

15   and, indeed, go to the heart of the Plaintiffs' lawsuit allegations.

16        **B.     Class Counsel's Unethical And Bad Faith Conduct Warrants Disqualification Of**
            **Schwartz And NKA As Class Counsel.**
17

18             **1.     The Legal Standard**

19        In order to serve as class counsel, Schwartz and NKA must meet the prerequisites of Rule

20   23(a)(4) to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).[7] To

21   meet the adequate representation requirement, the class attorneys "must be qualified, experienced,

22   and generally able to conduct the litigation." *In re Fine Paper Antitrust Litig.*, 617 F.2d 22, 27 (3d

23   Cir. 1980). As trustee for absent parties in the litigation, the Court has a constant duty to inquire into

24   the professional competency and behavior of class counsel. *Id.*

25        Class counsel's qualifications are closely scrutinized by courts to assure that the interests of

26

27   [7] This case is brought both as a collective action under the FLSA and as class actions governed by
     Federal Rule of Civil Procedure 23. Thus, NKA is bound by the requirements set forth in Federal
28   Rule of Civil Procedure 23(a)(4).

ITTLER MENDELSON
PROFESSIONAL CORPORATION
650 California Street
20th Floor
1 Francisco, CA 94108-2693
415.433.1940
DEFENDANTS' MOTION FOR RULE
11(C) SANCTIONS                          11.                    Case No. C 07 2446 MMC [ECF]

1    unnamed plaintiffs are adequately represented. *Huston v. Imperial Credit Commercial Mortgage*

2    *Inv. Corp.*, 179 F. Supp. 2d 1157, 1167 (C.D. Cal. 2001) (citing *Palumbo v. Tele-Comm., Inc.*, 157

3    F.R.D. 129, 132-33 (D.D.C. 1994)).  Further, the Court is vested with the inherent authority to

4    regulate the conduct of litigants and lawyers before it and take any action to cure any wrong

5    committed by the parties or attorneys who appear before it. *Chambers v. NASCO, Inc.*, 501 U.S. 32,

6    44 (1991); *Erickson v. Newmar Corp.*, 87 F.3d 298, 300 (9th Cir. 1996).  The Court's inherent

7    authority includes the power to disqualify an attorney for not only acting improperly but for failing

8    to avoid the appearance of impropriety. *Gas-A-Tron of Ariz. v. Union Oil Co.*, 534 F.2d 1322 (9th

9    Cir. 1976); *see also Cargill Inc., v. Budine*, 2007 U.S. Dist Lexis 48405, at * 22 (E.D. Cal. June 22,

10    2007).  Disqualification is more likely in the class action context because class counsel must meet a

11    heightened standard in order to represent absent class members. *Huston*, 179 F. Supp. 2d at 1167.

       **2.**      **Schwartz's And NKA's Conflict Of Interest With Putative Class**
12                  **Members Warrants Their Disqualification As Class Counsel.**

13

14        As class counsel, Schwartz and NKA violated the privacy rights of putative class members

15    by requesting, obtaining and producing documents that contain confidential information about class

16    members who either were *not* yet clients or who had not consented to have their private information

17    released.  Without obtaining the consent of the employees at issue, Schwartz sought, requested and

18    obtained confidential financial information from Wong about putative class members' loan

19    production and earnings.  In a December 28 e-mail, Schwartz inquired about the performance of

20    other loan officers as compared to Wong. (Lord Decl., Exh. A, pg. 33-35.)  In response, Wong

21    replied that he had provided Schwartz a fax with funding numbers and specifically disclosed the

22    year-to-date numbers of his co-workers. (*Id.* at pg. 34.)  This confidential data could be used to

23    determine the employees' compensation, which is private information that employees have a right to

24    protect. *See International Fed'n. of Prof. and Technical Engineers, Local 21, AFL-CIO v. Superior*

25    *Court*, 42 Cal. 4th 319, 330 (2007) ("[T]he right of privacy concerns one's feelings and one's own

26    peace of mind and certainly one's own personal financial affairs are an essential element of such

27    peace of mind."); *Tien v. Superior Court*, 139 Cal. App. 4th 528, 539 (2006) ("The right to privacy is

28    an 'inalienable right' secured by article I, section 1 of the California Constitution.  It protects against

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415 433 1940

DEFENDANTS' MOTION FOR RULE
11(C) SANCTIONS           12.           Case No. C 07 2446 MMC [ECF]

1   the unwarranted, compelled disclosure of various private and sensitive information regarding one's

2   personal life, including his or her financial affairs....").

