GEORGE J. TICHY, II, Bar No. 041146
MICHAEL F. MCCABE, Bar No. 111151
MICHELLE R. BARRETT, Bar No. 197280
KIMBERLY L. OWENS, Bar No. 233185
JUSTIN T. CURLEY, Bar No. 233287
LITTLER MENDELSON
A Professional Corporation
650 California Street, 20th Floor
San Francisco, California 94108
Telephone:    (415) 433-1940
Facsimile:    (415) 399-8490
E-mail: gtichy@littler.com,
mmccabe@littler.com, mbarrett@littler.com,
kowens@littler.com, jcurley@littler.com

Attorneys for Defendants
HSBC MORTGAGE CORPORATION (USA)
AND HSBC BANK USA, N.A.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| Philip Wong, Frederic Chaussy, and Leslie Marie Shearn, individually, on behalf of all others similarly situated, and on behalf of the general public,<br><br>Plaintiffs,<br><br>v.<br><br>HSBC Mortgage Corporation (USA); HSBC Bank USA, N.A.; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.  C 07 2446 MMC [ECF]<br><br>**DECLARATION OF MICHELLE R. BARRETT IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND FIRST AMENDED COMPLAINT**<br><br>Date:           August 22, 2008<br>Time:          9:00 a.m.<br>Courtroom:   7 (19th Floor)<br>Judge:         Hon. Maxine M. Chesney<br><br>Complaint filed:   May 7, 2007<br>FAC filed:          June 29, 2007<br>Trial Date:         Not Yet Set |

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA 94108.2693
415 433 1940

**DECLARATION OF MICHELLE R. BARRETT**                    **Case No. C 07 2446 MMC [ECF]**

I, Michelle R. Barrett, hereby declare and state:

1.     I am a shareholder with Littler Mendelson, which is counsel of record for Defendants HSBC Mortgage Corporation (USA) ("HMCU") and HSBC Bank USA, N.A. ("HBUS") in this action. I have personal knowledge of the facts set forth below. If called as a witness, I could and would testify to the following.

2.     Plaintiffs' counsel, through Bryan Schwartz, initially broached the subject of amending their First Amended Complaint in an e-mail message addressed to me on January 9, 2008. Attached hereto as Exhibit A is a true and correct copy of this e-mail correspondence.

3.     The issue of Plaintiffs amending their First Amended Complaint was next discussed in a February 8, 2008 letter sent by Plaintiffs' counsel Paul Lukas to me. Attached hereto as Exhibit B is a true and correct copy of a letter I received from Plaintiffs' counsel Paul Lukas on February 8, 2008.

4.     In response to this letter, I sent a letter dated February 11, 2008 to Mr. Lukas' attention. Attached hereto as Exhibit C is a true and correct copy of my February 11, 2008 letter sent to Mr. Lukas.

5.     Plaintiffs' desire to amend their First Amended Complaint was not raised again until March 5, 2008. At that time, Mr. Scwhartz sent me an e-mail message related to Plaintiffs' proposed amendments. Attached hereto as Exhibit D is a true and correct copy of the March 5, 2008 e-mail I received from Mr. Schwartz.

6.     On March 11, 2008, I summarized the parties' discussions regarding Plaintiffs' request to amend their First Amended Complaint in a letter addressed to Mr. Schwartz and to Mr. Lukas. In this letter, I stated that Defendants would not agree to any of the amendments proposed in our earlier discussions. Attached hereto as Exhibit E is a true and correct copy of a letter I sent to Mr. Schwartz and Mr. Lukas on March 11, 2008.

7.     During the meet and confer process, Plaintiffs' counsel verbally notified me that Plaintiffs intended to replace named Plaintiff Leslie Marie Shearn with another named plaintiff. On that basis, until very recently Plaintiffs have either failed or refused to respond to written discovery requests concerning Ms. Shearn. Moreover, Plaintiffs have failed, until very recently, to

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415 433 1940

1   offer any dates for Ms. Shearn's deposition, despite the fact that Defendants have been asking to

2   depose Ms. Shearn for seven months. The reason I have said "either failed or refused to respond to

3   written discovery" is because Plaintiffs' counsel never provided me with any reasons as to why they

4   did not timely respond to the written discovery propounded. Further, each time I brought up the

5   subject of this failure to respond, Plaintiffs' counsel would never address the issue.

6       8.      Although I have requested multiple times that named Plaintiff Wong, who

7   lives in the Bay Area, be produced to allow Defendants to finish his deposition, Plaintiffs' counsel

8   Mr. Schwartz has refused to re-produce Plaintiff Wong claiming that Plaintiff Wong need only to

9   have "made himself available" for a seven hour period in one day and that if the deposition was not

10  finished when Plaintiff Wong made himself available that Plaintiff Wong did not have to appear to

11  complete his deposition. Defendants have not exceeded the seven hour time limit imposed by

12  Federal Rule of Civil Procedure 30(d)(1).

13      9.      Attached hereto as Exhibit F is a true and correct copy of the relevant and

14  cited pages of the deposition transcript of Jeanette Jennings. Ms. Jennings' deposition was taken on

15  December 19, 2007.

16      10.     Attached hereto as Exhibit G is a true and correct copy of the relevant and

17  cited pages of the deposition transcript of named Plaintiff Philip Wong. Mr. Wong's deposition was

18  taken on November 29, 2007.

19      11.     Attached hereto as Exhibit H is a true and correct copy of the relevant pages

20  of the deposition transcript of proposed named plaintiff Karen Flanagan. Ms. Flanagan's deposition

21  was taken on July 10, 2008.

22      I declare under penalty of perjury under the laws of the State of California and the

23  United States of America that the foregoing declaration is true and correct to the best of my personal

24  knowledge. Executed this 31st day of July, 2008, in San Francisco, California.

25

26

27  _____
    MICHELLE R. BARRETT

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

# EXHIBIT A

## Barrett, Michelle R.

| | |
|---|---|
| **From:** | Schwartz, Bryan [schwartz@nka.com] |
| **Sent:** | Wednesday, January 09, 2008 1:52 PM |
| **To:** | Barrett, Michelle R. |
| **Cc:** | Honkanen, Melissa |
| **Subject:** | amending complaint |

Michelle,

I am conferring with you, via this email, regarding our intention to amend the complaint in several respects. If you agree, then we will amend unopposed, and if you disagree, then we will file our motion soon. As I'm sure you know, the standard for a Court accepting a motion to amend at this stage of litigation is extremely permissive, but if you want to go through the exercise of briefing it, let me know.

