GEORGE J. TICHY, II, Bar No. 041146
MICHAEL F. MCCABE, Bar No. 111151
MICHELLE R. BARRETT, Bar No. 197280
KIMBERLY L. OWENS, Bar No. 233185
LITTLER MENDELSON
A Professional Corporation
650 California Street, 20th Floor
San Francisco, California  94108
Telephone:  (415) 433-1940
Facsimile:  (415) 399-8490
E-mail: gtichy@littler.com, mmccabe@littler.com,
mbarrett@littler.com, kowens@littler.com

Attorneys for Defendants
HSBC MORTGAGE CORPORATION (USA) AND
HSBC BANK USA, N.A.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| Philip Wong, Frederic Chaussy, and Leslie Marie Shearn, individually, on behalf of all others similarly situated, and on behalf of the general public,<br><br>Plaintiffs,<br><br>v.<br><br>HSBC Mortgage Corporation (USA); HSBC Bank USA, N.A.;  and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.  C 07 2446 MMC [ECF]<br><br>**DEFENDANTS HSBC MORTGAGE CORPORATION (USA) AND HSBC BANK USA, N.A.'S MOTION FOR RULE 11(C) SANCTIONS**<br><br>Date:       October 10, 2008<br>Time:      9:00 a.m.<br>Courtroom:  7 (19th Floor)<br>Judge:     Hon. Maxine M. Chesney |

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

**DEFENDANTS' MOTION FOR RULE 11(C) SANCTIONS**                    Case No. C 07 2446 MMC [ECF]

# NOTICE OF MOTION AND MOTION

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

YOU ARE HEREBY NOTIFIED that on October 10, 2008, at 9:00 a.m., or as soon thereafter as the matter can be heard in Courtroom 7, 19th Floor of the United States District Court, located at 450 Golden Gate Avenue, San Francisco, California, pursuant to 28 U.S.C. § 1927 and Federal Rule of Civil Procedure 11(c), Defendants HSBC Mortgage Corporation (USA) ("HMCU") and HSBC Bank USA, N.A. ("HBUS") will move and hereby do move this Court for an order disqualifying Plaintiffs' counsel, disqualifying named Plaintiffs, awarding sanctions, and awarding attorneys' fees and costs.[1]

## STATEMENT OF ISSUES TO BE DECIDED

The instant motion presents the Court with the following issues for decision:

1.    Whether class counsel Bryan Schwartz and Nichols Kaster ("NK") should be disqualified as class counsel due to their unethical and egregious conduct, including an intentional directive to Plaintiff Philip Wong to destroy evidence;

2.    Whether named Plaintiffs Philip Wong and Frederic Chaussy should be disqualified as class representatives due to their inappropriate and unethical conduct, including sacrificing the privacy interests of putative class members to advance their own financial interest;

3.    Whether Defendants should be awarded monetary sanctions and/or attorneys' fees and costs due to the unethical and egregious conduct of class counsel and Plaintiffs Wong and Chaussy.

This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities, the declarations and evidence filed herewith, all the files and records in this matter,

---

[1] Defendants discovered this evidence supporting this Motion in March 2008 and filed a previous version of the Motion with the Court on April 29, 2008. On May 1, 2008, the Court found the Motion to be premature, because NK had not yet moved to be appointed as class counsel under Federal Rule of Civil Procedure 23. As a result, the Court denied Defendants' Motion without prejudice and vacated the hearing. The Court's Order indicated that when Plaintiffs filed their Motion for Class Certification, the Motion would be ripe. *See* U.S. District Court Judge Maxine M. Chesney's "Order Denying Without Prejudice Defendants' Motion For Sanctions; Vacating Hearing" dated May 1, 2008, which is on file with the Court. Given the deadline of September 5, 2008 for Plaintiffs to file any motion seeking class certification pursuant to Rule 23, and as the hearing was set by the Court for October 10, 2008 on any such motion, Defendants are filing this Motion for Sanctions in anticipation of Plaintiffs' motion seeking class certification. To the extent that Plaintiffs do not file any motion requesting class certification, Defendants will withdraw this Motion from the Court's consideration.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108-2693
415.433.1940

DEFENDANTS' MOTION FOR RULE
11(C) SANCTIONS                    1.                    Case No. C 07 2446 MMC [ECF]

1    and on such oral argument as may be presented at the hearing on these Motions.

2    Dated: September 5, 2008                      Respectfully submitted,

3                                                  /s/ Michelle R. Barrett
                                                   MICHELLE R. BARRETT
4                                                  LITTLER MENDELSON
                                                   A Professional Corporation
5                                                  Attorneys for Defendants
                                                   HSBC MORTGAGE CORPORATION (USA)
6                                                  and HSBC BANK USA, N.A.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFENDANTS' MOTION FOR RULE
11(C) SANCTIONS                          2.                    Case No. C 07 2446 MMC [ECF]

# TABLE OF CONTENTS

PAGE

I.    INTRODUCTION ...................................................................................................1

II.   FACTUAL BACKGROUND .................................................................................1

    A.    The Parties Agree To Preserve All Forms Of Potential Evidence, Including Electronic Evidence .......................................................................1

    B.    Plaintiffs' Counsel Assures Defendants That NK Is Not Contacting Employees During Working Hours ..............................................................2

    C.    Plaintiffs Request E-mail Correspondence In Discovery ............................3

    D.    Defendants' Initial Search For Responsive E-mails Reveals Numerous Communications Between Plaintiff Wong And His Attorney, Bryan Schwartz..........3

    E.    Schwartz Intentionally Directs Plaintiff Wong To Destroy Potentially Relevant Evidence .......................................................................................3

    F.    Plaintiff Wong Knew His Communications With His Attorneys Were Not Confidential ..................................................................................................4

    G.    NK Has Condoned And Advanced Unethical And Inappropriate Conduct By Plaintiffs Wong And Chaussy ................................................................5

III.  ARGUMENT ..........................................................................................................6

    A.    Plaintiff Wong Has Waived The Attorney-Client Privilege.........................6

        1.    Wong Waived The Attorney-Client Privilege Because He Had No Expectation Of Confidentiality On The Work Computer Network .................6

        2.    Wong Has Also Waived The Attorney-Client Privilege Because He Disclosed The E-mails To Third Parties......................................................9

        3.    Any Claim Of Attorney Work Product Privilege Over The E-mail Communications Is Also Waived ..............................................................10

        4.    The Scope Of The Waiver Is Broad ..........................................................10

    B.    Class Counsel's Unethical And Bad Faith Conduct Warrants Disqualification Of Schwartz And NK As Class Counsel ...............................................................11

        1.    The Legal Standard....................................................................................11

        2.    Schwartz's And NK's Conflict Of Interest With Putative Class Members Warrants Their Disqualification As Class Counsel.......................12

        3.    Schwartz's Directive To Wong To Destroy Evidence Was Unethical And Warrants His And NK's Disqualification As Class Counsel.................13

        4.    NK's Failure To Produce Documents Directly Responsive To Defendants' Discovery Requests Warrants Their Disqualification As Class Counsel ..........................................................................................16

    C.    Plaintiffs Wong And Chaussy Should Be Disqualified As Class Representatives...........................................................................................17

        1.    The Legal Standard....................................................................................17

        2.    Wong's Lack of Credibility And Conflict Of Interest With Class Members Warrants His Disqualification As Class Representative .................18

        3.    The Court Should Also Dismiss Chaussy As Class Representative.............21

1

**TABLE OF AUTHORITIES**
(CONTINUED)

2

PAGE

3    D.    The Court Should Also Impose Monetary Sanctions And/Or Award Attorneys
          Fees For Bad Faith Conduct By Schwartz, NK, Wong And Chaussy.........................22

4  IV.    CONCLUSION ............................................................................................................23

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

PAGE

**CASES**

*Aclara Biosciences v. Caliper Techs. Corp.*,
  2000 U.S. Dist. LEXIS 10585 at *12 (N.D. Cal. 2000) .................................................... 11

*Amchem Products, Inc. v. Windsor*,
  521 U.S. 591 (1997) .................................................................................................... 15, 18

*Cargill Inc., v. Budine*,
  2007 U.S. Dist Lexis 48405, at * 22 (E.D. Cal. June 22, 2007) ..................................... 12

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991) ...................................................................................................... 12, 22

*Cohen v. Beneficial Indus. Loan Corp.*,
  337 U.S. 541 (1949) .................................................................................................... 18, 20

*El Camino Res., LTD v. Huntington Nat'l Bank*, 2007 U.S. Dist. LEXIS 67813 (W.D.
  Mich. Sept. 13, 2008) ..................................................................................................... 14

*Erickson v. Newmar Corp.*,
  87 F.3d 298 (9th Cir. 1996) .............................................................................................. 12

