1  Donald H. Nichols, MN State Bar No. 78918
   (admitted **pro hac vice**)
2  Paul J. Lukas, MN State Bar No. 22084X
   (admitted **pro hac vice**)
3  Tim C. Selander, MN Bar No. 0387016
   (admitted **pro hac vice**)
4  NICHOLS KASTER & ANDERSON, PLLP
   4600 IDS Center
5  80 S. 8th Street
   Minneapolis, MN 55402
6
   Bryan J. Schwartz, CA State Bar No. 209903
7  Matthew C. Helland, CA State Bar No. 250451
   NICHOLS KASTER & ANDERSON, LLP
8  One Embarcadero Center, Ste. 720
   San Francisco, CA 94111
9
   Attorneys for Individual and Representative Plaintiffs
10
                    **IN THE UNITED STATES DISTRICT COURT**
11                   **NORTHERN DISTRICT OF CALIFORNIA**
12
13 Philip Wong, Frederic Chaussy, Leslie       Case No: 3:07-cv-2446
   Marie Shearn, and Chad Barbiere,
   individually, on behalf of all others        **The Honorable Maxine M. Chesney**
14 similarly situated, and on behalf of the
   general public,                              **PLAINTIFFS' MOTION FOR CLASS
15                                              CERTIFICATION UNDER FED.R.CIV.P.
   Plaintiffs,                                  23**
16
17        vs.                                       Hearing Date:    October 10, 2008
                                                    Time:            9:00 a.m.
18 HSBC Mortgage Corporation (USA);                 Courtroom:       7 (19th floor)
   HSBC Bank USA, N.A.; and DOES 1
19 through 50, inclusive,                           Date originally filed:    May 7, 2007
20 Defendants.
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ....................................................................... 1

MEMORANDUM OF LAW AND POINTS OF AUTHORITIES........................................... 2

I. STATEMENT OF RELEVANT FACTS .................................................................. 4

A. Defendants Uniformly Consider Loan Officers to Be Exempt, Outside Salespeople, Whose Job Is Only To Sell. ........................................................................... 4

   1. This Court's findings and recent discovery establish that Defendants apply the outside sales exemption to all loan officers, who are entirely focused on sales. ........................... 4

B. Defendants Have a National Policy Whereby Loan Officers Suffer Deductions From Their Pay for Uncollected Application Fees. ........................................................ 7

C. Putative Class Members Were Afraid To Join The FLSA Collective Action. .................. 8

II. CLASS CERTIFICATION ARGUMENT ............................................................... 9

A. Plaintiffs Have Established Each Element Under Rule 23 for Certification and the Court Should, Therefore, Certify the Proposed Class ............................................ 9

   1. The Rule 23 standard favors certification here. ................................................. 9

   2. Plaintiffs satisfy the numerosity requirement. ................................................. 11

   3. Questions of law and fact are common to all members of the proposed class. ........... 11

   4. The claims of the representative parties are typical of the claims of the class. ........... 13

   5. The Plaintiffs will fairly and adequately protect the interests of the class. ................ 14

   6. The proposed class meets the requirements of Rule 23(b)(3). ............................... 14

      a) Common issues predominate over individual matters. ..................................... 14

      b) A class action is superior to other methods of litigation. .................................. 16

B. Policy Justifications Support Class Certification .................................................. 18

   1. The potential for retaliation deterred putative Plaintiffs in the instant case from joining the FLSA class, and therefore class certification is warranted. ........................... 20

   2. The anticipated overtime awards are modest, so that individuals would have little incentive or ability to litigate, and the employer would receive a windfall for violating the overtime laws. .......................................................................................... 20

   3. Many absent, putative plaintiffs are unaware their right to overtime has been violated.. ...................................................................................................... 22

   4. In this case, a class action is needed to assure the effective enforcement of statutory overtime policies, because of real-world obstacles. ................................................. 22

   5. Additional policy justifications support certification. ......................................... 23

C. This Court Should Appoint The Undersigned Class Counsel. .................................. 24

D. This Court Should Appoint Wong, Chaussy, Shearn, and Barbiere as Class Representatives. ............................................................................................ 24

E. The Plaintiffs' Proposed Form and Manner of Service of the Notice are Adequate. ...... 24

III. CONCLUSION ............................................................................................ 25

1

# TABLE OF AUTHORITIES

2

**Cases**

3

**Adames v. Mitsubishi Bank, Ltd.,**
133 F.R.D. 82 (E.D.N.Y.1989) ................................................................................ 20

4

**Al-Safin v. Circuit City Stores, Inc.,**
394 F.3d 1254 (9th Cir. 2005)…………………………………………………………19

5

**Anderson v. Mt. Clemens Pottery Co.,**
328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946) ................................................ 17

6

**Ansoumana v. Gristede's Operating Corp.,**
201 F.R.D. 81(S.D.N.Y. 2001) ....................................................................... 19, 20, 23

7

**Arkansas Educ. Ass'n v. Board of Educ. of Portland, Arkansas School Dist.,**
446 F.2d 763 (8th Cir.1971); ................................................................................... 20

8

9

**Barrentine v. Arkansas-Best Freight Sys., Inc.,**
450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981) ........................................... 19

10

11

**Besinga v. US,**
923 F.2d 133 (9th Cir. 1991)................................................................................... 24

12

**Blackie v. Barrack,**
524 F.2d 891, 901 FN17 (9th Cir.1975) ............................................................ 11, 15

13

14

**Block v. City of Los Angeles,**
253 F.3d 410, 419 n.2 (9th Cir. 2001).......................................................................... 7

15

**Calin Corp. v. Ace American Ins. Co.,**
2007 WL 3010570, at *7 (N.D.Cal. October 12, 2007)............................................. 7

16

17

**Cervantes v. Sugar Creek Packing Co.,**
210 F.R.D. 611 (S.D. Ohio 2002) ............................................................................ 22

18

**Chun-Hoon v. McKee Foods,**
2006 WL 3093764, *4 (N.D.Cal. 2006); ................................................................. 10

19

20

**Cooper v. QC Financial Services, Inc.,**
2007 W: 974100 (D. Ariz. 2007)…………………………………………………………19

21

**Dale v. Comcast Corp.,**
2007 WL 2471222 (11th Cir. 2007)........................................................................... 19

22

23

**Deposit Guaranty Nat'l Bank v. Roper,**
445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980) ....................................... 19, 21

24

**Discover Bank v. Shea,**
827 A.2d 358 (N.J.Super.L.2001)…………………………………………………...…19

25

26

**Doerhoff v. General Growth Properties, Inc.,**
2006 WL 3210502 (W.D.Mo. 2006)......................................................................... 19

27

28

PLAINTIFFS' MOTION UNDER FED.R.CIV.P. 23

**Dukes v. Wal-Mart, Inc.,**
   F.3d ----, 2007 WL 4303055, *3 (9th Cir. December 11, 2007)..................................... 12, 13, 18

**EEOC v. Morgan Stanley & Co., Inc.,**
   206 F.Supp.2d 559 (S.D.N.Y. 2002)....................................................................... 20

**Eisen v. Carlisle & Jacquelin,**
   417 U.S. 156 (1974).............................................................................................. 10

**General Tel. Co. of S v. Falcon,**
   457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) ......................................... 19

**Gentry v. Superior Court (Circuit City),**
   42 Cal.4[th] 443 (2007) ............................................................................... 19, 21, 22, 23

**Gilmer v. Interstate/Johnson Lane Corp.,**
   500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) ........................................... 21

**Grunin v. International House of Pancakes,**
   513 F.2d 114 (8th Cir.)......................................................................................... 25

**Gulino v. Board of Educ. of the City Sch. Dist. of New York,**
   201 F.R.D. 326 (S.D.N.Y.2001) ........................................................................... 22

**Gutierrez v. Kovacevich "5" Farms,**
   2004 WL 3745224 (E.D.Cal.) .................................................................... 11, 15, 22

**Hanlon v. Chrysler Corp.,**
   150 F.3d 1011 (9th Cir.1998)......................................................................... 14, 15

**Hilao v. Estate of Ferdinand Marcos,**
   103 F.3d 767 (9th Cir.1996)................................................................................. 20

**Hyde v. Stanley Tools,**
   107 F.Supp.2d 992, at 993 (E.D. La. 2000)……………………………………...…………..7

**In re Wal-Mart Stores, Inc. Wage and Hour Litigation,**
   2008 WL 413749, **11-12 (N.D.Cal.) (Armstrong, J.).................................... 11, 12

**Ingle v. Circuit City Stores, Inc.,**
   328 F.3d 1165 (9th Cir. 2003)……………………………………………………………….19

**Jackson v. Foley,**
   156 F.R.D. 538 (E.D.N.Y.1994) .......................................................................... 22

**Jordan v. County of Los Angeles,**
   669 F.2d 1311 & FN10 (9th Cir. 1982) ............................................................... 11
   459 U.S. 810, 103 S.Ct. 35, 74 L.Ed.2d 48 (1982) ......................................... 12, 13

