# Exhibit 1

00001

1          IN THE UNITED STATES DISTRICT COURT

2            NORTHERN DISTRICT OF CALIFORNIA

3    ----------------------------------------

4    PHILIP WONG, FREDERICK CHAUSSY,

5    and LESLIE MARIE SHEARN,

6    Individually, on behalf of all

7    other similarly situated, and

8    on behalf of the general public,

9

10                 Plaintiffs,

11      - vs -       Case No. 3:07-cv-2446 MMC

12

13   HSBC MORTGAGE CORPORATION (USA);

14   HSBC BANK USA, N.A.; and

15   DOES 1 through 50, inclusive.,

16

17                 Defendants.

18   ----------------------------------------

19         Videotaped deposition of ROBERT W.

20   LAMPKA, taken pursuant to Subpoena duces tecum

21   under the Federal Rules of Civil Procedure, in the

22   law offices of PHILLIPS LYTLE LLP, 3400 HSBC

23   Center, Buffalo, New York, on March 19, 2008,

24   commencing at 9:10 a.m., before RICHARD B. WHALEN,

25   CM, Notary Public.

00002

1  APPEARANCES:    NICHOLS KASTER & ANDERSON, LLP,

2       By BRYAN J. SCHWARTZ, ESQ.,

3       One Embarcadero Center,

4       Suite 720,

5       San Francisco, California  94111,

6       (415) 277-7235, (f) (415) 277-7238,

7       Appearing for the Plaintiffs.

8

9       HSBC BANK USA, NATIONAL ASSOCIATION,

10       Office of General Counsel,

11       By SCOTT D. MILLER, ESQ.,

12       Deputy General Counsel,

13       One HSBC Center,

14       Buffalo, New York  14203,

15       (716) 841-4230, (f) (716) 642-1554

16       Appearing for the Defendants.

17

18       PHILLIPS LYTLE LLP,

19       By PRESTON L. ZARLOCK, ESQ.,

20       3400 HSBC Center,

21       Buffalo, New York  14203,

22       (716) 847-5496, (f) (716) 852-6100

23       Appearing for the Witness.

24

25  PRESENT:     MATTHEW W. MESSING, Videographer.

00123

1  knowledge.

2     Would your answer be the same?

3     MR. ZARLOCK:  Same objection as to legal

4  conclusion.

5     You can answer.

6     MR. MILLER:  Objection to the form.

7     THE WITNESS:  Again, based on the

8  descriptions and if they were consistent from --

9  from rewrite to rewrite, this would definitely hold

10  true.  It is not a professional-level position.

11  It's not requiring advanced knowledge.

12     BY MR. SCHWARTZ:

13     Q.  Okay.  Now moving on to the

14  administrative exemption, I under -- if I

15  understand correctly, you concluded in 2002 that

16  the administrative exemption does not apply to the

17  retail mortgage lending consultant or senior retail

18  mortgage lending consultant position, correct?

19     A.  That is correct.

20     Q.  And to the best of your knowledge, has

21  that always been the case, that the administrative

22  exemption does not apply to these positions?

23     MR. ZARLOCK:  Objection to the form.

24     THE WITNESS:  To the best of my knowledge,

25  again based on the description at the time, it

00124

1  would not apply.

2      BY MR. SCHWARTZ:

3      Q.  When you say "the description at the

4  time," my question was at any time, so based on the

5  descriptions of these positions as they've existed

6  over the years --

7      A.  Well --

8      Q.  -- has the administrative exemption

9  ever applied to these positions?

10      MR. ZARLOCK:  Object to the form of the

11  question.

12      You can answer.

13      MR. MILLER:  Yes, same objection.

14      THE WITNESS:  We only have one version here

15  plus a couple of other versions that are further in

16  the documentation.

17      Based on what's here, I'd have to reassess

18  the descriptions, the various descriptions against

19  this to -- to validate that, but to my knowledge,

20  since it's always been exempt, this would not apply

21  as well.

22      BY MR. SCHWARTZ:

23      Q.  "Since it's always been exempt, this

24  would not apply."  I'm not sure I understand that.

