Donald H. Nichols, MN State Bar No. 78918
(admitted **pro hac vice**)
Paul J. Lukas, MN State Bar No. 22084X
(admitted **pro hac vice**)
Tim C. Selander, MN Bar No. 0387016
(admitted **pro hac vice**)
Adrianna S. Haugen, WI Bar No.1064788
(admitted **pro hac vice**)
NICHOLS KASTER, PLLP
4600 IDS Center
80 S. 8th Street
Minneapolis, MN 55402

Bryan J. Schwartz, CA State Bar No. 209903
Matthew C. Helland, CA State Bar No. 250451
NICHOLS KASTER, LLP
One Embarcadero Center, Ste. 720
San Francisco, CA 94111

Attorneys for Individual and Representative Plaintiffs

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Philip Wong, Frederic Chaussy, Leslie Marie Shearn, and Chad Barbiere, individually, on behalf of all others similarly situated, and on behalf of the general public, | Case No: 3:07-cv-2446 |
| | **The Honorable Maxine M. Chesney** |
| Plaintiffs, | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' "MOTION FOR RULE 11(C) SANCTIONS"** |
| vs. | Hearing Date:  October 10, 2008<br>Time:  9:00 a.m.<br>Courtroom:  7 (19th floor) |
| HSBC Mortgage Corporation (USA); HSBC Bank USA, N.A.; and DOES 1 through 50, inclusive, | |
| Defendants. | Date originally filed:  May 7, 2007 |

1

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION............................................................................................................ 1

II. FACTS CONCERNING DEFENDANTS' FALSE ALLEGATIONS AND
    DEFENDANTS' UNFOUNDED MOTION.................................................................... 4

    A. Defendants Did Not Follow The Procedural Requirements Under Fed.R.Civ.P. 11...... 4

    B.  Defendants' Two Allegations Of Impropriety Are False, Based On Improperly-
        Obtained Information, And Would Not Warrant Rule 11 Sanctions Even if True......... 4

        1. Defendants' allegations are false. ...................................................................... 5

          a. The undersigned and Plaintiffs have never destroyed evidence. .................................. 5

          b. The undersigned and Plaintiffs have not improperly handled confidential HSBC
             information. ................................................................................................................. 6

        2. Defendants and their attorneys, Littler Mendelson, improperly sought to review
           attorney-client and attorney work product privileged information, in violation of the
           attorneys' ethical obligations and Fed.R.Civ.P. 26(b)(5)(B), even after Plaintiffs' acted
           to protect their privilege and sought return of such information. .................................. 8

        3. Defendants do not allege, and no evidence suggests, that Plaintiffs have made any
           misrepresentations to this Court under Rule 11(b) in any way related to the allegedly
           improper evidence/information, as required for Rule 11(c) sanctions......................... 10

III. DEFENDANTS' ALLEGATIONS FAIL TO MEET RULE 11 STANDARDS………..11

    A.  Defendants Do Not Meet A Single Criterion For Filing A Rule 11(c) Motion, but
        Instead Violate Rule 11(d), Bringing Discovery Disputes into a Rule 11 Motion. ...... 12

    B.  The Cases Defendants Cite In Support of Their Motion Demonstrate Why Defendants'
        Motion Must Fail.......................................................................................................... 13

IV. DEFENDANTS' MOTION MISCONSTRUES THE ATTORNEY-CLIENT AND
    ATTORNEY WORK PRODUCT PRIVILEGES. ........................................................ 16

    A. Plaintiff Wong Has Not Waived Attorney-Client or Attorney Work Product Privilege.16

        1. The "sacred" nature of the attorney-client privilege would not permit waiver as
           advocated by Defendants. ............................................................................................ 17

        2. The same arguments apply to the work product privilege as the attorney-client
           privilege. ..................................................................................................................... 20

        3. Defendants' cases cited for waived privilege should not persuade this Court, and in
           any event, do not support Defendants' arguments. ....................................................... 20

V.  EVEN IF SANCTIONS WERE WARRANTED, DISQUALIFICATION OF COUNSEL
    IS AN INAPPROPRIATE SANCTION......................................................................... 24

VI. THE COURT MAY REQUIRE DEFENDANTS TO PAY PLAINTIFFS' FEES AND
    COSTS IN OPPOSING THIS BAD-FAITH MOTION. ............................................... 25

VII. CONCLUSION.............................................................................................................. 25

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## <u>TABLE OF AUTHORITIES</u>

2

**CASES**

3

**<u>Adriana Intern. Corp. v. Thoeren</u>,**
  913 F.2d 1406 (9ht Cir. 1990)......................................................................... 25

4

**<u>Anheuser-Busch, Inc. v. Natural Beverage Distributors</u>,**
  69 F.3d 337 (9th Cir. 1995).......................................................................... 14

5

6

**<u>Bittaker v. Woodford</u>,**
  331 F.3d 715, (9th Cir. 2003).......................................................................... 18

7

**<u>Burlington Northern & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.</u>,**
  408 F.3d 1142 (9th Cir. 2005)......................................................................... 13

8

9

**<u>Chambers v. NASCO, Inc.</u>,**
  501 U.S. 32, 43 n.8, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) .......................................... 3, passim

10

**<u>Cichon v. Exelon Generation Co., L.L.C.</u>,**
  401 F.3d 803, 812 (7th Cir. 2005)..................................................................... 7

11

12

**<u>Concat LP v. Unilever, PLC</u>,**
  350 F.Supp.2d 796 (N.D.Cal.2004). ................................................................... 24

13

**<u>In re Asia Global Crossing, Ltd.</u>,**
  322 B.R. 247 (S.D.N.Y.2005)....................................................................... 21, 22

14

15

**<u>In re Grand Jury Subpoena</u>,**
  357 F.3d 900, 907 (9th Cir. 2004).................................................................. 10, 20

16

**<u>In re von Bulow</u>,**
  828 F.2d 94, 103 (2nd Cir.1987)...................................................................... 19

17

18

**<u>Katz v. United States</u>,**
  389 U.S. 347, 353, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) ............................................... 20

19

20

**<u>Kaufman v. SunGuard Inv. System</u>,**
  2006 WL 1307882 (D.N.J.); .......................................................................... 21, 23

21

22

**<u>La Jolla Cove Motel and Hotel Apartments, Inc., v. Superior Court</u>,**
  121 Cal.App.4th 773 (2004) (**citing** Cal.Evid.Code, § 917).......................................... 10

23

24

**<u>Leon v. IDX Systems Corp.</u>,**
  464 F.3d 951, 961 (9th Cir. 2006)................................................................. 11, 13, 14, 15

25

**<u>Long v. Marubeni America Corp.</u>,**
  2006 WL 2998671 (S.D.N.Y.);........................................................................ 21

26

**<u>Optyl Eyewear Fashion Intern. Corp. v. Style Companies, Ltd.</u>,**
  760 F.2d 1045 (9th Cir. 1985)....................................................................... 25

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Lynch v. United Services Auto. Assn. (USAA),**
  491 F.Supp.2d 357, 367 (S.D.N.Y. 2007)…………………………………………….………4

**Pac. Harbor Capital, Inc. v. Carnival Air Lines, Inc.,**
  210 F.3d 1112 (9th Cir. 2000).................................................................................. 24

**Quon v. Arch Wireless Operating Co., Inc.,**
  529 F.3d 892, 904 (9th Cir. 2008)........................................................................... 20

**Roberts v. City of Palmdale,**
  5 Cal.4th 363, 371, 20 Cal.Rptr.2d 330, 853 P.2d 496 (1993)................................... 10

