GEORGE J. TICHY II, Bar No. 041146
MICHAEL F. MCCABE, Bar No. 111151
MICHELLE R. BARRETT, Bar No. 197280
KIMBERLY L. OWENS, Bar No. 233185
LITTLER MENDELSON
A Professional Corporation
650 California Street, 20th Floor
San Francisco, California  94108
Telephone:    (415) 433-1940
Facsimile:    (415) 399-8490
E-mail: gtichy@littler.com, mmccabe@littler.com,
mbarrett@littler.com, kowens@littler.com

Attorneys for Defendants
HSBC MORTGAGE CORPORATION (USA) and
HSBC BANK USA, N.A.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| Philip Wong, Frederic Chaussy, and Leslie Marie Shearn, individually, on behalf of all others similarly situated, and on behalf of the general public,<br><br>Plaintiffs,<br><br>v.<br><br>HSBC Mortgage Corporation (USA); HSBC Bank USA, N.A.; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. C 07 2446 MMC [ECF]<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION UNDER FED. R. CIV. P. 23**<br><br>Hearing Date:    October 10, 2008<br>Time:               9:00 A.M.<br>Courtroom:       7 (19th Floor)<br><br>Complaint Filed:    May 7, 2007 |

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFS' OPPOSITION TO RULE 23 CERT MOTION          Case No. C 07 2446 MMC [ECF]

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.    SUMMARY OF ARGUMENT

HSBC Mortgage Corporation (USA) and HSBC Bank USA, N.A. (respectively referred to as "HMCU" and "HBUS;" collectively as "Defendants") respectfully submit the following Opposition to Plaintiffs' Motion for Rule 23 Class Certification. Plaintiffs Wong, Chaussy, Shearn, and Barbiere ask the Court to certify three classes of "loan officers,"[1] all of whom work autonomously as entrepreneurs and have virtually unfettered discretion to perform their job where, how and when they see fit.[2] However, no classes can be certified in this case, because Plaintiffs fail to meet their burden to "provide <u>facts</u> to satisfy [the] requirements [of Federal Rule 23 ]." *In re Paxil Litig.*, 212 F.R.D. 539, 543 (C.D. Cal. 2003) (emphasis added); *see also Doniger v. Pacific Northwest Bell, Inc.*, 564 F.2d 1304, 1309 (9th Cir. 1977). The dearth of factual support for Plaintiffs' arguments is glaring. Throughout their moving papers, Plaintiffs claim "facts" for which they offer no evidentiary support, or cite to "evidence" that does not state what Plaintiffs represent it states.[3] In contrast, as is demonstrated by Defendants' evidence, how and where a loan officer spends his/her time performing the job is influenced by, *inter alia*, his/her work-style preferences and marketing strategy, compensation goals, experience in the business, geographic location, lead and referral network, and market forces—not by any common policy. Resolution of these claims is not possible on a class-wide basis and Plaintiffs' Motion for Rule 23 Class Certification must be denied.

## II.    STATEMENT OF RELEVANT FACTS

### A.    Scope of The Lawsuit.

On May 7, 2007, Plaintiffs filed a Complaint for Damages with this Court alleging, among other things, claims under the Fair Labor Standards Act ("FLSA") and California state wage and

---

[1] Although Plaintiffs' description of the putative classes includes a vague reference to "other non-management mortgage sales employees," the only evidence submitted by Plaintiffs in support of their motion is evidence from individuals who worked in the Senior Retail Mortgage Lending Consultant ("SRMLC") and Retail Mortgage Lending Consultant ("RMLC") positions.

[2] The Court should note that the proposed class definition in Plaintiffs' motion includes meal and rest period claims. Plaintiffs have put forward absolutely no evidence or legal authorities to support certification of such classes, apparently conceding that such claims cannot be decided on a class basis due to inherently individualized inquiries. *Brinker Restaurant Corp. v. Superior Court*, 165 Cal. App. 4th 25, 50 (2008); *see also, e.g., Kenny v. Supercuts, Inc.*, 2008 U.S. Dist. Lexis 43073, at *1-2 (N.D. Cal. June 2, 2008); *Brown v. Fed. Express Corp.*, 249 F.R.D. 580, 588 (C.D. Cal. 2008). The Court should deny class certification for those claims forthwith.

[3] In addition to Objections to Evidence, Defendants move to strike Plaintiffs' unsupported assertions and misrepresentations as irrelevant and immaterial.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFS' OPPOSITION TO RULE 23 CERT MOTION        1.        Case No. C 07 2446 MMC [ECF]

hour laws.  Thereafter, Plaintiffs filed a First Amended Complaint ("FAC") adding wage and hour claims under New Jersey and New York laws.  Earlier this year, Plaintiffs sought conditional certification on the FLSA claims for a nationwide class of SRMLCs, RMLCs, and Premier Mortgage Sales Officers.  The Court granted Plaintiffs' conditional certification motion.  Now, under Federal Rule of Civil Procedure 23, Plaintiffs seek certification of three separate classes in three different states for the same group of loan officers.  *See* Plfs' Motion at 1:8-24 (describing the putative classes).[4]  The loan officers described in Plaintiffs' class definitions are only employed by HMCU.[5]  There are no HBUS loan officers, and no class should be certified against it.

## B.    No Commonality or Typicality Exists Amongst Loan Officers.

### 1.    Practices and Application of Policies Differ Amongst Loan Officers, Managers, and/or Different Geographical Locations.

Although HMCU has core personnel policies, individual managers are permitted to adjust policy specifics.  For example, managers decide what type of candidates they want to hire.[6]  It is also up to managers whether to direct loan officers to focus on certain responsibilities or customers.  Although job descriptions establish core job duties, managers provide loan officers with different responsibilities or goals, in addition to those responsibilities and goals that loan officers establish for themselves on an individual basis.[7]  The differences in practices and application of policies geographically and nationally results in a highly individualized work experience for loan officers.

### a.    Loan Officers Are Not Required To Work In Any Fixed Location For Any Particular Time.

Loan officers are not required to be in any particular place at any particular time, unless, of course, they committed to meet a client or to attend another meeting at a specific time.[8]  Unless an

---

[4] Plaintiffs submit no evidence related to "other non-management mortgage sales employees" or even for Premier Mortgage Sales Officers.  The Court should exclude these from any class definition.
[5] Jennings ¶7; Ku ¶8; Kelter ¶2,3; Liboy ¶1; O'Rourke ¶5; Young ¶3.  *See* Barrett ¶7, Table of Declarations.
[6] Jennings Depo. 41:5-23.  *See* Barrett ¶8, Table of Deposition Citations.
[7] Jennings Depo. 137:11-15, 160:21-161:10; Kim II ¶10; Lopez ¶12; MacPherson ¶5; Monteith II ¶4; Pogorzelski ¶9,10,15; Slapo ¶8.
[8] Jennings Depo. 124:2-18; Gates Depo. 65:12-66:8 [job performance depends on things such as location, call volume, and where and how loan officers decide to spend their time]; Chan ¶6,14; Conte ¶6,14; Kilfoil ¶6; Kim II ¶11,13; Lee ¶13,14,16; Liboy ¶7,11; Lin ¶ 15; Monteith II ¶9,17; O'Connor ¶7; Oommen ¶ 5,6,15; Pogorzelski ¶9; Slapo ¶5,6.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

individual manager has required it, a loan officer is not required to spend any specific amount of time in HBUS branches.[9]  Rather, because HBUS provides loan officers with referral sources, loan officers need only ensure that they are available to take those referrals if they desire this easy referral source.[10]  Any office space maintained or used by HMCU is considered to be only a "touchdown" space for loan officers to use if needed.  (Gates Depo. 52:10-53:10; Gates ¶9.)  HMCU expects that loan officers will not sit at an HBUS branch or an HMCU facility day in and day out.[11]  Loan officers themselves verify that they are expected to spend most of their time away from an office networking, soliciting sales and meeting with clients and referral sources.

## b.    Compensation for Loan Officers Varies.

Plaintiffs incorrectly state that all "loan officers" are compensated under the "same compensation plan and commission schedule."  SRMLCs and RMLCs, who do not work in the "private banking" area, are compensated under the "HSBC Mortgage Corporation (USA) Retail Loan Consultant Incentive Plan."  This plan compensates based upon a draw (guaranteed amount) and incentive commissions.  (Jennings ¶11; Needham I ¶16.)  However, Premier Mortgage Sales Officers are compensated through an annual base salary and minimum bonus payouts, as well as some commissions—a very different compensation plan.  (Jennings ¶9,10,11; Liboy ¶5.)[12]  Further, the RMLCs working in the "private banking" side of HMCU's business are covered under the "HSBC Mortgage Corporation (USA) Mortgage Sales Incentive Plan for Private Banking Sales." (Jennings ¶12, Exh. 3.)[13]  Compensation for "loan officers" also varies because some "loan officers"

---

[9] Kim II ¶21; Liboy ¶8, 9, 10 [loan officers instructed that time spent in branches should be minimal; actual time in any branch varies by region]; Lee ¶15; Monteith I ¶9; Pogorzelski ¶14.  *See also* Ku ¶21-25; Young ¶7.  Additionally, Stella Chan, the HBUS Oakland Branch Manager, confirmed that Wong was not required to be at the branch for any set time and did not work there with any regularity.  (Chan ¶4,6.)

[10] Jennings Depo. 124:2-126:9; Chan ¶14; Kim I ¶4; Ku ¶21-25; Lin ¶12; O'Rourke ¶6.

[11] Gates Depo. 74:10-75:11; Ho ¶4; Kelter ¶10; Lee ¶6; O'Connor ¶5,10,12; Pogorzelski ¶8,9; Slapo ¶8.

[12] Karen Flanagan, Larry Lee, and Alysse Gora, all of whom have opted into this lawsuit, were Premier Mortgage Sales Officers, receiving annual base salaries and guaranteed minimum bonus payouts.  (Jennings ¶9,10; Liboy ¶5.)

[13] The Private Banking plan and the Retail Loan Consultant plan vary from one another in several respects.  The Private Banking plan pays commissions on all loans types at all funded dollar volume levels at 22 basis points, while the Retail Loan Consultant plan pays commissions based on tiered funded dollar volume levels at different basis points, between 40 and 65.  The Private Banking plan also has only four (4) components to calculate commissions versus ten (10) components for the Retail Loan Consultant plan.  *Compare* Jennings ¶12, Exh. 3 *with* Barrett ¶2, Exh. 2.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

are "highly compensated," earning over $100,000 annually.[14]

In addition, those loan officers who receive a draw as part of their compensation are not all similarly situated. For example, although these loan officers often receive a "forgivable draw" for a period of time when first employed, there is no uniform time period that the draw is considered "forgivable."[15] Some loan officers receive only a three (3) month forgivable draw, others receive it for six (6) months, still others have received forgivable draws that are shorter or longer than those time periods. (Kelter ¶16 [uses standard 6 months but has given up to 10 months].)[16] Wong was given a forgivable draw for a little over twelve (12) months. Frederic Chaussy received a forgivable draw for approximately eight (8) or nine (9) months. (Ku ¶11,12.) This is yet another difference in these jobs that precludes class certification.

