1  GEORGE J. TICHY, II, Bar No. 041146
   MICHELLE R. BARRETT, Bar No. 197280
2  KIMBERLY L. OWENS, Bar No. 233185
   JUSTIN T. CURLEY, Bar No. 233287
3  LITTLER MENDELSON
   A Professional Corporation
4  650 California Street, 20th Floor
   San Francisco, California 94108
5  Telephone: 415.433.1940
   Facsimile: 415.399.8490
6  E-mail: gtichy@littler.com, mbarrett@littler.com,
   kowens@littler.com, jcurley@littler.com
7
8  Attorneys for Defendants
   HSBC MORTGAGE CORPORATION (USA) AND
9  HSBC BANK USA, N.A.

10                UNITED STATES DISTRICT COURT

11              NORTHERN DISTRICT OF CALIFORNIA

12                   SAN FRANCISCO DIVISION

13

| | |
|---|---|
| Philip Wong, Frederic Chaussy, and Leslie Marie Shearn, individually, on behalf of all others similarly situated, and on behalf of the general public,<br><br>            Plaintiffs,<br><br>    v.<br><br>HSBC Mortgage Corporation (USA); HSBC Bank USA, N.A.; and DOES 1 through 50, inclusive,<br><br>            Defendants. | Case No. C 07 2446 MMC [ECF]<br><br>**DECLARATION OF MICHAEL O'ROURKE IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION, PRODUCTION OF UPDATED CLASS LIST, AND PARTIAL SUMMARY JUDGMENT**<br><br>Date:        February 8, 2008<br>Time:        9:00 a.m.<br>Courtroom:   7 (19th Floor)<br>Judge:       Hon. Maxine M. Chesney<br><br>Complaint Filed: June 29, 2007 (Amended)<br>Trial Date:     Not Yet Set |

DECLARATION OF MICHAEL O'ROURKE                                    Case No. C 07 2446 MMC [ECF]

I, Michael O'Rourke, hereby declare and state:

1. I have personal knowledge of the facts set forth below. If called as a witness, I could and would testify competently to the matters set forth in this declaration.

2. I have been employed by HSBC Mortgage Corporation (USA) ("HSBC Mortgage") for almost nineteen (19) years. My job title is Regional Sales Manager for the Bronx, Brooklyn and Staten Island. I have held this title for two (2) years.

3. Currently, I manage twenty-nine (29) loan officers and two (2) sales managers. The number of loan officers I have managed has varied from nineteen (19) to thirty (30).

4. My employer is HSBC Mortgage, which is a separate entity from HSBC Bank U.S.A., N.A. ("HSBC Bank"). The manager to whom I report, Debbie Dezego, is also an employee of HSBC Mortgage. I do not report to any manager of HSBC Bank, nor do any of the loan officers whom I manage. They only report to me, and not an HSBC Bank branch manager.

5. All the loan officers whom I manage are employees of HSBC Mortgage. I specifically tell my loan officers that that they do not work for HSBC Bank, and that their responsibility is to work with the Bank branches, not for them, to provide loans to customers. HSBC Mortgage Corporation (USA) is listed as the employer name on the business cards of all loan officers whom I supervise, and HSBC Mortgage is also indicated on their paychecks and W-2 forms.

6. I tell loan officers whom I supervise that it is totally up to them how and where they spend their time during the week. I tell them that they control their own schedule. I tell my loan officers that the HSBC Bank branches are merely referral sources and how much time the loan officers spend at the branches is up to them. Some of my loan officers make appointments with the Bank branches, and some may just drop by during the week. They are not required to spend any time at particular branches during the week. I do not require my loan officers to call in to the Bank branches during the week, but as a referral source I recommend that they check in with the Bank branch twice a week. I tell my loan officers that they should treat the Bank branch like a realtor or real estate attorney, in that it is a referral source for them.

7. I do not require my loan officers to keep a schedule or a calendar, nor do I require them to document what they have done for the day. I do not track the hours that my loan

DECLARATION OF MICHAEL O'ROURKE   1.   Case No. C 07 2446 MMC [ECF]

officers work. However, for loan officers who are lacking in loan production, I will require them to provide a call report to their sales manager for coaching purposes to improve their loan production.

8. I tell my loan officers that they set their own hours. I do not require my loan officers to tell me where they are each day. How they spend their work day is completely up to them. They may work as little as they like or as much as they like. When I am recruiting for loan officers, I tell women that this is a great career for working mothers because of the flexibility to set your own hours and the ability to work when you want to.

9. I tell my loan officers that they are "free lancers," and how they develop a loan business is up to them. They may choose to network with Bank branch managers, financial advisors, bank tellers, accountants, whatever they think works for them.

10. In my region, we have what are called "up days," also known as "phone days," which are days in which a loan officer will answer telephone calls at an HSBC Mortgage office from potential mortgage customers who call HSBC Mortgage's 1-800 number. Participation in up days is purely on a voluntary basis. Whether or not a loan officer participates in up days is based on his or her personal preference. Some loan officers may consider up days a good way to obtain leads, while some loan officers may choose to spend their time differently. If a loan officer wishes to participate in up days, I will schedule him or her to do this for about one up day per month.

11. I have staff meetings occasionally, but generally no more than once per month. Usually my two sales managers run these meetings.

