GEORGE J. TICHY II, Bar No. 041146
MICHAEL F. MCCABE, Bar No. 111151
MICHELLE R. BARRETT, Bar No. 197280
KIMBERLY L. OWENS, Bar No. 233185
LITTLER MENDELSON
A Professional Corporation
650 California Street, 20th Floor
San Francisco, California 94108
Telephone:   (415) 433-1940
Facsimile:    (415) 399-8490
E-mail: gtichy@littler.com, mmccabe@littler.com,
mbarrett@littler.com, kowens@littler.com

Attorneys for Defendants

HSBC MORTGAGE CORPORATION (USA) and
HSBC BANK USA, N.A.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| Philip Wong, Frederic Chaussy, and Leslie Marie Shearn, individually, on behalf of all others similarly situated, and on behalf of the general public, <br><br> Plaintiffs, <br><br> v. <br><br> HSBC Mortgage Corporation (USA); HSBC Bank USA, N.A.; and DOES 1 through 50, inclusive, <br><br> Defendant. | Case No. C 07 2446 MMC [ECF] <br><br> DECLARATION OF PATRICIA O'CONNOR IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION FED. R. CIV. P. 23 <br><br> Date:        October 10, 2008 <br> Time:       9:00 A.M. <br> Courtroom: 7 (19th Floor) <br> Judge:      Hon. Maxine M. Chesney |

I, Patricia O'Connor, hereby declare and state:

1. I am over the age of 18, and I have personal knowledge of the facts listed below. If called as a witness, I would testify to the following.

2. I work for HSBC Mortgage Corporation USA ("HMCU") as a Retail Mortgage Lending Consultant, which is commonly referred to as a "loan officer." I have worked for HMCU from 1996 to the present. I am assigned to the Loan Production Office ("LPO") located at 534 Broadhollow Road, Melville, New York 11747. On occasion, I also work with HSBC Bank

DECL. OF P. O'CONNOR/OPP. TO CLASS CERT.                                       Case No. C 07 2446 MMC [ECF]

USA, N.A. ("HBUS") bank branches located in Smithtown, Port Jefferson and East Setauket, New York.

3. In addition to my position of Retail Mortgage Lending Consultant, I also worked as a Premier Mortgage Sales Officer for about one year. That position required me to focus more specifically on HBUS' "premier" banking customers. In that job, I was paid a guaranteed minimum draw of $90,000 per year plus additional commissions. My total annual income as a Premier Mortgage Sales Officer was approximately $200,000.

4. As a loan officer, I am principally responsible for originating mortgage loans and overseeing these loans to closing, servicing the HMCU's customers related to these mortgage products, identifying sources of business, and building my own customer base. It's my job to make sure the customer "gets to the closing table." I view the entire operation as a cycle – I am involved from beginning to end. And for me, in particular, the "post closing" phase is critically important. I touch base with all my clients to make sure things went well and then use that opportunity to obtain referrals to their family and friends.

5. To generate my business and potential customers, I rely on an extensive source of referrals from previous clients as well as referral relationships. I concentrate my marketing efforts, in particular, on women's networking financial groups. I have also built up, over the years, referral sources from attorneys and other financial advisors. I also employ my own assistant, who works for me approximately two days per week, to perform a variety of marketing activities, including targeted mailings. Combined, these sources are responsible for approximately 75% of my book of business.

6. Another source of business comes from the HBUS bank branches that I service. These branches represent approximately 25% of my business. I generally meet approximately 10% of my clients at branches. At most, I spend about two hours at a bank branch when I do go there. The rest of my client meetings occur in various locations other than an HBUS bank branch or the LPO. I do not meet customers at my home office. The decision about where and when to meet clients is strictly for client convenience. I generally like to meet a client "face-to-face" at least once during the loan process.

DECL. OF P. O'CONNOR/OPP. TO CLASS CERT.    2.    Case No. C 07 2446 MMC [ECF]

7. I work one to two times per month in the Melville LPO on "floor duty," which means I am available to assist customers and to answer questions.

8. By choice, I tend to work long hours during the week and on occasional Saturdays. I do not work on Sundays. Since I am a single mother of a teenager, I try to reserve some weekend time for him.

9. On occasions, I will work with one of my referring Real Estate agents at an "Open House" event. For that event, I will go to the house being sold and discuss with potential buyers the types of HMCU mortgage products available.

