1

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PHILIP WONG, FREDERICK CHAUSSY, )
and LESLIE MARIE SHEARN, )
individually, on behalf of all ) Case No. 07-2446
others similarly situated, and )
on behalf of the general public )
      Plaintiffs, )
  vs. )
HSBC MORTGAGE CORPORATION )
(USA), )
      Defendants. )

      The videographic deposition of DAVID GATES, called for examination pursuant to the Rules of Civil Procedure for the United States District Courts pertaining to the taking of depositions, taken before GINA M. LUORDO, a notary public within and for the County of Cook and State of Illinois, at 200 North LaSalle Street, Illinois, on the 11th day of September, 2007, at the hour of 9:02 a.m.

Reported by:  Gina M. Luordo, CSR, RPR, CRR
License No.:  084-004143

Case 3:07-cv-02446-MMC   Document 205-37   Filed 09/19/2008   Page 2 of 17

David Gates 30(b)(6)  9/11/2007
Phillip Wong, et al. v. HSBC Mortgage Corporation, et al.

29

1   is selling loans, right?
2        A.   That is correct.
3        Q.   And as such, they have a -- they operate
4   based on a retail mortgage consultant sales
5   commission plan, all of your loan officers?
6        A.   That is correct.
7        Q.   And is it pretty typical, as in this
8   instance with Mr. Chaussy, that the first six
9   months or so of employment, a loan officer -- and
10  when I use loan officer, I'm referring to that
11  whole grouping of titles we described earlier.
12  It's shorter than retail mortgage lending
13  consultant.
14            Is it typical for a loan officer that the
15  first six months or so, they'll receive some sort
16  of a regular salary after which they'll be on a
17  strictly commission basis?
18       A.   No.
19       Q.   It's not typical?
20       A.   There is no typical hire plan.  We
21  actually -- depending upon the person and the
22  experience level that we set, we can bring somebody
23  on on a straight commission plan with no fixed
24  unforgivable draw.  It could be a month.  It could
25  be two months.  It could be six months.  We've even

Case 3:07-cv-02446-MMC   Document 205-37   Filed 09/19/2008   Page 3 of 17
David Gates 30(b)(6)  9/11/2007
Phillip Wong, et al. v. HSBC Mortgage Corporation, et al.

30

1  done it up to a year.
2       It's all dependent upon the experience
3  level that has happened. It's very typical in the
4  industry to do this. We tend to be a little more
5  conservative because some people pay signing
6  bonuses. We don't choose to do that. We like to
7  put that into a salary. The mortgage industry has
8  gone to that type of recruitment strategy.
9       Q.   And salary and forgivable draw, you would
10 consider those interchangeable terms for the
11 purposes of your business?
12      A.   Yes.
13      Q.   And after whatever period of time is
14 agreed upon with the employee, be it a month or in
15 Mr. Chaussy's case, six months, at least according
16 to his offer letter, the person goes to straight
17 commission after the negotiated period of salary or
18 forgivable draw expires; is that right?
19      A.   That's typically what would happen, yes.
20      Q.   And on straight commission, there's no --
21 there's no guarantee that the employee will earn
22 anything during that period of time that they're
23 working; is that right?
24      A.   No. We would set them up with a
25 recoverable draw, as this letter would reference,

Case 3:07-cv-02446-MMC   Document 205-37   Filed 09/19/2008   Page 4 of 17

David Gates 30(b)(6)  9/11/2007
Phillip Wong, et al. v. HSBC Mortgage Corporation, et al.

