1  GEORGE J. TICHY, II, Bar No. 041146
   MICHAEL F. MCCABE, Bar No. 111151
2  MICHELLE R. BARRETT, Bar No. 197280
   RACHELLE L. WILLS, Bar No. 257471
3  LITTLER MENDELSON
   A Professional Corporation
4  650 California Street, 20th Floor
   San Francisco, California  94108
5  Telephone:  (415) 433-1940
   Facsimile:  (415) 399-8490
6  E-mail: gtichy@littler.com, mmccabe@littler.com,
   mbarrett@littler.com, rwills@littler.com
7
   Attorneys for Defendants
8  HSBC MORTGAGE CORPORATION (USA) AND
   HSBC BANK USA, N.A.
9

10                  UNITED STATES DISTRICT COURT

11                  NORTHERN DISTRICT OF CALIFORNIA

12                     SAN FRANCISCO DIVISION

13
   Philip Wong, Frederic Chaussy, Leslie          Case No.  C 07 2446 MMC [ECF]
14 Marie Shearn, and Chad Barbiere,
   individually, on behalf of all others          **DEFENDANTS' MEMORANDUM OF**
15 similarly situated, and on behalf of the       **POINTS AND AUTHORITIES IN**
   general public,                                **OPPOSITION TO PLAINTIFFS' MOTION**
16                                                 **FOR PARTIAL SUMMARY JUDGMENT**
                    Plaintiffs,
17                                                 Hearing Date:   April 23, 2010
          v.                                       Time:           9:00 a.m.
18                                                 Courtroom:      7 (19th Floor)
   HSBC Mortgage Corporation (USA);
19 HSBC Bank USA, N.A.;  and DOES 1               Complaint Filed:   May 7, 2007; June 29, 2007
   through 50, inclusive,                                             (FAC); August 22, 2008
20                                                                    (SAC)
                    Defendants.
21

22

23

24                                    .

25

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

**DEFENDANTS' OPPOSITION TO MOTION**          **Case No. C 07 2446 MMC [ECF]**
**FOR PARTIAL SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**PAGE**

I.   INTRODUCTION ................................................................................................1

II.  LEGAL ARGUMENT ........................................................................................1

   A.  Plaintiffs' Motion for Summary Judgment Should Be Denied ...................1

      1.  Resolution of Plaintiffs' Motion Must Be Deferred Pending
          Determination of Defendants' Decertification Motion .....................1

      2.  Plaintiffs Have Failed to Establish Entitlement to Judgment Based on
          an Absence of Material Undisputed Facts or as a Matter of Law ....................2

   B.  Material Factual Issues Prevent Uniform Resolution of Plaintiffs' Overtime
       Claims................................................................................................3

      1.  Factual Issues Exist Regarding the Applicability of the Outside Sales
          Exemption................................................................................3

      2.  Plaintiffs' Narrow Interpretation of "Outside Sales" Must Be Rejected..........3

         a.  Outside Sales Is More Than the Customer-Specific Activity of
             Taking an Application .......................................................3

         b.  Work Performed in Conjunction with Plaintiffs' Outside Sales
             is Considered Exempt Activity.............................................6

      3.  Plaintiffs Customarily and Regularly Engaged in Sales and
          Solicitations Away from Fixed Headquarters .................................7

         a.  A Dispute Of Fact Exists As To Whether HBUS Bank
             Branches Should Be Considered A Fixed Site ...........................7

         b.  A Material Issue Of Fact Exists as to Whether Condominium
             Developments, Nonprofits and Community Development
             Agencies Constituted  A Fixed Headquarters.........................9

         c.  Plaintiffs' Own Testimony Establishes They Customarily and
             Regularly Performed Work Away from a Fixed Headquarters..........11

      4.  The Cases Cited in Support of Plaintiffs' Position are Distinguishable
          From the Instant Case ...........................................................12

   C.  Loan Officers Making More Than $100,000 Are Exempt Highly Compensated
       Employees ...........................................................................13

      1.  Plaintiffs Performed At Least One Exempt Administrative Duty.................14

      2.  Some Plaintiffs Performed At Least One Exempt Executive Duty...............16

   D.  Triable Issues of Fact Prevent Summary Judgment on the Statute of
       Limitations and Liquidated Damages, as Well as a Good Faith Defense .................17

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DECLARATION OF ABBY HO
CASE NO. C 07 2446 MMC [ECF] (NO.  C 07
2446 MMC [ECF])

i.

# TABLE OF CONTENTS
### (CONTINUED)

PAGE

1. An Extended Statute of Limitations Is Inappropriate Because Defendants Have Not Acted with Willful Disregard for the FLSA ..............17

2. Plaintiffs' Liquidated Damages Request Is Improper Because Defendants Acted Reasonably and in Good Faith..........................................18

3. Defendants Can Establish Good Faith as a Complete Defense to This Action .................................................................................................................21

E. Plaintiffs Incorrectly Focus Upon the Fluctuating Workweek to Measure Damages ..........................................................................................................22

1. When Damages Exist, Overtime Must Be Calculated at One-Half The Regular Rate ...........................................................................................22

2. Although Defendants Do Not Rely Upon the FWW Method, the FWW Method Can Be Used in Misclassification Cases.............................................23

III. CONCLUSION ......................................................................................................25

Firmwide:94862792.7 023404.1043

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108 2693
415 433 1940

DECLARATION OF ABBY HO
CASE NO. C 07 2446 MMC [ECF] (NO.  C 07
2446 MMC [ECF])

ii.

# TABLE OF AUTHORITIES

PAGE

## CASES

*Abbe v. City of San Diego*, 2007 U.S. Dist. LEXIS 87501 (S.D. Cal. Nov. 7, 2007) ......................21

*Alvarez v. IBP, Inc.*, 339 F.3d 894 (9th Cir. 2003)..........................................................17, 18

*Amendola v. Bristol-Myers Squibb*, 558 F. Supp. 2d 459 (S.D.N.Y. 2008)................................15, 16

*Anderson v. Liberty Lobby, Inc.* 477 U.S. 242 (1986)..........................................................4

*Baden-Winterwood v. Life Time Fitness*, 2007 U.S. Dist. LEXIS 49777 (S.D. Ohio July. 10, 2007), *overruled on other grounds*, 566 F.3d 618 (6th Cir. 2009)..............................20

*Barnick v. Wyeth*, 522 F. Supp. 2d 1257 (C.D. Cal. 2007)........................................................14

*Bennett v. SLT/TAG Inc.*, 2003 U.S. Dist. LEXIS 25438 (D. Ore. Feb. 10, 2003) ...........................21

*Berry v. Sonoma County*, 791 F.Supp. 1395 (N.D. Cal. 1992), *overruled on other grounds*, 30 F.3d 1174 (9th Cir. 1994)......................................................................20

*Bertrand v. Maram*, 495 F.3d 452 (7th Cir. 2008) ...............................................................2

*Billingslea v. Brayson Homes, Inc.*, 2007 U.S. Dist. LEXIS 52566 (N.D. Ga., July 19, 2007).................................................................................6, 7, 9, 10, 12

*Bratt v. County of Los Angeles*, 912 F.2d. 1066 (9th Cir. 1990), *cert. denied*, 498 U.S. 1086 (1991)................................................................................................19

*Brennan v. Valley Towing Co. Inc.*, 515 F.2d 100 (9th Cir. 1975).........................................22, 23

*Brock v. Shirk*, 833 F. 2d 1326 (9th Cir. 1987), *vacated on other grounds*, 488 U.S. 806 (1988).................................................................................................18, 19

*Burnley v. Short*, 730 F.2d 136 (4th Cir. 1984).....................................................................21

*Casas v. Conseco Fin. Corp.*, 2002 U.S. Dist. LEXIS 5775 (D.Minn., Mar. 31, 2002). ..................14

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).......................................................................4

*Chala Enterprises* .......................................................................................................23

*Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908 (9th Cir. 2003) ..............................................18

*Chao v. First Nat'l Lending Corp.*, 516 F. Supp. 2d 895 (N.D. Ohio 2006)...................................13

*Clements v. Serco, Inc.*, 530 F.3d 1224 (10th Cir. 2008) ....................................................24, 25

*Coleman v. Jiffy June Farms, Inc.*, 458 F.2d 1139 (5th Cir.), *cert. denied*, 409 U.S. 948 (1972).................................................................................................................19

*Coppage v. Bradshaw*, 665 F. Supp. 2d 1361 (N.D. Ga. 2009) ..............................................14

*Cusumano v. Maquipan Int'l, Inc.*, 2005 U.S. Dist. LEXIS 30257 (N.D. Fla. Nov. 30, 2005).....................................................................................................................24

*D'Este v. Bayer Corp.*, 2007 U.S. Dist. LEXIS 87229 (C.D. Cal., Oct. 9, 2007).............................14

*Desmond v. PNGI Charles Town Gaming, LLC*, 2009 U.S. Dist. LEXIS 84632 (D.W.Va. Sept. 16, 2009) ...........................................................................................24

*Donihoo v. Dallas Air Motive, Inc.*, U.S. Dist. LEXIS 1417 (N.D. Tex. Feb. 2, 1998)....................24

*Donovan v. Reno Builders Exch. Inc.*, 1984 U.S. Dist. LEXIS 20084 (D. Nev. Jan. 26, 1984).....................................................................................................................23

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DECLARATION OF ABBY HO
CASE NO. C 07 2446 MMC [ECF] (NO. C 07
2446 MMC [ECF])

iii.

