IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILIP WONG, et al., | No. C-07-2446 MMC |
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| v. | |
| HSBC MORTGAGE CORPORATION (USA), et al., | |
| Defendants | |

Before the Court is plaintiffs' Motion for Partial Summary Judgment, filed March 19, 2010. Defendants HSBC Mortgage Corporation (USA) and HSBC Bank USA, N.A. (collectively, "HSBC") have filed opposition, to which plaintiffs have replied. The matter came on regularly for hearing on April 23, 2010. Matthew C. Helland and Paul J. Lukas of Nichols Kaster LLP appeared on behalf of plaintiffs. George J. Tichy, Michelle R. Barrett, and Rachelle L. Wills appeared on behalf of HSBC. Having read and considered the papers filed in support of and in opposition to the motion, and the arguments of counsel, the Court rules as follows.

## BACKGROUND

In the operative complaint, the revised Second Amended Complaint ("SAC"), filed September 9, 2008, the four named plaintiffs, each of whom was employed by HSBC as a

loan officer, allege that HSBC improperly classified them as exempt from the Federal Labor Standards Act ("FLSA"), and, consequently, violated the FLSA by failing to pay them overtime compensation. By order filed March 19, 2008, the Court granted plaintiffs' motion for an order conditionally certifying, for purposes of the FLSA, a class of persons who, as of May 7, 2004, had been employed by HSBC as loan officers within the United States. Notice of the instant action was subsequently provided to the class, and, to date, 120 class members, by filing consent forms, have joined the instant action as plaintiffs.[1]

## LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that a court may grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(c).

The Supreme Court's 1986 "trilogy" of Celotex Corp. v. Catrett, 477 U.S. 317 (1986), Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574 (1986), requires that a party seeking summary judgment show the absence of a genuine issue of material fact. Once the moving party has done so, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." See Celotex, 477 U.S. at 324 (internal quotation and citation omitted). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. "If the [opposing party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Liberty Lobby, 477 U.S. at 249-50 (citations omitted). "[I]nferences to be drawn from the underlying facts," however, "must be viewed in the light most favorable to the party opposing the motion." See Matsushita, 475 U.S. at 587

---

[1] A total of 122 consent forms were filed, including consent forms filed by named plaintiffs Leslie Shearn and Chad Barbiere.

(internal quotation and citation omitted).

## DISCUSSION

By the instant motion, plaintiffs seek summary adjudication as to four of HSBC's affirmative defenses and as to two issues pertaining to damages.[2]

### A. Outside Sales Exemption

The FLSA requires an employer to pay overtime compensation to employees who work more than forty hours per week. See 29 U.S.C. § 207(a)(1). The overtime provisions of the FLSA, however, do not apply to "any employee employed . . . in the capacity of outside salesman." See 29 U.S.C. § 213(a)(1). An "employee employed in the capacity of outside salesman" is an employee whose "primary duty" is "making sales within the meaning of [29 U.S.C. § 203(k)]"[3] or "obtaining orders or contracts for services," and who is "customarily and regularly engaged away from the employer's place or places of business in performing such primary duty." See 29 C.F.R. § 541.500(a).

"The phrase 'customarily and regularly' means a frequency that must be greater than occasional but which, of course, may be less than constant. Tasks or work performed 'customarily and regularly' include work normally and recurrently performed every workweek; it does not include isolated or one-time tasks." See 29 C.F.R. § 541.701; Schmidt v. Eagle Waste & Recycling, Inc., 598 F. Supp. 2d 928, 936-37 (W.D. Wis. 2009) (holding "customarily and regularly" may be less than majority of time).

The phrase "employer's place or places of business" is addressed in a regulation titled "Away From Employer's Place of Business":

> An outside sales employee must be customarily and regularly engaged "away from the employer's place or places of business." The outside sales employee is an employee who makes sales at the customer's place of business or, if selling door-to-door, at the customer's home. Outside sales

---

[2] At the hearing on the motion, plaintiffs confirmed that they do not seek separate rulings on behalf of specific plaintiffs or groups thereof, but, rather, argue that all plaintiffs are entitled to summary adjudication.

