United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   PHILIP WONG, et al.,                    No. C-07-2446 MMC

12            Plaintiffs,              **ORDER GRANTING DEFENDANTS'
                                       MOTION TO DECERTIFY CONDITIONAL
13     v.                              FLSA CLASS**

14   HSBC MORTGAGE CORPORATION (USA),
     et al.,
15            Defendants.

16   _____/

17

18        Before the Court is defendants HSBC Mortgage Corporation (USA) and HSBC Bank

19   USA, N.A.'s (collectively, "HSBC") Motion to Decertify Conditional FLSA Class, filed March

20   19, 2010.  Plaintiffs have filed opposition, to which HSBC has replied.  The matter came on

21   regularly for hearing on April 23, 2010.  Matthew C. Helland and Paul J. Lukas of Nichols

22   Kaster LLP appeared on behalf of plaintiffs.  George J. Tichy, Michelle R. Barrett, and

23   Rachelle L. Wills appeared on behalf of HSBC.  Having read and considered the papers

24   filed in support of and in opposition to the motion, and the arguments of counsel, the Court

25   rules as follows.

26                            **BACKGROUND**

27        In the operative complaint, the revised Second Amended Complaint ("SAC"), filed

28   September 9, 2008, the four named plaintiffs, each of whom was employed by HSBC as a

loan officer, allege that HSBC improperly classified them as exempt under the Federal

Labor Standards Act ("FLSA"), and, consequently, violated the FLSA by failing to pay them

overtime compensation.  By order filed March 19, 2008, the Court granted plaintiffs' motion

for an order conditionally certifying, for purposes of the FLSA, a class of persons who, as of

May 7, 2004, had been employed by HSBC as loan officers within the United States.

Notice of the instant action was subsequently provided to the class, and, to date, 120 class

members, by filing consent forms, have joined the instant action as plaintiffs.[1]

## DISCUSSION

A plaintiff may bring an FLSA action on his behalf and on behalf of other employees

"similarly situated."  See 29 U.S.C. § 216(b).  To certify a FLSA class action, district courts

have applied a "two-step approach involving initial notice to prospective plaintiffs followed

by a final evaluation whether such plaintiffs are similarly situated."  See Leuthold v.

Destination America, Inc., 224 F.R.D. 462, 466 (N.D. Cal. 2004).[2]  At the first step, the

plaintiffs must "show that there is some factual basis beyond the mere averments in their

complaint for the class allegations."  See In re Wells Fargo Home Mortgage Overtime Pay

Litig., 527 F. Supp. 2d 1053, 1071 (N.D. Cal. 2007) (internal quotation and citation omitted).

"Because the court generally has a limited amount of evidence before it, the initial

determination is usually made under a fairly lenient standard and typically results in

conditional certification."  See Leuthold, 224 F.R.D. at 467.  As noted, the Court, by order

filed March 19, 2010, granted plaintiffs' motion for conditional certification.

At the second step, which occurs after discovery is complete, "the party opposing

class certification may move to decertify the class."  See id.  If, at the second step, "the

district court determine[s] on the basis of the complete factual record that the plaintiffs are

---

[1]A total of 122 consent forms were filed, including consent forms filed by named plaintiffs Leslie Shearn and Chad Barbiere.

[2]Some district courts have applied an alternative approach, specifically, "evaluating the FLSA collective action in terms of Rule 23's class certification requirements."  See id. Here, the parties previously agreed, in the context of plaintiffs' motion for conditional certification, that the Court should apply the above-stated two-step approach.  (See Pls.' Mot., filed December 27, 2007, at 10:23-25; Defs.' Opp., filed January 18, 2008, at 10:26.)

not similarly situated," the court "may decertify the class and dismiss the opt-in plaintiffs without prejudice."  See id.  At the second step, the plaintiff "bears a heavier burden" than at the first step.  See Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1261 (11th Cir. 2008).