3        By requesting this data from Wong, Schwartz and NKA knowingly encouraged Wong's

4   violation of several company policies.  Schwartz and NKA were aware that Wong's transmission of

5   this information violated the company's confidentiality policies which require employees to preserve

6   the confidentiality of employee information, customer information and other proprietary information

7   maintained by Defendants. *See* III.G., *supra.*

8        Additionally, Schwartz and NKA improperly sought and obtained confidential financial

9   information about putative class members from Chaussy.  In response to document requests,

10  Schwartz and NKA produced confidential information about putative class members on behalf of

11  Plaintiffs Wong and Chaussy.  Specifically, on behalf of Chaussy, Schwartz and NKA produced an

12  e-mail and attachment entitled "Status Report by LO" which reveals the year-to-date production and

13  funding numbers for Northern California Loan Officers.  (Barrett Decl., Exh. F.)  Particularly

14  troubling is the inclusion of confidential financial information not only about putative class members

15  including the name of loan officers, but also customer information including the amount of the loan ,

16  the rate at which it was obtained and the approval status of the loan.  (*Id.*)  On behalf of Chaussy,

17  Schwartz also produced a document referred to as "Weekly Production by Offices" which also

18  disclosed confidential financial information about putative class members, including production

19  numbers and performance. (*Id.*, Exh. G.)  Again, Schwartz and NKA were aware of the company's

20  policies regarding the preservation of confidential employee and proprietary information and

21  nevertheless condoned their clients' acquisition and disclosure of the data for their own personal use.

22       By condoning their clients' willful violation of company policies and compromising the

23  privacy interests of putative class members, Schwartz and NKA have created a conflict interest

24  between themselves and the class.  It is clear that Schwartz and NKA are willing to disregard the

25  competing privacy interests of putative class members in order to advance their case against

26  Defendants.  Therefore, Schwartz and NKA should be disqualified as class counsel.

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFENDANTS' MOTION FOR RULE
11(C) SANCTIONS                    13.                    Case No. C 07 2446 MMC [ECF]

1
2

### 3.    Schwartz's Directive To Wong To Destroy Evidence Was Unethical And Warrants His And NKA's Disqualification As Class Counsel.

3        Schwartz acted contrary to his ethical responsibilities by directing his client to intentionally

4   destroy potentially relevant e-mails. (Lord Decl., Exh. A, pg. 33.)  For example, California Rules of

5   Professional Conduct prohibit members from suppressing evidence that the member or the member's

6   client has a legal obligation to reveal or produce.  Cal. Rule Prof. Conduct 5-220.  Moreover, the

7   American Bar Association considers it professional misconduct for a lawyer to "engage in conduct

8   involving dishonesty, fraud, deceit or misrepresentation" or to "engage in conduct that is prejudicial

9   to the administration of justice."  Model Rule of Prof. Conduct 8.4(c)-(d).  The Model Rules also

10  prohibit any attorney from "unlawfully obstruct[ing] another party's access to evidence or

11  unlawfully alter[ing], destroy[ing] or conceal[ing] a document or other material having potential

12  evidentiary value."  Model Rule of Prof. Conduct 3.4(a).  Attorneys are also prohibited from

13  assisting *another person* to engage in such an act.  *Id.* (emphasis added).

14        If the Court has cause to believe that an attorney engaged in unprofessional conduct, the

15  Court may conduct contempt proceedings or impose appropriate sanctions.  Northern Dist. Civ.

16  Local Rule 11-6(a).  A motion to disqualify counsel is the proper method for a litigant to bring the

17  issues of breach of ethical duties to the attention of the Court.  *Molski v. Evergreen Dynasty Corp.*,

18  500 F.3d 1047, 1063 (9th Cir. 2007); *In re American Airlines*, 972 F.2d 605, 611 (5th Cir. 1992).

19        Here, as evidenced by Schwartz's May 29 letter, he was aware of the parties' obligations to

20  preserve electronically stored information including e-mails.  His letter states in pertinent part:

21              [t]he laws and rules prohibiting destruction of evidence apply to
22              electronically stored information in the same manner that they apply to
                other evidence.  As you know, due to its format, electronic information
                is easily deleted, modified, or corrupted.  Accordingly, we ask that
23              Defendants take every reasonable step to preserve this information
                until the final resolution of this matter.
24

25  (Tichy Decl., Exh. A.)  Plus, it is clear that Schwartz was further on notice of this obligation given

26  defense counsel's May 30 letter, which stated that, "[e]lectronic information should not be deleted,

27  modified or corrupted, and, of course, any writings need to be preserved."  (*Id.*, Exh. B.)