For now, we plan to:
1) Add a couple/few additional named plaintiffs
2) Add minimum wage claims, which a number of our clients have alleged in their declarations (which you already have); and
3) Add Pennsylvania state claims.

Let me know what you think.

Bryan

the **Voice** for employees

**Nichols Kaster & Anderson**, LLP

| **Bryan Schwartz** | One Embarcadero Center |
|---|---|
| Attorney | Suite 720 |
| | San Francisco, California 94111 |
| 415.277.7236 direct | schwartz@nka.com |
| 415.277.7238 fax | nka.com |
| 877.777.0622 main | overtimecases.com |

The information contained in this transmission is attorney privileged and/or confidential information intended for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.

# EXHIBIT B

**Barrett, Michelle R.**

| | |
|---|---|
| **From:** | Honkanen, Melissa [mhonkanen@nka.com] |
| **Sent:** | Friday, February 08, 2008 2:05 PM |
| **To:** | Tichy, George J.; Barrett, Michelle R. |
| **Cc:** | Lukas, Paul |
| **Subject:** | Discovery |
| **Attachments:** | LTR re Discovery Meeting.pdf; Attachment.pdf |

Counsel: Please see the attached.

the **Voice** for employees®

**Nichols Kaster & Anderson,** LLP

**Melissa Honkanen**        One Embarcadero Center
Legal Assistant            Suite 720
                           San Francisco, CA 94111

415.277.7241 direct        honkanen@nka.com
415.277.7238 fax           nka.com
877.777.0622 main          overtimecases.com

The information contained in this transmission is attorney privileged and/or confidential information intended for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.

the **Voice** for employees

**Nichols Kaster & Anderson** LLP

February 8, 2008

**VIA EMAIL AND U.S.MAIL**
Michelle Barrett
Littler Mendelson, P.C.
650 California Street
20th Floor
San Francisco, CA 94108-2693

    *Re: Wong et al v. HSBC et al*
       *Our File # 10609–01*
       *Court File #07-2446*

Dear Michelle:

Thank you for meeting with me yesterday to discuss the outstanding discovery issues.  It is my intention to accurately describe the status of each of these issues as a result of our conference. If I fail to do so in any respect, please let me know.

1.  **Mr. Lampka's Deposition**.  You gave me the name of the attorney (Preston Zarlock at Phillips Laytle) who has been retained to represent HSBC Finance and Mr. Lampka at the deposition.  You also warned me, however, that Mr. Zarlock is in, or is about to go into, trial and may be difficult to reach. I suggest that HSBC Finance agree to have you or another Littler lawyer represent them at the deposition as you did last month in the depositions we took in Chicago.  In the meantime, I will try and contact Mr. Preston Zarlock to schedule the deposition.

2.  **Motion to Amend the Complaint**.  I informed you that we intended to bring a motion to amend to: a) add HSBC Finance as a defendant; b) add Pennsylvania state law claims, c) add a Pennsylvania representative plaintiff; d) and add a representative Plaintiff for New York and New Jersey.  You advised me that Defendant was not inclined to stipulate to any amendment to the Complaint, but said you would discuss it with your client.  Please let me know as soon as possible whether Defendant is willing to stipulate to any or all of these amendments to the Complaint.

3.  **Plaintiff Chaussy's Deposition**.  I informed you that Mr. Chaussy is generally available on Thursdays and Fridays, and that we were available almost any Thursday or Friday in March or April with the exception of the last week of each month.  You agreed to get back to me with some proposed dates.

4.    **Plaintiff Shearn's Deposition.** As I informed you, Ms. Shearn has been difficult for us to communicate with these days. I will let you know as soon as possible when we are able to contact her and provide some proposed dates.

5.    **Plaintiff Wong's Deposition.** I informed you that it was our position that Mr. Wong made himself available for a full day of deposition, and to the extent that the deposition concluded short of the seven (7) hour limit excluding breaks, it was Defendants' choice to end it. I believe this position is consistent with what we told Defendant when it decided to conclude the deposition. However, since neither of us were present at the deposition, we agree that you would talk to Mr. Tichey, and I would speak to Bryan, and we would reconvene before we declared an impasse on the issue.

6.    **Discovery Responses.** Rather than march through each requests individually, we discuss Defendant's responses more broadly. Overall, I was generally satisfied that Defendants are continuing its efforts to locate documents and respond to our requests as you discussed with Bryan previously. However, we did discuss a few specific requests that need to be mentioned here.

    **a.**    **Payroll Documents.** You informed me that you are experiencing some difficulty obtaining this information from HSBC Finance, but you are working on finding the documents. We understand, of course, the difficulty of obtaining such information, but as I informed you, this information is critical not just for our damage analysis, but will likely impact liability issues as well. Please advise as to how soon Defendants expect to produce this information.

    **b.**    **Manager Lists.** You informed me that you are still investigating whether Defendants are able to produce the manager lists in excel format beyond a list of those who are currently in place in such positions. I informed you that based on past experience, I believed Defendants could provide that information from its PeopleSoft program. Please let me know what you find out and when we can expect to obtain this important information.

    **c.**    **FLSA Training Materials.** You informed me that you are having difficulty opening the on-line FLSA training materials and will produce them as soon as you are able to convert them into a transferable format.

7.    **Plaintiffs' Second Set of Request for Production.** I informed you that we have prepared a second set of requests for production, and I will serve that set under separate cover. As we discussed, I went through these requests and eliminated those that could be considered covered by one of our previous requests. I have attached a spreadsheet to this letter identifying the specific things we are seeking that we consider included in the previous requests. If you disagree regarding any of them, I will formally serve them.

Thank you again for meeting with me, and I remain available to resolve these or any other issues with you.

Sincerely,

Paul J. Lukas

# EXHIBIT C

**Barrett, Michelle R.**

| | |
|---|---|
| **From:** | Barrett, Michelle R. |
| **Sent:** | Monday, February 11, 2008 5:21 PM |
| **To:** | Lukas, Paul |
| **Subject:** | Wong et al. v. HMCU, HBUS: Response to February 8 Letter |
| **Attachments:** | Doc3.pdf |

Paul,

   Attached please find my letter, which clarifies and/or responds to issues discussed in our February 7 telephone conversation.