*Evans v. IAC/Interactive Corp.*,
  244 F.R.D. 568 (C.D. Cal. 2007) ...................................................................................... 20

*Gas-A-Tron of Ariz. v. Union Oil Co.*,
  534 F.2d 1322 (9th Cir. 1976) .......................................................................................... 12

*Goetsch v. Shell Oil Co.*,
  197 F.R.D. 574, 579 (W.D. N.C. 2000) ........................................................................... 19

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011, 1020 (9th Cir. 1998) ................................................................................ 18

*Hoelscher v. Baggett*, 2008 U.S. Dist. LEXIS 30713 (W.D. La. Apr. 15, 2008) ............... 14

*Hoffmann Corp. v. Superior Court*,
  172 Cal. App. 3d 357 (1985) ............................................................................................ 22

*Huston v. Imperial Credit Commercial Mortgage Inv. Corp.*,
  179 F. Supp. 2d 1157 (C.D. Cal. 2001) ...................................................................... 11, 12

*In re Fine Paper Antitrust Litig.*,
  617 F.2d 22 (3d Cir. 1980) ............................................................................................... 11

*In Re NYSE Specialists Securities Litig.*,
  240 F.R.D. 128 (S.D.N.Y. 2007) .......................................................................... 18, 20, 22

*In re Qwest Communications Intern. Inc.*,
  450 F.3d 1179 (10th Cir. 2006) ...................................................................................... 7, 9

*In re Seagate Tech., LLC*,
  497 F.3d 1360 (Fed. Cir. 2007) ........................................................................................ 10

*International Fed'n. of Prof. and Technical Engineers, Local 21, AFL-CIO v.
  Superior Court*,
  42 Cal. 4th 319 (2007) ................................................................................................ 12, 19

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

### TABLE OF AUTHORITIES
#### (CONTINUED)

PAGE

*Kline v. Wolf,*
702 F.2d 400 (2d Cir. 1983) ................................................................18, 20, 21

*Leon v. IDX Systems Corp.,*
464 F.3d 951 (9th Cir. 2006) ................................................................15, 22

*London v. Wal-Mart Stores,*
340 F.3d 1246, 1253 (11th Cir. 2002) ................................................16, 17

*Long v. Marubeni America Corp.,*
2006 WL 2998671, at *3 (S.D.N.Y. Oct. 19, 2006) ..................................7

*Martens v. Thomann,*
273 F.3d 159 (2d Cir. 2001) ....................................................................18

*Maywalt v. Parker & Parsley Petroleum Co.,*
67 F.3d 1072 (2d Cir. 1995) ....................................................................16

*Norman v. Arcs Equities Corp.,*
72. F.R.D. 502 (S.D.N.Y. 1976) ..............................................................17

*Palumbo v. Tele-Comm., Inc.,*
157 F.R.D. 129 (D.D.C. 1994) ................................................................11

*Primus Auto Fin. Servs., Inc. v. Batarse,*
115 F.3d 644 (9th Cir. 1997) ..................................................................22

*Salomon Bros. Treasury Litig. v. Steinhardt Partners, L.P.,*
9 F.3d 230 (2d Cir. 1993) ........................................................................10

*Savino v. Computer Credit, Inc.,*
164 F.3d 81 (2d Cir. 1998) ......................................................................15

*Scott v. Beth Israel Med. Ctr. Inc.,*
2007 WL 3053351 (N.Y. Sup. Ct. Oct. 17, 2007) ............................7, 8, 9

*Sony Computer Ent. Am., Inc. v. Great American Insurance Co.,*
229 F.R.D. 632 (N.D. Cal. 2005) ............................................................10

*Thygeson v. U.S. Bancorp,*
2004 WL 2066746, at *20 (D. Or. Sept. 15, 2004) ..................................7

*Tien v. Superior Court,*
139 Cal. App. 4th 528 (2006) ............................................................12, 19

*United States v. Nobles,* 422 U.S. 225, 239 (1975) ..........................................10

*Valley Bank of Nevada v. Superior Court,*
15 Cal. 3d 652 (1975) ..............................................................................22

*Weil v. Investment/Indicators, Research & Mgmt., Inc.,*
647 F.2d 18 (9th Cir. 1981) ....................................................................11

*White v. E-Loan, Inc.,*
2006 U.S. Dist. LEXIS 62654, at *10 (N.D. Cal. Aug. 18, 2006) ..........15

**STATUTES**

Cal. Evid. Code § 917(b) ....................................................................................8

Fed. R. Civ. P. 23(a) ..................................................................................11, 17

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

1

**TABLE OF AUTHORITIES**
(CONTINUED)

2

PAGE

3

Fed. R. Civ. P. 23(a)(4) ................................................................................................17

4

Northern Dist. Civ. Local Rule 11-6(a) .........................................................................14

5

**OTHER AUTHORITIES**

8 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE:

6

CIVIL 2d § 2024 (2d ed. 1994)......................................................................................10

7

Cal. Rule Prof. Conduct 5-220 ...............................................................................14, 17

Model Rule of Prof. Conduct 3.4(a) ..............................................................................14

8

Model Rule of Prof. Conduct 8.4(c)-(d) .........................................................................14

9

Model Rules of Professional Conduct 3.4 .......................................................................17

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

**DEFENDANTS' MOTION FOR RULE
11(C) SANCTIONS**

v.

**Case No. C 07 2446 MMC [ECF**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Class counsel and class representatives Wong and Chaussy have engaged in egregious, unethical conduct that warrants their disqualification from the case and an award of sanctions and attorneys fees to Defendants.  Defendants move for disqualification of class counsel based on discovered evidence of unethical conduct by Plaintiffs' counsel, Nichols Kaster ("NK").  Counsel Schwartz directed Wong to destroy potentially discoverable evidence and has acted in a manner that conflicts with fiduciary responsibilities to putative class members.  Additionally, Defendants move for disqualification of Wong and Chaussy based on evidence that they invaded the privacy rights of putative class members by misappropriating confidential information in order to advance their personal interests in this case.  Moreover, Defendants seek sanctions against NK and Plaintiffs Wong and Chaussy, as well as attorneys' fees and costs, for this bad faith conduct.

## II.    FACTUAL BACKGROUND

### A.    The Parties Agree To Preserve All Forms Of Potential Evidence, Including Electronic Evidence.

On May 7, 2007, Plaintiffs Wong and Chaussy filed a Complaint for Damages with the Court alleging, among other things: (1) a collective action for claims under the Fair Labor Standards Act ("FLSA"); (2) Federal Rule of Civil Procedure 23 class action claims; and (3) an individual retaliation claim on behalf of Plaintiff Chaussy.  Shortly thereafter, on May 29, Plaintiffs' counsel, Bryan Schwartz, sent a letter to Defendants, advising them of their obligation to retain electronically stored information Plaintiffs believed to "be an important and irreplaceable source of evidence in this case." (Declaration of George J. Tichy, II ["Tichy Decl."], Exh. A.)  The next day, May 30, in response to this letter, George J. Tichy, II, Defendants' counsel, sent a similar letter stressing the importance of preserving electronic evidence existing on, "among other things, home computers, laptops, PDAs and other sources of electronic information." (Tichy Decl., Exh. B.)  This letter also expressly stated that "electronic information should not be deleted, modified or corrupted, and, of course, any writings need to be preserved." (*Id.*)  Neither Schwartz, nor anyone else from NK, replied that that they would not abide by that stated, yet obvious, legal requirement.

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

**B.    Plaintiffs' Counsel Assures Defendants That NK Is Not Contacting Employees During Working Hours.**

On June 28, 2007, defense counsel sent a letter to Plaintiffs' counsel requesting that NK cease solicitations of HMCU's employees during working hours.  (Tichy Decl., Exh. C.)  In particular, Mr. Tichy cited an across-the-board "no solicitation" rule that prevents any person from soliciting employees;[2] further, the letter cited the expectation that employees actually work during their working time, rather than conduct personal business.  (*Id.*)  In response, Schwartz told Mr. Tichy that he did not believe that anyone from NK had contacted HMCU employees during working hours, but if they had, they would not do so anymore.  (*Id.*, ¶ 5.)

Despite admonitions to Plaintiffs' counsel regarding prohibited solicitation and that employees should be working during work hours, HMCU subsequently learned that Wong was also contacting employees during working time to solicit and involve them in his case.  On July 16, Mr. Tichy sent a second letter to NK reminding them of the limitations placed upon employee solicitation.  (*Id.*, Exh. D.)  Thereafter, HMCU also learned that NK was attempting to contact management employees during working time and/or on their mobile telephones—telephone numbers which are published by HMCU for internal business purposes only.  To impress the importance of ceasing this activity upon Plaintiffs and NK, Mr. Tichy sent a third letter on July 20, yet again requesting that the solicitation activities immediately cease.  (*Id.*, Exh. E.)