**Karen L. v. Physicians Health Servs., Inc.,**
   202 F.R.D. 94 (D.Conn. 2001)............................................................................. 22

**Kennedy v. Allied Mut. Ins. Co.,**
   952 F.2d 262 (9th Cir.1991)................................................................................... 7

**Kinkel v. Cingular Wireless**,
223 Ill.2d 1, 30-33, 857 N.E.2d 250 (2006) ............................................................................ 21

**Kristian v. Comcast Corp.**,
446 F.3d 25 (1st Cir. 2006)………………………………………………………………………..

**Kurihara, et al. v. Best Buy Co., Inc.**,
2007 WL 2501698, **8-9 (N.D.Cal. August 30, 2007) ......................................... 15

**Lapenna v. Upjohn Co.**,
110 F.R.D. 15 (E.D.Pa.1986) ......................................................................................... 7

**Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.**,
244 F.3d 1152 (9th Cir. 2001) ................................................................................ 11, 15, 22

**Lowden v. T-Mobile USA, Inc.**,
512 F.3d 1213 (9th Cir. 2008)………………………………………………………………..19

**Lozada v. Dale Baker Oldsmobile**,
91 F.Supp.2d 1087 (W.D.Mich. 2000) ........................................................................ 19

**Luna v. Household Finance Corp. III**,
236 F.Supp.2d 1166 (W.D.Wash. 2002)……………………………………………………19

**Moore v. Hughes Helicopters, Inc.**,
708 F.2d 475 (9th Cir.1983)........................................................................................ 10

**Muhammad v. County Bank of Rehoboth Beach, Delaware**,
189 N.J. 1 (N.J. 2006)………………………………………………………………………19

**Mullen v. Treasure Chest Casino, L.L.C.**,
186 F.3d 620 (5th Cir.1999),
**cert. denied**, 528 U.S. 1159, 120 S.Ct. 1169, 145 L.Ed.2d 1078 (2000) ................................. 20

**Nicodemus v. Union Pac. Corp.**,
204 F.R.D. 479 (D.Wyo. 2001)................................................................................... 22

**Noble v. 93 University Place Corp.**,
224 F.R.D. 330 (S.D.N.Y. 2004) ................................................................................ 20

**O'Brien v. Encotech Const. Servs., Inc.**,
203 F.R.D. 346 (N.D.Ill.2001).................................................................................... 20

**Otsuka v. Polo Ralph Lauren Corp.**,
F.R.D. ----, 2008 WL 3285765, **4, 7 (N.D.Cal. 2008) (Illston, J.) ............................. 10, 11, 12

**Phillips Petroleum Co. v. Shutts**,
472 U.S. 797 (1985)...................................................................................................... 21

**Primavera Familienstiftung v. Askin**,
178 F.R.D. 405 (S.D.N.Y.1998) .................................................................................. 22

**Pyke v. Cuomo**,
209 F.R.D. 33 (N.D.N.Y.2002).................................................................................... 22

v

**Robidoux v. Celani**,
987 F.2d 931 (2nd Cir.1993)................................................................................................ 22

**Sav-On Drug Stores, Inc. v. Superior Court**,
34 Cal.4th 319, 17 Cal.Rptr.3d 906, 96 P.3d 194 (2004) ............................................... 15

**Scott v. Aetna Servs., Inc.**,
210 F.R.D. 261 (D.Conn. 2002)......................................................................................... 20

**Shroyer v. New Cingular Wireless Services, Inc.**,
498 F.3d 976 (9th Cir. 2007)…………………………………………………………………19

**Skirchak v. Dynamics Research Corp., Inc.**,
432 F.Supp.2d 175 (D.Mass. 2006) ................................................................................... 19

**Slanina v. William Penn Parking Corp.**,
106 F.R.D. 419 (W.D.Pa.1984)........................................................................................... 20

**Stanfield, et al. v. First NLC Financial Services, LLC**,
C 06-3892 SBA, Dkt. #324 (N.D. Cal. December 21, 2007) ............................................ 14

**Staton v. Boeing Co.**,
327 F.3d 938 (9th Cir. 2003)............................................................................................... 11

**Tierno v. Rite Aid Corp.**,
2006 WL 2535056, *10 (Henderson, J.) ...................................................................... 15, 18

**Ting v. AT & T**,
319 F.3d 1126, 1150 (9th Cir. 2003)…………………………………………………………...19

**U.S. v. Mass. Indus. Finance Agency**,
162 F.R.D. 410 (D.Mass.1995)............................................................................................. 7

**U.S. v. Taylor**,
166 F.R.D. 356 (M.D. N.C. 1996) ....................................................................................... 7

**United States v. Cuddy**,
147 F.3d 1111 (9th Cir. 1998)............................................................................................... 4

**Valentino v. Carter-Wallace, Inc.**,
97 F.3d 1227 (9th Cir.1996)................................................................................................ 16

**Wang v. Chinese Daily News, Inc.**,
231 F.R.D. 602 (C.D.Cal. 2006) ........................................................................ 10, 11, 12, 16

**Wells Fargo Home Mortg. Overtime Pay Litigation**,
527 F.Supp.2d 1053 (N.D.Cal. 2007) (Patel, J.). ...................................... 3, 13, 14, 15, 16, 17, 18

**Whiteway v. FedEx Kinko's Office & Print Servs., Inc.**,
2006 WL 2642528, at *10 (N.D.Cal. Sep.14, 2006)............................................................ 11

**Wiegele v. Fedex Ground Package System, Inc.**,
2008 WL 410691, at *9. (S.D.Cal.) .................................................................... 3, 11, 12, 16, 19

vi

1

**Williamson v. General Dynamics Corp.,**
    208 F.3d 1144 (9th Cir. 2000)......................................................................................... 19

2

**Wong v. T-Mobile USA, Inc.,**
    2006 WL 2042512 (E.D.Mich. 2006) ...................................................................... 19

3

4

**Zinser v. Accufix Research Inst., Inc.,**
    253 F.3d 1180 (9th Cir. 2001),
    **amended by** 273 F.3d 1266 (9th Cir. 2001) ............................................................... 16

5

6

7

**Other Authorities**

8

**Federal Civil Procedure Before Trial**, 11:1517 .1 (Rutter Group Practice Guide 2006) ............ 7

9

**3 Newberg on Class Actions (4th ed. 2002), § 7.9**………………………………………...10

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# NOTICE OF MOTION AND MOTION

Please take notice that on October 10, 2008 at 9:00 a.m. in the courtroom of the Honorable Maxine M. Chesney of the above-mentioned Court, Plaintiffs Philip Wong, et al., will and hereby do move for class certification. In particular, Plaintiffs seek class action treatment under Rule 23 of the Federal Rules of Civil Procedure for the claims of loan officers under California, New York, and New Jersey law, moving the Court for an order certifying a class as follows:[1]

**California Class:** All persons who are or have been employed by Defendants as "Retail Mortgage Lending Consultants," "Senior Retail Mortgage Lending Consultants," "Retail Mortgage Consultants," and "Premier Mortgage Sales Officers" (collectively known as "loan officers"), and other non-management mortgage sales employees, who were misclassified as exempt, and therefore erroneously denied overtime, and meal and rest period compensation, as required by state wage and hour laws, and/or who suffered unlawful deductions from wages, within the State of California within the period four years prior to the filing date of this Complaint.

**New York Class:** All persons who are or have been employed by Defendants as "Retail Mortgage Lending Consultants," "Senior Retail Mortgage Lending Consultants," "Retail Mortgage Consultants," and "Premier Mortgage Sales Officers" (collectively known as "loan officers"), and other non-management mortgage sales employees, who were misclassified as exempt, and therefore erroneously denied overtime, as required by state wage and hour laws, and/or who suffered unlawful deductions from wages, within the State of New York within the period six years prior to the filing date of this Complaint.

**New Jersey Class:** All persons who are or have been employed by Defendants as "Retail Mortgage Lending Consultants," "Senior Retail Mortgage Lending Consultants," "Retail Mortgage Consultants," and "Premier Mortgage Sales Officers" (collectively known as "loan officers"), and other non-management mortgage sales employees, who were misclassified as exempt, and therefore erroneously denied overtime, as required by state wage and hour laws, and/or who suffered unlawful deductions from wages, within the State of New Jersey within the period two years prior to the filing date of this Complaint.

Plaintiffs move for the appointment of their attorneys, Nichols Kaster, as Class Counsel,

---

[1] Rule 23(c)(4)(A) provides that, where appropriate, "an action may be brought or maintained as a class action with respect to particular issues." The Second Amended Complaint includes claims on behalf of non-exempt sales assistants (with a host of different formal job titles), who were not paid fully for overtime hours worked (required to work "off-the-clock"). These claims are not included in the instant Motion.

1

and of Philip Wong, Frederic Chaussy, Leslie Shearn, and Chad Barbiere as Class Representatives for the California, New York, and New Jersey Rule 23 Classes. Plaintiffs also request approval of the Class Notice appended hereto.