25      A.  As documented in the PeopleSoft --

00125

1    Q.  Uh-huh.

2    A.  -- shots showing the exempt status of

3 the lending consultant jobs --

4    Q.  Right.

5    A.  -- they've always been exempt.

6    Q.  Right.  But this is saying that there's

7 no exemption that applies with respect to the

8 administrative exemption, right?

9    MR. ZARLOCK:  "This" referring to L-14?

10    BY MR. SCHWARTZ:

11    Q.  "This," I'm still -- pages L-14 and 15

12 of Exhibit 2.

13    A.  This is, yes.  And that's referring to

14 the description on pages L-12 and L-13.

15    Q.  Okay.  But to your knowledge, has --

16 has HSBC ever applied the administrative exemption

17 with respect to the retail mortgage lending

18 consultant and senior retail mortgage lending

19 consultant positions?

20    A.  Not to my knowledge.

21    Q.  And why -- why does the administrative

22 exemption not apply to the retail mortgage lending

23 consultant and senior retail mortgage lending

24 consultant positions?

25    MR. ZARLOCK:  Objection to the form.

00126

1     THE WITNESS: You have to answer all of the

2   questions "yes" in the exemption category for the

3   job to be exempt. And the decision in 2002 was

4   that none of the questions fit the role; therefore,

5   that exemption would not apply.

6     BY MR. SCHWARTZ:

7     Q.  Okay. But briefly in your words, just

8   as did you with professional exemption and the

9   executive exemption, please describe why the

10  administrative exemption does not apply, has never

11  applied to the retail mortgage lending consultant

12  and senior retail mortgage lending consultant.

13    MR. MILLER:  Objection to the form.

14    MR. ZARLOCK:  Objection to the form.

15    THE WITNESS:  Based on 2002, I would say

16  that item 3 in particular, which talks of assisting

17  a bona fide executive or administrative employee

18  performing work under specialized or technical

19  lines and executing special assignments or tasks,

20  that would not apply to the position.

21    BY MR. SCHWARTZ:

22    Q.  Okay. Now, you're referring to -- are

23  you referring only to 2002? Or is that -- does

24  that apply generally as long as these positions

25  have existed to the best of your knowledge?

00127

1    A.  I can speak of 2002 based on what's

2 here.  I could -- my assumption would be that the

3 same thing would apply for other years, again

4 depending on what the description said at that

5 point in time.

6    Q.  Okay.  Well, you've provided copies of

7 all the descriptions that have applied since

8 1901 -- I'm joking, but since 1995 for -- for these

9 positions in L-46 through 52.

10    Take whatever time you need look at those

11 and just tell me if the same statements you just

12 made regarding the administrative exemption have

13 applied throughout the existence of that position

14 to the best of your knowledge?

15    MR. ZARLOCK:  Just let me just clarify the

16 question.  Are you asking were they applied or

17 would they apply?

18    MR. SCHWARTZ:  I'm -- I'm asking both.

19    BY MR. SCHWARTZ:

20    Q.  Have they ever been applied with

21 respect --

22    MR. ZARLOCK:  Okay.  Let me -- let me -- let

23 me clarify my point.  I -- I -- if the question is

24 "to your knowledge, were they applied," then

25 probably I'm not going to object to the form.

00128

1    But if you're asking -- if you're asking "do

2  they apply," then I am going to object.  I mean,

3  he'll still answer the question, but it's a

4  difference in how you're asking the question.

5    BY MR. SCHWARTZ:

6    Q.  Okay.  I'm asking with respect to the

7  administrative exemption, you've just explained

8  several reasons why the administrative exemption

9  did not apply in 2002 to the retail mortgage

10  lending consultant and senior retail mortgage

11  lending consultant position.

12    And now I'm asking having an opportunity to

13  look at the job descriptions for this position and

14  to the best of your recollection, would those same

15  reasons for not applying the administrative

16  exemption, do those apply across all of the years

17  of the existence of the position?

18    MR. ZARLOCK:  And then I'm going to object

19  to the form of the question for a variety of

20  reasons, but incomplete hypothetical at the very

21  least.

22    MR. MILLER:  Object to the form.

23    THE WITNESS:  As the descriptions read, it

24  appears there's been minimal change over the years.

25  It would be more appropriate to do this in -- with

00129

1  more time and to take a look individually at each

2  description and -- and assessing.