**Scott v. Beth Israel Med. Ctr. Inc.,**
  17 Misc.3d 934, 2007 WL 3053351 (N.Y. Sup. Ct.)……………………………………....21, 22

**Shapero v.Kentucky Bar Assn.,**
  486 U.S. 466 (1988) ................................................................................................ 8

**Shurance v. Planning Control Intern.,**
  839 F.2d 1347 (9th Cir. 1988)................................................................................. 24

**Thygeson v. U.S. Bancorp,**
  2004 WL 2066746 (D.Or.)) ................................................................... 21, 23, 24

**U.S. for Use and Ben. of Wiltec Guam, Inc. v. Kahaluu Const. Co., Inc.,**
  857 F.2d 600 (9th Cir. 1988)........................................................................... …15

**U.S. v. Mett,**
  178 F.3d 1058 (9th Cir. 1999)............................................................................... 17

**United States v. Bauer,**
  132 F.3d 504 (9th Cir. 1997)................................................................................... 17

**United States v. Chen,**
  99 F.3d 1495 (9th Cir.1996)..................................................................................... 18
  cert denied 520 U.S. 1167, 117 S.Ct. 1429, 137 L.Ed.2d 538 (1997). ...................... 18

**United States v. Forrester,**
  512 F.3d 500 (9th Cir.2008).................................................................................... 20

**United States v. Jacobsen,**
  466 U.S. 109, 114, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984) ........................................ 20

**United States v. Kitsap Physicians Serv.,**
  314 F.3d 995 (9th Cir. 2002)................................................................................... 15

**United States v. Wunsch,**
  84 F.3d 1110, 1115 (9th Cir. 1996)......................................................................... 24

PLAINTIFFS' OPPOSITION TO DEFENDANTS' SANCTIONS MOTION

**Upjohn Co. v. United States,**
  449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) ................................................................. 17

**Weil v. Investment/Indicators, Research and Management, Inc.,**
  647 F.2d 18, 25 n.13 (9th Cir. 1981) ..................................................................................... 18, 19


## **OTHER AUTHORITIES**

Black's Law Dictionary (8th ed. 2004)………………………………………………………………2, 3

PLAINTIFFS' OPPOSITION TO DEFENDANTS' SANCTIONS MOTION

## I.    **INTRODUCTION**

After losing in their opposition to Plaintiffs' conditional certification and summary judgment motion, losing on their motion to dismiss, losing on their opposition to Plaintiffs' amendment to add an unlawful deduction claim to this case, seeing over 100 current and former employees join this case, and in light of a steady stream of testimony from deponents supporting Plaintiffs' allegations in this matter, Defendants have now resorted to a desperate litigation tactic. Defendants are trying to penetrate the privileges which underpin the entire legal profession, the attorney-client and attorney work product privileges, and leveling frivolous accusations against the undersigned Plaintiffs' counsel for trying to protect such.

Ironically, in charging the undersigned with ethics violations, Defendants have committed them – searching for and/or inadvertently discovering, and then refusing to return to Plaintiffs, upon request, clearly attorney-client privileged communications, which included privileged attorney work product. Indeed, rather than performing their duty to return to Plaintiffs this privileged information, Defendants have used it as the basis for the instant Motion.

Next, Defendants argue out of one side of their proverbial mouth that Plaintiffs have not done enough to protect the attorney-client privilege, by permitting a small handful of emails to occur on Plaintiffs' work email accounts, thereby, Defendants contend, waiving all privilege. Then, out of the other side of their mouth, Defendants contend that Plaintiffs' reasonable effort to protect this privilege, by erasing attorney-client communications from a work email account, was sanctionable, unethical conduct. The communications Plaintiffs sought to delete from Defendants' email system were never destroyed in any event, but rather preserved by Plaintiffs.

When Plaintiff Wong felt disparately treated after filing his wage complaint, the

undersigned[1] asked Mr. Wong the basic question in any employment retaliation case, to wit: how he was treated compared to similarly-situated employees, attempting to assess the claim's merits. Rather than expressing gratitude to the undersigned for helping them ultimately to avoid another retaliation complaint, Defendants have again cried "sanctions," without foundation.

Defendants' Motion must fail, because, among other reasons:

- it was not served under Rule 5, with 21 days' notice, before being presented to the Court, as required under Rule 11(c)(2);

- it does not allege any improper or unwarranted representations to the Court by the undersigned under Rule 11(b), as required to justify Rule 11(c) sanctions;

- Rule 11 does not apply to discovery requests, responses, and objections (**<u>see</u>** Rule 11(d));

- the undersigned has neither destroyed, nor directed any witness to destroy, any evidence;

- the undersigned and Plaintiffs never misappropriated any confidential information related to Defendants' employees or customers;

- attorney-client communications and attorney work product are not "evidence" to which Defendants were or are entitled;[2]

- transmissions between an attorney and his client made via a work email account do not automatically waive attorney-client or attorney work product privileges, though they may be more prone to inadvertent disclosure;

- a company may not seek to review known attorney-client or attorney work product

---

[1] Though Plaintiffs maintain that attorney-client and attorney work-product privileges still apply to these communications, Plaintiffs unfortunately cannot "unring the bell," and must discuss these communications here, in order to defend against this frivolous Motion.

[2] According to Black's Law Dictionary (8th ed. 2004), evidence is something (including testimony, documents, and tangible objects) that tends to prove or disprove the existence of an alleged fact. Apart from the sanctions Motion itself, no fact is alleged in this misclassification case which relates to Mr. Wong's attorney-client communications and the undersigned's attorney work product which Defendants have taken it upon themselves to review.  Nor are attorney-client communications and attorney work product "solicitations" (**i.e.,** an attempt or effort to gain business) – a term which Defendants use repeatedly in their Motion.

2

privileged information transmitted via a work email account, and must follow ethical rules regarding return of inadvertently disclosed information;

• seeking information from a client alleging disparate treatment regarding the performance of similarly-situated comparators is proper and indeed, necessary attorney conduct;

• supposed violations of Defendants' "company policies," even if corroborated (which they are not), neither warrant sanctions against counsel nor disqualification of counsel and Plaintiffs as class representatives;

• the undersigned and his firm have not intentionally solicited Defendants' employees at Defendants' facilities during working hours, though such would not be sanctionable in any event; and

• because of its potential to prejudice a client, disqualification of counsel is a generally disfavored sanction.

The Court should condemn the sort of tactics employed by Defendants here, which are designed exclusively to distract the Court from the central issue in the case: whether Plaintiffs and the class of loan officers were properly classified as exempt based on the outside sales exemption. The Court should order fees and costs to Plaintiffs for having to defend this bad-faith motion.[3]  It appears to have been brought to harass the undersigned and his clients, taint the Court's

---

[3] According to Black's Law Dictionary (8th ed. 2004), bad faith is "dishonesty of belief or purpose." Since, as discussed **infra**, Defendants present no evidence whatsoever relating to any sanctionable conduct (violating Rule 11(b)(3)), and fail even to identify the appropriate legal standard or any cases which support their Motion (Rule 11(b)(2)), the Court should conclude that Defendants' conduct is motivated by dishonesty of belief and purpose. That is, Defendants' do not present a shred of evidence that would inform a belief that Plaintiffs and counsel have actually engaged in sanctionable conduct. They also make no real attempt to prove the criteria for sanctions (their stated purpose), but seemingly hope that, in violation of Rule 11(b)(1), through generalized mudslinging, they may turn this Court against Plaintiffs and the undersigned, and disqualify the latter from representing the class of loan officers which Plaintiffs seek to certify. The Court should rule, unequivocally, that a completely unfounded sanctions motion alleging a breach of ethics is an inappropriate way to oppose class certification regarding Fed.R.Civ.P. 23(a)(4) (adequacy of representation), and that such tactics merely serve to debase the profession. Though Plaintiffs do not file a cross-motion for sanctions today, they reserve the right to so move. This Court may **sua sponte** sanction Defendants and their counsel. **Chambers v. NASCO, Inc.**, 501 U.S. 32, 43 n.8, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).