The forgivable draw amount also varies.[17] Deciding draw amounts is a case by case determination. (Needham I ¶16.) There is no requirement that a draw be set at a specific amount for any specific amount of time.[18] Loan officers also may participate, if they wish, in setting their draw amount. (Coyne ¶21; Needham I ¶16.) Personnel records show draws as low as $15,000 and ranging up to $78,000; guaranteed draws for Premier Mortgage Lending Consultants are even higher than the forgivable draws provided to other loan officers. (Barrett ¶6, Exh. 3; O'Connor ¶3.)[19] These individual compensation differences raise questions that weigh against class certification.

### c.    "Loan Officers" Focus Upon Different Mortgage Products, Loans and/or Markets.

HMCU currently offers more than forty (40) types of mortgage products. (Ku ¶34.) Loan officers in different regions may choose to focus on just one type of mortgage, a few types, or the

---

[14] Chan ¶17; Conte ¶15; Kim II ¶10; Lee ¶32; Lin ¶28; Monteith II ¶20; Needham I ¶17; O'Connor ¶3,19; Oommen ¶17; Slapo ¶18; Thelian ¶3; Young ¶18; O'Rourke ¶19; Kelter ¶17.
[15] Gates Depo. 29:7-30:8; 30:13-19; Barrett ¶6, Exh. 3; Chan ¶20; Lin ¶23.
[16] Even those who are compensated in this manner have tremendous variation in how their compensation is structured. For example, in reviewing 38 different loan officers' personnel files, which have been produced, 23 different compensation structures applied to those 38 different loan officers. (Barrett ¶6, Exh. 3).
[17] See Needham I ¶16; O'Rourke ¶17; Young ¶16. Even Wong admitted that "loan officers" have different "base salaries" which "varied from time to time." (Wong Depo. 34:2-4.)
[18] Jennings Depo. 107:17-108:7; 109:23-111:21; Gates Depo. 30:13-31:10; Needham I ¶16; Young ¶16.
[19] Similarly, managers have submitted declarations confirming that draw amounts vary. (Needham I ¶16 [$60,000 draw for one loan officer in California]; O'Rourke ¶ 17 [in his New York region, $35,000 and $50,000 draws used].)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFS' OPPOSITION TO RULE 23 CERT MOTION        4.        Case No. C 07 2446 MMC [ECF]

entire range of products. For example, HMCU offers premier loans, which are greater than $500,000 in value. In contrast with other regions, the housing market in the San Francisco Bay Area is very high, and the majority of the loans that loan officers in Northern California sell each month are premier loans.[20] Premier Mortgage Sales Officers specialize in selling to "affluent customers," who receive better pricing on loans and who are allowed to borrow more money and focused cross-selling efforts toward HBUS Premier Centers. (Liboy ¶4.) Premier loans are not very common in other regions, where the focus is on moderate or low income buyers. (Coyne ¶19.) Loan officers may also individually choose to specialize in low-income government-subsidized loans. (Monteith II ¶4,7.) This wide array of business products and markets that loan officers can choose to focus upon is another reason that the class is not uniform.

### d. Methods for Determining HBUS Branch "Assignments" Differ.

HBUS branches serve as one source of client referrals for HMCU loan officers.[21] As a result, HMCU managers often "assign" bank branch referrals to loan officers.[22] However, the way in which HMCU managers "assign" these referral sources differs. (Kelter ¶8 [factors considered include seniority, productivity, geographic convenience, and good relationship with bank].) For example, Manager Amy Ku rotates branch referrals among loan officers to give all loan officers an equal opportunity to receive referrals. (Ku ¶20.) In contrast, Daniel Kilfoil, who manages Long Island and Queens loan officers, assigns bank branches only to loan officers who are high producers and very sales savvy. Not all loan officers Mr. Kilfoil supervises receive bank branch referrals. (Kilfoil ¶10.)[23] This is but another example of local managers making different decisions to achieve national production requirements and lack of commonality between the putative class members.

### e. HMCU's Application Fee Waiver "Policy" Is Not Consistently Enforced.

HMCU requires loan officers to charge and collect application fees for certain types of loans

---

[20] Ku ¶32; Kelter ¶13 (focus on conforming loans of a maximum of $417,000.
[21] Chan ¶10,12; Conte ¶4; Ho ¶5,6,7,9; Kelter ¶9; Kim II ¶16; Lopez ¶9; Monteith I ¶5; Monteith II ¶6; O'Rourke ¶6; Pogorzelski ¶22.
[22] Coyne ¶12; Kelter ¶8; Young ¶7.
[23] Coyne ¶12 ("assigning" bank branches reward for top producers and new loan officers being required to "earn" opportunity to get branch referrals); Lopez ¶5 (not received any branch referrals).

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

from HMCU customers at the time the application is initiated. The type of fee that is charged varies by the loan type. (DeZego ¶5; Needham II ¶5.) If a loan officer fails to collect a required fee from a customer, the HMCU Mortgage Sales Incentive Plan for Retail Loan Consultants ("Incentive Plan"), which loan officers recognize as a contract to which they agreed, specifies that the amount not collected should be factored later into the loan officer's incentive compensation. (DeZego ¶6; Needham II ¶6.) Loan officers approach the collection of application fees in different ways. Some always collect the fee, others never collect it, and others sometimes forget.[24]

Although loan officers are told to collect the fees and that failure to do so will be factored into their incentive compensation, exceptions are made on a case-by-case basis by managers, with input from loan officers.[25] When this happens, the loan officer's incentive compensation is not affected; rather, the geographic division or "cost center" is charged with the fee. (Petrus ¶5; DeZego ¶7; Needham II ¶7, 8.) There is no national policy about when the waived application fee will be charged to the cost center as opposed to the individual loan officer's compensation. It is dependent on what individual managers decide. (Needham II ¶9.) Examples of reasons to make exceptions and charge the cost center with these fees include, but are not limited to when: a customer feels that customer expectations were not met; when intervening circumstances prevent loan closing or funding; a customer threatens to file a "Presidential Complaint"; or a customer has initiated a new loan application through a different lending program. (DeZego ¶8, 9; Needham II ¶9, 10.)[26]

## 2. Each Loan Officer Works Independently and Determines How He Will Do The Job.

HMCU's emphasis that the loan officer position is "entrepreneurial" in nature requires loan officers to treat the job as if it were their own business and to determine what works best for him/her, provided loan officers are out making sales as expected. (Jennings Depo. 41:24-43:9.) As a result, each "loan officer" approaches the way he performs his job differently. For example, each loan

---

[24] Chan ¶21; Conte ¶16; Kim II ¶ 37; Lin ¶25; Lopez ¶23; Monteith II ¶ 21; O'Connor ¶20; Oommen ¶18; Pogorzelski ¶31; Slapo ¶21; Thelian ¶4.
[25] Loan officers may dispute the factoring of uncollected application fees into their incentive compensation both before and after their compensation is paid to them. (Petrus ¶8, 9.)
[26] Wong is one of the individuals who has been granted an individualized exception to this requirement. (Needham II ¶10, Exh. A.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

officer decides how many hours to put into the job in a given week.  Each loan officer decides where to perform the job, where to meet customers and what networking and marketing to perform.  With rare exception, each loan officer independently decides what information is necessary to provide the best recommendations to customers.  Each loan officer chooses what sources to use to develop business.[27]  Each loan officer also decides how much time to spend doing administrative tasks, such as completing loan paperwork and maintaining customer databases.[28]

## III.    LEGAL ARGUMENT

### A.    Class Certification Under Rule 23 Requires A Rigorous Analysis.

Plaintiffs' motion for class certification plainly fails under the rigorous analysis required to demonstrate that the Federal Rule 23 requirements have been satisfied.  *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 161 (1982) (a "rigorous analysis" is required to ensure Rule 23 prerequisites are met); *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992).  Indeed, unless <u>all</u> the Rule 23(a) requirements have been met, along with <u>at least</u> <u>one</u> of the Rule 23(b) requirements, class certification is inappropriate.  *See, e.g., Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 614 (1997); *In re Dalkon Shield Prod. Liab. Litig.*, 693 F.2d 847 (9th Cir. 1982), *cert. denied*, 459 U.S. 1171 (1983).  The four Rule 23(a) requirements are:

> (1) the class must be so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative plaintiff(s) are typical of claims and defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).  Moreover, Rule 23(b)(3)— the provision under which Plaintiffs move—requires Plaintiffs to demonstrate "that the questions of law or fact common to members of the class predominate over any questions affecting only

---

[27] Chan ¶4,6,14,15; Conte ¶6,8,13,14,17; Ho ¶4-9,12,17; Kim I ¶6; Kim II 4-6,8,11,13,26; Lee ¶4,7,13,14,16,21,25; Lin ¶5-7,9,20; Lopez ¶4-10,12-15; Monteith II ¶5,9,17; O'Connor ¶7,8,10,12,14,22; Oommen ¶5,6,8,12,15; Pogorzelski ¶9,11,19,25,28; Slapo ¶5,6,12,15,16,22.  One loan officer may feel that realtors provide better referrals while another may feel that the best sources are through builders, financial planners, accountants, past books of business, networking events, or bank branches. (Gates Depo. 53:19-57:6; Young ¶11; Kelter ¶11; Kim I ¶6.)  Wong admitted at deposition that he used his own business plan to create sales opportunities and that he used his personal book of clients and the "CIF system database" to develop business. (Wong Depo. 100:11-13; 102:12-103:4.)

[28] Gates Depo. 64:10-65:9; Chan ¶15,16; Gates ¶8; Lin ¶17; Pogorzelski ¶16.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFS' OPPOSITION TO RULE 23 CERT MOTION          7.          Case No. C 07 2446 MMC [ECF]

individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Plaintiffs bear the burden of proof on <u>all</u> of these elements.  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).  Plaintiffs' failure to carry their burden on <u>any</u> <u>one</u> of the requirements precludes class certification.  *Burkhalter Travel Agency v. MacFarms Int'l, Inc.*, 141 F.R.D. 144, 152 (N.D. Cal. 1991) (citing *Rutledge v. Electric Hose & Rubber Co.*, 511 F.2d 668, 673 (9th Cir. 1975)).  Although Plaintiffs' substantive allegations must be accepted as true, the Court is not required to "accept conclusory or generic allegations regarding the suitability of the litigation for resolution through class action."  *Burkhalter*, 141 F.R.D. at 152.  Plaintiffs' allegations cannot withstand the rigorous analysis required.

**B.    Plaintiffs Fail To Satisfy Their Burden of Establishing Each of the Rule 23(a) Requirements.**

**1.    Commonality:  Plaintiffs Cannot Rely Solely Upon the Fact that They Have Asserted the Same Claims on Behalf of All Class Members.**

To successfully show "commonality," Plaintiffs must allege that all class members are subject to an institution-wide policy or practice that constitutes an unlawful practice.  *Williams v. Agilent Tech.*, 2004 U.S. Dist. LEXIS 24972 at *18 (N.D. Cal. Dec. 3, 2004) (holding commonality not met where "no evidence of a company-wide policy has been shown").  Here, Plaintiffs assert institution-wide policies that:  (a) HMCU's classification of loan officers as exempt is incorrect; and (b) HMCU's policy factoring waived application fees into incentive compensation is unlawful.  In support, Plaintiffs offer only cursory and conclusory "facts" that loan officers were classified as exempt, performed sales duties, and had no control over their sales goals or product pricing.[29] Merely alleging that the employer wrongly designated employees as exempt does not constitute a showing of an unlawful, institution-wide policy.[30] *Morisky v. Public Serv. Elec. and Gas Co.*, 111 F.