12. I always notify my loan officers about networking events that I learn about. I do not require my loan officers to attend any such events. How my loan officers obtain leads and referrals is within their discretion.

13. All of my loan officers have laptops and mobile phones. My loan officers are not required to have a home office.

14. Within the New York region, how loan officers utilize sales assistants varies from other regions because we have very few sales assistants for all of our loan officers. Accordingly, we have set our own procedures and parameters for how sales assistants are utilized by the loan officers and for what is expected of the sales assistants.

Case 3:07-cv-02446-MMC   Document 205-19   Filed 09/19/2008   Page 4 of 6
Case 3:07-cv-02●●-MMC   Document 92   Filed 01/1●/●008   Page 4 of 4

15. I provide training to the loan officers whom I manage on an almost daily basis, and the training I provide depends on the individual loan officer. Additionally, how I apply the progressive discipline policy varies by each loan officer, and I will diverge from the progressive discipline policy as circumstances warrant. I view the progressive discipline policy as guidance, and I will often consult with my boss and/or Human Resources when I am making disciplinary decisions with respect to loan officers.

16. Performance goals also vary by region and by manager. I will adjust performance goals based upon the market and the experience and individual compensation goals of my loan officers.

17. There are also variances with respect to compensation of loan officers. For example, I have the discretion to grant loan officers a guarantee of money or a "forgivable draw" when they start. I have granted a forgivable draw as high as $35,000. Additionally, sometimes I will provide a loan officer a higher draw. I have provided loan officers a draw of up to $50,000.

18. How much time my loan officers spend analyzing their clients' respective financial situations to determine what mortgage is appropriate varies widely between clients. For example, if a client is self-employed, the loan officer will spend a significant amount of time analyzing that client's financial picture to determine the best mortgage for that client.

19. In 2007, my top two loan officers earned between $350,000 and $360,000, over half of which came from commissions.

I declare under penalty of perjury under the laws of the States of California and New York and the United States of America that the foregoing declaration is true and correct to the best of my personal knowledge. Executed this 18th day of January, 2008, in Cross River, New York.

MICHAEL O'ROURKE

LITTLER MENDELSON
DECLARATION OF MICHAEL O'ROURKE        3.        Case No. C 07 2446 MMC [ECF]

Lew, Loretta M.

| | |
|---|---|
| From: | ECF-NDCA |
| Sent: | Friday, January 18, 2008 9:22 PM |
| To: | efiling@cand.uscourts.gov |
| Subject: | Activity in Case 3:07-cv-02446-MMC Wong et al v. HSBC Mortgage Corporation (USA) et al Declaration in Support |

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing.

U.S. District Court
Northern District of California
**Notice of Electronic Filing or Other Case Activity**

NOTE: Please read this entire notice before calling the Help Desk. If you have questions, please email the Help Desk by replying to this message; include your question or comment along with the original text.

Please note that these Notices are sent for all cases in the system when any case activity occurs, regardless of whether the case is designated for e-filing or not, or whether the activity is the filing of an electronic document or not.

If there are **two** hyperlinks below, the first will lead to the docket and the second will lead to an e-filed document. *If there is no second hyperlink, there is no electronic document available.*
See the FAQ posting 'I have a Notice of Electronic Filing that was e-mailed to me but there's no hyperlink...' on the ECF home page at https://ecf.cand.uscourts.gov for more information.

The following transaction was received from by Owens, Kimberly entered on 1/18/2008 9:22 PM PST and filed on 1/18/2008

| | |
|---|---|
| Case Name: | Wong et al v. HSBC Mortgage Corporation (USA) et al |
| Case Number: | 3:07-cv-2446 |
| Filer: | HSBC Mortgage Corporation (USA) |
| | HSBC Bank USA, N.A. |

Document Number: 92

**Docket Text:**
Declaration of Michael O'Rourke in Support of [78] Memorandum in Opposition,,,, filed byHSBC Mortgage Corporation (USA), HSBC Bank USA, N.A.. (Related document(s)[78]) (Owens, Kimberly) (Filed on 1/18/2008)

**3:07-cv-2446 Notice has been electronically mailed to:**

Michelle R. Barrett    mbarrett@littler.com, RYee@littler.com

Matthew C Helland    helland@nka.com, assistant@nka.com

Paul J. Lukas    lukas@nka.com, assistant@nka.com

1/22/2008

Donald H. Nichols     nichols@nka.com, assistant@nka.com

Kimberly Lynn Owens     kowens@littler.com

Bryan Jeffrey Schwartz     schwartz@nka.com, assistant@nka.com

Timothy C Selander     selander@nka.com

George Joseph Tichy, II     gtichy@littler.com, LChow@littler.com

**3:07-cv-2446 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** L:\EFILE\Barrett, Michelle R\HSBC-Wong\O'Rourke Dec.pdf
**Electronic document Stamp:**
[STAMP CANDStamp_ID=977336130 [Date=1/18/2008] [FileNumber=4068980-0]

[0122872920d45a95105e69e57efc4f5e2abaa37e91c8212ca19bb31a64729885874ce
f1b0df3ae55272db76a16d3a0b02695b36f742ad330ed4cc28a231e0d05]]

1/22/2008