10. As one can tell from my referral sources, I am free to identify potential customers outside of the HBUS bank branch network. HMCU does not insist on setting my schedule; rather, I set my own schedule. In fact, other than suggesting that I go to certain networking events and requiring me to attend limited mandatory meetings, I am free to decide how to spend my time working and when to do my job. I view this job as having my own business under the HMCU umbrella of products. Management leaves me alone to write my business. This "hands off" approach lets me succeed in my business, as is evidenced by the fact that I am the top producer in my region.

11. Kathleen Lamb is my manager. She requires that I provide her with a weekly report of my proposed schedule for the following week and that I attend a monthly meeting. We also generally have telephone or e-mail contact approximately 2-3 times per week if I need assistance with one of my loans. If we want to contact one another, we generally call each other from the road.

12. To my knowledge and based upon my experience at HMCU, no policies and/or procedures exist regarding how I go about conducting my sales activities. Specifically, except for attending a monthly meeting and contacting my assigned branches, no one regulates how I spend my time.

13. HMCU expects its loan officers to be entrepreneurial and to be out in the market in order to be productive and make sales. The concept of being a self-starter or

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

DECL. OF P. O'CONNOR/OPP. TO CLASS CERT.    3.    Case No. C 07 2446 MMC [ECF]

1 entrepreneurial is just common sense. If you don't get out to see customers and to find your own
2 business, you are not properly doing your job and you won't succeed.

3     14. Because no two loans or customers are the same, I have to work closely with
4 my customers to identify the right loan products for them. It is absolutely necessary that I do an
5 individualized evaluation of each potential customer including credit status, ability to repay the loan,
6 comfort level of risk, etc. My customers rely on me to discuss and recommend HMCU product
7 options.

8     15. I remain personally involved and engaged in the entire loan process from
9 inception up to and including closing. As discussed above, my involvement in the loan process is
10 unique or different from how other loan officers conduct their business, because I put significant
11 emphasis on post-closing contact with customers. By doing this, I grow my business through new or
12 returning referrals. This is something that I have independently decided to do.

13     16. While I try to keep the number of days per week I work predictable, I have to
14 be flexible and meet my customers' needs. Some loans go much more smoothly than others and take
15 less time than others. Thus, depending on the circumstances, my hours and method of doing my job
16 may change.

17     17. Because I need to be out in the marketplace, I do not generally work from a
18 fixed location. While my computer access is home based, I have access to my business anytime and
19 anywhere via my Blackberry and laptop.

20     18. I make my schedule and set my hours. As previously stated, I am the #1
21 producer in my region and the harder I work, the more money I make.

22     19. As a loan officer, my average yearly income is between $200,000 and
23 $250,000. Currently, I am paid on a draw and incentive commission basis.

24     20. HMCU requires that customer application fees not be waived. Up until about
25 two years ago, in our region, application fees could be waived. This was a decision made by the
26 manager in my area. Currently, if I do not take an application fee and the loan does not close, my
27 incentive compensation is reduced by the amount of loan application fee. This has happened to me

28

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

DECL. OF P. O'CONNOR/OPP. TO CLASS CERT.      4.      Case No. C 07 2446 MMC [ECF]

on occasion, but not consistently. If I do not take an application fee and the loan closes, the customer pays the fee at closing and my incentive compensation is not reduced.

21. I believe that the flexibility and independence I have to do my job the way that I decide to do it is a key to my success. If I were limited to a certain schedule or location, I would not be as successful as I am.

22. I have chosen not to join this lawsuit because I believe the claims are bogus. Loan officers know from the beginning that overtime pay is not available. Loan officers can choose how much to work based on how much money they want to make. The nature of sales is that the harder you work, the more you make. Because loan officers can choose when and how much to work, the Plaintiffs in this lawsuit did not have to work nights or weekends. If they did that, it was their choice, and I think it is ridiculous that they are now seeking overtime compensation. I also find this lawsuit frustrating because I believe it is leading to increased micromanagement. I enjoy the flexibility regarding when and where to work and do not want that to change as a result of this lawsuit. No manager at HMCU has ever threatened that I could lose my job if I joined this lawsuit or otherwise discouraged me from joining. I have chosen not to join the lawsuit because I do not agree with it.

I declare under penalty of perjury under the laws of the State of New York and the United States of America that the foregoing declaration is true and correct to the best of my personal knowledge. Executed this 17th day of September 2008 in Kings Park, Long Island, New York.

*/s/ Patricia O'Connor*
PATRICIA O'CONNOR