31

1   after that, and that is just an advance against
2   commissions.
3       Q.   The recoverable draw --
4       A.   But that's --
5       Q.   I'm sorry.  Go ahead.
6       A.   That is not a fixed number depending upon
7   the performance of the employee.  We have ranges,
8   but that we can adjust in any point in time because
9   I'm not going to put an employee in a position with
10  a draw where they get in over their heads.
11      Q.   This recoverable draw, is that -- if
12  somebody -- if Mr. Chaussy, for example, failed to
13  make a sale, would he be required to reimburse HSBC
14  for the value of the recoverable draw?
15      A.   I don't understand the question, so could
16  you please rephrase it?
17      Q.   It just reflects my ignorance of sales.
18      A.   That's okay.
19      Q.   Recoverable draw, if Mr. Chaussy --
20  let's -- in Mr. Chaussy's case, the record will
21  show elsewhere, his recoverable draw, after he went
22  to recoverable draw, was $23,000 annually.  So if
23  you do the math, it's something shy of $2,000 a
24  month.
25           So if he failed in March of 2007, for

Case 3:07-cv-02446-MMC   Document 205-37   Filed 09/19/2008   Page 5 of 17
David Gates 30(b)(6)  9/11/2007
Phillip Wong, et al. v. HSBC Mortgage Corporation, et al.

52

1   the country.
2   Q. And do they -- are they primarily working
3   out of their homes, or do they spend most of their
4   time out at customer sites, or how do they operate?
5   A. They have a book of business where they're
6   out -- they're out of their office calling on
7   mortgage brokers and mortgage banks throughout
8   their assigned territories, so they're on-the-road
9   sales reps.
10  Q. Okay. And the loan officers primarily
11  operate out of those -- out of the branches?
12  A. They have touchdown spaces within the
13  mortgage offices in which Mortgage Corp. -- the
14  39 Mortgage Corp. offices.
15  Q. What's a touchdown space?
16  A. Some of them have -- depending upon the
17  office, the offices are configured substantially
18  different, I guess. In our big major metropolitan
19  areas like New York City where we've got a lot of
20  concentration, you may have an office of 20 or so
21  loan officers, and there may be desk space for 10
22  or 12 because they're in and out of the office all
23  day, so they may not all have permanent desks in
24  those offices because of space constraints. And
25  this is not a -- we don't -- we want people -- this

Case 3:07-cv-02446-MMC    Document 205-37    Filed 09/19/2008    Page 6 of 17
David Gates 30(b)(6)  9/11/2007
Phillip Wong, et al. v. HSBC Mortgage Corporation, et al.

53

1  is a place where they can go and conduct business,
2  make phone calls, meet clients, but it's not a desk
3  that they go to every single day.
4        In other offices that are smaller, there
5  may be two or three people working out of the
6  office, and we have desk space.  There's enough
7  space in those offices so that they each have a
8  desk to work out of.  So when I mean touchdown,
9  they share desks in certain offices.  In other
10 offices, they don't.
11     Q.   Okay.  Now, while we're on the subject of
12 the physical location of the loan officers, I'll
13 show you a document, Exhibit No. 8 of the
14 deposition.
15              (Whereupon, GATES Deposition
16              Exhibit No. 8 was marked for
17              identification.)
18 BY MR. SCHWARTZ:
19     Q.   This is a five-page document, which begins
20 with an e-mail from Ms. Ku, who you identified
21 earlier, and is directed to, among others, two of
22 our named plaintiffs, Mr. Wong and Mr. Chaussy.
23 And then it contains an attachment with branch
24 schedules for the first four months of 2007.
25              Is this fairly typical that when your loan

Case 3:07-cv-02446-MMC    Document 205-37    Filed 09/19/2008    Page 7 of 17
David Gates 30(b)(6)  9/11/2007
Phillip Wong, et al. v. HSBC Mortgage Corporation, et al.

54

1  officers are not in the Mortgage Corp. offices that
2  they are out at the HSBC branch offices?
3      A.   We have varying degrees of coverage for
4  branch offices, so not all loan officers have
5  branches where they can go get mortgage referrals
6  out of.  I'm sorry about that.  My phone was going
7  off.  I just turned if off.  That was the only
8  reason I reached into my pocket.
9           We have New York, Florida, California with
10 different concentrations of branches, and in
11 California, this must be how they've assigned how
12 they're going to help support those branches and
13 get leads out of those branches.  Whereas, in New
14 York, there may be a loan officer assigned to one
15 branch, two branches, three branches because we
16 have 400 some odd branches within the HSBC network.
17          This is just one source of referrals for
18 them.  They have branches, but they also go out and
19 call on real estate agents, accountants, attorneys
20 within the marketplaces which they reside as well.
21 So I can't say that this is typical because
22 California, we have very few branches, so it's a
23 little different, and they're spread out from a
24 geography perspective because HSBC is a very small
25 player in California.  Whereas, in New York state,