**TABLE OF AUTHORITIES**
(CONTINUED)

PAGE

*Dooley v. Liberty Ins. Co.*, 307 F. Supp. 2d 234 (D. Mass. 2004) ...................................24

*English v. Pharmerica Drug Sys.*, 2004 U.S. Dist. LEXIS 29900 (N.D. Fla. Aug. 27, 2004)..................................................................................................................................24

*Featsent v. City of Youngstown*, 70 F.3d 900 (6th Cir. 1995) ....................................21

*Frank v. McQuigg*, 950 F.2d 590 (9th Cir. 1991) .........................................................21

*Gregory v. First Title of Am., Inc.*, 555 F.3d 1300 (11th Cir. 2009) .............................6

*Hernandez v. United Auto Credit Corp.*, Case No. C-08-03404 RMW, Dkt. #147 (N.D. Cal. Apr. 2, 2010) .................................................................................................3

*Hill v. J.C. Penny Co., Inc.*, 688 F.2d 370 (5th Cir. 1982)....................................19, 21

*Jewel Tea Co. v. Williams*, 118 F.2d 202 (10th Cir. 1941) .........................................14

*Keeley v. Loomis Fargo & Co.*, 183 F.3d 257 (3d Cir. 1999) ....................................18

*Maciel v. City of Los Angeles*, 569 F. Supp. 2d 1038 (C.D. Cal. 2008).................17, 18

*Marshall v. Chala Enter. Inc.*, 645 F.2d 799 (9th Cir. 1981)...................................22, 23

*Marshall v. Hamburg Shirt Corp.*, 577 F. 2d 444 (8th Cir. 1978) ............................22, 23

*Mendez v. The Radec Corp.*, 260 F.R.D. 38 (W.D.N.Y. Aug. 20, 2009) ......................2

*Menes v. Roche Labs., Inc.*, 2008 U.S. Dist. LEXIS 4230 (C.D. Cal., Jan. 7, 2008)........6

*Mohorn v. Tennessee Valley Auth.*, 2007 U.S. Dist. LEXIS 52014 (E.D. Tenn. July 17, 2007) ....................................................................................................................15

*Nielsen v. DeVry, Inc.*, 302 F. Supp. 2d 747 (W.D. Mich. 2003)............................11, 14

*Olivo v. GMAC Mortg. Corp.*, 374 F. Supp. 2d 545 (E.D. Mich. 2004) .......................8

*Overnight Motor Transp., Inc v. Missel*, 316 U.S. 572 (1942).....................................22

*Perez v. Radio Shack Corp.*, 2005 U.S. Dist. LEXIS 33420 (N.D. Ill. Dec. 14, 2005) ..............24

*Roy v. County of Lexington*, 141 F.3d 533 (4th Cir. 1998) .........................................21

*Saizan v. Delta Concrete Prod.*, 209 F. Supp. 2d 639 (M .D. La. 2002) ......................24

*Sarviss v. General Dynamics Info. Tech., Inc.,* 663 F. Supp. 2d 883 (C.D. Cal. 2009) .............2, 9, 14

*Saxton v. Young*, 479 F. Supp. 2d 1243 (N.D. Ala. 2007).........................................24

*Schueler, et al. v. H&R Block Mortg. Corp.*, Case No. C-07000342 CJC, Dkt. #183 (C.D. Cal. Aug. 10, 2009)..............................................................................................4

*Schultz v. All-Fund, Inc.*, 2007 U.S. Dist. LEXIS 59300 (D.Md., Aug. 13, 2007). ..................13, 14

*Schwarzchild v. Tse*, 69 F.3d 293 (9th Cir. 1995).......................................................2

*Torres v. Bacardi Global Brand Promotions, Inc.*, 482 F. Supp. 2d 1379 (S.D. Fla. 2007)..................................................................................................................................24

*Tuck v. Methanex Mgmt*, 2006 U.S. Dist. LEXIS 13751 (N.D. Tex. Mar. 29, 2006) ...................24

*Tumulty v. FedEx Ground Package Sys., Inc.*, 2005 U.S. Dist. LEXIS 25997 (W.D. Wash. Aug. 6, 2005).................................................................................................24

*Urnikis-Negro v. American Family Prop. Serv., Inc.*, 2008 U.S. Dist. LEXIS 102034

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DECLARATION OF ABBY HO
CASE NO. C 07 2446 MMC [ECF] (NO.  C 07
2446 MMC [ECF])

iv.

**TABLE OF AUTHORITIES**
(CONTINUED)

PAGE

(N.D. Ill. July 21, 2008)..................................................................................24

*Valerio v. Putnam Assoc., Inc.*, 173 F.3d 35 (1st Cir. 1999)................................24, 25

*Villegas v. Dependable Constr. Serv., Inc.*, 2009 U.S. Dist. LEXIS 98801 (S.D. Tex. Dec. 8, 2008) ..................................................................................24

*Whiteway v. FedEx Kinko's Office and Print Serv.*, 319 Fed. Appx. 688 (9th Cir. 2009)..................................................................................3

*Whiteway v. FedEx Kinko's Office and Print Serv., Inc.*, 2007 U.S. Dist. LEXIS 61239 (N.D. Cal. Aug. 16, 2007) ..................................................................................3

*Whiteway v. FedEx Kinkos Office and Print Serv., Inc.*, Case No. C-05-2320 SBA, Dkt. #227 (N.D. Cal. Oct. 2, 2009)..................................................................................3

*Wright v. Schock*, 742 F.2d 541 (9th Cir. 1984)..................................................................................2

*Yellow Transit Freight Lines, Inc. v Balven*, 320 F. 2d 495 (8th Cir. 1963) ........................23

**STATUTES**

29 U.S.C. § 259 ..................................................................................22

29 U.S.C. § 260 ..................................................................................18

**OTHER AUTHORITIES**

29 C.F.R. § 541.100(a)(2)-(4)..................................................................................17

29 C.F.R. § 541.200(a)(1)-(3)..................................................................................15

29 C.F.R. § 541.200(a)(3)..................................................................................16

29 C.F.R. § 541.201(c)..................................................................................15

29 C.F.R. § 541.202(a)..................................................................................15

29 C.F.R. § 541.500..................................................................................4

29 C.F.R. § 541.500(a)..................................................................................8

29 C.F.R. § 541.500(b)..................................................................................5, 8

29 C.F.R. § 541.502..................................................................................5, 9, 10, 11, 12

29 C.F.R. § 541.503..................................................................................8

29 C.F.R. § 541.601(a)..................................................................................14

29 C.F.R. § 541.601(c)..................................................................................14

29 C.F.R. § 541.701..................................................................................9

29 C.F.R. § 541.703..................................................................................8

29 C.F.R. § 778.114..................................................................................22

29 C.F.R. § 778.114(a)..................................................................................25

69 Fed. Reg. 22122 (Apr. 23, 2004)..................................................................................5, 14

DOL Administrator's Interpretation No. 2010-1 (Mar. 24, 2010) ................................6, 16

DOL Op. FLSA 2006-11 (Mar. 31, 2006)..................................................................................8

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DECLARATION OF ABBY HO
CASE NO. C 07 2446 MMC [ECF] (NO.  C 07
2446 MMC [ECF])

v.

**TABLE OF AUTHORITIES**
(CONTINUED)

PAGE

DOL Op. FLSA 2007-1 (Jan. 25, 2007) ................................................................9
DOL Op. FLSA 2007-2 (Jan. 25, 2007) ..............................................................10
DOL Op. FLSA 2009-3 (Jan. 14, 2009) ..............................................................24

**RULES**

Federal Rule of Civil Procedure 56(c) ..................................................................4

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

# I.   INTRODUCTION

Faced with an impending Motion to Decertify this conditionally certified collective action, Plaintiffs seek to short circuit that process by filing a Motion For Partial Summary Judgment. Brushing aside due process concerns, Plaintiffs argue that they are entitled to summary judgment regarding overtime on approximately all 111 Plaintiffs, notwithstanding the substantial evidence establishing that Plaintiffs customarily and regularly engaged in outside sales activities utilizing a myriad of sales methods in their disparate geographic locations throughout the relevant period. As established in Defendants HSBC Mortgage Corporation (USA)'s and HSBC Bank USA, N.A.'s ("HMCU" and "HBUS" respectively; "Defendants" collectively) Motion for Decertification, there is no uniform corporate policy directing how Plaintiffs were required to spend their working time, allowing each Plaintiff to determine how best to achieve their production goals.

Defendants have proffered evidence that almost all Plaintiffs regularly engaged in sales activities away from a fixed headquarter, qualifying them as exempt outside sales. Plaintiffs seek to blunt this overwhelming evidence by focusing the exemption analysis on one, non-controlling aspect of the sales activity process: where the actual loan application was completed. They then argue, without support, that if any aspect of the sales promotion process took place under a roof other than that of a customer, the work was performed from a fixed headquarter, leading to the illogical conclusion that most Plaintiffs worked at five or six different headquarters during a week. As set forth below, this narrow focus on where Plaintiffs completed the loan application, to the exclusion of all Plaintiffs' other outside sales activities, is inconsistent with the exemption's statutory framework, case law directing that the totality of sales activity be considered and common sense.

Similarly, Plaintiffs fail to establish an absence of material issues of fact or that, as a matter of law, the highly compensated employee exemption does not apply. Defendants have proffered evidence that a number of Plaintiffs earned $100,000 or more annually and engaged in one or more white collar exempt activities.

Notwithstanding Plaintiffs' failure to establish that all Plaintiffs are entitled to overtime, they nevertheless seek summary judgment finding Defendants violated the FLSA willfully and in bad faith. Setting aside that liability cannot be established in a representative capacity because each

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

**DEFENDANTS' OPPOSITION TO MOTION
FOR PARTIAL SUMMARY JUDGMENT**                    1.                    Case No. C 07 2446 MMC [ECF]

1  Plaintiff's entitlement to overtime must be analyzed individually, Defendants demonstrate that the

2  decision to classify its outside mortgage loan officers as exempt was made reasonably and in good

3  faith, based on routine and careful analysis, a Department of Labor ("DOL") Opinion Letter, and

4  industry standards.  Plaintiffs have failed to establish any entitlement to a three year statute of

5  limitations or to liquidated damages.

6       Finally, Plaintiffs seek a ruling that if they are entitled to overtime, the measure of damages

7  is 1.5 times their regular rate of pay.  However, the U.S. Supreme Court and multiple courts in

8  numerous jurisdictions have held that under the circumstances presented in this case, a 0.5 multiplier

9  is appropriate.  Moreover, disputed facts exist as to whether Plaintiffs understood that their

10  compensation covered all hours worked each week.