[3] Section 203(k) provides as follows: "'Sale' or 'sells' includes any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition." See 29 U.S.C. § 203(k).

3

>does not include sales made by mail, telephone or the Internet unless such contact is used merely as an adjunct to personal calls. Thus, any fixed site, whether home or office, used by a salesperson as a headquarters or for telephonic solicitation of sales is considered one of the employer's places of business, even though the employer is not in any formal sense the owner or tenant of the property. However, an outside sales employee does not lose the exemption by displaying samples in hotel sample rooms during trips from city to city; these sample rooms should not be considered as the employer's places of business. Similarly, an outside sales employee does not lose the exemption by displaying the employer's products at a trade show. If selling actually occurs, rather than just sales promotion, trade shows of short duration (i.e., one or two weeks) should not be considered as the employer's place of business.

See 29 C.F.R. § 541.502.

A separate regulation clarifies that "promotional work that is actually performed incidental to and in conjunction with an employee's own outside sales or solicitations is exempt work." 29 C.F.R. § 541.503(a); see, e.g., Schmidt, 598 F. Supp. 2d at 936 (holding "designing marketing and promotional materials," "attend[ing] local Chamber of Commerce meetings and social functions," and "resolving account or service disputes" of existing customers constituted exempt work, where such work "benefit[ted] [plaintiff's] sales activities" occurring outside of fixed site).

Read together, the above regulations provide that where an employee's primary duty is sales, the employee is properly classified as an "outside sales employee" if the employee performs such primary duty away from a fixed site, and performs such duty, including any promotional work incidental to the employee's outside sales or solicitations, on a greater than occasional basis. See, e.g., Olivo v. GMAC Mortgage Corp., 374 F. Supp. 2d 545, 550-51 (E.D. Mich. 2004) (finding loan officers were outside salespersons where defendant's evidence established "loan officers work[ed] primarily outside of the office to solicit prospective borrowers and referral services"). "Making sales," however, is not an activity that necessarily occurs at one time and/or in one location, but, rather, may comprise a number of component activities. Where some of those component activities take place at a fixed site and others take place outside of a fixed site, the employee is properly classified as an "outside sales employee" if the activities occurring "outside of the office are critical to the sales process" and occur on a customary and regular basis. See

4

Dep't of Labor, Wage and Hour Div., Opinion 2007-1, 2007 WL 506574 (stating that where sales associates engaged in selling homes initially meet prospective buyers and "preview the nature, location, and pricing of the units" in employer's "sales offices," and "close sales by having buyers return to the [employer's] sales office in order to complete a contract of sale," sales associates nonetheless are properly classified as "outside sales persons" where they customarily and regularly engage in activities "critical to the sales process" while outside of the office, in particular, "leaving the sales office to show properties" to prospective buyers);[4] see, e.g., Tracy v. NVR, Inc., 599 F. Supp. 2d 359, 360, 364 (W.D. N.Y. 2009) (holding plaintiff, whose primary duty was to sell lots and who "operate[d] from" model home, not entitled to summary judgment on outside sales exemption, where employer offered evidence such plaintiff, inter alia, "left the model home to demonstrate home sites" an average of 8.25 to 9.75 hours each week, "escorted customers through their homes under construction" at least one hour a week, checked "placement and visibility of promotional signage," visited "the competition" four to five hours each week, and met with realtors on "a regular basis").

Here, plaintiffs contend HSBC cannot establish that any plaintiff is an outside sales employee. See Bothell v. Phase Metrics, Inc., 299 F.3d 1120, 1124 (9th Cir. 2002) (holding employer has burden to establish applicability of FLSA exemption). As set forth in the Court's prior order, it is undisputed that plaintiffs' "primary duty" is selling "financial products." (See Order, filed March 19, 2008, at 11:3-12:12:11.) The threshold issue thus presented is whether plaintiffs, as the parties seeking summary judgment, have met their initial burden to show HSBC is unable to establish that members of the plaintiff class, on a greater than occasional basis, engaged in activities "critical to the sales process" while outside of a fixed site.