Here, fact discovery having concluded, HSBC moves for an order decertifying the class.  In support of the instant motion, HSBC argues that individualized factual determinations will be necessary regarding HSBC's affirmative defense that plaintiffs are/were properly classified as "outside" salespersons and, consequently, are exempt under the FLSA.  See 29 U.S.C. § 213(a)(1) (providing "maximum hour requirements" in FLSA do not apply to "any employee employed . . . in the capacity of outside salesman").[3]

An "outside" salesperson is an employee whose "primary duty" is "making sales" or "obtaining orders or contracts for services," and who is "customarily and regularly engaged away from the employer's place or places of business in performing such primary duty." See 29 C.F.R. § 541.500(a).  The Ninth Circuit has recently recognized that "[o]ften, [the outside salesperson exemption] will militate against certification because . . . it requires a fact-intensive inquiry into each potential plaintiff's employment situation," given that "courts must . . . ask where the individual employees actually spent their time."  See In re Wells Fargo Home Mortgage Overtime Pay Litig., 571 F.3d 953, 959 (9th Cir. 2009) (internal quotation and citation omitted).  The Ninth Circuit has further recognized, however, that "centralized rules, to the extent they reflect the realities of the workplace, suggest a uniformity among employees that is susceptible to common proof."  See id. at 958-59.  For example, "[a] centralized policy requiring employees to be at their desks for 80% of their workday would change this individual issue into a common one."  See id. at 959.  By contrast, where a plaintiff seeking to certify a class of employees classified as outside

---

[3]HSBC also contends individualized factual determinations will be necessary with respect to the applicability of the "highly compensated" exemption.  By order filed concurrently herewith, the Court has found plaintiffs are entitled to summary judgment on HSBC's affirmative defense that plaintiffs, or any of them, are "highly compensated" employees.  Consequently, no factual determinations will be necessary with respect to such exemption.

3

1  salespersons is unable to show the existence of "company-wide policies governing how

2  employees spend their time" or "uniformity in work duties and experiences that [would]

3  diminish the need for individualized inquiry," class certification would be inappropriate,

4  given the need to hold "mini-trials with respect to each [class member's] actual work

5  performance."  See Vinole v. Countrywide Home Loans, Inc., 571 F.3d 935, 947 (9th Cir.

6  2009).

7      The above-cited Ninth Circuit opinions concerned the question of whether claims

8  brought on behalf of a class should be certified under Rule 23, and, in particular, whether,

9  for purposes of Rule 23(b), individual issues predominated over issues common to the

10  class.  See id. at 939, 948 (affirming district court's decision not to certify class under Rule

11  23 because "individual issues predominated over common issues"); Fed. R. Civ. P. 23(b)(3)

12  (requiring for Rule 23 certification that "questions of law or fact common to class members

13  predominate over any questions affecting only individual members"); In Re Wells Fargo,

14  571 F.3d at 958-59 (vacating order certifying class under Rule 23, with directions to

15  consider whether "potential individual issues . . . may make class treatment difficult if not

16  impossible").  The Court nevertheless finds such opinions instructive with respect to the

17  question of whether the instant class members are "similarly situated" for purposes of the

18  FLSA.  See Colson v. Avnet, Inc., 687 F. Supp. 2d 914, 927-28 (D. Ariz. 2009) (finding

19  Ninth Circuit's Rule 23 cases "instructive" for purposes of determining whether putative

20  FLSA class members were "similarly situated"); Johnson v. Big Lots Stores, Inc., 561 F.

21  Supp. 2d 567, 572 (E.D. La. 2008) (finding appellate decision made in "context of Rule 23"

22  provided "guidance" in resolving issues presented in FLSA action; observing, "[t[here are

23  strong parallels between a Rule 23 collective action in that both litigation devices operate to

24  resolve the claims of many individuals based on representative evidence").

25      Here, HSBC argues that it does not have a centralized rule, practice, or policy

26  requiring loan officers to work in particular locations and/or for particular periods of time

27  //

28  //

4

1    when performing their primary duty of selling HSBC's financial products.[4]  In support

2    thereof, HSBC relies on the declaration of its Senior Vice President, David Gates, who

3    attests as follows:

> As the Senior Vice President of [HSBC's] retail mortgage loan operations, I
> have not issued any policies, procedures, or directives regarding how retail
> mortgage loan officers should spend their time sourcing mortgage loan
> customers.  In addition, I have never instructed any Divisional, Regional, or
> Sales Managers or Team Leaders to issue any such policies, procedures, or
> directives.  Loan officers have discretion in determining how best to pursue
> mortgage loan opportunities with customers or prospects and through
> cultivation of referral sources.  Rather, I afford broad discretion to the
> Divisional, Regional, and Sales Managers to conduct business and set any
> particular expectations they may have at the local level.

(See Gates Decl. ¶ 5.)