28

'TTLER MENDELSON
Professional Corporation
650 California Street
20th Floor
1 Francisco, CA 94108.2693
415 433 1940

DEFENDANTS' MOTION FOR RULE
11(C) SANCTIONS                              14.                        Case No. C 07 2446 MMC [ECF]

1    Despite the parties' mutual agreement to preserve electronic information, during discovery,

2    Defendants found an e-mail communication between Schwartz and Wong in which Schwartz directs

3    Wong to delete all e-mails between Wong and himself.[8]  (Lord Decl., Exh. A, pg. 33.)  Thus, in

4    contravention of the parties' agreement and responsibility to preserve electronic information,

5    Schwartz knowingly directed Wong to spoliate documents that were potentially relevant to the

6    litigation of this case.[9]  Schwartz's directive to Wong only begs the question of what other ethically

7    compromising measures he has taken throughout litigation or is willing to take.  This directive not

8    only breaches Schwartz's ethical responsibilities as an officer of the court, but also compromises his

9    integrity and trustworthiness as class counsel.  *See, e.g., Savino v. Computer Credit, Inc.,* 164 F.3d

10   81, 87 (2d Cir. 1998) (In judging the adequacy of representation, courts should also consider the

11   honesty and trustworthiness of the named plaintiff.);  *see also White v. E-Loan, Inc.,* 2006 U.S. Dist.

12   LEXIS 62654, at *10 (N.D. Cal. Aug. 18, 2006) ("Some courts have also examined the personal

13   integrity of class representative.");  *see also Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 626 n.

14   20 (1997) ("The adequacy heading also factors in competency and conflicts of class counsel.").

15   In fact, Schwartz's unscrupulous conduct is not limited to the directive to Wong to spoliate e-

16   mails.  In an e-mail to defense counsel on July 20, Schwartz wrote: "I was quick to agree that neither

17   we nor our clients should, as a general rule, be contacting potential witnesses or clients about this

18   case during working hours at HSBC facilities." (Tichy Decl., Exh. F.)  Defendants search for

19   responsive documents reveal, however, that Schwartz and other members of NKA have in fact been

20   continuously contacting employees during work hours and mounting a case or case(s) against

21   Defendants using company resources and time.  (Lord Decl., Exh. A.)  Schwartz's prior empty

22   assurances that he and his firm would refrain from contacting employees during work hours

23   demonstrates his inability to act ethically and in good faith throughout the litigation process.

---

[8] Plaintiff may erroneously claim that communications over company e-mail between himself and Schwartz are protected by the attorney-client privilege.  However, as argued in III.A.1. above, Wong unequivocally waived any privilege by using the company's computer network to communicate with his attorney.

[9] A party's destruction of evidence qualifies as willful spoliation if the party has "some notice that the documents were *potentially* relevant to the litigation before they were destroyed." *Leon v. IDX Systems Corp.,* 464 F.3d 951, 959 (9th Cir. 2006).

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA 94108.2693
415 433 1940

DEFENDANTS' MOTION FOR RULE
11(C) SANCTIONS                    15.

1    But for Defendants' efforts to comply with its discovery obligations, it would not have

2    become aware of the extent of Schwartz's bad faith and unethical conduct.  Schwartz and NKA's

3    willful disregard of the ethical cannons coupled with bad faith assurances to opposing counsel,

4    compromise the legal rights of absent class members.[10]  *Maywalt v. Parker & Parsley Petroleum*

5    *Co.*, 67 F.3d 1072, 1077 (2d Cir. 1995) ("Both class representatives and class counsel have

6    responsibilities to absent class members."); *cf. London v. Wal-Mart Stores*, 340 F.3d 1246, 1253

7    (11th Cir. 2002) ("Because all members of the class are bound by the res judicata effect of the

8    judgment, a principal factor in determining the appropriateness of class certification is the

9    forthrightness and vigor with which the representative party can be expected to assert and defend the

10    interests of the members of the class.")  To allow Schwartz and NKA to continue representing the

11    class will only perpetuate the unethical taint injected into this litigation by their behavior.  Thus, as

12    an appropriate remedy to restore the integrity of the litigation process, Defendants request

13    disqualification of Schwartz and NKA as class counsel.

### 4.    NKA's Failure To Comply With Defendants' Discovery Requests Warrants Their Disqualification As Class Counsel.

16    NKA's deliberate omission of responsive documents to Defendants' discovery requests

17    warrants disqualification, as well.  As officers of the court and class counsel, NKA has an ethical and

18    legal responsibility to respond to discovery requests in good faith.  Defendants' Request for

19    Production of Documents No. 11 asks for:

20    > All electronic mail sent by Plaintiff, including, but without limitation,
> electronic mail sent from any personal electronic mail accounts,
21    > between the hours of 6:00 a.m. to 8:00 p.m., Monday through Friday,
> at any time during Plaintiff's employment with HMCU.

23    (Barrett Decl., Exh. D.)[11]  In response, on February 29, both Plaintiffs Wong and Chaussy agreed to

---

[10] *Federal Rules of Civil Procedure Comments to Rule 23(g) Class Counsel* state: "Until the addition
of Rule 23(g), courts had routinely employed Rule 23(a)(4) (governing evaluation of whether class
representatives would adequately protect class interests) to examine the adequacy of class counsel.
The standards developed by that case law have been incorporated almost in their entirety into new
Rule 23(g), giving courts broad discretion to inquire and evaluate the appropriateness of permitting
any particular lawyers' representation of the class."