Michelle


Michelle R. Barrett
Littler Mendelson, P.C.
650 California Street, 20th Floor
San Francisco, California 94108
415.433.1940 general
415.677.4089 direct telephone
415.743.6618 direct facsimile
mbarrett@littler.com
Assistant: Rosie T. Yee, ext. 5016364

# LITTLER MENDELSON®
### A PROFESSIONAL CORPORATION

February 11, 2008

Michelle R. Barrett
Direct Fax: 415.743.6618

**VIA E-MAIL/PDF**

Paul J. Lukas, Esq.
Nichols Kaster & Anderson, LLP
4600 IDS Center
80 South 8th Street
Minneapolis, MN 55402

Re:   **Philip Wong, et al. v. HSBC Mortgage Corp., et al.**
      **USDC Action No. C 07-2446 MMC**
      - *Response to February 8, 2008 Letter re Discovery Issues and*
        *Plaintiffs' Request to Amend First Amended Complaint*

Dear Paul:

Thank you for your letter dated February 8, 2008, which summarizes topics covered in our February 7 telephone call. By this letter, I will clarify information listed in your letter, which I do not believe is completely accurate.

**Robert Lampka's Deposition**
As discussed, Preston Zarlock of Phillips Lytle has been retained to represent Mr. Lampka in his deposition. I wish to clarify that Mr. Zarlock's firm is "Phillips Lytle," rather than "Phillips Laytle." Additionally, I am not certain as to whether I stated that Mr. Zarlock will represent HSBC Finance Corporation at this deposition or not. If I did make this statement, I misspoke, because I am only aware that Mr. Zarlock has been retained to represent Mr. Lampka. It is my understanding that Mr. Zarlock has sent you a letter regarding this matter and that you and he will work together in handling subpoena issues and in scheduling a deposition date. I ask that you and Mr. Preston keep me apprised of the date agreed upon so that I can inform my clients.

**Motion to Amend the First Amended Complaint**
When we spoke on February 7, I had only been notified of Plaintiffs' desire to amend the First Amended Complaint as to amendments "b" and "c," which are listed in your February 8 letter. Until we spoke on February 7, I had not been told about the desire to add HSBC Finance Corporation as a defendant in this case. As discussed, because I was aware of proposed amendments "b" and "c," I was able to discuss those with my clients. These are not amendments to which my clients will agree.

ALABAMA

ARIZONA

ARKANSAS

CALIFORNIA

COLORADO

CONNECTICUT

DISTRICT OF
COLUMBIA

FLORIDA

GEORGIA

ILLINOIS

INDIANA

MASSACHUSETTS

MINNESOTA

MISSOURI

NEVADA

NEW JERSEY

NEW YORK

NORTH
CAROLINA

OHIO

PENNSYLVANIA

RHODE ISLAND

SOUTH
CAROLINA

TEXAS

VIRGINIA

WASHINGTON

February 11, 2008
VIA E-MAIL/PDF
Page 2

Thus, you will need to file a motion to request such amendments. With regard to adding HSBC Finance Corporation as a defendant, you indicated that part of the reason for adding this entity to the action would be to avoid the "problems" Plaintiffs had encountered in taking depositions and getting documents. I asked that I be given the opportunity to discuss this matter with my clients before providing you with an answer as to their willingness to agree to this amendment. I have left word with my clients on this subject; however, my contact is away from the office through February 13. As such, we have not yet been able to thoroughly discuss this matter. Once I receive instruction from my client on this issue, I will contact you.

**Plaintiff Chaussy's Deposition**
Thank you for providing dates on which Mr. Chaussy will be available for deposition. I am working to determine a date within those parameters that will work for us. I will contact you soon.

**Plaintiff Shearn's Deposition**
While you indicated that you had not been able to get into contact with Ms. Shearn, we did not discuss you actually providing my office with dates for her deposition. Instead, you indicated that it was likely that Ms. Shearn would no longer remain a named Plaintiff in this case. While I certainly not hold you to this statement, I wish to be clear that my clients are not amenable to waiting months to take Ms. Shearn's deposition. We will wait to see if Ms. Shearn is available to provide responses to Defendants' document requests, as well as documents responsive to the requests. If she fails to do so in a timely manner, Defendants will take the necessary actions to request that Ms. Shearn be dismissed from the case and/or declared an improper representative.

**Plaintiff Wong's Deposition**
I have spoken with Mr. Tichy, who took Plaintiff's deposition on November 29, 2007. Although Plaintiff may have been present in our offices that day for a deposition, he was not "available" for the full seven hours. In fact, Plaintiff and Mr. Schwartz requested and took a number of breaks that day. It was not until 5:26 p.m. that the deposition adjourned for the day and Mr. Tichy expressly reserved the right to complete Plaintiff Wong's deposition. Given the fact that Mr. Tichy waited to adjourn the deposition after close of business and not early in the day, we believe it is appropriate and reasonable for Plaintiff Wong to appear and to complete his deposition. If you are unwilling to produce Plaintiff Wong again for his deposition, please let me know so that Defendants can bring the appropriate motion before the Court. If you are willing to produce Plaintiff Wong again, please provide me with proposed dates for the deposition.

February 11, 2008
VIA E-MAIL/PDF
Page 3

**Discovery Responses**
With regard to the specific documents referenced in your February 8 letter, I wish to clarify my statement related to payroll records. I did not specifically state that HSBC Finance Corporation possesses the payroll documents in question. Rather, I stated that I had had some difficulty determining which entity had such documents. Both you and I hypothesized that the entity might in fact be HSBC Finance Corporation; however, I did not affirmatively state that this was the entity possessing such records. I will continue to work on obtaining these records using the parameters upon which Mr. Schwartz and I previously agreed.

**Plaintiffs' Second Set of Request for Production**
By virtue of the fact that your requests and your letter references a "Second Set" of document requests, I presume that these new requests are directed at HSBC Mortgage Corporation (USA), as HSBC Bank USA, N.A. has never been served with any document requests. Please note, however, that this second set of requests does not show the identity of the party requested to respond, as is customary in discovery practice. HSBC Mortgage Corporation (USA) will thus be the only party responding to these requests unless another set of requests specifying a different party is served.

Finally, with regard to the spreadsheet of documents attached to your letter, please be advised that we have already produced some FLSA training materials or documents used by HSBC Mortgage Corporation (USA) prior to the implementation of the web-based training. If any other documents exist, we will certainly supplement our production.