In an e-mail response on July 20, Schwartz denied any solicitation was occurring and also stated: "I was quick to agree that neither we nor our clients should, as a general rule, be contacting potential witnesses or clients about this case during working hours at HSBC facilities."  (*Id.*, Exh. F.)  On July 25, defense counsel followed up to Schwartz's July 20 e-mail with a fourth letter, indicating HMCU's belief that NK had procured and was inappropriately using a copy of HMCU's internal mobile telephone directory.  (*Id.*, Exh. G.)

---

[2] This policy states in pertinent part: "No employee may solicit employees…during work time" and "solicitation and distribution of literature of any type, for any purpose, by non-employees is not permitted at any time…." (Declaration of Jeannette Jennings ["Jennings Decl."], Exh. A.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFENDANTS' MOTION FOR RULE
11(C) SANCTIONS                                    2.                          Case No. C 07 2446 MMC [ECF]

**C.    Plaintiffs Request E-mail Correspondence In Discovery.**

In the course of discovery, Plaintiffs propounded numerous document requests.  In particular, the Plaintiffs' Request for Production No. 15, propounded separately to HMCU and to HBUS, requested that Defendants produce:

> All email or other electronic messages sent to or from Plaintiffs through Defendant's email or computer systems regarding or in any way relating to the hours worked, overtime, and meals and rest periods during the applicable statutory period.

(Declaration of Michelle R. Barrett ["Barrett Decl."], Exh. A.)[3]

**D.    Defendants' Initial Search For Responsive E-mails Reveals Numerous Communications Between Plaintiff Wong And His Attorney, Bryan Schwartz.**

In response to Plaintiffs' discovery requests, Defendants undertook a search of the e-mail system to locate potentially responsive documents.  (Declaration of Ron Lord ["Lord Decl."], ¶ 3.)  As part of their initial search, Defendants discovered a number of e-mail communications between Plaintiff Wong and his attorney, Bryan Schwartz.  (*Id.* at ¶ 4.)  These documents were produced in discovery to Plaintiffs on April 7, 2008.  (Barrett Decl., ¶ 4.)

**E.    Schwartz Intentionally Directs Plaintiff Wong To Destroy Potentially Relevant Evidence.**

In the meantime, Defendants continued their search for information and documents responsive to Plaintiffs' discovery requests.  During that continued search, Defendants discovered further e-mail correspondence between Plaintiff Wong and Schwartz dated December 28, 2007.  (Lord Decl., Exh. A, pg. 33-36.)  Contrary to Schwartz's reassurances to defense counsel in July 2007 that NK would not contact their clients or putative class members about the case during working hours, it is clear from the e-mail correspondence that Schwartz was in fact in contact with

---

[3] Other Requests for Production propounded by Plaintiffs that are arguably relevant to this matter include Request for Production No. 11 (documents describing hours worked by Plaintiffs), No. 17 (time-stamped documents providing an identifiable time for the beginning and ending of work-related activity by Plaintiffs), and No. 33 (documents that may be offered into evidence at trial or depositions or that may be used to refresh witness recollection).  (Barrett Decl., Exh. A.)  While Exhibit A to the Barrett Declaration reflects discovery requests direct to HMCU, Plaintiffs later propounded the exact same Requests for Production upon HBUS.  (*Id.*, ¶ 3.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFENDANTS' MOTION FOR RULE
11(C) SANCTIONS                    3.                    Case No. C 07 2446 MMC [ECF]

1    Plaintiff Wong during Wong's work day.[4]  Moreover, in direct contradiction to his own statements

2    to Defendants regarding the importance of preserving electronic evidence in this case, Schwartz

3    intentionally directed Plaintiff Wong to: "Pls. go through and delete all emails in your In-box and

4    Sent box to/from me." (Lord Decl., Exh. A, pg. 33.) Finally, Schwartz also requested Wong obtain

5    confidential financial and sales data related to individuals who were not represented by NK. (*Id.*)

6    **F.    Plaintiff Wong Knew His Communications With His Attorneys Were Not
         Confidential.**

7

8    Included with Defendants' April 7, 2008 production of documents was a letter notifying

9    Plaintiffs' counsel that Defendants considered Plaintiff Wong to have waived the attorney-client

10   privilege, due to Defendants' express policies notifying employees that e-mail communications

11   using work e-mail are not confidential. (Barrett Decl., Exh. B.) Plaintiff Wong was well aware of

12   Defendants' policies related to e-mail and the fact that e-mail communications are not to be

13   considered confidential.  In fact, at the outset of his employment with HMCU, Plaintiff Wong

14   acknowledged his understanding and agreement to abide by several employment policies, including,

15   but not limited to, the "Electronic Monitoring Policy." (Jennings Decl., Exh. B, MORT000117.)

16   The Electronic Monitoring Policy explicitly states that the policy applies to all full-time and

17   part-time employees and that they have no right of privacy as to information or files "maintained on

18   Company property or transmitted or stored through the Company's telephone, computer, voicemail

19   or e-mail systems."  (*Id.*)  Moreover, the HSBC North American Holdings, Inc. E-mail Policy

20   (hereinafter "E-mail Policy"), which was published and available to Plaintiff Wong at all times on

21   the intranet site, also cautions employees that e-mail is monitored and that such messages are not

22   private. (Declaration of Henry Yip ["Yip Decl."], Exh. A.)  Additionally, since January 1, 2006,

23   each day when Plaintiff Wong logged onto the work computer system, he (like other HBUS and

24   HMCU employees) was warned, through a "Notice to Users," that:

25

26   [4] Defendants' search for responsive information also yielded various other communications from NK
     representatives that are directed to other employees, which occurred during working hours. (Lord

27   Decl., Exh. A, pg. 42-51.) It is clear that NK, despite its representations to the contrary, did not have
     any intention of abiding by their agreement to refrain from contacting employees during working

28   hours.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

1    This is a computer system owned by HSBC BANK plc. All programs and data on this system are the property of, or licensed by HSBC
2    BANK plc. . . . Users (authorized or unauthorized) have no explicit or implicit expectation of privacy.

3
     . . . By using this system, the user consents to such interception,
4    monitoring, recording, copying, auditing, inspection, and disclosure at the discretion of HSBC BANK plc. authorised personnel.

5
     . . . By continuing to use this system you indicate your awareness of
6    and consent to these terms and conditions of use.  LOG OFF IMMEDIATELY if you do not agree to the conditions stated in this
7    warning.

8    (Lord Decl., Exh. B.)

9    **G.    NK Has Condoned And Advanced Unethical And Inappropriate Conduct By Plaintiffs Wong And Chaussy.**

10

11        In addition to the Electronic Monitoring Policy and the E-mail Policy, Wong also affirmed

12   his knowledge of and agreement to abide by Defendants' "Business Principles and Code of Ethics

13   Policy," the "Confidentiality Policy," the "HSBC North America Information Protection Standard

14   (IPS) Information Security Risk Policy," ("IPS Policy") and the "Employee Privacy Policy."

15   (Jennings Decl., Exhs. H, C, D, E, and F, respectively.)  Similarly, Chaussy signed off on his

16   knowledge and agreement to these same policies.  (Jennings Decl., Exh. J.)  Each of these policies

17   includes affirmative obligations placed upon employees to maintain the confidentiality of certain

18   financial information (including financial information about co-workers and customers), and to not

19   use such information for their own purposes.[5]

20        In the December 28 e-mail communication between Plaintiff Wong and Schwartz, Wong

21   admits to transmitting confidential financial and sales data relating to his and his co-workers' sales

22   production for the purpose of demonstrating that his production was allegedly the same as or

23   comparable to his co-workers.  (Lord Decl., Exh. A, pg. 34.)  However, Wong's use of this

24   confidential and private information is strictly prohibited by each of the aforementioned company

25   policies.  Although requested to produce all documents acquired or received by virtue of his

26   _____

27   [5] Similarly, the "Personal Conduct Policy" obligated Plaintiffs Wong and Chaussy to refrain from using company resources and material for personal reasons or their own benefit.  Moreover, the
28   "Removal and Return of Company Property Policy" required them to return, at the end of their employment, any company property in their possession. (Jennings Decl., Exh. G and I.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFENDANTS' MOTION FOR RULE
11(C) SANCTIONS                    5.                    Case No. C 07 2446 MMC [ECF]

1    employment with HMCU, Wong failed, as obligated under Federal Rule of Civil Procedure 34, to

2    produce the documents and/or information referenced in the December 28 e-mail.[6]    Similarly,

3    despite their ethical and legal obligations, NK failed to produce this information on behalf of

4    Plaintiff Wong.[7]    Interestingly, prior to his instruction to Wong to obtain and transmit confidential

5    information to him, Schwartz had earlier received copies of employment policies applicable to Wong

6    and Chaussy, which he had clearly read.[8]    Although Schwartz knew of these policies, he allowed his

7    clients to keep the confidential documents to which they have no right, which is another clear ethical

8    problem.  Schwartz also did not disclose that he had those documents. (Lord Decl., ¶ 10, Exh. E.)