This Rule 23 motion is based upon: the notice of motion and motion; accompanying memorandum of points and authorities; the accompanying declarations and exhibits; and all other matters presented to the Court at hearing. Through this motion, Plaintiffs respectfully request that the Court: 1) find Plaintiffs and the putative class members meet the requirements for certification under Fed.R.Civ.P. 23; 2) name Nichols Kaster as Class Counsel; 3) name Philip Wong, Frederic Chaussy, Leslie Shearn, and Chad Barbiere as Class Representatives; 4) order that Court-approved notice be provided to putative class members by Plaintiffs; and 5) order Defendant to produce to Plaintiffs the names and most recent known addresses of the class members in Excel format within 30 days, to enable Plaintiffs to carry out the notice process expeditiously and cost-effectively.

## MEMORANDUM OF LAW AND POINTS OF AUTHORITIES

This Court has found Defendants' loan officers similarly-situated and rejected most of Defendants' exemption defenses, leaving Defendants only the possibility of claiming the outside sales exemption and "highly compensated" exemption.[2] Now, Plaintiffs seek class certification, because the questions in dispute are governed by uniform company policies.

In particular, Defendants have uniformly applied the outside sales exemption to the entire group of loan officers nationwide, establishing the commonality and predominance required for a Rule 23 showing. Just as Defendants did not undergo individualized considerations when classifying their loan officers, individualized considerations should be of little consequence in the

---

[2] **See generally** Dkt. #110. **See** Dkt. #110 at p. 10, n. 8, 9. Plaintiffs anticipate moving for summary judgment regarding these last remaining exemptions soon.

Court's class certification determination. As Judge Patel of this Court explained recently in a similar, mortgage loan officer misclassification case:

> [I]t is manifestly disingenuous for a company to treat a class of employees as a homogenous group for the purposes of internal policies and compensation, and then assert that the same group is too diverse for class treatment in overtime litigation. This is particularly true in a situation such as [a mortgage loan officer FLSA misclassification case, based upon the outside sales and highly compensated exemptions], where the difficulty of proving hours worked and compensation received is exacerbated by defendant's complete failure to maintain pertinent records.

**In re Wells Fargo Home Mortg. Overtime Pay Litigation,** 527 F.Supp.2d 1053, 1068 (N.D.Cal. 2007) (Patel, J.).[3] Likewise, Defendants have a single policy requiring loan officers to repay the company personally for uncollected application fees where loan transactions fail – shifting the routine cost of business to Plaintiffs with this unlawful deduction.

Because of the uniform policies, judicial economy will best be served by Rule 23 certification. Class certification will prevent more than 80 California, New York, and New Jersey putative class members already part of the FLSA suit from having to join their individual state claims immediately, along with hundreds of potential suits by putative class members who did not join and, in some cases, did not have the opportunity to join, the FLSA action. All of these claims raise identical disputes, on the same bases.

After this Court granted conditional FLSA certification, Plaintiffs sent judicial notice to the FLSA class, and over 110 individuals opted-into the suit per the requirements of 29 U.S.C. §216(b). Very few – approximately six – current employees of Defendants joined the suit. Undersigned Plaintiffs' counsel have received many reports from current employees that they are intimidated from joining by a fear of reprisal. Former employees are deterred by the fear of being "blackballed" in the mortgage lending field. Loan officers and former loan officers believe that

---

[3] **See also Wiegele v. Fedex Ground Package System, Inc.**, 2008 WL 410691, at *9. (S.D.Cal.).

the relatively small individual recovery they might expect to receive pales when compared with the perceived risk of losing a job (or job opportunity) in the current economy, in which the nation suffers a housing market slump and mortgage loan officers face an extremely difficult job market. As such, this fear of reprisal and limited individual recovery further justify Rule 23 certification of statewide classes in New York, New Jersey, and California, to vindicate States' interests in ensuring proper compensation for their workers. Defendants should not be unjustly enriched by the common fears of workers, who are unsophisticated in such litigation.

## I.   STATEMENT OF RELEVANT FACTS

**A. <u>Defendants Uniformly Consider Loan Officers to Be Exempt, Outside Salespeople, Whose Job Is Only To Sell.</u>**

**1.   This Court's findings and recent discovery establish that Defendants apply the outside sales exemption to all loan officers, who are entirely focused on sales.**

This Court has already found[4] that:

- Defendants classify all loan officers as exempt under the FLSA, based on the outside sales exemption, suggesting a uniformly-applicable basis for Defendants' classification decision.[5]

- The "primary duty" of loan officers is selling "financial products," and Defendants have not identified any evidence to the contrary.[6]

- Loan officers "don't process….don't underwrite….[and] don't close loans" – they work in "purely a sales department."[7]

---

[4] These findings (from Dkt. #110) are the law of the case. "The law of the case doctrine provides that 'a court is generally precluded from reconsidering an issue that has already been decided by the same court….'" **<u>United States v. Cuddy</u>**, 147 F.3d 1111, 1114 (9th Cir. 1998).
[5] Dkt. #110, at pp. 4, 11.
[6] **<u>Id.</u>**, at pp. 11-12.
[7] **<u>Id.</u>** at p. 11, citing Fed.R.Civ.P. 30(b)(6) deponent David Gates, the national sales manager.

4

- Plaintiffs evidence suggests that loan officers were consistently, "entirely" and "exclusively" "focused on … selling as many loans as possible."[8]

Since the Court made these findings, Plaintiffs have elicited extensive additional evidence, further corroborating that: 1) all loan officers' job responsibilities are uniform and revolve around one activity – production of mortgage loans; and, 2) the "outside sales" exemption was the sole basis for Defendants' classification decision. **See Exhibit 1,** Robert Lampka Deposition Excerpts, at pp. 123-141, 147-149 (human resources official testifies he classified Defendants' loan officers exempt based on outside sales, since their role is selling mortgages to customers). **See also Exhibit 2,** Declaration of Godwin Tsui, at ¶¶4, 10 (former California manager testifies loan officers are "primarily or exclusively engaged in selling loans, following the company's guidelines and procedures" – they are "sales people");   **Exhibit 3,** David Peters Deposition Excerpts, at pp. 13, 62-63 (New York manager testifies loan officers are exclusively supervised and evaluated on "production," i.e., sales); **Exhibit 4,** Eric Liboy Deposition Excerpts, at pp. 68-69, 106-107 (former manager of premier loan officers testifies their job was same as other loan officers, but selling to higher-income clients, and that management's only concern was production); **Exhibit 5,** Amy Ku Deposition Excerpts, at p. 199 (California manager testifies loan officers' first responsibility was loan production); **Exhibit 6,** Jeffrey Needham Deposition Excerpts, at pp. 88-96 (expectation as a Regional Manager for the Western U.S. was solely that loan officers are originating and closing loans); **Exhibit 7,** Amy Young Deposition Excerpts, p. 173 (California manager testifies no discipline or termination of loan officers for anything other than low production); **Exhibit 8**, Stephany Hor Deposition Excerpts, p. 67 (loan officer's goal was selling loan product); **Exhibit 9,** Leslie Shearn Declaration (New York and New Jersey loan

---

[8]**Id.** at p. 11, citing declarations Plaintiffs submitted in support of Motion for Conditional Certification.

officers exclusively engaged in selling as many loans as possible); **Exhibit 10,** Chad Barbiere Declaration (same, in New Jersey).

Loan officers do not develop their own products or pricing, make decisions about which loans to fund, or which pricing exceptions to grant, and do not create national or regional marketing campaigns – they just try to sell as many loans as possible, employing the company's guidelines.[9] The loan officers do not even set their own minimum production requirements, which are generated centrally, at the company's New York headquarters, and communicated to the loan officers through their management chain.[10]

Though such is not required at the certification stage, Plaintiffs have also elicited evidence from company managers upon which Plaintiffs intend to rely to demonstrate that Defendants cannot prove their entitlement to the outside sales exemption.[11] Plaintiff anticipate that testimony from top managers and a selection of mid-level managers and line employees will also be the basis of a future summary judgment motion regarding the "highly compensated" exemption.[12]

---

[9] **See** **supra**, citing Dkt. #110, at p. 11. **See** **also**, **e.g.,** **Exh. 2,** Tsui Dec., ¶4; **Exh. 3,** Peters Depo., at pp. 74-77; **Exh. 5,** Ku Depo., pp. 44-48; **Exh. 6,** Needham Depo., pp. 196-199; **Exh. 7,** Young Depo., pp. 86-88; **Exhibit 11,** Frederic Chaussy Deposition Excerpts, p. 117.

[10] **Exh. 6,** Needham Depo., at pp. 45-46; **Exh. 7,** Young Depo, at pp. 126-128. **See** **also** **Exhibit 17,** Sample Emails Regarding Minimum Production Requirements.