3      But based on 2002 and the description not

4  changing, then, yes, that would -- the

5  administrative exemption would not apply.

6      BY MR. SCHWARTZ:

7      Q.  Would you agree also that the primary

8  duty of the retail mortgage lending consultant and

9  senior retail mortgage lending consultant positions

10  has always been selling mortgages?

11      MR. ZARLOCK:  Objection to the form.

12      MR. MILLER:  Yeah, objection to the form.

13      THE WITNESS:  Yes.

14      BY MR. SCHWARTZ:

15      Q.  Continuing on to the outside sales

16  exemption, you found in 2002 that the outside sales

17  exemption did apply to the retail mortgage lending

18  consultant and senior retail mortgage lending

19  consultant positions?

20      Right?

21      A.  Yes.

22      Q.  And so is it safe to say that that was

23  the reason why you -- you in cooperation with

24  Mr. Schiavi concluded that this was an exempt

25  position was because of the outside sales

00130

1 exemption?

2     MR. ZARLOCK: Form.

3     You can answer.

4     THE WITNESS: In addition with Sarah being

5 involved as well, yes.

6     BY MR. SCHWARTZ:

7     Q. Right. I'm sorry. I don't mean to

8 keep leaving her out. It's not just because she

9 has the longest name.

10     So have the reasons for applying the outside

11 sales exemption to the senior retail mortgage

12 lending consultant and retail mortgage lending

13 consultant position, have those reasons remained

14 consistent through the years to the best of your

15 recollection?

16     MR. ZARLOCK: Form.

17     You can answer.

18     MR. MILLER: Yeah, objection to the form.

19     THE WITNESS: Yes, they have.

20     BY MR. SCHWARTZ:

21     Q. And could you explain in your own words

22 all of the reasons that you believe that the

23 outside sales exemption applies to these -- the

24 senior retail mortgage lending consultant and

25 retail mortgage lending consultant positions?

00131

1    MR. ZARLOCK:  Just objection to the form.

2  Are you asking him as to his 2006 review of it

3  or -- okay, I don't know when he last reviewed the

4  issue.

5    BY MR. SCHWARTZ:

6    Q.   What are all the reasons that you can

7  recall that have -- that have been applied at any

8  time that relate to why HSBC has concluded that the

9  outside sales exemption applies to the retail

10  mortgage lending consultant and senior retail

11  mortgage lending consultant position?

12    MR. ZARLOCK:  Objection to the form.

13    You can answer.

14    MR. MILLER:  Objection to the form.

15    THE WITNESS:  And in what year are you

16  speaking of?

17    BY MR. SCHWARTZ:

18    Q.   At any time.  You've already said that

19  the reasons haven't changed much, so I don't know

20  that it's that significant.

21    A.   The understanding has been that the

22  role is selling mortgages to customers, which meets

23  part 1A of the exemption in 2002.

24    They are -- the bank is receiving income

25  because of that, which fits part 1B.  And they are

00132

1   doing it from a -- typically from a loan production

2   office but doing it in most cases at the customer's

3   site or with a realtor and the customer.

4        Q.  And the -- the testimony you just gave

5   that they are doing it typically from a loan

6   production office or doing it in most cases from a

7   customer site or from a -- or with a realtor from a

8   real estate office, what is the source of your

9   information that that is true of senior retail

10  mortgage lending consultants and mortgage

11  lending -- and retail mortgage lending consultants?

12       MR. ZARLOCK:  Objection as to time frame of

13  "source."

14       But go ahead.

15       THE WITNESS:  Numerous conversations over

16  the years with either HR and/or Mortgage

17  Management, Mortgage Sales Management.

18       BY MR. SCHWARTZ:

19       Q.  At any time, have you spoken with a

20  senior retail mortgage lending consultant or a

21  retail mortgage lending consultant in order to

22  assess the accuracy of that conclusion that they

23  typically are selling loans from a customer's site

24  or at realtor offices?

25       A.  Not to my knowledge.

**Lampka, Robert - 03/19/2008**                    **Page 132**

00133

1    Q.  When you say numerous conversations

2  over the years with Human Resources or the Mortgage

3  Sales Management, are we -- are you referring

4  specifically to Jeanie Jennings, Mr. Schiavi, and

5  Mr. Gates?

6    A.  I can speak specifically to 2006 when I

7  had a conversation with Jeanie Jennings, who in

8  turn had a conversation with Sales, Mortgage Sales.