3

perceptions, blackmail Plaintiffs into dropping the Rule 23 Motion,[4] needlessly escalate Littler Mendelson's bill to their clients, and is premised on privileged documents obtained and employed by Defendants in contravention of the ethical standards of our profession. Unfortunately, this is not a new tactic for Littler Mendelson.[5]

## II.    FACTS CONCERNING DEFENDANTS' FALSE ALLEGATIONS AND DEFENDANTS' UNFOUNDED MOTION

### A. Defendants Did Not Follow The Procedural Requirements Under Fed.R.Civ.P. 11.

On or about September 5, 2008, the same day Defendants presented their sanctions Motion to the Court, Plaintiffs received a copy of Defendants' Motion with exhibits. Declaration of Bryan J. Schwartz, Esq. Defendants made no effort to serve their Motion under Fed.R.Civ.P. 5, with 21 days notice prior Court filing, as required under Fed.R.Civ.P. 11(c)(2).

### B. Defendants' Two Allegations Of Impropriety Are False, Based On Improperly-Obtained Information, And Would Not Warrant Rule 11 Sanctions Even if True.

Setting aside the abundance of puffery in Defendants' recitation of "factual" background, they make exactly two allegations that might conceivably have anything to do with sanctions:[6]

---

[4] Defendants indicate in their Motion that, "to the extent Plaintiffs do not file any motion requesting class certification, Defendants will withdraw this Motion from the Court's consideration." Motion at p. 1. Defendants' transparent objective – to seek to defeat or prevent the bringing of a Rule 23 certification, by using a Rule 11 sanctions motion – is improper.

[5] **See**, **e.g., Lynch v. United Services Auto. Assn. (USAA)**, 491 F.Supp.2d 357, 367 (S.D.N.Y. 2007) ("I am constrained to note that by making this patently ridiculous motion to dismiss or for sanctions, USAA [represented by Littler Mendelson] has unnecessarily increased its own legal fees, and has caused Lynch and NKA to incur completely unnecessary fees – a fact the court will remember at fee award time should plaintiff prevail in this action.").

[6] Most of Defendants' brief is addressed to trying to defeat adequacy of representation under Fed.R.Civ.P. 23(a)(4) – i.e., "disqualification as class counsel" of Nichols Kaster and "disqualify[ication] as class representatives" of Plaintiffs Wong and Chaussy. Motion at pp. 16-22. Since the Motion is one for sanctions under Rule 11 – and the Rule 23 briefing is occurring concurrently – Plaintiffs will not address the "disqualification" arguments in this opposition. Suffice it to say, since Defendants' allegations are inaccurate and unwarranted in every way, "disqualification" is just as inappropriate as sanctions. Likewise, Defendants' contentions regarding what information Plaintiffs did or did not produce in discovery (**e.g.,** Motion at pp. 5-6) – while disputed in their entirety – have no bearing on a sanctions motion. Fed.R.Civ.P. 11(d).

4

1)  that undersigned counsel urged spoliation of evidence; and

2)  that undersigned counsel and Plaintiffs improperly handled confidential financial information either about Defendants' customers or employees.

Both of these allegations are false. Both are based upon attorney-client privileged and attorney work product privileged information, which Defendants actively sought to review, in contravention of Littler Mendelson's ethical obligations concerning privileged information. In neither case do Defendants allege that Plaintiffs have made any misrepresentations to this Court under Rule 11(b) in any way related to the allegedly improper evidence/information, as required for Rule 11(c) sanctions.

### 1. Defendants' allegations are false.

### a. The undersigned and Plaintiffs have never destroyed evidence.

The sum total of Defendants' evidence regarding spoliation of evidence consists of a single privileged[7] email between the undersigned and his client, Philip Wong, on December 28, 2007, at 5:45 p.m. Motion at pp. 3-5, citing Lord Dec., Exh. A at p. 33 (Dkt. #184-3). The email from undersigned counsel to Plaintiff Wong states: "Let's switch to your Gmail acct. Pls. go through and delete all emails in your In-box and Sent box to/from me." **Id.** Of course, since Defendants produce copies of this exchange in support of the Motion, the "evidence" was not destroyed, and Defendants suffered no prejudice based on a failure to see these privileged communications Defendants were not entitled to see in the first place. Moreover, Plaintiffs' counsel has retained copies of all attorney-client communications, unequivocally refuting the notion that such were destroyed. Schwartz Dec.

Though Defendants claim now that the undersigned's advice to a client to delete privileged email from a work account, to protect privileges, was excessive and constituted

---

[7] The arguments concerning the privilege that applies to this email appear **infra**.

destruction of evidence, Defendants have repeatedly asserted elsewhere, and in the Motion, that Plaintiffs **did not do enough** to protect the attorney-client and attorney work product privileges. Motion at pp. 6-11; **Exhibit 1**, Defendants' Letter Dated May 12, 2008 ("It is Defendant's position that Plaintiff Wong waived the attorney-client privilege with respect to all email communications with your firm when he communicated with you and/or any other representatives from your firm using the Company's computer network and email system."). Before making this Motion, Defendants sought discovery of all attorney-client communications with Plaintiff Wong, based on the notion that Plaintiffs have waived all entitlement to privilege because Plaintiffs, allegedly, inadequately guarded such privilege. **Exhibit 2**, Defendants' April 7, 2008 RFPD to Wong, Set II.[8] Yet, when Plaintiffs explicitly acted to guard the privilege, Defendants moved for sanctions. The Court should find no impropriety whatsoever in requesting clients to delete and otherwise seek to prevent disclosure of protected communications.[9]

### b. The undersigned and Plaintiffs have not improperly handled confidential HSBC information.

Defendants' "evidence" regarding soliciting confidential information relates to the same, privileged email chain from December 28, 2007 (Lord Dec., Exh. A, pp. 29-36 (Dkt. #184-3)), between undersigned counsel and Plaintiff Wong, requesting that Mr. Wong compare his performance with a similarly-situated co-worker, in evaluating his potential retaliation claim. Mr. Wong felt that, after he filed wage complaints, his manager was "targeting" him regarding his performance. **Id.** at pp. 34-35. This, if true, could violate California and federal law. **See** California Labor Code §98.6 and Fair Labor Standards Act, 29 U.S.C. §215(a)(3). The

---

[8] For context, **see** the communication of the undersigned to Defendants concerning this discovery. **Exhibit 3**, Plaintiffs' May 13, 2008 Email to Defendants.

[9] To avoid extraordinary inconvenience of the type that Defendants have caused through their frivolous motion, the undersigned will in the future seek to avoid communicating on employers' email accounts, to avoid any malicious efforts to discover privileged information, and more commonly, inadvertent disclosure – just as the undersigned has typically done in this case and in the past. Schwartz Dec. Of hundreds of communications with clients in this matter, only a small handful were on work email. Schwartz Dec.; Lord Dec., Exh. A. (Dkt. #184-3).

PLAINTIFFS' OPPOSITION TO DEFENDANTS' SANCTIONS MOTION

undersigned inquired about similarly-situated co-workers' performance, which, if superior to Mr.

Wong's, may have undermined Plaintiff's ability to establish a prima facie retaliation case. Lord

Dec., Exh. A, pp. 33-36 (Dkt. #184-3). **See**, **e.g.,** regarding the prima facie retaliation claim,

**Cichon v. Exelon Generation Co., L.L.C.,** 401 F.3d 803, 812 (7th Cir. 2005). Ultimately,

Plaintiffs have not added to this lawsuit an individual retaliation claim on Mr. Wong's behalf.