---

[29]Plaintiffs attempt to pass off the Court's recitation of factual information contained in its March 19, 2008 conditional certification order as "findings" that are "the law of the case."  However, a court's recitation of factual matters does not constitute a factual finding or ruling.  *See Morales v. Gonzales*, 472 F.3d 689, 699 n.2 (9th Cir. 2007).

[30]Interestingly, Plaintiffs, who argue that the outside sales exemption is the only potential exemption upon which HMCU may rely, allege that "management cares only that loan officers are selling loans—regardless of where they sell them" and that Defendants "have no enforced expectations and no tracking as to the ratio of inside versus outside sales that loan officers make."  *See* Plfs' Motion at 6:19-21, n.11.  These allegations, in and of themselves, demonstrate that there is no such common, institution-wide policy because the manner in which the job duties are carried out varies.  *See, e.g., Vinole v. Countrywide Home Loans, Inc.*, 246 F.R.D. 637, 641 (S.D. Cal. 2007).

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

Supp. 2d 493 (D.N.J. 2000).[31] Moreover, arguments comprised of "boilerplate and legal conclusions" are insufficient to meet the stringent commonality requirement. *Cf. Trinh*, 2008 WL 1860161 at *3-4 (stating putative class members have essentially the same job descriptions, training, and compensation is, on its own, insufficient).[32] Yet, all that Plaintiffs provide are such boilerplate and legal conclusions without factual support.

Rather, to satisfy their burden, Plaintiffs must dig deeper and analyze the nature of each putative class member's job duties and circumstances. *Morisky*, 111 F. Supp. 2d at 498 ("Even employees who hold the same job title do not necessarily perform the same work."). *Cf. Trinh*, 2008 WL 1860161 at *3 (citing *Holt v. Rite Aid Corp.*, 333 F. Supp. 2d 1265, 1272 (MD. Ala. 2004)); *Pfohl v. Farmers Ins. Group*, 2004 U.S. Dist. LEXIS 6447, *27 (C.D. Cal. Mar. 4, 2004). Relevant inquiries by a fact finder dealing with a misclassification case include: daily job duties actually performed; time spent day-to-day; importance of those duties; whether the loan officer analyzed the customer's financial situation; extent of sales duties; amount of time worked out of the office; whether the loan officer made over $100,000; and whether mixed exempt duties performed qualify for the combination exemption. *Trinh*, 2008 WL 1860161 at *4, n. 4. While Plaintiffs allege that loan officers engage in sales, they fail to address the individualized circumstances of class members to show common circumstances.

In contrast, Defendants' evidence shows that HMCU, with the exception of classifying them as exempt, does not engage in standardized conduct towards loan officers. Rather, individual loan officers have a significant amount of discretion as to the manner in which they perform their jobs. Each loan officer decides how to perform his/her job duties, how to focus efforts, what efforts to make, where to conduct such activities, whether to actually collect application fees, and whether to contest a decision to charge their incentive compensation with uncollected application fees.[33] These differences are critical, as they demonstrate the utter lack of commonality in this case. Individual

---

[31] *Cf. Trinh v. JP Morgan Chase & Co.*, 2008 WL 1860161 at *3-4 (S.D. Cal. Apr. 22, 2008); *King v. West Corp.*, 2006 U.S. Dist. LEXIS 3926, *41 (D. Neb. Jan. 13, 2006).

[32] *Forney v. TTX Co.*, 2006 U.S. Dist. LEXIS 30092, at *8 (N.D. Ill. Apr. 17, 2006) ("Whether similarly situated employees exists depends on the employees' actual qualifications and day-to-day duties, rather than their job descriptions.").

[33] Conte ¶8,7,16; Kim II ¶4-6,37; Lee ¶4,7,34,38; Lin ¶9,20,25; O'Connor ¶10,12,20,22; Oommen ¶8,21,18,19; Pogorzelski ¶19,25,31; Slapo ¶21,22; Thelian ¶4.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

loan officers are given a significant degree of discretion in the conduct of their jobs, resulting in significant differences among the purported class members in terms of their day-to-day job performance, hours, and compensation.[34] All of these factors are relevant to Plaintiffs' various state law claims and will require careful, <u>individualized</u> analysis. *See, e.g., Berry v. County of Sonoma*, 30 F.3d 1174, 1183 (9th Cir. 1994), *cert. denied*, 513 U.S. 1150 (1995); *Bayles v. American Med. Response of Colorado, Inc.*, 950 F. Supp. 1053, 1062 (D. Colo. 1996).

In addition, determining whether loan officers fall within the relevant state law exemptions requires analyzing many individual factors, including how much of each employee's time was spent on activities that fall within exempt categories.[35] *See, e.g.,* Cal. Labor Code § 1171 (outside sales).[36] By definition, this analysis is highly individualized and fact-specific. For example, California's outside sales exemption requires a <u>quantitative</u>, rather than qualitative, analysis. 8 Cal. Code Regs. § 11040(2)(M). This quantitative analysis focuses exclusively on whether the individual works more than half the working time selling or obtaining orders and contracts. *Ramirez v. Yosemite Water Co., Inc.*, 20 Cal. 4th 785, 797 (1999). Thus, while California's exemption recognizes that some

---

[34] As discussed above, compensation for loan officers varies with respect to the amount of their draws or salaries, whether they have a guaranteed draw or salary, whether their draw or salary changed over time, and their incentive compensation. (Chan ¶17-20; Conte ¶ 15; Coyne ¶21; Kelter ¶16; Lin ¶23; Monteith II ¶20; Needham I ¶16; O'Connor ¶3,19; O'Rourke ¶17; Young ¶16.) These variations will make the difference between whether an individual is deemed to fall into the various different exemptions recognized under the law. For example, New Jersey's administrative exemption requires that an individual whose primary duty is sales activity must receive at least fifty percent (50%) of his or her total compensation from commissions and that the individual's compensation equal no less than $400.00 per week. N.J. Admin. Code § 12:56-7.2. Given the variations as to how an individual's compensation is structured, only an individualized inquiry can help to determine whether an individual may fall within New Jersey's administrative exemption or any of the other applicable exemptions in this case.

[35] Citing the Court's March 19 conditional certification order, Plaintiffs claim that the Court has already "ruled" that the only exemptions available for classifying loan officers are the outside sales exemption and the highly compensated exemption. *See* Plaintiffs' Motion 2:17-19, n.2. Plaintiffs' contention is incorrect. As discussed above, the Court's discussion of factual matters in its Order is not a finding or ruling. *See Morales,* 472 F.3d at 699 n.2. Thus, any facts discussed by the Court in its Order do not become the "law of the case." Moreover, the Court's Order makes clear that partial summary judgment was only granted with respect to certain <u>FLSA</u>, not state law, exemptions, as Plaintiffs only sought to exclude certain FLSA exemptions. *See* Court's March 19, 2008 Conditional Certification Order, Dkt. #110, 2:25-3:3 ("plaintiffs seek summary judgment…[on Defendants' second and fourth affirmative defenses]…to the extent it is premised on four specific exemptions to the FLSA"); 14:13-15 (granting partial summary judgment as to the FLSA's executive, professional, administrative, and retail sales exemptions only).

[36] *See also* 8 Cal. Code Regs. § 11040(1)(A), (2)(M) and (3)(D); 12 N.Y.C.R.R. 142-2.2 (incorporating FLSA regulations for administrative, outside sales, commissioned sales, highly compensated, and combination exemption); N.J. Admin. Code 12:56-7.2, 7.4.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

1

2

3

employees work in both sales and nonsales capacities, this quantitative approach looks to <u>actual</u> hours spent on sales activity, <u>in addition to the employer's reasonable expectations</u>, to determine if an individual falls within this exemption. *Id.* at 802.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

In support of <u>both</u> their Rule 23(a) commonality <u>and</u> Rule 23(b)(3) predominance arguments, Plaintiffs incorrectly rely upon one district court decision, *In re Wells Fargo Home Mortgage Overtime Pay Litigation*, 527 F. Supp. 2d 1053 (2007). Their blind reliance is misplaced for several reasons. First, the *Wells Fargo* decision incorrectly used the same standard for commonality and predominance, finding that both requirements were met simply by the fact that the particular jobs at issue were classified as exempt. *See id.* at 1068.[37] In fact, to determine predominance, the Court "must first examine the substantive issues raised by Plaintiffs and second <u>inquire into the proof relevant to each issue</u>." *Jiminez v. Domino's Pizza, Inc.*, 238 F.R.D. 241, 251-52 (C.D. Cal. 2006) (emphasis added) (citing *Simer v. Rios*, 661 F.2d 655, 672 (7th Cir. 1981)). As numerous decisions recognize, the proof necessary to determine whether individuals who perform their jobs differently are exempt from overtime, particularly under the outside sales exemption, is inherently individualized. *See, e.g., Jiminez*, 238 F.R.D. at 251 (common question of whether managers are wrongly classified based on job title rather than actual tasks performed is subsumed by necessary individualized inquiries into how much time is spent on exempt tasks).[38]

18

19

Second, the Ninth Circuit has squarely placed the *Wells Fargo* decision in question by granting discretionary interlocutory review of the class certification order under Rule 23(f). (Defs'

20

21

22

23

24

25

26

27

28

[37]The *Wells Fargo* decision misapplied cases that actually found that predominance was met only because the positions at issue were substantially similar. *See, e.g., Tierno v. Rite Aid Corp.*, 2006 U.S. Dist. Lexis 71794, at *30-33 (N.D. Cal. Aug. 31, 2006) ("The evidence indicates that ... the Store Manager position at Rite Aid is, in fact, substantially similar from store to store in all important aspects such that class treatment is appropriate in this case."). A proper application of the Rule 23(B)(3) predominance requirement compels the conclusion that individual inquiries predominate here.

[38]*See also Maddock v. KB Homes, Inc.*, 248 F.R.D. 229, 246 (C.D. Cal. 2007) (FLSA outside sales exemption depends on numerous individualized inquiries that predominate); *Perry v. U.S. Bank*, 2001 U.S. Dist. Lexis 25050, *19-21 (N.D. Cal. Oct. 17, 2001) (although plaintiff established numerous common legal questions, predominance not met because California outside sales exemption requires a fact-specific determination); *Clausman v. Nortel Networks, Inc.*, 2003 U.S. Dist. Lexis 11501, at *9-10 (S.D. Ind. May 1, 2003) ("[W]here liability to each plaintiff will depend on whether that plaintiff was correctly classified as an 'outside salesman,' the Court will be required to make a fact-intensive inquiry into each potential plaintiff's employment situation."); *Walsh v. IKON Office Solutions, Inc.*, 148 Cal. App. 4th 1440, 1451-52 (2007) (common issues do not predominate where California's outside sales exemption at issue).