Case 3:07-cv-02446-MMC    Document 205-37    Filed 09/19/2008    Page 8 of 17
David Gates 30(b)(6)  9/11/2007
Phillip Wong, et al. v. HSBC Mortgage Corporation, et al.

55

1  especially in Manhattan, they're on every street
2  corner, so it's a totally different coverage
3  strategy as to how they call on branches.
4      Q.   With that said, would you anticipate that
5  loan officers will spend most of their time either
6  in the branches or at the -- one of the 39 offices
7  described before, Mortgage Corp. offices?
8      A.   I would tell you that it varies by sales
9  rep because each sales rep sources their business
10 differently.  And most branch offices being bank
11 branch locations, there's typically not enough
12 space for them to spend a significant amount of
13 time.  There's not enough branch space.  There's
14 not a desk for them to sit, so they would go in.
15 They would bond.  They would build relationships.
16 They would educate branch staff on referring first
17 mortgage business to them, but that would be just a
18 sales call.
19          Typically they're out soliciting business
20 in the marketplace in attempting to generate
21 business.  So do they spend all of their time?  I
22 think it depends upon the sales rep and their sales
23 strategies for actually soliciting within those
24 marketplaces.
25      Q.   So you're not in a position to testify as

Case 3:07-cv-02446-MMC    Document 205-37    Filed 09/19/2008    Page 9 of 17
David Gates 30(b)(6)  9/11/2007
Phillip Wong, et al. v. HSBC Mortgage Corporation, et al.

56

1  to what percentage of time loan officers typically
2  spend at an HSBC facility versus outside of an HSBC
3  facility as a general rule?
4       A.   I think it would be very difficult because
5  each sales rep sources their business differently,
6  so I don't know if I can give you a number that
7  would be typical because I think it's all over the
8  board as to how they choose to source their
9  business.
10      Q.   What are other ways that -- apart from
11 going to HSBC branches and working out of the HSBC
12 Mortgage Corp. offices, what are the other ways
13 that you're aware that loan officers source
14 business?
15      A.   They call on real estate offices.  They
16 call on builders.  They will call on financial
17 planners.  They will call on accountants and any
18 other network that they've developed from a
19 referral perspective to source business.
20           And those strategies differ.  Some people
21 focus on builder business.  Some people focus on
22 real estate business.  Some people focus on
23 accountants and financial planners for their
24 referrals of their mortgages.  Some like to look at
25 their past book of business and continue to

Case 3:07-cv-02446-MMC   Document 205-37   Filed 09/19/2008   Page 10 of 17
David Gates 30(b)(6)  9/11/2007
Phillip Wong, et al. v. HSBC Mortgage Corporation, et al.

57

1  advertise to their past book of business in terms
2  of keeping in touch with their past book of
3  business.
4        So there's multiple strategies.  No one
5  person does it all, but the branches are a piece to
6  their overall origination strategy.
7     Q.  In order to know what percent of time loan
8  officers spend inside HSBC facilities versus
9  outside HSBC facilities, would we need to speak to
10 somebody -- would we need to speak to all of the
11 officials at the regional manager level, people
12 like at Amy Ku's level?
13    A.  I think that you could get a better
14 understanding, but I guess it would be very -- if I
15 understand your question, I don't know if there's a
16 typical answer because some loan officers don't
17 even have branches assigned to them, so it would be
18 different for different people.  I can't say that
19 there's an exact number that they spent X percent
20 of their time in a facility and X percent of their
21 time outside.  So I don't know.
22        Amy and the regional managers would give
23 you a better understanding of each one of their
24 individual market situations, but I think it would
25 depend upon the location as to the time people

Case 3:07-cv-02446-MMC    Document 205-37    Filed 09/19/2008    Page 11 of 17

David Gates 30(b)(6)  9/11/2007
Phillip Wong, et al. v. HSBC Mortgage Corporation, et al.