11       Through the Motion for Decertification, which Defendants incorporate herein, and this

12  Opposition to Plaintiffs' Motion for Partial Summary Judgment, Defendants provide substantial

13  evidence that demonstrates there is no basis to determine Plaintiffs' entitlement to overtime in a

14  representative action or a reason to address damages.  Accordingly, Defendants request that the

15  Court deny Plaintiffs' Motion for Partial Summary Judgment in its entirety.

16  **II.     LEGAL ARGUMENT**

17       **A.     Resolution of Plaintiffs' Motion Must Be Deferred Pending Determination of
             Defendants' Decertification Motion.**

18
19       Plaintiffs' request to have their summary judgment motion resolved prior to Defendants'

    decertification motion undermines the purpose of the two-step conditional certification process.
20
    Fairness and due process considerations dictate that "issues relating to class certification should be
21
    decided before a decision on the merits is rendered." *Mendez v. The Radec Corp.*, 260 F.R.D. 38, 44-
22
23  45 (W.D.N.Y. Aug. 20, 2009) (citing *Bertrand v. Maram*, 495 F.3d 452, 455 (7th Cir. 2008));

    *Schwarzschild v. Tse*, 69 F.3d 293, 296 (9th Cir. 1995). *See also Sarviss v. General Dynamics Info.*
24
    *Tech., Inc.*, 663 F. Supp. 2d 883, 890 n.7 (C.D. Cal. 2009) (quoting *Wright v. Schock*, 742 F.2d 541,
25
26  543-44 (9th Cir. 1984)) ("[a] district court has discretion to rule on a motion for summary judgment

    before it decides certification issues," *but only* '[u]nder the proper circumstances,' to "'protect both
27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFENDANTS' OPPOSITION TO MOTION
FOR PARTIAL SUMMARY JUDGMENT                2.                Case No. C 07 2446 MMC [ECF]

1   the parties from needless and costly litigation'") (emphasis added).[1]

2         The problem inherent with deciding summary judgment motions before deciding

3   decertification motions is aptly illustrated by a recent misclassification case, *Whiteway v. FedEx*

4   *Kinko's Office and Print Serv., Inc.*, 2007 U.S. Dist. LEXIS 61239 (N.D. Cal. Aug. 16, 2007).[2]

5   There, the employer simultaneously filed summary adjudication and Rule 23 decertification motions.

6   The district court granted summary adjudication, declining to consider the decertification motion.

7   On plaintiffs' appeal, the Ninth Circuit reversed, holding that plaintiffs' evidence created a genuine

8   issue of material fact as to whether they were primarily engaged in exempt tasks.  *Whiteway v.*

9   *FedEx Kinko's Office and Print Serv.*, 319 Fed. Appx. 688, 689 (9th Cir. 2009).  Moreover, the

10  Court noted that the district court could reconsider its decision to certify the class because the

11  evidence "created some question as to the commonality of the asserted claims." *Id.*[3]

12        Similar to *Whiteway*, the outside sales and highly compensated exemptions at issue here

13  require individualized, fact-specific inquiries regarding each Plaintiff's job duties and activities in

14  the absence of a uniform policy addressing how conditional class members are required to perform

15  their job duties.   But these individualized, fact-specific inquiries cannot be decided on a

16  representative basis absent a finding that Plaintiffs are similarly situated.   Based on evidence

17  provided in support of Defendants' decertification motion regarding the myriad of methods used by

18  loan officers to generate mortgage loan sales, decertification is appropriate, eliminating any reason

19  to resolve the instant motion.

---

[1] Although this legal principal has primarily been applied in Rule 23 cases, the same fairness and due process considerations arise in this case.
[2] In another case handled by Nichols Kaster, the Northern District of California recognized the problems inherent with deciding a summary judgment motion before ruling on decertification.  *See Hernandez v. United Auto Credit Corp.*, Case No. C-08-03404 RMW, Dkt. #147 (N.D. Cal. Apr. 2, 2010) (granting defendants' decertification motion of conditional class and denying plaintiffs' summary judgment motion as moot).
[3] On remand, the district court decertified the class, reasoning that any determination regarding the time each class member spent performing exempt tasks "can be made only through inquiries made of the individual class members." *Whiteway v. FedEx Kinkos Office and Print Serv., Inc.*, Case No. C-05-2320 SBA, Dkt. #227 at p. 5 (N.D. Cal. Oct. 2, 2009).

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFENDANTS' OPPOSITION TO MOTION
FOR PARTIAL SUMMARY JUDGMENT          3.          Case No. C 07 2446 MMC [ECF]

**B.      Plaintiffs Have Failed to Establish Entitlement to Judgment Based on an Absence of Material Undisputed Facts or as a Matter of Law.**

If the Court chooses to consider Plaintiffs' motion, summary judgment can only be granted where, based on pleadings, discovery and affidavits, no "genuine issues as to any material fact [exist] and…[Plaintiffs are] entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(c). All reasonable inferences from the evidence must be drawn in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 255 (1986). If facts in question "might affect the outcome of the suit under governing law," summary judgment is improper. *Id.* at 248; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Here, Plaintiffs fail to meet this substantial burden. Plaintiffs are not entitled to judgment as a matter of law. Further, material factual disputes as to the applicability of the outside sales and highly compensated exemptions requiring the Court to fully adjudicate Plaintiffs' entitlement to overtime.[4] Likewise, Plaintiffs fail to establish that they are entitled to summary judgment on the damages, statute of limitations, and good faith defense issues.

**1.      Material Factual Issues Exist Regarding the Applicability of the Outside Sales Exemption.**

An employee satisfies the FLSA's "outside sales" exemption if his primary duty is making sales within the meaning of section 3(k) of the Act, and he is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty. 29 C.F.R. § 541.500. Plaintiffs concede that their primary duty was mortgage loan sales. Further, as discussed more fully below, most, if not all, Plaintiffs customarily and regularly engaged in these sales duties away from HMCU's places of business, making them exempt outside salespersons.

**2.      Plaintiffs' Narrow Interpretation of "Outside Sales" Must Be Rejected.**

**a.      Outside Sales Is More Than the Customer-Specific Activity of Taking an Application.**

Plaintiffs premise their argument on the wholly unsupported proposition that the outside sales exemption depends solely on where a loan application is taken. No legal authority supports Plaintiffs' position. An employer's place of business is "any fixed site, whether home or office used

---

[4] *See Schueler, et al. v. H&R Block Mortg. Corp.*, Case No. C-07000342 CJC, Dkt. #183 at p. 9-10 (C.D. Cal. Aug. 10, 2009) ("claims and defenses must be made, explored, and tested on an individualized basis").

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFENDANTS' OPPOSITION TO MOTION
FOR PARTIAL SUMMARY JUDGMENT                   4.                   Case No. C 07 2446 MMC [ECF]

by a salesperson as a headquarters or for telephonic solicitation." 29 C.F.R. § 541.502. Under Plaintiffs' argument, a door-to-door salesman who spends 90 percent of his time outside of his headquarters engaged in activities to facilitate sales, does not qualify as an outside salesperson if he returns to that headquarters to process a customer's order, because where the order is received controls. Similarly, using Plaintiffs' logic, an employee who rarely leaves his headquarters <u>does</u> qualify as an outside salesperson, provided he obtains the customers' orders at an "outside" location. Plaintiffs' argument, however, ignores the regulations, their preamble, case law, and the DOL's view of "outside sales."

Plaintiffs myopically focus on where the loan officer is located at the time an application is taken, regardless of the character and quantity of the sales activities preceding the application to conclude as a matter of law that HMCU's loan officers engage in "inside sales." However, the outside sales regulation defining "primary duty" refers to "an employee's own outside sales or solicitations," connoting activities beyond that single moment in time when a loan application is taken. 29 C.F.R. § 541.500(b). In addition, the regulations include as "sales" the activities of <u>promoting</u> and <u>selling</u> goods or services. This plain language establishes that employees' outside solicitations also constitute exempt activity when analyzing the primary sales duty. Moreover, the preamble to the outside sales regulations confirms that where the sale concludes is not controlling: "[T]echnological changes in how orders are taken and processed should not preclude the [outside sales] exemption for employees who <u>in some sense</u> make the sales." 69 Fed. Reg. 22122, 22162-63 (Apr. 23, 2004) (emphasis added). Although Plaintiffs claim that taking an application via mail, telephone or internet is not outside sales, the mere act of taking a loan application in such a manner is insufficient, standing alone, to negate the outside sales exemption.[5] Rather, the Court must

---

[5] Plaintiffs cite only a limited portion of 29 C.F.R. § 541.502. However, the regulation, read in its entirety, provides that a sale made via mail, telephone, or internet <u>can</u> constitute outside sales if, as here, such contact is used merely "as an adjunct to personal calls." As such, Plaintiffs' contention that forty-eight plaintiffs took more than 75% of their applications by mail, telephone, or internet is immaterial.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

**DEFENDANTS' OPPOSITION TO MOTION
FOR PARTIAL SUMMARY JUDGMENT**          5.          **Case No. C 07 2446 MMC [ECF]**

1    examine the totality of sales work performed by loan officers in connection with generating

2    mortgage loans.[6]

3         Courts confirm a much broader interpretation of "outside sales." In fact, an employee need

4    not even close a single sale to qualify as an outside salesman, much less consummate the sale at any

5    particular location, so long as the sales efforts are directed toward making his/her own sales and not

6    toward generally promoting the employer's sales. In *Gregory v. First Title of Am., Inc.*, the court

7    found that the plaintiff was outside sales exempt even though she never personally consummated a

8    sale with any person or business. 555 F.3d 1300, 1303 (11th Cir. 2009). Instead, she induced

9    referral sources, including realtors, brokers, and lenders, to refer their customers to her employer for

10   title insurance services. *Id.* at 1303-04. Gregory unsuccessfully contended that she was not a

11   salesperson, but merely "stimulated sales that were ultimately carried out by others." *Id.* The Court

12   found Gregory was properly classified as an outside salesperson because she did not merely "pave

13   the way" for other salesmen. *Id.* at 1309. Rather, Gregory acted as a conduit through which orders

14   for services flowed to her employer.

15        In *Menes v. Roche Labs., Inc.*, the court reached a similar conclusion regarding

16   pharmaceutical sales representatives who "inform[ed] medical personnel about Defendant's drugs in

17   the hope that they [would] prescribe Roche products to their patients." 2008 U.S. Dist. LEXIS 4230,

18   *3 (C.D. Cal., Jan. 7, 2008). Granting Roche's summary judgment motion, the court found that

19   although the plaintiff did not technically "sell" anything, she "was properly classified as an exempt

20   outside sales person [] because [she] was hired and evaluated based on her ability as a salesperson,

21   received training through her employer on sales techniques, received some compensation based on

22   the total amount of products sold in her territory, and solicited new customers on her own." *Id.* at

23   *3, *7.

24        In *Billingslea v. Brayson Homes, Inc.*, real estate agents rarely, if ever, met a customer

25   outside of the fixed site of the model home. 2007 U.S. Dist. LEXIS 52566 (N.D. Ga., July 19,

26   ─────────────────────
27   [6] DOL Administrator's Interpretation No. 2010-1, n.3 (Mar. 24, 2010) recognizes that sales cannot
     narrowly be defined "as including 'only customer-specific persuasive sales activity,' which is the
     time a loan officer spends directly engaged in selling mortgage loan products to customers." Sales
28   must be interpreted more broadly.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108 2693
415.433.1940

**DEFENDANTS' OPPOSITION TO MOTION          6.          Case No. C 07 2446 MMC [ECF]
FOR PARTIAL SUMMARY JUDGMENT**

1    2007).   Nonetheless, the Court found that the plaintiffs were engaged in "sales" away from their

2    headquarters when they: (1) walked spec houses and lots within the community; (2) attended off-site

3    sales meetings; (3) attended construction meetings; (4) traveled to defendant's corporate office to

4    complete sales transactions; (5) delivered flyers and other marketing materials to the offices of local

5    agents and brokers; and (6) shopped the competition.  *Id.* at *12.   Notably, none of these activities

6    involve meeting with a customer away from a fixed site, undercutting Plaintiffs' position that taking

7    a loan application is the only activity that qualifies a loan officer as outside sales exempt.