"A moving party without the ultimate burden of persuasion at trial . . . has both the

---

[4] Although Department of Labor opinion letters interpreting the FLSA are "not controlling," they "do constitute a body of experience and informed judgment as to which courts and litigants may properly resort for guidance." See Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944).

initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." Nissan Fire & Marine Ins. Co., 210 F.3d 1099, 1102 (9th Cir. 2000). Such moving party "may carry its initial burden of production by either of two methods." See id. at 1106. First, "[t]he moving party may produce evidence negating an essential element of the nonmoving party's case." See id. Second, "after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." See id.

As discussed below, the Court finds plaintiffs have failed to meet their burden under either of the above-described methods, or a combination thereof.

Plaintiffs' motion is supported by three types of evidence, specifically, deposition testimony of certain of HSBC's managers, deposition testimony and/or declarations given by certain of the plaintiffs, and a chart providing in summary form the manner in which loan applications were taken by certain of the plaintiffs, in particular, whether the applications were taken over the telephone, in person, over the internet, or by mail.

At the outset, plaintiffs rely on deposition testimony of certain of HSBC's managers, and note that each such manager testified that he or she did not keep track of the amount of hours loan officers worked and/or did not keep track of the locations where loan officers worked. (See, e.g., Helland Decl. Ex. 16 at 47-48 (testimony of Debra Keller that she did not keep track of number of hours worked by loan officers in her region); id. Ex. 30 at 31 (testimony of Kathleen W. Robinson that she did not keep track of where loan officers in her region met with their customers); id. Ex. 19 at 113-15 (testimony of Amy Ku that she neither tracked the locations where loan officers in her region worked nor number of hours they worked).)

As the Ninth Circuit has recognized, part of the "rationale" for exempting outside salespersons from the FLSA is that such salespersons "'work[ ] away from [the] employer's place of business, [are] not subject to the personal supervision of [the] employer, and [the] employer has no way of knowing the number of hours [they] work[ ] per day.'" See Vinole v. Countrywide Home Loans, Inc., 571 F.3d 935, 945 n.10 (9th Cir. 2009) (quoting

Jewell Tea Co. v. Williams, 118 F.2d 202, 207-08 (10th Cir. 1941)). Consequently, the above-noted managers' testimony is not inconsistent with a finding that plaintiffs, or any of them, are outside salespersons. Indeed, some of the managers on whom plaintiffs rely testified that they expected loan officers to be working primarily outside of a fixed office location. (See, e.g., Helland Decl. Ex. 7 at 18 (testimony of Debra Dezego that a loan officer's "job is to be out of the office" and that "as a manager [she] want[s] [a loan officer] out of the office the majority of the time"); id. Ex. 17 at 30-31 (testimony of Daniel E. Kilfoil that if he was present in an office and saw loan officers, he would "ask them why they weren't out in the field" and would "suggest to them that they should be out in the field"); id. Ex. 21 at 81 (testimony of Eric Liboy that although loan officers were assigned to a branch, "it would not be [Liboy's] expectation that they were to cover that branch, because they would never be able to generate any business" and that loan officers were "encouraged to be more out in the field, resourcing and networking to get more reaches"); id. Ex. 13 at 142 (testimony of Jeannette Jennings that "the majority of [loan officers'] time should be spent outside, obtaining business").)

      Plaintiffs argue that because it is HSBC's burden to establish the exemption, HSBC, in order to meet its burden at trial, will need to offer evidence from non-managerial sources to establish that plaintiffs, in fact, performed their primary duty of making sales away from a fixed site on a greater than occasional basis. In that regard, plaintiffs rely on deposition testimony given by twenty-two of the plaintiffs, declarations of thirteen other plaintiffs, and, as to two additional plaintiffs, both deposition testimony and a declaration. Plaintiffs argue that the testimony and/or declarations provided by those thirty-seven plaintiffs support a finding that plaintiffs have not performed their primary duty away from a fixed site on a greater than occasional basis, and that HSBC lacks evidence to contradict such testimony.