10        Plaintiffs offer no evidence to the contrary, and have themselves offered, albeit for

11   other purposes, testimony from HSBC managers that no such rule, practice, or policy exists

12   at the local level.  (See, e.g., Helland Decl. Ex. 7 at 20 (testimony of manager Debra

13   Dezego that loan officers "basically work from anywhere," including "a realtor's office or an

14   accountant's office or a client's office . . . or their house or . . . the LPO [loan production

15   office]," and that she does not require loan officers to "spend a certain amount of time in

16   any of [those] given locations"); id. Ex. 19 at 115 (testimony of manager Amy Ku that she

17   "never gave loan officers a quota saying you need to spend X percentage of your time

18   outside of the branch and X percentage of your time inside the branch" and that "there is no

19   percentage" of time loan officers are required to be "making sales outside of the HSBC

20   facility or home office"); id. Ex. 23 at 29 (testimony of manager Anthony Masseria that he

21   does not "mandate that loan officers spend a certain amount of time outside the office"); id.

22   Ex. 27 at 27 (testimony of manager Louise Nelson that she does not have "specific

23   requirements about how much time [loan officers] should spend away from an office"); id.

24   Ex. 29 at 89 (testimony of manager David Peters that he "never heard of any requirement

25   as far as percentages or anything regarding where [loan officers'] business is coming from")

26

27        [4]By prior order, the Court found the undisputed evidence demonstrates that plaintiffs'
28   "primary duty" is selling "financial products."  (See Order, filed March 19, 2008, at 11:3-
     12:12:11.)

1   id. Ex. 30 at 31 (testimony of manager Kathleen Robinson that she does not train

2   managers "to instruct HSBC loan officers . . . to spend a certain amount of time in a specific

3   location"); id. Ex. 41 at 170-71 (testimony of manager Amy Young that she never gives loan

4   officers a "specific quota or target percentage of the time they are supposed to work at the

5   HSBC Bank branches versus at some other location").)

6          Although plaintiffs, by separate motion, have argued they are entitled to summary

7   judgment on the outside sales exemption, and, consequently, that no factual findings as to

8   such exemption need be made as to any plaintiff, the Court, by order filed concurrently

9   herewith has found said defense cannot be summarily adjudicated in favor of the class.  As

10  a result, factual findings as to the applicability of the outside sales exemption will need to

11  be made.  Concededly, the need to make such factual findings does not automatically

12  preclude certification of a class.  Here, however, as discussed above, plaintiffs have not

13  shown the existence of a centralized rule, practice, or policy requiring loan officers to work

14  in particular locations and/or for particular lengths of time, when performing their primary

15  duty of selling HSBC's financial products.  Nor have plaintiffs otherwise shown how

16  resolution of the applicability of the outside sales exemption to any given class member can

17  be determined other than by examining the particular circumstances of each such individual

18  member's "employment situation."  See In re Wells Fargo, 571 F.3d at 959.  In sum, the

19  trier of fact will be required to determine "where the individual employees actually spent

20  their time."  See id.

21         Lastly, plaintiffs argue that decertification in this instance is contrary to the interests

22  of judicial economy and "the FLSA's intent of allowing employees to pool their resources"

23  because the plaintiffs who joined the instant action by filing consent forms would be

24  required to "start new lawsuits all across the country" and thus "flood the federal court

25  systems [with] needless duplicative lawsuits."  (See Pls.' Resp. Mem., filed April 2, 2010, at

26  23.)  As discussed above, however, plaintiffs have not shown they are similarly situated for

27  purposes of the FLSA.  Consequently, plaintiffs have not shown that separate lawsuits will,

28  in fact, be "duplicative."  To the extent plaintiffs' argument is based on costs incurred to

1  date by the class (see Helland Decl. ¶ 46 (setting forth amount plaintiffs' counsel has

2  expended to date)), plaintiffs cite to no authority, and the Court has located none, providing

3  that expenditures by the class are an appropriate consideration with respect to

4  decertification.  As HSBC points out, given the two-step analysis contemplated in FLSA

5  class actions, decertification is not even considered until after discovery is complete, i.e.,

6  until after significant funds necessarily will have been expended.

7      Accordingly, having thoroughly reviewed the record, the Court finds plaintiffs have

8  not met their burden to demonstrate that the 124 members of the conditionally-certified

9  class are similarly situated within the meaning of the FLSA.

10                                      **CONCLUSION**

11      For the reasons stated above, HSBC's motion to decertify the conditional class is

12  hereby GRANTED, and the claims alleged on behalf of all plaintiffs other than the four

13  plaintiffs named in the SAC are hereby DISMISSED without prejudice to refiling in an

14  appropriate court.

15      **IT IS SO ORDERED.**

16

17  Dated:  September 29, 2010

18                                      MAXINE M. CHESNEY
                                        United States District Judge

19

20

21

22

23

24

25

26

27

28