[11] The same requests were propounded on Plaintiff Chaussy.  (Barrett Decl., ¶ 9.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA. 94108.2693
415 433 1940

DEFENDANTS' MOTION FOR RULE
11(C) SANCTIONS                16.                Case No. C 07 2446 MMC [ECF]

produce "all e-mails in [their] possession relating to [their] employment with Defendant." (*Id.*, Exh. E.) Yet, in the course of searching for documents responsive to Plaintiffs' discovery requests, Defendants discovered numerous e-mails between Wong and Schwartz that are directly responsive to this discovery request, but that were *not* produced in discovery.[12] (Lord Decl., Exh. A; Barrett Decl. Exh. E.) Specifically, in e-mails between the two on December 28, Wong admits that he faxed Schwartz year-to-date funding numbers related to Wong and his co-workers. (Lord Decl., Exh. A, pg. 34.) This information is absent from Wong's responses to Defendants' discovery requests. (Barrett Decl., Exh. E.)

These e-mails also reveal that NKA failed to produce information responsive to Defendants' discovery requests. Defendants' Request for Production of Documents No. 2 asks for:

> All documents and things acquired or received by Plaintiff by virtue of Plaintiff's employment with HMCU including, without limitation, all books, records, files, or data downloaded by Plaintiff from any desktop, personal, portable, or mainframe computer and any abstracts, copies, or summaries thereof.

(*Id.,* Exh. D.) Again, on February 29, both Plaintiffs Wong and Chaussy, through the representative class counsel, agreed to produce "all documents in [their] possession relating to [their] employment with Defendant[s]." (*Id.*, Exh. E.) Nevertheless, NKA failed to produce responsive e-mails in their possession which reveal transmission of proprietary information that is only available to HMCU employees such as confidential financial data and job performance of HMCU employees; moreover, they failed to produce a privilege log that might have identified this information. (*Id.*, ¶ 10, Exh. E.)

NKA's failure to produce responsive documents or at the very least provide a privilege log of any alleged privileged or confidential documents, violates their responsibility to the court and undermines their credibility as class counsel.[13] As class counsel, NKA has a fiduciary responsibility

---

[12] In addition, Defendants discovered other emails between NKA and other employees that demonstrate that NKA has utterly failed to abide by Schwartz's pledge to not communicate with employees at work and during working time. (Lord Decl., Exh. A, pg. 42-51.)

[13] Even if Plaintiff successfully asserts that these communications are subject to the attorney-client privilege, NKA has a duty to describe those documents in a privilege log. In federal court, a party claiming privilege in response to a discovery request must describe what is privileged in a manner sufficient to enable other parties to assess the applicability of the privilege. Fed. R. Civ. Pro. 26(b)(5)(A). "Usually, this requires the claimant to prepare and submit a '*privilege log*' in order to preserve the privileges." FED. CIV. PRO. BEFORE TRIAL Ch. 1-D(f)(5) (Rutter Group 2008).

ITTLER MENDELSON
Professional Corporation
650 California Street
20th Floor
n Francisco, CA 94108-2693
415 433 1940

DEFENDANTS' MOTION FOR RULE 11(C) SANCTIONS                    17.                    Case No. C 07 2446 MMC [ECF]

1  to "comply wholeheartedly and fully with the discovery requirements of modern federal practice."

2  *Cf. Norman v. Arcs Equities Corp.*, 72. F.R.D. 502, 506 (S.D.N.Y. 1976).  NKA's failure to comply

3  with these discovery requests also violates class counsel's ethical responsibility to respond to

4  Defendants' requests in good faith.  *See* Model Rules of Professional Conduct 3.4 ("A lawyer shall

5  not in pretrial procedure...fail to make reasonable diligent effort to comply with a legally proper

6  discovery request by an opposing party."); Cal. Rule Prof. Conduct 5-220. ("A member shall not

7  suppress any evidence that the member or member's client has a legal obligation to reveal or to

8  produce.").  Therefore, NKA should be disqualified as class counsel for failure to fulfill their legal

9  and ethical obligations in this litigation.