Very truly yours,

/s/ Michelle R. Barrett

MICHELLE R. BARRETT

# EXHIBIT D

## Barrett, Michelle R.

**From:** Schwartz, Bryan [schwartz@nka.com]
**Sent:** Wednesday, March 05, 2008 11:10 AM
**To:** Barrett, Michelle R.
**Cc:** Honkanen, Melissa; Lukas, Paul
**Subject:** RE: amending complaint

Michelle,

I note that in my absence, Paul and you corresponded to some extent regarding our proposed motion to amend. One issue which appears to have been omitted from your discussion related to our minimum wage claims (see below). An additional issue which has arisen is our desire to add HSBC Finance Corporation as a Defendant.

Please give me the final status of Defendant's position on all of the amendments we are seeking.

Thanks,

Bryan

**From:** Schwartz, Bryan
**Sent:** Wednesday, January 09, 2008 1:52 PM
**To:** 'Barrett, Michelle R.'
**Cc:** Honkanen, Melissa
**Subject:** amending complaint

Michelle,

I am conferring with you, via this email, regarding our intention to amend the complaint in several respects. If you agree, then we will amend unopposed, and if you disagree, then we will file our motion soon. As I'm sure you know, the standard for a Court accepting a motion to amend at this stage of litigation is extremely permissive, but if you want to go through the exercise of briefing it, let me know.

For now, we plan to:

1) Add a couple/few additional named plaintiffs

2) Add minimum wage claims, which a number of our clients have alleged in their declarations (which you already have); and

3) Add Pennsylvania state claims.

Let me know what you think.

Bryan

the **Voice** for employees

**Nichols Kaster & Anderson**, LLP

**Bryan Schwartz**          One Embarcadero Center

7/14/2008

| Attorney | Suite 720 |
|----------|-----------|
| | San Francisco, California 94111 |
| 415.277.7236 direct | **schwartz@nka.com** |
| 415.277.7238 fax | **nka.com** |
| 877.777.0622 main | **overtimecases.com** |

The information contained in this transmission is attorney privileged and/or confidential information intended for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.

7/14/2008

# EXHIBIT E

## Barrett, Michelle R.

| | |
|---|---|
| **From:** | Barrett, Michelle R. |
| **Sent:** | Tuesday, March 11, 2008 7:57 PM |
| **To:** | Lukas, Paul; Schwartz, Bryan |
| **Cc:** | Honkanen, Melissa |
| **Subject:** | Letter re Discovery, Amending Complaint, etc. |
| **Attachments:** | Document.tif |

Paul and Bryan,
    First, Bryan, welcome back to the office. I hope you enjoyed your time away. This letter responds to Paul's letter, your email and Melissa's voicemail. I'm back to my ridiculous schedule of back to back calls, meetings, and other business travel etc., so I'm relying more on my team to assist with things, but I'll still be the main contact on as much as possible.

Michelle


Michelle R. Barrett
Littler Mendelson, P.C.
650 California Street, 20th Floor
San Francisco, California  94108
415.433.1940 general
415.677.4089 direct telephone
415.743.6618 direct facsimile
mbarrett@littler.com
Assistant:  Rosie T. Yee, ext. 5016364

## LITTLER MENDELSON®
### A PROFESSIONAL CORPORATION

ALABAMA

ARIZONA

ARKANSAS

CALIFORNIA

COLORADO

CONNECTICUT

DISTRICT OF
COLUMBIA

FLORIDA

GEORGIA

ILLINOIS

INDIANA

MASSACHUSETTS

MINNESOTA

MISSOURI

NEVADA

NEW JERSEY

NEW YORK

NORTH
CAROLINA

OHIO

PENNSYLVANIA

RHODE ISLAND

SOUTH
CAROLINA

TEXAS

VIRGINIA

WASHINGTON

March 11, 2008

Michelle R. Barrett
Direct Fax: 415.743.6618

**VIA E-MAIL/PDF**

Paul J. Lukas, Esq.
Nichols Kaster & Anderson, LLP
4600 IDS Center
80 South 8th Street
Minneapolis, MN 55402

Bryan J. Schwartz, Esq.
Nichols Master & Anderson, LLP
One Embarcadero Center, Suite 720
San Francisco, CA 94111

Re: ***Philip Wong, et al. v. HSBC Mortgage Corp., et al.***
***USDC Action No. C 07-2446 MMC***
- *Plaintiffs' Inquiry regarding Amending First Amended Complaint*
- *Plaintiff Sheam's Deposition and Discovery Responses*
- *Motion to Compel Completion of Plaintiff Wong's Deposition*
- *Documents Responsive to Plaintiffs' Discovery Requests*
- *Responses to Plaintiffs' Second Request for Production to HMCU*
- *Opt-In Depositions*

Dear Paul and Bryan:

This letter responds to Paul's March 3 letter and Bryan's subsequent March 5 e-mail, as well as Melissa Honkanen's voicemail message left today regarding discovery responses. Further, it discusses Defendants' wish to take further depositions of opt-in Plaintiffs.

**<u>Inquiry Regarding Amending First Amended Complaint</u>**
Bryan's March 5 e-mail clarified that Plaintiffs not only wish to add named plaintiffs to the case, add Pennsylvania law state claims, and HSBC Finance Corporation as a Defendant, but that you also wished to add minimum wages claims to the case. Defendants' position on all of these items is that the rules only allow one amendment to a Complaint as a matter of right. This amendment was made in June 2007. Thus, Defendants will not agree to any of the amendments which Plaintiffs propose. We anticipate that Plaintiffs will thus make a Motion to the Court to amend

THE NATIONAL EMPLOYMENT & LABOR LAW FIRM™

650 California Street, 20th Floor, San Francisco, CA 94108.2693 Tel: 415.433.1940 Fax: 415.399.8490, www.littler.com

March 11, 2008
VIA E-MAIL/PDF
Page 2

the Complaint. We request that you confer with us as to the date to ensure we do not encounter the same scheduling problems we encountered with the Conditional Certification Motion.

### Plaintiff Shearn's Deposition and Discovery Responses

It has been over a month since we requested dates on which to take Ms. Shearn's deposition. We ask that you provide us with potential dates sometime in the next week so that we may coordinate taking her deposition, along with other depositions in the New York and New Jersey areas. If Ms. Shearn is located somewhere other than New York or New Jersey please advise us immediately so we can make the necessary arrangements to take her deposition elsewhere.