9         Similar to Wong, Chaussy violated these policies by providing his attorney with confidential

10   financial data related to co-worker production, as well as confidential financial data related to the

11   identity of customers and the amounts of customer loans.    In fact, Chaussy produced these

12   documents to HMCU in discovery.  (*Id.*, ¶¶ 10-12, Exhs. F and G.)

13   **III.    ARGUMENT**

14        **A.    Plaintiff Wong Has Waived The Attorney-Client Privilege.**

15             **1.    Wong Waived The Attorney-Client Privilege Because He Had No
                      Expectation Of Confidentiality On The Work Computer Network.**

16

17        Wong waived the attorney-client privilege with respect to his e-mail communications with

18   NK (including, but not limited to, his e-mail communications with Schwartz) over Defendants'

19   computer network because Wong was on notice that he had no expectation of confidentiality on

20   HMCU's computer network.  The attorney-client privilege protects communications between a client

21   and his or her attorney for the purpose of obtaining or providing legal advice.    However,

---

22   [6]  On May 13, 2008, <u>after</u> Defendants filed their original sanctions motion, Plaintiffs' counsel
23   produced a privilege log for Wong (but <u>not</u> for Chaussy).  This privilege log identifies only e-mail
     communications between Wong and his attorneys as privileged, but does not list or allude to the fax
24   containing confidential co-worker financial information that Wong admits (in the December 28 e-
     mail) to sending to Schwartz. (Barrett Decl., Exh. K; Lord Decl., Exh. A, p. 34.)
25   [7]  The letter from NK that accompanied Plaintiff Wong's document production makes plain that this
     information was not produced to Defendants. (Barrett Decl., Exh. E.)
26   [8]  Plaintiffs' counsel received copies of Defendants' policies on September 10, 2007. (Barrett Decl.,
27   ¶ 6.)  Additionally, it is clear one of named Plaintiffs gave Schwartz copies of policies prior to this
     time, as Schwartz referred to these policies during David Gates' deposition in Chicago on
28   September 11, 2007. (Barrett Decl., ¶ 7, Exh. C.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFENDANTS' MOTION FOR RULE
11(C) SANCTIONS                    6.                    Case No. C 07 2446 MMC [ECF]

1    confidentiality of the underlying communication is critical to an assertion of the privilege.   The

2    privilege applies only to communications that are made in confidence and under circumstances that

3    ensure that the communications will remain in confidence.  *See, e.g., In re Qwest Communications*

4    *Intern. Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006) (holding that "the confidentiality of

5    communications covered by the privilege must be jealously guarded by the holder…lest it be

6    waived" because "[t]he Court will grant no greater protection to those who assert the privilege than

7    their own precautions warrant.").   State and federal courts have routinely held that a plaintiff's

8    knowledge of the lack of confidentiality of his communications to counsel prevents the attorney-

9    client privilege from attaching to those communications.  *See Scott v. Beth Israel Med. Ctr. Inc.*,

10   2007 WL 3053351 (N.Y. Sup. Ct. Oct. 17, 2007) (holding employee's e-mails to his counsel were

11   not privileged because they were sent over the employer's computer network with no expectation of

12   privacy); *Long v. Marubeni America Corp.*, 2006 WL 2998671, at *3 (S.D.N.Y. Oct. 19, 2006)

13   (same); *Kaufman v. SunGuard Inv. System*, 2006 WL 1307882, at *4 (D. N.J. May 10, 2006) (same).

14          In *Scott*, the court found the e-mails sent between plaintiff and his counsel were not protected

15   based upon the employer's clearly stated e-mail policy regarding its employees' lack of privacy in

16   their use of the employer's computer network.   *Scott*, 2007 WL 3053351, at *4-*5; *see also*

17   *Thygeson v. U.S. Bancorp*, 2004 WL 2066746, at *20 (D. Or. Sept. 15, 2004) (holding employee had

18   no reasonable expectation of privacy in computer files and e-mail where employee handbook

19   explicitly warned of employer's right to monitor files and e-mail).   In determining whether the

20   communications were made in confidence or not, the *Scott* court considered four requirements:

21   (1) does the corporation maintain a policy banning personal or other objectionable use; (2) does the

22   company monitor the use of the employee's computer or e-mail; (3) do third parties have a right of

23   access to the computer or e-mails; and (4) did the corporation notify the employee, or was the

24   employee aware, of the use and monitoring policies? *Scott*, 2007 WL 3053351, at *4.

25          Here, each of the four *Scott* requirements are easily satisfied by Defendants' policies.  (Yip

26   Decl., Exh. A; Jennings Decl., Exh. B.)  The first requirement is met because the E-mail Policy and

27   Electronic Monitoring Policy provide that personal use must be limited and may not interfere with

28   the employee's work, and that all inappropriate or objectionable use is "never permitted."   (Yip

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108-2693
415.433.1940

DEFENDANTS' MOTION FOR RULE
11(C) SANCTIONS                          7.                    Case No. C 07 2446 MMC [ECF]

1    Decl., Exh. A; Jennings Decl., Exh. B.)  The second requirement is also satisfied because these

2    policies state that Defendants have the right to monitor e-mail and that any use of the "e-mail

3    systems will not remain private." As in *Scott*, the third requirement is not relevant here because the

4    California Evidence Code provides that access by third parties, such as "persons involved in the

5    delivery, facilitation or storage of electronic communication" will not destroy the privilege.  Cal.

6    Evid. Code § 917(b).  In any case, Defendants' E-mail Policy and Electronic Monitoring Policy

7    provide that Defendants reserve the right to disclose e-mail messages to third parties without notice.

8    (Yip Decl., Exh. A, pg. Mort002147; Jennings Decl., Exh. B.)  Finally, the fourth requirement is

9    satisfied because Wong had actual knowledge of the E-mail Policy and Electronic Monitoring

10   Policy, as he signed documents in November 2005 acknowledging that he read and understood

11   Defendants' Electronic Monitoring Policy and Defendants' additional employment policies.

12   (Jennings Decl., Exhs. B (pg. Mort000117), C (pg. Mort000120) and H.)  Accordingly, Wong

13   cannot credibly argue that he had any expectation of confidentiality in his communications with his

14   counsel over his employer's computer network, given that the practical effect of Defendants'

15   policies is to have HMCU "looking over [Wong's] shoulder each time he sen[t] an e-mail." *Scott*,

16   2007 WL 3053351 at *4-*5.

17        In addition to Defendants' E-mail Policy and Electronic Monitoring Policy, each time an

18   employee logs into the work computer system, a Notice appears on the computer screen, stating that

19   the user has "no explicit or implicit expectation of privacy" while using the computer system.  (Lord

20   Decl., Exh. B.)  The Notice further provides:

21            Any or all uses of this system and all files and data on this system may
             be intercepted, monitored, recorded, copied, audited, inspected and
22            disclosed to relevant authorities.

23            By using this system, the user consents to such interception,
             monitoring, recording, copying, auditing, inspection, and disclosure at
24            the discretion of HSBC BANK plc. authorised personnel.

25            . . . By continuing to use this system you indicate your awareness of
             and consent to these terms and conditions of use.  LOG OFF
26            IMMEDIATELY if you do not agree to the conditions stated in this
             warning.

27

28

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFENDANTS' MOTION FOR RULE
11(C) SANCTIONS                        8.                Case No. C 07 2446 MMC [ECF]

1    (*Id.*) Therefore, in addition to the E-mail Policy and Electronic Monitoring Policy he acknowledged,

2    Wong received notice *each time* he logged into the work e-mail system that improper use was

3    prohibited, that his employer may monitor and read his e-mail messages. Each time he logged in

4    and continued computer use, Wong consented to that monitoring and reading. As such, the Notice

5    also satisfies the four requirements the *Scott* court considered.

6        Further to the fact that Wong had no expectation of confidentiality and waived the attorney-

7    client privilege, Wong made no attempt to protect the e-mail communications from disclosure

8    through passwords or encryption, nor did he even label the e-mails as an attorney-client privileged

9    communication. Also, Wong's counsel, Schwartz, clearly knew all along that Wong had no

10   expectation of privacy or confidentiality and should not be using the work e-mail system, as

11   Schwartz eventually (and improperly) directed Wong to delete the e-mail communications sent over

12   the Company's computer network and to switch to Wong's personal Gmail account. (Lord

13   Decl., Exh. A, pg. 33.)

14       Because these e-mail communications were made with full knowledge that they could be

15   read by Defendants, that they were Defendants' property, and that there could be no expectation of

16   confidentiality or privacy regarding the communications, the attorney-client privilege does not apply

17   to Wong's e-mail communications sent and received over Defendants' computer network.