[11] In practice, management cares only that loan officers are selling loans – regardless of where they sell them. **See,** **e.g., Exh. 2,** Tsui Dec. at ¶6; **Exh. 3,** Peters Depo., at pp. 46, 60-61, 63, 88-89; **Exh. 4,** Liboy Depo. at p. 106; **Exh. 5,** Ku Depo., pp. 114-115; **Exh. 6,** Needham Depo., p. 88-96. Defendants have no enforced expectations and no tracking as to the ratio of inside versus outside sales that loan officers make, and Defendants' classification decision was based upon no specific evidence as to the ratio of sales made inside versus outside. **See,** **e.g., Exh. 1,** Lampka Depo., pp. 123-141, 147-149; **Exh. 2,** Tsui Dec. at ¶6; **Exh. 3,** Peters Depo., at pp. 46, 60-61, 63, 88-89; **Exh. 4,** Liboy Depo. at p. 106; **Exh. 5,** Ku Depo., pp. 114-115; **Exh. 6,** Needham Depo., p. 88-96; **Exh. 7,** Young Depo., p. 172; **Exhibit 12,** David Gates Deposition Excerpts, p. 62; **Exhibit 13,** Jeannette Jennings Deposition Excerpts, p. 142. Plaintiffs anticipate bringing a summary judgment motion regarding the outside sales defense because Defendants will be unable to meet their burden to prove the applicability of the exemption. However, Plaintiffs first wish to have the class certified and receive requested document discovery – particularly "1003" forms showing the location of each sale – which Plaintiffs believe will verify that Plaintiffs complete the immense majority of sales applications inside.

[12] Plaintiffs intend to establish that the "highly compensated" exemption is inapplicable here, since the loan officers exclusively perform sales functions, and certainly do not primarily, customarily, and/or regularly perform administrative duties. 29 C.F.R. §541.601; **Exh. 1,** Lampka Depo., at pp. 123-129. **See** **also** **supra**, citing testimony and findings of this Court. Moreover, the exemption cannot apply because the company's Fed.R.Civ.P. 30(b)(6) witnesses have testified (**see,** **e.g., Exh. 13,** Jennings Depo. at pp. 108, 147-148; **Exh. 12,** Gates Depo. at p. 128) that they consider Defendants' loan officers to be commission-only (not salaried or fee-based) employees, thus failing to

6

**B. Defendants Have a National Policy Whereby Loan Officers Suffer Deductions From Their Pay for Uncollected Application Fees.**

Defendants have a nationwide practice that loan officers are pushed to sell as many loans as possible, and also asked to collect application fees of $325 on loan transactions.[13] Defendants' policy is that whenever any loan officer anywhere in the country waives a $325 application fee in order to increase his/her chances of making a loan sale, Defendants deduct the $325 increment from the loan officer's paycheck. **Exh. 13**, Jennings Dec. (pursuant to Fed.R.Civ.P. 30(b)(6)), pp. 113-115.[14] This occurs even where loan officers earn no commissions, **i.e.,** when the company ultimately does not allow the loans to close and fund. **Id.** Thus, as a matter of company policy, where loan officers waive application fees in furthering the company's sales objectives, and the company chooses to reject a loan, the loan officers are forced to bear the cost of doing business – namely, lost fee collections.[15]

Though loan officers may not always or often waive loan application fees, and hence have their pay reduced by $325, Plaintiffs' position is that each time Defendants' uniform, nationwide policy is enforced, Defendants make an unlawful deduction from pay. It is undisputed that

---

meet the requirements of 29 C.F.R. §541.601. Though Plaintiffs do not necessarily agree with the Fed.R.Civ.P. 30(b)(6) witnesses' characterization, it binds Defendants. **See Calin Corp. v. Ace American Ins. Co.,** 2007 WL 3010570, at *7 (N.D.Cal. October 12, 2007) (Illston, J), **citing** Judge William W. Schwarzer, Judge A. Wallace Tashima & James M. Wagstaffe, **Federal Civil Procedure Before Trial,** 11:1517 .1 (Rutter Group Practice Guide 2006); **Kennedy v. Allied Mut. Ins. Co.,** 952 F.2d 262, 266 (9th Cir.1991); **Block v. City of Los Angeles,** 253 F.3d 410, 419 FN2 (9th Cir. 2001); **U.S. v. Taylor,** 166 F.R.D. 356, 361 (M.D. N.C. 1996), **citing U.S. v. Mass. Indus. Finance Agency,** 162 F.R.D. 410, 412 (D.Mass. 1995); **Lapenna v. Upjohn Co.,** 110 F.R.D. 15, 21 (E.D.Pa.1986); **Hyde v. Stanley Tools,** 107 F.Supp.2d 992, at 993 (E.D. La. 2000).

[13]**See generally** Dkt. #164 at pp. 4-5; Dkt. #164-3 (Plaintiffs' declarations regarding corporate policy regarding collecting waived fees from employees); Dkt. #164-4 (regional manager, Needham, testimony regarding company policy regarding collection of waived fees from employees); **Exh. 5,** Ku Depo, pp. 189-190; **Exh. 13,** Jennings Dec., pp. 113-115; **Exhibit 14,** Philip Wong Deposition Excerpts, pp. 30-33; **Schwartz Dec.** (as to Shearn deposition testimony on point, awaiting transcript).

[14]**See also id.** (prior footnote).

[15]**Id.** The company may make very rare exceptions to this policy, but it remains the nationwide policy. **See, e.g,. Exhibit 18,** Emails Regarding Deduction Policy; **Exh. 3,** Peters Depo., p. 120. A simple review of centrally-stored pay records will determine each occasion on which $325 was actually deducted from wages.

7

Defendants have recourse other than unlawful deductions – including discipline or removal of loan officers – to the extent that the company officially frowns upon waiver of application fees.[16]

### C.  Putative Class Members Were Afraid To Join The FLSA Collective Action.

Of more than 110 who joined the FLSA class, and more than 200 current employees of Defendants who were members of the putative class, only approximately six (6) opt-ins are current employees of Defendants. **Declaration of Bryan J. Schwartz, Esq. ("Schwartz Dec.")**. A host of employees have conveyed to Plaintiffs' counsel that they would like to claim the overtime to which they are entitled, but that employees fear joining the suit because they fear retaliation from HSBC and cannot afford to risk their careers, in such a precarious job market for mortgage loan officers. **Id.** Hundreds of lenders have shut their doors, and thousands of loan officers nationwide have lost their jobs, causing loan officers to feel that their jobs are always in jeopardy. **Id.,** citing **Exhibit 20,** Examples of Mortgage Industry News. These employees have likewise conveyed that their general impression is that they may recover relatively little from this action, such that they certainly cannot justify risking their careers. **Id.** Both current and former employees have expressed fear that they could not only lose their jobs with Defendants, but be "blackballed" (foreclosed from working) in the mortgage loan industry as a whole. **Id.**

One intimidated current employee had the courage to provide a declaration regarding such intimidation, with the promise that the declaration would be submitted only in redacted form, made available for the Court to review unredacted **in camera**. **Exhibit 15,** Redacted Declaration**.** This witness testified that, in addition to the concerns identified above, his/her managers explicitly "discouraged me from joining this lawsuit, and have said that if I joined, then I can lose my job." **Id.** The witness continued to state that his/her manager would "consistently question me

---

[16] **Exh. 13**, Jennings Depo., at pp. 165-168; **Exhibit 19,** Susan Marczak Deposition Excerpts, at p. 111.

on the lawsuit and my friendship with the plaintiffs, which intimidated me from joining." **Id.** Plaintiffs' counsel's experience is that this witness' willingness to sign a declaration is unusual – but his/her reasons for not submitting a consent form are common. **Schwartz Dec.**

## II.     CLASS CERTIFICATION ARGUMENT

The Court should find that Plaintiffs meet all Rule 23 elements, and that policy justifications support certification. The Court has already found Plaintiffs and the putative class members similarly-situated, and that all were classified as exempt based on the outside sales exemption, according to the corporate policy which Plaintiffs challenge. This common issue, along with the claimed unlawfulness of Defendants' admitted policy to deduct waived application fees from loan officers' pay, predominates in this matter, warranting certification. Plaintiffs also seek class certification for judicial efficiency, so that hundreds of putative class members need not join individually to protect their distinct rights under state law (**e.g.,** longer New York and California statutes of limitations). The Court should allow participation, including from those afraid to opt-into the FLSA class, or for whom it was impracticable to join individually.

### A.     **Plaintiffs Have Established Each Element Under Rule 23 for Certification and the Court Should, Therefore, Certify the Proposed Class.**

It is beyond dispute that centralized policies are at the core of the action. The Court will simply be evaluating the sufficiency of what evidence, if any, Defendants possessed to justify taking their company-wide actions. To the extent Defendants argue that their decisions to invoke the outside sales exemption or make deductions from loan officers' pay were legitimate, the policies' lawfulness must be evaluated class-wide – which must occur post-certification. Any remaining questions relate to the extent of each class member's damages, which does not require determination upon a Rule 23 motion.