9  I believe it was David Gates.

10    Q.  That you had one conversation with

11  Ms. Jennings on this point in 2006?

12    A.  Yes.

13    Q.  What about -- I'm going to ask you more

14  about that conversation, but what about at other

15  times?

16    You mentioned numerous conversations over

17  the years with Human Resources and Mortgage Sales

18  Management.

19    What are the other occasions that you had

20  conversations on this point of -- that the notion

21  that the senior retail mortgage lending consultants

22  and retail mortgage lending consultants are selling

23  loans from a customer's site or at real estate

24  offices?

25    MR. MILLER:  Object to the --

00134

1     THE WITNESS:  I can't --

2     MR. MILLER:  -- form.

3     THE WITNESS:  I can't recall specific dates

4  or individuals.

5     BY MR. SCHWARTZ:

6     Q.  I'm not -- I'm not asking -- I -- I

7  would be blown away if you could remember that on

8  June 2nd, 2003, you had a conversation or something

9  of that nature.  That's not what I'm asking.

10     But generally speaking, did you have -- who

11  did you speak to on this subject matter

12  regarding -- around the time of the 2002

13  compensation study?

14     A.  Sarah was the individual that was

15  leading -- was -- was handling this particular

16  function.  Whether she had any conversations with

17  somebody at that point in time, I'm not certain.

18     Q.  What about -- so if I understand

19  correctly, then in around the 2002 compensation

20  study, you did not speak to anybody in Human

21  Resources or Mortgage Sales Management relating to

22  the outside sales classification exemption and its

23  application to the senior retail mortgage lending

24  consultants and retail mortgage lending

25  consultants?

00135

1    MR. ZARLOCK:  Objection to the form.

2    MR. MILLER:  Could you -- could you read the

3  question back, please?

4    (The above-requested question was then read

5  by the reporter.)

6    MR. ZARLOCK:  Same objection.

7    THE WITNESS:  I specifically did not but the

8  destructions that I have always given people such

9  as Sarah who reported to me at the time or Steve

10  now who does not report to me but does some work

11  for me in this regard is always to err on the side

12  of conservative in FLSA designations.

13    So to -- if there's any question as to what

14  designation belongs, question Management and/or HR

15  depending on the time period this study was done

16  because our process was slightly different.  And if

17  in doubt, the job is nonexempt.

18    BY MR. SCHWARTZ:

19    Q.  Uh-huh.  So were you in doubt in 2006

20  when you spoke to Jeanie Jennings about the outside

21  sales exemption and these positions?

22    A.  Could you expand on your question?

23    Q.  Is that what provoked the conversation

24  with Ms. Jennings about the outside sales exemption

25  relating to these positions, senior retail mortgage

00136

1  lending consultant and retail mortgage lending

2  consultant?

3      MR. MILLER:  Objection to the form.

4      MR. ZARLOCK:  Objection to the form.

5      You can answer.

6      THE WITNESS:  At times, there is, shall I

7  call it trade talk among compensation professionals

8  saying that there may be some positions you may

9  want to take a closer look at because of maybe

10  potential legal issues that are ongoing outside the

11  company.

12      BY MR. SCHWARTZ:

13      Q.  Tell me about what trade talk you had

14  with compensation professionals that led to your

15  conversation with Ms. Jennings about the outside

16  sales exemption and whether it applied to retail

17  mortgage lending consultants and senior retail

18  mortgage lending consultants?

19      MR. ZARLOCK:  Objection to the form.

20      You can answer.

21      THE WITNESS:  Karen Wlodarek, who I

22  mentioned earlier, she was actually hired as an

23  outside consultant for us in Compensation to assist

24  on various compensation-related tasks.

25      During the 2005-2006 time frame, she was

00137

1  doing a study more for the incentive side of

2  Mortgage Sales to make sure we are -- were paying

3  our people appropriately from an incentive

4  perspective.

5      She said that she might want to pay close

6  attention, and it was similar to what I said

7  earlier, take a close look at this because some

8  other firms, and again it would depend on their

9  description.