Though Defendants have included mentions of Plaintiff Chaussy in their Motion, the only

allegations concerning Mr. Chaussy (**e.g.,** Motion at p. 6) are that he supposedly violated

company policies "by providing his attorney with confidential financial data related to co-worker

production, as well as confidential financial data related to the identity of customers and the

amounts of customer loans. In fact, **Chaussy produced these documents to HMCU in**

**discovery**." (Emph. added). Defendants cite the Lord Declaration at paragraphs 10 through 12,

and at Exhibits E, F, and G, in support of these statements (Motion at p. 6), though the Lord

Declaration (Dkt. #184-3) contains exactly five paragraphs, only Exhibits A and B, and no

documents relating to Mr. Chaussy at all.

Though Defendants spend much of their Motion arguing about evidence Plaintiffs

supposedly destroyed or failed to produce in discovery,[10] here Defendants take objection to what

Plaintiffs **did** produce after Defendants requested all HSBC-related documents in the Plaintiffs'

possession. Schwartz Dec. That is, if the supposedly confidential company documents are as

harmful as Defendants allege, then the fact that Plaintiffs produced these documents to

Defendants, and did not destroy or conceal them, demonstrates a high level of ethical practice in

---

[10]Though Defendants' allegations regarding discovery are irrelevant to a Rule 11 sanctions motion – as provided under Rule 11(d) – Plaintiffs state unequivocally that they dispute all allegations raised by Defendants concerning discovery practices. Notwithstanding the December 28, 2007, 2:28 p.m., attorney-client privileged email, between Wong and the undersigned (Lord Dec., Exh. A, pp. 29-30 (Dkt. #184-3)), in which Plaintiff appears to indicate that he believed he had sent a fax to counsel regarding "ytd funding numbers," the undersigned, upon information and belief, never received such information from Plaintiff Wong. Schwartz Dec. As such, this information, discussed in the context of evaluating a reprisal claim by Wong which was never brought, was not produced in discovery. Even if Plaintiff Wong had transmitted it to the undersigned, the "ytd funding numbers" have no significance in this matter, which does not relate to Mr. Wong's productivity compared to that of his co-workers.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' SANCTIONS MOTION

this matter – not the reverse.

Defendants produce no evidence that Plaintiffs' counsel requested that Mr. Chaussy obtain the supposedly confidential company documents in question – only that Mr. Chaussy had such documents. Whether or not Mr. Chaussy's possession of such documents is against company policy, it certainly has no bearing on a Rule 11 sanctions motion, or any other question in this matter. This case does not relate to Mr. Chaussy's termination, or to whether Defendants would have had after-acquired evidence in support of his termination,[11] but to whether Mr. Chaussy and others similarly-situated to him were properly classified as exempt.

> **2. Defendants and their attorneys, Littler Mendelson, improperly sought to review attorney-client and attorney work product privileged information, in violation of the attorneys' ethical obligations and Fed.R.Civ.P. 26(b)(5)(B), even after Plaintiffs' acted to protect their privilege and sought return of such information.**

Defendants' "evidence" that Plaintiffs were soliciting employees proves Defendants' attorneys violated their ethical duties. They spend a considerable portion of their sanctions Motion discussing supposedly improper communications regarding this case on the HSBC email system after the case was filed, and after the parties agreed in May-June 2007 to try to avoid solicitations regarding this case with employees during work hours. **See**, **e.g.,** Motion at pp. 1-2. Even if such had anything at all to do with sanctionable conduct under Rule 11, which it does not,[12] Defendants do not provide a single email demonstrating or reflecting in any way a solicitation of employees during business hours concerning this case.

On the contrary, aside from a handful of attorney-client privileged emails with Plaintiff Wong seeking legal advice from the undersigned, the emails Defendants provide as "evidence" in

---

[11] Though Plaintiffs would have argued that Mr. Chaussy's possession of several company documents does not constitute after-acquired evidence in any way warranting termination, and that the after-acquired evidence doctrine should not apply in any event in the context of FLSA and California wage claim reprisal, the question is utterly irrelevant here: Plaintiffs have dropped Mr. Chaussy's individual retaliation claim.

[12] In fact, solicitation is protected First Amendment conduct. **Shapero v.Kentucky Bar Assn.**, 486 U.S. 466 (1988).

8

support of their sanctions Motion cover exactly nine pages, none of which relate to this case or this attorney. The emails (Lord Dec., Exh. A, at pp. 42-51 (Dkt. #184-3)), which appear to be to and from Nichols Kaster current/former staff members Dan Wozniak and Lucas Kaster, seem to relate to cases against Premier Mortgage Funding, First NLC, and Solstice Capital, and seem on their face to reflect privileged attorney-client work product and attorney-client communications. **Id.** These communications indicate long lists of individuals which Nichols Kaster attempts to contact at their **personal**, not HSBC, email addresses, with at most a single HSBC employee who was a client of Nichols Kaster included in the list. **Id.** The germane question is, how did Defendants come across these emails in the course of the **Wong, et al. v. HSBC Mortgage Corporation (USA)**, litigation? The only answer is that Defendants actively swept the entire HSBC email system searching for any attorney-client privileged or work product privileged communication originating from or sent to any employee of Nichols Kaster. Such an active search to discover and read obviously attorney-client and attorney work product privileged communications is reprehensible, against the Federal Rules of Civil Procedure, and against the ethical canons of the legal profession. **See infra**.

When, on or about April 7, 2008 (**see** Motion at p. 3), Defendants produced documents to Plaintiffs first suggesting a breach of the attorney-client and attorney work product privileges, Plaintiffs immediately sought to protect the privileges, by indicating that there was no waiver of privilege, and seeking the prompt return of all documents reflecting communications between the undersigned and any Plaintiff or putative class member. **Exhibit 4**, Plaintiffs' April 9, 2008 Email. In Plaintiffs' communication to Littler Mendelson attorneys, the undersigned reminded them of their obligation under Fed.R.Civ.P. 26(b)(5)(B), that after being notified of an inadvertent

disclosure of privileged information,[14] "a party must promptly return, sequester, or destroy the specified information and any copies it has; **must not use or disclose the information until the claim is resolved**; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim." (Emph. added). **Exh. 4.** Citing both California and 9th Circuit law,[15] Plaintiffs urged Littler Mendelson to:

> [T]tread cautiously in this area, so as not to violate the ethical obligations we all share. In particular, the rules of professional responsibility which apply to all of us preclude your searching intentionally to discover information in our clients' email accounts, when you know the information is subject to an asserted or very likely attorney-client or work-product privilege. Such would include all communications between this firm's clients and myself. I note that the ABA's Standing Committee on Ethics and Professional Responsibility, "Formal Opinion 92-368: Inadvertent Disclosure of Confidential Materials (1992)," makes clear that counsel should not seek to review information it has reason to believe was inadvertently disclosed.

**Exh. 4.** Notwithstanding Plaintiffs' explicit warning, Defendants have presented the instant Motion to this Court, for improper purposes, against all prevailing law, and with frivolous assertions of fact.

> **3. Defendants do not allege, and no evidence suggests, that Plaintiffs have made any misrepresentations to this Court under Rule 11(b) in any way related to the allegedly improper evidence/information, as required for Rule 11(c) sanctions.**

The communications and documents at issue – including the undersigned's legal advice to Plaintiff Wong regarding his retaliation allegation, and the supposedly confidential data regarding

---

[14] Plaintiffs' disclosure was inadvertent, but, seeing Defendants' submissions here, as discussed above, it does not appear that there was any inadvertence to Defendants' discovery of the privileged material. Rather, Defendants actively sought to find and review privileged communications.