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

RJN, Exh. 2.)  The Ninth Circuit is "of the of the view that petitions for Rule 23(f) review should be granted sparingly"; thus, the court generally grants review of class certification decisions only when

> (1) there is a death-knell situation for either the plaintiff or defendant that is independent of the merits of the underlying claims, coupled with a class certification decision by the district court that is questionable; (2) the certification decision presents an unsettled and fundamental issue of law relating to class actions, important both to the specific litigation and generally, that is likely to evade end-of-the-case review; or (3) the district court's class certification decision is manifestly erroneous.

*Chamberlan v. Ford Motor Co.*, 402 F.3d 952 (9th Cir. 2005).

Third, this case varies from *Wells Fargo* in many respects.  Notably, Defendants' evidence demonstrates that HMCU does not have a common policy for how loan officers are to spend their time, except to instruct them to be entrepreneurial and go out and get business from whatever sources they can.  In *Vinole v. Countrywide Home Loans, Inc.*, 246 F.R.D. 637 (S.D. Cal. 2007), the court recognized that, as a result of such a policy, it is not possible for a court to simply examine a single employer-wide policy that sets forth requirements and expectations for loan consultants' sales activities.  *Id.*  Individual issues clearly predominate for outside salespeople who all perform their job differently.  Unlike the *Wells Fargo* plaintiffs, Plaintiffs have submitted virtually no evidence from class members demonstrating any similarities in how they and class members spend their time.  Blind reliance on a decision under appeal, absent supporting evidence, is not persuasive.

In the end, each class member's claim does not stand or fall on whether HMCU uniformly classified loan officers as exempt or had a uniform requirement to factor uncollected application fees into incentive compensation.  Rather, the claims stand on each loan officer's unique, particularized circumstances—the individual's personal experience in the industry, the locations he/she worked, whether the individual collected application fees or had uncollected fees factored his compensation, and how much each individual chose to work.  *See also Ramirez,* 20 Cal. 4th at 798 n.4 ("the court should consider, first and foremost, how the employee actually spends his or her time" in determining whether employee fell within outside salesperson exemption); *Marx v. Friendly Ice Cream Corp.*, 380 N.J. Super. 302, 322 (2005) ("an employee who is supposed to be engaged in [exempt] activities during most of his working hours and falls below the…mark due to his own substandard performance [or affirmative choice] should not thereby be able to evade a valid

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFS' OPPOSITION TO RULE 23 CERT MOTION          12.          Case No. C 07 2446 MMC [ECF]

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

exemption"). These questions cannot be decided in a representative manner because the named Plaintiffs will present differing testimony from other putative class members on these issues.[39] Thus, it is impossible to conclude that loan officers, who independently controlled their own day-to-day activities, had common experiences. There are too many individual issues for there to be factual or legal issues common to the entire class. *Allen v. Chicago Transit Auth.*, 2000 WL 1207408, at *8 (N.D. Ill. July 31, 2000).[40] The predominance factor would preclude certification on its own, as putative class members are outside salespeople who are instructed to be entrepreneurial and whose sales methods vary dramatically.

## 2. Plaintiffs' Claims Also Lack Sufficient Typicality With Those of the Proposed Class(es).

"Typicality" is designed to assure that the named representative's interest aligns with the class interests and refers to the nature of the class representative's claims and defenses. *Hanon*, 976 F.2d at 508 (citation omitted). "[A]s goes the claim of named plaintiff, so go the claims of the class." *Sprague v. General Motors Corp.*, 133 F.3d 388, 399 (6th Cir.), *cert. denied* 524 U.S. 923 (1998). However, "merely pointing to common issues of law is insufficient to meet the typicality requirement when the facts required to prove the claims are markedly different between class members…." *Spencer v. Central States, Southeast and Southwest Areas Pension Fund*, 778 F. Supp. 985 (N.D. Ill. 1991) (same legal theory is insufficient standing alone). In fact, contrary to Plaintiffs' argument, "typicality" focuses on the class representative's position with respect to a defendant's

---

[39] By way of example, Shearn testified in deposition that she recalls having only had an uncollected application fee deducted from her commission on one occasion. (Shearn Depo. ¶ 192:21-193:4.) In contrast, for example, Patricia O'Connor states that this happens "occasionally, but not consistently" and Rebecca Slapo states that she "hardly ever" collects the fee and that her incentive pay is reduced because of this. (O'Connor ¶20; Slapo ¶21.)

[40] *See also Herring v. Hewitt Assoc., Inc.*, 2007 WL 2121693, at *7 (D.N.J. July 24, 2007) (inquiry into exempt status is individual and fact-intensive requiring detailed analysis of time spent on duties, job duties and responsibilities); *Savage v. UNITE HERE*, 2008 WL 1790402, at *8 (S.D.N.Y. Apr. 17, 2008) (citing to 29 C.F.R. § 541.2, among other authorities, for the proposition that the inquiry into exempt status requires analysis of day-to-day activities); *Diaz v. Electronics Boutique of Am., Inc.*, 2005 U.S. Dist. LEXIS 30382 (W.D.N.Y. Oct. 17, 2005) (finding plaintiffs' attempt to argue that the factual and legal issue is whether defendant properly compensated its employees was an oversimplification and misstatement of the issues); *Morisky*, 111 F. Supp. 2d 493 (holding plaintiffs' claims of violations of state labor law are individual in nature and the question of whether defendant improperly classified employees is unique to each employee).

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFS' OPPOSITION TO RULE 23 CERT MOTION          13.          Case No. C 07 2446 MMC [ECF]

conduct—not on the defendant's conduct and its common effect on the members of the class.[41]

*McNichols v. Loeb Rhoades & Co., Inc.*, 97 F.R.D. 331, 334 (N.D. Ill. 1982).[42]

In this case, Plaintiffs cannot meet the typicality requirement for essentially the same reasons they cannot meet the commonality requirement. Specifically, the facts required to prove their claims are markedly different between all the proposed class members, including the class representatives. By way of example, largely boilerplate declarations submitted by Plaintiffs claim the following:

| Wong | Spent "more than 40 hours" of his workweek in HBUS bank branches, which was his "primary responsibility and primary source of sales leads." | Dkt. #72-2, Wong Decl. ¶3. |
| | Received 12 months of a non-coverable draw ("salary") at $36,000/year; then moved to a $23,000 recoverable draw plus commissions. | Dkt. #72-2, Wong Decl. ¶10. |
| Chaussy | Spent "about 40 hours" of his workweek in HBUS bank branches, which was his "primary source of sales leads." | Dkt. #72-2, Chaussy Decl. ¶3. |
| | Received 9 months of a non-recoverable draw ("salary"); after 9 months, paid a recoverable draw and "earned about $1600 per month," which would equal $19,200/year. | Dkt. #72-2, Chaussy Decl. ¶7. |
| Shearn | Typically worked from her home office in New York three to four days per week and once to twice per week in a New Jersey based LPO.[43] | Dkt. #187-10, Shearn Decl. ¶ 6. |
| Barbiere | Spent "the majority" of his time and "performed the vast majority of [his] responsibilities" covering "HSBC Hoboken, Ridgewood and Parsippany facilities" and from his home office.[44] | Dkt. #187-11, Barbiere Decl. ¶ 4 |

Such lack of specificity shows that Plaintiffs have no commonality, or if it exists, it has not been

---

[41]Plaintiffs acknowledge that HMCU makes exceptions to its application fee collection requirement. *See* Plfs' Motion at 7:27-28. This admission demonstrates that one looks at each individual's position with respect to defendant's conduct, not on the alleged affect the policy may have on individuals.

[42]*Rodriguez v. Gates*, 2002 WL 1162675, at *8 (C.D. Cal. May 30, 2002) (holding plaintiff cannot establish claims are typical simply by relying on the presence of certain claims; otherwise, all similar litigation would be "typical").

[43]Shearn does not mention her compensation structure. However, in deposition, Shearn first testified that according to her manager she was paid as an hourly employee for the first three months of her employment as a loan officer. Later, she testified that she received a lower base pay than when she worked as a sales assistant plus commissions for the first six months of her employment and then moved to receiving a draw plus commissions. (Shearn Depo. 66:19-69:13.) In deposition, she also claimed that she spent only a total of 6 hours in a HBUS bank branch. (*Id.* at 86:5-87:9.)

[44]Barbiere does not mention his compensation structure; however, his offer letter provides that he received 9 months of a fixed salary of $40,000 plus commissions earned and then moved to a "recoverable draw" plus commissions arrangement. (Barrett ¶6, Exh. 3.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

adequately demonstrated.  In contrast, Defendants demonstrate that many loan officers spend minimal amounts of time in HBUS bank branches, LPOs, and/or home offices.  Moreover, the evidence demonstrates that some putative class members received regular salaries, others received draws in varying amounts for various lengths of time, and some received bonuses.  In short, the experiences outlined by named Plaintiffs are not necessarily the experiences shared by other loan officers.  As such, there is simply no way of knowing, pending individualized inquiries, whether the class representatives' actual work experience was typical of other putative class members.[45]  Thus, Plaintiffs have not met their burden of proof on this issue.

### 3.    Numerosity:  Plaintiffs Fail to Demonstrate That Joinder Is Impractical.

Contrary to Plaintiffs' emphasis on class member numbers, Rule 23(a)'s numerosity requirement does not focus on the number of proposed class members.  Rather, the rule zeroes in on whether joinder of all class members is impracticable.  Although Plaintiffs would like the Court to focus purely on numbers and imply that low thresholds have been set for the number of putative class members, neither the U.S. Supreme Court nor the Ninth Circuit has set a "threshold" above which the numerosity requirement is presumed to be met.  *See General Telephone Co. of Northwest v. EEOC*, 446 U.S. 318, 330 (1980) ("The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations.").[46]  Even assuming Plaintiffs' estimates as to class numbers are true,[47] such small numbers hardly demonstrate that joinder is impractical.  Considering the individual differences in employees, certification of any class is particularly inappropriate.

Other factors support the conclusion that joinder of individual plaintiffs is practicable.  Only 14 of 40,16 of 53, and 50 of 386 of the California, New Jersey, and New York class members,

---

[45]Indeed, in deposition, Wong, Chaussy, and Shearn admitted that they did not have personal knowledge of how other loan officers worked, their hours and/or their schedules.  (Wong Depo. 41:9-25; 193:10-20; Chaussy Depo. 189:4-16; Shearn Depo. 124:16-126:20.)

[46] In fact, courts have refused to certify classes consisting of "twenty-nine, thirty-nine, fifty to one hundred or even three hundred and fifty potential members."  Wright, Miller & Kane, *Federal Practice and Procedure*, Civil 2d § 1762 (2005) (citations omitted).

[47]Defendants dispute that the alleged class member numbers cited by Plaintiffs in their motion are correct.  A review of putative class member lists show that the putative California class includes only 40 putative members and the New Jersey putative class includes only 53 members.  (Barrett ¶2.)  Plaintiffs also vaguely reference a putative New York class of "more than 350 members."  The more specific number appears to be 386.  (Barrett ¶2.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFS' OPPOSITION TO RULE 23 CERT MOTION          15.          Case No. C 07 2446 MMC [ECF]

respectively, have opted in to the FLSA action[48] – clearly a small enough group to be handled on an individual basis. *See Thiebes v. Wal-Mart Stores, Inc.*, 2002 U.S. Dist. LEXIS 664, at *8 (D. Or. Jan. 9, 2002) ("[T]hat such a small percentage of the employees opted-in is telling…and cautions against a finding that joinder is impracticable."). Moreover, although Plaintiffs cite class members' "limited financial resources" as a policy reason supporting certification, they provide no evidence of these alleged limited resources. In fact, at least 77 putative class members have earned over 6 figures on an annual basis.[49] (Markunas ¶5.)[50] Thus, Plaintiffs have failed to meet their burden of proving that their proposed classes are so numerous as to make joinder impracticable.