64

1   packages managed through Chris Vaughn's sales
2   operations organization?
3       A.  No.
4       Q.  Where do these get managed?
5       A.  Hardware, software configurations would
6   all be part of our HTS group, which is an
7   outsourced provider.
8       Q.  That's the HSBC Technical Services?
9       A.  I think that's the correct legal name.
10      Q.  Okay.  Now, loan officers, when they're --
11  if they're accessing through their laptop remotely,
12  say, are they able to use the Loan Quest software?
13      A.  Yes.
14      Q.  Is that something that works -- excuse me.
15          Is that something that works out when
16  you're out in the field with any kind -- does it
17  work as a practical matter?  I mean, sometimes
18  these loan software can be very slow when you're
19  actually not in the office.  Do you know?
20      A.  Let me go back and just -- through
21  laptops, Loan Quest is accessible.  Blackberries,
22  it's not.  And some of our sales force will
23  actually use Loan Quest in front of a customer, and
24  some will not.
25      Q.  And what does it depend on whether or not

Case 3:07-cv-02446-MMC   Document 205-37   Filed 09/19/2008   Page 12 of 17

David Gates 30(b)(6)  9/11/2007
Phillip Wong, et al. v. HSBC Mortgage Corporation, et al.

65

1  they use Loan Quest in front of a customer or not?
2       A.   I think it's a customer -- it's a sales
3  rep's personal comfort level, customer experience.
4  Some are much more proficient at utilizing the
5  system, and some of them are what I would consider,
6  you know, technologically challenged.  So it's more
7  of whether they feel comfortable with a pen and
8  paper or they feel comfortable taking data in
9  electronically.
10      Q.   Okay.
11      A.   That's with Loan Quest.
12      Q.   Okay.  I understand.  Are the loan
13 officers told how much time they're expected to
14 spend at the bank branches or at -- in the Mortgage
15 Corp. offices or in home offices versus how much
16 time they're expected to spend somewhere else out
17 in the field?
18      A.   No.  They do have set routines typically
19 with all of their customer base, whether it's a
20 branch, a real estate office, a builder where
21 they've got set times where they'll stop by to see
22 folks, but there's no set time that says they have
23 to be in the office other than they do have, from
24 time to time, an opportunity to get on calls so
25 they can actually have call desk time where they

David Gates 30(b)(6)  9/11/2007
Phillip Wong, et al. v. HSBC Mortgage Corporation, et al.

66

1   can actually answer calls as referrals.
2           And it depends upon the office. Some of
3   them have opportunities to do that, and others do
4   not. It depends on the office and the call volumes
5   that come into those offices of the 39. Some are
6   larger, and they get a lot of calls, and then there
7   are some that are remote outposts that may get one
8   or two a day, so there would be no need for that.
9       Q.  Would the -- would your system track in
10  any way whether a loan officer was accessing the
11  system remotely versus in an HSBC facility?
12      A.  I do not know that, but I would assume so
13  because the access point is via the internet, so
14  there's a log-on to our secure network, so I would
15  imagine there's got to be some footprint behind
16  that, but I don't have knowledge of that
17  specifically.
18      Q.  When you say the access point is via the
19  internet, are you referring to when someone is
20  operating remotely versus out of an HSBC facility?
21      A.  That is correct.
22      Q.  If someone has a home office that they do
23  their sales work out of primarily, are they --
24      A.  That would be accessing it remotely.
25      Q.  I see. So you wouldn't be able to track

Case 3:07-cv-02446-MMC   Document 205-37   Filed 09/19/2008   Page 14 of 17

David Gates 30(b)(6)  9/11/2007
Phillip Wong, et al. v. HSBC Mortgage Corporation, et al.