8          Like the *Gregory* plaintiff, numerous Plaintiffs customarily and regularly spent time meeting

9    with referral sources and customers away from fixed locations in an effort to facilitate their own

10   sales.[7]  Moreover, as in *Menes*, Plaintiffs received training from HMCU regarding sales techniques,[8]

11   solicited their own new customers,[9] and received compensation based on the sales they made.[10]   If

12   the *Gregory* and *Menes* plaintiffs, who never consummated a single sale, qualified as outside

13   salespersons by virtue of the work they performed outside of the office to secure or induce sales,

14   Plaintiffs here cannot credibly contend that completing a loan application at an "inside" location

15   transforms their outside activities into "inside sales."   Further, Plaintiffs not only attended customer

16   meetings away from a fixed site, but also (like in *Billingslea*) attended other meetings, networking

17   events, and visited referral sources, such as real estate brokers who serve as a customer's agent,

18   away from a fixed location.[11]   Accordingly, Plaintiffs' attempt to cast the location at which a loan

19   officer takes an application as the *sole factor* in determining whether a loan officer has engaged in

20

---

21   [7]  Cohen 54:15-55:13, 56:23-58:20, 85:17-20; Flanagan 81:22-83:20, 87:20-89:10, 93:5-15, 94:10-
22   24, 96:4-18; Gora 102:22-25; Kachadourian 38:7-17, 44:9-46:2; Kilinski 71:22-73:2; Moore 82:23-
     86:7; Noda 33:6-35:3; Russell 83:13–84:14, 105:7-10; Sabater 24:10-22, 28:5-30:12, 98:4-17;
23   Santangelo 60:10-64:14.  All deposition testimony and declarations cited in support of Defendants'
     opposition to Plaintiffs' Motion for Partial Summary Judgment are attached as exhibits to the
24   Declaration of Michelle R. Barrett in support of Defendants' opposition (hereinafter "Barrett
     Decl.").
25   [8]  Hamilton 61:14-62:7; Ku 106:21-107:25; Moore 39:7-40:18; Russell 66:7-68:6; Sabater 19:6-20:4,
26   Sanchez 22:22-24:21; Turk 34:23-35:23.
     [9]  Blanchette 23:14-25:19; Hamilton 102:23-103:14; Russell 40:16-41:1; Sanchez 44:14-20.
27   [10]  Blanchette 54:6-17; Cohen 126:17-127:5; Kachadourian 77:22-78:9; Lim 110:12-19, 164:24-
     165:3; Russell 41:2-10; Sanchez 82:6-17.
28   [11]  *See* footnote 7, *supra*.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108-2693
415.433.1940

**DEFENDANTS' OPPOSITION TO MOTION
FOR PARTIAL SUMMARY JUDGMENT**           7.           **Case No. C 07 2446 MMC [ECF]**

1   outside sales – to the exclusion of where a loan officer engages in all activities necessary to secure or

2   induce the sale – is unsupported by statute or case law and must be rejected.

3                    **b.    Work Performed in Conjunction with Plaintiffs' Outside Sales is
                            Considered Exempt Activity.**

4

5          Promotional work performed incidental to and in conjunction with the employee's own

6   outside sales or solicitations is regarded as exempt outside sales work.  *See* 29 C.F.R. § 541.500(a),

    (b); 541.703; *Olivo v. GMAC Mortg. Corp.*, 374 F. Supp. 2d 545, 550-51 (E.D. Mich. 2004)

7   (ancillary activities necessary to carry out and generate a sale such as "maintaining contacts with

8   referral sources" can also be considered exempt activities).   A DOL Opinion Letter advised that

9   "activities such as making phone calls, sending e-mails, and meeting with clients in the office are

10  considered exempt if performed incidental to or in conjunction with the…loan officer's own outside

11  sales activities."  DOL Op. FLSA 2006-11 (Mar. 31, 2006) (citing 29 C.F.R. § 541.503).

12         In this case, Plaintiffs regularly solicited customers outside of their fixed headquarters.[12]

13  Numerous plaintiffs also testified that they routinely met with referral sources outside of the office,

14  attended open houses, conducted seminars, and attended social and community events in an effort to

15  solicit clients and generate sales.[13]   Moreover, many loan officers also testified that they made phone

16  calls and sent e-mails in conjunction with their own sales.[14]   Based on the regulations' plain

17  language, both Plaintiffs' outside solicitations and other tasks performed in conjunction with their

18  outside sales activities are sufficient to bring them within the scope of the outside sales exemption.

19  Plaintiffs own testimony establishes that material disputed facts render summary judgment

20  inappropriate in this case.

21

22

23

24  [12] Brooks 44:25-45:8, 75:19-23; Cohen 85:17-20; Flanagan 81:22-83:20, 96:4-18; Gora 102:22-25;
    Hamilton 54:18-55:18; Russell 83:12-84:14; Sabater 29:10-30:4, 65:2-21, 68:7-24, 90:11-16, 98:4-
25  17; Sanchez 39:22-25, 53:3-14, 66:18-67:4; Turk 70:6-71:22, 129:22-130:4.
    [13] Brooks 44:22-45:17;  Cohen 54:15-55:13; 56:23-58:20;  Gora 76:18-20;  Lim 117:14-118:13,
26  154:15-155:18; Russell 82:6-22, 91:11-92:17; Sabater 77:3-22, 89:18-90:9; Sanchez 41:9-42:20,
    43:1-44:13; Santangelo 28:10-25, 61:4-62:5, Turk 74:1-13, 77:7-22.
27  [14] Brooks 45:21-47:4; Cohen 66:16-67:23; Flanagan 149:20-151:14; Gora 49:4-50:2; Moore 63:25-
    64:10; Noda 68:22-69:16; Rojas 25:5-26:10; Sabater 65:22-66:10.  *See also* Dezego 18:8-19:5.
28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

**DEFENDANTS' OPPOSITION TO MOTION
FOR PARTIAL SUMMARY JUDGMENT**          8.          Case No. C 07 2446 MMC [ECF]

3.     **Plaintiffs Customarily and Regularly Engaged in Sales and Solicitations Away from Fixed Headquarters.**

An outside sales employee is one who is "customarily and regularly" engaged away from the employer's place or places of business. 29 C.F.R. § 541.502.  To meet this requirement, the employee must spend time away from his/her headquarters with a frequency that is greater than occasional, but which, of course, may be less than constant. *See* 29 C.F.R. § 541.701; *Sarviss*, 663 F. Supp. 2d at 892.  These activities need only occur as little as 1 to 2 times per week for an hour or two to meet the "customarily and regularly" requirement. *Billingslea*, 2007 U.S. Dist. LEXIS 52566; DOL Op. FLSA 2007-1 (Jan. 25, 2007).  As set forth below, many Plaintiffs testified that they engaged in sales-related activities away from a fixed headquarter with varying frequency.

a.     **Disputes of Fact Exist As To Whether HBUS Bank Branches Should Be Considered A Fixed Site.**

Plaintiffs argue that HBUS bank branches should be considered "the employer's place of business" for the purpose of evaluating whether Plaintiffs engaged in sufficient outside sales activities.  However, such an argument, even if true, fails to establish that Plaintiffs did not satisfy the outside sales exemption as a matter of law or based on undisputed facts, as Plaintiffs testified that they did not spend a standard amount of time working in bank branches, or that they even all worked in bank branches throughout the relevant period.  Indeed, as set forth below, some Plaintiffs testified that they spent little or no time working from bank branches, while others testified that on occasion, they met with customers there for convenience.  Thus, material issues of fact exist as to whether bank branches should be considered "fixed sites" where Plaintiffs were "headquartered" or made "telephonic solicitation of sales." *See* 29 C.F.R. § 541.502.  In fact, the real issue is whether the time spent in bank branches by any loan officer was in connection with his or her own outside sales, such that the work performed was part of the loan officers exempt outside sales activities, which cannot be resolved on summary judgment.

Plaintiffs argue that 29 C.F.R. § 541.502's definition of "the employer's place of business" requires that this Court find that time spent in HBUS branches was "inside" sales time.  While it is true that 29 C.F.R. § 541.502 defines "the employer's place of business" to include locations that need not be owned by the employer, it does not define each and every location that a loan officer

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

may perform some sales activity as "the employer's place of business." Rather, 29 C.F.R. § 541.502 clarifies that "[a]ny fixed site, whether home or office, *used by a salesperson as a headquarters or for telephonic solicitation of sales* is considered one of the employer's places of business." (emphasis added).  Contrary to Plaintiffs' argument, the mere fact that an employer may be affiliated with a particular location where a loan officer spends time does not make that location a "fixed site" as defined by 29 C.F.R. § 541.502.  *See, e.g., Billingslea,* 2007 U.S. Dist. LEXIS 52566; DOL Op. FLSA 2007-2 (Jan. 25, 2007).

While some Plaintiffs testified that they spent a majority of time working from a HBUS branch, others testified that they spent no time in the branches.[15]  Still others testified that time spent working there was just one of several activities, and that they would meet customers at branches only as a convenience or would spend only one or two days a week working at the branch to meet with referrals or prospects.[16]  Others testified that they did not have a dedicated office space or phone at the branch(es) they covered.[17]  Thus, for these Plaintiffs, a material issue of fact exists as to whether the time spent at branches constituted a "fixed site" in which they were "headquartered" or "used…for telephonic solicitation of sales." 29 C.F.R. § 541.502.