      The testimony on which plaintiffs rely is sufficient to show that at least some of the plaintiffs did not perform any activity that can be characterized as "making sales" while away from a fixed site on a greater than occasional basis. For example, plaintiff Stephanie Hor, when asked at her deposition if "there was ever a time that [she] met with a customer

outside the branch," answered: "No, everything [was] being done at the branch" (see id. Ex. 12 at 100-01, and plaintiff Mario Montesinos, at his deposition, testified that he never met with a "prospect" outside of one of HSBC's offices or branches (see id. Ex. 24 at 80-81).[5]

Some of the testimony given by other plaintiffs, however, is ambiguous as to the nature of the activities in which they engaged while away from a fixed site and/or the amount of time they spent performing sales-related activities away from a fixed site.  For example, plaintiff Raquel Sanchez testified that she spent five to six hours each day "out visiting customers, clients [and] potential clients" (see Barrett Decl. Ex. 23 at 66-67), but did not identify the nature of the activities in which she engaged while she was "out."  As another example, plaintiff Cem Turk testified he spent approximately thirty-five to forty percent of his work day meeting with clients and prospects outside of his office (see id. Ex. 26 at 129-30), but, likewise, did not identify the nature of the activities in which he engaged while "outside."  Additionally, a number of plaintiffs testified that they spent a number of hours at open houses on a regular basis, but few identified the nature of the activities in which they engaged while at open houses.  (See, e.g., id. Ex. 11 at 38-39 (testimony of Ara Alexander Kachadourian ("Kachadourian") that he spent approximately eight hours each week at open houses, but not identifying what he did while attending open houses).) Significantly, none of those plaintiffs stated they never engaged in sales-related activities at open houses, which activities presumably would have occurred if, while there, they met with prospective home buyers.[6]  Similarly, other plaintiffs, in declarations, state they were rarely, if ever, outside of a fixed site when they received a loan application from a customer (see, e.g., Rivet Decl. ¶ 3 ("When I met with a customer in person to take an application, I usually met with the customer at the HSBC Bank branch, or at the HSBC loan production office.")) Schultes Decl. ¶ 3 ("I always took loan applications over the phone.")), but do not

---

[5]HSBC has identified no evidence contradicting such plaintiffs.

[6]At least one plaintiff, Rupert B. Blanchette ("Blanchette"), did testify that at such times as he attended open houses, he introduced himself to "prospective buyers" and provided them with written materials that "might be of assistance to them in terms of deciding about a loan." (See Helland Decl. Ex. 3 at 36.)

8

state where they were located when they engaged in any other activity "critical to the sales process." See Dep't of Labor, Wage and Hour Div., Opinion 2007-1, 2007 WL 506574.

For purposes of summary judgment, such ambiguous testimony must be construed in the light most favorable to the non-moving party, see Matsushita, 475 U.S. at 587, which, in this instance, is HSBC. Further, the Court finds such testimony, when construed in the light most favorable to HSBC, is insufficient to foreclose HSBC from establishing that at least some of the thirty-seven plaintiffs whose testimony presently is in the record are properly classified as outside salespersons.

Moreover, plaintiffs have offered no evidence, either by deposition or declaration, as to the work activities of a substantial majority of the plaintiffs. As noted above, there are four named plaintiffs and an additional 120 plaintiffs who have joined the action by filing consent forms; testimony has been offered from less than a third of such individuals. Although in any given case, depending on the evidence presented, a trier of fact reasonably could infer from testimony given by some of the members of a class that the same type of testimony would be given by the remaining members of the class, in this instance, on the record before the Court, plaintiffs fail to show such an inference properly may be drawn.

Finally, plaintiffs rely on a chart that lists 100 of the 124 plaintiffs and sets forth the number of applications taken by those 100 plaintiffs, as well as the number of those applications that were taken by "telephone," "face," "internet," or "mail." (See Helland Decl. ¶ 3.)[7] For example, with respect to plaintiff Dawn Cameron, the chart indicates she took 387 loan applications, of which 110 were by "telephone," 162 were by "face,"[8] 108 were taken over the "internet," and the remaining 7 were by "mail." (See id.)