10  **C.    Plaintiffs Wong And Chaussy Should Be Disqualified As Class Representatives.**

11  **1.    The Legal Standard**

12  Rule 23(a) of the Federal Rules of Civil Procedure sets forth four prerequisites for

13  maintenance of a class action. Fed. R. Civ. P. 23(a).  The fourth prerequisite concerns the adequacy

14  of the class representative: "One or more members of a class may sue...as representative parties on

15  behalf of all only if...(4) the representative parties will fairly and adequately protect the interest of

16  the class." Fed. R. Civ. P. 23(a)(4); *London*, 340 F.3d at 1253 ("Among the prerequisites to the

17  maintenance of a class action is the requirement of Rule 23(a)(4) that the class representatives 'will

18  fairly and adequately protect the interest of the class.'").  "[A]s class representatives, the moving

19  plaintiffs have fiduciary duties towards the other members of the class." *Martens v. Thomann*, 273

20  F.3d 159, 173 n.10 (2d Cir. 2001).  Consistent with the fiduciary approach to class representation, a

21  named plaintiff must have the same interests as the class.  *Amchem Products*, 521 U.S. at 625-26;

22  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (adequacy of representation requires

23  proof that class representatives do not have any conflicts of interest with other class members).

24  In judging the adequacy of representation, courts also consider the honesty and

25  trustworthiness of the named plaintiff.  *Kline v. Wolf*, 702 F.2d 400, 402-03 (2d Cir. 1983) (citing

26  *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 549-50 (1949)); *see also In Re NYSE*

27  *Specialists Securities Litig.*, 240 F.R.D. 128, 144 (S.D.N.Y. 2007) (in determining the adequacy of a

28  class representative the Court "allowed for the consideration of characteristics such as honesty,

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108-2693
415 433 1940

DEFENDANTS' MOTION FOR RULE
11(C) SANCTIONS                                      18.                          Case No. C 07 2446 MMC [ECF]

trustworthiness, and credibility.")

**2.    Wong's Lack of Credibility And Conflict Of Interest With Class Members Warrants His Disqualification As Class Representative.**

**a.    Wong's Misuse And Disclosure Of Confidential Information Creates A Conflict Of Interest With Putative Class Members.**

Wong's willingness to compromise the co-worker and putative class member privacy interests by disclosing confidential information about their job performance and compensation demonstrates that he will sacrifice the interests of the putative class members to further his own interests. As such, it renders him an inadequate class representative. The adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Products*, 521 U.S. at 625.

Here, it is abundantly clear that Wong's narrow self-interests create a conflict between him and the class members he seeks to represent. For example, in the December 28 e-mails between Wong and Schwartz, Wong admitted to faxing confidential information about co-workers' sales production. (Lord Decl., Exh. A, pg. 34.) First, transmission of this information is in clear violation of several company policies. (Jennings Decl., Exhs. C-G.) Second, transmission of this information violates the privacy rights of putative class members by disclosing information about the employees' job performance and compensation. *See International Fed'n. of Prof. and Technical Engineers*, 42 Cal. 4th at 330; *Tien*, 139 Cal. App. 4th at 539.

Wong's failure to maintain putative class members' right to privacy and willingness to commit violations of Defendants' policies on confidentiality and ethical conduct demonstrate he is willing to compromise the interests of putative class members to advance his own interest in this case. One can only speculate as what other personal information Wong is willing to disclose without the consent of putative class member. *Goetsch v. Shell Oil Co.*, 197 F.R.D. 574, 579 (W.D. N.C. 2000) ("Where the class representative's zeal may be tempered by his own financial prospects, he is not an adequate representative.") The Court should therefore disqualify him as class representative.

ITTLER MENDELSON
PROFESSIONAL CORPORATION
650 California Street
20th Floor
i Francisco, CA 94108.2693
415 433 1940

DEFENDANTS' MOTION FOR RULE
11(C) SANCTIONS                    19.                    Case No. C 07 2446 MMC [ECF]

b.    **Wong's Violation Of Several Company Policies Renders Him Untrustworthy And Unfit To Serve As Class Representative.**

In the course of disclosing confidential information outside of HMCU and HBUS, Wong not only invaded the privacy rights of putative class members but also violated several company policies. Defendants take every possible measure to inform employees of their responsibility to preserve the confidentiality and privacy of customers and employees, and the employees are advised of these policies in hard copy and/or the intranet. (Jennings Decl., ¶¶ 5-9.)

Wong's transmission of confidential financial and sales data relating to his co-workers' sales production was a willful violation of these policies which undermines his integrity and trustworthiness as class representative. For example, it is clear Wong violated Defendants' "Business Principles and Code of Ethics Policy":

> We expect you to treat information entrusted to us by our customers and employees as you perform your duties for the Corporation as confidential and privileged. This includes information relating to deposit and loan balances...employee/salary information....You must not disclose confidential information to anyone either inside or outside the Corporation who does not have a legitimate need to know the information. Your obligation to maintain the confidential information continues even after you leave the corporation.

(*Id.*, Exh. C.)