Please also note that Ms. Shearn's failure to respond to the discovery propounded, which was due on March 3, waives all objections to discovery, including objections regarding work product and privilege. We ask that you confirm whether you will be dismissing Ms. Shearn as a representative Plaintiff in this matter and when you will do so, so that we may determine whether we need to make any motions related to her status as a representative Plaintiff, her failure to respond to discovery, and/or taking her deposition.

### Continuing and Completing Plaintiff Wong's Deposition

Paul's March 3 letter references agreeing to a "second deposition" of Plaintiff Wong. To be clear, we have not requested a second deposition of Mr. Wong. Rather, we have asked that he be produced so that we may conclude his deposition, as allowed under the Federal Rules of Civil Procedure. We ask that Plaintiffs reconsider their position on this issue once again, as the Rules are clear that a party is entitled to at least seven (7) hours of another party's deposition. As you are aware, Magistrate Spero prefers not to deal with discovery motions; as such, we believe this is an issue the parties can work together upon to resolve.

### Documents Responsive to Plaintiffs' Discovery Requests

Thank you for the clear listing of documents you believe to be relevant and most important with regard to Plaintiffs' previous document requests. I am working with HMCU to determine what documents can quickly be obtained and produced. I believe I should have a more concrete answer by the end of the week.

### Responses to Second Set of Discovery Requests to HMCU

Today, Melissa Honkanen left a voicemail asking whether Defendant HSBC Mortgage Corporation (USA) would be responding to the Second Set of Requests for Production of Documents propounded. Responses are due on March 13, 2008. I am told that responses to those requests will be provided to Plaintiffs on that date.

March 11, 2008
VIA E-MAIL/PDF
Page 3

**Opt-In Depositions**
Please be advised that we will begin to take depositions for a number of opt-in Plaintiffs in this matter.  Rather than unilaterally scheduling dates, we wish to work with you to find mutually agreeable dates in the near future.  At present, we wish to schedule the depositions of:

- Larry Lee in Northern California
- Marilen Darcy in Southern California
- Alysse Gora in New York
- Peter Malone in New York
- Jason Shultes in New Jersey or Pennsylvania

Additionally, we still wish to take Ms. Shearn's deposition.  Please provide us with these individuals locations, so that we may make travel plans.  In particular, please let us know as soon as possible whether any of the following dates would work for the depositions of Mr. Lee and Ms. Darcy:  March 25, 27, 28, 31 or April 2, 3, 4.  Further, please provide dates for the others that may work later in April.  If we are not able to schedule dates that are mutually agreeable in the near future, we will move forward to notice the depositions.

Very truly yours,

MICHELLE R. BARRETT

Firmwide:84557796.1 023404.1043

# EXHIBIT F

Jeanette Jennings 30(b)(6) 12/19/2007
Philip Wong, et al. v. HSBC Mortgage Corporation, et al.\

**RECEIVED**                1

JAN 03 2008

IN THE UNITED STATES DISTRICT COURT LITTLER MENDELSON
NORTHERN DISTRICT OF CALIFORNIA

PHILIP WONG, FREDERIC          )
CHAUSSY, and LESLIE MARIE      )
SHEARN, individually, on       )
behalf of all others           )
similarly situated, and        )
on behalf of the general       )
public,                        )
                               )
        Plaintiffs,            )
                               )
    vs.                        )No. 3:07-cv-2446 MMC
                               )
HSBC MORTGAGE CORPORATION      )
(USA); HSBC BANK USA,          )
N.A.; and DOES 1 through       )
50, inclusive,                 )
                               )
        Defendants.            )

            30(b)(6) VIDEOTAPED DEPOSITION OF
                    JEANETTE JENNINGS

                Taken December 19, 2007
                Commencing at 9:08 a.m.

REPORTED BY:  MELANIE L. HUMPHREY-SONNTAG, RDR, CRR, CSR
        PARADIGM REPORTING & CAPTIONING INC.
                1400 RAND TOWER
            527 MARQUETTE AVENUE SOUTH
          MINNEAPOLIS, MINNESOTA  55402-1331
    612-339-0545 * 800-545-9668 * Fax 612-337-5575

Jeanette Jennings 30(b)(6) 12/19/2007
Philip Wong, et al. v. HSBC Mortgage Corporation, et al.\

113

1    Q.  You don't --

2    A.  But they always receive their -- their

3    biweekly draw.

4    Q.  You don't have a -- a different minimum draw

5    for employees in New York or California or other

6    states; is that right?

7    A.  No.  The minimum is the minimum is the

8    minimum.

9    Q.  And are you aware that loan officers are

10   required to reimburse the company for application

11   fees where a loan application fails?

12   A.  That's a broad statement.  They don't have

13   to pay it back if the loan is declined unless they

14   never collected the fee and we've incurred the

15   expenses, and that's actually in -- in the actual

16   incentive plan.

17        So, for example, if I've taken a loan

18   application but I did not collect the fee from the

19   customer and it's gone through the processing, at

20   the end of the processing that customer is then

21   declined but I still have not collected that fee

22   from the customer, I can -- I can get -- I can get

23   that deducted, yes.

24        If it's because it's a regular decline, no,

25   and I've done everything right, but that's under

Jeanette Jennings 30(b)(6) 12/19/2007
Philip Wong, et al. v. HSBC Mortgage Corporation, et al.\

114

1    errors and omissions and, I think, exclusions, that,

2    if they fail to collect the necessary fees or if

3    it's through their own negligence, fraudulent --

4    whatever it might be -- then they could be -- have

5    those -- those fees deducted from commissions, yes.

6        Q.   Do you know to what extent loan officers are

7    encouraged not to collect application fees by their

8    supervisors in order to close more deals?

9        A.   They shouldn't be encouraged to do that at

10   all.  I'm not familiar with that practice at all.

11   That would go against -- because we're incurring

12   expenses for the appraisals and what needs to be

13   done, so I would find that hard to believe that

14   they're encouraged to not collect the fees.

15           That doesn't make sense.

16       Q.   Okay.  Well, we have sworn testimony that

17   that's exactly what's happening, so --

18       A.   Oh.

19       Q.   -- and documentation of that happening, so

20   I'm wondering -- and so -- but it's your testimony

21   that you're not aware of that happening?

22       A.   Absolutely not.  No.

23       Q.   And do you have something -- a published

24   policy -- that is specifically contrary to that

25   practice of supervisors encouraging or requiring

Jeanette Jennings 30(b)(6) 12/19/2007
Philip Wong, et al. v. HSBC Mortgage Corporation, et al.\

115

1   their loan officers not to collect application fees?