18       **2.    Wong Has Also Waived The Attorney-Client Privilege Because He
             Disclosed The E-mails To Third Parties.**

19

20       Wong has also waived the attorney-client privilege with respect to his e-mail

21   communications with NK because he divulged his communications to third parties. *See, e.g., In re*

22   *Qwest Communications Intern. Inc.*, 450 F.3d at 1185 (holding that "[t]he attorney-client privilege is

23   lost if the client discloses the substance of an otherwise privileged communication to a third party.").

24   Here, Wong disclosed his e-mail communications with Schwartz to at least four other HMCU

25   employees, none of whom were represented by NK at the time. (Lord Decl., Exh. A, pg. 1.)

26   Accordingly, Wong has waived the attorney-client privilege with respect to these e-mail

27   communications.

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFENDANTS' MOTION FOR RULE
11(C) SANCTIONS                9.                Case No. C 07 2446 MMC [ECF]

3. **Any Claim Of Attorney Work Product Privilege Over The E-mail Communications Is Also Waived.**

To the extent Wong or NK attempt to assert that the e-mail communications are protected by the attorney work product privilege, such an assertion fails for similar reasons.  While the work product privilege, unlike the attorney-client privilege, does not depend upon an expectation that the communication will remain confidential, *see* 8 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE: CIVIL 2d § 2024 (2d ed. 1994), a waiver will occur when the information is voluntarily disclosed to an adversary or anyone who has no interest in maintaining confidentiality over the work product. *See United States v. Nobles*, 422 U.S. 225, 239 (1975); *Salomon Bros. Treasury Litig. v. Steinhardt Partners, L.P.*, 9 F.3d 230, 235 (2d Cir. 1993); *see also Laguna Beach Co. Water Dist. v. Superior Court*, 124 Cal. App. 4th 1453, 1459 (2004) (holding waiver will be found where attorney work product is disclosed to someone who has no interest in maintaining confidentiality).

Here, Wong and his counsel Schwartz voluntarily communicated via e-mail over the Company's computer network, and, for the reasons described in III.A.1. above, neither of them had any expectation of privacy or confidentiality in their communications over the network.  Indeed, Schwartz knew all along that they had no expectation of privacy and should not be using the company e-mail system, as Schwartz had obtained and read policies to this regard and he later improperly directed Wong to delete their e-mail communications sent over the work computer network and to switch to Wong's personal Gmail account. (*Id.*, Exh. A, pg. 33.)

4. **The Scope Of The Waiver Is Broad.**

The scope of Wong's and his counsel's waiver of the attorney-client and/or work product privileges is broad, as it includes not just their e-mail communications over the work network but any follow-up discussions regarding the subjects discussed in the e-mails. *See Sony Computer Ent. Am., Inc. v. Great American Insurance Co.*, 229 F.R.D. 632, 635 (N.D. Cal. 2005) (holding that the scope of the privilege waiver includes the contents of the e-mail and any follow-up discussions between counsel and the client regarding the subjects discussed in the e-mail). *See also In re Seagate Tech., LLC*, 497 F.3d 1360, 1372 (Fed. Cir. 2007) (holding that "[t]he widely applied standard for determining the scope of a waiver...is that the waiver applies to all other

1    communications relating to the same subject matter.") (internal citations omitted); *Weil v.*

2    *Investment/Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 23 (9th Cir. 1981) (holding that "it has

3    been widely held that voluntary disclosure of the content of a privileged attorney communication

4    constitutes waiver of the privilege as to all other such communications on the same subject.");

5    *Aclara Biosciences v. Caliper Techs. Corp.*, 2000 U.S. Dist. LEXIS 10585 at *12 (N.D. Cal. 2000)

6    (same).

7         Here, Wong and his counsel voluntarily disclosed numerous e-mail communications over the

8    Defendants' computer network, and these communications were made with full knowledge that they

9    could be monitored and read by Defendants, that they were Defendants' property, and that there

10   could be no expectation of confidentiality or privacy regarding the communications.   Indeed,

11   Wong's counsel Schwartz intentionally directed Wong to delete their e-mail communications and to

12   switch to Wong's personal Gmail account.  (Lord Decl., Exh. A, pg. 33.)  Therefore, the attorney-

13   client privilege and/or work product privileges have been waived.

**B.    Class Counsel's Unethical And Bad Faith Conduct Warrants Disqualification Of Schwartz And NK As Class Counsel.**

**1.    The Legal Standard**

17        In order to serve as class counsel, Schwartz and NK must meet the prerequisites of Rule

18   23(a)(4) to "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  To

19   meet the adequate representation requirement, the class attorneys "must be qualified, experienced,

20   and generally able to conduct the litigation."  *In re Fine Paper Antitrust Litig.*, 617 F.2d 22, 27 (3d

21   Cir. 1980).  As trustee for absent parties in the litigation, the Court has a constant duty to inquire into

22   the professional competency and behavior of class counsel.  *Id.*

23        Class counsel's qualifications are closely scrutinized by courts to assure that the interests of

24   unnamed plaintiffs are adequately represented.  *Huston v. Imperial Credit Commercial Mortgage*

25   *Inv. Corp.*, 179 F. Supp. 2d 1157, 1167 (C.D. Cal. 2001) (citing *Palumbo v. Tele-Comm., Inc.*, 157

26   F.R.D. 129, 132-33 (D.D.C. 1994)).  Further, the Court is vested with the inherent authority to

27   regulate the conduct of litigants and lawyers before it and take any action to cure any wrong

28   committed by the parties or attorneys who appear before it.  *Chambers v. NASCO, Inc.*, 501 U.S. 32,

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

**DEFENDANTS' MOTION FOR RULE 11(C) SANCTIONS**                    11.                    **Case No. C 07 2446 MMC [ECF]**

1    44 (1991); *Erickson v. Newmar Corp.*, 87 F.3d 298, 303 (9th Cir. 1996). The Court's inherent

2    authority includes the power to disqualify an attorney for not only acting improperly but for failing

3    to avoid the appearance of impropriety. *Gas-A-Tron of Ariz. v. Union Oil Co.*, 534 F.2d 1322, 1324

4    (9th Cir. 1976). *See also Cargill Inc., v. Budine*, 2007 U.S. Dist Lexis 48405, at * 22 (E.D. Cal. June

5    22, 2007). Disqualification is more likely in the class action context because class counsel must

6    meet a heightened standard in order to represent absent class members. *Huston*, 179 F. Supp. 2d at

7    1167.

8            **2.**      **Schwartz's And NK's Conflict Of Interest With Putative Class Members**
                         **Warrants Their Disqualification As Class Counsel.**

9

10           Schwartz and NK violated the privacy rights of putative class members by requesting,

11    obtaining and producing documents that contain confidential information about class members who

12    either were *not* yet clients or who had not consented to have their private information released.

13    Without obtaining the consent of the employees at issue, Schwartz sought, requested and obtained

14    confidential financial information from Wong about putative class members' loan production and

15    earnings. In a December 28 e-mail, Schwartz inquired about the performance of other loan officers

16    as compared to Wong. (Lord Decl., Exh. A, pg. 33-35.) In response, Wong replied that he had

17    provided Schwartz a fax with funding numbers and specifically disclosed the year-to-date numbers

18    of his co-workers. (*Id.* at pg. 34.) This confidential data could be used to determine the employees'

19    compensation, which is private information that employees have a right to protect. *See International*

20    *Fed'n. of Prof. and Technical Engineers, Local 21, AFL-CIO v. Superior Court,* 42 Cal. 4th 319, 330

21    (2007) ("[T]he right of privacy concerns one's feelings and one's own peace of mind and certainly

22    one's own personal financial affairs are an essential element of such peace of mind."); *Tien v.*

23    *Superior Court,* 139 Cal. App. 4th 528, 539 (2006) ("The right to privacy is an 'inalienable right'

24    secured by article I, section 1 of the California Constitution. It protects against the unwarranted,

25    compelled disclosure of various private and sensitive information regarding one's personal life,

26    including his or her financial affairs....").

27           By requesting this data from Wong, Schwartz and NK knowingly encouraged Wong's

28    violation of several company policies. Schwartz and NK were aware that Wong's transmission of

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

**DEFENDANTS' MOTION FOR RULE
11(C) SANCTIONS**           12.              **Case No. C 07 2446 MMC [ECF]**

1   this information violated the company's confidentiality policies which require employees to preserve

2   the confidentiality of employee information, customer information and other proprietary information

3   maintained by Defendants. *See* II.G., *supra*.