#### 1.  **The Rule 23 standard favors certification here.**

9

Courts certify Rule 23 classes where: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a). **Dukes v. Wal-Mart, Inc.**, 509 F.3d 1168, 1176 (9th Cir. 2007). **See also In re Wells Fargo Home Mortg.**, 527 F.Supp.2d at 1061. Furthermore, Courts certify Rule 23 classes where questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed.R.Civ.P. 23(b)(3).[17]

In adjudicating a motion for class certification, the court accepts the allegations in the complaint as true so long as those allegations are sufficiently specific to permit the Court to make an informed assessment under Rule 23.[18] The merits of the class members' substantive claims are generally irrelevant to this inquiry.[19] On the other hand, to the extent that Defendants argue that their use of the outside sales exemption and their application fee deduction from pay are legitimate policies, the assertion supports certification, since determination of their legitimacy inherently warrants class treatment. **See**, **e.g.**, **Otsuka v. Polo Ralph Lauren Corp.**, --- F.R.D. ----, 2008 WL 3285765, **4, 7 (N.D.Cal. 2008) (Illston, J.) (defendant argued its policies were lawful under California law, but the centrality of this question itself warranted certification). That is, just as Defendants did not establish these policies individual-by-individual, the Court cannot determine piecemeal the legitimacy of the uniformly applied policies. **Id. See also In re Wells Fargo Mortg. Overtime Litig.**, 527 F.Supp.2d at 1067-1068. Differences in

---

[17] **See Dukes**, 509 F.3d at 1176; **In re Wells Fargo Home Mortg.**, 527 F.Supp.2d at 1062, 1064.
[18] **See Blackie v. Barrack**, 524 F.2d 891, 901 FN17 (9th Cir. 1975); **Staton v. Boeing Co.**, 327 F.3d 938, 954 (9th Cir. 2003); **Chun-Hoon v. McKee Foods**, 2006 WL 3093764, *4 (N.D.Cal. 2006); **Wang v. Chinese Daily News, Inc.**, 231 F.R.D. 602, 605 (C.D.Cal. 2006).
[19] **Eisen v. Carlisle & Jacquelin**, 417 U.S. 156, 177-78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); **Moore v. Hughes Helicopters, Inc.**, 708 F.2d 475, 480 (9th Cir.1983). **See also** 3 Newberg on Class Actions (4th ed. 2002), § 7.9.

the degree of damages to which each Plaintiff or putative class member may be entitled, if any, do not impact the Court's ruling on this Motion.[20]

### 2. Plaintiffs satisfy the numerosity requirement.

Here, the putative classes in California and New Jersey each have approximately 60 or more members, and the New York putative class has more than 350 members. **Schwartz Dec.** Classes consisting of forty or more persons "should have a reasonable chance of success on the basis of number alone."[21] A class of 60 or more, or, as in New York, over 350 current and former employees, easily meets the numerosity requirement. **See**, **e.g.**, **Jordan v. County of Los Angeles**, 669 F.2d 1311, 1319 & FN10 (9th Cir. 1982) (stating inclination "to find the numerosity requirement ... satisfied solely on the basis of the number of ascertained class members, **i.e.**, 39, 64, and 71," and listing thirteen cases in which courts certified classes with fewer than 100 members), **vacated on other grounds**, 459 U.S. 810, 103 S.Ct. 35, 74 L.Ed.2d 48 (1982).[22] Needless to say, joining individually dozens or hundreds of class members in three states on the East and West Coasts, including the claims of more than 80 opt-in plaintiffs from California, New York, and New Jersey, all of whom are challenging the same policies, is impracticable.

### 3. Questions of law and fact are common to all members of the proposed class.

In the 9th Circuit, "Rule 23(a)(2) has been construed permissively. All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with

---

[20]**Whiteway v. FedEx Kinko's Office & Print Servs., Inc.**, 2006 WL 2642528, at *10 (N.D.Cal.) (Armstrong, J.) ("class certification is not defeated merely because individualized damage issues may remain"); **Wang**, 231 F.R.D. at 613 ("the amount of damages is invariably an individual question and does not defeat class action treatment"), **quoting Blackie**, 524 F.2d at 905; **Wiegele**, 2008 WL 410691 at *10; **In re Wal-Mart Stores, Inc. Wage and Hour Litigation**, 2008 WL 413749, **11-12 (N.D.Cal.) (Armstrong, J.) (damages differences do not affect typicality analysis); **Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc**., 244 F.3d 1152, 1163 (9th Cir. 2001) (damages differences do not defeat predominance); **Gutierrez v. Kovacevich "5" Farms**, 2004 WL 3745224, *9 (E.D.Cal.) (same).

[21] 1 Newberg on Class Actions (4th ed. 2002), § 3:5 at 248.

[22]**See also Otsuka**, 2008 WL 3285765 at *4 (49 in subclass meets numerosity), **citing Jordan**. Note that, in the instant case, at least 40+ Californians, 50+ New Jersey residents, and 300+ New Yorkers are putative Rule 23 class members who did not opt-into the collective action. **Schwartz Dec.**

11

divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." **Dukes**, 509 F.3d at 1177. "The commonality test is qualitative rather than quantitative – one significant issue common to the class may be sufficient to warrant certification." **Id.**

In **Dukes**, the 9th Circuit found commonality in a massive nationwide class of women across job positions with widely varied circumstances – a class, as the Court explained, which was "broad and diverse. It encompasses approximately 1.5 million employees, both salaried and hourly, with a range of positions, who are or were employed at one or more of Wal-Mart's 3,400 stores across the country." **Dukes**, 509 F.3d at 1176-1177. The Court concluded that, despite the extraordinary spectrum of factual scenarios giving rise to the suit, for certification purposes, the Court could infer that the plaintiffs were "subjected to a **single set of corporate policies** (not merely a number of independent discriminatory acts)." (emph. in original.) **Id.** at 1183.

Here, finding commonality is much easier, since all of HSBC's employees in question are non-management loan officers, and are all classified as exempt, subject to the same management chain (**i.e..**, in David Gates' sales organization, with Jeannette Jennings' human resources staff) and corporate policies. **See** Section I, **supra**; Dkt. #71, pp. 9-14 of 31. Even if different class members worked different quantities of unpaid overtime and/or suffered different numbers of unlawful deductions, the shared legal issues recommend certification. **Dukes**, 509 F.3d at 1177. As in **Dukes**, **id.** at 1182-1183, the relevant policies at HSBC are managed centrally (in this case, from the Buffalo, New York, area), with a uniform personnel and management structure across branches, headquarters' extensive oversight of branch operations, company-wide policies governing the relevant practices, and here, a consistent failure to pay overtime. **See** Dkt. #71, pp. 9-14 of 31. Furthermore, as in **Dukes**, 509 F.3d at 1182, Plaintiffs' declarations provide compelling anecdotal support meeting the commonality standard, with their testimony that

12

Plaintiffs worked extensive overtime hours without being compensated, contrary to the relevant law (here, California, New York, and New Jersey law). **Id.** **See** Dkt. #71, pp. 9-14 of 31. **See also Exh. 10; Exh. 11**. Defendants' common policy regarding unlawful deductions, and declarations on point from California, New York, and New Jersey, also demonstrate a shared legal issue regarding the propriety of the deductions of customers' $325 application fees from loan officers' paychecks.[23] Plaintiffs' declarations, relevant deposition testimony, and documents showing common policies[24] satisfy the requirement of Rule 23(a)(2).

### 4. The claims of the representative parties are typical of the claims of the class.

Plaintiffs Wong, Chaussy, Shearn, and Barbiere assert overtime claims typical of the California, New York, and New Jersey Rule 23 class members. Plaintiffs Wong and Shearn also assert typical unlawful deduction claims on behalf of putative class members from all three states. "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical. Some degree of individuality is to be expected in all cases, but that specificity does not necessarily defeat typicality." (Internal citations omitted.) **Dukes**, 509 F.3d at 1184. In **Dukes**, the Court found typicality under Rule 23(a)(3) based on a common practice defined as "a corporate culture of uniformity and gender stereotyping." **Id.** The Court's finding came in spite of the fact that "individual employees in different stores with different managers may have received different levels of pay or may have been denied promotion or promoted at different rates." **Id.**

Here, the common practice affecting Plaintiffs is more apparent than in **Dukes**: Defendants do not pay overtime to any loan officers, and mandate deduction of waived loan application fees from their wages. As in **In re Wells Fargo Home Mortgage**, the named

---

[23]**See supra** Section I.B.
[24]The exhibits submitted in support of the 29 U.S.C. §216(b) motion, Dkt. #71, along with those attached hereto, provide relevant support.

Plaintiffs "purportedly had the same job [loan officer], same job duties, and were subject to the same company practices, policies and decisions that affected their ability to earn" overtime and that caused wage deductions. **In re Wells Fargo Home Mortg.,** 527 F.Supp.2d at 1063-1064.

**5. The Plaintiffs will fairly and adequately protect the interests of the class**.

The adequacy factor requires: (1) that the proposed representative Plaintiffs do not have conflicts of interest with the proposed class; and, (2) that Plaintiffs are represented by qualified and competent counsel.[25] No divergence exists between the interests of the proposed Class Representatives and the interests of the Class as a whole. **Schwartz Dec.** Plaintiffs' counsel is qualified and experienced, and generally able to conduct the proposed litigation. **Schwartz Dec**.[26]

**6. The proposed class meets the requirements of Rule 23(b)(3).**

In addition to meeting the prerequisites for class certification under Rule 23(a), a class must meet only one of the three alternative requirements for treatment as a class action under Fed. R. Civ. P. 23(b). Here, the class meets the requirements of Rule 23(b)(3) because issues of fact and law common to Class Members predominate over individual matters, and because a class action is superior method for addressing the claims at issue.