10     So you can't take it blanket just because

11  one company does it one way, it means we do because

12  again going back to our loan officer conversation

13  earlier, title doesn't drive FLSA. It's the

14  description that does.

15     So while a job may be a sales officer here

16  and a sales officer somewhere else, the duties may

17  be different enough to warrant a distinction. But

18  for us internally based on her comments to us, that

19  precipitated my conversations with Jeanie.

20     And based on the fact of there being no

21  doubt in my mind that the exempt status remained,

22  the exempt status was recommended and approved by

23  HR and David Gates.

24     BY MR. SCHWARTZ:

25     Q. What -- what did Ms. Wlodarek say to

00138

1  you specifically about -- about these -- about loan

2  officers and the outside sales exemption?

3      A.  I can't answer to specifics.  I can

4  only say she said in so many words, there's some

5  lawsuits out there, just take a look at it based on

6  your own job, and make sure that you're comfortable

7  with what you come up with.

8      Q.  Now, you said that after doing that --

9  well, and I'm going to get to what you discussed in

10  a minute with Ms. Jennings.

11      But you said there was no -- well, I guess,

12  why don't -- tell -- tell me everything you can

13  remember about your conversation with Ms. Jennings

14  in 2006 relating to the outside sales exemption and

15  its application to senior retail mortgage lending

16  consultants and retail mortgage lending

17  consultants.

18      A.  I can't recall specific things I said

19  in 2006, but I would have spoken to her about --

20      MR. ZARLOCK:  Just for clarification, don't

21  testify -- don't speculate as to what you talked

22  about.  If you have a general recollection, you may

23  testify to it, but don't speculate.

24      THE WITNESS:  Okay.  The general

25  recollection would be, "Here's what the outside

00139

1 exemption is. What do our people do? Does what

2 our people do fit this or don't fit this?"

3      BY MR. SCHWARTZ:

4      Q.  And what did she tell you?

5      A.  Again, specifics, I don't recall, but

6 in generalities, the outside sales exemption she

7 felt was still appropriate as did the Line as did

8 myself.

9      Q.  As did the Line?

10     A.  Business Management, David Gates.

11     Q.  Okay. Yeah. I mean, I understand you

12 told me earlier what your conclusion was but how

13 did you get there?

14     I mean, what happened in that discussion,

15 what was discussed?

16     A.  Again --

17     Q.  I'm -- I'm not asking you to quote her

18 but what -- what was the -- why did you feel it

19 still applied? Why did she feel it still applied?

20 What facts were discussed that you -- that -- that

21 were relevant?

22     A.  It was all verbal conversation. I

23 don't have record of it but I can -- I know that if

24 it was any doubt that it should have been

25 nonexempt, I would have made it such. And I --

00140

1  again, I have no doubt.

2      Q.  But you don't know why you had no doubt

3  at this point, you don't know what facts led you to

4  have no doubt that the outside sales exemption

5  applies to senior retail mortgage lending

6  consultants and retail mortgage lending

7  consultants?

8      A.  Again, it would have been what Jeanie

9  and I spoke about at that time relative to the

10  guidelines.

11      MR. ZARLOCK:  Is there anything in the

12  documents that would help you?

13      BY MR. SCHWARTZ:

14      Q.  Yeah, I have no -- I have no problem

15  with you referring -- it's not a memory test.  I

16  just want to know what the facts were that you were

17  considering.  So if there's anything that would

18  refresh your recollection here, by all means, let

19  us know.

20      A.  Basically the outside sales test was

21  simplified from the 2004 changes to the two items

22  that are on the bottom of page L-56.

23      It -- it was confirmed that the sales

24  consultant position was -- was regularly away from

25  the employee's place of business selling and

00141

1 obviously they're -- they're selling mortgage

2 products the bank gets income from.

3      Q.  Okay.  Well, what -- what facts did --

4 how -- what facts were discussed between you and

5 Ms. Jennings as to the notion that they were --

6 that these loan officers were regularly away from

7 their place of business?

8      A.  Again, you're asking me to recall

9 specifics that I don't -- that I don't recall.  I

10 can tell you that, as I said before, we talked of

11 the fact is the person away from their office

12 selling, which is basically what item number 1

13 under the outside sales exemption test is.  And it

14 was confirmed that yes, that is indeed the case.