[15] In Plaintiffs' April 9, 2008 communication to Defendants regarding disclosure of privileged information, Plaintiffs cited: **La Jolla Cove Motel and Hotel Apartments, Inc., v. Superior Court**, 121 Cal.App.4th 773, 791 (2004) (**citing** Cal.Evid.Code, § 917) ("Once a party claims the attorney-client privilege, the communication sought to be suppressed is presumed confidential."); **In re Grand Jury Subpoena**, 357 F.3d 900, 907 (9th Cir. 2004) (attorney work product doctrine interpreted broadly in 9th Circuit); **Roberts v. City of Palmdale**, 5 Cal.4th 363, 371, 20 Cal.Rptr.2d 330, 853 P.2d 496 (1993) (regarding privileges in California).

PLAINTIFFS' OPPOSITION TO DEFENDANTS' SANCTIONS MOTION

customers and other employees – have not been utilized by Plaintiffs as evidence or in support of any argument in this matter. Only Defendants violated Rule 11(b), by improperly obtaining privileged communications and, in this Motion, setting them before this Court.

Plaintiffs have not used the "evidence" in dispute, to the extent it is evidence at all, "for any improper purpose," such as harassment, delay, or increased litigation costs, under Rule 11(b)(1) – Defendants have done so. Under Rule 11(b)(2), Plaintiffs have not used the contested "evidence" in support of "claims, defenses, and other legal contentions" unwarranted by existing law. The disputed materials have nothing whatsoever to do with what Plaintiffs are proving in this case (their entitlement to overtime and other compensation as employees who should have been classified as non-exempt). Defendants' sanctions Motion does assert unwarranted conclusions and frivolous arguments, however. Plaintiffs have not made unsupported factual contentions using the disputed material, under Rule 11(b)(3) – while Defendants have done exactly this, charging unethical behavior with not a single piece of evidence suggesting such. The "evidence" Defendants present to the Court does not involve Plaintiffs making false denials of factual contentions, under Rule 11(b)(4) – it involves legal advice from attorney to client, and disclosure of supposedly confidential information regarding comparators.

### III.    DEFENDANTS' ALLEGATIONS FAIL TO MEET RULE 11 STANDARDS.

It is revealing that Defendants' "Motion for Rule 11(C) Sanctions" nowhere cites Rule 11, other than in the title of the Motion, or Rule 11's criteria for awarding sanctions. Rather, in approximately half a page of argument which actually relates to sanctions (Motion at pp. 22-23), Defendants cite no legal basis under 11(b) for their sanctions motion, no facts warranting sanctions, and no "bad faith" by Plantiffs, which Defendants acknowledge is a requirement for the Court to award sanctions. Motion at p. 22, citing **Leon v. IDX Systems Corp.**, 464 F.3d 951,

11

961 (9th Cir. 2006), and **Chambers**, 501 U.S. at 43.

Defendants do not even identify the standard for granting Rule 11 sanctions. Instead, Defendants state one conclusory sentence each as to undersigned counsel and Plaintiffs Wong and Chaussy, saying that counsel and Plaintiffs, respectively, "acted in bad faith by breaching their ethical responsibilities to this Court and to the putative class," and "acted in bad faith by acting contrary to the interests of putative class members." Motion at pp. 22-23. Such conclusory allegations cannot possibly form the basis of a sanctions order. **See** Rule 11(c).

### Defendants Do Not Meet A Single Criterion For Filing A Rule 11(c) Motion, but Instead Violate Rule 11(d), Bringing Discovery Disputes into a Rule 11 Motion.

Rule 11(c), the purported basis for Defendants' Motion, requires:

- a description in the sanctions motion of "the specific conduct that allegedly violates Rule 11(b)."

- service under Rule 5; and

- before presentation to the Court, 21 days notice to the party against whom the motion is filed, to permit withdrawal of the "challenged paper, claim, defense, contention, or denial."

Rule 11(b), which must be the premise of a sanctions motion under 11(c), relates to "representations to the Court," **i.e.**, the requirement that attorneys, in their representations to the Court, do not:

- pursue any improper purpose (harassment, delay, increasing litigation costs);

- assert frivolous arguments or claims, defenses, or legal contentions unwarranted under existing law;

- make assertions of fact that lack evidentiary support; or

- deny facts in an unwarranted manner.

12

Rule 11(d) is explicit that disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37 cannot be the subject of a Rule 11 sanctions motion.

Defendants have alleged no representations to the Court by Plaintiffs or the undersigned which are designed to: pursue any improper purpose (harassment, delay, increasing litigation costs); assert frivolous arguments or claims, defenses, or legal contentions unwarranted under existing law; make assertions of fact that lack evidentiary support; or deny facts in an unwarranted manner. As such, Defendants have failed to render a specific description of conduct violating Rule 11(b).

As noted **_supra_**, Defendants also failed to effect service under Rule 5, with 21 days' notice prior to filing with the Court, to allow Plaintiffs to withdraw a "challenged paper, claim, defense, contention, or denial." The reason for Defendants' failure is clear: Defendants do not seek to challenge any paper, claim, defense, contention, or denial submitted to the Court by Plaintiffs. Rather, Defendants seek to use the taint of a Rule 11 Motion in an attempt to discredit Plaintiffs and undersigned counsel.

On the other hand, though Rule 11(d) is explicit that discovery disputes cannot be the basis of a Rule 11 sanctions motion, Defendants' Motion is almost entirely based on discovery disputes – namely, Defendants' ill-founded contentions that Plaintiffs: entirely waived all entitlement to attorney-client and attorney work product privileges, and should produce all documents and communications; destroyed or otherwise failed to produce certain discovery; and, produced certain discovery to which they should not have had access. **_See_** Motion at pp. 1-22.[16]

### A. The Cases Defendants Cite In Support of Their Motion Demonstrate Why Defendants' Motion Must Fail.

---

[16] **_See also_**, **e.g.**, **Burlington Northern & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.**, 408 F.3d 1142, 1147-1150 (9th Cir. 2005) ("the spirit of the rules is violated when advocates attempt to use discovery tools as tactical weapons rather than to expose the facts and illuminate the issues.").

The only two cases Defendants mention in support of sanctions, **Leon** and **Chambers** (Motion at p. 22), provide a perfect contrast with the instant case, demonstrating why this case is absolutely unlike those where sanctions are granted. In **Leon**, the plaintiff "despoiled evidence by deleting 2,200 files from his [company]-issued laptop computer during the pendency of the litigation." **Id.**, 464 F.3d at 955. The **Leon** plaintiff admitted under oath deleting entire directories of personal files and wrote a program to wipe deleted files form unallocated space in the computer, including some pornographic files. **Id.** at 956. He was "on notice that files created on his employer-issued computer were relevant to a lawsuit centering on the existence of legitimate grounds for firing Leon. For example, [the employer's] employee guide specifically [forbade] 'access or sending of sexually oriented messages or images of any kind.' Leon was on notice that files created in violation of this…company policy would be relevant to [the company's] lawsuit against him." **Id.** at 959. The **Leon** plaintiff's deleted files also included extensive material directly related to his pending disability claims against the company, including communications with health care providers and other outside parties relating to his damages. **Id.** at 956.

The **Leon** court found that, "[B]ecause of Dr. Leon's actions there is no way of knowing what might have been stored on the laptop's hard-drive and no reliable way of recreating what might have been there," and found that the plaintiff's actions had severely prejudiced the defendant's case. **Id.** **See also** **id.** at 959 (**citing U.S. for Use and Ben. of Wiltec Guam, Inc. v. Kahaluu Const. Co., Inc.,** 857 F.2d 600, 604 (9th Cir. 1988) (spoiling party's actions impaired non-spoiling party's ability to go to trial or threatened to interfere with result of the case); **Anheuser-Busch, Inc. v. Natural Beverage Distributors,** 69 F.3d 337, 354 (9th Cir. 1995) (defendant forced to rely on incomplete and spotty evidence at trial)).