### 4. Plaintiffs Cannot Adequately Represent Entire Classes of Loan Officers.

Representation is not adequate if the proposed representatives' interests are antagonistic to or in conflict with those they purport to represent. *See Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).[51] Antagonism and conflict abound among class members in this case. At a minimum, nine have expressed their affirmative opposition to this lawsuit and have declared their belief that the proposed class representatives or others who have opted into the lawsuit do not represent their interests.[52] Some have also expressed fear that this suit will result in unwanted changes in the loan officer position, or will harm the industry.[53] Further, named Plaintiffs seek injunctive relief in this case—a remedy that is antagonistic to current employees who wish for the HMCU's current system to continue.[54] These are not concerns that would be shared by the many

---

[48]Barrett ¶3.

[49]The salary figures relied upon with regard to this issue do not account for instances where a loan officer worked only a partial year for HMCU. Under the "highly compensated" exemption, an individual who does not work for the employer for a full year because the employment ends before the end of the year qualifies for the exemption if the individual receives a pro rata amount of the minimum $100,000 required by the regulation. 29 C.F.R. § 541.601(b)(3). The regulation calculates an individual's pro rata share based on the number of weeks the employee has been employed during that partial year of employment. *Id.* Thus, the number of putative class members falling within this exemption is likely greater.

[50]Of the 77, ten are individuals who have already opted into this suit. Defendants intend to move to exclude these individuals from the suit.

[51]Moreover, if the representatives' claims are not typical of the class, they cannot adequately protect the interests of absent class members. *See McNichols*, 97 F.R.D. at 334, *citing General Tele. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

[52]Chan ¶22; Conte ¶18; Ho ¶23; Kim II ¶39; Lee ¶36; Lin ¶ 26; Lopez ¶24; Monteith II ¶23; O'Connor ¶22; Oommen ¶21; Pogorzelski ¶32.

[53]Chan ¶22; Kim II ¶39; Lee ¶36; Lin ¶26; Monteith II ¶23; O'Connor ¶22; Oommen ¶21; Slapo ¶22.

[54]Named Plaintiffs lack standing to pursue any form of injunctive relief as they are not current employees and cannot show a real or immediate threat that they will be harmed again. *City of Los*

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108-2693
415.433.1940

potential class members who no longer work for HMCU, or those who have left the industry altogether.

These issues can be expected to have a significant impact upon settlement dynamics,[55] among other things, with loan officers no longer working for HMCU who may be focused on obtaining the largest possible cash settlement, while those who are still working for HMCU are more likely to consider a smaller cash settlement in the context of an agreement regarding future work and pay practices. Such factors weigh against a finding of adequate representation. *Georgine v. Amchem Prod.*, 83 F.3d 610, 618 (3d Cir. 1996) ("factually and legally different plaintiffs creates problematic conflicts of interest, which thwart fulfillment of the typicality and adequacy of representation requirement[s]"), *aff'd*, 512 U.S. 591 (1997).

Moreover, antagonism exists because Plaintiffs Wong and Chaussy have revealed confidential production and financial information about putative class members that they had no right to reveal. *See* Defs' Motion for Sanctions, Dkt. #184. Similarly, Shearn's individual circumstances, which are not typical to those working in New Jersey or New York, appear to be antagonistic to others. As a loan officer, Shearn claims she spent significant time traveling between New York where she lived and allegedly worked from her home office and New Jersey where she was officially assigned to work, and did work, out of two LPOs. (Shearn Depo. 112:13-116:2.) In this regard, Shearn's experience is different from other New Jersey loan officers who worked there only (Barbiere ¶4; Pogorzelski ¶2) and New York loan officers who worked in New York only or who were assigned to work in New York locations.[56] (Conte ¶2; O'Connor ¶2; Oommen ¶2; Slapo ¶2.) Further, given that Shearn allegedly worked in two states, which recognize different exemptions with differing standards required to meet those exemptions,[57] her interests are further antagonistic to others whose exempt status will only be reviewed under one state's laws. Given all of the conflicts between Plaintiffs and others, Plaintiffs have not met their burden of proof

---

*Angeles v. Lyons*, 461 U.S. 95, 102, 111 (1983); *Hodgers-Durgin v. De La Vina,* 199 F.3d 1037, 1045 (9th Cir. 1999).

[55] Defendants are in no way indicating that settlement is appropriate or warranted in this matter.

[56] Although she purports to be class representative for New York loan officers, Shearn has admitted she was not assigned to work at any HMCU location in New York. (Shearn Depo. 81:15-18.)

[57] *See, e.g.,* 12 N.Y.C.C.R. 142-2.2 (incorporating FLSA administrative, outside sales, commissioned sales, highly compensated, and combination exemptions); N.J. Admin. Code 12:56-7.2, 7-4.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

1
2
3

establishing that the proposed class(es) would be fairly and adequately represented. *See Navellier v. Sletten*, 262 F.3d 923, 941 (9th Cir. 2001) (intra-class conflicts support denial of certification), *cert. denied*, 536 U.S. 941 (2002).

4
5

**C.    Rule 23(b):  Individual Allegations Predominate Over the Class Allegations and Issues.**

6
7
8
9
10

To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites:  Common questions must predominate over individual questions, and class resolution must be superior to other available methods of adjudication. *Amchem Prod.*, 512 U.S. at 615.  Even assuming that Plaintiffs met all of the Rule 23(a) requirements (which they have not), they cannot satisfy either of the additional standards required under Rule 23(b)(3).

11
12

**1.    Any Common Issues Do Not Predominate Over the Numerous Issues Requiring Individual Proof.**

13
14
15
16
17
18
19
20
21
22
23

A plaintiff "must establish that 'the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole,…predominate over those issues that are subject only to individualized proof.'" *Wal-Mart Stores, Inc. v. Visa USA Inc.*, 280 F.3d 124, 136 (2d Cir. 2001) (citation omitted), *cert. denied*, 536 U.S. 917 (2002).  This is more stringent than the commonality requirement of Rule 23(a).  *W. States Wholesale, Inc. v. Synthetic Indus., Inc.*, 206 F.R.D. 271, 277 (C.D. Cal. 2002).  To properly address the predominance question, the Court must inquire into the relevant claims, defenses, facts and substantive law that will control the outcome of the case, and assess which issues will predominate; then, the Court must determine whether those issues are common to the class. *Szabo v. Bridgeport Machs., Inc.,* 249 F.3d 672, 677 (7th Cir. 2001). The Court must also consider the difficulties likely to be encountered in the management of the case as a class action at trial. *Hyderi v. Washington Mut. Bank*, 235 F.R.D. 390, 398 (N.D. Ill. 2006).

24
25
26
27
28

Plaintiffs cannot meet this predominance requirement.  First, Plaintiffs' proposed classes include all loan officers employed by HMCU in three different states—three different states with different exemptions and "wage" deduction laws.  Defendants contend that these loan officers were exempt from state overtime requirements because they were employed in "administrative, executive or professional capacities," that they were employed as outside salespersons, commissioned

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFS' OPPOSITION TO RULE 23 CERT MOTION        18.        Case No. C 07 2446 MMC [ECF]

1    salespersons, or because they were highly compensated.[58]    *See, e.g.,* 8 Cal. Code Regs. §

2    11040(1)(A), 2(M), (3)(D).[59]  Defendants also contend that because various state wage laws define

3    wages differently, HMCU's requirement that uncollected fees be factored into incentive

4    compensation is lawful.  Despite Plaintiffs' burden to establish that the various state laws under

5    which they make claims are similar, Plaintiffs utterly fail to discuss any state law variations on either

6    exemptions or "wage" deduction issues.  *Dawson v. Dovenmuehle Mort., Inc.*, 214 F.3d 196, 201

7    (E.D. Pa. 2003).[60]  Factors to be considered in determining whether the various state law exemptions

8    are applicable to individual loan officers will include, but not necessarily be limited to, whether they

9    "customarily and regularly exercise[d] discretion and independent judgment"; whether their work

10    was related to the employer's general operations; whether they worked under only general

11    supervision; whether their work required any special training, experience or knowledge; and whether

12    they customarily and regular work away from their employer's place of business.[61]  *See generally* 8

13    Cal. Code. Regs. § 11040.[62]  As a result, Plaintiffs fail to establish predominance.

14        Defendants' evidence makes it abundantly apparent that these loan officers <u>must</u> operate on a

15    very independent and individualized level.  This individualized performance of the loan officer's job

16    must further be viewed against the backdrop of different types of customers, different types of loan

17    products or loan transactions, the selling techniques or incentives adopted by loan officers, and a

18

19    [58]Plaintiffs claim the highly compensated exemption is inapplicable in this case, claiming (among
other things) that because the testimony of two Rule 30(b)(6) witnesses regarding loan officers'

20    compensation plans is binding upon Defendants.  However, this Court has found that this is not the
case.  *See Synopsys, Inc. v. Magma Design Automation*, 2007 U.S. Dist. LEXIS 6814, *92 (N.D. Cal.

21    Jan. 31, 2007) (Chesney, J.) ("testimony by a Rule 30(b)(6) designee is not a binding admission on
the designating corporation, but, rather, is 'evidence which, like any other deposition testimony, can

22    be contradicted.'").  In fact, a number of the cases cited by Plaintiffs do not stand for the proposition
they claim.  *See Calpine Corp. v. Ace Am. Ins. Co.*, 2007 WL 3010570, *7 (N.D. Cal. Oct. 12, 2007)

23    (no ruling on issue; only general discussion of Rule 30(b)(6)); *Kennedy v. Allied Mut. Ins. Co.*, 952
F.2d 262, 266 (9th Cir. 1991) (no discussion of Rule 30(b)(6) whatsoever); *Block v. City of Los

24    Angeles*, 253 F.3d 410, 419 n.2 (9th Cir. 2001) (same).
the cases Plaintiffs cite in support of this argument do not stand for this proposition.

25    [59]12 N.Y.C.R.R. 142-2.2; N.J. Admin. Code 12:56-7.2, 7.4.
[60]Plaintiffs allege an institution-wide policy regarding loan officers' exempt status.  Alleging

26    misclassification alone is not sufficient for predominance.  *Jimenez v. Domino's Pizza, Inc.*, 238
F.R.D. 241, 249-50 (C.D. Cal. 2006).

27    [61]Moreover, in California for example, an employee must spend more than 50% of his work time on
exempt activities in order to be exempt.  *Ramirez*, 20 Cal. 4th at 798 n.4.  An individualized inquiry

28    will be required to determine how each loan officer spends his or her time.
[62]*See also* 12 N.Y.C.R.R. 142-2.2; N.J. Admin. Code 12:56-7.2, 7.4.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFS' OPPOSITION TO RULE 23 CERT MOTION        19.        Case No. C 07 2446 MMC [ECF]

wide variety of experience, skill and education levels among loan officers. Application of an exemption analysis is inherently fact specific, and individual inquiries will be required to determine whether each putative class member falls within any specific based on that individual's actual performance of job responsibilities, the amount of time spent on those job responsibilities, and even where those job responsibilities are performed. *See, e.g., Perine v. ABF Freight,* 457 F. Supp. 2d 1004 (C.D. Cal. 2006); *Nordquist v. McGraw Hill Broadcasting Co.*, 32 Cal. App. 4th 555, 564 (1995) (whether employee is exempt is a factual question). Out of necessity, individual issues of fact and law will predominate over any common issues.