74

1  business plan reconciliation.
2      Q.  Do you know if -- do you consider the loan
3  officers to be inside salespeople?
4      MS. BARRETT:  Objection.  Calls for a legal
5  conclusion.
6      THE WITNESS:  Inside salespeople, no.  I would
7  not consider a loan officer to be an inside
8  salesperson.
9  BY MR. SCHWARTZ:
10     Q.  So do you consider loan officers to be
11 outside salespeople?
12     MS. BARRETT:  Objection.  Calls for a legal
13 conclusion.
14     THE WITNESS:  I would consider them outside
15 sales.
16 BY MR. SCHWARTZ:
17     Q.  And what's the basis of that?
18     MS. BARRETT:  Objection.  Calls for a legal
19 conclusion.
20     THE WITNESS:  My definition of an inside
21 salesperson is someone who sits and answers the
22 phone all day and waits for customers to come in.
23 Whereas, an outbound sales rep, where someone that
24 would be an outside sales rep would be someone that
25 would be out calling on referral sources within the

Case 3:07-cv-02446-MMC   Document 205-37   Filed 09/19/2008   Page 15 of 17

David Gates 30(b)(6)  9/11/2007
Phillip Wong, et al. v. HSBC Mortgage Corporation, et al.

75

1  marketplace and is sourcing business from multiple
2  locations and by definition, has to go outside of
3  an HSBC facility to get business.
4          That is, I guess, the business plan we
5  talked about with goal settings and referrals and
6  realtors and builders and the infinity groups and
7  attorneys and CPAs and physicians and nonprofits.
8  I would assume that they would have to go out and
9  go out into the community to get those types of
10 leads and relationships.  I don't think they all
11 walk in the door.
12 BY MR. SCHWARTZ:
13     Q.   Can loan officers access realtors?  For
14 example, can they contact them on the internet?
15     A.   I'm sure that once you get a -- I'm sure
16 you can prospect over the internet because realtors
17 are all over the internet trying to sell their
18 properties.  I'm sure you could access them by
19 e-mail.
20     Q.   Would that also be builders, attorneys and
21 some of the other potential client bases you
22 mentioned?
23     A.   Yes, but that would be -- yes.
24     Q.   Does the job description for the loan
25 officers and the various titles that they've had

STATE OF ILLINOIS   )
                    )  SS:
COUNTY OF C O O K   )

I, GINA M. LUORDO, a notary public within and for the County of Cook County and State of Illinois, do hereby certify that heretofore, to-wit, on September 11, 2007, personally appeared before me, at 200 North LaSalle Street, Chicago, Illinois, DAVID GATES, in a cause now pending and undetermined in the United States District Court of the Northern District of California, wherein PHILIP WONG, et al. are the Plaintiffs, and HSBC MORTGAGE CORPORATION (USA), et al. are the Defendants.

I further certify that the said DAVID GATES was first duly sworn to testify the truth, the whole truth and nothing but the truth in the cause aforesaid; that the testimony then given by said witness was reported stenographically by me in the presence of the said witness, and afterwards reduced to typewriting by Computer-Aided Transcription, and the foregoing is a true and correct transcript of the testimony so given by said witness as aforesaid.

I further certify that the signature to the foregoing deposition was not waived by counsel

```
 1   for the respective parties.
 2           I further certify that the taking of this
 3   deposition was pursuant to notice and that there
 4   were present at the deposition the attorneys
 5   hereinbefore mentioned.
 6           I further certify that I am not counsel
 7   for nor in any way related to the parties to this
 8   suit, nor am I in any way interested in the outcome
 9   thereof.
10           IN TESTIMONY WHEREOF:  I have hereunto set
11   my hand and affixed my notarial seal this 26th day
12   of September, 2007.
13
14
15
16
17   _____
18   NOTARY PUBLIC, COOK COUNTY, ILLINOIS
19   LIC. NO. 084-004143
```

GINA M. LUORDO
OFFICIAL SEAL
Notary Public, State of Illinois
My Commission Expires
April 05, 2010