    **b.**  **Material Issues Of Fact Exist as to Whether The Various Condominium Developments, Various Nonprofits and Various Community Development Agencies Constituted  A Fixed Headquarters.**

Plaintiffs also contend that various non-HSBC related sites visited by Plaintiffs as part of their sales activities, such as condominium developments, nonprofits and community development agencies ("CDAs") should be treated as "the employer's place of business or places of business." 29

---

[15] *Compare* Chaussy 69:12-16, 72:3-10, 123:14-20; Wong 48:3-14, 101:9-102:6 *with* Brooks 57:24-58:10 (prohibited from going to a branch for period of time); Gora 68:3-10 (no branch for period of time); Kanazawa 143:22-144:21 (not in branches for period in 2006); Lim 72:7-13, 78:3-22 (no branches during entire employment); Rojas 20:15-22:6 (not assigned a branch for the first 3 to 6 months with HMCU); Russell 71:21-25 (spent no time at branch for period of time); Sanchez 38:8-14 (no branches in Orlando); Santangelo 75:19-76:18 (no bank branches because assigned to other loan officers); Turk 129:22-130:4 (no branches for a period of time).
[16] Dezego 20:14-21; Flanagan 139:14-140:3, 144:22-:145 10; Moore 64:23-65:16; Rojas 22:7-23:13.
[17] Blanchette 61:16-62:9; Montesinos 39:10-40:1.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108 2693
415.433.1940

DEFENDANTS' OPPOSITION TO MOTION
FOR PARTIAL SUMMARY JUDGMENT    10.    Case No. C 07 2446 MMC [ECF]

1  C.F.R. § 541.502.  Again, a dispute of fact exists as to whether the amounts of time spent by various

2  Plaintiffs at the foregoing sites constitute "fixed sites" where Plaintiffs were "headquartered."

3      Not every indoor location in which Plaintiffs perform sales activities can be considered

4  Plaintiffs' headquarters.  For example, in *Nielsen v. DeVry, Inc.*, 302 F. Supp. 2d 747, 753 (W.D.

5  Mich. 2003), student enrollment officers, who were classified as outside salespersons, were required

6  to maintain a home office and assigned specific sales territories.  *Id*. at 750.  The high schools within

7  their territories served as locations where they did "much of their work" by soliciting students at

8  workshops, as well as networking to build relationships with high school principals and career

9  counselors.  *Id*.  In its analysis of whether the enrollment officers were customarily and regularly

10  engaged in sales activities away from their headquarters, the court reasoned that the home offices,

11  equipped with a computer, internet access, and a DeVry dedicated telephone line, was a fixed site

12  and that the workshops and networking at the high schools constituted outside sales field work.  *Id*.

13  at 761.  Finally, the court also found that the work performed at the home offices was "'incidental

14  and in conjunction with the employee's own outside sales or solicitation.'"  *Id.*

15      Like the high schools in *Nielsen*, the non-profits, CDAs, and condominium developments

16  that Plaintiffs visited should not be treated as Plaintiffs' "headquarters."  Rather, Plaintiffs' work at

17  these locations should be considered outside sales field work.  Like the enrollment officers, Plaintiffs

18  conducted workshops or seminars at these locations.[18]  In addition, Plaintiffs used these locations to

19  network and build relationships.[19]  Plaintiffs did not "headquarter" themselves at these locations, nor

20  did they have established office hours.[20]  Rather, they had "headquarters" like the home offices in

21

22

23

24

---

25  [18] Brooks 44:22-45:17; Cohen 96:23-98:2; Kachadourian 74:7-75:17; Noda 28:12-23, 30:15-23; Russell 115:16-116:19; Sanchez 35:22-36:11.

26  [19] Hamilton 36:6-37:24; Kachadourian 38:2-39:2; Noda 30:24-31:1; Rojas 58:15-59:21; Russell 119:12-120:11.

27  [20] Hamilton 50:17-51:10 (only went to non-profits when called by non-profits); Rojas 77:5-19 (went

28  to multiple non-profits each day and/or week); Russell 100:13-23 (no HMCU computer access from non-profit offices); Sabater 55:19-57:17 (no non-profit office space provided, no set "office" hours).

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

1   *Nielsen* (such as LPOs) where they have use of a computer system, internet access, and HMCU

2   dedicated telephone lines.[21]

3          If anything, these non-profits, CDAs, or condominium developments are more akin to a

4   "sample room" or "trade show" than to the "employer's place of business." 29 C.F.R. § 541.502

5   states that "sample rooms" or "trade shows of short duration (i.e., one or two weeks) should not be

6   considered as the employer's place of business." Here, loan officers who sought to generate sales at

7   non-profits, CDAs, or condominium developments solicited people who visited these locations for

8   short periods of time—much like attending a trade show or making use of a sample room. For

9   instance, Plaintiff Turk testified that he attempted to generate sales at a condominium development

10  only once during his employment.[22]  In sum, a material issue of fact exists as to whether non-HSBC

11  related entities constitute "fixed sites." Likewise, a material issue of fact exists as to whether time

12  spent by Plaintiffs visiting and making sales at these locations should be considered time "away

13  from the employer's place of business."

14          **c.      Plaintiffs' Own Testimony Establishes They Customarily and
                       Regularly Performed Work Away from a Fixed Headquarters.**

15          Many plaintiffs testified they engaged in sales related activities away from their fixed

16  headquarters with a greater frequency than that which the *Billingslea* court deemed sufficient to

17  satisfy the outside sales exemption.[23]  For example, Plaintiff Cohen testified that he developed both

18  outside referral sources and potential customers by attending open houses every Saturday and

19  Sunday, visiting realtors at their offices, and meeting his customers at their homes regarding their

20  mortgage applications.[24]  Similarly, Plaintiff Russell "did home buyer education workshops and

---

21  [21] Noda 37:4-13 (assigned desk at LPO and dedicated telephone line); Rojas 66:10-16 (assigned desk
22  at LPO and dedicated phone line); Russell 53:23-54:16 (assigned cubicle at LPO; LPO phone
    number and address on business card).
23  [22] Turk 154:5-22. *See also* Rojas 37:7-38:11 (worked at condo development two to three times a
24  week for approximately six weeks).
    [23] For references other than those discussed briefly below, please see:  Blanchette 68:3-8; Cohen
25  54:15-55:13, 56:23-58:20, 85:17-20; Flanagan 81:22-83:20, 87:20-89:10, 93:5-15, 94:10-24, 96:4-
26  18; Gora 45:23-46:5, 102:22-25; Kachadourian 38:7-17, 44:9-46:2; Kilinski 71:22-73:2; Moore
    82:23-83:23, 85:9-86:7; Russell 83:13-84:14, 105:7-10; Sabater 24:10-22, 28:5-30:12, 98:4-17;
27  Santangelo 60:10-64:14.
    [24] Cohen 55:3-5, 58:1-14, 85:17-20.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFENDANTS' OPPOSITION TO MOTION          12.          Case No. C 07 2446 MMC [ECF]
FOR PARTIAL SUMMARY JUDGMENT

seminars, foreclosure prevention workshops and seminars, credit fairs," and routinely met with customers, builders and nonprofit organizations outside of the office. In fact, from April 2006 until July 2008, Russell estimates that she spent "90 to 100 percent" of her time outside the loan production office.[25] Plaintiff Kachadourian conducted 60% of his customer meetings outside of an HSBC office approximately one to two hours per week.[26] For much of his employment, Plaintiff Sabater engaged in heavy "windshield time" canvassing and meeting with customers and referral sources.[27] Plaintiff Noda met prospective customers weekly at non-profit agencies, the LPO, her home and at housing fairs. Noda 31:20-35:3. Even if Plaintiffs establish that some opt-ins did not customarily and regularly engage in outside sales work, Plaintiffs are not collectively entitled to summary judgment, as the testimony of numerous opt-in plaintiffs demonstrates that many of them did customarily and regularly engage in sales work away from where they were headquartered.

### 4. The Cases Cited in Support of Plaintiffs' Position are Distinguishable From the Instant Case.

Plaintiffs rely principally on three cases in support of their outside sales exemption argument. None advance Plaintiffs' position. *Chao v. First Nat'l Lending Corp.* addresses the unremarkable exemption status of loan officers working from one single office. 516 F. Supp. 2d 895 (N.D. Ohio 2006). All loan officers at issue in the case, as well as the company's owner, testified that loan officers rarely, if ever, met a customer outside of the office. *Id.* at 901. No evidence of other outside activities was presented. *Id.* In contrast, this case involves loan officers who engaged in numerous outside sales activities at a myriad of locations across the country. Gates Decl. ¶5. The diversity of locations and loan officer experiences in this case distinguish it from *Chao*.

*Schultz v. All-Fund, Inc.* is similarly distinguishable from this case. 2007 U.S. Dist. LEXIS 59300 (D.Md., Aug. 13, 2007). In *Schultz*, the employer was unable to rebut the plaintiff loan officers' testimony that they rarely met with customers outside of the office. Specifically, the two plaintiffs testified that they each left the office to meet with clients less than five times during their

---

[25] Russell 83:13-84:8, 84:9-14.
[26] Kachadourian 84:15-86:1.
[27] Sabater 24:10-22, 98:4-17.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

**DEFENDANTS' OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT**          13.          Case No. C 07 2446 MMC [ECF]

1   approximate 2 years of employment.  *Id.* at *6, *7.  Here, many Plaintiffs readily admit that they

2   regularly met with clients and referral sources outside of their headquarters.

3           In *Casas v. Conseco Fin. Corp.*, Conseco's senior vice-president testified that loan officers

4   generally spent 80 to 90 percent of their time in the office.   2002 U.S. Dist. LEXIS 5775, *32

5   (D.Minn., Mar. 31, 2002).  Because the FLSA required, at that time, that an employee devote at least

6   80 percent of his time to outside sales to qualify as an outside salesman, the Court found the senior

7   vice-president's testimony sufficient to doom the defendant's exemption argument.[28]  *Id.*  Plaintiffs'

8   reliance on *Chao, Schultz,* and *Casas* is misplaced.[29]

9           **C.     Loan Officers Making More Than $100,000 Are Exempt Highly Compensated
                      Employees.**

10          Plaintiffs' motion fundamentally misconstrues the highly compensated exemption.  Contrary

11  to Plaintiffs' argument, the highly-compensated exemption does *not* depend on Plaintiffs making

12  more than $100,000 per year also being exempt under the administrative and/or executive

13  exemptions.[30]  Rather, Defendants need only show that Plaintiffs made more than $100,000 per year

14  and customarily and regularly performed <u>one</u> of the qualifying administrative and/or executive

15  exemption duties.  *See* 29 C.F.R. § 541.601(a); *see also Sarviss,* 663 F. Supp. 2d at 893 ("For the

16  purpose of the highly compensated employee exemption, the Court need only be satisfied that one of

17  [the administrative exemption] prongs is met"); *Coppage v. Bradshaw*, 665 F. Supp. 2d 1361, 1369

18  (N.D. Ga. 2009) ("29 C.F.R. § 541.601(c) makes clear that a highly compensated employee need not

19

20

21

22  [28] In 2004, the outside sales exemption was amended to delete the percentage of time requirement,
    instead focusing on the primary duty test. 69 Fed. Reg. 22122, 22160-61 (Apr. 23, 2004).