---

[7] The chart is a summary of evidence plaintiffs received from HSBC during discovery. (See Helland Decl., filed April 30, 2010, ¶¶ 3-6.) It is unclear from the chart, or from plaintiffs' description of the underlying discovery they received from HSBC, whether the information set forth in the chart encompasses every application taken by the 100 plaintiffs identified in the chart, or some subset of the number taken by those 100 plaintiffs.

[8] The Court understands "face" to be a reference to an in-person meeting.

The information on the chart, whether considered alone or in conjunction with the testimony of the above-referenced thirty-seven plaintiffs, is insufficient to foreclose HSBC from establishing that the majority of the plaintiffs, or some other percentage thereof, are properly classified as outside salespersons.  The chart provides no information at all as to twenty-four of the plaintiffs, and only provides information pertaining to one type of sales-related activity, specifically, the taking of a mortgage application.  As HSBC correctly notes, plaintiffs cite no authority for the proposition that, for purposes of determining whether a salesperson is an outside salesperson, the only activity to be considered is the ultimate submission of an order for the goods or services being offered.  Indeed, as set forth above, the Department of Labor has not interpreted the FLSA or its regulations in such manner, nor, to the extent case authority exists, have the courts.  Moreover, some of the plaintiffs have testified they engaged in activities, conducted outside of a fixed site, that a trier of fact reasonably could find were critical to the sales process, such as soliciting prospective home buyers at open houses (see, e.g., id. Ex. 3 at 36-37 (plaintiff Blanchette's testimony that he provided written materials to prospective buyers attending open houses)) and putting on seminars attended by prospective home buyers (see, e.g., Barrett Decl. Ex. 11 at 74-75) (plaintiff Kachadourian's testimony that he put on seminars for prospective home buyers in real estate offices or in "a community forum place")).

Accordingly, plaintiffs have failed to show they are entitled to summary judgment on the outside sales exemption.

**B. Highly-Compensated Employee Exemption**

29 C.F.R. § 541.601 provides that "[a]n employee with a total annual compensation of at least $100,000 is deemed exempt . . . if the employee customarily and regularly performs any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee identified in [29 C.F.R. §§ 541.200, 541.200, and 541.300]."  See 29 C.F.R. § 541.601.[9]  HSBC has raised the defense that each of the

---

[9]The parties refer to such exemption as the "highly compensated" exemption.

10

plaintiffs earning at least $100,000 annually is an exempt "highly compensated" employee because each such employee, on a customary and regular basis, either performs or performed "at least one exempt administrative duty" (see Defs.' Mem. of P. & A. in Opp. to Pls.' Mot. for Summ. J., filed April 2, 2010, at 15:2) and/or "at least one exempt executive duty" (see id. at 16:17).

Section § 541.200 defines an "administrative" duty as "the performance of office or non-manual work directly related to the management of general business operations of the employer or the employer's customers," provided such performance "includes the exercise of discretion and independent judgment with respect to matters of significance." See 29 C.F.R. § 541.200(a). Section 541.100 defines an "executive" duty as the "management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof," provided the person so managing the enterprise "customarily and regularly directs the work of two or more other employees" and "has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight." See 29 C.F.R. § 541.100(a).

"Customarily and regularly," as discussed above, "means a frequency that must be greater than occasional but which, of course, may be less than constant." See 29 C.F.R. § 541.701. Consequently, where an employee earns at least $100,000 annually, the above regulations provide that such an employee is properly categorized as a "highly compensated" employee where he or she performs the above-referenced "administrative" or "executive" duties on a greater than occasional basis.