Wong also violated Defendants' "Confidentiality Policy," which prohibits disclosure of confidential or proprietary information, which includes customer and employee information and financial and sales data, whether intentionally or through carelessness. (*Id.*, Exh. D.) Similarly, the "IPS Policy" holds employees responsible for the safeguarding of confidential information, such as customer information and employee information (including compensation and performance). (*Id.*, Exh. E.) Also, Defendants' "Employee Privacy Policy" states that "[a]nyone who intentionally seeks out employee-related information to which he/she has access but does not have legitimate need to know will be subject to disciplinary action up to and including termination." (*Id.*, Exh. F.)

Wong further violated the company's solicitation policy by using the company's e-mail system to solicit other employees to participate in the class action. Defendants' "Workplace Solicitation and Distribution Policy" states in pertinent part that employees "can't solicit or

ITTLER MENDELSON
PROFESSIONAL CORPORATION
650 California Street
20th Floor
n Francisco, CA 94108 2693
415.433.1940

1    distribute non-business materials during [their] work time." (*Id.*, Exh. A.) Defendants' search of its

2    e-mail system reveals, however, that Wong forwarded e-mails exchanged between himself and

3    Schwartz regarding the class action and asked the recipients of his e-mail whether they are interested

4    in joining a meeting with Schwartz. (Lord Decl. Exh. A, pg. 1-3.)

5         Wong's willful violation of these policies and cavalier disregard of his ethical and moral

6    responsibilities as an HMCU employee proves he is unfit to adequately represent the class and fulfill

7    his fiduciary responsibilities as class representative. *Kline*, 702 F.2d at 402-03 (to judge the

8    adequacy of representation, courts may consider the honesty and trustworthiness of the named

9    plaintiff) (citing *Cohen*, 337 U.S. at 549-50); *see also In Re NYSE Specialists Securities Litig.*, 240

10   F.R.D. at 144 (in determining the adequacy of a class representative the Court "allowed for the

11   consideration of characteristics such as honesty, trustworthiness, and credibility.").

12                    **c.    Wong's Lack Of Credibility Compromises The Interests Of Class**
                              **Members.**
13

14        Wong's e-mail communications with Schwartz also reveal contradictions in his deposition

15   testimony. In *Evans v. IAC/Interactive Corp.*, the court questioned the fitness of named plaintiff to

16   serve as class representative because of conflicting statements between Plaintiffs' declarations and

17   deposition testimony. The court reasoned "[t]he discrepancies between the declarations and the

18   depositions are certainly troubling and…raise significant questions about the competence, if not the

19   integrity, of the Plaintiffs and their counsel." 244 F.R.D. 568, 578 (C.D. Cal. 2007). "These

20   discrepancies might well cause a fact finder to focus on Plaintiffs' credibility to the determent of

21   absent class members." *Id.*

22        Similarly, in this case, statements made by Wong to Schwartz about the number of overtime

23   hours worked contradict Wong's deposition testimony. On April 1, 2007, prior to filing the lawsuit,

24   Wong indicates, in response to Schwartz's question regarding "overtime hours" worked in a typical

25   week, that he regularly works a certain number of hours over forty in a week. (Lord Decl., Exh. A,

26   pg. ___.) Later, however, after filing the lawsuit, Wong contradicts the information revealed in his

27   e-mail with Schwartz and *nearly doubles* his alleged overtime worked per week in his deposition

28   testimony. (Barrett Decl., Exh. H.) The revelation of Wong's earlier statements casts doubt on his

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108 2693
415 433 1940

DEFENDANTS' MOTION FOR RULE
11(C) SANCTIONS ·                            21.                    Case No. C 07 2446 MMC [ECF]

1   credibility and motive in serving as class representative.  Because Wong is vulnerable to attacks on

2   his credibility, the rights of absent members are compromised.  *Kline,* 702 F.2d at 401-02.

3   Therefore, Defendants respectfully request Wong's disqualification as class representative.

**3.      The Court Should Also Dismiss Chaussy As Class Representative.**

**a.      Chaussy's Retaliation Claim Creates A Direct Conflict Of Interest.**

6   Chaussy has a direct conflict of interest with the putative class because he is seeking to

7   recover monetary damages for a retaliation claim brought solely on his own behalf.  "The premise of

8   a class action is that litigation by representative parties adjudicates the rights of all class members, so

9   basic due process requires that named plaintiffs possess undivided loyalties to absent class

10   members."  *Broussard v. Meineke Discount Muffler Shop, Inc.,* 155 F.3d 331, 338 (4th Cir. 1998).

11   The class representative is a fiduciary and has a duty to act solely in the interests of the class.

12   *Georgine v. Amchem Products, Inc.,* 83 F.3d 610, 631 (3d Cir. 1996).  The Court "must be certain"

13   that the representative will discharge his fiduciary duties to the class.  *Burkhalter Travel Agency v.*

14   *MacFarms Int'l, Inc.,* 141 F.R.D. 144, 153-54 (N.D. Cal. 1991).