2       A.   That would be a business policy.  It would

3   be a policy that's directed by HR, so I couldn't

4   comment to that.  If they've published anything,

5   I -- I don't know.

6           But the plan itself speaks to it, that, if

7   they don't collect the fees, they will be charged.

8       Q.   Where is that?  The plan that --

9       A.   Probably under --

10      Q.   -- in Exhibit 3?

11      A.   And, again, if it is not in this one, it is

12  in the newest versions.

13          Could be under "Exclusions."  It could be

14  under the -- it's under the new plans most

15  definitely, but I need to -- I need to look at that.

16          I don't see it in this particular plan.

17      Q.   But you believe that it's in a new plan?

18      A.   Absolutely.

19      Q.   So is it your testimony that -- that all

20  loan officers nationwide earn $23,660 or more every

21  year that they're employed?

22      A.   Whatever the Federal minimum is, and I think

23  that -- it changed this year if -- it was 23.

24  Previously it was just 23,000.

25          I would say that that would be at least that

Jeanette Jennings 30(b)(6) 12/19/2007
Philip Wong, et al. v. HSBC Mortgage Corporation, et al.\

195

```
 1    STATE OF ILLINOIS )

                       ) SS.

 2    COUNTY OF DU PAGE )

 3

 4         I, Melanie L. Humphrey-Sonntag,

 5    Certified Shorthand Reporter No. 084-004299, CSR,

 6    RDR, CRR, FAPR, and a Notary Public in and for the

 7    County of DuPage, State of Illinois, do hereby

 8    certify that previous to the commencement of the

 9    examination, said witness was duly sworn by me to

10    testify the truth; that the said deposition was

11    taken at the time and place aforesaid; that the

12    testimony given by said witness was reduced to

13    writing by means of shorthand and thereafter

14    transcribed into typewritten form; and that the

15    foregoing is a true, correct, and complete

16    transcript of my shorthand notes so taken as

17    aforesaid.

18         I further certify that there were present at

19    the taking of the said deposition the persons and

20    parties as indicated on the appearance page made a

21    part of this deposition.

22         I further certify that I am not counsel for

23    nor in any way related to any of the parties to this

24    suit, nor am I in any way interested in the outcome

25    thereof.
```

196

1          IN TESTIMONY WHEREOF I have hereunto set my

2    hand and affixed my Notarial Seal this 28th day of

3    December, A.D. 2007.

4

5

6                                    Certified Shorthand Reporter

                                     Registered Diplomate Reporter

7    "OFFICIAL SEAL"                 Certified Realtime Reporter
     M. L. HUMPHREY-SONNTAG
     Notary Public, State of Illinois        Fellow of the Academy of
     My Commission Expires 02/17/10
8                                    Professional Reporters

9

10   My commission expires

     February 17, 2010

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT G

1

1

2    UNITED STATES DISTRICT COURT

3    NORTHERN DISTRICT OF CALIFORNIA

4    SAN FRANCISCO DIVISION

5    - - - - - - - - - - - - - - - - - - -x

     Philip Wong, Frederic Chaussy
6    and Leslie Marie Shearn,
     individually, on behalf of all
7    others similarly situated, and on
     behalf of the general public,

8
                    Plaintiffs,
9                                              Index No.
        -against-                              C07 2446
10                                             MMC (ECF)

11   HSBC Mortgage Corporation
     (USA); HSBC Bank (USA),
12   N.A.; and DOES 1
     through 50, inclusive,

13
                    Defendants.
14   - - - - - - - - - - - - - - - - - -x

15

16

17            VIDEOTAPE DEPOSITION of KAREN FLANAGAN, taken

18   by Defendants, held at the offices of Littler

19   Mendelson, 532 Broad Hollow Road, Suite 142, Melville,

20   New York on Thursday, July 10, 2008, commencing at

21   9:28 a.m., before Jean Wilm, a Registered Professional

22   Reporter, Certified LiveNote Reporter and Notary

23   Public within and for the State of New York.

24

25

RECEIVED

JUL 23

LITTLER MENDELSON

67

Flanagan

1

2      A      No.

3      Q      -- of compensation that was

4  provided?

5      A      No.   They said they were working

6  it out.

7      Q      Did you ever receive any

8  compensation for deposits received by the bank?

9      A      I received a $1,000 bonus, which

10  was not anywhere what I was told it would be.

11      Q      From whom did you receive a $1,000

12  bonus?

13      A      Kevin MacPherson, the branch

14  manager for the bank.

15      Q      When did you receive this?

16      A      I don't recall which paycheck.  I

17  don't recall which paycheck.  I know I got it,

18  but I don't recall which paycheck.

19      Q      Do you recall in what year?

20      A      '07.

21      Q      Was this the end of your

22  employment?

23      A      Towards the -- towards the end.

24      Q      In 2006, while you were working

25  for HSBC Mortgage Corporation, were you paid

68

Flanagan

1

2      more than $100,000?

3              A      Yes.

4              Q      During that year, you held two

5      positions:  One was the position as the senior

6      mortgage loan consultant and also as a Premier

7      mortgage consultant; is that right?

8              A      Yes.

9                      MS. HAUGEN:  Objection.

10                     THE WITNESS:  Sorry.

11             Q      In 2006 did you receive a W-2 from

12     HSBC Mortgage Corporation for the amount in

13     excess of $100,000?

14             A      I don't remember, nor can I find

15     my 2006 W-2s.  I don't recall what the breakdown

16     of what the income was and how much came from

17     the mortgage company and how much came from the

18     bank.  I looked for them last night.  I can't

19     find them.

20             Q      Isn't it a fact that in 2006, you

21     received a W-2 from the mortgage company?

22             A      I know at least from the mortgage

23     company.

24             Q      Right.

25             A      I don't know if that's the only

69

```
1                          Flanagan
2    one.  I don't remember and I can't find them.
3            Q     Okay.  And did you receive a W-2
4    from the mortgage company in 2005?
5            A     Yes.
6            Q     Did you bring that today?
7            A     No.
8            Q     Do you have it?
9            A     I have it somewhere at home.
10           Q     Do you recall if you were paid in
11   excess of $100,000 in 2005?
12           A     Yes.
13           Q     And you were paid in excess of
14   $100,000 in 2005 by HSBC Mortgage Corporation;
15   is that right?
16           A     Yes.
17                   MS. HAUGEN:  I just want to
18               state for the record that when she
19               is able to find those, that we will
20               produce them in the course of
21               discovery.
22                   MR. TICHY:  I appreciate
23               that.
24   BY MR. TICHY:
25           Q     And just so the record's clear, I
```

116

Flanagan

1

2       started to look at that one.  You

3       said to wait.