4   Additionally, Schwartz and NK improperly sought and obtained confidential financial

5   information about HMCU, third party customers, and putative class members from Chaussy.   In

6   response to document requests, Schwartz and NK produced confidential information about third

7   party customers and putative class members on behalf of Plaintiffs.   Specifically, on behalf of

8   Chaussy, Schwartz and NK produced an e-mail and attachment entitled "Status Report by LO"

9   which reveals the year-to-date production and funding numbers for Northern California Loan

10  Officers. (Barrett Decl., Exh. F.)  Particularly troubling is the inclusion of customer information

11  including the amount of the loan, the rate at which it was obtained and the approval status of the

12  loan.  (*Id.*)  On behalf of Chaussy, Schwartz also produced a document referred to as "Weekly

13  Production by Offices" which also disclosed proprietary information, including production numbers

14  and performance of various regional offices. (*Id.*, Exh. G.)  Again, Schwartz and NK were aware of

15  the company's policies regarding the preservation of confidential proprietary information and

16  nevertheless condoned their clients' acquisition and disclosure of the data for their own personal use.

17  By condoning and actively encouraging their clients' willful violation of company policies

18  and compromising the privacy interests of third party customers and putative class members,

19  Schwartz and NK have created a conflict interest between themselves and the class.   It is clear that

20  Schwartz and NK are willing to disregard the competing privacy interests of putative class members

21  (including those who have not consented to join the case) in order to advance their case against

22  Defendants.  Therefore, Schwartz and NK should be disqualified or found to be inadequate as class

23  counsel.

24      **3.      Schwartz's Directive To Wong To Destroy Evidence Was Unethical And
             Warrants His And NK's Disqualification As Class Counsel.**

25

26  Schwartz acted contrary to his ethical responsibilities by directing his client to intentionally

27  destroy potentially relevant e-mails. (Lord Decl., Exh. A, pg. 33.) For example, California Rules of

28  Professional Conduct prohibit members from suppressing evidence that the member or the member's

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFENDANTS' MOTION FOR RULE
11(C) SANCTIONS                    13.                    Case No. C 07 2446 MMC [ECF]

1    client has a legal obligation to reveal or produce.  Cal. Rule Prof. Conduct 5-220.  Moreover, the

2    American Bar Association considers it professional misconduct for a lawyer to "engage in conduct

3    involving dishonesty, fraud, deceit or misrepresentation" or to "engage in conduct that is prejudicial

4    to the administration of justice."  Model Rule of Prof. Conduct 8.4(c)-(d).  The Model Rules also

5    prohibit any attorney from "unlawfully obstruct[ing] another party's access to evidence or

6    unlawfully alter[ing], destroy[ing] or conceal[ing] a document or other material having potential

7    evidentiary value."  Model Rule of Prof. Conduct 3.4(a).  Attorneys are also prohibited from

8    assisting *another person* to engage in such an act.  *Id.* (emphasis added).

9        If the Court has cause to believe that an attorney engaged in unprofessional conduct, the

10    Court may conduct contempt proceedings or impose appropriate sanctions.  Northern Dist. Civ.

11    Local Rule 11-6(a).  A motion to disqualify counsel is the proper method for a litigant to bring the

12    issues of breach of ethical duties to the attention of the Court.  *In re American Airlines*, 972 F.2d

13    605, 611 (5th Cir. 1992).  *See also Hoelscher v. Baggett*, 2008 U.S. Dist. LEXIS 30713, *3 (W.D.

14    La. Apr. 15, 2008); *El Camino Res., LTD v. Huntington Nat'l Bank*, 2007 U.S. Dist. LEXIS 67813,

15    *30 (W.D. Mich. Sept. 13, 2008).

16        Here, as evidenced by Schwartz's May 29 letter, he was aware of the parties' obligations to

17    preserve electronically stored information including e-mails.  His letter states in pertinent part:

18        [t]he laws and rules prohibiting destruction of evidence apply to
          electronically stored information in the same manner that they apply to
19        other evidence.  As you know, due to its format, electronic information
          is easily deleted, modified, or corrupted.  Accordingly, we ask that
20        Defendants take every reasonable step to preserve this information
          until the final resolution of this matter.
21

22    (Tichy Decl., Exh. A.)  Further, it is clear that Schwartz was further on notice of this obligation

23    given defense counsel's May 30 letter, which stated that, "[e]lectronic information should not be

24    deleted, modified or corrupted, and, of course, any writings need to be preserved." (*Id.*, Exh. B.)

25        Despite the parties' mutual agreement to preserve electronic information, during discovery,

26    Defendants found an e-mail communication between Schwartz and Wong in which Schwartz directs

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

**DEFENDANTS' MOTION FOR RULE
11(C) SANCTIONS**                14.                **Case No. C 07 2446 MMC [ECF]**

1    Wong to delete all e-mails between Wong and himself.[9]  (Lord Decl., Exh. A, pg. 33.)  Thus, in

2    contravention of the parties' agreement and responsibility to preserve electronic information,

3    Schwartz knowingly directed Wong to spoliate documents that were potentially relevant to the

4    litigation of this case.[10]   Schwartz's directive to Wong only begs the question of what other

5    compromising measures he has taken throughout litigation or may be willing to take.  This directive

6    not only breaches Schwartz's ethical responsibilities as an officer of the court, but also compromises

7    his integrity and trustworthiness as class counsel.  *See, e.g., Savino v. Computer Credit, Inc.,* 164

8    F.3d 81, 87 (2d Cir. 1998) (in judging the adequacy of representation, courts should also consider the

9    honesty and trustworthiness of the named plaintiff); *see also White v. E-Loan, Inc.,* 2006 U.S. Dist.

10   LEXIS 62654, at *10 (N.D. Cal. Aug. 18, 2006) ("Some courts have also examined the personal

11   integrity of class representative."); *see also Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 626 n.

12   20 (1997) ("The adequacy heading also factors in competency and conflicts of class counsel."). [11]

13          In fact, Schwartz's unscrupulous conduct is not limited to the directive to Wong to spoliate e-

14   mails.  In an e-mail to defense counsel on July 20, Schwartz wrote: "I was quick to agree that neither

15   we nor our clients should, as a general rule, be contacting potential witnesses or clients about this

16   case during working hours at HSBC facilities." (Tichy Decl., Exh. F.)  Defendants' search for

17   responsive documents reveal, however, that Schwartz and other members of NK have in fact

18   repeatedly contacted employees during work hours and attempted to mount a case or case(s) against

19   Defendants using company resources and time.  (Lord Decl., Exh. A.)  Schwartz's prior empty

20   assurances that he and his firm would refrain from contacting employees during work hours

21   _____

22   [9] Plaintiff may erroneously claim that communications over company e-mail between himself and
     Schwartz are protected by the attorney-client privilege.  However, as argued in III.A.1. above, Wong

23   unequivocally waived any privilege by using the company's computer network to communicate with
     his attorney.

24   [10] A party's destruction of evidence qualifies as willful spoliation if the party has "some notice that
     the documents were *potentially* relevant to the litigation before they were destroyed." *Leon v. IDX*

25   *Systems Corp.,* 464 F.3d 951, 959 (9th Cir. 2006).

26   [11] The FED R. CIV. P. 23(g) advisory committee notes on 2003 amendments state: "Until now, courts
     have scrutinized proposed class counsel as well as the class representative under Rule 23(a)(4).  This

27   experience has recognized the importance of judicial evaluation of the proposed lawyer for the class,
     and this new subdivision builds on that experience rather than introducing an entirely new element

28   into the class certification process."

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFENDANTS' MOTION FOR RULE
11(C) SANCTIONS                              15.                    Case No. C 07 2446 MMC [ECF]

1  demonstrates unethical behavior and his failure to act in good faith throughout the litigation process.

2  But for Defendants' efforts to respond to discovery, it would not have become aware of the

3  bad faith nature and extent of Schwartz's conduct.   Schwartz and NK's willful disregard of the

4  ethical cannons coupled with bad faith assurances to opposing counsel, compromise the legal rights

5  of absent class members. *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1077 (2d Cir.

6  1995) ("Both class representatives and class counsel have responsibilities to absent class

7  members."); *cf. London v. Wal-Mart Stores*, 340 F.3d 1246, 1253 (11th Cir. 2002) ("Because all

8  members of the class are bound by the res judicata effect of the judgment, a principal factor in

9  determining the appropriateness of class certification is the forthrightness and vigor with which the

10  representative party can be expected to assert and defend the interests of the members of the class.")