**a)  Common issues predominate over individual matters.**

Rule 23(b)(3) focuses on the relationship between the common and individual issues. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute

---

[25] **Hanlon v. Chrysler Corp.,** 150 F.3d 1011, 1020 (9th Cir. 1998); Fed.R.Civ.P 23(a)(4).

[26] Nichols Kaster is a 20+ lawyer firm based in San Francisco, CA, and Minneapolis, MN, which concentrates its practice on representing employees with a wide variety of employment claims, with a special focus on wage and hour class and collective action litigation. **Schwartz Dec.** Donald Nichols and Paul Lukas are partners of the firm, and Bryan Schwartz, Matthew Helland, and Timothy Selander are associates, all with extensive experience in actions such as this, having represented tens of thousands of employees nationwide in wage/hour actions. **Id.** The firm has served as Class Counsel and succeeded in obtaining results on behalf of classes of employees with wage/hour claims, approved by Courts nationwide, recently by the Northern District of California in **Stanfield, et al. v. First NLC Financial Services, LLC**, C 06-3892 SBA, Dkt. #324 (N.D. Cal. December 21, 2007) (Armstrong, J) (attached hereto for the Court's convenience, as **Exhibit 16). Schwartz Dec**.

14

on a representative rather than on an individual basis."[27]

As in other wage/hour cases where Rule 23 classes have been certified, here common questions establishing the predominance requirement include, but are not limited to: whether Defendants can meet their burden to justify their policy classifying loan officers as exempt based upon the outside sales exemption; and whether Defendants' policy of deducting waived loan application fees from loan officers' compensation was lawful.[28] Here, Plaintiffs believe the evidence shows or will show, among other things, that: (1) Defendants treat loan officers uniformly by classifying them as exempt; (2) Defendants admit their classification of loan officers as exempt was based only on "common knowledge," enforced no job requirements with respect to outside sales, and can present no proof that loan officers actually worked primarily in outside sales; (3) Defendants' payroll and timekeeping administration for all employees are performed centrally, as are job description drafting and classification, and other human resources functions; (4) all of Defendants' employees report through a common management chain to Defendants' headquarters in New York, which sets ambitious production goals that keep the pressure on employees to work unpaid overtime; and (5) Defendants routinely shifts the cost of business to employees, when it deducts $325 from loan officers' paychecks if loan officers have waived customers' application fees in order to complete sales.[29]

In **In re Wells Fargo Home Mortg.**, Judge Patel felt that defendants' declarations had raised "serious issues regarding individual variations among [the putative class members'] job duties and experiences. However, **the common factual and legal issues nonetheless**

---

[27] **Gutierrez,** 2004 WL 3745224 at *9, **citing Local Joint Executive Bd.,**, 244 F.3d at 1162.

[28] **See Wang,** 231 F.R.D. at 613-14, **citing Blackie,** 524 F.2d at 905. **See also Tierno v. Rite Aid Corp.,** 2006 WL 2535056, *10 (Henderson, J.) (finding predominance requirement satisfied when plaintiffs raised similar common questions); **Sav-On Drug Stores, Inc. v. Superior Court,** 34 Cal.4th 319, 335, 17 Cal.Rptr.3d 906, 96 P.3d 194 (2004) (same); **Wiegele,** 2008 WL 410691 at *8 (predominance requirement satisfied where plaintiffs presented evidence of defendants' policies, declarations and deposition testimony of putative class members, as well as deposition testimony of defendants' own "Persons Most Knowledgeable" and key corporate personnel). **See also Kurihara, et al. v. Best Buy Co., Inc.,** 2007 WL 2501698, **8-9 (N.D.Cal. 2007).

[29] **See supra,** Section I; Dkt. #71 at pp. 9-13.

**predominate. Wells Fargo's uniform policies regarding [the putative class members] weighs heavily in favor of class certification.**" (Emph. added.) **Id.**, 527 F.Supp.2d at 1067-1068. Judge Patel went on to hold that it is "manifestly disingenuous" for a company to subject employees to the same policies and exempt classification, but then attempt to argue that individual issues predominate, to defeat certification. **Id.** This case is even stronger than **In re Wells Fargo Home Mortg.**, because the putative class members' sales duties here do not vary in any material way. **See** **supra** Section I. Regardless, Plaintiffs have established that, as in **In re Wells Fargo Home Mortg.**, 527 F.Supp.2d at 1068, common questions related to the class members' experiences predominate over whatever inevitable individual variations exist.

   **b)  A class action is superior to other methods of litigation.**

   "Where class-wide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation."[30] Relevant factors include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action. Fed.R.Civ.P. 23(b)(3).

   Here, as to 23(b)(3)(A), neither the Plaintiffs nor any of the other putative class members have an interest in individually controlling the prosecution of separate actions. **Schwartz Dec.** The issues in this litigation and this Motion focus on Defendants' policies. Plaintiffs have raised a categorical challenge to Defendants' compliance with New York, California, and New Jersey wage/hour law, which must be resolved on a class-wide basis. Because individual class members have little bearing on whether the company's policies are lawful, efficiency would be better

---

[30] **Valentino v. Carter-Wallace, Inc.,** 97 F.3d 1227, 1234 (9th Cir.1996); **Zinser v. Accufix Research Inst., Inc.,** 253 F.3d 1180, 1189 (9th Cir. 2001), **amended by** 273 F.3d 1266 (9th Cir. 2001).

served by trying these issues class-wide. **In re Wells Fargo Home Mortg.**, 527 F.Supp.2d at 1068-1069. In light of the predominance of these common issues over any individualized factual issues, considerations of case management favor class treatment. **Id.** The alternative – dozens or hundreds of individual suits, or joinder of hundreds of causes of action, to assert individuals' identical state claims regarding Defendants' disputed policies – is certainly far less manageable.

As to 23(b)(3)(B), to Plaintiffs' knowledge, no conflicting litigation concerning the controversy as to loan officers has been commenced. **Schwartz Dec.**[31] Concentrating the wage/hour litigation in a class action will avoid multiple suits, under 23(b)(3)(C). **Schwartz Dec.** Many of the claims are small, making individual lawsuits impracticable. **See infra** Section II.B, regarding policy justifications.

Finally, under 23(b)(3)(D), there are few difficulties in managing this litigation as a class action. The class members have already been identified. The potential liability of Defendants can be calculated (and has been estimated for current opt-ins, **Schwartz Dec.**) based on Plaintiffs' and putative class members' rate of pay, time worked, good-faith overtime estimates,[32] and pay records regarding $325 deductions. There is a combined course of conduct to examine and adjudicate – namely, whether or not Defendants can prove that they had ample justification for their classification of loan officers as outside salespersons, and whether Defendants application fee deductions policy complies with state laws. Plaintiffs will use common evidence (**e.g.,** Defendants' pay records, depositions of key officials, key corporate policy documents, and a selection of form "1003" loan application forms showing where sales were made) to demonstrate

---

[31] Because Defendants refused to allow late opt-ins to join this suit, and because Defendants refused to agree to expanding the class list to include other mortgage sales employees not called "loan officers," undersigned initiated another suit, which supports the instant case's allegations, in the Eastern District of New York. **Schwartz Dec.**

[32] Plaintiffs are entitled to make such estimates where employers fail to keep accurate time records. **Anderson v. Mt. Clemens Pottery Co.**, 328 U.S. 680, 687, 66 S.Ct. 1187, 1192, 90 L.Ed. 1515 (1946).

17

that Defendants have not met their burden of proof.[33]

Judge Thelton Henderson of this Court explained that, in wage/hour actions, "innovative procedural tools that can efficiently resolve individual questions regarding eligibility and damages [such as]…. administrative mini-proceedings, special master hearings, and specially fashioned formulas or surveys." **Tierno**, 2006 WL 2535056, at *11. On the other hand, a failure to certify here **would** entail dozens or hundreds of individual suits, or likely the abandonment of some individual claims. As Judge Henderson explained regarding this outcome, "The former would undoubtedly result in a great duplication of effort given the predominance of common questions of law and fact, while the latter would result in lost access to the courts." **Id.** As such, Judge Henderson found class certification was the superior means for addressing the plaintiffs' claims (**id.**), and this Court should follow **Tierno**.

Certainly, since the 9th Circuit found the **Dukes** class action manageable, the instant case is all the more manageable, employing tactics other courts have used to handle class action suits. **Dukes**, 509 F.3d at 1190-1193, following **Hilao v. Estate of Ferdinand Marcos**, 103 F.3d 767, 782-87 (9th Cir.1996). The 9th Circuit explained in **Dukes** that since there were a "range of possibilities…that would allow this class action to proceed in a manner that is both manageable and in accordance with due process, manageability concerns present no bar to class certification here." **Id.** at 1191. Case management should not be a barrier to a finding that class action litigation is a superior mechanism under Rule 23(b)(3)(D) in this case, which is much smaller and simpler than **Dukes**.