15      Q.  Confirmed by whom?

16      A.  Jeanie and talking through David Gates.

17      Q.  In other words, Ms. Jennings spoke to

18 Mr. Gates and relayed to you that it was confirmed

19 that loan officers were regularly away from their

20 place of business at the Mortgage Corporation?

21      A.  Yes.

22      Q.  And you don't recall any other details

23 at all as to facts that led to that conclusion that

24 they were regularly away?

25      A.  No.

00147

1  their loan production office or home office, if

2  that be the case.

3  　　BY MR. SCHWARTZ:

4  　　Q.  And would you also include in that loan

5  production office home office or a bank branch?

6  　　MR. ZARLOCK:  Objection to the form.

7  Compound.

8  　　MR. MILLER:  Yeah, objection to the form.

9  　　THE WITNESS:  Repeat your question, please.

10  　　BY MR. SCHWARTZ:

11  　　Q.  If -- if -- in order for an employee to

12  be -- a loan officer to be classified to be -- to

13  fall under the outside sales exemption that they

14  would need to spend a majority of their time

15  outside of a home office, loan production office,

16  or bank branch.

17  　　Is that correct?

18  　　MR. ZARLOCK:  Form.

19  　　You can answer.

20  　　THE WITNESS:  That would be correct.

21  　　BY MR. SCHWARTZ:

22  　　Q.  And when -- and by majority, of course,

23  you mean greater 50 percent; is that right?

24  　　MR. MILLER:  Objection to form.

25  　　MR. ZARLOCK:  Form.

00148

1    You can answer.

2    THE WITNESS: Yes.

3    BY MR. SCHWARTZ:

4    Q.  Is -- other than what Ms. Jennings told

5    you, do you have any other evidence of any kind

6    that would establish -- or have you had any

7    evidence of any kind that would establish that loan

8    officers typically spend greater than 50 percent of

9    their time outside of their home office, loan

10   production office, or bank branch?

11   A.  Repeat your question, please?

12   Q.  Other than your conversation with

13   Jeanie Jennings, have you ever had any evidence of

14   any kind that loan officers at the Mortgage

15   Corporation typically spend more than 50 percent of

16   their time outside of loan production office, bank

17   branch, or home office?

18   MR. ZARLOCK:  Objection to the form.

19   THE WITNESS:  No.

20   BY MR. SCHWARTZ:

21   Q.  So you're relying entirely on her for

22   that understanding?

23   MR. ZARLOCK:  Same objection.

24   THE WITNESS:  Yes, but the way the HR model

25   is to work, we are to work through HR who is to in

00149

1  turn work with the business. If I had any doubt, I

2  would speak directly with the Line or, in this

3  case, David Gates.

4      BY MR. SCHWARTZ:

5      Q.  Well, what about at any time prior to

6  this 2006 compensation study, did you have any

7  evidence that loan officers spent more than

8  50 percent of their time away from an HSBC facility

9  or a home office?

10     A.  No.

11     Q.  Did Mr. Schiavi make that assertion to

12  you?

13     A.  Make what assertion?

14     Q.  That loan officers spend more than

15  50 percent of their time away from an HSBC facility

16  or home office.

17     A.  He didn't indicate anything to the

18  contrary.

19     Q.  Why -- why did you assume that they

20  spent more than 50 percent of their time away from

21  an HSBC facility or their home office without any

22  evidence?

23     A.  Based on the job description not

24  changing essentially since the first document in

25  here.

00230

1  STATE OF NEW YORK)

2              ss:

3  COUNTY OF ERIE   )

4

5      I DO HEREBY CERTIFY as a Notary Public in and

6  for the State of New York, that I did attend and

7  report the foregoing deposition, which was taken

8  down by me in a verbatim manner by means of machine

9  shorthand.  Further, that the deposition was then

10  reduced to writing in my presence and under my

11  direction.  That the deposition was taken to be

12  used in the foregoing entitled action.  That the

13  said deponent, before examination, was duly sworn

14  to testify to the truth, the whole truth and

15  nothing but the truth, relative to said action.

16

17

18

19              -------------------------

20              RICHARD B. WHALEN, CM,

21              Notary Public.

22

23

24

25