The plaintiff in **Leon** was further was given the opportunity for an evidentiary hearing, which he did not attend, and the court made findings (based on deposition, video, and written

14

testimony) that the plaintiff's behavior was "very egregious" and apparently "without remorse," and that his prior testimony had been extremely evasive. **Leon**, 464 F.3d at 956. The court concluded, and the 9th Circuit affirmed, "that the extraordinary measures to which Dr. Leon resorted to destroy evidence relevant to this litigation merit a finding of bad-faith." **Id.** at 957.

On the other hand, in the instant case, Plaintiff Wong is alleged only to have been instructed to delete, and to have deleted, files reflecting a handful of attorney-client communications and attorney work product – not thousands of files and entire directories constituting evidence in the case. Of course, none of the emails were actually "destroyed," since Defendants have produced them with this Motion, and Plaintiffs' counsel has retained copies of all attorney-client communications in any event. Defendants have made no showing whatsoever that attorney-client communications and attorney work product are relevant evidence in this case, which is not about the reasons for Mr. Wong leaving Defendants' employ (as in **Leon**),[17] but about whether or not Plaintiffs and the putative class were appropriately classified as exempt based upon the outside sales exemption. Even if, for the sake of argument, the attorney-client and attorney work product information was "evidence," or at all relevant to this case, Plaintiffs were never placed on notice that the information was potentially relevant to the litigation before the information was "destroyed." **Id.** at 959 (**citing United States v. Kitsap Physicians Serv.**, 314 F.3d 995, 1001 (9th Cir. 2002) (notice required before conduct is sanctionable)). Defendants have not shown, and cannot show, that the deletion of several privileged attorney-client communications with attorney work product in any way prejudices Defendants' case, or that Plaintiffs have gone to "extraordinary measures" to "destroy evidence."

In the other case Defendants' cite, **Chambers**, the sanctioned party: "(1) attempted to deprive the court of jurisdiction by acts of fraud, (2) filed false and frivolous pleadings, and (3)

---

[17] Such information would be inadmissible evidence even if Plaintiff Wong's resignation from HSBC was in dispute.

15

attempted, by other tactics of delay, oppression, harassment and massive expense to reduce [the party benefiting from the sanctions] to exhausted compliance" with the wrongdoer's will. **Id.**, 501 U.S. at 32. The case is thus utterly unlike the instant case, in which none of these allegations (fraud, false and frivolous pleadings, delay, etc.) have been raised, let alone proven.

Ultimately, the Supreme Court in **Chambers** ruled that the District Court had inherent authority to impose sanctions for bad-faith conduct. **Id.** The Supreme Court also agreed with the District Court, that categories (1) and (3) above (**i.e.,** fraud and obstreperous tactics) did not fall under Rule 11 – which "governs only papers filed with a court." **Id.** at 41. By this rule, Defendants' "Rule 11(C)" motion – which has nothing to do with papers filed with this Court by Plaintiffs – fails on its face. Even looking beyond Rule 11, however, the lack of alleged fraud upon the Court, tactics of delay, oppression, or harassment by Plaintiffs and the undersigned renders the conduct Defendants allege (even if it did occur as alleged – which it did not) outside the permissible bases of "bad faith" sanctions anticipated by **Chambers**. **See id.** at 45-46.

## IV. DEFENDANTS' MOTION MISCONSTRUES THE ATTORNEY-CLIENT AND ATTORNEY WORK PRODUCT PRIVILEGES.

Because the Court must reject Defendants' Motion for the reasons discussed **supra**, the Court need not consider the nature of privilege and waiver of privilege, issues which Defendants' Motion trumpets. **See Air Courier Conference of America v. American Postal Workers Union AFL-CIO**, 498 U.S. 517, 531-32 (1991) (Stevens, J., concurring) ("Faithful adherence to the doctrine of judicial restraint provides a fully adequate justification for deciding this case on the best and narrowest ground available."). Nonetheless, because Defendants assertions regarding privilege and waiver are so preposterous, Plaintiffs will refute them here.

### A. Plaintiff Wong Has Not Waived Attorney-Client or Attorney Work Product Privilege.

16

**1. The "sacred" nature of the attorney-client privilege would not permit waiver as advocated by Defendants.**

"[T]he attorney-client privilege is, perhaps, the most sacred of all legally recognized privileges." **United States v. Bauer**, 132 F.3d 504, 510 (9th Cir. 1997) (reversing criminal conviction for violation of Bauer's attorney-client privilege). The privilege is intended to encourage full and frank communication between attorneys and their clients. **U.S. v. Mett,** 178 F.3d 1058, 1062 (9th Cir. 1999). In the words of the Supreme Court, "[t]he privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." **Upjohn Co. v. United States**, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). "The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice, ...as well as an attorney's advice in response to such disclosures." **United States v. Chen**, 99 F.3d 1495, 1501 (9th Cir.1996) (quotation omitted), **cert. denied**, 520 U.S. 1167, 117 S.Ct. 1429, 137 L.Ed.2d 538 (1997). There is no dispute in this case that Wong's communications with the undersigned were in the course of the undersigned representing him in the preparation and litigation of his case against Defendants. California's Evidence Code § 917(b) explicitly provides that privileged communications do not lose their privileged character because they are communicated electronically.

Attorney-client privilege can be waived intentionally – but there is no evidence whatsoever that Plaintiff Wong or the undersigned intended at any time to waive a privilege. On the contrary, the very instruction that is the basis for Defendants' sanctions Motion – requesting that Mr. Wong delete his attorney-client emails and begin communicating solely on his personal email account (Lord Dec., Exh. A, p. 33), along with the undersigned's communication to Defendants seeking return of inadvertently disclosed information, immediately after learning of

1    its disclosure (**Exh. 4**) – bespeak a strong desire to maintain the privilege.[18]

2        The "sacred" attorney-client privilege can only be waived "implicitly" under rare, defined

3    circumstances – none of which are present here. **Bittaker v. Woodford**, 331 F.3d 715, 718-721

4    (9th Cir. 2003).[19] On the other hand, an "express waiver occurs when a party discloses privileged

5    information to a third party who is not bound by the privilege, or otherwise shows disregard for

6    the privilege by making the information public." **Id.** at 719.[20] "[O]nce documents have been

7    turned over to another party voluntarily, the privilege is gone, and the litigant may not thereafter

8    reassert it to block discovery of the information and related communications by his adversaries."

9    **Id.** at 720. This case stands in contrast to cases where an express waiver has been found, where,

10   **e.g.,** "the privileged communication is voluntarily disclosed without objection by the asserting

11   party's counsel and in the absence of surprise or deception by opposing counsel." **Weil v.**

12   **Investment/Indicators, Research and Management, Inc.,** 647 F.2d 18, 25 n.13 (9th Cir. 1981).

13   Here, Defendants have presented no evidence that Plaintiff Wong or the undersigned knowingly

14   disregarded the attorney-client privilege, or voluntarily turned over communications to

15   Defendants or opposing counsel. Rather, Plaintiffs reaffirmed the privilege and sought return of

16   the privileged information immediately after learning that Defendants had obtained it. **Exh. 4.**

17       Even if any waiver of privilege occurred, which Plaintiffs dispute, the scope of the waiver

18   was extremely limited. "[W]here ... disclosures of privileged information are made extrajudicially

---

[18] The undersigned's recognition that communications via work email might lead to inadvertent disclosure led him to advise Mr. Wong to begin using only personal email for communications. Schwartz Dec.