This very District Court has denied class certification on this basis in a case involving alleged failure to pay overtime to exempt employees. *Perry v. U.S. Bank,* 2001 U.S. Dist. LEXIS 25050 (N.D. Cal. Oct. 17, 2001). *Perry* involved a proposed class action on behalf of salaried "personal bankers" working for U.S. Bank in California, alleging that U.S. Bank failed to pay overtime in violation of California law. U.S. Bank claimed that the personal bankers were exempt as administrative, outside sales or commissioned salespeople. This Court denied plaintiff's certification motion, holding that the Rule 23(b)(3) predominance requirement was not met. The Court found that declarations submitted established that "differences exist[ed], for example, with regard [to] whether individual personal bankers exercised discretion and independent judgment, [and] whether they spent more time working at the branch or away from the branch…." *Id.* at *20-21. Like U.S. Bank, Defendants' evidence establishes that there are extensive individual questions concerning the nature and performance of the class members' jobs that preclude class treatment. In light of this evidence, it is clear that a jury would be inundated with vastly divergent testimony, based upon each loan officer's personal experiences with the job. As a result, resolution of these claims cannot be determined on a class-wide basis because, as illustrated by Defendants' evidence, all putative class members did not perform their work in the same manner. *See also Maddock v. KB Homes, Inc.*, 248 F.R.D. 229, 240 (C.D. Cal. 2007).

Other district courts have express logic similar to that in *Perry. See, e.g., Morisky*, 111 F. Supp. 2d 493. In *Morisky*, defendant claimed that the proposed class was administratively exempt. The court did not even have to reach the predominance requirement; rather, the court found that the

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFS' OPPOSITION TO RULE 23 CERT MOTION     20.     Case No. C 07 2446 MMC [ECF]

Rule 23(a) commonality and typicality requirements were not met because "the question of whether defendant improperly classified employees as exempt is unique to each employee…." *Morisky*, 111 F. Supp. 2d at 500. In cases where liability turns on whether employees were properly classified as exempt (as is the case here), the court holds that common questions of law and fact do not exist, let alone predominate over individual questions. Because Defendants have made an evidentiary showing of the individualized proof required in this case, the Court should reach the same conclusion here.[63]

### 2. Plaintiffs Cannot Show That Class Actions Are A Superior Method For The Adjudication of This Employment Dispute.

Not only do Plaintiffs fail to meet Rule 23(b)(3)'s predominance requirement, but they also fail to meet their burden to prove that these class actions would be "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. Pro. 23(b)(3). In addressing the second prong of Rule 23(b)(3), "predominance" overlaps greatly with "superiority;" that is, as the number of individual issues increases, the class action device becomes a less superior method for adjudication. *Miller v. Hygrade Food Prods. Corp.*, 198 F.R.D. 638, 643 (E.D. Penn. 2001); *State Sec. Ins. Co. v. Frank B. Hall & Co.*, 95 F.R.D. 496, 499 (N.D. Ill. 1982). Indeed, where each class member would have to litigate numerous and substantial separate issues to establish the right to recover individually—after liability to the class is established—a class action is not superior. *Doe v. Guardian Life Ins. Co.*, 145 F.R.D. 466, 476 (N.D. Ill. 1992); *see also Porter v. Nations Credit Cons. Disc. Co.*, 229 F.R.D. 497, 500 (E.D. Pa. 2005).

The fact that only 14 of 40, 16 of 53, and 50 of 386 of the putative California, New Jersey, and New York class members, respectively, have opted in to this litigation—a total opt in rate of only 16.7% percent—weighs in favor of individual treatment of these claims. (Barrett ¶3.) This issue was addressed in *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 469-70 (N.D. Cal. 2004) and *Edwards v. City of Long Beach*, 467 F. Supp. 2d 986, 992 (C.D. Cal. 2006). Similar to this case, Leuthold brought overtime claims under the FLSA, as well as under state law, and moved to certify

---

[63] *See Burkhalter*, 141 F.R.D. at 154 (Rule 23(b)(3) requirements not met where proposed class had common issue, but so many "cross-cutting factual circumstances" existed among class members as to make the class "incoherent").

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

a class on those state claims. Because plaintiffs had the option of bringing their pendant state law claims as a part of their FLSA collective action, the court found plaintiffs could not meet their "superiority" burden. *See Leuthold*, 224 F.R.D. at 469-70; *see also Edwards*, 467 F. Supp. 2d at 992, *quoting McClain v. Leona's Pizzeria, Inc.*, 222 F.R.D. 574, 577 (N.D. Ill. 2004) (allowing a small number of FLSA opt-ins to control a larger state law class would in essence permit "'a federal tail to wag what is in substance a state dog'").

The fact that only 16.7% of purported members of Plaintiffs' proposed classes have opted in to the FLSA action indicates that a class action is not the superior method of resolving this controversy. Those plaintiffs who have opted in will be free to pursue their claims through the FLSA action or individual claims. It would be inconsistent with the policies underlying Rule 23 to bind class members to a judgment on state law claims, where most of those members have chosen not to participate in an action that raises virtually identical claims under federal law. *See Rodriguez v. The Texan, Inc.*, 2001 U.S. Dist. LEXIS 24652 at *3 (N.D. Ill. 2001) (policy underlying the opt-in requirement thwarted "if a plaintiff were permitted to back door the shoehorning in of unnamed parties through the vehicle of calling upon similar state statutes that lack such an opt-in requirement"). Therefore, class certification should be denied.

**D.    Nichols Kaster Will Not Adequately Represent the Proposed Classes.**

To support their claim that class counsel is adequate, Plaintiffs make a one sentence statement declaring that Nichols Kaster "has been actively and diligently prosecuting this action, and are highly experienced in class action litigation." *See* Plfs' Motion 24:2-4. This statement alone is not enough to establish that Plaintiffs' counsel will adequately represent the proposed classes. In determining whether Plaintiffs' counsel meets the requirement to "fairly and adequately protect the interests of the class," resolution of two questions is necessary: (1) Do the named plaintiffs and their counsel have any conflicts of interest with other class members?; and (2) Will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class? *See Hanlon v. Chrysler Corp.*, 150 F.3d 298, 303 (9th Cir. 1996), *citing Lerwill,* 582 F.2d at 512. The Court has a constant duty to inquire into the professional competency and behavior of class counsel. *In re Fine Paper Antitrust Litig.*, 617 F.2d 22, 27 (3d Cir. 1980). Class counsels' qualifications are closely scrutinized

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFS' OPPOSITION TO RULE 23 CERT MOTION    22.    Case No. C 07 2446 MMC [ECF]

by courts to assure that unnamed plaintiffs are adequately represented. *Huston v. Imperial Credit Commercial Mortgage Inv. Corp.*, 179 F. Supp. 2d 1157, 1167 (C.D. Cal. 2001) (citing *Palumbo v. Tele-Comm., Inc.*, 157 F.R.D. 129, 132-33 (D.D.C. 1994)). Further, the Court is vested with the inherent authority to regulate litigants and lawyers before it and take any action to cure any wrong committed by these parties or attorneys. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44 (1991); *Erickson v. Newmar Corp.*, 87 F.3d 298, 303 (9th Cir. 1996).[64]

Plaintiffs cannot escape that their counsel's ethics have been called into question by Bryan Schwartz' instruction to Wong to destroy emails between the two. *See* Defs' Motion for Sanctions, Dkt. #184. They also cannot ignore that Schwartz also instructed Wong and Chaussy to provide him with confidential co-worker financial information, which was prohibited by a number of employer policies protecting confidential, proprietary and/or financial information—policies which Schwartz used in prosecution of this case <u>before</u> he requested Plaintiffs provide this information. *See id.*

Indeed, it appears that Mr. Schwartz continues to disregard his obligation to observe ethical canons, as well as his duty to behave in a competent and professional manner. *See, e.g., In re Fine Paper Antitrust Litig.*, 617 F.2d at 27. In response to the allegation of spoliated evidence, Mr. Schwartz told a Law 360[65] reporter, "<u>I</u> <u>would</u> <u>do</u> <u>it</u> again. There's nothing even vaguely unethical about it." *See* Defs' Request for Judicial Notice ("RJN"), Exh. A (emphasis added). These actions manifestly demonstrate the conflicts of interest that exist between putative class members, class counsel, Wong and Chaussy.

Just last month, a California district court found that Nichols Kaster had failed to even make a minimal showing for their clients under either the FLSA conditional certification standard or the Rule 23 class certification standard. On that basis, the Court denied Plaintiffs' <u>unopposed</u> motion for preliminary approval of class settlement. (Barrett ¶4, Exh. 1.) The Court chastised Plaintiffs,

---

[64]As is discussed more fully in Defendants' Motion for Sanctions (Dkt. #184), Defendants are requesting that the Court exercise its inherent authority to disqualify Nichols Kaster as counsel in this case for not only acting improperly, but for failing to avoid the appearance of impropriety. *Gas-A-Tron of Ariz. v. Union Oil Co.*, 534 F.2d 1322, 1324 (9th Cir. 1976). *See also Cargill Inc., v. Budine*, 2007 U.S. Dist Lexis 48405, at * 22 (E.D. Cal. June 22, 2007).

[65]Law 360 touts itself as the "only news source that covers the entire spectrum of practice areas every single day." Further, in a June 2008 survey of lawyers at top 250 law firms, Law 360 states that 79% of employment law practitioners read Law 360. *See http://www.law360.com/about* (last accessed on Sept. 17, 2008).