23  [29] Additionally, policy considerations dictate that Plaintiffs be categorized as exempt outside sale
    employees, as Plaintiffs:  (1) to a great extent work individually; (2) are not subject to restrictions

24  regarding their work hours; (3) through commissions can earn as much or as little, within their range
    of ability, as their ambition dictates; (4) receive commissions as extra compensation for their work;

25  (5) work away from HMCU's place of business; and (6) are not subject to the personal supervision
    of their Sales Managers.  *See, e.g., Jewel Tea Co. v. Williams*, 118 F.2d 202, 207-08 (10th Cir.

26  1941).  *See also D'Este v. Bayer Corp.*, 2007 U.S. Dist. LEXIS 87229 (C.D. Cal., Oct. 9, 2007);

27  *Barnick v. Wyeth*, 522 F. Supp. 2d 1257, 1260 (C.D. Cal. 2007); *Nielsen*, 302 F. Supp. 2d at 753.
    [30] There would be no need for the highly compensated exemption if employees are already exempt

28  under a separate exemption.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

**DEFENDANTS' OPPOSITION TO MOTION
FOR PARTIAL SUMMARY JUDGMENT**          14.          **Case No. C 07 2446 MMC [ECF]**

1  satisfy each requirement stated in the administrative and executive employee exemptions").[31]

2  **1.  Plaintiffs Performed At Least One Exempt Administrative Duty.**

3  Section 541.200(a)(1)-(3) defines an administratively exempt employee as one whose

4  primary duty: (a) is the performance of office or non-manual work directly related to the

5  management or general business operations of the employer or the employer's customers, and

6  (b) includes the exercise of discretion or independent judgment with respect to matters of

7  significance.  29 C.F.R. § 541.200(a)(1)-(3).  An employee's work "directly related to the

8  management or general business operations of the employee's *customers*" is considered

9  administratively exempt work. 29 C.F.R. § 541.201(c) (emphasis added). Thus, "employees acting

10  as advisers or consultants to their employer's clients or customers (as tax experts or financial

11  consultants) may be exempt." *Id.* As to independent judgment and discretion, an employee must

12  compare and evaluate possible courses of conduct on matters of significance, and act or make a

13  decision after the various possibilities have been considered. 29 C.F.R. § 541.202(a).

14  In a recent case addressing the interplay between the administrative and the highly

15  compensated exemptions, pharmaceutical sales representatives making $100,000 or more per year

16  fell within the highly compensated exemption because they performed just one exempt duty.

17  *Amendola v. Bristol-Myers Squibb*, 558 F. Supp. 2d 459 (S.D.N.Y. 2008).  These sales

18  representatives' primary responsibility was to "influence the prescription practices of the providers."

19  *Id.* at 463.  They created presentations and promotional materials for providers and exercised

20  significant independent discretion over their schedules, but were required to follow the employer's

21  general guidelines while performing their work. *Id.* at 464. The court found these duties constituted

22  "the exercise of discretion or independent judgment with respect to matters of significance" within

23

24  ───────────────

25  [31] *Mohorn v. Tennessee Valley Auth.*, cited by Plaintiffs, is inapposite.  2007 U.S. Dist. LEXIS
52014 (E.D. Tenn. July 17, 2007).  There, the employer argued that employees who worked as

26  Radiological Control Shift Supervisors were exempt highly compensated employees because they
made more than $100,000 per year and oversaw lower level employees. *Id.* at *20. The court

27  rejected the employer's arguments, reasoning that the employees at issue did not perform any
administrative exempt duties because they performed clerical work *and* they did not exercise

28  independent judgment. *Id.* at *22-23. But, as discussed *infra*, these are not the facts of this case.

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFENDANTS' OPPOSITION TO MOTION          15.          Case No. C 07 2446 MMC [ECF]
FOR PARTIAL SUMMARY JUDGMENT

the regulations' meaning, such that the sales representatives performed one exempt duty and were covered by the highly compensated exemption. *Id.* at 478.

Plaintiffs, who made more than $100,000 per year, or a pro rata portion thereof, performed at least one of the qualifying exempt administrative duties. For example, Plaintiffs Gora and Flanagan, who made more than $100,000 per year, or a pro rata portion thereof, testified that, as a Premier Mortgage Lending Consultants, their duties and responsibilities required them to advise and consult with Defendants' customers regarding their financial options.[32] They also testified that they were tasked with providing an additional level of service and consultation for Defendants' premier banking customers, and that, as part of their duties, they were required to help develop newly opened bank branches.[33] Finally, they indisputably exercised substantial discretion and independent judgment over "matters of significance" to Defendants – the sale of financial products to their premier customers, providing quality service to such customers, and, provided that customers' lending applications were approved, authority to bind Defendants to financial agreements with their customers.[34] *Cf. Amendola*, 558 F. Supp. 2d at 477.[35] Significant disputes of fact exist regarding duties that Plaintiffs performed which arguably fall within the administrative exemption's duties. Thus, Plaintiffs' motion for summary judgment regarding this exemption should be denied.

### 2.     Some Plaintiffs Performed At Least One Exempt Executive Duty.

Exempt executive employees are defined as those employees:

---

[32] Gora 52:5-55:15, 88:18-89:6; Flanagan 67:24-68:3, 116:24-117:19, 117:20-119:19, 156:2-17, 193:8-19.

[33] Gora 65:2-6, 78:17-23, 127:13-129:19; Flanagan 109:12-110:4, 115:7-18, 184:18-185:16, 202:22-204:11.

[34] Gora 32:18-34:9; Flanagan 47:11-49:14. *See also* Spronck 118:20-23.

[35] Plaintiffs may argue that a recently issued DOL Interpretation precludes the possibility that mortgage loan officers could ever meet any of the administrative exemption's requirements. In DOL Administrator's Interpretation No. 2010-1 (Mar. 24, 2010), the DOL clarified that generally, mortgage loan officers' primary duty involves sales, such that their primary duty cannot be related to the management or general business operations of the employer's customers—the first duty of the administrative exemption *Id.* at p. 7. However, the Interpretation did not foreclose the possibility that mortgage loan officers might meet the second duty of the administrative exemption – "the exercise of discretion and independent judgment with respect to matters of significance." *See* 29 C.F.R. § 541.200(a)(3). Because an employee need only perform *one* of the qualifying duties for the administrative exemption to fall within the highly compensated exemption, the Interpretation does not bar Defendants' reliance on the exemption.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFENDANTS' OPPOSITION TO MOTION
FOR PARTIAL SUMMARY JUDGMENT          16.          Case No. C 07 2446 MMC [ECF]

(2)     Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;

(3)     Who customarily and regularly directs the work of two or more other employees; and

(4)     Who has the authority to hire or fire other employees or whose recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a)(2)-(4).

Here, Plaintiff Spronck, who worked as a Retail Sales Manager/Team Leader[36] and made more than $100,000 per year, also performed duties likely to place her within the highly compensation exemption's scope.[37]   During at least a portion of her employment with HMCU, Spronck supervised the day-to-day activities of two or more loan officers, and recommended implementation of certain sales techniques.[38]   She also recommended the hiring of those loan officers.[39]   Likewise, her duties included ensuring that HMCU abided by laws prohibiting discrimination in the work place.[40]   These facts demonstrate that some Plaintiffs may have performed at least one executive exempt duty.

**D.      Triable Issues of Fact Prevent Summary Judgment on the Statute of Limitations and Liquidated Damages, as Well as a Good Faith Defense.**

**1.      An Extended Statute of Limitations Is Inappropriate Because Defendants Have Not Acted with Willful Disregard for the FLSA.**

The FLSA's two year statute of limitations will be extended only if an employer knowingly or recklessly disregarded the possibility that it was violating the FLSA. *See Alvarez v. IBP, Inc.*, 339 F.3d 894, 908 (9th Cir. 2003).   However, actions are not considered willful even if the employer acts unreasonably, provided the conduct is not reckless. *Maciel v. City of Los Angeles*, 569 F. Supp. 2d 1038, 1043 (C.D. Cal. 2008).   Knowing or reckless disregard means being on notice of the FLSA's

---

[36] Defendants do not concede that any Team Leader or Retail Sales Manager is properly included in a collective class.   Indeed, the evidence cited herein regarding Spronck's duties aptly demonstrates why Team Leaders and/or Sales Managers are not properly included this case.

[37] Spronck 19:8 – 21:22; 55:21-56:13 .

[38] Spronck 46:8-48:7, 52:23-53:19; 126:20-127:5.

[39] Spronck 44:20-46:3, 129:20-130:16.

[40] Spronck 41:11-42:19.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108-2693
415.433.1940

DEFENDANTS' OPPOSITION TO MOTION
FOR PARTIAL SUMMARY JUDGMENT                17.                Case No. C 07 2446 MMC [ECF]

1   obligations but failing to take affirmative action to comply. *Alvarez*, 339 F.3d at 908-09. In *Alvarez*,

2   the employer had worked with the Department of Labor to resolve previous donning and doffing

3   disputes for its non-union operations. Later, because the employer was on notice that the donning

4   and doffing issue was a problem, but failed to take any action, the employer was found to have acted

5   willfully when union employees sued for the same issue. *Id.* at 899, 909.[41]

6        Here, Plaintiffs provide no evidence that Defendants were on notice of any misclassification

7   issue for loan officers and that they failed to take corrective action. Rather, the only "evidence"

8   Plaintiffs submit is their opinion that the compensation consultant and human resources professional

9   responsible for determining whether to classify loan officers as exempt acted unreasonably.

10   However, even assuming *arguendo* that such conduct was unreasonable, unreasonable conduct does

11   not equate to knowing or reckless disregard. *Maciel*, 569 F. Supp. 2d at 1043. Moreover, Plaintiffs

12   ignore evidence, discussed more extensively below, demonstrating that Defendants took affirmative

13   steps seeking to avoid violation of the FLSA by conducting job classification reviews every two

14   years.[42] Further, Plaintiffs offer no evidence of any prior complaints or violations regarding loan

15   officers' exemption status.[43]

            **2.**     **Plaintiffs' Are Not Entitled to Liquidated Damages Because Defendants**
16                   **Acted Reasonably and in Good Faith.**

17        Courts have discretion to deny liquidated damages if an employer shows that it acted

18   reasonably and in good faith. *See* 29 U.S.C. § 260. Courts measure an employer's actions both

19   subjectively and objectively. To satisfy the subjective "good faith" component, the employer must

20   show that it had "an honest intention to ascertain what the FLSA requires and to act in accordance

21   with it." *Brock v. Shirk*, 833 F. 2d 1326, 1330 (9th Cir. 1987), *vacated on other grounds*, 488 U.S.