Plaintiffs argue HSBC lacks evidence to establish that any plaintiff, who earned at least $100,000 on an annual basis, customarily and regularly performs or performed an administrative or executive duty. In support thereof, plaintiffs rely on the Court's prior finding that it is undisputed that plaintiffs' "primary duty" is selling "financial products." (See Order, filed March 19, 2008, at 11:3-12:12:11.) As HSBC correctly notes, a finding that a plaintiff's primary duty is sales does not necessarily foreclose a finding that such plaintiff

also performs administrative or executive duties on a customary and regularly basis. Here, however, the Court's prior ruling was based in part on the deposition testimony of David Gates ("Gates"), who was produced on behalf of HSBC pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure and, in describing the duties of "loan officers," testified as follows: "Our loan officers take mortgage applications and sell mortgages. They don't process. They don't underwrite. They don't close loans. There's a check and balance from a control perspective. So their primary job is to sell." (See Pls.' Ex. 3, filed December 27, 2007, at 130.) Significantly, as the Court's prior order noted, Gates also testified that the department in which loan officers work is "purely a sales department." (See id. at 131 (emphasis added).) In light of such testimony, the Court finds plaintiffs have met their initial burden to show the absence of a triable issue of fact as to the applicability of the "highly compensated" exemption.

The Court next considers whether HSBC, in response, has come forward with evidence sufficient to establish a triable issue of fact as to whether any plaintiff is a "highly compensated" employee. As discussed below, the Court finds HSBC has failed to make such a showing.

First, to support its assertion that at least some of the plaintiffs customarily and regularly engage or engaged in administrative duties, HSBC cites to the deposition testimony of three plaintiffs, specifically, Karen Flanagan ("Flanagan"), Alysse Gora ("Gora"), and Michelle Spronck ("Spronck"). The testimony on which HSBC relies, however, consists either of descriptions of such plaintiff's sales and/or promotional activities or, in one instance, a confirmation of the importance of sales to HSBC. (See, e.g., Barrett Decl. Ex. 6 at 117, 193, 203 (Flanagan's testimony that loan officers worked with customers to find a "program that best suited their needs" and were responsible for "developing, expanding, and retaining customer relationships," and that she advised potential customers as to "how their use of credit affects their credit score" and attempted to obtain "discounts" for her customers); id. Ex. 8 at 34, 78, 89 (Gora's testimony that she understood her "job is sales," she was given a goal to obtain "greater leads" through bank

12

branches, and she advised potential customers on the availability of "specific product[s]"); id. Ex. 25 at 118 (Spronck's testimony that the "closing of loans" and "sale of loans" was "the essential business of HSBC").) Although Flanagan did testify that one of her customers opened "CDs" with HSBC and that she "referred some people over to the investment officer" (see id. Ex. 6 at 184-85), HSBC's reliance on such testimony is unavailing. Even if, as HSBC contends, such work can be characterized as "administrative," rather than sales or promotion of HSBC products other than mortgages, HSBC points to no evidence to support a finding that Flanagan, or any other plaintiff, engaged in any such non-mortgage related work "customarily and regularly," as opposed to on an "isolated" basis. See 29 C.F.R. § 501.701.

Second, with respect to its assertion that plaintiffs customarily and regularly engage or engaged in executive duties, HSBC again relies on Spronck's deposition testimony, in this instance her testimony that during the period of time in which she worked as a "retail mortgage sales manager" (see Barrett Decl. Ex. 25 at 21) she had "direct responsibility for EEO and affirmative action" (see id. Ex. 25 at 42), was responsible for recommending employees for hire (see id. Ex. 25 at 44-46), and managed a "team" of four employees (see id. Ex. 25 at 52-53). Plaintiffs' claims, however, arise from their employment by HSBC as "loan officers" (see Order, filed March 19, 2008, at 2:18-22, 3:5-7, 13:19-20), and not from their employment by HSBC as "retail mortgage sales managers."[10]

Accordingly, plaintiffs are entitled to summary judgment on HSBC's affirmative defense that plaintiffs, or any of them, are "highly compensated" employees under the FLSA.

**C.  29 U.S.C. § 259**

Under 29 U.S.C. § 259, "no employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay . . . overtime compensation under the [FLSA] . . . if he pleads and proves that the act or omission complained of was in good faith

---

[10]HSBC does not argue that Spronck performed an "executive" duty during the period of time in which she was employed by HSBC as a loan officer.

1 in conformity with and in reliance on any written administrative regulation, order, ruling,
2 approval, or interpretation, of [the Administrator of the Wage and Hour Division of the
3 Department of Labor], or any administrative practice or enforcement policy of such agency
4 with respect to the class of employers to which he belongs." See 29 U.S.C. § 259.