15   "Where the class representative's zeal may be tempered by his own financial prospects, he is

16   not an adequate representative."  *Goetsch,* 197 F.R.D. at 579.  Consequently, courts often disqualify

17   named plaintiffs who simultaneously pursue individual claims.  In *Hornreich v. Plant Industries,*

18   *Inc.,* 535 F.2d 550, 551 (9th Cir. 1976), the Ninth Circuit affirmed dismissal of the plaintiff's

19   derivative suit because he was an inadequate representative of similarly situated shareholders; the

20   plaintiff's derivative suit was an attempt to leverage individual claims he had against the same

21   defendants.  *See also Larson v. Dumke,* 900 F.2d 1363, 1367 (9th Cir. 1990) ("significant risk that

22   those plaintiffs would not adequately represent those absent class members who have not joined in

23   the parallel state action" due to potential conflicts in settlement discussions, litigation strategy, and

24   incentives; *Whittum v. Saginaw County,* 2004 WL 768901 (E.D. Mich. 2004) (named plaintiffs with

25   separate claims against defendant had "potential conflict of interest" rendering them inadequate

26   representatives).  *Cf. Lau v. Standard Oil Co.,* 70 F.R.D. 526, 528 (N.D. Cal. 1975) (fiduciary

27   conflict where class counsel had separate personal claims against the defendant).

28

ITTLER MENDELSON
PROFESSIONAL CORPORATION
650 California Street
20th Floor
Francisco, CA  94108-2693
415 433 1940

**DEFENDANTS' MOTION FOR RULE 11(C) SANCTIONS**                    22.                    **Case No. C 07 2446 MMC [ECF]**

1    Even if a lead plaintiff does not overtly attempt to "sell out" the class to increase his own

2    personal recovery, the prosecution of individual retaliation claims in conjunction with other class

3    claims are sufficient to render him an inadequate representative:

> Plaintiffs' complaints of the retaliatory selection of other females or blacks, allegedly chosen in preference to them because of their having filed charges, is clearly not a class issue. Indeed, preoccupation with peculiar retaliatory wrongs allegedly done to one may well make such person an inadequate representative of the class.

7    *Strong v. Arkansas Blue Cross & Blue Shield, Inc.*, 87 F.R.D. 496, 510-511 (E.D. Ark. 1980)

8    (citations omitted). *See also Moses v. Avco Corp.*, 97 F.R.D. 20, 24 (D. Conn. 1982); *Noonan v.*

9    *Indiana Gaming Co.*, 217 F.R.D. 392, 397-98 (E.D. Ky. 2003) (the possibility of different causes of

10   action or theories, among other factors, refuted the named plaintiff's assertion that she would fairly

11   represent all of the class members).

12   Here, Chaussy improperly attempts to tie an individual and unrelated claim for retaliatory

13   discharge with the class claims. Contrary to representing the interests of the class, Chaussy alleges

14   that he was treated *differently* that the putative class members. Chaussy claims that his performance

15   was comparable to his co-workers', but only he received a written warning regarding his

16   performance. (First Amended Compl., ¶ 37.) To pursue this individual claim, Chaussy will not only

17   be focusing on his individual interests in addition to or above the interests of the class, but he will

18   also be using the class claims to leverage a larger settlement of his individual retaliation claims—

19   monetary relief which only he will recover, perhaps at the expense of absent class members:

> [C]lass actions create the opportunity for legalized blackmail: a greedy and unscrupulous plaintiff might use the threat of a large class action, which can be costly to the defendant, to extract a settlement far in excess of the individual claims' actual worth.

23   *In re General Motors Corp. Pick-Up Truck Fuel Tank Litig.*, 55 F.3d 768, 784-85 (3d Cir. 1995). At

24   best, the concurrent prosecution of Chaussy's individual retaliation claim presents the danger that he

25   will be distracted from his fiduciary class duties. The actual or potential conflict of interest resulting

26   from Chaussy pursuing his individual claims renders him an inappropriate class representative.

27

28

ITTLER MENDELSON
Professional Corporation
650 California Street
20th Floor
n Francisco, CA 94108 2693
415 433 1940

DEFENDANTS' MOTION FOR RULE 11(C) SANCTIONS                23.                Case No. C 07 2446 MMC [ECF]

1

      **b.**     **Chaussy's Improper Taking And Disclosure Of Confidential Information Of Third Parties Warrants His Disqualification As Class Representative.**

2

3             In addition to the conflict of interest created by his individual retaliation claim, Chaussy has

4  also proven himself an inadequate class representative through his decision to take confidential and

5  proprietary information from HMCU regarding customers and give that information to his counsel.