4       Q       Okay.  Let me show you Defendants'

5  Exhibit 10.  Would you take a look at that?

6       A       Uh-hum.

7       Q       Okay.  This purports to be a job

8  description for the Premier mortgage sales

9  officer position of the mortgage company.

10      Do you see that?

11      A       Uh-hum.

12      Q       And I just read for you the

13 summary of the position, and you told me that

14 that was accurate, though, you may have

15 disagreed as to what was the most important.

16      Was it accurate that during your

17 time as a Premier mortgage sales officer that

18 you were responsible for developing and

19 maintaining long-term referral sources with

20 realtors, branches, builders, attorneys and

21 other external sources?

22      A       No.  It wasn't.  That's not the

23 way that they presented the position at all.

24      Q       Okay.  Was it your job to counsel

25 affluent customers on various types of mortgage

117

1                           Flanagan

2   financing?

3          A    Yes.

4          Q    And you were to work with them to

5   help them choose a program that best suited

6   their needs?

7          A    Yes.

8          Q    Is that right?

9          A    Uh-hum.

10         Q    And, in fact, that was the case

11  during the entire time that you worked with HSBC

12  Mortgage --

13         A    Always.  Well, that's my job.

14  That's any originator's job.

15         Q    Right, and you were, as a Premier

16  mortgage sales officer, responsible for

17  developing, expanding, and retaining customer

18  relationships; is that right?

19         A    Yes.

20         Q    Was one of your functions to

21  educate realtors, attorneys, builders, branches

22  and the public on mortgage programs through

23  seminars?

24         A    No, that was never, that was never

25  brought up to me, no, as part of my job

118

Flanagan

1

2 description.

3        Q    But did you do that?

4        A    Not as part of that job

5 description. I do that because that's what I

6 do. But no, it was not told to me, no.

7        Q    But that was part of what you did

8 when you were the --

9        A    Part of what I did.

10       Q    -- the Premier mortgage sales

11 officer; is that right?

12       A    Yep.

13       Q    You know, when you had these

14 seminars did you arrange for a location to

15 conduct these seminars?

16       A    Yes.

17       Q    And would you normally get a hotel

18 room, or would you --

19       A    No.

20       Q    Would you go to some other site?

21       A    No, it was usually in the branch.

22       Q    So you would normally conduct

23 these at the branch; is that right?

24       A    If I had a seminar, it was at the

25 branch or at the library. I did one at the

122

1                          Flanagan

2    home office?

3         A     No.  Most of my time outside --

4    no, because the home office I was there on the

5    weekends.  I did a lot of work on the weekends,

6    Saturday, Sunday, and in the branch.  I visited

7    the -- I would say out of all of the time, my

8    home office was where I spent the majority of my

9    time.

10        Q     And a lot of what you did in your

11   home office was to support the sales which you

12   were generating with customers; is that right?

13        A     Oh, absolutely.  I would take

14   applications over the phone, send out the

15   packages from the home office.  That type of

16   thing.

17        Q     Okay.  And these were steps which

18   you took prior to the meeting with the customers

19   you said, right?

20        A     Yes.

21        Q     And these were steps which you

22   took prior to attending closings --

23        A     Uh-hum.

24        Q     -- which were usually at an escrow

25   company; is that right?

123

1                              Flanagan

2        A      The attorney's office.

3        Q      Or the attorneys' office?

4        A      Yes.

5        Q      Okay.  So all of the work

6    basically that you were doing at home was in

7    preparation for developing a loan opportunity

8    and hopefully a sale; is that right?

9                     MS. HAUGEN:  Objection.  You

10            are mischaracterizing her testimony.

11       A      No.  I would say no.  It was a

12   combination of once the loan was in, you know,

13   following it up, completing the documentation,

14   staying in touch with the processor, you know,

15   the person in Buffalo who's handling the loan.

16              We were -- there was a lot of

17   imaging, sending the documents to an imaging

18   system, that type of thing that had nothing to

19   do with developing new business.  It had to do

20   with taking care of the business that you had in

21   the pipeline.

22       Q      Okay.  So the work that you were

23   doing at your home office --

24       A      Was more paperwork.

25       Q      -- was a lot of paperwork?

124

1                           Flanagan

2          A     Uh-hum.

3          Q     And it was, to some extent, phone

4     calls; is that right?

5          A     Uh-hum.   Uh-hum.

6          Q     Which was all to support the sales

7     which you were generating; is that right?

8          A     Sure.

9          Q     Okay.  And those were sales which

10    were the basis of the five referral sources that

11    you had been working with, the banks, the

12    attorneys, the realtors?

13         A     Uh-hum.

14         Q     And -- and the accountants as well

15    as your preexisting customers; is that right?

16         A     And the branch.  The branch

17    people.

18         Q     Okay.  Fair enough.

19               When you became a Premier mortgage

20    loan officer, to whom did you report?

21         A     I had many bosses.  I interacted

22    and reported to Kevin MacPherson.  I also

23    reported to Eric Liboy and I reported to Mike

24    Vasami.  Kevin was the branch manager.

25         Q     Who was Eric Liboy?

215

Flanagan

1

2          Defendants' Exhibit 15 for

3          identification, as of this date.)

4   BY MR. TICHY:

5          Q    Okay.  I have given you a document

6   which is marked Exhibit Number 15.

7              Have you ever seen that before?

8          A    Yes.

9          Q    Okay.  And is this a document that

10  described the incentive program or commission

11  arrangement under which you worked in 2006?

12         A    In 2006, yes.  There was another

13  one after this.

14         Q    Okay.  And we will get to that in

15  a minute.

16             So in terms of how you were

17  compensated, this document described how the

18  system worked, what was added, what was not

19  included, what was deducted so that ultimately

20  you came to an amount that you were to be paid,

21  correct?

22         A    Correct.

23             MS. HAUGEN:  Objection.

24  It's compound.

25         Q    In a nutshell, it described how

216

1                         Flanagan

2     you were to be paid correct?

3          A     It's the commission plan.  Yes.

4          Q     If you will look at page 3, do you

5     see that?