11  To allow Schwartz and NK to represent the class(es) they seek to represent will only perpetuate the

12  unethical taint injected into this litigation by their behavior.   Thus, as an appropriate remedy to

13  restore the integrity of the litigation process, Defendants request disqualification of Schwartz and

14  NK as class counsel.

15  **4.    NK's Failure To Produce Documents Directly Responsive to Defendants' Discovery Requests Warrants Their Disqualification As Class Counsel.**

16

17  NK's deliberate omission of responsive documents to Defendants' discovery requests

18  warrants disqualification, as well.  As officers of the court and class counsel, NK has an ethical and

19  legal responsibility to produce directly responsive documents, which they know to exist and possess,

20  in good faith.  Defendants' Request for Production of Documents Nos. 2, 4, and 30 ask for items

21  acquired by Plaintiffs by virtue of their employment with HMCU, documents removed from HMCU,

22  and correspondence between Plaintiffs and other HMCU employees regarding the allegations in the

23  First Amended Complaint filed in this case. (Barrett Decl., Exh. D.)[12]  In response, on February 29,

24  both Plaintiffs Wong and Chaussy agreed to produce "all documents in [their] possession relating to

25  [their] employment with Defendant."  (*Id.*, Exhs. I and J.)  Further, in response to Request No. 30,

26  Wong claimed that he had already "produced 'all statements'" he had in his possession.  (*Id.*, Exh. I.)

27

28  [12] The same requests were propounded on Plaintiff Chaussy.  (Barrett Decl., ¶ 9.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFENDANTS' MOTION FOR RULE
11(C) SANCTIONS                16.

1    Yet, in the course of searching for documents responsive to Plaintiffs' discovery requests,

2    Defendants discovered a December 28 e-mail chain between Wong and Schwartz where Wong

3    admits that he faxed Schwartz year-to-date funding numbers related to Wong and his co-workers.

4    (Lord Decl., Exh. A, pg. 34.)  This information is absent from Wong's responses to Defendants'

5    discovery requests. (Barrett Decl., Exh. E.)  Moreover, Wong and his attorneys have not claimed that

6    this information is privileged through a privilege log.  (*Id.*, Exh. K.)  Further, Defendants have

7    discovered e-mail correspondence between Wong and his co-workers that refers or relates to the

8    claims alleged in the First Amended Complaint, as asked for in Request No. 30, that Wong has not

9    produced in discovery. (*Id.*, Exh. 30; Lord Decl., Exh. A, pg. 1.)

10          NK's failure to produce responsive documents, on behalf of Wong, violates their

11    responsibility to the court and undermines their credibility as class counsel.  As class counsel, NK

12    has a fiduciary responsibility to "comply wholeheartedly and fully with the discovery requirements

13    of modern federal practice."  *Cf. Norman v. Arcs Equities Corp.*, 72. F.R.D. 502, 506 (S.D.N.Y.

14    1976).  NK's blatant failure to produce this information also violates class counsel's ethical

15    responsibility to respond to Defendants' requests in good faith.  *See* Model Rules of Professional

16    Conduct 3.4 ("A lawyer shall not in pretrial procedure...fail to make reasonable diligent effort to

17    comply with a legally proper discovery request by an opposing party."); Cal. Rule Prof. Conduct 5-

18    220. ("A member shall not suppress any evidence that the member or member's client has a legal

19    obligation to reveal or to produce.").  Therefore, NK should be disqualified or deemed inadequate as

20    class counsel for failure to fulfill their legal and ethical obligations in this litigation.

21       **C.**    **Plaintiffs Wong And Chaussy Should Be Disqualified As Class Representatives.**

22           **1.**    **The Legal Standard**

23          Rule 23(a) of the Federal Rules of Civil Procedure sets forth four prerequisites for

24    maintenance of a class action. Fed. R. Civ. P. 23(a). The fourth prerequisite concerns the adequacy

25    of the class representative: "One or more members of a class may sue...as representative parties on

26    behalf of all only if...(4) the representative parties will fairly and adequately protect the interest of

27    the class." Fed. R. Civ. P. 23(a)(4); *London*, 340 F.3d at 1253 ("Among the prerequisites to the

28    maintenance of a class action is the requirement of Rule 23(a)(4) that the class representatives 'will

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

**DEFENDANTS' MOTION FOR RULE 11(C) SANCTIONS**      17.      **Case No. C 07 2446 MMC [ECF]**

1    fairly and adequately protect the interest of the class.'"). "[A]s class representatives, the moving

2    plaintiffs have fiduciary duties towards the other members of the class." *Martens v. Thomann*, 273

3    F.3d 159, 173 n.10 (2d Cir. 2001). Consistent with the fiduciary approach to class representation, a

4    named plaintiff must have the same interests as the class. *Amchem Products*, 521 U.S. at 625-26;

5    *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (adequacy of representation requires

6    proof that class representatives do not have any conflicts of interest with other class members).

7        In judging the adequacy of representation, courts also consider the honesty and

8    trustworthiness of the named plaintiff. *Kline v. Wolf*, 702 F.2d 400, 402-03 (2d Cir. 1983) (citing

9    *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 549-50 (1949)); *see also In Re NYSE*

10   *Specialists Securities Litig.*, 240 F.R.D. 128, 144 (S.D.N.Y. 2007) (in determining the adequacy of a

11   class representative the Court "allowed for the consideration of characteristics such as honesty,

12   trustworthiness, and credibility.")

13       **2.    Wong's Lack of Credibility And Conflict Of Interest With Class
              Members Warrants His Disqualification As Class Representative.**

14

15       **a.    Wong's Misuse And Disclosure Of Confidential Information
              Creates A Conflict Of Interest With Putative Class Members.**

16       Wong's willingness to compromise the privacy interests of putative class members by

17   disclosing confidential information about their job performance and compensation demonstrates that

18   he will sacrifice the interests of the putative class members to further his own interests. As such, it

19   renders him an inadequate class representative. The adequacy inquiry "serves to uncover conflicts

20   of interest between named parties and the class they seek to represent." *Amchem Products*, 521 U.S.

21   at 625.

22       Here, it is abundantly clear that Wong's narrow self-interest creates a conflict between him

23   and the class members he seeks to represent. For example, in the December 28 e-mails between

24   Wong and Schwartz, Wong admitted to faxing confidential information about co-workers' sales

25   production. (Lord Decl., Exh. A, pg. 34.) First, transmission of this information is in clear violation

26   of several company policies. (Jennings Decl., Exhs. C-G.) Second, transmission of this information

27   violates the privacy rights of putative class members by disclosing information about the employees'

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

**DEFENDANTS' MOTION FOR RULE
11(C) SANCTIONS**                    18.                    **Case No. C 07 2446 MMC [ECF]**

1  job performance and compensation. *See International Fed'n. of Prof. and Technical Engineers*, 42

2  Cal. 4th at 330; *Tien*, 139 Cal. App. 4th at 539.

3      Wong's failure to maintain putative class members' right to privacy and willingness to

4  commit violations of Defendants' policies on confidentiality and ethical conduct demonstrate he is

5  willing to compromise the interests of putative class members to advance his own interest in this

6  case. One can only speculate as what other personal information Wong is willing to disclose without

7  the consent of a putative class member for his own gain. The Court should therefore disqualify him

8  as class representative. *Goetsch v. Shell Oil Co.*, 197 F.R.D. 574, 579 (W.D. N.C. 2000) ("Where

9  the class representative's zeal may be tempered by his own financial prospects, he is not an adequate

10 representative.")

11      **b.    Wong's Violation Of Several Company Policies Renders Him**
          **Untrustworthy And Unfit To Serve As Class Representative.**

12

13      In the course of disclosing confidential information outside of HMCU and HBUS, Wong not

14 only invaded the privacy rights of third party customers and putative class members but also violated

15 several company policies. Defendants take every possible measure to inform employees of their

16 responsibility to preserve the confidentiality and privacy of customers and employees, and the

17 employees are advised of these policies in hard copy and/or the intranet. (Jennings Decl., ¶¶ 5-9.)

18      Wong's transmission of confidential financial and sales data relating to his co-workers' sales

19 production was a willful violation of these policies which undermines his integrity and

20 trustworthiness as class representative. For example, it is clear Wong violated Defendants'

21 "Business Principles and Code of Ethics Policy":

22          We expect you to treat information entrusted to us by our customers
            and employees as you perform your duties for the Corporation as
23          confidential and privileged. This includes information relating to
            deposit and loan balances...employee/salary information....You must
24          not disclose confidential information to anyone either inside or outside
            the Corporation who does not have a legitimate need to know the
25          information. Your obligation to maintain the confidential information
            continues even after you leave the corporation.
26

27 (*Id.*, Exh. C.)