**B.    Policy Justifications Support Class Certification.**

---

[33]**See Wiegele**, 2008 WL 410691 at *10.

18

1    Rule 23 certification exists in part for the fairness of the absent putative class members.

2    Class members should not be forced to bring their claims in different courts and in a multiplicity

3    of proceedings, or not at all, because of the expense and burden on each individual litigant.[34]

4

5        Recently, the California Supreme Court, in **Gentry v. Superior Court (Circuit City)**, 42

6    Cal.4th 443 (2007), discussed persuasively the value of class actions in overtime litigation,[35] in

7    light of the strong public policy goals inherent in such cases.[36] In **Gentry**, the employer asserted

8    that, by signing an arbitration agreement, the plaintiffs had waived their rights to proceed as a

9    class. **Id.**, 42 Cal. 4th at 443. The Supreme Court held that class litigation "is likely to be a

10   significantly more effective practical means of vindicating the rights of the affected employees

11   than individual litigation…[and] the disallowance of the class action will likely lead to a less

12   comprehensive enforcement of overtime laws for the employees alleged to be affected by the

13   employer's violations." **Id.** 42 Cal.4th at 463. The **Gentry** court's policy reasons apply here:[37]

14

15

16   [34] **See, e.g., General Tel. Co. of SW v. Falcon**, 457 U.S. 147, 159, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); **Deposit
     Guar. Nat'l Bank v. Roper**, 445 U.S. 326, 329, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980); **Ansoumana v. Gristede's
17   Operating Corp.**, 201 F.R.D. 81, 91 (S.D.N.Y. 2001).
     [35] Though **Gentry** is one of the courts to discuss most eloquently and comprehensively the value of class litigation
18   from a public policy standpoint, many other courts (including the 9th Circuit) have also done so (**e.g.**, in consumer
     protection litigation), particularly in the context of arbitration agreements which companies claim waive class action
19   rights. **See, e.g., Lowden v. T-Mobile USA, Inc.**, 512 F.3d 1213 (9th Cir. 2008); **Shroyer v. New Cingular Wireless
     Services, Inc.**, 498 F.3d 976 (9th Cir. 2007); **Al-Safin v. Circuit City Stores, Inc.**, 394 F.3d 1254 (9th Cir. 2005);
20   **Ingle v. Circuit City Stores, Inc.**, 328 F.3d 1165 (9th Cir. 2003); **Ting v. AT & T**, 319 F.3d 1126, 1150 (9th Cir.
     2003); **Muhammad v. County Bank of Rehoboth Beach, Delaware**, 189 N.J. 1 (N.J. 2006); **Discover Bank v.
21   Shea**, 827 A.2d 358 (N.J.Super.L.2001); **Skirchak v. Dynamics Research Corp., Inc.**, 432 F.Supp.2d 175, 181
     (D.Mass. 2006); **Luna v. Household Finance Corp. III**, 236 F.Supp.2d 1166 (W.D.Wash. 2002); **Cooper v. QC
22   Financial Services, Inc.**, 2007 W: 974100 (D. Ariz. 2007); **Kristian v. Comcast Corp.,** 446 F.3d 25 (1st Cir. 2006);
     **Skirchak v. Dynamics Research Corp., Inc.**, 432 F.Supp.2d 175 (D.Mass. 2006); **Wong v. T-Mobile USA, Inc.**,
23   2006 WL 2042512 (E.D.Mich. 2006); **Lozada v. Dale Baker Oldsmobile**, 91 F.Supp.2d 1087 (W.D.Mich. 2000);
     **Doerhoff v. General Growth Properties, Inc.**, 2006 WL 3210502 (W.D.Mo. 2006); **Dale v. Comcast Corp.**, 2007
24   WL 2471222 (11th Cir. 2007).
     [36] **Gentry** began with the premise that, "the overtime laws…serve the important public policy goal of protecting
25   employees in a relatively weak bargaining position against "the evil of 'overwork,'" and protecting "society's interest
     in a stable job market." **Gentry**, 42 Cal.4th at 446, 457 (**quoting Barrentine v. Arkansas-Best Freight Sys., Inc.**,
26   450 U.S. 728, 739, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981)). **See also Williamson v. General Dynamics Corp.**, 208
     F.3d 1144, 1150  (9th Cir. 2000) (likewise quoting **Barrentine**).
27   [37] None of the persuasive policy arguments in favor of class certification are diminished by the fact that Plaintiffs
     previously had a FLSA class conditionally certified. Many New York and California class members outside the
28   FLSA statute of limitations were never notified of the suit at all, and many who did receive notice were deterred by
     fear and impracticability, as discussed **supra** and **infra**. Schwartz Dec.

19

1.    **The potential for retaliation deterred putative Plaintiffs in the instant case from joining the FLSA class, and therefore class certification is warranted.**

One factor the **Gentry** court discussed, warranting class certification, is the fear of retaliation that current employees feel if forced to pursue litigation individually. **Gentry**, 42 Cal.4th at 459-460. The California Supreme Court "recognized that retaining one's employment while bringing formal legal action against one's employer is not 'a viable option for many employees'" – especially those "further down on the corporate hierarchy," like Defendants' loan officers. **Id.** at 459-460. The **Gentry** court acknowledged that "the nature of the economic dependency involved in the employment relationship is inherently inhibiting." **Id.**[38]

In the instant case, current employee class members have indicated that they did not opt-into the FLSA class because they did not wish to jeopardize their jobs. **Schwartz Dec.; Exh. 15**. It is revealing that, of the current opt-in Plaintiffs, very few of them are current employees of Defendants. **Schwartz Dec.** Whether substantiated in every case or not, even former employees fear ruining positive employment references or being "blackballed" in the industry if they step forward to assert claims against a former employer. **Id.** The relatively small number of Plaintiffs who have taken the initiative to opt-in, out of the total putative class of more than 500 (**id.**), provides further credence to this argument.

2.    **The anticipated overtime awards are modest, so that individuals would have little incentive or ability to litigate, and the employer would receive a windfall for violating the overtime laws.**

---

[38] **See also** noting how fear of reprisal necessitates use of class action mechanism, **e.g.**, **Ansoumana,** 201 F.R.D. at 85-86; **Noble v. 93 University Place Corp.**, 224 F.R.D. 330, 342 (S.D.N.Y. 2004); **EEOC v. Morgan Stanley & Co., Inc.**, 206 F.Supp.2d 559, 562 (S.D.N.Y. 2002); **Arkansas Educ. Ass'n v. Board of Educ. of Portland, Arkansas School Dist.**, 446 F.2d 763, 765 (8th Cir.1971); **Mullen v. Treasure Chest Casino, L.L.C.**, 186 F.3d 620, 625 (5th Cir.1999), **cert. denied**, 528 U.S. 1159, 120 S.Ct. 1169, 145 L.Ed.2d 1078 (2000); **Scott v. Aetna Servs., Inc.**, 210 F.R.D. 261, 267 (D.Conn. 2002); **O'Brien v. Encotech Const. Servs., Inc.**, 203 F.R.D. 346, 350 (N.D.Ill.2001); **Adames v. Mitsubishi Bank, Ltd.**, 133 F.R.D. 82, 89 (E.D.N.Y.1989); **Slanina v. William Penn Parking Corp.**, 106 F.R.D. 419, 423-424 (W.D.Pa.1984).

20

Plaintiffs' average recovery in the instant case is anticipated to be modest, like those cases where **Gentry** held a class action waiver could be exculpatory in effect. **Gentry**, 42 Cal.4[th] at 457-459.[39] The **Gentry** decision explained that typical awards, for example, in the $6,000 to $37,000 range, would not provide an employee with the real ability or incentive to litigate individually. **Id.** at 458. The average wage loss claimed by Plaintiffs and opt-in Plaintiffs here averages approximately $40,000, with the smallest claim a mere $750 and some claims worth only several thousand dollars. (**Schwartz Dec.**), so Plaintiffs' claims are like those claims considered by **Gentry** to warrant class action for policy reasons.

Distinguishing the United States Supreme Court's decision in **Gilmer v. Interstate/Johnson Lane Corp.**, 500 U.S. 20, 26, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), the **Gentry** Court indicated that a $269,000 potential individual recovery (as in an average age discrimination case) would give a very different (and greater) incentive to an individual to litigate, which might alter the Court's analysis of the public policy imperative for class action. **Id.** at 459. Defendants certainly do not concede or contend that each Plaintiff's claims in this matter are in the $269,000 range. Since attorneys' fees to litigate an individual matter through trial rarely if ever sink below $100,000 (**see Schwartz Dec.**),[40] and especially in light of mortgage loan officers' limited financial ability in the current market, the **Gentry** equation applies, and the class action mechanism is necessary here. As the Supreme Court noted in **Deposit Guaranty National Bank v. Roper**, 445 U.S. at 339, "Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device." **Id.**[41]

---

[39] **See also Kinkel v. Cingular Wireless**, 223 Ill.2d 1, 30-33, 857 N.E.2d 250 (2006).