[19] For example, a litigant implicitly waives the privilege by putting the lawyer's performance at issue. **Bittaker**, 331 F.3d at 718. "[P]arties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials. The party asserting the claim is said to have implicitly waived the privilege." **Id.**

[20] The only document regarding which Defendants have a cognizable argument, for discovery purposes (**i.e.,** with no relationship to the sanctions motion at issue), that Plaintiff Wong waived a privilege, is reflected at Lord Dec., Exh. A, pp. 1-3 (previously marked MORT03658-MORT03660). Plaintiff, before engaging the undersigned's services, on April 12, 2007, apparently forwarded communications with the undersigned, in which Mr. Wong was seeking representation, to non-parties/individuals who were not yet in the course of seeking representation. Because these emails have no bearing on this matter or anything that has transpired since Nichols Kaster's services were engaged, Plaintiffs need not discuss them further.

and without prejudice to the opposing party, there exists no reason in logic or equity to broaden the waiver beyond those matters actually revealed." **Bittaker**, 331 F.3d at 720 n.5 (citing **In re von Bulow**, 828 F.2d 94, 103 (2nd Cir.1987). **See also Weil**, 647 F.2d at 25 ("[W]e find that the Fund waived its privilege only as to communications about the matter actually disclosed namely, the substance of Blue Sky counsel's advice regarding registration of Fund shares pursuant to the Blue Sky laws of the various states."). Thus, even if, for the sake of argument, Defendants are correct that otherwise privileged communications lose privilege when they are made via work email, such a waiver by no means extends to other communications between client and counsel throughout the course of the representation. Even if privilege were waived as to the subjects discussed in the emails transmitted via HSBC's email system (**see** Motion at p. 10), those subjects – alleged retaliation against Plaintiff for his wage complaint, whether or not to engage Nichols Kaster's representation, and whether Defendants were acting properly with respect to Family and Medical Leave requested by Mr. Wong (Lord Dec., Exh. A) – encompass a tiny fraction of the communications between counsel and Plaintiff Wong regarding this wage/hour case. Schwartz Dec. These narrow subjects are all entirely peripheral to the core, misclassification allegation being litigated here.

For public policy reasons, the Court should not abide Defendants' extension of the notion of waived privilege. Privileges between employees and their attorneys – not to mention, prisoners emailing their attorneys, and other attorney-client email relationships – would be of little value if, by disclaimer, "Big Brother" could simply deem all communications via particular media as non-confidential, such that privilege would be waived inherently and broadly. Many employees in the workforce do not have private email apart from their work email accounts, and thus would not be able to email their attorneys at all. Perhaps all work email (not only that of the employer against whom a party is litigating) – by virtue of the fact that a non-attorney administrator can access it –

19

would be unprivileged, including all emails sent by attorneys to clients from the attorneys' work email. By this rule, all of the emails between HSBC employees and Littler Mendelson regarding this case are now unprivileged, because privilege was waived when they utilized HSBC's and Littler Mendelson's email systems. Perhaps all email sent via Gmail, Yahoo, and Hotmail would also be unprivileged, since there are skilled individuals like Ronald Lord, in "Technologies and Services" divisions, who can access our emails sent via these services as well.[21] While the danger of inadvertent disclosure during discovery makes attorney-client communications by work email not a "best practice," it does not mean that all attorneys and all clients who communicate via a work email have waived their sacred rights.

### 2. The same arguments apply to the work product privilege as the attorney-client privilege.

Plaintiffs will not re-examine all of the privilege questions just discussed in the work product privilege context. The considerations are the same, because the work product privilege is also highly valued in the 9th Circuit. **In re Grand Jury Subpoena**, 357 F.3d at 907.

### 3. Defendants' cases cited for waived privilege should not persuade this Court, and in any event, do not support Defendants' arguments.

Conspicuously, the four cases Defendants managed to cite in support of the notion that communications via work email waive a privilege between an employee and his/her attorney are

---

[21] It is no doubt possible for technologically-gifted individuals to listen to attorney-client communications via telephone, too, and yet courts have found that individuals have a reasonable expectation of privacy in their phone conversations. **Quon v. Arch Wireless Operating Co., Inc.**, 529 F.3d 892, 904 (9th Cir. 2008) (**citing Katz v. United States**, 389 U.S. 347, 353, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) ("One who occupies [a phone booth], shuts the door behind him, and pays the toll that permits him to place a call is surely entitled to assume that the words he utters into the mouthpiece will not be broadcast to the world. To read the Constitution more narrowly is to ignore the vital role that the public telephone has come to play in private communication."). Courts have also found that communications by United States mail are generally entitled to confidentiality/an expectation of privacy. **Quon**, 529 F.3d at 905 (**citing United States v. Jacobsen**, 466 U.S. 109, 114, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984)). Email (and text message) plays a role today like the phone booth and the U.S. mail have played in the past, and the content of messages transmitted via these media can have a reasonable expectation of privacy and confidentiality. **Quon**, 529 F.3d at 905-906 (**citing United States v. Forrester**, 512 F.3d 500, 510 (9th Cir. 2008)).

20

not 9th Circuit cases, not cases in the Northern District of California, and not California State cases. **See** Motion at p. 7 (**citing Scott v. Beth Israel Med. Ctr. Inc.,** 17 Misc.3d 934, 2007 WL 3053351 (N.Y. Sup. Ct.); **Long v. Marubeni America Corp.**, 2006 WL 2998671 (S.D.N.Y.); **Kaufman v. SunGuard Inv. System**, 2006 WL 1307882 (D.N.J.); **Thygeson v. U.S. Bancorp**, 2004 WL 2066746 (D.Or.)). None extend the notion of waiver near the nonsensical point where Defendants seek to extend it – **i.e.,** that a handful of communications via work email waives privilege as to all communications which have ever occurred between a client and his/her attorney. **See** Motion at p. 11 ("Therefore, the attorney-client privilege and/or work product privileges have been waived."); **Exh. 1** (**"Plaintiff Wong waived the attorney-client privilege with respect to all email communications with your firm."**). None of Defendants' cases relate to a sanctions motion at all.

In **Scott**, 17 Misc.3d at 935-936, the party seeking a ruling that privilege was waived did not conduct itself as Defendants have done in this matter, to wit: actively and surreptitiously seeking to read and then subsequently gain advantage from privileged communications with a Motion for Sanctions. On the contrary, in **Scott**: the party openly communicated with opposing counsel regarding a belief that privileged communications might be subject to a waiver **before** reviewing them; then, the disputed communications were sealed and a copy of them returned to the party seeking to preserve the privilege; and finally, the parties briefed the matter of privilege to the court and awaited a ruling. **Id.** The **Scott** court's ruling concluded that communications via a work email system could lose their privilege based upon a four-part test developed by a New York bankruptcy court (**In re Asia Global Crossing, Ltd.**, 322 B.R. 247 (S.D.N.Y.2005)): "(a) the corporation maintain[s] a policy banning personal or other objectionable use, (b) the company monitor[s] the use of the employee's computer or email, (c) third parties have a right of access to the computer or emails, and (d) the corporation notifies the employee, or was the employee

aware, of the use and monitoring policies." **Scott**, 17 Misc.3d at 941 (**citing In re Asia Global Crossing**, 322 B.R. at 257).

This court should not apply the **Scott**/**Asia Global** test, and, even if it is applied, should not find that it would result in waiver here. Regardless of companies' formal policies, in practice, many or most companies tolerate usage of work email for some personal uses, and Defendants have not shown that HSBC's practices are otherwise. If Defendants demonstrated a widespread enforcement of a "no personal use" policy, such that Mr. Wong and individuals known to Mr. Wong were being routinely counseled and disciplined for using their HSBC email to send greetings to spouses or friends, or, if the HSBC email system generally prevented outside emails all together, then perhaps Mr. Wong would have been on clear notice. But no such evidence exists.