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFS' OPPOSITION TO RULE 23 CERT MOTION        23.        Case No. C 07 2446 MMC [ECF]

represented by Nichols Kaster, for "fail[ing] to address, under either of the two [FLSA conditional certification] approaches outlined above, whether the individuals in the collective action group [were] 'similarly situated'...." (*Id.*, Exh. ▢ at pg. 5, Section II.A.2.)  The Court also noted that "Plaintiffs have failed to address, much less establish, that they have met" Rule 23(a) and (b)." (*Id.*, Exh. 1 at pg. 7, Section II.B.)  Moreover, the Court admonished Plaintiffs' counsel for sending out premature class notices that "were insufficient in many respects.  Most glaringly, the Notice of Settlement incorrectly informed the recipients that 'the Court has given the class and settlement preliminary approval....' (*Id.*)

Although Plaintiffs' counsel states that Nichols Kaster is "highly experienced" in class litigation, the Court should note that Nichols Kaster has failed, in other cases, to make the minimal showings required for class purposes, even though those burdens were not "onerous."  *See, e.g., Parker v. Rowland Express, Inc.*, 492 F. Supp. 1159, 1164-65 (D. Minn. 2007).[66]  Moreover, instances of Nichols Kaster's questionable conduct have been highlighted by at least two courts.  *See id.* at 1166 n. 5; *Vaughn v. Oak Street Mortgage, LLC*, 2006 WL 1529178, *1 (M.D. Fla. May 30, 2006).  In *Parker*, Nichols Kaster was admonished by the court for arguing "that 'no court outside the Eleventh Circuit requires a showing that other potential plaintiffs wish to opt-in in order to prevail on a motion for conditional certification'" when the court's research indicated that several courts—including a case where Nichols Kaster was counsel—outside of the Eleventh Circuit had actually held that such a showing is necessary.  *Parker*, 492 F. Supp. at 1166 n. 5.  Moreover, in *Vaughn*, the court drew attention to the fact that Nichols Kaster had filed a "virtually identical" lawsuit on behalf of individuals who had originally consented to join a previous lawsuit, but had

---

[66] *See also Adair v. Wisconsin Bell, Inc.*, 2008 U.S. Dist. LEXIS 68942, *33 (E.D. Wisc. Sept. 11, 2008) (denying FLSA conditional certification for failure to identify company-wide policy and failure to demonstrate similarly situated); *Castle v. Wells Fargo Finan., Inc.*, 2008 WL 495705, *5 (N.D. Cal. Feb. 20, 2008) (same); *King v. West Corp.*, 2006 U.S. Dist. LEXIS 3926, *48 (denying FLSA conditional certification because of the highly individualized job duties performed by putative class members); *Williams v. Accredited Home Lenders, Inc.*, 2006 WL 2085312, *4-5 (N.D. Ga. July 25, 2006) (denying plaintiffs' request to have FLSA conditional certification motion because plaintiffs had "short circuited" the two-step FLSA process by sending out informal notices and denying FLSA certification for failure to prove the "similarly situated," "common policy," and "efficiency" requirements); *Smith v. Heartland Auto. Servs., Inc.*, 404 F.Supp.2d 1144, 1154 (D. Minn. 2005) (decertifying FLSA collective action because fact intensive exemption analysis required); *England v. New Century Finan. Corp.*, 370 F.Supp.2d 504, 511 (M.D. La. 2005) (denying FLSA conditional certification because individualized inquiry into job duties required).

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

failed to bring this fact to the attention of both courts with jurisdiction over the matters. *Vaughn*, 2006 WL 1529178, *1. At a minimum, class counsel's ethical transgressions (*i.e.*, instructions to destroy evidence and to steal confidential, proprietary or financial information to which neither class counsel nor Plaintiffs had a right) creates a direct conflict between putative class members, class counsel, Wong and Chaussy. These ethical breaches, coupled with Nichols Kaster's lack of diligence in other actions, demonstrate that Nichols Kaster's cannot adequately represent the proposed classes' interests in this case.

### E.    Plaintiffs' Unsupported Allegations of Intimidation Should Be Disregarded.

Vague assertions based on opinion, hearsay or other objectionable grounds must be disregarded by the courts.[67] Here, Plaintiffs, through their counsel, make ambiguous references to having "received many reports" from current employees of intimidation, fear of being "blackballed" in the industry, and concerns that any recovery in this case pales next to the perceived risk of losing their jobs. *See* Plfs' Motion 3:24-4:8, 8:4-9:3, 20:1-21:28. Although they claim "many reports" have been received, only one declaration has been submitted—an anonymous declaration that is refuted by at least six other named declarants. The only other "evidence" submitted by Plaintiffs consists of Schwartz' opinions and unsubstantiated claims of subjective fear from anonymous sources.[68] These references are not enough to support a "policy" argument for class certification.

## IV.    CONCLUSION

For the reasons discussed, Defendants respectfully request that Plaintiffs' motion be denied.[69]

---

[67] *See Orr v. Bank of Am.*, 285 F.3d 764, 778 (9th Cir. 2002) (hearsay statements inadmissible); *National Steel Corp. v. Golden Eagle Ins. Co.*, 121 F.3d 496, 502 (9th Cir. 1997) (declaration must state "evidentiary facts"); *Schuler v. Chronicle Broad. Co.*, 793 F.2d 1010, 1011 (9th Cir. 1986) (subjective opinions not relevant).
[68] As detailed more fully in Defendants' Objections to Evidence and Motion to Strike, the anonymous declaration and the portion of Schwartz' declaration discussing alleged anonymous sources should be disregarded by the Court. *See, e.g., Last Atlantis Capital LLC v. AGS Specialist Partners*, 533 F. Supp. 2d 828, 832 (N.D. Ill. 2008), *citing Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 757 (7th Cir. 2007) (declaration citing anonymous sources should be given little weight given that the declarant may have ulterior motives). *Cf. Illinois v. Gates*, 462 U.S. 213, 217 (1983).
[69] For the reasons stated above, Defendants urge the Court to deny Plaintiffs' Rule 23 class certification motion. If the Court grants Plaintiffs' motion, however, then it should at a minimum ensure that the content and method of distribution of the class notices conform to appropriate standards. In the unlikely event that the Court should grant Plaintiffs' Rule 23 class certification motion, Defendants respectfully request the opportunity to submit supplemental briefing to the Court about the adequacy and content of Plaintiffs' proposed notices, particularly because Defendants

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFS' OPPOSITION TO RULE 23 CERT MOTION        25.        Case No. C 07 2446 MMC [ECF]

Dated: September 19, 2008

/s/ *Michelle R. Barrett*
MICHELLE R. BARRETT
LITTLER MENDELSON
A Professional Corporation
Attorneys for Defendants
HSBC MORTGAGE CORPORATION (USA) and
HSBC BANK USA, N.A.

Firmwide:86620737.3 023404.1043

believe Plaintiffs' proposed notices contain information that is unacceptable and that should be modified.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFS' OPPOSITION TO RULE 23 CERT MOTION          26.          Case No. C 07 2446 MMC [ECF]

# TABLE OF CONTENTS

I.     SUMMARY OF ARGUMENT ...................................................1

II.    STATEMENT OF RELEVANT FACTS ...............................................1

    A.    Scope of The Lawsuit.................................................... 1

    B.    No Commonality or Typicality Exists Amongst Loan Officers. ................2

        1.    Practices and Application of Policies Differ Amongst Loan Officers, Managers, and/or Different Geographical Locations. .....2

            a.    Loan Officers Are Not Required To Work In Any Fixed Location For Any Particular Time. ........................................................................2

            b.    Compensation for Loan Officers Varies. ........................................................3

            c.    "Loan Officers" Focus Upon Different Mortgage Products, Loans and/or Markets. ........................4

            d.    Methods for Determining HBUS Branch "Assignments" Differ. ........................5

            e.    HMCU's Application Fee Waiver "Policy" Is Not Consistently Enforced. ........................5

        2.    Each Loan Officer Works Independently and Determines How He Will Do The Job. ........................6

III.   LEGAL ARGUMENT 7

    A.    Class Certification Under Rule 23 Requires A Rigorous Analysis. ...........7

    B.    Plaintiffs Fail To Satisfy Their Burden of Establishing Each of the Rule 23(a) Requirements. ........................8

        1.    Commonality:  Plaintiffs Cannot Rely Solely Upon the Fact that They Have Asserted the Same Claims on Behalf of All Class Members........................ 8

        2.    Plaintiffs' Claims Also Lack Sufficient Typicality With Those of the Proposed Class(es). ...........................13

        3.    Numerosity:  Plaintiffs Fail to Demonstrate That Joinder Is Impractical. ...........................15

        4.    Plaintiffs Cannot Adequately Represent Entire Classes of Loan Officers. ...........................16

    C.    Rule 23(b):  Individual Allegations Predominate Over the Class Allegations and Issues. ...........................18

1

1.    Any Common Issues Do Not Predominate Over the Numerous
      Issues Requiring Individual Proof. .................................................18

2.    Plaintiffs Cannot Show That Class Actions Are A Superior Method
      For The Adjudication of This Employment Dispute.................... 21

D.    Nichols Kaster Will Not Adequately Represent the Proposed Classes.... 22

E.    Plaintiffs' Unsupported Allegations of Intimidation Should Be
      Disregarded. ........................................................................................25

IV.    **CONCLUSION** ........................................................................**25**

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Adair v. Wisconsin Bell, Inc.*,
2008 U.S. Dist. LEXIS 68942 (E.D. Wisc. Sept. 11, 2008).........................24

*Allen v. Chicago Transit Auth.*,
2000 WL 1207408 (N.D. Ill. July 31, 2000) ...............................13

*Amchem Prod., Inc. v. Windsor*,
521 U.S. 591 (1997)..........................................7, 17, 18

*Bayles v. American Med. Response of Colorado, Inc.*,
950 F. Supp. 1053 (D. Colo. 1996)...................................10

*Berry v. County of Sonoma*,
30 F.3d 1174 (9th Cir. 1994),
*cert. denied*, 513 U.S. 1150 (1995).................................10

*Block v. City of Los Angeles*,
253 F.3d 410 (9th Cir. 2001) ......................................19

*Brinker Restaurant Corp. v. Superior Court*,
165 Cal. App. 4th 25 (2008).........................................1

*Brown v. Fed. Express Corp.*,
249 F.R.D. 580 (C.D. Cal. 2008).....................................1

*Burkhalter Travel Agency v. MacFarms Int'l, Inc.*,
141 F.R.D. 144 (N.D. Cal. 1991)...................................8, 21

*Calpine Corp. v. Ace Am. Ins. Co.*,
2007 WL 3010570 (N.D. Cal. Oct. 12, 2007) ......................19

*Cargill Inc. v. Budine*,
2007 U.S. Dist Lexis 48405 (E.D. Cal. June 22, 2007) ............23

*Castle v. Wells Fargo Finan., Inc.*,
2008 WL 495705 (N.D. Cal. Feb. 20, 2008).........................24

*Chamberlan v. Ford Motor Co.*,
402 F.3d 952 (9th Cir. 2005).......................................12

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991).................................................23

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983).................................................17

*Clausman v. Nortel Networks, Inc.*,
2003 U.S. Dist. Lexis 11501 (S.D. Ind. May 1, 2003)..............11

*Dawson v. Dovenmuehle Mort., Inc.*,
214 F.3d 196 (E.D. Pa. 2003).......................................19

*Diaz v. Electronics Boutique of Am., Inc.*,
2005 U.S. Dist. LEXIS 30382 (W.D.N.Y. Oct. 17, 2005).............13

*Doe v. Guardian Life Ins. Co.*,
145 F.R.D. 466 (N.D. Ill. 1992).....................................21

*Doniger v. Pacific Northwest Bell, Inc.*,
564 F.2d 1304 (9th Cir. 1977) ......................................1

*Edwards v. City of Long Beach*,
467 F. Supp. 2d 986 (C.D. Cal. 2006) ............................21, 22

*England v. New Century Finan. Corp.*,
370 F.Supp.2d 504 (M.D. La. 2005)..................................24

*Erickson v. Newmar Corp.*,
87 F.3d 298 (9th Cir. 1996).........................................23

*Forney v. TTX Co.*,
2006 U.S. Dist. LEXIS 30092 (N.D. Ill. Apr. 17, 2006) .............9