22   806 (1988).[44] To satisfy the objective "reasonable grounds" requirement, the employer must show

23

---

24   [41] *See also Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 918-19 (9th Cir. 2003) (prior violations,

25   employee testimony of complaints, and employer's failure to rebut this evidence sufficient to grant summary judgment on limitations issue).

26   [42] Gates 143:6-13; Jennings 10:17-11:5, 149:2-16; Lampka 58:6-59:12, 79:9-24; Platzer Decl. ¶6.

    [43] Gates 142:22-143:5; Jennings 76:25-77:15.

27   [44] The test of "good faith" to establish a section 260 defense to liquidated damages is less stringent

28   than the test of "good faith" under section 259(a)'s complete defense to all FLSA liability. *Keeley v. Loomis Fargo & Co.*, 183 F.3d 257, 269-70 and n.11 (3d Cir. 1999) (employer with no defense

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

**DEFENDANTS' OPPOSITION TO MOTION**
**FOR PARTIAL SUMMARY JUDGMENT**      18.      **Case No. C 07 2446 MMC [ECF]**

1    that its "failure to obey the statute was…predicated upon such reasonable grounds that it would be

2    unfair to impose upon him more than a compensatory verdict." *Id.*

3         In *Bratt v. County of Los Angeles*, 912 F.2d. 1066 (9th Cir. 1990), *cert. denied*, 498 U.S.

4    1086 (1991), probation officers were misclassified.  However, the Ninth Circuit affirmed the district

5    court's decision not to award liquidated damages.  With regard to "good faith," the Ninth Circuit

6    agreed that the county had an honest intention to ascertain FLSA requirements and to act in

7    accordance by conducting an objective job classification study.  Plaintiffs argued that the county's

8    steps were not enough, evidencing bad faith.  While the county could have done a better job analysis,

9    the Ninth Circuit found that this did not demonstrate that the county acted with anything other than

10   an honest intention to comply with the FLSA.  In fact, there was no evidence that the county

11   attempted to avoid its responsibilities under the FLSA.  Therefore, the Ninth Circuit upheld the

12   district court's ruling that the county's acted in good faith.  The Ninth Circuit also found that it was

13   reasonable for the county to look to analogous jobs, even though those jobs did not directly address

14   government employees.

15        Here, HMCU has shown that it acted in good faith and has reasonable grounds for believing

16   that its classification of loan officers complies with the FLSA.  HMCU conducts an objective study

17   regarding loan officers' exemption status every two years.[45]  These studies are conducted by a

18   compensation consultant trained with regard to the FLSA and its regulations.[46]  The compensation

19   consultant, with the help of a human resources professional supporting the business and the head of

20   the business unit, reviews the job description for the position, any information regarding loan

21   officers' job duties, and the FLSA's current requirements for exemptions.[47]  Moreover, HMCU

22   conducts market comparisons to see how others in the market classify loan officers.[48]  Although

---

24   under section 259(a) may have a defense under section 260's less strict standard).  Moreover, a
     finding of willfulness on the statute of limitations does not compel an award of liquidated damages.
25   *Hill v. J.C. Penny Co., Inc.*, 688 F.2d 370, 375 n.3 (5th Cir. 1982), *citing Coleman v. Jiffy June
     Farms, Inc.*, 458 F.2d 1139 (5th Cir.), *cert. denied*, 409 U.S. 948 (1972).
26
     [45] Lampka 58:6-59:12; Platzer Decl. ¶6.
27   [46] Lampka 16:17-19, 17:1-8, 21:25-22:13, 55:24-56:24, 58:6-59:12.
     [47] Lampka 24:11-26:2, 30:19-31:23, 63:6-69:3.
28   [48] Jennings 149:20-150:12; Lampka 191:25-192:15.

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFENDANTS' OPPOSITION TO MOTION          19.          Case No. C 07 2446 MMC [ECF]
FOR PARTIAL SUMMARY JUDGMENT

1   Plaintiffs may argue about the sufficiency of HMCU's efforts, they present no evidence that HMCU

2   acted with anything other than an honest intention to ascertain the FLSA's requirements and to

3   comply with the law.

4       Similarly, HMCU has also shown that it had reasonable grounds for classifying loan officers

5   as exempt.  As discussed above, the compensation consultant reviews what others in the marketplace

6   do with regard to loan officer classification.[49]  In addition, in making classification decisions, the

7   compensation consultant relies on the experience of the business unit's management to develop and

8   assess job duties and expectations.[50]   Finally, HMCU relied upon a 2006 DOL Opinion Letter

9   finding loan officers who performed the same duties as HMCU loan officers exempt under the

10  outside sales exemption.  Platzer Decl. ¶¶3-5.[51]

11      Defendant's evidence is the exact type of evidence that shows that an employer acted in good

12  faith and had reasonable grounds for its actions.  In *Berry v. Sonoma County,* 791 F.Supp. 1395

13  (N.D. Cal. 1992), *overruled on other grounds*, 30 F.3d 1174 (9th Cir. 1994), the county made efforts

14  to learn about the FLSA and determine appropriate compensation by having an analyst attend

15  programs and seminars, review the FLSA, regulations, and wage and hour opinion letters, and

16  review other pertinent materials.  Plaintiffs criticized the personnel analyst's efforts because she did

17  not discuss the on-call policy with any manager, did not familiarize herself with office staffing, did

18  not review any documents reflecting frequency of calls, and did not familiarize herself with

19  coroners' duties.   However, the court ruled that the county had acted in good faith and was

20  reasonable in determining that it was in compliance with the FLSA.   "Personnel analysts had

21  attended seminars, reviewed the statute...as well as Wage and Hour rulings regarding other on-call

22  employees." *Id.* at 1418.  The court recognized that the employer's actions did not demonstrate a

23  clear cut violation and denied the plaintiffs' liquidated damages request.[52]

---

[49] Jennings 149:20-150:12, Lampka 136:13-137:23.

[50] Lampka 80:15-82:12.

[51] HMCU's verified interrogatory responses also address HMCU's reliance on the 2006 DOL Opinion Letter.  Plaintiffs' claim that these interrogatories were unverified is incorrect. *See* Barrett Decl. ¶ 2.

[52] *See also Baden-Winterwood v. Life Time Fitness,* 2007 U.S. Dist. LEXIS 49777 (S.D. Ohio July. 10, 2007), *overruled on other grounds,* 566 F.3d 618 (6th Cir. 2009) (reliance on publications,

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFENDANTS' OPPOSITION TO MOTION
FOR PARTIAL SUMMARY JUDGMENT          20.          Case No. C 07 2446 MMC [ECF]

Moreover, review of personnel decisions by legal counsel is evidence sufficient to support a decision not to award liquidated damages. In *Roy v. County of Lexington*, 141 F.3d 533 (4th Cir. 1998), the county relied upon the advice of its legal counsel in designing its compensation structure and modified its compensation structure on an ongoing basis to accommodate changes in the FLSA. The court rejected the argument that the employer was required to also secure an opinion letter from the Wage and Hour Division. *Id.* at 548-49. *See also Featsent v. City of Youngstown*, 70 F.3d 900, 906-07 (6th Cir. 1995) (liquidated damages not imposed against city represented by attorney because, given the attorney's silence, city entitled to reasonable belief that its agreement did not violate FLSA); *Hill,* 688 F.2d at 375 (defendant's reliance on the advice of counsel insulated it from an award of liquidated damages under the FLSA). Like the employers discussed above, HMCU's internal legal counsel provided legal advice regarding the outside sales exemption's application to HMCU loan officers. Platzer Decl. ¶3-5, Exh. A and B. Given the substantial evidence regarding Defendants' good faith and reasonable actions, Plaintiffs' request for summary judgment on liquidated damages is improper.

### 3.  Defendants Can Establish Good Faith as a Complete Defense to This Action.

An employer may establish a complete defense to an FLSA claim by showing that "it acted in (1) good faith, (2) conformity with, and (3) reliance on the DOL's regulations or the Administrator's Opinion Letter." *Frank v. McQuigg*, 950 F.2d 590, 598 (9th Cir. 1991). The evidence must show that a reasonably prudent employer would have acted the same way, and that the employer had no knowledge of circumstances which should have put it on notice of any contrary authority. *Id.* Here, HMCU engaged in a job classification study every two years whereby job

attendance at seminars, and years of experience with FLSA classifications relevant, precluding summary judgment award on liquidated damages); *Bennett v. SLT/TAG Inc.*, 2003 U.S. Dist. LEXIS 25438 (D. Ore. Feb. 10, 2003) (reliance on industry standard, attendance at seminars, and keeping up to date on wage and hour regulations sufficient evidence of defendant's good faith to deny plaintiff's motion for a summary judgment award of liquidated damages); *Abbe v. City of San Diego*, 2007 U.S. Dist. LEXIS 87501 (S.D. Cal. Nov. 7, 2007) (regular review of labor policies and attending training seminars presented sufficient questions of fact to preclude award of liquidated damages); *Burnley v. Short*, 730 F.2d 136 (4th Cir. 1984) (reliance on industry newsletters to keep informed of FLSA coverage could not be characterized as an ostrich-like attitude of self-delusion, precluding award of liquidated damages).

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108 2693
415 433 1940

**DEFENDANTS' OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT**     21.     Case No. C 07 2446 MMC [ECF]

duties were reviewed and reevaluated.[53]   The job duty review and assessment included relying upon information from the business unit managers, who, from their own experiences knew that loan officers engaged in various outside sales activities.[54]   Moreover, HMCU knew of, and acted in reliance upon, the 2006 DOL Opinion Letter where loan officers performing the same duties as HMCU's loan officers fell under the outside sales exemption. Platzer Decl. ¶3-5. Disputed issues of fact preclude summary judgment on the section 259 good faith defense.