5 Plaintiffs contend that HSBC failed to timely disclose to plaintiffs any evidence
6 pertinent to the defense set forth in § 259, i.e., evidence that HSBC classified plaintiffs as
7 exempt in reliance on a good faith interpretation of a Department of Labor regulation, order,
8 ruling, approval, interpretation, practice, or policy, and, consequently, that in the event
9 plaintiffs establish a failure to pay overtime, HSBC is not entitled to assert a defense
10 thereunder.

11 In opposition, HSBC relies on its discovery responses and on a declaration by Ann
12 R. Platzer ("Platzer"), Associate General Counsel for HSBC.[11]  Platzer states that in 2006,
13 she subscribed to the Department of Labor's ("DOL") website after she learned that another
14 attorney had "requested an opinion letter from the [DOL] regarding loan officer exemption
15 status under the outside sales exemption" (see Platzer Decl. ¶ 3),[12] and that, on April 21,
16 2006, she received an email from the DOL, advising her that the opinion letter had been
17 issued and including a link thereto (see id. ¶ 4). According to Platzer, she then forwarded
18 the DOL's email, along with a "brief summary," to HSBC's "head of Compensation," who, in
19 turn, forwarded the email to Rick Kozak, "one of the individuals who was responsible for
20 making classification decisions at that time." (See id. ¶¶ 4, 5.)

21 Assuming, arguendo, the information contained in Platzer's declaration was timely

---

[11] The information set forth in Platzer's declaration is included in HSBC's "Supplemental and Amended Response to Plaintiffs' Interrogatories." (See Helland Reply Decl., filed April 9, 2010, Ex. 52 at 20.) Plaintiffs assert such information was not timely provided because the supplemental response was served shortly before 5:00 p.m. on the date fact discovery closed, thus effectively precluding plaintiffs from noticing Platzer's deposition during the time fact discovery remained open, and, additionally, because HSBC did not verify the supplemental response until after the close of discovery. As set forth below, however, even assuming the timeliness of such disclosure, HSBC's reliance thereon is unavailing.

[12] The Platzer Declaration is attached as Exhibit B to the Declaration of Michelle R. Barrett.

14

disclosed, plaintiffs correctly point out that such information is insufficient to support a defense under § 259. HSBC offers no evidence that Platzer recommended, based on her review of the opinion letter or any other DOL document, that HSBC classify all or any of its loan officers as exempt, nor does HSBC offer any evidence that the individual(s) who made the classification decision(s) ever reviewed the opinion letter, let alone took any action in reliance thereon.[13]

Accordingly, to the extent HSBC's affirmative defenses are based on § 259, plaintiffs are entitled to summary judgment.

**D. Statute of Limitations**

A cause of action under the FLSA "shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." See 29 U.S.C. § 255(a). Plaintiffs argue HSBC is not entitled to rely on the two-year statute of limitations because, according to plaintiffs, it is undisputed that HSBC willfully violated the FLSA. Specifically, plaintiffs argue, HSBC has "not produced any evidence to support [its] exemption defense." (See Pls.' Mot. at 22:20.) As discussed above, however, plaintiffs have not met their initial burden to show, for purposes of summary judgment, that HSBC cannot establish that at least some of the plaintiffs are properly classified as outside sales persons. Consequently, the question of whether HSBC willfully violated the FLSA is premature.

Accordingly, plaintiffs have failed to show they are entitled to summary judgment on HSBC's affirmative defense that a two-year, rather than three-year, statute of limitations is applicable to plaintiffs' claims.

---

[13]Although HSBC failed to offer a copy of the opinion letter, plaintiffs have done so. (See Helland Reply Decl. Ex. 43.) The opinion letter states that although "each 'sales force' loan officer must be evaluated on an individual basis to determine whether he or she qualifies for the outside sales exemption," a loan officer whose principal duty is to sell loan products would qualify for the exemption if, for example, he or she "meet[s] clients outside of the employer's place of business in order to initiate sales, such as at the client's homes," and the "frequency" of such "outside sales activities" is "normally and recurrently [ ] performed every workweek." (See id. Ex. 43 at 3.)