6  Chaussy's own discovery responses demonstrate that he gave private financial information regarding

7  customers to his counsel.  The documents that Plaintiff Chaussy took from HMCU and gave to his

8  counsel contain financial information regarding customers, including customers' names and

9  financial information related to mortgages.  There is no question that such information is protected

10  by the customer's right to privacy.  *See, e.g., Hoffmann Corp. v. Superior Court*, 172 Cal. App. 3d

11  357, 363 (1985) (holding that the defendant's customer list was a trade secret not subject to

12  discovery); *Valley Bank of Nevada v. Superior Court*, 15 Cal. 3d 652, 657 (1975) (holding that bank

13  customers' financial information is protected by the right to privacy under the California

14  Constitution).  Identifying, contact and financial information is at the heart of the right to privacy.

15  Despite his familiarity with Defendants' strict policies prohibiting disclosure of customer

16  information (Jennings Decl., Exhs. C, D, and E), Chaussy took confidential and proprietary customer

17  information and, in violation of the customers' privacy rights, provided the information to his

18  counsel.  This type of dishonest conduct is exactly the type of conduct that renders an individual an

19  inadequate class representative.  *In Re NYSE Specialists Securities Litig.*, 240 F.R.D. at 144 (in

20  determining the adequacy of a class representative the Court "allowed for the consideration of

21  characteristics such as honesty, trustworthiness, and credibility.")  As a result, the Court should

22  dismiss Chaussy as a class representative because he has engaged in reprehensible and dishonest

23  conduct in litigating this action.

24      **D.**     **The Court Should Also Impose Monetary Sanctions And/Or Award Attorneys Fees For Bad Faith Conduct By Schwartz, NKA, Wong And Chaussy.**

25

26             As described above, class counsel and class representatives Wong and Chaussy's unethical

27  and bad faith conduct warrant sanctions.  Federal courts have the inherent power to manage their

28  own proceedings and to control the conduct of those who appear before them.  The Court's inherent

ITTLER MENDELSON
PROFESSIONAL CORPORATION
650 California Street
20th Floor
1 Francisco, CA 94108 2693
415 433 1940

**DEFENDANTS' MOTION FOR RULE 11(C) SANCTIONS**          24.          Case No. C 07 2446 MMC [ECF]

1   authority includes the power to impose sanctions against *both* attorneys *and* parties for "bad faith"

2   conduct. *Chambers,* 501 U.S. at 33. "In invoking the inherent power to punish conduct which

3   abuses the judicial process, a court must exercise discretion in fashioning an appropriate sanction,

4   which may range from dismissal of a lawsuit to an assessment of attorney's fees." *Id.*

5        Under its inherent power, a district court may also award sanctions in the form of attorneys'

6   fees against a party or counsel who acts in bad faith. *Leon,* 464 F.3d at 961 (citing *Primus Auto Fin.*

7   *Servs., Inc. v. Batarse,* 115 F.3d 644, 648 (9th Cir. 1997)). Before awarding such sanctions the court

8   must make an express finding that the sanctioned party's behavior "constituted or was tantamount to

9   bad faith." Here, class counsel acted in bad faith by breaching their ethical responsibilities to this

10  court and to the putative class. Similarly, class representatives Wong and Chaussy acted in bad faith

11  by acting contrary to the interests of putative class members and thus demonstrating their inadequacy

12  as class representatives. Therefore, Defendants respectfully request that the Court impose monetary

13  sanctions and/or award attorneys' fees against both class counsel and Wong and Chaussy.

14  **IV.    CONCLUSION**

15       Defendants respectfully request that the Court issue an order disqualifying Plaintiffs'

16  counsel; an order disqualifying Wong and Chaussy as class representatives; and an order directing

17  Plaintiffs to produce to Defendants all e-mail communications between Wong and his counsel at

18  NKA, which were sent and/or received over the company computer network; and, additionally, an

19  order directing Wong to provide discovery, including deposition testimony, related to any follow-up

20  discussions between him and his counsel regarding the subjects discussed in the e-mails. Moreover,

21  Defendants request sanctions be imposed upon Plaintiffs and their counsel and that Defendants be

22  awarded attorneys' fees related to the preparation of this motion.

23  Dated: April 29, 2008                    Respectfully submitted,

24                                           ___/s/ Michelle R. Barrett___
                                             MICHELLE R. BARRETT
25                                           LITTLER MENDELSON
                                             A Professional Corporation
26                                           Attorneys for Defendants
                                             HSBC MORTGAGE CORPORATION (USA)
27                                           and HSBC BANK USA, N.A.

    Firmwide:85027773.2 023404.1043

28

ITLER MENDELSON
PROFESSIONAL CORPORATION
650 California Street
20th Floor
Francisco, CA  94108 2693
415 433 1940

**DEFENDANTS' MOTION FOR RULE
11(C) SANCTIONS**                    25.                    Case No. C 07 2446 MMC [ECF]