6          A     Yes.

7          Q     Okay.  There's a reference to

8     withdrawn, declined loans due to

9     error/omissions, okay.

10               Now, without regard to what is an

11    error or an omission, because that is something

12    that really is a matter between you and the

13    mortgage company, this particular provision

14    is -- deals with the amount of incentive being

15    reduced by an amount equal to a loss or expense;

16    is that right?

17         A     Uh-hum.

18         Q     Is that what you were talking

19    about?

20         A     No.

21         Q     Okay.  Fair enough.

22               But as you understand this

23    particular provision, essentially you got less

24    commission if there were a problem due to an

25    error or omission as described in that

217

Flanagan

1

2  particular section; is that right?

3                    MS. HAUGEN:  Take as much

4          time as you need to review that.

5      A      No, I don't think that's what this

6  means.  I don't think that's what this means at

7  all.

8      Q      What do you think that means?

9      A      Well, what this is saying is that

10  if HSBC incurs a loss or an expense as a result

11  of a participant, which would be a loan

12  officer's error or omission, which is a

13  reportable event -- in other words, if I submit

14  an application where I know that there's

15  something going on with that application that I

16  don't include, which is including, but not

17  limited to, falsification of records,

18  negligence, that the following action may be

19  taken in addition to any other action which

20  would be, I guess, disciplinary action, and it

21  says a participant's commission incentive shall

22  be reduced by an amount equal to the loss or

23  expense incurred by HSBC as a result of the

24  reportable event.

25                    I don't have any -- I've never had

218

Flanagan

1

2    anything like that happen on my loan nor has

3    anybody that I know that works with HSBC have

4    anything like that happen to them on a loan.

5        Q    Okay. Fair enough.

6            Was there ever a time when you

7    were given a paycheck by HSBC Mortgage Company

8    that you thought was incorrectly calculated?

9        A    You know, I honestly don't

10   remember, and it's the type of thing where if it

11   did happen, I just would have brought it to my

12   manager, we would have gotten it corrected, and

13   I just wouldn't have -- it would be gone.  I

14   just, I really don't -- I can't really -- it

15   just would have been resolved.

16       Q    I would have expected nothing

17   less, frankly, but I needed you to say that.

18       A    Yeah.

19       Q    Okay.  So far as you know, your

20   compensation for 2006 was in conformance with

21   Exhibit Number 15?

22       A    Yes, it doesn't mention the

23   sign-on bonus.  That's the only thing that's not

24   in here because it was something I think that

25   was negotiated, you know, with me.

258

1

2                    C E R T I F I C A T E

3

4    STATE OF_____:

5    COUNTY/CITY OF_____:

6

7    Before me, this day, personally appeared

8    KAREN FLANAGAN, who, being duly sworn, states

9    that the foregoing transcript of her

10   Deposition, taken in the matter, on the date, and

11   at the time and place set out on the title page

12   hereof, constitutes a true and accurate transcript

13   of said deposition.

14

15              _____

16                    KAREN FLANAGAN

17

18   SUBSCRIBED and SWORN to before me this_____

19

20   day of _____, 2008, in the

21   jurisdiction aforesaid.

22

23   _____    _____

24   My Commission Expires              Notary Public

25

# EXHIBIT H

CERTIFIED COPY

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

PHILIP WONG, FREDERIC CHAUSSY,
And LESLIE MARIE SHEARN,
Individually, on behalf of all
Others similarly situated, and
On behalf of the general public,
      Plaintiffs,
     vs.
HSBC MORTGAGE CORPORATION (USA)
HSBC BANK, USA, N.A.; and
DOES 1 through 50, inclusive,
      Defendants.

NO. 3:07-CV-2446 MMC

DEPOSITION OF PHILIP WONG

SAN FRANCISCO, CALIFORNIA

NOVEMBER 29, 2007

Reported by Yvonne Fennelly, CSR No. 5495

PAULSON

Philip Wong                                        November 29, 2007

29

1        A.    Yes.

2        Q.    Were you still participating after that in a

3    commission arrangement?

4        A.    As in receiving commissions?

5        Q.    Yes.

6        A.    Yes, I believe so.

7        Q.    Did the percentage of commission that you

8    received during the first year of your employment remain

9    constant throughout the entire period?

10       A.    No.

11       Q.    What were the commission percentages which you

12   were provided during your first year of employment?

13       A.    Can you be more specific?

14       Q.    Well, why don't you describe the commission

15   arrangement which you had with the mortgage company when

16   you were working for the mortgage company during your

17   first year of employment.

18       A.    Depending on the size of the loan.

19       Q.    Can you describe what that arrangement was?

20       A.    However, it's different due to the fact that we

21   do have our application fee being withdrawn from our own

22   personal payroll.

23       Q.    Will you explain that to us?

24       A.    If there was a loan that was declined, and the

25   application fee gets withdrawn from our commission.

Philip Wong                                    November 29, 2007

30

1    Q.    So if an individual who is seeking a loan

2    submits an application fee, that application fee would

3    be considered part of the income for which a commission

4    would be paid if the loan goes through; is that right?

5    A.    Can you rephrase the question, please.

6    Q.    Well, why don't you explain it to me.

7    A.    If there was a client seeking a loan and the

8    loan file was declined due to our underwriting

9    guidelines, then that application fee is withdrawn from

10   our paycheck.

11   Q.    Does the application fee get added to your

12   paycheck in some way if the loan goes through?

13   A.    No.

14   Q.    Let me see if I understand this:  How much is

15   an application fee?

16   A.    $325.

17   Q.    Okay.

18         So if an application is submitted, the

19   individual pays $325; and if the loan is not approved,

20   your compensation is reduced by $325; is that what

21   you're saying?

22   A.    No.

23   Q.    Well, then will you clarify that for me,

24   please.

25   A.    If an applicant submits an application, it goes

Philip Wong                                          November 29, 2007

222

REPORTER'S CERTIFICATION

You, Yvonne Fennelly, Certified Shorthand Reporter, in and for the State of California, do hereby certify:

That the foregoing witness was by me duly sworn; that the deposition was then taken before me at the time and place herein set forth; that the testimony and proceedings were reported stenographically by me and later transcribed into typewriting under my direction; that the foregoing is a true record of the testimony and proceedings taken at that time.

IN WITNESS WHEREOF, you have subscribed my name this ___14th___ day of December_____, 2007.

/S/ Yvonne Fennelly
Yvonne Fennelly, CRP, CSR No. 5495