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFENDANTS' MOTION FOR RULE
11(C) SANCTIONS                    19.                    Case No. C 07 2446 MMC [ECF]

1    Wong also violated Defendants' "Confidentiality Policy," which prohibits disclosure of

2    confidential or proprietary information, which includes customer and employee information and

3    financial and sales data, whether intentionally or through carelessness. (Jennings Decl., Exh. D.)

4    Similarly, the "IPS Policy" holds employees responsible for the safeguarding of confidential

5    information, such as customer information and employee information (including compensation and

6    performance). (Jennings Decl., Exh. E.) Also, Defendants' "Employee Privacy Policy" states that

7    "[a]nyone who intentionally seeks out employee-related information to which he/she has access but

8    does not have legitimate need to know will be subject to disciplinary action up to and including

9    termination." (*Id.*, Exh. F.)

10    Wong further violated the company's solicitation policy by using the company's e-mail

11    system to solicit other employees to participate in the class action. Defendants' "Workplace

12    Solicitation and Distribution Policy" states in pertinent part that employees "can't solicit or

13    distribute non-business materials during [their] work time." (*Id.*, Exh. A.) Defendants' search of its

14    e-mail system reveals, however, that Wong forwarded e-mails exchanged between himself and

15    Schwartz regarding the class action and asked the recipients of his e-mail whether they are interested

16    in joining a meeting with Schwartz. (Lord Decl. Exh. A, pg. 1-3.)

17    Wong's willful violation of these policies and cavalier disregard of his ethical and moral

18    responsibilities as an HMCU employee proves he is unfit to adequately represent the class and fulfill

19    his fiduciary responsibilities as class representative. *Kline,* 702 F.2d at 402-03 (to judge the

20    adequacy of representation, courts may consider the honesty and trustworthiness of the named

21    plaintiff) (citing *Cohen,* 337 U.S. at 549-50); *see also In Re NYSE Specialists Securities Litig.,* 240

22    F.R.D. at 144 (in determining the adequacy of a class representative the Court "allowed for the

23    consideration of characteristics such as honesty, trustworthiness, and credibility.").

24            **c.**     **Wong's Lack Of Credibility Also Compromises The Interests Of Class Members.**

25

26    Wong's e-mail communications with Schwartz also reveal contradictions in his deposition

27    testimony. In *Evans v. IAC/Interactive Corp.,* the court questioned the fitness of named plaintiff to

28    serve as class representative because of conflicting statements between Plaintiffs' declarations and

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108-2693
415.433.1940

DEFENDANTS' MOTION FOR RULE
11(C) SANCTIONS                 20.                 Case No. C 07 2446 MMC [ECF]

1  deposition testimony. The court reasoned "[t]he discrepancies between the declarations and the

2  depositions are certainly troubling and…raise significant questions about the competence, if not the

3  integrity, of the Plaintiffs and their counsel." 244 F.R.D. 568, 578 (C.D. Cal. 2007). "These

4  discrepancies might well cause a fact finder to focus on Plaintiffs' credibility to the determent of

5  absent class members." *Id.*

6       Similarly, in this case, statements made by Wong to Schwartz about the number of overtime

7  hours worked contradict Wong's deposition testimony. On April 1, 2007, prior to filing the lawsuit,

8  Wong indicates, in response to Schwartz's question regarding "overtime hours" worked in a typical

9  week, that he regularly works a certain number of hours over forty in a week. (Lord Decl., Exh. A,

10  pg. 1.) Later, however, after filing the lawsuit, Wong contradicts the information revealed in his e-

11  mail with Schwartz and *nearly doubles* his alleged overtime worked per week in his deposition

12  testimony. (Barrett Decl., Exh. H.) Moreover, Wong further contradicts himself in a sworn

13  declaration submitted to the Court in support of Plaintiffs' Motion for Conditional Certification by

14  stating that he regularly works 65 hours per week. (Barrett Decl., ¶ 16, Exh. L.) The revelation of

15  Wong's earlier statements and subsequent sworn statements, all of which contract each other, casts

16  doubt on his credibility and motive in serving as class representative. Because Wong is vulnerable

17  to attacks on his credibility, the rights of absent members are compromised. *Kline,* 702 F.2d at 401-

18  02. Therefore, Defendants respectfully request Wong's disqualification as class representative.

19       **3.      The Court Should Also Dismiss Chaussy As Class Representative.**

20           **a.      Chaussy's Improper Taking And Disclosure Of Confidential**
             **Information Of Third Parties Warrants His Disqualification As**
21           **Class Representative.**

22       Chaussy has also proven himself an inadequate class representative through his decision to

23  take confidential and proprietary information from HMCU regarding customers and co-worker

24  production and give that information to his counsel. Chaussy's own discovery responses

25  demonstrate that he gave this private financial information regarding customers and co-workers to

26  his counsel. The documents that Plaintiff Chaussy took from HMCU and gave to his counsel

27  contain financial information regarding customers, including customers' names and financial

28  information related to mortgages. There is no question that such information is protected by the

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFENDANTS' MOTION FOR RULE
11(C) SANCTIONS                    21.                    Case No. C 07 2446 MMC [ECF]

1    customer's right to privacy. *See, e.g., Hoffmann Corp. v. Superior Court*, 172 Cal. App. 3d 357, 363

2    (1985) (holding that the defendant's customer list was a trade secret not subject to discovery); *Valley*

3    *Bank of Nevada v. Superior Court*, 15 Cal. 3d 652, 657 (1975) (holding that bank customers'

4    financial information is protected by the right to privacy under the California Constitution).

5    Identifying, contact and financial information is at the heart of the right to privacy. Despite his

6    familiarity with Defendants' strict policies prohibiting disclosure of customer information (Jennings

7    Decl., Exhs. C, D, and E), Chaussy took confidential and proprietary customer information and, in

8    violation of the customers' privacy rights, provided the information to his counsel. This type of

9    dishonest conduct is exactly the type of conduct that renders an individual an inadequate class

10   representative. *In Re NYSE Specialists Securities Litig.*, 240 F.R.D. at 144 (in determining the

11   adequacy of a class representative the Court "allowed for the consideration of characteristics such as

12   honesty, trustworthiness, and credibility.") As a result, the Court should dismiss Chaussy as a class

13   representative because he has engaged in reprehensible and dishonest conduct in litigating this

14   action.

### D.    The Court Should Also Impose Monetary Sanctions And/Or Award Attorneys Fees For Bad Faith Conduct By Schwartz, NK, Wong And Chaussy.

17       As described above, class counsel and class representatives Wong and Chaussy's unethical

18   and bad faith conduct warrant sanctions. Federal courts have the inherent power to manage their

19   own proceedings and to control the conduct of those who appear before them. The Court's inherent

20   authority includes the power to impose sanctions against *both* attorneys *and* parties for "bad faith"

21   conduct. *Chambers,* 501 U.S. at 43. In invoking the inherent power to punish conduct which abuses

22   the judicial process, a court must exercise discretion in fashioning an appropriate sanction, which

23   may range from dismissal of a lawsuit to an assessment of attorney's fees. *Id.* at 45.

24       Under its inherent power, a district court may also award sanctions in the form of attorneys'

25   fees against a party or counsel who acts in bad faith. *Leon,* 464 F.3d 951, 961(9th Cir. 2006) (citing

26   *Primus Auto Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997)). Before awarding such

27   sanctions the court must make an express finding that the sanctioned party's behavior "constituted or

28   was tantamount to bad faith." Here, class counsel acted in bad faith by breaching their ethical

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFENDANTS' MOTION FOR RULE
11(C) SANCTIONS                    22.                    Case No. C 07 2446 MMC [ECF]

1  responsibilities to this Court and to the putative class. Similarly, class representatives Wong and

2  Chaussy acted in bad faith by acting contrary to the interests of putative class members and thus

3  demonstrating their inadequacy as class representatives. Therefore, Defendants respectfully request

4  that the Court impose monetary sanctions and/or award attorneys' fees against both class counsel

5  and Wong and Chaussy.

6  **IV.    CONCLUSION**

7        Defendants respectfully request that the Court issue an order disqualifying Plaintiffs'

8  counsel, as well as an order disqualifying Wong and Chaussy as class representatives. Moreover,

9  Defendants request sanctions be imposed upon Plaintiffs and their counsel and that Defendants be

10  awarded attorneys' fees related to the preparation of this motion.

11  Dated: September 5, 2008                    Respectfully submitted,

12                                                   /s/ Michelle R. Barrett
                                                 MICHELLE R. BARRETT
13                                               LITTLER MENDELSON
                                                 A Professional Corporation
14                                               Attorneys for Defendants
                                                 HSBC MORTGAGE CORPORATION (USA)
15                                               and HSBC BANK USA, N.A.

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA 94108-2693
415.433.1940

DEFENDANTS' MOTION FOR RULE
11(C) SANCTIONS                          23.                    Case No. C 07 2446 MMC [ECF]