[40] As **Gentry** explains, the potential for eventually recovering attorney fees does not diminish this argument. **Gentry**, 42 Cal.4[th] at 464.

[41] **See also**, noting the policy justification for class certification, given class members' limited financial resources and limited ability/incentive to institute individual suits, **e.g., Phillips Petroleum Co. v. Shutts**, 472 U.S. 797, 809

**3.     Many absent, putative plaintiffs are unaware their right to overtime has been violated.**

Defendants' policy was not to pay any loan officers overtime, because Defendants maintained that, regardless of these employees' actual duties, it was "common knowledge" that salespersons who earn commissions cannot earn overtime. **See**, **e.g., Exh. 13,** Jennings Depo. at pp. 128-140; **Exh. 6,** Needham Depo., pp. 112-113; **Exh. 12,** Gates Depo. at 73, 128**.** Notwithstanding the 29 U.S.C. §216(b) notice which putative class members received, Plaintiffs' declarations submitted with the Motion for Conditional Class Certification indicate that would-be class members generally were led to believe and commonly believed that salespersons who are eligible for commissions cannot earn overtime – regardless of their job duties. Dkt. #72-2. **See also Schwartz Dec.** As **Gentry** explains, "The likelihood of employee unawareness is even greater when, as alleged in the present case, the employer does not simply fail to pay overtime but affirmatively tells its employees that they are not eligible for overtime." **Gentry**, 42 Cal.4[th] at 461. Defendant should not receive a windfall from the misinformation campaign which discourages many putative Plaintiffs from asserting their unwaivable statutory rights and plays into commonly held misimpressions.

**4.     In this case, a class action is needed to assure the effective enforcement of statutory overtime policies, because of real-world obstacles.**

With around 110 current opt-in Plaintiffs out of more than 500 putative class members, the best Plaintiffs can hope for, without class action, is "'random and fragmentary enforcement' of the employer's legal obligation to pay overtime." **Id.**, 42 Cal.4[th] at 462. Certainly, with

(1985); **Local Joint Executive Board of Culinary/Bartender Trust Fund**, **Local Joint Executive Bd.**, 244 F.3d at 1162; **Gutierrez,** 2004 WL 3745224 at *9; **Robidoux v. Celani**, 987 F.2d 931, 936 (2nd Cir.1993); **Cervantes v. Sugar Creek Packing Co.**, 210 F.R.D. 611, 620 (S.D. Ohio 2002); **Pyke v. Cuomo**, 209 F.R.D. 33, 41 (N.D.N.Y.2002); **Nicodemus v. Union Pac. Corp.**, 204 F.R.D. 479, 489 (D.Wyo. 2001); **Mick v. Level Propane Gases, Inc.**, 203 F.R.D. 324, 331 (S.D. Ohio 2001); **Karen L. v. Physicians Health Servs., Inc.**, 202 F.R.D. 94, 100 (D.Conn. 2001); **Gulino v. Board of Educ. of the City Sch. Dist. of New York**, 201 F.R.D. 326, 331 (S.D.N.Y.2001); **Primavera Familienstiftung v. Askin**, 178 F.R.D. 405, 411 (S.D.N.Y.1998); **Jackson v. Foley**, 156 F.R.D. 538, 542 (E.D.N.Y.1994).

Defendants like HSBC, which boasts of being the world's largest company,[42] with assets over $2.3 trillion,[43] including $300 billion in the U.S.,[44] the **<u>Gentry</u>** Court's words ring true: "[A]bsent effective enforcement, the employer's cost of paying occasional judgments and fines may be significantly outweighed by the cost savings of not paying overtime" – such that the "public interest in the enforcement of legal rights and statutory sanctions" will suffer. **<u>Gentry</u>**, 42 Cal.4th at 462. In other words, a handful of scattered claims against such a large corporation would scarcely attract HSBC's attention to bring its practices into line with the statutory purposes.

> **5.    Additional policy justifications support certification.**

Individual employees and former employees, unlike consumers and borrowers (for example), have emotional barriers to accusing supervisors of denying them overtime – not wanting to "get anyone in trouble." **Schwartz Dec.** Often, employees remain friendly or on positive terms even with former supervisors who denied them overtime pay, and fear they might harm these managers with their case. **Id.**

Furthermore, the transient nature of Plaintiffs' and the putative class members' work – where the industry generally has extremely high turnover and the average length of employment is short-term (**<u>see</u> Schwartz Dec.**) – also weighs in favor of a class action in an employment case. **<u>See</u> <u>Gentry</u>**, 42 Cal.4th at 461, citing **<u>Ansoumana</u>,** 201 F.R.D. at 86-87. Without class certification, Defendants would receive an unjustifiable windfall, contrary to public policy, since many employees have "moved on" and will be unlikely to spend the time and resources to litigate to vindicate their rights individually. **<u>Gentry</u>**, 42 Cal.4th at 462.

---

[42] **Exhibit 21**, Excerpt from HSBC Website ("HSBC has jumped two places to top the latest Forbes 2000 list of the world's largest companies…") - available on-line at: http://www.hsbc.com/1/2/newsroom/news/news-archive-2008/hsbc-tops-forbes-2000-list-of-world-s-largest-companies.

[43] **Exhibit 22,** HSBC Group Fact Sheet, March 2008.

[44] **Exhibit 23,** Excerpt from HSBC Website, "About HSBC Bank USA, NA," available on-line at http://www.us.hsbc.com/1/2/3/personal/inside/about.   HSBC Mortgage Corporation (USA) was servicing $68.8 billion worth of loans, as of April 2007. Dkt. #72-16, p. 2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### C. **This Court Should Appoint The Undersigned Class Counsel**.

Plaintiffs' counsel has been actively and diligently prosecuting this action, and are highly experienced in class action litigation, especially wage/hour actions. **Schwartz Dec.**

### D. **This Court Should Appoint Wong, Chaussy, Shearn, and Barbiere as Class Representatives**.

The Plaintiffs have been working cooperatively with counsel in prosecuting the action; they have no conflict of interest with other Class Members; and, they have and will fairly and adequately represent the interests of the Class. **Schwartz Dec.; Exhibit 24,** Duties of Class Representatives Agreements from Plaintiffs. For these reasons, Plaintiffs' counsel asks that the Plaintiffs be appointed Class Representatives.

### E. **The Plaintiffs' Proposed Form and Manner of Service of the Notice are Adequate**.

Plaintiffs further submit that service of the proposed Notice of Class Action, by first-class Mail, postage prepaid, to each member of the Class at the member's last-known address as shown on the Defendants' records, is the best notice practicable under all the circumstances. **Schwartz Dec.; Exhibit 25,** [Proposed] Notice of Class Action**.** Rule 23(c)(2)(B) mandates that for any class certified under Rule 23(b)(3), the Court must determine the best notice practicable under the circumstances, including individual notice to potential class members and that the notice must concisely and clearly state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues or defenses; that a class member may enter an appearance through counsel if the member so desired; that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded, and the binding effect of a class judgment on class members under Rule 23(c)(3).[45] The

---

[45] Rule 23(c)(2)(B); **Besinga v. US**, 923 F.2d 133, 135-136 (9th Cir. 1991).

PLAINTIFFS' MOTION UNDER FED.R.CIV.P. 23

1
2

notice must "fairly apprise the prospective members of the Class of the [proceedings] and of the options that are open to them in connection with [the] proceedings."[46]

3
4
5
6
7
8
9
10
11
12

Here, the contents of the proposed Notice are sufficient. The Notice summarizes the nature of the pending wage/hour litigation and apprises the proposed class, among other things: of the class definition; of the claims, issues and defenses; that complete information regarding the action is available upon request from Class Counsel; that any class member may opt-out of the class; that if they do not opt-out, they will be bound by any judgment or settlement in the litigation; and that if they do not opt-out, they may appear by their own counsel. In short, the proposed Notice satisfies all the requirements of Rule 23(c)(2)(B), and the proposal to mail the notice to last-known addresses with 30 days to opt-out of the suit is sufficient.

13
14
15
16
17
18
19
20
21

**III. CONCLUSION**

For the foregoing reasons, this Court should: grant Plaintiffs' Motion for Class Certification under Rule 23; name the undersigned as Class Counsel; name Philip Wong, Frederic Chaussy, Leslie Shearn, and Chad Barbiere as Class Representatives; approve issuance of the Notice of Class Action attached hereto; order that Court-approved notice be provided to putative class members by Plaintiffs; and order Defendants to produce to Plaintiffs the names and most recent known addresses of the class members in Excel format within 30 days, to enable Plaintiffs to carry out the notice process expeditiously and cost-effectively.

22
23
24
25
26

Dated: September 5, 2008                    NICHOLS KASTER, LLP

                                               s/Bryan J. Schwartz
                                               Bryan J. Schwartz

                                               ATTORNEYS FOR PLAINTIFFS

27
28

---

[46] **Grunin v. International House of Pancakes**, 513 F.2d 114, 122 (8th Cir.), **cert. denied**, 423 U.S. 864, 96 S. Ct. 124 (1975).