Likewise, the extent to which a party knows of monitoring is not reflected in the **Scott**/**Asia Global** test. That a party, like Plaintiff Wong, is aware in the abstract that someone (like Mr. Lord, a technology specialist) could figure out how to probe his email account is not the same as knowing that each of your emails is being actively monitored. **See also** Cal. Evid. Code. §917(b); Motion at p. 8. Here, there is no indication that Mr. Wong knew that his emails were being individually monitored. That Mr. Wong signed an abstract policy while signing all of his other pre-employment documents, a year and a half before his emails with counsel, does not establish that he believed his evidently privileged emails transmitted at work were all being read. Regardless of what any fine-print corporate policies may state, an employee of a company with hundreds of thousands of employees worldwide need not assume that every communication he/she has with anyone about anything is being read by individuals who are not the intended

recipients of the communication.[22]

Likewise, in **Long**, the party seeking disclosure did so, not by unilaterally deciding to review a host of known attorney-client communications, as Defendants have done here, but by filing a motion with the court for disclosure of such communications. **Long**, 2006 WL 2998671 at *1. Moreover, the **Long** case is distinguishable because, unlike Mr. Wong, Mr. Long "**helped prepare** the [Company's] Employee Handbook that contains [the Company's Electronic Communications Policy]." **Id.** at *3. Accordingly, and in light of additional evidence that the plaintiff was frequently reminded of the non-confidential nature of the communications, the court concluded that Long was intimately aware his communications were not private, and that he waived attorney-client privilege. **Id.** Moreover, even if the **Long** case and **Wong** cases were similar, the court in that matter ordered disclosure only of 15 otherwise-privileged emails sent via the work email – not all attorney-client emails ever exchanged between Long and his counsel. **Id.**

In **Kaufman**, once again, the company was not reviewing the emails yet regarding which privilege was purportedly waived – let alone filing a sanctions motion based upon the content of such communications. **Id**, 2006 WOL 1307882, at *1 n.1. The party seeking waiver conducted itself appropriately. Moreover, the **Kaufman** plaintiff, unlike Plaintiff Wong, had failed to delete communications and otherwise did not take steps to protect or segregate the communications. **Id.** at *3. If anything, **Kaufman** provides justification for the guidance the undersigned gave Plaintiff, to delete his attorney-client privileged emails on his work email, which has served as the basis for the instant sanctions Motion.

Again, in **Thygeson**, unlike here, the defendants never accessed the actual content of the plaintiff's email account – just looked at addresses viewed by the plaintiff. **Thygeson**, 2004 WL

---

[22] Without having statistical or expert data on point, the undersigned's experience suggests that virtually every client, co-worker, and friend whose work email permits sending to and receiving from outside parties **does** have personal communications from time to time on this email system, which he or she does not expect to be read by non-addressees at the employer. Schwartz Dec.

2066746, at *18. The plaintiff sued the defendant for invasion of privacy (unlike in this matter) – and no attorney-client privilege waiver issues or sanctions issues were discussed in the decision. **Id.** Because "the information defendants collected was only the website addresses, rather than the actual content of the websites Thygeson visited, and defendants conducted this surveillance remotely," the court found the plaintiff's tort claim failed. **Id.** at *22. Here, Plaintiffs might reasonably expect Defendants to learn that Plaintiff Wong did exchange some emails with his attorney while at work (i.e., the identities of his addressees). But, Plaintiffs had no reason to believe that Defendants' attorneys would overtly violate their ethical obligations by seeking to review the substance of communications known to be between a client and his counsel.

Waiver is inappropriate.

## V.    EVEN IF SANCTIONS WERE WARRANTED, DISQUALIFICATION OF COUNSEL IS AN INAPPROPRIATE SANCTION.

For the reasons discussed above, sanctions are unwarranted. Yet, even if sanctions were warranted, "the behavior for which [an attorney] is disciplined [pursuant to our inherent power] must have some nexus with the conduct of the litigation before the court." **United States v. Wunsch**, 84 F.3d 1110, 1115 (9th Cir. 1996). Here, there is no showing that counsel has failed to represent his clients, or disobeyed any Court directive. Moreover, Ninth Circuit law does not permit a summary disqualification of counsel; for the court to sanction an attorney, procedural due process requires notice and an opportunity to be heard – which have not occurred in this case. **See Pac. Harbor Capital, Inc. v. Carnival Air Lines, Inc.**, 210 F.3d 1112, 1118 (9th Cir. 2000). Because of, **inter alia**, its potential to prejudice a client, disqualification of counsel is viewed as a drastic measure, and is a disfavored sanction that should "only imposed when absolutely necessary." **Concat LP v. Unilever, PLC**, 350 F.Supp.2d 796, 814 (N.D.Cal.2004). **See also Shurance v. Planning Control Intern.**, 839 F.2d 1347, 1349 (9th Cir. 1988) (disqualification

24

motions warrant "particularly strict judicial scrutiny" because of abuse potential).

**VI.     THE COURT MAY REQUIRE DEFENDANTS TO PAY PLAINTIFFS' FEES AND COSTS IN OPPOSING THIS BAD-FAITH MOTION.**

Though Plaintiffs do not, at this moment, move for sanctions, this Court may, **sua sponte**, require Defendants to pay Plaintiffs' fees and costs in opposing this ridiculous Motion. **Chambers**, 501 U.S. at 43 n.8. Such might be appropriate, since Defendants' Rule 11 motion was brought without foundation and merely to harass the undersigned and Plaintiffs, taint the proceedings, and seek tactical advantage in the Rule 23 motion, and was brought using improperly obtained, privileged information. **See**, **e.g., Adriana Intern. Corp. v. Thoeren,** 913 F.2d 1406 (9ht Cir. 1990); **Optyl Eyewear Fashion Intern. Corp. v. Style Companies, Ltd.,** 760 F.2d 1045 (9th Cir. 1985).

**VII.     CONCLUSION**

For the foregoing reasons, Defendants' Motion should be denied in its entirety.

DATED: September 19, 2008                    NICHOLS KASTER, LLP


                                                        ____s/ Bryan J. Schwartz_____
                                                        Bryan Schwartz (SBN 209903)

PLAINTIFFS' OPPOSITION TO DEFENDANTS' SANCTIONS MOTION

1

**CERTIFICATE OF SERVICE**
**Case No: 3:07-cv-2446**

2

3     I hereby certify that on September 19, 2008, I caused the following document(s):

4          **Plaintiffs' Opposition To Defendants' "Motion For Rule 11(C) Sanctions,"**
               **Declaration Of Bryan J. Schwartz, Exhibits 1-4**

5

6     to be served via CM/ECF to the following:

7

8     George J. Tichy, II
      Michelle Barrett
      Michael F. McCabe
9     Littler Mendelson, P.C.
      650 California Street
10    20th Floor
      San Francisco, CA 94108-2693
11

12

13    | Dated:  September 19, 2008 | NICHOLS KASTER, LLP |
      |---|---|

14                                    s/ Bryan J. Schwartz

15                                    ————————————————————
                                      Bryan J. Schwartz State Bar No. 209903
                                      **NICHOLS KASTER, LLP**
16                                    One Embarcadero Center
                                      Suite 720
17                                    San Francisco, CA  94111
                                      Telephone (415) 277-7235
18                                    Facsimile (415) 277-7238

19                                    ATTORNEYS FOR PLAINTIFFS

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO DEFENDANTS' SANCTIONS MOTION