*Gas-A-Tron of Ariz. v. Union Oil Co.*,
  534 F.2d 1322 (9th Cir. 1976) ................................................................23
*General Tel. Co. of Southwest v. Falcon*,
  457 U.S. 147 (1982) ...............................................................................7
*General Tele. Co. of Southwest v. Falcon*,
  457 U.S. 147 (1982) ...............................................................................16
*General Telephone Co. of Northwest v. EEOC*,
  446 U.S. 318 (1980) ...............................................................................15
*Georgine v. Amchem Prod.*,
  83 F.3d 610 (3d Cir. 1996) ....................................................................17
*Hanlon v. Chrysler Corp.*,
  150 F.3d 298 (9th Cir. 1996) .................................................................22
*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) .............................................................7, 13
*Herring v. Hewitt Assoc., Inc.*,
  2007 WL 2121693 (D.N.J. July 24, 2007) ...........................................13
*Higginbotham v. Baxter Int'l, Inc.*,
  495 F.3d 753 (7th Cir. 2007) .................................................................25
*Hodgers-Durgin v. De La Vina*,
  199 F.3d 1037 (9th Cir. 1999) ...............................................................17
*Holt v. Rite Aid Corp.*,
  333 F. Supp. 2d 1265 (MD. Ala. 2004) ................................................9
*Huston v. Imperial Credit Commercial Mortgage Inv. Corp.*,
  179 F. Supp. 2d 1157 (C.D. Cal. 2001) .................................................23
*Hyderi v. Washington Mut. Bank*,
  235 F.R.D. 390 (N.D. Ill. 2006) ............................................................18
*Illinois v. Gates*,
  462 U.S. 213 (1983) ...............................................................................25
*In re Dalkon Shield Prod. Liab. Litig.*,
  693 F.2d 847 (9th Cir. 1982),
  *cert. denied*, 459 U.S. 1171 (1983) .......................................................7
*In re Fine Paper Antitrust Litig.*,
  617 F.2d 22 (3d Cir. 1980) ...............................................................22, 23
*In re Paxil Litig.*,
  212 F.R.D. 539 (C.D. Cal. 2003) ..........................................................1
*In re Wells Fargo Home Mortgage Overtime Pay Litigation*,
  527 F. Supp. 2d 1053 (2007) ...........................................................11, 12
*Jiminez v. Domino's Pizza, Inc.*,
  238 F.R.D. 241 (C.D. Cal. 2006) .....................................................11, 19
*Kennedy v. Allied Mut. Ins. Co.*,
  952 F.2d 262 (9th Cir. 1991) .................................................................19
*Kenny v. Supercuts, Inc.*,
  2008 U.S. Dist. Lexis 43073 (N.D. Cal. June 2, 2008) ........................1
*King v. West Corp.*,
  2006 U.S. Dist. LEXIS 3926 (D. Neb. Jan. 13, 2006) .....................9, 24
*Last Atlantis Capital LLC v. AGS Specialist Partners*,
  533 F. Supp. 2d 828 (N.D. Ill. 2008) ....................................................25
*Lerwill v. Inflight Motion Pictures, Inc.*,
  582 F.2d 507 (9th Cir. 1978) ............................................................16, 22
*Leuthold v. Destination Am., Inc.*,
  224 F.R.D. 462 (N.D. Cal. 2004) .....................................................21, 22
*Maddock v. KB Homes, Inc.*,
  248 F.R.D. 229 (C.D. Cal. 2007) .....................................................11, 20
*Marx v. Friendly Ice Cream Corp.*,
  380 N.J. Super. 302 (2005) ...................................................................12

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

**DEFS' OPPOSITION TO RULE 23 CERT MOTION**      iv.      **Case No. C 07 2446 MMC [ECF]**

1  *McClain v. Leona's Pizzeria, Inc.*,
   222 F.R.D. 574 (N.D. Ill. 2004)..................................................................................22
2  *McNichols v. Loeb Rhoades & Co., Inc.*,
   97 F.R.D. 331 (N.D. Ill. 1982).............................................................................14, 16
3  *Miller v. Hygrade Food Prods. Corp.*,
   198 F.R.D. 638 (E.D. Penn. 2001)...........................................................................21
4  *Morales v. Gonzales*,
   472 F.3d 689 (9th Cir. 2007).................................................................................8, 10
5  *Morisky v. Public Serv. Elec. and Gas Co.*,
   111 F. Supp. 2d 493 (D.N.J. 2000)...........................................................9, 13, 20, 21
6  *National Steel Corp. v. Golden Eagle Ins. Co.*,
   121 F.3d 496 (9th Cir. 1997)....................................................................................25
7  *Navellier v. Sletten*,
   262 F.3d 923 (9th Cir. 2001)
8  *cert. denied*, 536 U.S. 941 (2002)...........................................................................18
   *Nordquist v. McGraw Hill Broadcasting Co.*,
9  32 Cal. App. 4th 555 (1995)......................................................................................20
   *Orr v. Bank of Am.*,
10 285 F.3d 764 (9th Cir. 2002)....................................................................................25
   *Palumbo v. Tele-Comm., Inc.*,
11 157 F.R.D. 129 (D.D.C. 1994)..................................................................................23
   *Parker v. Rowland Express, Inc.*,
12 492 F. Supp. 1159 (D. Minn. 2007)...........................................................................24
   *Perine v. ABF Freight*,
13 457 F. Supp. 2d 1004 (C.D. Cal. 2006)......................................................................20
   *Perry v. U.S. Bank*,
14 2001 U.S. Dist. LEXIS 25050 (N.D. Cal. Oct. 17, 2001)......................................11, 20
   *Pfohl v. Farmers Ins. Group*,
15 2004 U.S. Dist. LEXIS 6447 (C.D. Cal. Mar. 4, 2004)...............................................9
   *Porter v. Nations Credit Cons. Disc. Co.*,
16 229 F.R.D. 497 (E.D. Pa. 2005).................................................................................21
   *Ramirez v. Yosemite Water Co., Inc.*,
17 20 Cal. 4th 785 (1999) ..................................................................10, 11, 12, 19
   *Rodriguez v. Gates*,
18 2002 WL 1162675 (C.D. Cal. May 30, 2002)............................................................14
   *Rodriguez v. The Texan, Inc.*,
19 2001 U.S. Dist. LEXIS 24652 (N.D. Ill. 2001) ........................................................22
   *Rutledge v. Electric Hose & Rubber Co.*,
20 511 F.2d 668 (9th Cir. 1975).......................................................................................8
   *Savage v. UNITE HERE*,
21 2008 WL 1790402 (S.D.N.Y. Apr. 17, 2008) ..........................................................13
   *Schuler v. Chronicle Broad. Co.*,
22 793 F.2d 1010 (9th Cir. 1986)...................................................................................25
   *Simer v. Rios*,
23 661 F.2d 655 (7th Cir. 1981)......................................................................................11
   *Smith v. Heartland Auto. Servs., Inc.*,
24 404 F.Supp.2d 1144 (D. Minn. 2005)........................................................................24
   *Spencer v. Central States, Southeast and Southwest Areas Pension Fund*,
25 778 F. Supp. 985 (N.D. Ill. 1991)..............................................................................13
   *Sprague v. General Motors Corp.*,
26 133 F.3d 388 (6th Cir.),
   *cert. denied* 524 U.S. 923 (1998)............................................................................13
27 *State Sec. Ins. Co. v. Frank B. Hall & Co.*,
   95 F.R.D. 496 (N.D. Ill. 1982) .................................................................................21
28 *Synopsys, Inc. v. Magma Design Automation*,

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

**DEFS' OPPOSITION TO RULE 23 CERT MOTION**          v.          **Case No. C 07 2446 MMC [ECF]**

2007 U.S. Dist. LEXIS 6814 (N.D. Cal. Jan. 31, 2007) ..................................................19
*Szabo v. Bridgeport Machs., Inc.,*
249 F.3d 672 (7th Cir. 2001) .........................................................................................18
*Thiebes v. Wal-Mart Stores, Inc.,*
2002 U.S. Dist. LEXIS 664 (D. Or. Jan. 9, 2002) ........................................................16
*Tierno v. Rite Aid Corp.,*
2006 U.S. Dist. Lexis 71794 (N.D. Cal. Aug. 31, 2006) ..............................................11
*Trinh v. JP Morgan Chase & Co.,*
2008 WL 1860161 (S.D. Cal. Apr. 22, 2008) .................................................................9
*Valentino v. Carter-Wallace, Inc.,*
97 F.3d 1227 (9th Cir. 1996) ...........................................................................................7
*Vaughn v. Oak Street Mortgage, LLC,*
2006 WL 1529178 (M.D. Fla. May 30, 2006) .........................................................24, 25
*Vinole v. Countrywide Home Loans, Inc.,*
246 F.R.D. 637 (S.D. Cal. 2007) ................................................................................8, 12
*W. States Wholesale, Inc. v. Synthetic Indus., Inc.,*
206 F.R.D. 271 (C.D. Cal. 2002) ...................................................................................18
*Wal-Mart Stores, Inc. v. Visa USA Inc.,*
280 F.3d 124 (2d Cir. 2001)
*cert. denied*, 536 U.S. 917 (2002) .................................................................................18
*Walsh v. IKON Office Solutions, Inc.,*
148 Cal. App. 4th 1440 (2007) .......................................................................................11
*Williams v. Accredited Home Lenders, Inc.,*
2006 WL 2085312 (N.D. Ga. July 25, 2006) .................................................................24
*Williams v. Agilent Tech.,*
2004 U.S. Dist. LEXIS 24972 (N.D. Cal. Dec. 3, 2004) .................................................8
*Zinser v. Accufix Research Inst., Inc.,*
253 F.3d 1180 (9th Cir. 2001) ..........................................................................................8

**Statutes**
12 N.Y.C.C.R. 142-2.2.............................................................................................17, 19
12 N.Y.C.R.R. 142-2.2.............................................................................................10, 19
29 C.F.R. § 541.2...............................................................................................................13
29 C.F.R. § 541.601(b)(3).................................................................................................16
8 Cal. Code Regs. § 11040(1)(A) ...............................................................................10, 19
8 Cal. Code Regs. § 11040(2)(M)................................................................................10, 19
8 Cal. Code Regs. § 11040(3)(D)................................................................................10, 19
8 Cal. Code. Regs. § 11040................................................................................................19
Cal. Lab. Code § 1171.......................................................................................................10
Fed. R. Civ. P. 23.........................................................................................................passim
Fed. R. Civ. P. 23(a)....................................................................................................passim
Fed. R. Civ. P. 23(b)...........................................................................................7, 18, 24
Fed. R. Civ. P. 23(b)(3)..................................................................................7, 18, 20, 21
Fed. R. Civ. P. 30(b)(6)....................................................................................................19
Fed. R. Civ. P. Rule 23(f)............................................................................................11, 12
N.J. Admin. Code § 12:56-7.2...................................................................................10, 17, 19
N.J. Admin. Code § 7.4..............................................................................................10, 17, 19

**Other Authorities**
Fair Labor Standards Act ...............................................................................................passim
Wright, Miller & Kane,
*Federal Practice and Procedure,*
Civil 2d § 1762 (2005) ...................................................................................................15

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

**DEFS' OPPOSITION TO RULE 23 CERT MOTION**      vi.      **Case No. C 07 2446 MMC [ECF]**

TA
BL
E
OF
AU
TH
OR
ITI
ES

**Page**