**E.   Plaintiffs Incorrectly Focus Upon the Fluctuating Workweek to Measure Damages.**

**1.   When Damages Exist, Overtime Must Be Calculated at One-Half The Regular Rate.**

If any overtime damages are found to be owed in this case, Defendants believe a 0.5 multiplier for calculating any overtime owed should be used.   However, Plaintiff's assertion that Defendants rely upon the "fluctuating workweek" ("FWW") outlined in 29 C.F.R. § 778.114 to advance this proposal is a complete red herring.   In fact, the U.S. Supreme Court has already determined that a 0.5 multiplier should be used to measure overtime damages for individuals who are paid a fixed amount regardless of the number of hours worked. *Overnight Motor Transp., Inc v. Missel,* 316 U.S. 572 (1942).  Specifically, weekly salary is divided by the number of hours worked in a week to determine the regular rate.   Then, one-half of the regular rate is multiplied by the number of overtime hours worked in the week.   The employee receives his/her regular rate for all hours worked through salary, and the additional 50% (0.5 multiplier) of the regular rate payment will make the employee whole for payment of the overtime.   Not only has the 0.5 multiplier test been approved by the U.S. Supreme Court, but the Ninth Circuit has directed that overtime be calculated exactly as Defendants suggest. *See Brennan v. Valley Towing Co. Inc.,* 515 F.2d 100 (9th Cir. 1975); *Marshall v. Chala Enter. Inc.,* 645 F.2d 799 (9th Cir. 1981).   The Ninth Circuit did not consider section 778.114 when calculating overtime in either case.[55]   Given the aforementioned

---

[53] Lampka 58:6-59:12; Platzer Decl. ¶6.

[54] Lampka 80:15-82:12; Gates 53:19-57:6, 65:12-66:8.

[55] The Eighth Circuit also has ruled that the one-half regular rate method is appropriate.  In *Marshall v. Hamburg Shirt Corp.,* 577 F. 2d 444 (8th Cir. 1978), the employer's pay plan violated both fluctuating workweek and Belo pay plan requirements.  The regular rate was calculated by dividing the regular weekly compensation by the number of hours actually worked in each week.  "Additional

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

1     decisions, Plaintiffs' focus on the FWW method is misplaced.

2          In *Valley Towing*, the court ruled that if there is no agreement as to the regular rate because

3     employees are not paid by the hour, the regular rate is to be determined by "dividing the weekly

4     wage payable for the working of the scheduled workweek by the number of hours in such scheduled

5     workweek." *Valley Towing,* 515 F.2d at 106.   The court directed that back overtime should be

6     calculated at one-half of the regular rate for the hours of overtime each week.  *Id.* at 109, 110

7     (providing example of calculation method).   Similarly, in *Chala Enterprises,* employees received a

8     set salary for a 60-hour workweek.   As the employer could not show an express agreement with its

9     employees as to the calculation of the regular rate of pay for the first 40 hours of work per week, the

10    court directed that the regular rate be determined by dividing the weekly wage payable for the

11    workweek by the number of hours in the workweek, citing to *Valley Towing. Chala Enter.*, 645 F.2d

12    at 801.   The court then stated that the regular rate should be multiplied by a factor of 1.5 in order to

13    determine the overtime rate.   The number of hours of overtime worked by each employee during the

14    period at issue should then be multiplied "by the amount by which the overtime rate exceeds the

15    regular rate."[56]  *Id.* at 804.  *See also Donovan v. Reno Builders Exch. Inc.,* 1984 U.S. Dist. LEXIS

16    20084 (D. Nev. Jan. 26, 1984) (employer directed to pay employees a half time premium for hours

17    over 40 worked in a week when employees paid a predetermined amount which did not vary in

18
19    compensation at one-half the regular rate should then be added to the weekly salary for all hours
      worked in excess of 40 each week." *Id.* at 447.  Similarly, in *Yellow Transit Freight Lines, Inc. v*
20    *Balven,* 320 F. 2d 495 (8th Cir. 1963), employee was mistakenly believed to be exempt.  He was
      hired for a 41-hour week.  He received a salary and no overtime.  The court ruled that his overtime
21    was to be calculated at the half rate for the 41st hour because he had been compensated for the
      straight time rate for this hour through his salary.
22    [56]  Although the Ninth Circuit described the method of overtime calculation slightly differently in
      *Valley Towing* and *Chala Enterprises,* the concept and result of the calculation is identical.  For
23    example, for an employee receiving a salary of $1200 per week who worked a 48 hour week, both
      cases described the calculation of the regular rate in identical fashion:  $1,200 divided by 48 equals a
24    $25 regular rate.  Under the *Valley Towing* method of calculating back overtime, the $25 regular rate
      would be divided by half and then multiplied by the 8 hours of overtime:  $25 x .50 = $12.50 x 8
25    (hours) = $100.  Under the *Chala Enterprises* method of calculation, first you would multiply $25 by
      1.5 and then multiply that result by 8 hours:  $25 x 1.5 = $37.50 x 8 (hours) = $300.  Then you
26    would determine the regular rate that had already been paid for the 8 hours of overtime:  $25 x 8
      (hours) = $200.  Then you would deduct the amount of the regular rate already paid from the amount
27    of the calculation of the overtime:  $300 - $200 = $100.  Under either description of the calculation
      formula, the result is the same.
28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFENDANTS' OPPOSITION TO MOTION          23.          Case No. C 07 2446 MMC [ECF]
FOR PARTIAL SUMMARY JUDGMENT

accordance with the hours worked). Given the Ninth Circuit's clear direction to calculate alleged overtime wages owed using a 0.5 multiplier, use of the FWW method is unnecessary.

### 2. Although Defendants Do Not Rely Upon the FWW Method, the FWW Method Can Be Used in Misclassification Cases.

Although Defendants believe that the appropriate method of measuring damages has already been resolved by the U.S. Supreme Court and the Ninth Circuit, most courts also find that the FWW method can be applied retroactively in misclassification cases.[57] In fact, the DOL in 2009, the Tenth Circuit in 2008, the First Circuit in 1999 and at least thirteen district courts since 1998 have directed that the FWW method be used in misclassification cases.[58]

In the situation addressed in the Letter, the employer had misclassified employees as exempt and proposed calculating the retroactive overtime by "(1) dividing the weekly equivalent of the employee's bi-weekly salary by the employee's hours worked in that workweek; (2) multiplying the resulting regular rate by one half; and (3) multiplying the half-time rate by the number of overtime hours worked in that workweek." DOL Op. FLSA 2009-3 at p. 1 (Jan. 14, 2009). The DOL

---

[57] Defendants acknowledge that Judge Wilken recently ordered that the FWW could not be used in a Wells Fargo misclassification case. However, Defendants respectfully submit that Judge Wilken's analysis does not appropriately address established U.S. Supreme Court authority on this issue. Moreover, given the conflicting opinions throughout the country, the issue of the FWW's use in misclassification cases is far from settled. Defendants respectfully submit that this Court should reach a conclusion different from Judge Wilken's. *See, e.g., Desmond v. PNGI Charles Town Gaming, LLC*, 2009 U.S. Dist. LEXIS 84632 (D.W.Va. Sept. 16, 2009) (district court judge applied FWW retroactively despite a decision by another judge in the same circuit reaching opposite conclusion).

[58] *See* DOL Op. FLSA 2009-3; *Clements v. Serco, Inc.*, 530 F.3d 1224 (10th Cir. 2008); *Valerio v. Putnam Assoc., Inc.*, 173 F.3d 35 (1st Cir. 1999); *Perez v. Radio Shack Corp.*, 2005 U.S. Dist. LEXIS 33420 (N.D. Ill. Dec. 14, 2005); *Tumulty v. FedEx Ground Package Sys., Inc.*, 2005 U.S. Dist. LEXIS 25997 (W.D. Wash. Aug. 6, 2005); *Tuck v. Methanex Mgmt*, 2006 U.S. Dist. LEXIS 13751 (N.D. Tex. Mar. 29, 2006); *Donihoo v. Dallas Air Motive, Inc.*, U.S. Dist. LEXIS 1417 (N.D. Tex. Feb. 2, 1998); *English v. Pharmerica Drug Sys.*, 2004 U.S. Dist. LEXIS 29900 (N.D. Fla. Aug. 27, 2004); *Torres v. Bacardi Global Brand Promotions, Inc.*, 482 F. Supp. 2d 1379 (S.D. Fla. 2007); *Dooley v. Liberty Ins. Co.*, 307 F. Supp. 2d 234 (D. Mass. 2004); *Saizan v. Delta Concrete Prod.*, 209 F. Supp. 2d 639 (M .D. La. 2002); *Villegas v. Dependable Constr. Serv., Inc.*, 2009 U.S. Dist. LEXIS 98801 (S.D. Tex. Dec. 8, 2008); *Cusumano v. Maquipan Int'l, Inc.*, 2005 U.S. Dist. LEXIS 30257 (N.D. Fla. Nov. 30, 2005); *Saxton v. Young*, 479 F. Supp. 2d 1243 (N.D. Ala. 2007); *Urnikis-Negro v. American Family Prop. Serv., Inc.*, 2008 U.S. Dist. LEXIS 102034 (N.D. Ill. July 21, 2008); *Desmond v. PNGI Charles Town Gaming, LLC*, 2009 U.S. Dist. LEXIS 84632 (N.D. W.Va. Sept. 16, 2009).

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108 2693
415.433.1940

DEFENDANTS' OPPOSITION TO MOTION
FOR PARTIAL SUMMARY JUDGMENT

24.

Case No. C 07 2446 MMC [ECF]

approved the employer's proposed method of calculation, citing to 29 C.F.R. § 778.114(a).  Further, the DOL advised that:

> [a]n agreement or understanding need not be in writing in order to validate the application of the fluctuating workweek method of paying overtime.  Where an employee continues to work and accept payment of a salary for all hours of work, her acceptance of payment of the salary will validate the fluctuating workweek method of compensation as to her employment.

DOL Op. FLSA 2009-3 at p. 2, *citing Valerio,* 173 F.3d at 40 and *Clements,* 530 F.3d at 1230.  Here, numerous Plaintiffs admitted they understood their pay was not dependent upon the number of hours they worked in a particular week or pay period.[59]  Accordingly, the issue of whether to apply the FWW is *not* settled as a matter of law nor can Plaintiffs claim there is not an issue of material fact.

## III.   CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court defer consideration of Plaintiffs' Motion for Partial Summary Judgment until after determination of Defendants' Motion for Decertification.  In the alternative, because Plaintiffs' cannot meet their substantial summary judgment burden, the Court should deny Plaintiffs' Motion for Partial Summary Judgment in its entirety.

Dated: April 2, 2010

/s /Michelle R. Barrett
MICHELLE R. BARRETT
LITTLER MENDELSON
A Professional Corporation
Attorneys for Defendants
HSBC MORTGAGE CORPORATION (USA)
& HSBC BANK USA, N.A.

---

[59] Blanchette 53:5-55:11; Brooks 19:21-20:2; Cohen 36:8-37:2, Flanagan 22:6-23:18, 215:9-216:3; Spronck 123:25-124:9; Turk 135:20-136:1.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFENDANTS' OPPOSITION TO MOTION
FOR PARTIAL SUMMARY JUDGMENT        25.        Case No. C 07 2446 MMC [ECF]