15

**E.  Liquidated Damages**

"[A]n employer who violates the [FLSA] shall be liable for unpaid overtime compensation plus an additional equal amount as liquidated damages." Local 246 Utility Workers of America v. Southern California Edison Co., 83 F.3d 292, 298 (9th Cir. 1996). An award of liquidated damages is "mandatory" unless the employer "establish[es] subjective and objective good faith in its violation of the FLSA." See id. (citing 29 C.F.R. § 260). Here, plaintiffs argue, an award of liquidated damages is mandatory because HSBC lacks evidence to support any exemption.[14] As discussed above, however, plaintiffs have not met their initial burden to show, for purposes of summary judgment, that HSBC cannot establish that at least some of the plaintiffs are properly classified as outside sales persons. Consequently, the question of entitlement to an award of liquidated damages is premature.

Accordingly, plaintiffs have failed to show they are entitled, as a matter of law, to an award of liquidated damages.

**F.  29 C.F.R. § 778.114**

Plaintiffs seek a finding that, in the event they establish they are entitled to overtime compensation, the method of compensation set forth in 29 C.F.R. § 778.114 is inapplicable to the calculation of their damages.

"Section 778.114 provides that a salaried employee whose hours of work fluctuate from week to week may reach a mutual understanding with his employer that he will receive a fixed amount as straight-time pay for whatever hours he is called upon to work in a workweek, whether few or many, and that he will be compensated for his overtime work at a rate of fifty percent of his regular hourly pay." Condo v. Sysco Corp., 1 F.3d 599, 601

---

[14]Because HSBC, as discussed above, has failed to offer evidence to support a finding of its reliance on a DOL regulation, order, ruling, approval, interpretation, practice or policy, HSBC cannot establish a defense under § 259. Such failure does not, however, foreclose HSBC from establishing that any violation of the FLSA proven by plaintiffs, or any of them, occurred under circumstances in which HSBC believed it was acting in good faith. See 29 C.F.R. § 790.17(i) (providing "[t]he fact that an employer has no defense under [§ 259] would not, of course, preclude a court from finding that he acted in good faith having reasonable grounds to believe he was not in violation of the law").

16

(7th Cir. 1993). Plaintiffs argue that the method of compensation set forth in § 778.114, referred to by the parties as the "fluctuating workweek" ("FWW") method, is, as a matter of law, inapplicable to employees who are misclassified as exempt. Specifically, plaintiffs argue, the Court should adopt the reasoning of Russell v. Wells Fargo Bank, 672 F. Supp. 2d 1008 (N.D. Cal. 2009), in which the district court held the FWW method provided in § 778.114 is inapplicable "in a misclassification case." See id. at 1016.

The Court finds it unnecessary to consider the merits of plaintiffs' argument because HSBC, in its opposition, states it is not relying on the FWW method set forth in § 778.114 (See Defs.' Opp. at 22:11-13, 24:2).[15]

Accordingly, to the extent plaintiffs' motion seeks summary judgment on the inapplicability of § 778.114, the motion will be granted as unopposed.

## CONCLUSION

For the reasons stated above, plaintiffs' motion for partial summary judgment is hereby GRANTED in part and DENIED in part, as follows:

1. To the extent the motion seeks summary judgment on the affirmative defense that plaintiffs, or any of them, are exempt under the FLSA as "highly compensated" employees, the motion is GRANTED.

2. To the extent the motion seeks summary judgment on the affirmative defense set forth in 29 U.S.C. § 259, the motion is GRANTED.

3. To the extent the motion seeks summary judgment on the inapplicability of 29 C.F.R. § 778.114, the motion is GRANTED.

4. In all other respects, the motion is DENIED.

**IT IS SO ORDERED.**

Dated: September 29, 2010

MAXINE M. CHESNEY
United States District Judge

---

[15] HSBC asserts that, in the event plaintiffs are entitled to overtime compensation, it intends to rely on a method of calculation other than that set forth in § 778.114. The Court makes no finding herein as to whether any other method is or is not, as a matter of law, applicable.

17